IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION

| | |
|---|---|
| In re:<br>RAYMOND JOSEPH SCHNEIDER,<br>                  Debtor. | Chapter 11<br>Case No. 25-12607<br>Judge Beth A. Buchanan |

**MOTION OF THE HUNTINGTON NATIONAL BANK
FOR AUTHORIZATION TO CONDUCT RULE 2004 DISCOVERY
WITH RESPECT TO THE DEBTOR AND THIRD PARTIES**

The Huntington National Bank, as Administrative Agent ("**Huntington**"), respectfully submits this Motion for Authorization to Conduct Rule 2004 Discovery with Respect to the Debtor and Third Parties ("**2004 Motion**").

## INTRODUCTION

1. This is the second Chapter 11 filing in the past 3 years for the debtor Raymond Schneider (the "**Debtor**"). On March 1, 2023, the Debtor filed his first Chapter 11 proceeding in this Court under Case 23-10337 (the "**First Bankruptcy Case**"). The First Bankruptcy Case was largely a two party dispute between Huntington and Debtor concerning a $75 million judgment Huntington had obtained against the Debtor in the Ohio Court of Common Pleas ("**Judgment**"). However, on February 27, 2024, the Court dismissed the First Bankruptcy Case because the First District Court of Appeals vacated the Judgment. On August 20, 2025, the Ohio Supreme Court reinstated the Judgment and this second bankruptcy followed.

2. Huntington now seeks permission to conduct 2004 discovery with respect to the Debtor's assets and liabilities and pre-petition transfers to Debtor's family members. The unique feature of this 2004 Motion is that Huntington seeks tight and strictly enforceable discovery deadlines. In the First Bankruptcy Case, the Debtor obstructed and delayed 2004 discovery for 8

1

months. While the Court did eventually sanction Debtor for his misconduct during discovery, the Debtor never did comply with the discovery demands prior to the dismissal of the First Bankruptcy Case. Huntington does not want to see a repeat of the Debtor's bad behavior in this second bankruptcy case.

3. For these and other reasons discussed in more detail below, Huntington respectfully requests that the Court grant the 2004 Motion.

## BACKGROUND

4. On March 2, 2023, Debtor filed the First Bankruptcy Case. [First ECF 1] On March 8, 2023, Huntington filed a motion for the appointment of a Chapter 11 trustee ("**Trustee Motion**"). [First ECF 13] Huntington argued that the Debtor had fraudulently transferred as much as $60 million in assets pre-petition to avoid Huntington's collection efforts. [*Id.*] The Court denied the Motion because Huntington did not have sufficient detail concerning the pre-petition asset transfers. [First ECF 78] However, the Court further noted that Huntington could conduct 2004 discovery to continue to investigate the pre-petition transfers. [*Id.*, p.22]

5. Thereafter, the Court ordered Debtor to provide responses to interrogatories and document demands by August 26, 2023. [First ECF 140]. The Debtor was non-compliant.

6. After multiple meetings with Debtor's counsel and a long string of broken promises from the Debtor to produce documents and interrogatory responses by various deadlines, on October 24, 2023, Huntington was forced to file a Motion to Compel. [First ECF 221] At a December 12, 2023 status conference, Debtor's counsel promised to turn over written discovery no later than December 31, 2025. [First ECF, 344 at p.5]

7.      Prior to December 31, 2003, the First District vacated the Judgment. Based on this, Debtor filed a position paper with the Court stating that he would not comply with any of the 2004 discovery requests. [First ECF 300]

8.      Debtor moved to dismiss the First bankruptcy Case and Huntington argued that the hearing on the motion to dismiss should not go forward unless Debtor first responded to Huntington's discovery demands.  The Court proceeded with the hearing over Huntington's objection but did sanction the Debtor for his dilatory conduct on discovery.   The Court wrote:

> In summary, as a sanction for Mr. Schneider's unilateral decision to further disobey a standing discovery order containing a deadline that had expired months prior, Mr. Schneider was precluded from introducing evidence regarding the prepetition transfers to the family gift trusts or his solvency at the time of those transfers. Fed. R. Civ. P. 37(b), applicable in bankruptcy proceedings pursuant to Fed. R. Bankr. P. 7037. This Court wishes to reemphasize here, as was stated in the oral ruling, that this Court does not condone dilatory practices in discovery, which serve to increase litigation costs, delay proceedings, hamper a party's ability to defend its position, and importantly undermine the integrity of the court.

[First ECF 344, at pp. 25-26]

## ARGUMENT

9.      Bankruptcy Rule 2004 provides for examination of entities to obtain information pertaining to the bankruptcy debtor. The Rule provides, in part:

(a)     Examination on motion. On motion of any party in interest, the court may order the examination of any entity.

(b)     Scope of examination. The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for

    purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

  (c)  Compelling attendance and production of documents. The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial.

