## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No: 25-12607 |
| Raymond Joseph Schneider, | : | Chapter 11 |
| | : | |
| Debtor and Debtor in Possession. | : | Judge Beth A. Buchanan |

### OBJECTION TO MOTION OF THE HUNTINGTON NATIONAL BANK FOR AUTHORIZATION TO CONDUCT RULE 2004 DISCOVERY WITH RESPECT TO THE DEBTOR AND THIRD-PARTIES (DOC. 41)

## I.      INTRODUCTION

Three thousand five hundred fifty. When you multiply the number of Huntington's interrogatories and production requests (including subparts) by all of the entities and individuals for which the Debtor is supposed to answer, there are at least 3,550 different responses that will be required of the Debtor. Assuming an attorney spends just five minutes on each request, it would take over 295 hours to put together the responses and cost the Debtor in excess of $80,000.00 in legal fees at a conservative rate of $270 per hour. And that calculation doesn't account for the fact that Huntington is seeking discovery of information from an eight-year period, with its requests going back to 2018. That is, the estimates above might understate the costs of responding.

The purpose of Huntington's motion is not the "fishing expedition" permitted by Bankruptcy Rule 2004. Rather, Huntington appears to be attempting to set a trap: require the Debtor by Court order to complete a literally impossible task, then use that failure to either have the Debtor held in contempt or to have the Debtor's discharge denied. By happy side effect, Huntington would at the same time drain the Debtor of time and resources that are necessary to pursue an effective reorganization in this case.

The Debtor understands his obligations to respond to legitimate document and information requests by his creditors, and he is ready, willing, and able to do so. To that end, the undersigned

will reach out to Huntington's counsel to meet and confer as to the reasonable bounds of discovery in this case. But the discovery presented by Huntington's motion is not reasonable, permissible, or necessary, and the motion should be denied.

There are three primary issues with Huntington's motion. First, Huntington's requests go well beyond the permitted scope of Rule 2004. Huntington is seeking massive amounts of information from the Debtor about him, 108 different entities (regardless of whether they are active), two trusts, and the Debtor's family members from 2018 to the present. The vast majority of that information is irrelevant to this case and goes beyond the enumerated topics set forth in Rule 2004(b)(1) and (2). Moreover, although the Debtor is certainly willing to produce documents and information in his custody and control, Huntington seeks to have the Debtor produce documents and information relating to third-parties that the Debtor does not control and who have not received notice. Even insiders and affiliates are entitled to due process.

Second, the sheer volume of requests, in light of their general inapplicability to the current financial affairs of the Debtor, suggests an intent to harass the Debtor by bludgeoning him with endless document and information requests. This intent to harass is made clearer in light of the fact that Huntington's requests are almost a word-for-word copy of their requests from the Debtor's first case without taking into account documents that have already been produced to it that it is now seeking to have produced a second time. At the very least, even if Huntington's intent is not to harass, the burden on the Debtor is so extreme that the motion goes beyond the bounds of Rule 2004.

Finally, aside from the examination request of the Debtor, Huntington's motion seeks to establish a procedure whereby it can have *carte blanche* authority to conduct discovery of any person or entity without notice or due process. It seeks to remove the requirement from Rule 2004

that it file a motion with the Court for permission to examine an entity, and instead have the Court permit it to start discovery and force third-parties to engage and object in a process of Huntington's own invention. There is no authority under Rule 2004 for this type of process, and Huntington has failed to comply with the notice requirements of Rule 9013 and LBR 9013-3 in even asking for it.

## II.   BACKGROUND

Huntington's Rule 2004 examination motion (the "Motion") can be split into two parts: First, it seeks discovery from the Debtor, numerous affiliated entities, the Debtor's family members, and two family trusts. Second, Huntington seeks to have the Court approve a procedure whereby it may avoid the need to file any further Rule 2004 examination motions to seek discovery from third-parties, and, instead, immediately subject third-parties to a discovery process under Civil Rule 26, *et seq.* (which rules are inapplicable to Rule 2004 relief).

As to its requests to the Debtor, shortly after filing its Motion, Huntington provided to the Debtor a copy of the written discovery requests that it intends to issue. These requests were not filed with the Motion but are instead attached to this memorandum as Exhibit 1. The requests looked familiar to the Debtor, and rightly so: they are nearly identical to the requests issued by Huntington in the first bankruptcy case, to which the Debtor already responded at least in part (the "Original Requests"). Attached as Exhibit 2 is a redline comparison of the current requests to the Original Requests.[1] The biggest difference between the two is the breadth of the timeline. The Original Requests, issued in July 2023, sought information going back to January 1, 2019, which was a little over four years. Now, Huntington has expanded the requests to be from January 1, 2018—going back further—to the present, which is nearly 8 years. This timeline, of course, goes

---

[1] The interrogatories in the first case were filed with the *Agreed Order Fixing 2004 Examination of Raymond Schneider and Procedures Regarding Third Parties* entered on July 20, 2023. (Doc. 140 in Case No. 23-10337).

beyond any applicable statute of limitations for avoidable fraudulent transfers under Ohio or federal law.

Huntington has not done anything, either, to acknowledge that it already received substantial discovery responses from the Debtor. While the Debtor did not fully produce responsive documentation prior to the dismissal of the first case, he did produce a great deal of documentation directly to Huntington and during the course of the first case. The Debtor has also produced a large amount of information in his ongoing state court litigation against Huntington. Yet the requests from Huntington do not reflect the prior productions and seek to have the Debtor re-produce everything.

In addition, the new requests from Huntington attach a list of 108 entities for which Huntington seeks to have the Debtor respond. Notably, while the Debtor controls some of these entities, there are multiple entities that the Debtor does not fully own or control which Huntington has included in this discovery (even though Huntington has had information about the ownership of those entities since the early days of the first bankruptcy case).

Turning to the requests aimed at potential third-parties, Huntington does not name any entity to which it anticipates serving discovery. Instead, it seeks to establish a new procedure whereby it is Court-authorized to seek discovery from any person or entity, and forcing such person or entity to engage in an objection process or else be required to respond. That is, Huntington wants *carte blanche* authority under Rule 2004 to examine any entity without first filing a Rule 2004 motion and serving that entity.

The Debtor does not dispute Huntington's right to inquire into his assets, liabilities, and pre-petition transfers as part of the administration of this estate. However, the Motion exceeds the bounds of Rule 2004 by demanding an unmanageable volume of information, much of it irrelevant,

and by circumventing proper procedures. And while the Debtor agreed to similar relief in the first case, the expanded scope of these new requests, combined with a need for the Debtor to protect himself from the overbreadth and burden of them, does not permit him to agree in this proceeding.

## III.    LAW AND ARGUMENT

Bankruptcy Rule 2004 provides a mechanism for parties in interest to examine the debtor or others regarding matters affecting the administration of the estate, including the debtor's assets, liabilities, and financial condition. Fed. R. Bankr. P. 2004(b). While the rule permits broad inquiry—often described as a "fishing expedition"—it is not without limits. *See In re Fearn*, 96 B.R. 135, 137-38 (Bankr. S.D. Ohio 1989) (noting that while Rule 2004 allows a "fishing expedition," it "should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery" and "cannot be used for purposes of abuse or harassment"); *see also In re Downs*, 2021 WL 4823508, at *14-15 (Bankr. C.D. Cal. Oct. 13, 2021) ("The scope of a Rule 2004 exam should not stray into matters which are not relevant to the basic inquiry…") (cleaned up); *In re Symington*, 209 B.R. 678, 684 (Bankr. D. Md. 1997) ("Despite its characterization as being tantamount to a 'fishing expedition'…a Rule 2004 examination must be both relevant and reasonable.").

The requesting party must demonstrate "good cause" for the examination, and the court must balance the potential benefits against the burden imposed. *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627 (Bankr. D. Del. 2016); *In re Stambaugh,* 531 B.R. 191, 194 (Bankr. S.D. Ohio 2015) (emphasizing that caution must be exercised to avoid "costly and disruptive procedures that far outweigh the benefit"); *In re DeShetler*, 453 B.R. 295, 302 (Bankr. S.D. Ohio 2011) ("The use of a 2004 examination is not permitted for matters not related to the financial conditions of a debtor or a debtor's estate."). Inquiries that seek far-reaching information will

require a higher showing of good cause because they are "inherently more intrusive and present a greater potential for abuse." *In re Kleynerman*, 617 B.R. 122, 128 (Bankr. E.D. Wis. 2020), citing *In re Countrywide Home Loans*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008).

Moreover, Rule 2004 is not a substitute for ordinary discovery under the Federal Rules of Civil Procedure; it is intended for preliminary investigation, not exhaustive litigation-style probing. *See* 2 Norton Bankr. L. & Prac. 3d § 35:1 (explaining that Rule 2004 provides guidelines for examination "in connection with the administration of the estate" and is broader than civil discovery but subject to court oversight); *See also Millennium Lab Holdings*, 562 B.R. at 628, citing *In re J&R Trucking, Inc.*, 431 B.R. 818, 822-823 (Bankr. N.D. Ind. 2010) ("Movants understandably want…their money, but that does not justify turning a tool that has been developed to efficiently administer bankruptcy estates into a private collection device for creditors.").

Huntington's Motion fails on multiple fronts: (1) the proposed discovery requests go beyond the scope of Rule 2004 and seek information outside the Debtor's control; (2) the Motion is harassing and abusive, designed to set a trap that could jeopardize the Debtor's discharge under 11 U.S.C. § 727; and (3) Huntington lacks authority to seek the requested discovery from third-parties without due process, including proper service under Local Rule 9013. For these reasons, the Motion should be denied, or, at minimum, the scope of discovery should be substantially narrowed to relevant matters.

### A.    The proposed discovery requests are beyond the scope of Rule 2004.

Rule 2004(b) limits the scope of any examination to the following matters:

(1)    The acts, conduct, or property, or the liabilities and financial condition, of the debtor;

(2)    Any matter which may affect the administration of the debtor's estate;

(3)    The debtor's right to a discharge;

(4)     In a reorganization case under chapter 11 of the Bankruptcy Code (other than for the reorganization of a railroad), the operation of any business and the desirability of its continuance;

(5)     The source of any money or property acquired, or to be acquired, by the debtor for purposes of consummating a plan, and the consideration given or offered therefor; and

(6)     Any other matter relevant to the case or to the formulation of a plan.

*See* Fed. R. Bankr. P. 2004(b)(1) and (2).

Huntington's requests extend far beyond these limits, demanding that the Debtor himself produce exhaustive details about 108 entities, trusts, and family members dating back to 2018— well outside any relevant time period for those matters within the permissible examination scope. Many requests seek records the Debtor does not personally maintain or control, such as detailed financials from entities where he holds only a minority interest. This overreach renders compliance impractical and tips the balance away from a needed examination to one that is overly burdensome. *See In re Underwood*, 457 B.R. 635, 640 (Bankr. S.D. Ohio 2011) (good cause requires relevance to estate administration, not speculative probing); *see also Symington*, 209 B.R. at 684 (Rule 2004 is for examination, and broad demands require procedural safeguards to avoid undue burden).

