**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

| | |
|---|---|
| In re:<br>RAYMOND JOSEPH SCHNEIDER,<br>         Debtor. | )<br>) Chapter 11<br>) Case No. 25-12607<br>) Judge Beth A. Buchanan<br>)<br>) |

**REPLY IN SUPPORT OF MOTION BY HUNTINGTON NATIONAL BANK
FOR AUTHORIZATION TO CONDUCT RULE 2004 DISCOVERY
WITH RESPECT TO THE DEBTOR AND THIRD PARTIES**

  The Huntington National Bank ("**Huntington**"), respectfully submits this Reply in support of its Motion for Authorization to Conduct Rule 2004 Discovery with Respect to the Debtor and Third Parties ("**2004 Motion**") [ECF 41].

**INTRODUCTION**

  1. As feared by Huntington, the debtor Raymond Schneider (the "**Debtor**") is taking an aggressive litigation posture to obstruct discovery into the Debtor's financial affairs. Debtor has taken the extraordinary step of objecting to 2004 discovery. Debtor makes four arguments against granting 2004 relief. The arguments are: (i) Huntington is just seeking to harass the Debtor, (ii) the timeframe and scope of Huntington's discovery demands are allegedly unreasonable, (iii) the cost to Debtor to comply with Huntington's discovery demands is allegedly excessive, and (iv) no discovery against third parties should be permitted absent 2004 motions served on each of those entities. For the reasons discussed below, none of these objections have merit.

**THE 2004 DISCOVERY HAS A VALID FACT-FINDING PURPOSE**

  2. Debtor argues that Huntington seeks 2004 discovery to harass the Debtor. This is quite a bold statement from a Debtor who has transferred tens of millions of dollars in assets into family trusts after the Debtor's loans with Huntington went into default. The fraudulent

1

conveyances even continued after the first bankruptcy filing was dismissed. At Debtor's 341 meeting, the Debtor disclosed that after his first bankruptcy case was dismissed, he sold two of his largest assets and transferred the proceeds to family trusts instead of paying creditors.

3. Clearly, the 2004 discovery is a critical exercise for Huntington to: (i) obtain specific information about the known fraudulent conveyances, (ii) discover specific information on other unknown fraudulent conveyances, (iii) create an evidentiary record for the appointment of a Chapter 11 trustee or examiner, (iii) evaluate the terms of any reorganization arrangement proposed by Debtor, (iv) evaluate value of any assets and liabilities of the Debtor (which is of course relevant to evaluate any reorganization effort), and (v) evaluate the income of the Debtor (which also is of course relevant to evaluate any reorganization effort). In fact, Huntington hired a financial advisor who helped carefully craft the discovery demands to obtain information necessary for that financial advisor to complete for Huntington a forensic investigation, valuation analysis, income analysis and feasibility analysis. The information sought by Huntington is vital for Huntington to protect its interests in this bankruptcy case.

4. Huntington only seeks a fair opportunity to protect its interests. Huntington holds a large judgment against the Debtor. The Debtor has a lot of assets Huntington should be able to collect against, especially after the fraudulent conveyances are avoided. There is no evidence here that Huntington is out to harass anyone. Huntington merely seeks to collect a debt it is undeniably owed.

5. Debtor's accusations of harassment are also curious given that, with the exception of one additional year to the discovery timeframe and the addition of a few newly discovered legal entities owned by Schneider, **Huntington served the exact same discovery demands in Debtor's first bankruptcy case and the Debtor agreed to the form of the demands**. [Case No. 23-10337,

ECF 140]. In that prior bankruptcy case, (i) the Debtor never objected to Huntington's discovery demands and agreed to comply with the demands, (ii) the Court ordered the Debtor to comply with Huntington's discovery demands, and (iii) Debtor's prior counsel represented that he had compiled responses to the demands and was on the verge of providing those responses when the appeals court vacated Huntington's judgment; only then did Debtor refuse to provide responses. The demands were not harassing then and certainly are not harassing now.

## THE SCOPE OF THE DISCOVERY DEMANDS IS REASONABLE

6. Debtor argues that Huntington's discovery demands cover too many entities and too long of a time period. Debtor is wrong on both fronts.

7. The Debtor owns and controls a vast business empire primarily through closely held limited liability companies. Upon information and belief, over 100 different business entities have been used by or associated with the Debtor over time. Huntington seeks discovery on these entities currently or formerly owned by Debtor. There is nothing improper in this. A Debtor with a complicated business empire like this should expect that discovery into that empire will be more involved. To the extent the Debtor claims that certain entities are inactive, or their records are beyond his control, the Debtor can simply say so in his responses.

