IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 25-12607 |
| RAYMOND JOSEPH SCHNEIDER, | ) | Judge Beth A. Buchanan |
| | ) | |
| Debtor. | ) | |
| | ) | |

**OBJECTION OF THE HUNTINGTON NATIONAL BANK TO DEBTOR'S MOTION FOR AUTHORIZATION TO PAY PREPETITION CLAIMS OF EXPERT WITNESSES AS CRITICAL VENDORS**

The Huntington National Bank ("**Huntington**") files this Objection to the Debtor's Motion for Authorization to Pay Prepetition Claims of Expert Witnesses as Critical Vendors ("**Critical Vendor Motion**") [DE 72] filed by the Debtor Raymond Schneider ("**Debtor**").

I. **INTRODUCTION**

1. This motion is not a typical critical vendor motion. This is not the case of a manufacturer that needs widgets to continue operating, where the Court must determine whether "widget vendor A" is critical as opposed to "widget vendor B". This is the case of a wealthy businessowner who owns apartments, storage facilities, and pet resorts, who has been desperately trying to avoid paying a guaranty debt owed to Huntington resulting from the crimes of the Debtor's business partner and the resulting collapse of their jointly-owned businesses.

2. Those efforts have included, among other things, one prior bankruptcy filing as well as a retaliatory lawsuit against Huntington and twelve (12) of its employees–including administrative personnel who had no involvement with the loans during the period when the businesses collapsed–asserting that they somehow conspired to facilitate the crimes and collapse of the business (the "**Lender Liability Suit**"). Not only are these claims unsupported by the facts and the law, but there is a pending threshold summary judgment motion on grounds of *res judicata*

which may result in a full dismissal of the case in the upcoming weeks. The Lender Liability Suit is, at best speculative and at worst a drain on the Debtor's time and resources.

3. The Debtor has come to this Court asking for permission to deviate from black letter bankruptcy law so he can pay pre-petition litigation expenses on a critical vendor theory ahead of other unsecured creditors in this case. The Court should not grant the motion for one simple reason: the Lender Liability Suit is not necessary to the Debtor's reorganization and there is no evidence in the motion to suggest otherwise. The Debtor repeatedly acknowledges that a plan will not be dependent on the outcome of the litigation. (Motion, ¶ 40, 51).

4. Even if the Debtor could demonstrate that the litigation is essential to his reorganization (he has not and cannot do so), the Debtor does not meet the standard to justify critical vendor treatment for the proposed vendors. *First*, there is no showing that these experts are essential. At most, it appears that their replacement may be inconvenient, if it is even necessary at all. *Second*, there is no valid business reason to pay the experts now. The experts have already produced their reports (one report was finalized and produced even after the Critical Vendor Motion was filed), and no additional work is imminent based on the posture of the litigation. *Finally*, the Debtor has not demonstrated a lack of harm to creditors or that there is any benefit to creditors from the continued diversion of the Debtor's time and resources.

5. For these reasons and as explained more fully below, the Critical Vendor Motion should be denied and pre-petition creditors be paid in the ordinary course in this case.

II. **FACTUAL BACKGROUND**

6. On October 17, 2025 ("**Petition Date**"), Debtor filed his second voluntary petition under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et. seq.* (the "**Bankruptcy**

2

Code"). The Debtor's first case was filed on March 1, 2023 as Case No. 23-10337 (the "**First Bankruptcy Case**").

### **The Judgment**

7. On June 5, 2020, Huntington commenced a collection action against the Debtor in the Court of Common Pleas of Hamilton County Ohio (the "**Collection Case**") based on a personal guaranty the Debtor signed in connection with certain commercial loans made by Huntington to businesses owned by the Debtor and his then-partner, Harold Sosna (the "**Businesses**").

8. On November 18, 2022, summary judgment was granted in favor of Huntington and a judgment was entered against the Debtor in the amount of $75,599,410 plus accruing interest from July 28, 2020 ("**Judgment**").

9. As set forth in Huntington's Proof of Claim, over $36 million remains due and owing on the Judgment at this time. (Claim 11).

### **The Lender Liability Suit**

10. Following entry of the Judgment and Huntington's execution efforts on the Debtor's assets, including his $30 million brokerage account, the Debtor filed the First Bankruptcy Case and the Lender Liability Suit.

11. On October 3, 2023, Huntington filed a limited threshold motion for summary judgment in the Lender Liability Suit asserting that, among other things, the Lender Liability Suit is barred by *res judicata* because the claims raised in the Lender Liability Suit were or should have been litigated in the Collection Action.[1]

---

[1] Huntington disputes the Debtor's characterization of discovery in the Collection Action. (*See* Critical Vendor Motion, ¶ 18). For example, discovery in the Collection Action was not cut short. In fact, it was lengthened at the Debtor's request under Rule 56(F) of the Ohio Rules of Civil Procedure. Also, the Debtor's allegation that the production was incomplete or documents were concealed by Huntington is simply baseless and wrong.

