**"EXHIBIT A"**

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
**Judge Christian A. Jenkins**
**Case No. A2300849**

RAYMOND SCHNEIDER, as an individual,
and derivatively on behalf of EUCLID
HEALTH CARE, INC., KENWOOD
TERRACE HEALTH CARE CENTER, INC.,
SOUTHBROOK HEALTHCARE CENTER,
INC. AND BEECHWOOD TERRACE
CENTER, INC.,

                 Plaintiffs,

      vs.

THE HUNTINGTON NATIONAL BANK,
GARETT VETTER, AMY BECKER,
SUZANNE MEYERS, TROY JONES,
DAVE EMIG, MIKE VIREN, DAVID
WECHTER, JAMES R. GENTRY, ANGIE
QUATTRONE, MARIA STEINER,
MARINA KRIVENKO and CHRIS
HOFFMAN,

                 Defendants.


**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON RES JUDICATA**

       Defendants by and through undersigned counsel, and pursuant to Rule 56 Ohio Rules of

Civil Procedure, hereby submit Defendants' Motion for Summary Judgment based on Res Judicata

("**Motion**").   In support thereof, Defendants respectfully refer the Court to the attached

Memorandum of Law.

       **WHEREFORE**, Defendants respectfully request that the Court grant this Motion and

grant any further relief the Court deems just and proper.


Dated: September 22, 2025          Respectfully submitted,

                           **BUCHANAN INGERSOLL & ROONEY PC**

                           Attorneys for Defendants

By:   */s/ Christopher P. Schueller*
Christopher P. Schueller (Ohio ID 0086170)
Kelly M. Neal (Ohio ID 100889)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel: (412) 562-8800
christopher.schueller@bipc.com
kelly.neal@bipc.com

3

# COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO
**Judge Christian A. Jenkins**
**Case No. A2300849**

RAYMOND SCHNEIDER, as an individual,
and derivatively on behalf of EUCLID
HEALTH CARE, INC., KENWOOD
TERRACE HEALTH CARE CENTER, INC.,
SOUTHBROOK HEALTHCARE CENTER,
INC. AND BEECHWOOD TERRACE
CENTER, INC.,

        Plaintiffs,

    vs.

THE HUNTINGTON NATIONAL BANK,
GARETT VETTER, AMY BECKER,
SUZANNE MEYERS, TROY JONES,
DAVE EMIG, MIKE VIREN, DAVID
WECHTER, JAMES R. GENTRY, ANGIE
QUATTRONE, MARIA STEINER,
MARINA KRIVENKO and CHRIS
HOFFMAN,

        Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON RES JUDICATA

**BUCHANAN INGERSOLL & ROONEY PC**

By:   */s/ Christopher P. Schueller*
       Christopher P. Schueller (Ohio ID 0086170)
       Union Trust Building
       501 Grant Street, Suite 200
       Pittsburgh, PA 15219
       Tel: (412) 562-8800
       Fax: (412) 562-1041
       christopher.schueller@bipc.com

       *Attorneys for Defendants*

## I.    INTRODUCTION

This case is a lender liability action ("**Lender Liability Action**").  For over five years, Raymond Schneider ("**Schneider**") has been in litigation with Huntington National Bank ("**Huntington**") in two matters relating to Schneider's personal guaranty of a loan to Huntington and the check kiting of companies Schneider co-owned with convicted fraudster Harold Sosna ("**Sosna**").   In a prior and separate proceeding (the "**Collection Action**"), Huntington won a money judgment against Schneider ("**Judgment**") based on the guaranty.  In response, Schneider commenced the Lender Liability Action based on the same transactions which had been fully litigated in the Collection Action.  Res judicata would have been a bar to all claims in the Lender Liability Action but for the fact that Schneider appealed the Judgment.  Because of the appeal, the Judgment was not a final order which could be given preclusive effect.

This all changed on August 20, 2025 when the Ohio Supreme Court affirmed the Judgment. The Judgment is now a final order on the merits.  Given this, the time is ripe for Huntington to seek the dismissal of all claims in the Lender Liability Action based on res judicata.   Each element of res judicata is satisfied here:

- The Judgment is a final non-appealable order on the merits in the prior Collection Action between the parties.

- The Lender Liability Action is between the same parties and their privies from the prior Collection Action.

- The claims in the Lender Liability Action were, or could have been, raised in the prior Collection Action.  Both actions are based on the same nucleus of facts pertaining to the same loan and check kiting.

- The Lender Liability Action and the prior Collection Action cover the same subjects.   Both actions involve the same (i) loan, (ii) check kiting, and (iii) alleged failure of Huntington to timely prevent, detect or advise Schneider of the check kiting.

1

For these and other reasons discussed in more detail below, Defendants respectfully request that the Court grant their motion for summary judgment and dismiss all claims.