Fed. R. Bankr. P. 2004.

  10.  The purpose of Rule 2004 is to provide a tool to parties involved in a bankruptcy to obtain information concerning "the acts, conduct, or property" of the debtor, "the liabilities and financial condition of the debtor," "any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge," and in a Chapter 11, 12, or 13 case, "the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(b) ; *See also In re GYPC, Inc.*, No. 17-31030 (Bankr. S.D. Ohio June 24, 2020).

  11.  Bankruptcy courts have discretion in determining whether to order a 2004 examination. *Bank One, Columbus NA v. Hammond (In re Hammond )*, 140 B.R. 197 , 201 (S.D. Ohio 1992); *In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702 , 708-09 (Bankr. S.D.N.Y. 1991); *In re Fearn*, 96 B.R. 135, 137-38 (Bankr. S.D. Ohio 1989).

  12.  The permitted scope of a Rule 2004 examination is broad:

    It is well-established that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted. The scope of examination permitted pursuant to Rule 2004 is wider than that allowed under Federal Rules of Civil Procedure and can legitimately be in the nature of a "fishing expedition". Although the

> primary purpose of a Rule 2004 examination is to permit a party in interest to quickly ascertain the extent and location of the estate's assets, such examination is not limited to the debtor or his agents, but may properly extend to creditors and third parties who have had dealings with the debtor.

*In re Fearn*, 96 B.R. at 137-38 (citations omitted).

13. Upon an objection, the party seeking the Rule 2004 examination must establish "good cause," taking into consideration the totality of the circumstances, including the importance of the information to the examiner and the costs and burdens on the creditor. *In re Countrywide Home Loans*, 384 B.R. 373 , 393 (Bankr. W.D. Pa. 2008). The level of good cause required to be established varies depending on the potential intrusiveness. *Id*. (citing *Fearn*, 96 B.R. at 138 ); See also *Official Cmte. Of Unsecured Creditors v. Eagle-Pitcher Indus., Inc. (In re Eagle-Pitcher Indus., Inc*.), 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (citation omitted) (examination should not be so broad as to be more disruptive and costly to the party to be examined than beneficial to the party seeking discovery).

## II.    RULE 2004 DISCOVERY IS APPROPRIATE.

14. Rule 2004 discovery against the Debtor and third parties is warranted in this case.

15. Huntington seeks to investigate the Debtor's assets, liabilities, business holdings and affairs, and pre-petition transfers, including without limitation, transfers to and for the benefit of his family members and trusts. This scope is well within the boundaries of Rule 2004 which authorizes discovery on "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate."

16. Huntington was deprived of the opportunity to complete discovery in the First Bankruptcy Case. In the dismissal order in the First Bankruptcy Case, the Court recognized that "Huntington's ability to conduct discovery in this bankruptcy proceeding was one of the factors

5

this Court considered when it denied Huntington's motion to appoint a chapter 11 trustee." [First ECF 344, p. 33].

17. A 2004 Order is necessary to ensure the Debtor's compliance with Huntington's discovery this time around. The Debtor should not be permitted to "drag[] his feet in providing discovery to Huntington regarding alleged fraudulent transfers" as he did in the First Bankruptcy Case *Id.*

18. Consistent with applicable law, the Debtor and third parties will be protected from inappropriate discovery requests under applicable Federal and Bankruptcy rules. The proposed order attached hereto simply grants Huntington leave to serve discovery. All rights to object are reserved, and any disputes that cannot be resolved consensually can be addressed by the Court in the ordinary course.

19. In addition, Huntington respectfully requests that the Court place tighter controls on the Debtor in the discovery process. Huntington proposes that the Debtor be granted 45 days to provide written discovery responses after the Court grants this 2004 Motion and that the Debtor sit for a 2004 Examination within 15 days after providing written discovery responses. Huntington also respectfully requests that the Court hold a discovery status conference one week after the written discovery deadline to discuss the dilatory conduct of the Debtor, if any.

20. Huntington will serve its written discovery on the Debtor prior to the court issuing its order granting the 2004 Motion.

## **CONCLUSION**

21. Based on the foregoing, Huntington respectfully requests that the 2004 Motion be granted and that the court award other and further appropriate relief. Attached as Exhibit A is a proposed order.

Dated: November 6, 2025 Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

<u>/s/ *Christopher P. Schueller*</u>
Christopher P. Schueller (OH Id. No. 0086170)
Timothy P. Palmer (OH Id. No. 86166)
Kelly M. Neal (OH Id. No. 100889)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: 412-562-8800
Fax: 412-562-1041
E-mail: christopher.schueller@bipc.com
E-mail: timothy.palmer@bipc.com
E-Mail: kelly.neal@bipc.com

*Attorneys for The Huntington National Bank*