It is necessary to examine Huntington's requests based on each of the enumerated scope items in Rule 2004(b), even though Huntington itself made no effort to ground its requests in that applicable authority. The first possible class of discovery is related to the acts, conduct, or property, or to the liabilities and financial condition, *of the debtor*. Rule 2004(b)(1)(A). While this is a broad category, the requests largely ignore the fact that this permits review of the Debtor *personally*. Instead, Huntington demands voluminous records about the financial affairs of over 100 entities and trusts. For instance, requests for bank statements, cancelled checks, and tax returns from these entities go back eight years, far exceeding any reasonable inquiry into the Debtor's own financial

condition. Huntington further seeks information about business transactions of those entities, regardless of whether those transactions were with the Debtor himself. By definition, the requests seeking information about the "acts, conduct, or property or [the] liabilities and financial condition" of a third-party are not about the Debtor, as required under Rule 2004(b)(1)(A). Huntington has not articulated how detailed but old transactional information about a third-party entity affects the Debtor's current financial condition. Surely, the Debtor's financial condition would be affected by (a) the present value of the Debtor's interests in entities, (b) income derived from those entities, and (c) the Debtor's transactions with those entities, to the extent they are avoidable and such avoidance would benefit the estate. But Huntington's requests are not targeted at such and go well beyond that scope.

The second permitted scope parameter is for any matter which may affect the administration of the debtor's estate. The requests by Huntington are wholly untethered from estate administration. There may, for example, be a reason to review transactions of the Debtor that may be avoided as fraudulent transfers, but the statute of limitations for those transfers is four years, *see* R.C. § 1336.09, and would only apply to transfers of the Debtor. *In re Cannon*, 277 F.3d 838, 853-854 (6th Cir. 2002) (chapter 5 fraudulent transfer actions are inapplicable to transfers of assets that would not have been property of the estate under § 541, meaning transfers by the Debtor's entities are not avoidable absent substantive consolidation). Huntington, by contrast, seeks information going back eight years and is approaching this as if transactions of an entity owned by the Debtor are subject to chapter 5 causes of action. They are not. *Id.* As such, Huntington is seeking documents—like 2018 financial statements for various entities, or cancelled checks predating the fraudulent transfer period—that do not, and cannot, aid in administering the Debtor's estate. Rather, these requests impose a massive burden without any benefit.

8

Huntington's requests also go beyond the scope of the third item: matters that go to the Debtor's right to a discharge. Huntington has not alleged that it is seeking to review matters that may be encapsulated in a § 727 complaint. Even if it were the basis for the Motion, the eight years of information requested by Huntington goes well beyond anything even remotely relevant. *See* 11 U.S.C. § 727(a)(2) (setting a one-year lookback for denial of discharge based on concealment, etc.). Requests for ancient records from every affiliate of the Debtor do not probe any discharge issue.

While there do not seem to be any cases interpreting the next item under Rule 2004(b)(2)(A) (the operation of any business and the desirability of its continuance), the language used in this provision would suggest that the exam should relate to the *debtor's* business operations and the desirability of continuing such business. This makes sense in a corporate restructuring where there may be multiple business lines owned by a debtor, some of which may not be profitable to continue. Here, the Debtor's business is that he owns various development and holding companies; he himself does not have ongoing business operations to examine. Even so, the criteria focuses on the "operation of any business and the desirability of its continuing", which is a present and forward-looking review. Detailed operational records of entities going back eight years have little to do with their current operations.

Similarly, the ability under Rule 2004(b)(2)(B) of a party to review "the source of any money or property the debtor acquired or will acquire for the purpose of consummating a plan" is also present and forward-looking. The bank transactions of an entity from 2020 will not shed light on any such information. At most, the inquiry would stop with any applicable statute of limitations for a chapter 5 action (4 years). *See* R.C. § 1336.09. Moreover, the inquiry would focus on the

entitlement of the Debtor to money from his various entities and the value of the Debtor's interest. Huntington's requests go well beyond that.

Finally, the sixth item and catch-all—any other matter relevant to the case or to the formulation of a plan—does not justify the overbreadth of these requests. There is no relevance to this case, for instance, of what stocks the Debtor held in his exempt Roth IRA back in 2021. There is virtually no nexus to this case for the majority of Huntington's requests.

To illustrate the overbreadth and inapplicability of the requests, the following table highlights the most abusive requests, each demanding immense effort for stale information that falls outside Rule 2004's scope:

| Request Number | Description | Why Abusive/Burdensome |
|---|---|---|
| Interrogatory 2 | Identify over 100 entities with ownership details, tax returns, financial statements, and appraisals from 2018 to present. | Requires compiling records from numerous entities the Debtor, including those he does not control; spans 8 years; and seeks information that is irrelevant to the current case. |
| RFP 4 | Produce all state/federal tax returns from 2018-present for the Debtor, over 100 entities, and trusts. | Involves gathering sensitive tax documents from third-parties over a long timeline that is irrelevant to Debtor's personal estate. |
| RFP 5 | Produce all financial statements from 2018-present for the Debtor, over 100 entities, and trusts. | Demands balance sheets/income statements for 100+ entities over 8 years. Even if there are only perhaps a third of the entities that maintained financial statements, this would require hundreds of responses and potentially thousands of documents. |
| RFP 6 | Produce all bank statements and cancelled checks from 2018-present for the Debtor, over 100 entities, and trusts. | Thousands of pages; 8-year span; checks often not retained by individuals/entities; completely irrelevant/outside statute of limitations. |
| RFP 7 | Produce all credit card statements from 2018-present for the Debtor, over 100 entities, and trusts. | Irrelevant to estate administration. Even for the Debtor himself, this requires producing nearly 120 statements for each credit card. |

| Request Number | Description | Why Abusive/Burdensome |
|---|---|---|
| RFP 8 | Produce all investment account statements from 2018-present for the Debtor, over 100 entities, and trusts. | Broad financial history not tied to Debtor's current financial affairs. Even for the Debtor himself, this requires producing 120 statements for each investment account. No relevant information to be gleaned from old statements. |
| Interrogatory 5 | Detail all income/distributions from the entities to the Debtor and his family from 2018-present, with supporting documentation. | Requires entity-level accounting that is outside of the Debtor's affairs; 8-year scope is excessive; transfers from entities to third-parties are not even relevant to a chapter 5 analysis. |
| Interrogatory 6 | Identify all financings by entities from 2018-present, and produce loan documents and UCCs. | Requires UCC searches and documents from 100+ entities; does not pertain to the Debtor's conduct. |
| Interrogatory 15 | Detail asset sales/transfers >10% by entities from 2018-present, with supporting documentation and agreements. | Entity transactions not affecting Debtor's estate directly. |
| Interrogatory 21 | State the basis for the change in the Debtor's personal net worth between 2021 and present, and identify all transactions and documents that affected his personal net worth. | This request is ambiguous, overly broad, and impossible to even conceptualize, let alone respond to. |

These examples demonstrate how the requests go far beyond the scope permitted by Rule 2004. And while the Debtor will attempt to come to an arrangement with Huntington to resolve this Motion, the starting point is so far out of bounds that it may not be possible without Huntington starting over.

**B.      The Motion is harassing and abusive, designed to set a trap that could jeopardize the debtor's discharge.**

Rule 2004 is not an "unfettered and totally unqualified tool to 'fish' for adverse information." *In re Strecker*, 251 B.R. 878, 882 (Bankr. D. Colo. 2000). Courts deny or limit requests that appear motivated by harassment or that impose disproportionate costs. *Fearn*, 96

B.R. at 138 (prohibiting use for abuse); *Stambaugh*, 531 B.R. at 193-194 (balancing against costly and disruptive procedures).

Here, Huntington demands the impossible under threat of sanctions, which suggests that its intent is to trap the Debtor into non-compliance, potentially affecting his discharge under 11 U.S.C. § 727(a)(6) for failure to obey a lawful court order. Huntington has asked that the Court "place tighter controls on the Debtor in the discovery process," anticipating that the Debtor will have "dilatory conduct." Motion at p. 6. Huntington frames this as being about the Debtor failing to provide discovery about alleged fraudulent transfers, *see id*. at pp. 5-6, but that framing is only believable to the extent that Huntington's requests are designed to find potential fraudulent transfers. As set forth above, given that the requests are not tethered to any applicable limitations period, they are not so designed.

Rather than focus on the history of the last case (when the Debtor failed to provide remaining discovery after Huntington's judgment had been overturned), the relevant inquiry for this Court is what Huntington currently requests in its Motion. And what is Huntington attempting to do? It issued new discovery requests that mirror the Original Discovery Requests from the first case but expand them by seeking information from even further back in time and over a longer period. Huntington further identifies 108 different entities for which it seeks to have the Debtor respond and seeks to have the Debtor provide documents and information for two trusts. Moreover, Huntington did not adjust its requests to account for discovery that was received in the first case, even if incomplete, and discovery that it has obtained from the Debtor in state court litigation.[2]

---

[2] The Debtor's counsel in the state court proceedings has recently provided copies of what the Debtor produced to Huntington in that case. The download was over three gigabytes.

As set forth in the Introduction, based on the number of entities for which Huntington has made requests, and multiplied by all of the parts and subparts of its requests, there are at least 3,550 distinct responses required when accounting for all entities and trusts implicated. And make no mistake: Huntington will seek to hold the Debtor to an entity-by-entity response, with specific details of what documents exist and what documents don't exist. After all, in the first proceeding, it sent the Debtor a 14-page deficiency letter going through entity-by-entity and seeking additional production. Responding to these requests in an appropriate way to ensure the Debtor is protected will require the Debtor's counsel to evaluate and respond to each request and subpart for each listed entity or trust. As calculated in the Introduction, this would require hundreds of hours and tens of thousands of dollars in legal fees—costs that would drain the estate and hinder the Debtor's reorganization. If an associate attorney spent, on average, just five minutes on each subpart for each entity, it would take that attorney 40 hours a week for seven weeks to respond to Huntington's requests.[3] This does not count the time for review by senior level attorneys, or the time needed by the Debtor and his affiliates to compile the responsive documents.

And for what? What does Huntington gain out of knowing how the Debtor paid for lunch on his credit card in 2021? What relevance is it to this case that Huntington needs to obtain a copy of a check to pay a utility bill by one of the Debtor's entities in 2023? How does a transaction between the Debtor's 2020 trust and one of the entities owned by that trust matter in this case when the applicable fraudulent transfer statute of limitations expired at the end of 2024? The only

---

[3] This is not an unreasonable estimate of an average response time for each request and for each entity. An attorney responding to these requests must communicate the request to the Debtor, obtain the information in response, review any applicable documents, draft the objections to the discovery requests, draft the specific responses, and coordinate the production. Some entity responses may go faster; some will be much, much slower. But even if the Debtor is half wrong in his assumptions, is 140 hours of work for a 2004 production still reasonable?

purpose, it seems, is for Huntington to continue its crusade to bury the Debtor with paperwork, and then claim to be wronged when the Debtor struggles to respond.

These requests exceed the "fishing expedition" permitted by Rule 2004; they are abusive and harassing. *See Kleynerman*, 617 B.R. at 131 (denying motion for 2004 examination that sought far-reaching information on third-party entities and was contrived "as a harassment device").