8. The time period for the discovery demands is also reasonable. According to the Debtor, his "estate planning" process began in 2018. [Case 23-10337, Transcript of March 17, 2023 Hearing, p. 9: 18-25]. Also in 2018, the Debtor's businesses that he jointly owned with Harold Sosna were in poor standing under their loans with Fifth Third, and Sosna and Schneider sought refinancing from Huntington. That loan, which forms the basis of Huntington's judgment, closed in November 2018. Discovery dating back to 2018 is not arbitrary in any way.

9. Further, pursuant to Bankruptcy Rule Section 548(e), the statute of limitation period with respect to transfers into certain trusts is 10 years. Given this, Huntington could have asked for discovery going back to 2015. But instead, Huntington took a more reasonable and surgical approach and, for now, only seeks financial information going back to 2018. There is nothing unreasonable about the time frame requested by Huntington.

### THE COST OF THE DISCOVERY IS REASONABLE

10. Debtor complains that the cost to comply with 2004 discovery could be as high as $80,000. First, this does not make sense. Debtor had over 9 months in the first bankruptcy case to compile most of the requested information and claimed to have compiled that information. Therefore, the cost to compile that information already seems to have been incurred.

11. Second, even if the cost is $80,000 that is not an undue burden for a Debtor who owns three personal residences in Ohio, Kennebunkport, Maine and Vail, Colorado and claims to own over $66 million in assts including over $33 million in marketable securities.

12. Third, Debtor has an extremely complicated business empire. There is a cost to filing a Chapter 11 reorganization which touches upon this complicated business empire. The Debtor needs to bear that cost.

13. It is worth noting that it will cost Huntington far more than $80,000 in expert fees to complete a financial analysis pertaining to all the fraud committed by the Debtor. The cost and burden of this bankruptcy falls heavily on Huntington as well.

### THE PROPOSED PROCESS FOR THIRD PARTY DISCOVERY IS REASONABLE

14. Despite the fact that no third party in this case objected to the 2004 Motion, Debtor objects that third parties will not receive due process if Huntington proceeds with discovery against

them.  However, the process proposed for third-party discovery here **is the exact same process which Debtor agreed to in his first bankruptcy case and the Court approved in the first bankruptcy case**. [First ECF 140] There is no reason to change this process now.

15.     In this process, Huntington (i) notifies the third-party and the Debtor of the 2004 discovery requests and files that discovery with the Court, (ii) the Debtor and third-party then have 21 days to object to 2004 discovery, (iii) if there is an objection, Huntington can try to resolve the objection outside the courtroom, and if this fails, will need to file a 2004 motion with the Court to move forward with discovery against the objecting party, (iv) if there is no objection, Huntington may serve the discovery and the third-party will respond in due course.

16.     There is nothing in the Bankruptcy Code or Rules which prohibit this process.  It is a practical process which can avoid clogging the Court's docket with unnecessary 2004 motions and move the discovery process along more quickly. And both Debtor and the third-party receive due process.  Huntington respectfully requests that the Court approve this process again for a second time.

17.     In any event, most of the third parties are Debtor controlled entities or Debtor's family trusts and family members.  One would hope the Debtor in a spirit of efficiency and transparency would assist with moving through third party discovery with those persons and entities as quickly as possible.

## **CONCLUSION**

18.     Based on the foregoing, Huntington respectfully requests that the 2004 Motion be granted, and that the Court award other and further appropriate relief.

| | |
|---|---|
| Dated: December 15, 2025 | Respectfully submitted,<br><br>**BUCHANAN INGERSOLL & ROONEY PC**<br><br>/s/ *Christopher P. Schueller*<br>Christopher P. Schueller (OH Id. No. 0086170)<br>Timothy P. Palmer (OH Id. No. 86166)<br>Kelly M. Neal (OH Id. No. 100889)<br>Union Trust Building<br>501 Grant Street, Suite 200<br>Pittsburgh, PA 15219<br>Telephone: 412-562-8800<br>Fax: 412-562-1041<br>E-mail: christopher.schueller@bipc.com<br>E-mail: timothy.palmer@bipc.com<br>E-Mail: kelly.neal@bipc.com<br><br>*Attorneys for The Huntington National Bank* |