3

12. After the motion was filed but prior to hearing on Huntington's initial summary judgment motion, the First Appellate District of Ohio reversed the Judgment. As a result, Huntington withdrew the *res judicata* argument.

13. Now, the Judgment has been reinstated by the Supreme Court of Ohio, and Huntington has renewed its motion for summary judgment on the limited issue of *res judicata* (the "**Res Judicata Motion**"). A copy of the Res Judicata Motion and the briefs related thereto (excluding all exhibits and attachments) are attached hereto as **Exhibit A** (the Res Judicata Motion), **Exhibit B** (Debtor's response) and **Exhibit C** (Huntington's reply).

14. In defense to the Res Judicata Motion, the Debtor has asserted that he did not have the facts supporting that case until after he filed his answer in the Collection Case. However, the Debtor has acknowledged that he did have the facts supporting those claims **approximately two years** before the Judgment was entered. (See Exhibit B, Exhibit C). For this reason alone, it is clear that the Debtor did or could have litigated his claims in the Collection Action but he chose not to do so.

15. The Res Judicata Motion is fully briefed and was argued before the Honorable Christian Jenkins on December 17, 2025. A ruling is anticipated in January 2026.

16. If granted, the Res Judicata Motion will result in a complete dismissal of the Lender Liability Suit.

**The Critical Vendor Motion**

17. By the Critical Vendor Motion, the Debtor has asked this Court to consider two of its experts in the Lender Liability Suit as "critical vendors" and authorize the payment of their pre-petition invoices ahead of other unsecured creditors.

18. At this time, the experts have each authorized the release of their respective expert reports. The Winstead report was disclosed in September 2025 and the Lindsey Report was disclosed on December 17, 2025, five (5) days after the Critical Vendor Motion was filed.

19. At this time there are no scheduled depositions or any other pending deadlines or dates for either expert. However, if the Res Judicata Motion is denied it is anticipated that expert depositions would take place in 2026 and if necessary, trial thereafter. Such deadlines would be determined by Judge Jenkins at a conference that is scheduled in early February.

### III. LEGAL STANDARD

20. As a general rule, in Chapter 11, pre-petition unsecured claims may not be paid until a plan is confirmed. *In re McMullen Oil Co.*, 251 B.R. 558, 573 (Bankr. C.D. Cal. 2000) ("Once a chapter 11 bankruptcy case is filed, prepetition unsecured creditors must await the confirmation of a chapter 11 plan before they can be repaid."); *In re GVM, Inc.*, 606 B.R. 220, 223 (Bankr. M.D. Pa. 2019). And even then, all such claims must be paid on a pro rata basis. 11 U.S.C.A. § 1123 (West).

21. An exception to this general rule may be available if the court determines that the pre-petition creditor is critical to the Debtor's reorganization. However, any such treatment must be used sparingly. *In re United Am., Inc.*, 327 B.R. 776, 781-82 (Bankr. E.D. Va. 2005) (recognizing that payment of "select pre-petition unsecured claims, flies in the face of all of the notions of equal treatment of creditors" and allowance of such "can be easily abused" and thus "must be narrowly construed and sparingly applied.").

22. The standards for approval of "critical vendor" treatment varies by circuit, by court and by judge. The Sixth Circuit Court of Appeals has not adopted any particular standard.

5

However, numerous courts in this circuit have followed the doctrine of necessity articulated in *In re United American, Inc.*, which requires a showing that:

> (1) the vendor must be necessary for the successful reorganization of the debtor;
>
> (2) the transaction must be in the sound business judgment of the debtor; and
>
> (3) the favorable treatment of the critical vendor must not prejudice other unsecured creditors.
>
> 327 B.R. at 782.

*In re Corner Home Care, Inc.*, 438 B.R. 122, 127 (Bankr. W.D. Ky. 2010); citing *In re United American, Inc.*, 327 B.R. at 782; see also *In re Visicon S'holders Tr.*, 478 B.R. 292 (Bankr. S.D. Ohio 2012) (holding that the payment of pre-petition creditors is governed by the equitable doctrine of necessity as articulated in *In re Corner*); *In re Goodrich Quality Theaters, Inc.*, 616 B.R. 514, 518 (Bankr. W.D. Mich. 2020), *supplemented*, No. DG 20-00759, 2020 WL 1180534 (Bankr. W.D. Mich. Mar. 9, 2020) (holding that to be a critical vendor, debtor must show "[f]irst, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim."); § 12:490. Necessity-of-payment doctrine; critical vendors—Factors considered, 2 Bankr. Service L. Ed. § 12:490.