## II.    BACKGROUND[1]

### A.    Collection Action.

On June 5, 2020, Huntington commenced the Collection Action  against Schneider in the Ohio Court of Common Pleas in Hamilton County ("**Court**") based on Schneider's personal guaranty ("**Guaranty**") of loans (collectively, the **"Loan"**) to companies owned by Schneider ("**Companies**").   [Ex. A] In response, Schneider argued that Huntington should have no recovery on the Guaranty because Huntington failed to prevent, detect or advise Schneider of check kiting *by the Companies which he owned*.  [Ex. B; Ex. C at pp. 20-22; 38-40; Ex. D at. ¶ 64; Ex. E at ¶¶ 22-29; Ex.  F at ¶26 ] Schneider further argued that had Huntington notified Schneider in a timely manner about the check kiting, Schneider could have saved the Companies and repaid the Loan. [Ex. B; Ex. C at pp. 20-22; 38-40; Ex. D at. ¶ 64; Ex. E at ¶¶ 22-29; Ex.  F at ¶26 ] In this, Schneider argued Huntington failed to mitigate its damages and should not be permitted to recover on the Guaranty.  [Ex. B; Ex. C at pp. 20-22; 38-40; Ex. D at. ¶ 64; Ex. E at ¶¶ 22-29; Ex.  F at ¶26 ]

On November 18, 2022, the Court rejected Schneider's mitigation of damages defense and granted summary judgment in favor of Huntington ("**Summary Judgment Decision**").  [Ex. G] On December 13, 2022, the Court entered a money judgment against Schneider in the amount of $75,599,410 (the "**Judgment**").  [Ex.H]  On January 9, 2023, Schneider appealed the Judgment to the First District Court of Appeals ("**First District**").   On December 29, 2023, the First District reversed the Summary Judgment Decision and vacated the Judgment.

---

[1] The facts are set forth in the accompanying affidavit of David A. Peura sworn to on September 22, 2025 ("**Peura Aff.**") and all references to Exhibits ("**Ex.**") are the exhibits attached to the Peura Aff..

On February 9, 2024, Huntington filed with the Ohio Supreme Court a motion for leave to appeal. On April 30, 2024, the Ohio Supreme court granted the motion. On August 20, 2024, the Ohio Supreme Court reversed the First District's decision and reinstated the Judgment. [Ex. J] The Judgment is now a final non-appealable judgment.

**B.      Lender Liability Action.**

After Huntington was awarded its Judgment in 2022, Schneider and the Companies (collectively, the "**Plaintiffs**") commenced the separate Lender Liability Action against Huntington and twelve of its employees ("**Employees**" together with Huntington, the "**Defendants**") by simply recasting the defenses of Schneider from the Collection Action into affirmative claims. [Ex. K at ¶55] The claims of the companies are shareholder derivative claims brought by Schneider in his capacity as a shareholder. [Ex. K]

Plaintiffs seek damages against the Defendants because, as the allegations go, the Defendants negligently or intentionally failed to prevent, detect or advise Schneider of the check kiting scheme *at his own Companies*. [Ex. K at ¶55] Plaintiffs allege that Huntington's failures prevented Schneider from intervening to save his Companies. [Ex. K at ¶55] This allegedly resulted in a total loss of the Companies as well as substantial personal liability exposure to Schneider under his Guaranty. [Ex. K at ¶ 55 ]

The defenses in the Guaranty Action and affirmative claims in the Lender Liability Action are essentially the same. In fact, they are so aligned that Schneider used the same the same affidavit from Sosna ("**Sosna Affidavit**") in the complaint in the Lender Liability Action and his opposition to Huntington's motion for summary judgment in the Collection Action,. [Ex. J at ¶22; Ex. F] The Sosna Affidavit details Sosna's version of the check kiting facts. [Ex. J at ¶22; Ex. F] These facts were central in both the Collection Action and the Lender Liability Cases.

### III.    LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT INVOLVING RES JUDICATA DEFENSE

Under Civ.R. 56(C), summary judgment is appropriate when, looking at the evidence as a whole (i) there is no genuine issue as to any material fact, (ii) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, and therefore, (iii) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 686-687, 1995 Ohio 286, 653 N.E.2d 1196, 1202 (1995).

Where res judicata is a dispositive issue, the Court should entertain a summary judgment motion; additional discovery will be fruitless. *Teays Valley Loc. Sch. Dist. Bd. of Educ. v. Struckman*, 2023-Ohio-244, 206 N.E.3d 796, ¶¶ 36-38 (App. 4th Dist. 2023) ("when res judicata is a dispositive issue, then giving a party additional time to conduct discovery will not provide any benefit").