### C.    Huntington lacks authority to seek the requested discovery from third parties without due process.

As it relates to third parties, aside from seeking to have the Debtor produce an untold number of documents on their behalf, Huntington seeks to have the Court bless a procedure through which it can engage in unlimited discovery outside of the normal Rule 2004 process. Normally, were Huntington to seek to examine a third-party under Rule 2004, Huntington would be required to file a motion for the examination, set forth the subject matter and basis of that motion, and, most importantly, serve that motion upon the target third-party. Service on the intended target, of course, is required under Bankruptcy Rule 9013 and LBR 9013-3. The Local Rule is very specific: "Unless the court orders otherwise or unless specifically limited or expanded by a Rule or Local Rule, every filing, application, motion, or other paper or document filed, other than a proof of claim, shall be served on the debtor, the debtor's attorney, the trustee, the United States trustee, each committee appointed pursuant to the Bankruptcy Code, **upon any party directly affected by the relief sought**, and upon any party who specifically requested notice." LBR 9013-3(b) (emphasis added). Here, Huntington has not even identified the third parties that it seeks to examine, let alone serve them with the Motion.

Instead, Huntington has proposed a process whereby it can shortchange the Rule 2004 process, and institute some hybrid discovery process where the contested matter discovery rules apply, but with Rule 2004 as an alleged backdrop. It has proposed that it be able to send a proposed

set of discovery requests to any entity or third party it desires, that those parties then be required to object to those requests outside of the purview of the Court and notice parties, and that, if the objection is not resolved, then Huntington alone may bring the matter to the Court. *See* Motion, Exhibit A – Proposed Order ("If there is an objection…*Huntington* may file a motion with the Court to resolve the objection.") (emphasis added). Huntington's proposes that it should entirely skip the steps under Rule 2004(a) where it is required to file a motion seeking to examine the third-party, that the motion be served appropriately, and that other parties should have a chance to weigh in. It further anticipates binding third parties to discovery rules that are only applicable in contested matters or adversary proceedings; i.e., to respond to interrogatories and requests for production when those rules are not applicable to Rule 2004 examinations. *See In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y 1996) (discussing the inapplicability of Rule 7026 and the incorporated federal rules of discovery to Rule 2004 exams).

The undersigned has been unable to find any authority supporting this type of broad Rule 2004 discovery authority. To be sure, every case that could be found sets up the standard controversy: a motion directed to a particular person or entity, and an objection to that motion. In the various cases, courts have exercised their gatekeeping role to ensure that Rule 2004 is used appropriately. *See, e.g., Millennium Lab Holdings*, 562 B.R. at 626-627 ("…parties do not have an absolute right to Rule 2004 examinations—the granting of a Rule 2004 examination is dependent on the discretion of the court. The rule requires a balancing of the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination.") (cleaned up); *see also* Rule 2004(a) ("On a part in interest's motion, the court ***may*** order the examination…") (emphasis added).

Here, Huntington seeks to drastically alter that time-honored approach. Huntington would deprive third parties of the protections afforded them under Rule 45, such as the right to quash or modify subpoenas that are unreasonable or oppressive. *See* Fed. R. Civ. P. 45(d)(3), as incorporated by Rule 2004(c) and Rule 9016. Moreover, the Motion attempts to institute discovery under Rules 26 through 37 of the Federal Rules of Civil Procedure, which do not apply to Rule 2004 examinations. *See In re Underwood*, 457 B.R. at 640 (noting that Rule 2004 permits examination but emphasizes procedural safeguards for production); *In re Symington*, 209 B.R. at 684 (Rule 2004 is for examination, and document production requires compliance with subpoena rules to avoid undue burden). Huntington's use of interrogatories and requests for production mimics contested matter discovery, but a Rule 2004 examination is not a contested matter and does not invoke those rules. See Fed. R. Bankr. P. 9014 (applying civil discovery rules only to contested matters).

The Debtor acknowledges that he entered into an agreed order in the first case that permitted this type of process. However, as the Debtor's filings in that case indicate, he was attempting to honor the local practice of an informal 2004 examination process, only to be hammered by Huntington with massive discovery deficiency requests and allegations of dilatory conduct before the Court. The Debtor must protect himself and his resources, and he cannot agree to a process that opens up the estate and himself to this type of massive discovery obligation, especially when failure to comply could affect his discharge.[4] If Huntington wants the Court to carefully address discovery issues in this case then it should not be attempting to remove the Court's gatekeeping role from the Rule 2004 process.

---

[4] This discharge concern is not academic. Huntington filed an adversary proceeding to object to the Debtor's discharge in the first case, dismissing it without prejudice.

While Huntington will be entitled to Rule 2004 discovery of certain parties, it is only entitled to it after a motion under Rule 2004(a) and appropriate notice under Rule 9013 and LBR 9013-3.[5] Without naming or serving third parties, the Motion denies due process and should be denied.

**D.    The Debtor cannot respond on behalf of third parties.**

Finally, Huntington has broadly defined the matters to which it seeks to have the Debtor respond so as to make the Debtor responsible for collecting and responding on behalf of third parties. While this may be acceptable for entities that are entirely under the Debtor's control, Huntington takes it a step further, requiring the Debtor to respond on behalf of 108 different entities, multiple trusts, and the Debtor's family. For example, the requests broadly define "Trusts" to mean "(a) the Raymond Schneider 2019 Gift Trust; (b) the Patricia B. Schneider 2020 Gift Trust; (c) all other trusts in which Raymond Schneider is, or has been in the past (10) years, a beneficiary, contingent beneficiary, settlor, or trustee; and (d) all other trusts in which Patricia B. Schneider is, or has been in the past ten (10) years, a beneficiary, contingent beneficiary, settlor, or trustee." The requests then go on to require the Debtor to produce voluminous documents for those Trusts. While the Debtor can respond in relation to matters where he is in custody and control of information about a trust (such as for a trust where he is trustee), Huntington is seeking, for example, to have him respond on behalf of trusts created by his wife, or where his wife is trustee. In those circumstances, the Debtor's wife is entitled to notice of a motion under Rule 2004 and the opportunity to engage her own counsel to respond.

---

[5] Those parties may then raise their own defenses. For example, the trusts and the Debtor's family members may object to the extent that discovery is being propounded by Huntington when there is already a pending proceeding against them. Huntington filed a fraudulent transfer complaint against them before this case was filed, and that may prevent the use of Rule 2004 discovery here. *See In re Blinder, Robinson & Co.*, 127 B.R. 267, 274 (D.Colo.1991) (an early case discussing the pending proceeding rule).

Similarly, the Debtor is invested in multiple entities in which he only holds a minority interest. While the Debtor has certain financial information related to those entities, Huntington seeks to require him to provide it with unlimited access to those entities' financial affairs. Those entities are, likewise, entitled to notice and an opportunity to object to this process.

## IV.   CONCLUSION

Huntington's Motion exceeds the permissible bounds of Rule 2004. It seeks information beyond the Rule's scope and outside the Debtor's control, is harassing and abusive in its potential to trap the Debtor into losing his discharge, and lacks authority for third-party discovery without due process. For these reasons, the Debtor respectfully requests that the Court deny the Motion in its entirety. In the alternative, the Debtor requests that any authorized discovery be narrowly tailored to relevant matters and subject to reasonable timelines to avoid jeopardizing the Debtor's reorganization efforts.

<div style="margin-left:40%">

Respectfully submitted,

 /s/  James A. Coutinho
Thomas R. Allen      (0017513)
Richard K. Stovall    (0029978)
James A. Coutinho    (0082430)
Andrew D. Rebholz   (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
T: (614) 221-8500; F: (614) 221-5988
allen@asnalaw.com; stovall@asnalaw.com
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel for Debtor / Debtor in Possession*

</div>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**CINCINNATI DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| RAYMOND JOSEPH SCHNEIDER, | ) | Case No. 25-12607 |
| Debtor. | ) | Judge Beth A. Buchanan |
|  | ) |  |
|  | ) |  |

---

### FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEBTOR RAYMOND SCHNEIDER

---

The Huntington National Bank, as Administrative Agent ("**Huntington**"), hereby requests that the Debtor Raymond Joseph Schneider respond to the following Interrogatories and Requests for Production of Documents (collectively, the "**Requests**") in writing, no later than thirty (30) days from the date of service of these Discovery Requests or on such date directed by the Court.

### **DEFINITIONS**

1.      "**2018 PFS**" means the personal financial statement dated as of January 31, 2018, which Schneider provided to Huntington.

2.      "**2019 PFS**" means the personal financial statement dated as of June 1, 2019, which Schneider provided to Huntington.

3.      "**2021 PFS**" means the personal financial statement dated as of September 1, 2021, which Schneider provided Huntington.

4.      "**Judgment**" means the judgment entered in favor of Huntington in the Court of Common Pleas of Hamilton County, Case A2002093.

5.      "**Communication**" means any disclosure, transfer, or exchange of information, by any means, and whether orally or by document, or whether face-to-face, by telephone, mail, electronic mail, text message, or personal delivery.

6.      "**Schneider**" means Raymond Schneider and his agents, representatives, attorneys, and all other persons acting or purporting to act on his behalf.

7.      "**Family Member**" means any person related to Schneider by marriage or blood and any trust (revocable or otherwise) in which a person related to Schneider by marriage or blood is a beneficiary.

8.      "**Document**" shall include, without limitation, all written, typewritten, handwritten, recorded, or printed matter of any kind, including, without limitation, the originals and all non-identical copies thereof, whether different from the originals by reason of any notation made upon such copies or otherwise, including, again without limitation, minutes and/or other records of meetings, agendas, bills, contracts, leases, assignments, agreements, contracts, summaries of negotiations, account books, orders, invoices, statements, bills, checks, accounting records, vouchers, summaries, diaries, forecasts, studies, drawings, graphs, charts, reports and/or summaries of investigations or reports, strategic or business plans or summaries, brochures, pamphlets, publications, circulars, advertisements, trade letters, press releases, statements of policy, correspondence, letters, telegrams, interoffice and intra-office communications, offers, notations of any sort of conversations, appointment books or calendars, teletypes, telefax, thermafax, confirmations, computer files, printouts of computer files, computer data (including, but not limited to, information or programs stored in a computer, whether or not ever printed out or displayed); all drafts, alterations, modifications, changes, and amendments of any of the foregoing; all graphic or manual records or representations of any kind, including, without

limitation, photographs, microfiche, microfilm, videotape, records, motion pictures, and electronic, mechanical, or electric records or representations of any kind, including, without limitation, tapes, cassettes, disks, magnetic cards, and recordings; emails, text messages, and all other similar material.

9.      "**All documents**" shall mean every document, whether an original or copy, as defined herein, known to you, and every such document of which you have knowledge or which you can locate or discover by reasonable diligent efforts.

10.      "**Each**" shall mean each and every.

11.      "**Or**" shall mean and/or.

12.      "**Entity**" shall mean any and all entities, as well as natural persons, and, without limitation, shall be defined to include natural persons, corporations, limited liability companies, limited liability partnerships, sole proprietorships, partnerships, joint owners, associations, companies, governmental bodies or agencies, and joint ventures.

13.      "**State the Basis**" with respect to any given allegation or proposition means to identify: (a) each person who has or purports to have knowledge of the facts underlying the allegation or proposition; (b) each document used or relied upon to formulate, or which supports or substantiates, the allegation or proposition; and (c) the rationale and each fact supporting the allegation or propositions.