23.     In *United American*, the Bankruptcy Court for the Eastern District of Virginia summarized the necessity element as follows:

> Necessity requires that there be no alternative. There must be no substitute vendor available even at a greater expense. Alternative means of obtaining the vendor's cooperation in supplying his goods

6

> must be exhausted. There must be no other "practical or legal alternative" which the debtor can deal with the claimant. This means that the vendor's goods or services are essential and that the critical vendor will, in fact, not provide them without exceptional treatment. Both require an evidentiary basis. The essential nature of the goods or services is a relatively straight-forward factual matter. The critical vendor's stated intent not to provide his goods or services in the future is not as straight-forward. It requires a determination of his intent with respect to a prospective future action or inaction. His mere statement that he will not supply the goods or services is rarely sufficient. Anyone can *say* that. The real question is whether he *means* it, that is, his *actual* intent.

*United American*, 327. B.R. at 782-783 (emphasis in original).

24."Necessity" means "more than a mere convenience, [but rather] requires a showing of substantial necessity." *In re Corner,* 438 B.R. at 127 (citing *In re NVR L.P.*, 147 B.R. 126, 128 (Bankr.E.D.Va.1992)). Some courts have characterized necessity in this context as "necessary to avert a serious threat to the Chapter 11 process." *Id.* (internal quotation marks omitted; citing *In re Eagle–Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991)). "For the goods of a vendor to be necessary, there can be no alternative. ***This means more than that it is more cost-effective to deal with the current vendor.***" *Id.* (internal citation omitted; emphasis added; citing *In re United American, Inc.*, 327 B.R. at 782); See also *In re United American, Inc.*, 327 B.R. at 784 N. 4 ("Necessity is not simply an increased cost or a lessened prospective profit or a heightened or lessened economic advantage. Necessity means critical and essential, that is, without this vendor, the debtor cannot reorganize.").

25.In *In re Corner Home Care, Inc.*, the court held that the Debtor failed to prove the necessity prong as, despite the vendor being able to supply goods to Debtor at a lower cost and on better terms than alternative suppliers, there were other potential vendors that could provide the goods. *Id.* at 127-28. As such, the court determined that the debtor failed to show that there was "no alternative source of the required [product]." *Id.* at 128.

7

26. Further, the third prong requires the debtor had to show that the proposed treatment of a vendor as a critical vendor does not "offend" the principal of equal creditor treatment and that the other creditors are not prejudiced. *In re Corner*, 438 B.R. at 129 (citing *In re United American*, 327 B.R. at 784). In *In re Corner Home Care, Inc.*, the court held that objections filed by creditors of the debtor indicated that the proposed treatment of a vendor as critical was prejudicial to other creditors. *In re Corner*, 438 B.R. at 129. Thus, absent additional evidence, the court held that the debtor failed to meet its burden to justify the deviation from ordinary bankruptcy payment principles. *Id.*

27. The Debtor urges this Court to adopt a "sound business purpose" analysis under Section 363 of the Bankruptcy Code citing In *re Murray Metallurgical Coal Holdings*, LLC, 613 B.R. 442, 451 (Bankr. S.D. Ohio 2020). Under that standard, to establish that a vendor is critical, the Debtor must prove that "(1) the favored vendors will cease to do business with the debtor post-petition unless their prepetition debt is paid; and (2) the debtor will gain enough from the continued transaction with the favored vendors to provide some residual benefit to the remaining disfavored creditors." Motion, p. 14-15; *citing In re GVM*, 606 B.R. 220, 227 (Bankr. M.D. Penn. 2019) *citing In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004). However, the threshold question still exists as to whether the goods and services to be provided are essential to the Debtor's ongoing operations. *In re Murray,* 613 B.R. at 446 (debtor sought to pay providers of regulatory compliance services, equipment, materials, and repair and maintenance supporting mining operations); *In re GVM*, 606 B.R. at 221 (court denied critical vendor request when debtor sought to pay providers of specialized products and services for debtor's agricultural business due to lack of evidence of necessity, despite Debtor's allegation that loss of vendors would have an "immediately devastating effect on the Debtor's ability to operate"); *In re Kmart Corp.*, 359 F.3d at 873-874 (on appeal,

Seventh Circuit Court of Appeals affirmed reversal of critical vendor treatment based on, among other things, "scant record" that did not support conclusion that vendors were essential and that there were no other alternatives than to deviate from general rule that pre-petition creditors cannot be paid disparately and prior to a plan).