### IV.    ARGUMENT

### A.    ALL CLAIMS SHOULD BE DISMISSED BASED ON RES JUDICATA.

A final judgment on the merits is a complete bar to a subsequent claim between the same parties, or those in privity with them, which arises out of the transaction or occurrence that was the subject matter of the previous action. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381-383, 653 N.E.2d 226, 229-230 (1995). "The doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." *Grava*, 73 Ohio St.3d at 382, 653 N.E.2d at 229 (*quoting Nat'l Amusements, Inc. v. City of Springdale*, 53 Ohio St.3d 60, 558 N.E.2d 1178, 1180 (1990)). The doctrine "promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received

4

a full and fair opportunity to be heard." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846

N.E.2d 824, ¶ 18 (2006).    As explained by the First District:

> A plaintiff must present every ground for relief in the first action or be forever
> barred from asserting it.  This rule encourages reliance on judicial decisions, bars
> vexatious litigation, and frees the court to resolve other disputes. The doctrine
> applies to extinguish a claim by the plaintiff against the defendant even though the
> plaintiff is prepared in the second action (1) to present evidence or grounds or
> theories of the case not presented in the first action, or (2) to seek remedies or forms
> of relief not demanded in the first action.

*Stand Energy Corp. v. Ruyan*, 2005-Ohio-4846, ¶ 12 (App. 1st Dist. 2005).

For these reasons, Ohio has adopted an expansive view of claim preclusion. *Holzemer v.*

*Urbanski*, 86 Ohio St.3d 129, 133, 712 N.E.2d 713, 716 (1999).  *Res judicata* applies when there

is (i) a prior final, valid decision on the merits by a court of competent jurisdiction, (ii) a second

action involving the same parties or those in privity with the parties, (iii) a second action which

raises claims which were, or could have been, litigated in the first action, and (iv) the second action

arises out of the transaction or occurrence which was the subject matter of the previous action.

*Dula v. City of Cincinnati,* No. C-200297, 2021 BL 186462, p.4 (App. 1st Dist. May 19, 2021);

*Wright v. Heller*, 2018-Ohio-149, 102 N.E.3d 1285,  ¶ 21 (App. 1st Dist. 2018).

As discussed below, Defendants have satisfied all four parts of the res judicata test.

**a.    <u>First Part</u>: The Judgment from the Collection Action is a final, valid decision on the merits.**

There can be no dispute that the Judgment is a final decision on the merits.  [Ex. H, J]

Under the doctrine of res judicata, "[a] valid, final judgment rendered upon the merits bars all

subsequent actions based upon any claim arising out of the transaction or occurrence that was the

subject matter of the previous action." *Stand*, 2005-Ohio-4846 at  ¶ 11.

**b.    <u>Second Part</u>: The Lender Liability Action is between the same parties and their privies from the Collection Action.**

5

Huntington and Schneider are parties in the Collection Action.    Therefore, it is clear that
all of Schneider's claims against Huntington in the Collection Action are barred by res judicata.
However, the analysis does not stop there.  There is also claim preclusion for all those in privity
with Huntington and Schneider.  Huntington is in privity with its employees, and Schneider is in
privity with the Companies he owns.

"What constitutes privity in the context of res judicata is somewhat amorphous." *Brown
v. Dayton*, 89 Ohio St.3d 245, 248, *2000-Ohio-148*, 730 N.E.2d 958, 962 (2000). "A contractual
or beneficiary relationship is not required [.]" *Brown*, 89 Ohio St.3d at  248, *2000-Ohio-14*, 730
N.E.2d at 962.   "In certain situations, a broader definition of 'privity' is warranted. As a general
matter, privity is merely a word used to say that the relationship between the one who is a party
on the record and another is close enough to include that other within the res judicata." *Id.*

A party is in privity with another where a party is so identified in interest with another that
the party represents the same legal right. *Brown*, 89 Ohio St.3d at 248, *2000-Ohio-148*, 730 N.E.2d
at 962; *Wright*, 2018-Ohio-149, 102 N.E.3d 1285 at ¶ 24.   Stated another way, a mutuality of
interest, including an identity of desired result, creates privity. *Brown*, 89 Ohio St.3d at  248, *2000-
Ohio-148* at 248, 730 N.E.2d at 962; *Wright*, 2018-Ohio-149, 102 N.E.3d 1285 at ¶ 25.   "To find
otherwise would be to allow the [a party] to come under constant attack simply by replenishing
the ranks of plaintiffs." *Brown*, 89 Ohio St.3d at  248, *2000-Ohio-148*, 730 N.E.2d at 962.