14.      "**Refer**," "**relate**," "**reflect**," "**regard**," "**refer to**," "**relate to**," "**relating to**," and "**concerning**" (or forms thereof) shall mean directly or indirectly (in whole or in part) referring to, relating to, connected with, commenting on, relevant to, impinging or impacting upon, affecting, responding to, showing, describing, representing, supporting, contradicting, stating, mentioning, evaluating, recording, noting, analyzing, reflecting, or constituting.

15.    "**You**" or "**your**" refer to defendant Schneider and his agents, representatives, attorneys, and all other persons acting or purporting to act on his behalf.

16.    "**Trust**" or "**Trusts**" means: (a) the Raymond Schneider 2019 Gift Trust; (b) the Patricia B. Schneider 2020 Gift Trust; (c) all other trusts in which Raymond Schneider is, or has been in the past ten (10) years, a beneficiary, contingent beneficiary, settlor, or trustee; and (d) all other trusts in which Patricia B. Schneider is, or has been in the past ten (10) years, a beneficiary, contingent beneficiary, settlor, or trustee.

17.    "**Wife**" means Schneider's current wife, if any.

18.    "**Identify**" and "**identification**" shall mean, when used in reference to:

(a)    A natural person: his or her full name; home address; business address; home and business telephone numbers; present or last known position, job description, and the identity of his or her business affiliation; his or her position, job description, and the identity of his or her business affiliation at the time and in the context in which he or she is identified; and the relationship, business or otherwise, between such person and yourself.

(b)    A company, corporation, association, partnership, or legal entity other than a natural person: its full name; a description of the type of organization or entity; the address and telephone number of its principal place of business; the jurisdiction of incorporation or organization; the date of its incorporation or organization; and the identity of each natural person acting on behalf of the entity at the time and in the context in which the entity is identified.

(c)    A document: its description (i.e., letter, memorandum, report, etc.); its title; its date; the number of pages thereof; its subject matter; the identity of its author(s), creator(s), originator(s), signer(s), and any person(s) who participated in its preparation; the identity of its addressee(s) or recipient(s); the identity of each person to whom copies were sent and each person by whom copies were received; its present location; and the identity of its custodian(s). If any such document was but is no longer in your possession or control, state what disposition was made of it and when.

(d)    A communication: the type and/or mode of the communication; the date and time when it occurred; the place where it occurred; the complete substance of the communication; the identity of each person to whom such communication was made, by whom such communication was made, and who was present when such communication was made; and the identity of

all documents memorializing, referring, or relating in any way to the communication or its subject matter.

(e)   <u>An assertion action</u>: the date and time when it occurred; the place where it occurred; a detailed description of the action; the identity of each person taking and/or witnessing such action; and the identity of all documents memorializing, referring, or relating in any way to the subject matter of the action.

## <u>INSTRUCTIONS</u>

A.      If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not answering a Request or any part of a Request, set forth all facts upon which such claim of privilege is based and all other non-privileged information responsive to the Request.

B.      If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not identifying or disclosing the contents of documents in response to a Request, set forth all facts upon which such claim of privilege is based, and for each document as to which you claim any form of privilege, set forth (i) the date of the document, (ii) the date upon which the document was prepared, (iii) the title or caption of the document, (iv) the form of the document (e.g., letter, memorandum, chart, etc.), (v) the subject matter of the document, (vi) the author(s) and/or any and all other persons involved or participating in preparing or drafting the document, (vii) the recipient(s) of the document or any copy thereof, including all persons to whom the document has been provided or who have it within their possession, custody, or control, and (viii) all non-privileged information concerning the document which is responsive to the Request.

C.      If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not identifying requested oral communications in response to any Request, set forth all facts upon which such claim of privilege is based, and for each oral communication as to which you claim any form of privilege, set forth (i) the date upon which the oral communication took place, (ii) the subject matter of the oral communication, (iii) the person who made the oral communication, (iv) the identity of all persons to whom the oral communication was made or who have knowledge of the contents of the oral communication, and (v) all non-privileged information concerning the oral communication which is responsive to the Request.

D.      If any document responsive to any Request has been destroyed, set forth (i) the identity of all persons who participated in, or who were involved in, the decision to destroy such document, (ii) any document retention or destruction policy under which such document was destroyed and any and all persons who participated in, or who were involved in, the formulation of any such policy, (iii) the reason for the destruction of such document, and (iv) the date (or approximate date if precise date is not known) of the destruction of such document.

E.      Whenever a date, amount, or other computation or figure is requested by a Request, the exact date, amount, or other computation or figure is to be given unless it is not known. If the exact date, amount, or other computation or figure is not known, the approximate date, amount, or other computation or figure should be given or the best estimate thereof, and the answer should state that the date, amount, or other computation or figure provided is an estimate or approximation.

F.      Where facts are set forth in the answer to a Request or a portion thereof, and are supplied upon information and belief, rather than your direct personal knowledge, you should so state, and specifically identify each source of such information and belief. Should you not be able to answer any Request, or any portion thereof, by either actual knowledge or upon information or belief, you should so state. Whenever a full and complete answer to any Request or any subpart thereof is contained in a document identified as answering a specific numbered Request or subpart thereof, the document may be supplied in lieu of a written answer.

G.      Whenever a Request calls for information which is not available to you in the form requested but is available in another form or can be obtained at least in part from other sources in your possession or control, so state and either supply the information requested in the form in which it is available or supply the sources from which the information can be obtained.

H.      If a precise value, amount, or date cannot be supplied in response to a Request, an approximate value, amount, or date should be provided along with an explanation of how that approximation was determined.

I.      Unless otherwise stated, the relevant time period for these Requests shall be from January 1, 2018 through the present.

J.      These responses are continuing in nature, and when new knowledge or information comes to your attention, responses shall be supplemented forthwith.

## **INTERROGATORIES**

1.      Identify the person(s) responding to these Requests, including all persons who were

consulted or who assisted in preparing answers to these Requests, identifying which questions each

person answered or assisted in answering.

**RESPONSE:**


2.      Identify all Entities (including, without limitation, those Entities listed in the

attached **Exhibit A**) in which Schneider directly or indirectly has held any type of ownership

interest from January 1, 2018 through the present, and state (a) the state of formation of each

Entity; (b) the nature of the business of each Entity; (c) the nature of the ownership interest

Schneider and/or a Family Member and/or a Trust has or had in each such Entity; and (d) the

period of time Schneider and/or the Family Member and/or a Trust has held the ownership interest.

Identify all corporate organizational documents for each Entity identified herein, including,

without limitation, by-laws, membership agreements, shareholder agreements, partnership

agreements, and any other similar document, as well as any document which addresses the rights

and restrictions concerning the transferability of such ownership interests. Furthermore, identify

(i) all federal and state tax returns of each of these Entities from January 1, 2018 through the

present; (ii) all financial statements (income statements and balance sheets) of each Entity from

January 1, 2018 through the present; and (iii) if the Entity owns real estate, the most recent

appraisal of that real estate.

**RESPONSE:**


3.      Identify all persons, management teams, controllers, chief financial officers,

bookkeepers, accounting firms, and accountants who have prepared personal financial statements,

tax returns, and financial statements for (a) Schneider, (b) a Trust, and/or any Entity in which Schneider directly or indirectly has held an ownership interest, from January 1, 2018 through the present. For the avoidance of doubt, this request encompasses all persons (i) directly employed by Schneider and/or a Trust and/or any Entity in which Schneider has held an ownership interest, or (ii) any third-party vendor used by Schneider and/or a Trust and/or any Entity in which Schneider has held an ownership interest.

**RESPONSE:**


4.      For all the Entities identified in response to Interrogatory 2 above, state (a) whether any part of Schneider's and/or a Trust and/or a Family Member's ownership interest in an Entity was transferred between January 1, 2018 and the present; (b) the date of the transfer; (c) the recipient of the transferred ownership interest; and (d) the terms of the transfer, including, without limitation, the consideration received by Schneider and/or a Trust and/or a Family Member. Identify all documents which refer to the transfer, including, without limitation, all written agreements containing the terms of the transfer.

**RESPONSE:**


5.      For all the Entities identified in response to Interrogatory 2 above, state whether Schneider and/or a Trust and/or a Family Member has received any income or other assets from that Entity from January 1, 2018 through the present, including, without limitation, any salary, distributions, dividends, or other payments of cash, personal property, or real estate, and state

(a) the date of the transfer or payment[1], (b) the amount paid or transferred, or as applicable the property transferred as well as the value of the property transferred, (c) the recipient of the payment or transfer, and (d) the terms of the transfer. Identify all documents which refer to the transfer or payment, including, without limitation, all written agreements containing the terms of the payment or transfer, as well as all documents used to report the transfer or payment to the IRS (i.e., W-2, or 1099 form, etc.).

**RESPONSE:**

6.  For all Entities identified in Interrogatory 2 above, state each Entity which obtained financing of any type from January 1, 2018 through the present, and state (a) the lender; (b) the date of the financing; (c) the terms of the financing, (d) whether Schneider was a personal guarantor; and (e) the uses of the refinancing proceeds, including whether Schneider and/or a Trust and/or a Family Member received any of the proceeds from the financing. Identify all documents which refer to the financings identified herein, including, without limitation, (i) all loan documents (including, without limitation, all UCC financing statements and security agreements) and closing statements; and (ii) documents containing any financial disclosures made by Schneider personally, including, without limitation, any personal financial statements.

**RESPONSE:**

7.  Identify all real estate owned in whole or in part personally by Schneider and/or a Trust from January 1, 2018 through the present, and state the address of the real estate; further,

---

[1] If there are numerous transfers of cash in any given year, the response may be set forth in the aggregate on an annual basis.

state (a) whether the real estate was sold or transferred during this period of time; (b) the date of the sale or transfer; (c) the buyer or recipient of the real property; (d) the terms of the sale or transfer, including the consideration received by Schneider and/or the Trust and/or any Family Member; and (e) whether the real estate is collateral for any loan, and if so, the name of the lender and the current amount of the loan. Identify all appraisals for this real estate and all documents which refer to the sale or transfer of this real estate, including, without limitation, all written agreements containing the terms of the sale or transfer.

**RESPONSE:**


8.      Identify all real estate owned in whole or in part by an Entity in which Schneider held an ownership interest from January 1, 2018 through the present, and state (a) whether the real estate was sold or transferred during this period of time; (b) the date of the sale or transfer; (c) the buyer or recipient of the real property; (d) the terms of the sale or transfer, including the consideration received by Schneider and/or a Trust and/or any Family Member; (e) whether the real estate is collateral for any loan, and if so, the name of the lender and the current amount of the loan; and (f) whether the real estate taxes are current, and if not current, the amount and age of the delinquency. Identify all appraisals for this real estate and all documents which refer to the sale or transfer of this real estate, including, without limitation, all written agreements containing the terms of the sale or transfer.

**RESPONSE:**


9.      Identify all deposit accounts maintained by Schneider and/or a Trust from January 1, 2018 through the present, and for each, state (a) the name of the depository institution; (b) the

dates the deposit accounts were open; (c) the account numbers; and (d) the current balances in each account. Identify the most recent statement for each account which is currently open.