28. In summary, under either standard, the Debtor must show that there is (1) a necessity for the good or service to the debtor's reorganization, (2) that the decision to pay the vendor is in the sound business judgment of the debtor, and (3) that creditors are either not prejudiced *or* will receive a "residual benefit" from the payment.

### IV. **ARGUMENT**

29. The Critical Vendor Motion should be denied. Whether the Court applies the *United American* standard or a sound business purpose standard, the Debtor fails the very threshold analysis of whether the Lender Liability Suit is in fact essential to the debtor's operations and reorganization. The Debtor recognizes in his motion that the plan will **not** be dependent on the outcome of the litigation. (Motion, ¶ 40, 51). The Debtor only says that the Lender Liability Suit could "enhance" his reorganization and "has the potential to be the Debtor's largest asset and perhaps wipe out the debt owed to Huntington.Therefore [it is] essential that the efforts in the Lawsuit be advanced and not undercut." (Motion, ¶38). But these statements are nothing more than couched legal argument by counsel with no support for the Debtor's plans to reorganize or ability to pay debts with or without the claims against Huntington and its employees. For this reason alone, the Critical Vendor Motion should be denied.

30. Even assuming that the Lender Liability Suit has value to the estate (it does not), the Debtor has failed to justify critical vendor treatment for the individual experts. The Debtor alleges that the experts are important and that it would be challenging and inconvenient to find

9

alternative experts and bring them up to speed, but there is no indication that these experts are essential or irreplaceable. (Motion, ¶ 34). The Debtor does not even know whether the existing experts would cease future work without payment of their pre-petition claims. (*Id.*, ¶ 41). To the contrary, both experts have already authorized the release of their reports without payment. Finally, the Debtor also does not know that it could (or could not) find alternative candidates for the positions, if necessary. (*Id.*, ¶ 37). The Debtor acknowledges that it interviewed several candidates previously yet did not indicate that those prior candidates could not have taken the role. (*Id.*). Further, the Debtor has not established that there is any other practical or legal alternative to negotiate with the experts to retain these experts. The lack of evidence with respect to necessity is fatal to the Critical Vendor Motion. *See In re Corner Home Care, Inc.*, 438 B.R. at 127 (holding that to meet the doctrine of necessity "there can be no alternative" to the critical vendor and denying motion to pay pre-petition debt post-petition when debtor failed to show no alternative was available); *In re United Am., Inc.*, 327 B.R. at 782 ("Necessity requires that there be no alternative."); *In re GVM, Inc.*, 606 B.R. at 223 (Bankr. M.D. Pa. 2019) (declining to approve critical vendor treatment under §363 whether the record was devoid of any credible evidence that the vendors would not continue to do business with the debtors if not paid for pre-petition services); *In re Kmart Corp.*, 359 F.3d at 873-874.

31. **Second**, the Debtor failed to demonstrate a business purpose for paying the experts prior to plan confirmation. The Lender Liability Suit may be over as soon as this month and paying pre-petition litigation expenses on a post-petition basis will have no business purpose at all. It is certainly not "critical to the success of the debtor." See *In re United American, Inc.* 327 B.R. at 784. Further, the experts have already produced their reports and there are no imminent expert

10

discovery deadlines. If the case continues through the year, any scheduling challenges can be addressed with Judge Jenkins in the Lender Liability Suit.

32. ***Finally***, the Debtor has not demonstrated a lack of prejudice (or any benefit) to creditors of the estate if the experts are paid now rather than later. The Debtor has spent enormous resources over the last three years pursuing the Lender Liability Suit to the detriment of his creditors. Further, Debtor has made no showing other than blanket statements that granting the Critical Vendor Motion will benefit the estate. *In Re Corner Home Care, Inc.* 438 B.R. at 129 (Denying critical vendor motion when, in part, "[t]he Debtor made no showing that there would be no prejudice to other creditors."); *In re GVM, Inc.*, 606 B.R. at 223 (same).

33. Whether the Court views these elements individually or as a whole under a business judgment standard, the Critical Vendor Motion fails.

### V. Reservation of Rights

34. Huntington reserves all rights in connection with the Critical Vendor Motion including to raise additional arguments prior to or at any hearing on the Critical Vendor Motion.

**WHEREFORE**, Huntington respectfully requests that this Court deny the Critical Vendor Motion and award other and further appropriate relief.

Dated: January 2, 2026

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ *Kelly M. Neal*
Christopher P. Schueller (OH Id. No. 0086170)
Timothy P. Palmer (OH Id. No. 86166)
Kelly M. Neal (OH Id. No. 100889)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: 412-562-8800

        Fax:  412-562-1041
        E-mail: christopher.schueller@bipc.com
        E-mail: timothy.palmer@bipc.com
        E-Mail: kelly.neal@bipc.com

*Attorneys for The Huntington National Bank*