More specifically, there is privity where there is a principal-agent relationship.  *Wright*,
2018-Ohio-149, 102 N.E.3d 1285 at ¶ 27. As explained by the First District:

> . . . **it is well-settled law "that a principal-agent relationship satisfies the
> privity requirement of res judicata where the claims alleged are within the
> scope of the agency relationship."** *ABS Industries, Inc. v. Fifth Third Bank*, 333
> Fed.Appx. 994, 999 (6th Cir.2009), citing *Cook v. Criminger*, 9th Dist. Summit No.
> 22313, 2005- Ohio-1949, ¶ 20 (holding that res judicata precluded consideration of

state claims against individual university employees based on the same conduct that formed the basis for prior federal claims resolved in favor of the state university because the state action concerned the employees' actions as agents of the university and hence established privity); *Waddell v. Boldman*, 4th Dist. Adams No. 01CA721, 2002-Ohio-4229, ¶ 23 (holding that the defendant contractual employee was in privity with the plaintiff's former husband, through an agency relationship, and thus, a prior divorce action resolving issues regarding the timbering of land had res judicata effect against the plaintiff in her subsequent action alleging that the defendant cut timber on the land without authorization); *Ferrara v. Vicchiarelli Funeral Servs., Inc.*, 2016-Ohio-5144, 69 N.E.3d 171, ¶ 19 (8th Dist.) (concluding that privity was established between funeral home, employee, and independent contractor because all actions taken by employee and independent contractor were on behalf of the funeral home).

*Id.* (emphasis added).

Likewise, there is privity between a company and its owner. *Business Data Sys., Inc. v. Gourmet Cafe Corp.*, 2008-Ohio-409, ¶ 31 (App. 9th Dist. 2008); *Godale v. Bd. of Trustees,* 2005-Ohio-2521, ¶ 47 (App. 11th Dist. 2005); *Grant Fritzsche Enters., Inc. v. Fritzsche*, 107 Ohio App. 3d 23, 25 667 N.E.2d 1004, 1006 (App. 12th Dist. 1995). There is even privity where a party acts in an individual capacity in one lawsuit, and then in a different capacity in a subsequent lawsuit. *Kirkhart v. Keiper*, 101 Ohio St. 3d 377, 380-381, 2004-Ohio-1496, 805 N.E.2d 1089, 1093-1094 (2004)

Here, there can be no doubt that Huntington is in privity with its Employees for res judicata purposes. There is a principal-agency relationship. Accordingly, just as Schneider's claims against Huntington are barred by res judicata, Schneider's claims against the Employees are barred by res judicata.

Furthermore, Schneider is in privity with the Companies because (i) Schneider owns the Companies, and (ii) Schneider is a party in both the Collection and Lender Liability Actions. He just acts in different capacities; he acted personally in the Collection Action and then as a shareholder bringing shareholder derivative claims on behalf of the Companies in the Lender

7

Liability Action.   Accordingly, just as Schneider's claims against Huntington and the Employees

are barred by res judicata, the Companies' claims against Huntington  and  the Employees  are

barred by res judicata.

**c.    Third Part:  The claims in the Lender Liability Action were, or could have been, raised in the Collection Action.**

"It has long been the law of Ohio that 'an existing final judgment or decree between the

parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first

lawsuit.'" *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (1990)

(emphasis in original) (quoting *Rogers v.Whitehall*, 25 Ohio St.3d 67, 69, 25 Ohio B. 89, 494

N.E.2d 1387 (1986)). Res judicata cannot be avoided simply by seeking a different remedy in the

subsequent action or by presenting grounds or theories of the case not presented in the first. *Brown*,

89 Ohio St.3d at  248, *2000-Ohio-148*, 730 N.E.2d at 962.

Adopting the Restatement of Judgments, the Ohio Supreme Court described the relevant

inquiry as follows:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar * * *, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to **all or any part of the transaction, or series of connected transactions, out of which the action arose. [A] transaction" [is] a common nucleus of operative facts.** That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief . . .
>
> **The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories,** or variant forms of relief flowing from those theories, that may be available to the plaintiff * * *; regardless of the variations in the evidence needed to support the theories or rights.

*Grava*, 73 Ohio St.3d at 382, 653 N.E.2d at 229 (citations omitted)(emphasis added); *also Roth v.*

*Glueck*, 2012-Ohio- 4407, ¶ 21 (1st Dist. 2012).