**RESPONSE:**


10.    Identify all safe deposit accounts maintained by Schneider and/or a Trust from January 1, 2018 through the present, and for each, state (a) the name of the depository institution; (b) the dates the deposit box accounts were open; (c) the account numbers; and (d) the contents of the boxes.

**RESPONSE:**


11.    Identify all stocks, bonds, precious metals, and cryptocurrency owned by Schneider and/or a Trust, and state (a) an itemized accounting of all such assets; and (b) the physical location of those assets or the accounts where those assets are held.

**RESPONSE:**


12.    Identify all marketable securities accounts maintained by Schneider and/or a Trust from January 1, 2018 through the present, and for each, state (a) the name of the institution maintaining the securities account; (b) the dates the accounts were open; (c) the account numbers, (d) the current balances in each account; and (e) the amount of any loan secured by the marketable securities, as well as the name of the lender and the current balance of the loan. Identify the most recent statement for each marketable securities account which is currently open, and the most recent loan statement.

**RESPONSE:**

13.     Identify all personal property, including, without limitation, household goods, motor vehicles, boats, planes, motorcycles, artwork, and jewelry of Schneider and/or a Trust, not otherwise described in any other interrogatory response, which has a current marketable value or initial purchase price greater than $10,000, and state (a) the type, make, model, and/or serial or identification number for the personal property; and (b) the physical location of this property.

**RESPONSE:**

14.     Identify who prepared the 2018 PFS, 2019 PFS, and 2021 PFS, and further identify all documents relied upon by that person in the preparation of these personal financial statements.

**RESPONSE:**

15.     State all Entities in which Schneider and/or a Trust directly or indirectly has owned an ownership interest from January 1, 2018, through the present, where that Entity sold or transferred more than 10% of its assets in the aggregate or in a series of transactions from January 1, 2018, through the present, and, for all such sales or transfers, state (a) the buyer or transferee; (b) the terms of sale or transfer, including, without limitation, a description of the assets sold or transferred; (c) the consideration received from the sale or transfer; and (d) the direct and indirect recipients of the consideration from the sale or transfer. Identify all documents which refer to any sale or transfer identified above, including, without limitation, all written agreements containing the terms of the sale or transfer.

**RESPONSE:**

16.     Identify any Trust into which Schneider has transferred any of his assets from January 1, 2018 through the present, and state (a) the name of the Trust and whether it is a

revocable or irrevocable Trust; (b) the assets currently held by that Trust; (c) the source of funds/assets paid into the Trust; (d) the beneficiaries of the Trust; and (e) where the Trust maintains any deposit or marketable securities accounts. Identify all Trust (i) formation and governing documents; (ii) Trust tax returns from January 1, 2018 through the present; (iii) Trust financial statements from January 1, 2018 through the present; and (iv) a list of all assets currently in each Trust.

**RESPONSE:**


17.     Identify any assets which Schneider has sold or transferred to his Wife or another Family Member from January 1, 2018 through the present, and state (a) the date of the sale or transfer; (b) a detailed description of the assets sold or transferred; (c) the buyer or recipient; and (d) the terms of the sale or transfer, including the consideration received by Schneider and/or the Trust and/or any Family Member. Identify all documents which refer or relate to the sales or transfers.

**RESPONSE:**


18.     Identify any agreements (written or otherwise) between (a) Schneider and an Entity; (b) a Trust and Schneider; (c) a Trust and an Entity; and (d) Schneider and a Family Member, including, without limitation, any agreement to transfer assets to Schneider in the future, and state the terms of the agreement. Identify all documents which refer or relate to such an agreement.

**RESPONSE:**

19.    State the legal name of each entity referenced in Schedule B of the 2018 PFS, 2019 PFS, and 2021 PFS.

**RESPONSE:**


20.    State the basis for the change in Schneider's personal net worth between the 2019 PFS and 2021, PFS and identify (a) all transactions which caused the change in Schneider's net worth; and (b) all documents which refer or relate to these transactions.

**RESPONSE:**


21.    State the basis for the change in Schneider's personal net worth between the 2021 PFS and the present and identify (a) all transactions which caused a change in Schneider's net worth; and (b) all documents which refer or relate to these transactions.

**RESPONSE:**


22.    State the name and address of Schneider's Wife and any of Schneider's siblings and children.

**RESPONSE:**


23.    Identify if any of the Entities identified in Interrogatory 2 are currently marketing for sale, or are under agreement to sell or transfer, any assets, and state (a) the expected date of the sale or transfer; (b) the assets to be sold or transferred; (c) the expected gross proceeds from the sale or transfer; (d) whether there are any liens which need to be paid out of the sale or transfer proceeds; and (e) the amount of the liens to be paid and the lienors out of the sale or transfer.

Identify all documents which refer or relate to these sales or transfers, including, without limitation, all listing and sale agreements.

**RESPONSE:**


24.     Identify all notes/obligations receivable and notes/obligations payable of Schneider and/or a Trust, and state (a) the amount of the debt; (b) the parties to the notes/obligations receivable or payable; and (c) the terms of repayment. Identify all documents which refer or relate to the notes/obligations receivable and payable.

**RESPONSE:**


25.     Identify all notes/obligations receivable and notes/obligations payable between a Family Member and an Entity identified in the responses to Interrogatory 2, and state (a) the amount of the debt; (b) the parties to the notes/obligations receivable or payable; and (c) the terms of repayment. Identify all documents which refer or relate to the notes/obligations receivable and payable.

**RESPONSE:**


26.     Identify all life insurance policies which insure Schneider's life, and the names and addresses of all beneficiaries, and whether the policies have been pledged as collateral to any other creditor. Identify all documents which refer or relate to these life insurance policies and pledges.

**RESPONSE:**


27.     State whether Schneider intends to pay off the Judgment, and if so, the source of funds he intends to use.

**RESPONSE:**

28.    For each of the Entities identified in response to Interrogatory 2 and any Trust, identify (i) the accounting system and payroll provider used by each Entity/Trust; (ii) the corporate credit card account information for each Entity or Trust, including the issuer of the card and the current balance owed; and (iii) the manager or trustee of each Entity or Trust.

**RESPONSE:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Produce copies of all documents identified in, concerning, relating to, or supporting your responses to interrogatories.

2.      Produce copies of all personal financial statements Debtor has provided to any lender from January 1, 2018 through the present.

3.      Produce organizational charts for the ownership of the Entities identified in response to Interrogatory 2.

4.      Produce copies of all state, local, and federal tax returns from 2018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.

5.      Produce all existing financial statements from 2018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.

6.      Produce all bank statements and cancelled checks from 2018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.

7.      Produce all credit card statements from 2018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.

8.      Produce all investment account statements from 2018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.

9.      Produce all governance documents (operating agreements, articles of incorporation, bylaws, buy-sell agreements, and the like), and amendments, modifications, or restatements thereof, for all of the Entities.

10.     Produce all governing documents and agreements, including any amendments, modifications, and restatements, for the Trusts.

11.     Produce all documents and correspondence related to any direct or indirect transfer to the Trusts within the last ten (10) years.

12.     Produce all electronic versions of the documents created, modified, or used in connection with any transfers by the Debtor to the Trusts within the past ten (10) years, including the unaltered metadata included in the documents.

13.     Produce all existing appraisals, valuations, or business valuations from 2018 to the present for a) any property of the Debtor; b) the Entities; and c) the Trusts.

Dated: November 6, 2025                    Respectfully submitted,

                                           **BUCHANAN INGERSOLL & ROONEY PC**

                                           /s/ *Christopher P. Schueller*
                                           Christopher P. Schueller (OH Id. No. 0086170)
                                           Timothy P. Palmer (OH Id. No. 86166)
                                           Kelly M. Neal (OH Id. No. 100889)
                                           Union Trust Building
                                           501 Grant Street, Suite 200
                                           Pittsburgh, PA 15219
                                           Telephone: 412-562-8800
                                           Fax: 412-562-1041
                                           E-mail: christopher.schueller@bipc.com
                                           Timothy.palmer@bipc.com
                                           Kelly.neal@bipc.com

                                           *Attorneys for The Huntington National Bank*

## EXHIBIT A

1.     5150 EAST GALBRAITH ROAD LLC
2.     54 REALTY, LTD.
3.     72 VENTURES, LTD.
4.     747 LLC
5.     82 LAFAYETTE ROAD DEVELOPMENT, LLC
6.     82 LAFAYETTE ROAD LLC
7.     9617 KENWOOD ROAD DEVELOPMENT, LLC
8.     9617 KENWOOD ROAD DEVELOPMENT, LLC
9.     ALL REALTY OF BLUE ASH, LLC
10.     BEECHWOOD TERRACE CARE CENTER, INC.
11.     THE BLUE DEVELOPMENT COMPANY, LLC
12.     BOSTON ANIMAL HOSPITAL LLC
13.     BOSTON PET REHABILITATION CENTER LLC
14.     BOSTON RD, LLC
15.     BOSTON RED DOG PET RESORT & SPA, LLC
16.     BOSTON SELF STORAGE LLC
17.     BOSTON SELF STORAGE, LLC
18.     THE CAMBRIDGE HEALTH CARE CENTER LTD
19.     CIRCLE ADS AND STORAGE JDE HOLDINGS LLC
20.     CIRCLE CARE OPERATING IV, LLC
21.     CIRCLE CARE OPERATING V, LLC
22.     CIRCLE CARE OPERATING VI, LLC
23.     CIRCLE DEVELOPMENT LLC
24.     CIRCLE DEVELOPMENT OF CINCINNATI, LLC
25.     CIRCLE HEALTH CARE OPERATING 1, LLC
26.     CIRCLE HEALTH CARE OPERATING CO. I, LLC
27.     CIRCLE HEALTH CARE OPERATING CO. II, LLC
28.     CIRCLE HEALTH CARE OPERATING CO. III, LLC
29.     CIRCLE HEALTH CARE OPERATING CO. IV, LLC
30.     CIRCLE HEALTH CARE OPERATING CO. V, LLC
31.     CIRCLE HEALTH CARE OPERATING CO. VI, LLC
32.     CIRCLE HEALTH CARE OPERATING II, LLC
33.     CIRCLE HEALTH CARE OPERATING III, LLC
34.     CIRCLE HEALTH CARE REAL ESTATE ACQUISITION CO., LLC
35.     CIRCLE HOME THEATER
36.     CIRCLE STORAGE OPERATING COMPANY I, LLC
37.     CIRCLE STORAGE OPERATING COMPANY II, LLC
38.     CORPORATE PARK INVESTORS, LTD
39.     DANA VENTURES, LTD.
40.     DELHI PLAZA ASSOCIATES, LTD
41.     EAST GALBRAITH HEALTH CARE CENTER
42.     EGHC HOLDINGS, INC.
43.     EGHC HOLDINGS, LTD
44.     EUCLID HEALTH CARE