8

Here, all the claims in the Lender Liability Action could have been raised in the Collection

Action. All the claims in the Lender Liability Action arise out of check kiting transactions which

took place prior to May 24, 2020 and prior to the commencement of the Collection Action on June

5, 2020. [Ex. K] Moreover, the same check kiting transactions were a central part of the Collection

Action. [Ex. C, D, E, F, G] In fact, in the Collection Action, Schneider litigated an affirmative

defense based on the check kiting. [Ex. B; Ex. C at pp. 20-22; 38-40; Ex. D at. ¶ 64; Ex. E at ¶¶

22-29; Ex. F at ¶26 ] He described this affirmative defense in his opposition to Huntington's

motion for summary judgment in the Collection Action, as follows:

> Sosna tried to obtain cash from an outside financial service provider, but he
> also began to **kite checks**. The purpose of the **check-kiting** scheme was to
> falsely inflate the balance of **checking** accounts to allow Sosna to write **checks**
> that would otherwise bounce. Sosna knew HNB gave him access to a one-day
> "float" on his accounts so he could deposit money into his accounts and then
> immediately access those deposited funds. Sosna's **check-kiting** dramatically
> changed the activity occurring within the accounts he held at HNB from what
> it had been prior to that time. As Sosna's **check- kiting** continued, the amount
> of funds he needed to deposit everyday grew dramatically. Eventually he was
> transferring millions of dollars a day, each and every day, between the accounts
> held at HNB and other banks.
>
> HNB became aware of Sosna's **check-kiting** scheme by February 2020
> and informed him that it discovered he was creating float in his accounts and
> was freezing his Premier accounts due to "manipulation  of funds availability"
> by Premier . . .
>
> Despite its knowledge that one of its customers was committing a
> federal crime, HNB did nothing to prevent it . . .
>
> HNB's failure to disclose its knowledge of the **check-kiting** scheme to
> Schneider when it was discovered in February 2020 prevented Schneider from
> having any opportunity to step in and mitigate any losses and salvage the Keller
> Group companies.

[Ex. C at pp. 20-22]  (emphasis added). Schneider further wrote in his opposition to summary

judgment:

> HNB also had a separate and independent duty *after* closing the Premier Loan to
> disclose to Schneider information relating to Premier's continuing precarious

> financial condition and a duty to disclose its knowledge of Sosna's check-kiting
> activities in February 2020. HNB's failure to do so prevented Schneider from
> stepping in and mitigating his losses and salvaging the Keller Group companies in
> which he has a 50 percent ownership interest.

[Ex. C at pp. 38-39] (emphasis in original) (citations omitted).  In support of his failure to mitigate

defense based on the check kiting, Schneider also submitted an affidavit from an expert, his own

affidavit and an affidavit from Sosna.  [Ex. D, E, F] All these affidavits discussed the check kiting

and criticized Huntington for failing to disclose the check kiting to Schneider.  [Ex. D at. ¶ 64; Ex.

E at ¶¶ 22-29; Ex.  F at ¶26 ]  The Court rejected Schneider's defenses and arguments and granted

the Judgment in favor of Huntington.

Given the above, the Collection Action and the Lender Liability Action involve the same

"common nucleus of operative facts"  and the same "series of connected transactions." *Grava*, 73

Ohio St.3d at 382, 653 N.E.2d at 229.  Both cases involve the exact same check kiting.

**d.** **Fourth Part**:  **The Lender Liability Action and Collection Action cover the same
subjects.**

Both actions involve (i) the Loan, (ii) check kiting, and (iii) the alleged failure of

Huntington to timely prevent, detect or advise Schneider of the check kiting scheme.

The Loan is obviously a subject in the Collection Action.  [Ex. A] Yet the same Loan is

also a subject of the Lender Liability Action because the Loan is Plaintiffs' basis for damages.

[Ex. K at ¶32] For example, Plaintiffs describe their damage theory in the Complaint as follows:

> Huntington's breaches were the proximate cause of severe economic damage to
> Plaintiff. Had Huntington and the individual defendants not participated in the
> scheme (or, in the alternative, had they uncovered and halted the check-kiting
> scheme) and instead exercised their duty of ordinary care and good faith, there,
> among other things, would have been no kiting scheme and, therefore, **no need to
> enforce the Guaranty against Mr. Schneider**. Further, at a minimum, the check-
> kiting and fee-generation scheme allowed the Businesses and the Sosna facilities to
> illegitimately continue operations for many months, during which time the value of
> the Businesses and Sosna facilities dropped precipitously.

As a result, at the sale forced by Huntington subsequent to the default and
foreclosure of the Sosna loan, the Businesses and Sosna facilities sold for much less
than they otherwise would have, **leaving Mr. Schneider— as guarantor—on the
hook to cover the shortfall between the amount due on the loan and the amount
obtained from the sale, a difference of tens of millions of dollars**. Similarly,
Defendants, via the check-kiting and fee-generation scheme, hid Sosna's dire
financial condition from Mr. Schneider for months, thus preventing him from
taking proactive steps to preserve the value of the Businesses **and otherwise avoid
tens of millions of dollars in obligations as guarantor**. Defendants' breaches
caused a dramatic loss in value for the Businesses and have caused tens of millions
of dollars of personal liability for Mr. Schneider.