45. EXECUTIVE PARK INVESTORS, LTD
46. F2, LTD.
47. FRAMINGHAM RD, LLC
48. FRAMINGHAM RED DOG
49. FRAMINGHAM RED DOG PET RESORT & SPA, LLC
50. THE GATHERINGS OF BLUE ASH, LLC
51. GLEN STERLING HEALTH CENTER LTD
52. GRASSHOPPER INVESTMENTS II, LLC
53. GRASSHOPPER INVESTMENTS LLC
54. HAMILTON II
55. HARMONY HEALTH CARE, INC
56. HORIZON HEALTH CARE, INC.
57. HORIZON HEALTH MANAGEMENT II, LLC
58. HORIZON HEALTH MANAGEMENT LLC
59. HRM REALTY HOLDINGS, LTD.
60. HYDE PARK CIRCLE, LLC
61. IF2, LTD.
62. JDE HOLDINGS LLC
63. JDE HOLDINGS LLC
64. KELLER ROAD REALTY CO, LLC
65. KENWOOD TERRACE HEALTH CARE CENTER, INC
66. LEBANON RD, LLC
67. LOVELAND RD, LLC
68. LOVELAND RED DOG PET RESORT AND SPA, LLC
69. MADISON WAREHOUSE, LLC
70. MASON RD, LLC
71. MASON RED DOG PET RESORT & SPA, LLC
72. MONARCH RD LLC
73. MONTCLAIR INVESTORS, LTD
74. NEW ENGLAND SELF STORAGE, LLC
75. NORTH SHORE RD, LLC
76. NORTH SHORE RED DOG PET RESORT & SPA, LLC
77. NORTH STATION ANIMAL HOSPITAL, LLC
78. NORTHEAST SELF STORAGE, LLC
79. NORTHERN KENTUCKY ASSISTED LIVING, LLC
80. NORTHERN KENTUCKY RETIREMENT COMMUNITY, LLC
81. NORTHWEST SELF STORAGE LLC
82. PEABODY RD, LLC
83. PLEASANT RIDGE REALTY, LLC
84. PRINCIPAL STERLING MANOR LTD
85. R&T DEVELOPMENT, INC
86. RD REALTY I, LLC
87. THE RED AT MADISON CIRCLE LLC
88. RED CORNER, LLC
89. RED CUP ESPRESSO, LLC
90. RED DOG MANAGEMENT COMPANY, LLC

91.    RED DOG OPERATIONS HOLDING COMPANY LLC
92.    RED DOG PET RESORT & SPA
93.    THE RED KITCHEN, LLC
94.    RH REAL ESTATEMENT INVESTMENTS LLC
95.    SCHNEIDER-GRASSHOPPER INC
96.    SEMINOLE AVENUE REALTY, LLC
97.    SHAYA B, LLC
98.    SKIPTON KENNEL AND PET CENTER
99.    SOFT POUCH EQUIPMENT LLC
100.   SOFT POUCH EQUIPMENT, LTD.
101.   SOUTHBROOK HEALTH CARE CENTER, INC.
102.   SPRINGDALE RED DOG PET RESORT & SPA, LLC
103.   STERLING GLEN HEALTH CENTER LTD
104.   STERLING MANOR LTD
105.   STIEGLER ROAD REALTY, LLC
106.   TECHWOODS CIRCLE RD, LLC
107.   TO LIFE LTD
108.   WEST CHESTER PET RESORT & SPA, LLC

EXHIBIT 2
Page 1 of 23

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO WESTERN DIVISION (
CINCINNATI) DIVISION**

| | |
|---|---|
| IN RE: | Case No. 23-10337 |
| RAYMOND JOSEPH SCHNEIDER | Chapter 11 |
| Debtor and Debtor in Possession | Judge Beth A. Buchanan |

| | |
|---|---|
| In re: | ) Chapter 11 |
| RAYMOND JOSEPH SCHNEIDER, | ) Case No. 25-12607 |
| Debtor. | ) Judge Beth A. Buchanan |
| | ) |
| | ) |

---

**FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEBTOR RAYMOND SCHNEIDER**

---

The Huntington National Bank, as Administrative Agent ("**Huntington**"), hereby requests that the Debtor Raymond Joseph Schneider respond to the following Interrogatories and Requests for Production of Documents (collectively, the "**Requests**") in writing, no later than thirty (30) days from the date of service of these Discovery Requests or on such date directed by the Court.

**DEFINITIONS**

1.      "**2018 PFS**" means the personal financial statement dated as of January 31, 2018, which Schneider provided to Huntington.

1.2.      "**2019 PFS**" means the personal financial statement dated as of ~~January 31~~June 1, 2019, which Schneider provided to Huntington.

2.3.    "**2021 PFS**" means the personal financial statement dated as of September 1, 2021, which Schneider provided Huntington.

3.4.    "**Judgment**" means the judgment entered in favor of Huntington in the above-captioned case in the Court of Common Pleas of Hamilton County, OhioCase A2002093.

4.5.    "**Communication**" means any disclosure, transfer, or exchange of information, by any means, and whether orally or by document, or whether face-to-face, by telephone, mail, electronic mail, text message, or personal delivery.

5.6.    "**Schneider**" means Raymond Schneider, and his agents, representatives, attorneys, and all other persons acting or purporting to act on his behalf.

6.7.    "**Family Member**" means any person related to Schneider by marriage or blood and any trust (revocable or otherwise) in which a person related to Schneider by marriage or blood is a beneficiary.

7.8.    "**Document**" shall include, without limitation, all written, typewritten, handwritten, recorded, or printed matter of any kind, including, without limitation, the originals and all non-identical copies thereof, whether different from the originals by reason of any notation made upon such copies or otherwise, including, again without limitation, minutes and/or other records of meetings, agendas, bills, contracts, leases, assignments, agreements, contracts, summaries of negotiations, account books, orders, invoices, statements, bills, checks, accounting records, vouchers, summaries, diaries, forecasts, studies, drawings, graphs, charts, reports and/or summaries of investigations or reports, strategic or business plans or summaries, brochures, pamphlets, publications, circulars, advertisements, trade letters, press releases, statements of policy, correspondence, letters, telegrams, interoffice and intra-office communications, offers, notations of any sort of conversations, appointment books or calendars, teletypes, telefax, thermafax, confirmations, computer files, printouts of computer files, computer data (including, but not limited to, information or programs stored in a computer, whether or not ever printed out or displayed); all drafts, alterations, modifications, changes, and amendments of any of the foregoing; all graphic or manual records or representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotape, records, motion pictures, and electronic, mechanical, or electric records or

representations of any kind, including, without limitation, tapes, cassettes, disks, magnetic cards, and recordings; emails, text messages, and all other similar material.

8.9.    "**All documents**" shall mean every document, whether an original or copy, as defined herein, known to you, and every such document of which you have knowledge, or which you can locate or discover by reasonable diligent efforts.

9.10.   "**Each**" shall mean each and every.

10.11.  "**Or**" shall mean and/or.

11.12.  "**Entity**" shall mean any and all entities, as well as natural persons, and, without limitation, shall be defined to include natural persons, corporations, limited liability companies, limited liability partnerships, sole proprietorships, partnerships, joint owners, associations, companies, governmental bodies or agencies, and joint ventures.

12.13.  "**State the Basis**" with respect to any given allegation or proposition means to identify: (a) each person who has or purports to have knowledge of the facts underlying the allegation or proposition; (b) each document used or relied upon to formulate, or which supports or substantiates, the allegation or proposition; and (c) the rationale and each fact supporting the allegation or propositions.

13.14.  "**Refer**," "**relate**," "**reflect**," "**regard**," "**refer to**," "**relate to**," "**relating to**," and "**concerning**" (or forms thereof) shall mean directly or indirectly (in whole or in part) referring to, relating to, connected with, commenting on, relevant to, impinging or impacting upon, affecting, responding to, showing, describing, representing, supporting, contradicting, stating, mentioning, evaluating, recording, noting, analyzing, reflecting, or constituting.

14.15.  "**You**" or "**your**" refer to defendant Schneider, and his agents, representatives, attorneys, and all other persons acting or purporting to act on his behalf.

1.       "**Trust**" means any trust into which Schneider has transferred any of his assets or in which Schneider is Trustee.

16.      "**Trust**" or "**Trusts**" means: (a) the Raymond Schneider 2019 Gift Trust; (b) the Patricia B. Schneider 2020 Gift Trust; (c) all other trusts in which Raymond Schneider is, or has been in the past ten (10) years, a beneficiary, contingent beneficiary, settlor, or trustee; and (d) all other trusts in which Patricia B. Schneider is, or has been in the past ten (10) years, a beneficiary, contingent beneficiary, settlor, or trustee.

~~15.~~17.  "**Wife**" means Schneider's current wife, if any.

~~16.~~18.  "**Identify**" and "**identification**" shall mean, when used in reference to:

(a)      A natural person: his or her full name; home address; business address; home and business telephone ~~number~~numbers; present or last known position, job description, and the identity of his or her business affiliation; his or her position, job description, and the identity of his or her business affiliation at the time and in the context in which he or she is identified; and the relationship, business or otherwise, between such person and yourself.

(b)      A company, corporation, association, partnership, or legal entity other than a natural person: its full name; a description of the type of organization or entity; the address and telephone number of its principal place of business; the jurisdiction of incorporation or organization; the date of its incorporation or organization; and the identity of each natural person acting on behalf of the entity at the time and in the context in which the entity is identified.

(c)      A document: its description (i.e., letter, memorandum, report, etc.); its title; its date; the number of pages thereof; its subject matter; the identity of its author(s), creator(s), originator(s), signer(s), and any person(s) who participated in its preparation; the identity of its addressee(s) or recipient(s); the identity of each person to whom copies were sent and each person by whom copies were received; its present location; and the identity of its custodian(s). If any such document was but is no longer in your possession or control, state what disposition was made of it and when.

(d)      A communication: the type and/or mode of the communication; the date and time when it occurred; the place where it occurred; the complete substance of the communication; the identity of each person to whom such communication was made, by whom such communication was made, and who was present when such communication was made; and the identity of all documents memorializing, referring, or relating in any way to the communication or its subject matter.

(e)      An assertion action: the date and time when it occurred; the place where it occurred; a detailed description of the action; the identity of each person taking and/or

witnessing such action; and the identity of all documents memorializing, referring, or relating in any way to the subject matter of the action.


## **INSTRUCTIONS**

A.      If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not answering a Request or any part of a Request, set forth all facts upon which such claim of privilege is based and all other non-privileged information responsive to the Request.

B.      If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not identifying or disclosing the contents of documents in response to a Request, set forth all facts upon which such claim of privilege is based, and for each document as to which you claim any form of privilege, set forth (i) the date of the document, (ii) the date upon which the document was prepared, (iii) the title or caption of the document, (iv) the form of the document (e.g., letter, memorandum, chart, etc.), (v) the subject matter of the document, (vi) the author(s) and/or any and all other persons involved or participating in preparing or drafting the document, (vii) the recipient(s) of the document or any copy thereof, including all persons to whom the document has been provided or who have it within their possession, custody, or control, and (viii) all non-privileged information concerning the document which is responsive to the Request.

C.      If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not identifying requested oral communications in response to any Request, set forth all facts upon which such claim of privilege is based, and for each oral communication as to which you claim any form of privilege, set forth (i) the date upon which the oral communication took place, (ii) the subject matter of the oral communication, (iii) the person who made the oral communication, (iv) the identity of all persons to whom the oral communication was made or who have knowledge of the contents of the oral communication, and (v) all non-privileged information concerning the oral communication which is responsive to the Request.