[Ex. K at ¶ 32] [emphasis added].    The Loan is directly part of the damage claim in the lender

Liability Action.  Plaintiffs even attach the Loan documents as exhibits to their complaint in the

Lender Liability Action. [Ex. K at Ex. B and C]

As for check kiting, there can be no doubt that check kiting is a subject in the Lender

Liability Action.  The Lender Liability complaint mentions the word "kiting" 76 times.  [Ex. K]

Yet check kiting is also a subject in the Collection Action.  As noted above, in the Collection

Action, Schneider litigated an affirmative defense based on check kiting.  [Ex. B; Ex. C at pp. 20-

22; 38-40; Ex. D at. ¶ 64; Ex. E at ¶¶ 22-29; Ex.  F at ¶26 ] Moreover, even the Court discussed

check kiting in its Summary Judgment Decision and wrote:

Borrowers negotiated potential terms for a forbearance agreement. At
approximately the same time HNB and Borrowers were preparing to sign a
forbearance agreement. Borrowers disclosed to HNB that Borrower's depository
bank had frozen all Borrowers' deposit accounts and refused to release funds to
cover Borrowers payroll, alleging that Borrowers had defrauded it (the depository
bank) through a multi-million dollar **check kiting** scheme resulting in losses of
approximately $59 million. Ultimately.  HNB accelerated the Loans and demanded
payment in full from the Borrowers, the Sosnas and Schneider.

[Exhibit G, p. 3] (emphasis added).

Similarly, the alleged  failure of Huntington to timely prevent, detect or advise Schneider

of the check kiting scheme is a subject in both actions.  In the Collection Action, Schneider argued:

11

HNB's failure to disclose its knowledge of the check-kiting scheme to Schneider when it was discovered in February 2020 prevented Schneider from having any opportunity to step in and mitigate any losses and salvage the Keller Group companies.

[Ex. C at pp. 20-22] In the Complaint in the Lender Liability Action, Schneider alleged the following:

Huntington's breaches were the proximate cause of severe economic damage to Plaintiff. Had Huntington and the individual defendants not participated in the scheme (or, in the alternative, had they uncovered and halted the check-kiting scheme) and instead exercised their duty of ordinary care and good faith, there, among other things, would have been no kiting scheme and, therefore, no need to enforce the Guaranty against Mr. Schneider.

Further, at a minimum, the check-kiting and fee-generation scheme allowed the Businesses and the Sosna facilities to illegitimately continue operations for many months, during which time the value of the Businesses and Sosna facilities dropped precipitously.

As a result, at the sale forced by Huntington subsequent to the default and foreclosure of the Sosna loan, the Businesses and Sosna facilities sold for much less than they otherwise would have, leaving Mr. Schneider — as guarantor—on the hook to cover the shortfall between the amount due on the loan and the amount obtained from the sale, a difference of tens of millions of dollars.

Similarly, Defendants, via the check-kiting and fee-generation scheme, hid Sosna's dire financial condition from Mr. Schneider for months, thus preventing him from taking proactive steps to preserve the value of the Businesses and otherwise avoid tens of millions of dollars in obligations as guarantor.

Defendants' breaches caused a dramatic loss in value for the Businesses and have caused tens of millions of dollars of personal liability for Mr. Schneider.

[Ex. K, at ¶ 55]  Schneider was even asked at his deposition how Huntington was negligent, and he responded as follows:

And through this whole thing, they knew there was a default, they never called me. There was kiting going on, they never called me. There was MCAs going through the bank account. They were in large deposits that were evident to anybody who had common sense. So as I sit here today, I absolutely had no knowledge of anything, and I absolutely did not know anything about the kiting, and I never knew anything about MCAs until this all showed up.

12

[Ex. M at pp. 234-235]  Both actions involve (i) the Loan, (ii) check kiting, and (iii) the alleged failure of Huntington to timely prevent, detect or advise Schneider of the check kiting scheme.

It is obvious what Schneider is trying to accomplish in the Lender Liability Action.  After losing on the merits in the Collection Action, Schneider still wanted to fight with Huntington.  So, after the Judgment was entered, Schneider commenced a new action asserting new claims based on the same subjects as in the Collection Action.  However, res judicata bars this.