D.      If any document responsive to any Request has been destroyed, set forth (i) the identity of all persons who participated in, or who were involved in, the decision to destroy such document, (ii) any document retention or destruction policy under which such document was destroyed and any and all persons who participated in, or who were involved in, the formulation of any such policy, (iii) the reason for the destruction of such document, and (iv) the date (or approximate date if precise date is not known) of the destruction of such document.

E.      Whenever a date, amount, or other computation or figure is requested by a Request, the exact date, amount, or other computation or figure is to be given, unless it is not known. If the exact date, amount, or other computation or figure is not known, the approximate date, amount, or other computation or figure should be given or the best estimate thereof, and the answer should state that the date, amount, or other computation or figure provided is an estimate or approximation.

F.      Where facts are set forth in the answer to a Request or a portion thereof, and are supplied upon information and belief, rather than your direct personal knowledge, you should so state, and specifically identify each source of such information and belief. Should you not be able to answer any Request, or any portion thereof, by either actual knowledge or upon information or belief, you should so state. Whenever a full and complete answer to any Request or any subpart thereof is contained in a document identified as answering a specific numbered Request or subpart thereof, the document may be supplied in lieu of a written answer.

G.      Whenever a Request calls for information which is not available to you in the form requested, but is available in another form or can be obtained at least in part from other sources in your possession or control, so state and either supply the information requested in the form in which it is available, or supply the sources from which the information can be obtained.

H.      If a precise value, amount, or date cannot be supplied in response to a Request, an approximate value, amount, or date should be provided along with an explanation of how that approximation was determined.

I.      Unless otherwise stated, the relevant time period for these Requests shall be from January 1, 20192018 through the present.

J.      These responses are continuing in nature, and when new knowledge or information comes to your attention, responses shall be supplemented forthwith.

## INTERROGATORIES

1.      Identify the person(s) responding to these Requests, including all persons who were consulted or who assisted in preparing answers to these Requests, identifying which questions each person answered or assisted in answering.

**RESPONSE:**

2.      Identify all Entities (including, without limitation, those Entities listed in the attached **Exhibit A**) in which Schneider directly or indirectly has held any type of an ownership interest from January 1, 20192018 through the present, and state (a) the state of formation of each Entity; (b) the nature of the business of each Entity; (c) the nature of the ownership interest Schneider and/or a Family Member and/or a Trust has or had in each such Entity; and (d) the period of time Schneider and/or the Family Member and/or a Trust has held the ownership interest. Identify all corporate organizational documents for each Entity identified herein, including, without limitation, by-laws, membership agreements, shareholder agreements, partnership agreements, and any other similar document, as well as any document which addresses the rights and restrictions concerning the transferability of such ownership interests. Furthermore, identify (i) all federal and state tax returns of each of these Entities from January 1, 20192018 through the present; (ii) all financial statements (income statements and balance sheets) of each Entity from January 1, 20192018 through the present; and (iii) if the Entity owns real estate, the most recent appraisal of that real estate.

**RESPONSE:**

3.      Identify all persons, management teams, controllers, chief financial officers, bookkeepers, accounting firms, and accountants who have prepared personal financial statements, tax returns, and financial statements for (a) Schneider, (b) a Trust, and/or any Entity in which Schneider directly or indirectly has held an ownership interest, from January 1, 20192018 through the present. For the avoidance of doubt, this request encompasses all persons (i) directly employed by Schneider and/or a Trust and/or any Entity in which Schneider has held an ownership interest, or (ii) any third-party vendor used by Schneider and/or a Trust and/or any Entity in which Schneider has held an ownership interest.

**RESPONSE:**

1.      For all the Entities identified in response to Interrogatory 2 above, state (a) whether any part of Schneider's and/or a Trust and/or a Family Members'Member's ownership interest in an Entity was transferred between January 1, 20192018 and the present,; (b) the date of the transfer,;

4.      : (c) the recipient of the transferred ownership interest,; and (d) the terms of the transfer, including, without limitation, the consideration received by Schneider and/or a Trust and/or a Family Member. Identify all documents which refer to the transfer, including, without limitation, all written agreements containing the terms of the transfer.

**RESPONSE:**

5.       For all the Entities identified in response to Interrogatory 2 above, state whether Schneider and/or a Trust and/or a Family Member has received any income or other assets from that Entity from January 1, ~~2019~~2018 through the present, including, without limitation, any salary, distributions, dividends, or other payments of cash, personal property, or real estate, and state (a) the date of the transfer or ~~payment[1]~~payment[1], (b) the amount paid or transferred, or as applicable the property transferred as well as the value of the property transferred, (c) the recipient of the payment or transfer, and (d) the terms of the transfer. Identify all documents which refer to the transfer or payment, including, without limitation, all written agreements containing the terms of the payment or transfer, as well as all documents used to report the transfer or payment to the IRS (i.e., W-2, or 1099 form, etc.).

**RESPONSE:**

~~2.~~       For all Entities identified in Interrogatory 2 above, state each Entity which obtained financing of any type from January 1, ~~2019~~2018 through the present, and state (a) the lender;

6.       (b) the date of the financing; (c) the terms of the financing, (d) whether Schneider was a personal guarantor; and (e) the uses of the refinancing proceeds, including whether Schneider and/or a Trust and/or a Family Member received any of the proceeds from the financing. Identify all documents which refer to the financings identified herein, including, without limitation, (i) all loan documents (including, without limitation, all UCC financing statements and security agreements) and closing statements; and (ii) documents containing any financial disclosures made by Schneider personally, including, without limitation, any personal financial statements.

---

[1] If there are numerous transfers of cash in any given year, the response may be set forth in the aggregate on an annual basis.

¹ If there are numerous transfers of cash in any given year, the response may be set forth in the

**RESPONSE:**

7.      Identify all real estate owned in whole or in part personally by Schneider and/or a Trust from January 1, ~~2019~~2018 through the present, and state the address of the real estate ~~and;~~ further, state (a) whether the real estate was sold or transferred during this period of time,; (b) the date of the sale or transfer,; (c) the buyer or recipient of the real property,; (d) the terms of the sale or transfer, including the consideration received by Schneider and/or the Trust and/or any Family Member,; and (e) whether the real estate is collateral for any loan, and if so, the name of the lender and the current amount of the loan. Identify all appraisals for this real estate and all documents which refer to the sale or transfer of this real estate, including, without limitation, all written agreements containing the terms of the sale or transfer.

**RESPONSE:**

~~3.~~      Identify all real estate owned in whole or in part by an Entity in which Schneider held an ownership interest from January 1, ~~2019~~2018 through the present, and state (a) whether the real estate was sold or transferred during this period of time,; (b) the date of the sale or transfer, ; (c) the buyer or recipient of the real property,; (d) the terms of the sale or transfer, including the consideration received by Schneider and/or a Trust and/or any Family Member,; (e) whether the real estate is collateral for any loan, and if so, the name of the lender and the current amount of the loan,; and (f) whether the real estate taxes are current, and if not current, the amount and age of

aggregate on an annual basis.

8.      the delinquency. Identify all appraisals for this real estate and all documents which refer to the sale or transfer of this real estate, including, without limitation, all written agreements containing the terms of the sale or transfer.

**RESPONSE:**

9.      Identify all deposit accounts maintained by Schneider and/or a Trust from January 1, 2019 2018 through the present, and for each, state (a) the name of the depository institution; (b) the dates the deposit accounts were open; (c) the account numbers; and (d) the current balances in each account. Identify the most recent statement for each account which is currently open. RESPONSE:

RESPONSE:

4.      Identify all safe deposit accounts maintained by Schneider and/or a Trust from January 1, 2019 2018 through the present, and for each, state (a) the name of the depository institution,

10.      ; (b) the dates the deposit box accounts were open; (c) the account numbers; and (d) the contents of the boxes.

**RESPONSE:**

11.     Identify all stocks, bonds, precious metals, and ~~crypto currency~~cryptocurrency owned by Schneider and/or a Trust, and state (a) an itemized accounting of all such assets~~; and~~ (b) the physical location of those assets or the accounts where those assets are held.

**RESPONSE:**

12.     Identify all marketable securities accounts maintained by Schneider and/or a Trust from January 1, ~~2019~~2018 through the present, and for each, state (a) the name of the institution maintaining the securities account, (b) the dates the accounts were open, (c) the account numbers, (d) the current balances in each account~~; and~~ (e) the amount of any loan secured by the marketable securities, as well as the name of the lender and the current balance of the loan. Identify the most recent statement for each marketable securities account which is currently open, and the most recent loan statement.

**RESPONSE:**

13.     Identify all personal property, including, without limitation, household goods, motor vehicles, boats, planes, motorcycles, artwork, and jewelry of Schneider and/or a Trust, not otherwise described in any other interrogatory response, which has a current marketable value or initial purchase price greater than $10,000, and state (a) the type, make, model, and/or serial or identification number for the personal property~~;~~ and (b) the physical location of this property.

**RESPONSE:**

13.14.  Identify who prepared the 20192018 PFS, 2019 PFS, and 2021 PFS, and further identify all documents relied upon by that person in the preparation of these personal financial statements.

**RESPONSE:**

14.15.  State all Entities in which Schneider and/or a Trust directly or indirectly has owned an ownership interest from January 1, 20192018, through the present, where that Entity sold or transferred more than 10% of its assets in the aggregate or in a series of transactions from January 1, 20192018, through the present, and, for all such sales or transfers, state (a) the buyer or transferee; (b) the terms of sale or transfer, including, without limitation, a description of the assets sold or transferred; (c) the consideration received from the sale or transfer; and (d) the direct and indirect recipients of the consideration from the sale or transfer. Identify all documents which refer to any sale or transfer identified above, including, without limitation, all written agreements containing the terms of the sale or transfer.

**RESPONSE:**

5.    Identify any Trust into which Schneider has transferred any of his assets from January 1, 20192018 through the present, and state (a) the name of the Trust and whether it is a revocable or irrevocable Trust; (b) the assets currently held by that Trust; (c) the source of funds/assets paid into the Trust; (d) the beneficiaries of the Trust; and (e) where the Trust maintains any deposit or marketable securities accounts. Identify all Trust (i) formation and

~~15.~~16.   governing documents~~:~~; (ii)~~–~~ Trust tax returns from January 1, ~~2019~~2018 through the present~~:~~; (iii)~~–~~ Trust financial statements from January 1, ~~2019~~2018 through the present~~:~~; and (iv)~~–~~ a list of all assets currently in each Trust.

**RESPONSE:**

~~16.~~17.   Identify any assets which Schneider has sold or transferred to his Wife or another Family Member from January 1, ~~2019~~2018 through the present, and state (a)~~–~~ the date of the sale or transfer~~:~~; (b)~~–~~ a detailed description of the assets sold or transferred~~:~~; (c)~~–~~ the buyer or recipient~~:~~; and (d)~~–~~ the terms of the sale or transfer, including the consideration received by Schneider and/or the Trust and/or any Family Member. Identify all documents which refer or relate to the sales or transfers.

**RESPONSE:**

~~17.~~18.   Identify any agreements (written or otherwise) between (a)~~–~~ Schneider and an Entity~~:~~; (b)~~–~~ a Trust and Schneider~~:~~; (c)~~–~~ a Trust and an Entity~~:~~; and (d)~~–~~ Schneider and a Family Member, including, without limitation, any agreement to transfer assets to Schneider in the future, and state the terms of the agreement. Identify all documents which refer or relate to such an agreement.