A very recent decision is instructive.  In *Hicks v. PennyMac Loan Servs., LLC*, No. 1:25-CV 1053, 2025 BL 304889 (N.D. Ohio Aug. 27, 2025), a lender sued a borrower and obtained a foreclosure judgment after contested litigation with the borrower.  The sheriff eventually sold the property at a sheriff's sale.  After losing in the foreclosure case, the borrower filed a separate lawsuit against the lender for violations of the Fair Debt Collections Practices Act and Fair Credit Reporting Act.  The Court dismissed the second action because the second action related to the same loan which was the subject of the prior foreclosure action.  *See also Forgues v. Select Portfolio Servicing, Inc.*, 690 F. App'x 896, 900-01 (6th Cir. 2017) (finding Plaintiff's claims under FDCPA and FCRA barred by res judicata because each claim related to an allegation concerning her mortgage loan in the prior action); *Berman v. Arlington Bank*, No. 4:12 CV 2888,  2013 U.S. Dist. LEXIS 24523, 2013 WL 682814, *10 (N.D. Ohio Feb. 22, 2013) (stating Plaintiff "could have and should have asserted his claims of denial of due process in his appeal from the state court foreclosure judgment" and finding res judicata barred his claims); *Clark v. Lender Processing Servs. Inc.*, 949 F. Supp. 2d 763, 773-74 (N.D. Ohio 2013) (holding that res judicata barred

13

mortgagor's claims under the FDCPA and Ohio's Consumer Sales Practices Act where there was

a prior, final decision on the merits in an underlying state foreclosure action).[2]

The same result should follow here.

## V.      CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant the

Motion and dismiss all claims against all Defendants with prejudice based on res judicata, and

award other and further appropriate relief.

Respectfully submitted,

Dated:  September 22, 2025                    **BUCHANAN INGERSOLL & ROONEY PC**


By:      */s/ Christopher P. Schueller*
Christopher P. Schueller (Ohio ID 0086170)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel: (412) 562-8800
Fax: (412) 562-1041
christopher.schueller@bipc.com

*Attorneys for Defendants*

---

[2] A federal court conducting a claim-preclusion analysis "must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007). All of the federal cases cited here apply Ohio law.

14

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO
Case No. A2300849

RAYMOND SCHNEIDER, as an individual,
and derivatively    on behalf of    EUCLID
HEALTH    CARE,    INC.,    KENWOOD
TERRACE HEALTH CARE CENTER, INC.,
SOUTHBROOK    HEALTHCARE    CENTER,
INC.    AND    BEECHWOOD    TERRACE
CENTER, INC.,

     *Plaintiffs,*

     **vs.**

THE HUNTINGTON NATIONAL BANK,
GARETT VETTER, AMY BECKER,
SUZANNE MEYERS, TROY JONES, DAVE
EMIG, MIKE VIREN, DAVID WECHTER,
JAMES R. GENTRY, ANGIE QUATTRONE,
MARIA STEINER, MARINA KRIVENKO and
CHRIS HOFFMAN,

     *Defendants.*

<u>**AFFIDAVIT OF DAVID A. PEURA**</u>

    I, **DAVID A. PEURA**, being duly sworn, declare and say:

    1.    I am a Senior Vice President of The Huntington National Bank ("**Huntington**").

As to the facts in this Affidavit, I know them to be true of my own knowledge and/or from my

review of Huntington's business records.    All such business records were created and/or

maintained in the course of Huntington's business and in accordance with normal business

practices.    If called upon to testify as to the matters set forth in this affidavit, I could and would

competently testify thereto, since the facts set forth herein are known to me to be true.

    2.    I submit this affidavit in support of the above-captioned Defendants'

("**Defendants**") Motion For Summary Judgment based on Res Judicata ("**Motion**").

1

3.      On or about November 30, 2018, Premier Health Care Management, Inc., Euclid Health Care, Inc., Pleasant Ridge Care Center, Inc., Kenwood Terrace Health Care Center, Inc., Southbrook Health Care Center, Inc., Beechwood Terrace Care Center, Inc., Ivy Health Care, Inc., JZB Realty Holding Co., LLC, Pleasant Ridge Realty, LLC, Ivy Health Realty LLC, Keller Road Realty Co., LLC, Steigler Road Realty, LLC, Seminole Avenue Realty, LLC, and 54 Realty, Ltd. (collectively, the "**Borrowers**"), Plaintiff, in its capacity as Administrative Agent and Lender, the Lenders (defined therein) and others, entered into that certain Credit Agreement (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**") pursuant to which the Plaintiff and Lenders agreed to extend certain credit facilities to Borrowers, including, without limitation, term loans up to the principal amount of $71,191,999.90 (the "**Term Loan**") and revolving loans up to the principal amount of $5,000,000 (the "**Line of Credit**", together with the Term Loan, the "**Loans**").

4.      Each of the Borrowers was an owner, operator, or manager with respect to seven senior skilled nursing facilities ("**Facilities**") located in southern Ohio.

5.      The Loans were secured by each of the Facilities and revenues from the Facilities, as well as all real and personal property, including accounts, of the Borrowers.

6.      In connection with the Loans, Plaintiff Raymond J. Schneider ("**Schneider**") executed and delivered to Plaintiff a separate agreement entitled Guaranty of Payment of Debt dated November 30, 2018 pursuant to which Schneider agreed to repay the Loans upon a default by the Borrowers (the "**Guaranty**").