**RESPONSE:**

18. 19.  State the legal name of each entity referenced in Schedule B of the 2019 2018 PFS, 2019

PFS, and 2021 PFS.

**RESPONSE:**

19. 20.  State the basis for the change in Schneider's personal net worth between the 2019 PFS and

2021, PFS and identify (a) all transactions which caused the change in Schneider's net worth,; and (ii)

b) all documents which refer or relate to these transactions.

**RESPONSE:**

20. 21.  State the basis for the change in Schneider's personal net worth between the 2021 PFS and

the present and identify (a) all transactions which caused a change in Schneider's net worth,; and (ii)

b) all documents which refer or relate to these transactions.

**RESPONSE:**

21. 22.  State the name and address of Schneider's Wife and any of Schneider's siblings and

children.

**RESPONSE:**

22.23.  Identify if any of the Entities identified in Interrogatory 2 are currently marketing for sale, or are under agreement to sell or transfer, any assets, and state (a) the expected date of the sale or transfer; (b) the assets to be sold or transferred; (c) the expected gross proceeds from the sale or transfer, and; (d) whether there are any liens which need to be paid out of the sale or transfer proceeds; and (e) the amount of the liens to be paid and the lienors out of the sale or transfer. Identify all documents which refer or relate to these sales or transfers, including, without limitation, all listing and sale agreements.

**RESPONSE:**

23.24.  Identify all notes/obligations receivable and notes/obligations payable of Schneider and/or a Trust, and state (a) the amount of the debt; (b) the parties to the notes/obligations receivable or payable; and (c) the terms of repayment. Identify all documents which refer or relate to the notes/obligations receivable and payable.

**RESPONSE:**

24.25.  Identify all notes/obligations receivable and notes/obligations payable between a Family Member and an Entity identified in the responses to Interrogatory 2, and state (a) the amount of the debt; (b) the parties to the notes/obligations receivable or payable; and (c) the terms of repayment. Identify all documents which refer or relate to the notes/obligations receivable and payable.

**RESPONSE:**

25.26.  Identify all life insurance policies which insure Schneider's life, and the names and addresses of all beneficiaries, and whether the policies have been pledged as collateral to any other creditor. Identify all documents which refer or relate to these life insurance policies and pledges.

**RESPONSE:**

26.27.  State whether Schneider intends to pay off the Judgment, and if so, the source of funds he intends to use.

**RESPONSE:**

27.28.  For each of the Entities identified in response to Interrogatory 2 and any Trust, identify (i) the (i) accounting system and payroll provider used by each Entity/Trust,; (ii) the corporate credit card account information for each Entity or Trust, including the issuer of the card and the current balance owed,; and (iii) the manager or trustee of each Entity or Trust.

**RESPONSE:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Produce copies of all documents identified in the, concerning, relating to, or supporting your responses to interrogatories.


2.      Produce copies of all personal financial statements Debtor has provided to any lender from January 1, 20192018 through the present.

3.      Produce organizational charts for the ownership of the Entities identified in response to Interrogatory 2.

4.      Produce copies of all state, local, and federal tax returns from 20192018 to the present for: a) the Debtor; b) the Entities; and c) the Trusts.

5.      Produce all existing financial statements from 20192018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.

6.      Produce all bank statements and cancelled checks from 20192018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.

7.      Produce all credit card statements from 20192018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.


8.      Produce all investment account statements from 20192018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.


9.      Produce all governance documents (operating agreements, articles of incorporation, bylaws, buy-sell agreements, and the like), and amendments, modifications, or restatements thereof, for all of the Entities.

thereof, for all of the Entities.

10.     Produce all governing documents and agreements, including any amendments, modifications, and restatements, for the Trusts.

11.     Produce all documents and correspondence related to any direct or indirect transfer to the Trusts within the last ten (10) years.

12.     Produce all electronic versions of the documents created, modified, or used in connection with any transfers by the Debtor to the Trusts within the past ten (10) years, including the unaltered metadatametadata included in the documents.

13.     Produce all existing appraisals, valuations, or business valuations from 20192018 to the present for a) any property of the Debtor; b) the Entities; and c) the Trusts.

Dated: November 6, 2025                   Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**


/s/ *Christopher P. Schueller*
Christopher P. Schueller (OH Id. No. 0086170)
Timothy P. Palmer (OH Id. No. 86166)
Kelly M. Neal (OH Id. No. 100889)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: 412-562-8800
Fax: 412-562-1041
E-mail: christopher.schueller@bipc.com
Timothy.palmer@bipc.com
Kelly.neal@bipc.com

*Attorneys for The Huntington National Bank*

## EXHIBIT A

1.     5150 EAST GALBRAITH ROAD LLC
2.     54 REALTY, LTD.
3.     72 VENTURES, LTD.
4.     747 LLC
5.     82 LAFAYETTE ROAD DEVELOPMENT, LLC
6.     82 LAFAYETTE ROAD LLC
7.     9617 KENWOOD ROAD DEVELOPMENT, LLC
8.     9617 KENWOOD ROAD DEVELOPMENT, LLC
9.     ALL REALTY OF BLUE ASH, LLC
10.     BEECHWOOD TERRACE CARE CENTER, INC.
11.     THE BLUE DEVELOPMENT COMPANY, LLC
12.     BOSTON ANIMAL HOSPITAL LLC
13.     BOSTON PET REHABILITATION CENTER LLC
14.     BOSTON RD, LLC
15.     BOSTON RED DOG PET RESORT & SPA, LLC
16.     BOSTON SELF STORAGE LLC
17.     BOSTON SELF STORAGE, LLC
18.     THE CAMBRIDGE HEALTH CARE CENTER LTD
19.     CIRCLE ADS AND STORAGE JDE HOLDINGS LLC
20.     CIRCLE CARE OPERATING IV, LLC
21.     CIRCLE CARE OPERATING V, LLC
22.     CIRCLE CARE OPERATING VI, LLC
23.     CIRCLE DEVELOPMENT LLC
24.     CIRCLE DEVELOPMENT OF CINCINNATI, LLC
25.     CIRCLE HEALTH CARE OPERATING 1, LLC
26.     CIRCLE HEALTH CARE OPERATING CO. I, LLC
27.     CIRCLE HEALTH CARE OPERATING CO. II, LLC
28.     CIRCLE HEALTH CARE OPERATING CO. III, LLC
29.     CIRCLE HEALTH CARE OPERATING CO. IV, LLC
30.     CIRCLE HEALTH CARE OPERATING CO. V, LLC
31.     CIRCLE HEALTH CARE OPERATING CO. VI, LLC
32.     CIRCLE HEALTH CARE OPERATING II, LLC
33.     CIRCLE HEALTH CARE OPERATING III, LLC
34.     CIRCLE HEALTH CARE REAL ESTATE ACQUISITION CO., LLC
35.     CIRCLE HOME THEATER
36.     CIRCLE STORAGE OPERATING COMPANY I, LLC
37.     CIRCLE STORAGE OPERATING COMPANY II, LLC
38.     CORPORATE PARK INVESTORS, LTD
39.     DANA VENTURES, LTD.
40.     DELHI PLAZA ASSOCIATES, LTD
41.     EAST GALBRAITH HEALTH CARE CENTER
42.     EGHC HOLDINGS, INC.
43.     EGHC HOLDINGS, LTD
44.     EUCLID HEALTH CARE

45.     EXECUTIVE PARK INVESTORS, LTD
46.     F2, LTD.
47.     FRAMINGHAM RD, LLC
48.     FRAMINGHAM RED DOG
49.     FRAMINGHAM RED DOG PET RESORT & SPA, LLC
50.     THE GATHERINGS OF BLUE ASH, LLC
51.     GLEN STERLING HEALTH CENTER LTD
52.     GRASSHOPPER INVESTMENTS II, LLC
53.     GRASSHOPPER INVESTMENTS LLC
54.     HAMILTON II
55.     HARMONY HEALTH CARE, INC
56.     HORIZON HEALTH CARE, INC.
57.     HORIZON HEALTH MANAGEMENT II, LLC
58.     HORIZON HEALTH MANAGEMENT LLC
59.     HRM REALTY HOLDINGS, LTD.
60.     HYDE PARK CIRCLE, LLC
61.     IF2, LTD.
62.     JDE HOLDINGS LLC
63.     JDE HOLDINGS LLC
64.     KELLER ROAD REALTY CO, LLC
65.     KENWOOD TERRACE HEALTH CARE CENTER, INC
66.     LEBANON RD, LLC
67.     LOVELAND RD, LLC
68.     LOVELAND RED DOG PET RESORT AND SPA, LLC
69.     MADISON WAREHOUSE, LLC
70.     MASON RD, LLC
71.     MASON RED DOG PET RESORT & SPA, LLC
72.     MONARCH RD LLC
73.     MONTCLAIR INVESTORS, LTD
74.     NEW ENGLAND SELF STORAGE, LLC
75.     NORTH SHORE RD, LLC
76.     NORTH SHORE RED DOG PET RESORT & SPA, LLC
77.     NORTH STATION ANIMAL HOSPITAL, LLC
78.     NORTHEAST SELF STORAGE, LLC
79.     NORTHERN KENTUCKY ASSISTED LIVING, LLC
80.     NORTHERN KENTUCKY RETIREMENT COMMUNITY, LLC
81.     NORTHWEST SELF STORAGE LLC
82.     PEABODY RD, LLC
83.     PLEASANT RIDGE REALTY, LLC
84.     PRINCIPAL STERLING MANOR LTD
85.     R&T DEVELOPMENT, INC
86.     RD REALTY I, LLC
87.     THE RED AT MADISON CIRCLE LLC
88.     RED CORNER, LLC
89.     RED CUP ESPRESSO, LLC
90.     RED DOG MANAGEMENT COMPANY, LLC

91.    RED DOG OPERATIONS HOLDING COMPANY LLC
92.    RED DOG PET RESORT & SPA
93.    THE RED KITCHEN, LLC
94.    RH REAL ESTATEMENT INVESTMENTS LLC
95.    SCHNEIDER-GRASSHOPPER INC
96.    SEMINOLE AVENUE REALTY, LLC
97.    SHAYA B, LLC
98.    SKIPTON KENNEL AND PET CENTER
99.    SOFT POUCH EQUIPMENT LLC
100.   SOFT POUCH EQUIPMENT, LTD.
101.   SOUTHBROOK HEALTH CARE CENTER, INC.
102.   SPRINGDALE RED DOG PET RESORT & SPA, LLC
103.   STERLING GLEN HEALTH CENTER LTD
104.   STERLING MANOR LTD
105.   STIEGLER ROAD REALTY, LLC
106.   TECHWOODS CIRCLE RD, LLC
107.   TO LIFE LTD
108.   WEST CHESTER PET RESORT & SPA, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing *Objection to Motion of The Huntington National Bank for Authorization to Conduct Rule 2004 Discovery with Respect to the Debtor and Third-Parties* was served (i) electronically on the date of filing through the court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) by ordinary U.S. Mail on December 1, 2025, addressed to the following:

None.

/s/  James A. Coutinho
James A. Coutinho     (0082430)