7.      In 2020, the Loans went into default.  On June 5, 2020, Huntington commenced a collection action against the Debtor in the Ohio Court of Common Pleas in Franklin County ("**State Court**") under Index Number A2002093 ("**Collection Action**") for approximately $76

2

million based on a personal guaranty Schneider signed in connection with some commercial loans. A true and accurate copy of the Complaint in the Collection Action (with exhibits) which includes a true and accurate copy of the Credit Agreement and Guaranty is attached as **Exhibit A**. A true and accurate copy of Schneider's Answer in the collection action is attached as **Exhibit B**.

8.      Huntington moved for summary judgment in the collection Action. A true and accurate copy of the opposition ("**Opposition**") Schneider filed in connection with a summary judgment motion filed by Huntington in the Collection Action (without exhibits) is attached as **Exhibit C**.

9.      Attached as **Exhibit D** is a true and accurate copy of the affidavit of Bruce Crutcher dated August 4, 2022 which Schneider submitted with his Opposition.

10.      Attached as **Exhibit E** is a true and accurate copy of the affidavit of Schneider dated August 4, 2022 which Schneider submitted with his Opposition.

11.      Attached as **Exhibit F** is a true and accurate copy of the affidavit of Harold Sosna dated March 16, 2021 which Schneider submitted with his Opposition.

12.      On November 18, 2022, the State Court granted Huntington's motion for summary judgment in the Collection Action. A true and accurate copy of the Court' opinion is attached as **Exhibit G**.

13.      On December 13, 2022, the State Court issued a Judgment Entry Against Raymond Schneider in the amount of $75,599,410 as of July 28, 2020 (the "**Judgment**"). A true and accurate copy of the Judgment is attached as **Exhibit H**.

14.      On February 15, 2023, the State Court issued an Amended Judgment Against Raymond Schneider ("**Amended Judgment**"). A true and accurate copy of the Amended Judgment is attached as **Exhibit I**. The State Court amended the Judgment to make clear that the

3

Judgment was a final appealable order. In all other substantive respects, the Judgment and Amended Judgment are identical.

15.    On January 9, 2023, Schneider appealed the Judgment to the First District Court of Appeals ("**First District**").    On December 29, 2023, the First District reversed the Summary Judgment Decision and vacated the Judgment.

16.    On February 9, 2024, Huntington filed with the Ohio Supreme Court  a motion for leave to appeal.  On April 30, 2024, the Ohio Supreme Court granted the motion.  On August 20, 2024, the Ohio Supreme Court reversed the First District's decision and reinstated the Judgment. A copy of the Ohio Supreme Court's decision is attached as **Exhibit J**.  The Judgment is now a final non-appealable judgment.

17.    On February 23, 2023, the above-captioned Plaintiffs commenced the above-captioned action.    On April 26, 2023, the Plaintiffs filed a First Amended Complaint, a true and accurate copy of which (with exhibits) is attached as **Exhibit K**.

18.    On September 21, 2023, Defendants filed a First Amended Answer to the Complaint, a copy of which is attached as **Exhibit L**.

19.    On March 25, 2025, Defendants completed the deposition of Raymond Schneider. A true and accurate condensed copy of this deposition transcript is attached as **Exhibit M**.

[SIGNATURE PAGE TO FOLLOW]



DAVID A. PEURA

**STATE OF OHIO**

**COUNTY OF FRANKLIN**

On September 22, 2025, before me, the undersigned, personally appeared **David A. Peura**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual or the person(s) upon behalf of which the individual acted, executed the instrument.

Notary Public
My Commission Expires:



4878-1271-8209, v. 1

5

## CERTIFICATE OF SERVICE

I hereby certify that on this 22n$^d$ day of September, 2025 a true copy of the foregoing was

served via electronic mail and first class mail, postage prepaid upon the following:

James R. Cummins
Rebecca S. Rhein
CUMMINS LAW LLC
312 Walnut Street, Suite 1530
Cincinnati, OH 45202
jcummins@cumminslaw.us
rrhein@cumminslaw.us

Emmett R. Robinson, Esquire
Robinson Law Firm LLC
6600 Lorain Avenue, #731
Cleveland, OH 44102
erobinson@robinsonlegal.org

Michael R. Gladman, Esquire
Dustin M. Koenig, Esquire
325 John H. McConnell Blvd.
Suite 600
Columbus, OH 43215
mrgladman@jonesday.com
dkoenig@jonesday.com

Brian T. Giles, Esquire
GILES & HARPER, LLC
7247 Beechmont Ave.
Cincinnati, OH 45230
bgiles@gilesharper.com

*/s/ Christopher P. Schueller*
Christopher P. Schueller (OH ID 0086170)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel: (412) 562-8800
Fax: (412) 562-1041
christopher.schueller@bipc.com

*Attorney for Defendants*