# "EXHIBIT B"

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

RAYMOND SCHNEIDER,                )
                                  )        Case No. A2300849
              Plaintiff,          )
                                  )        Judge Christian A. Jenkins
       v.                         )
                                  )
                                  )
THE HUNTINGTON NATIONAL BANK, et  )
al.,                              )
                                  )
              Defendants.         )

### MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON RES JUDICATA

In their new motion for summary judgment, Defendants—Huntington National Bank and several current and former Huntington employees—take a fourth stab at briefing res judicata. Defendants first briefed the issue in their motion to dismiss Plaintiff Raymond Schneider's original complaint, arguing that the separate, breach-of-guaranty case filed by Huntington against Mr. Schneider back in early June 2020 (the "Collection Action") operated to bar the present case (the "Corrupt Practices Action").  (*See* 3/29/23 MTD at 28-32.)  The filing of Mr. Schneider's First Amended Complaint mooted that motion, so Defendants filed a new motion to dismiss, again arguing that res judicata compelled dismissal.  (*See* 5/15/23 MTD at 32-36.)  The Court (this case was assigned to Judge Crosse at the time) denied the motion to dismiss the First Amended Complaint in toto.  (*See* 8/18/23 Entry Denying Motion to Dismiss at 7.)

Six weeks later, Defendants gave the res-judicata issue another go.  In their motion for summary judgment filed on October 3, 2023, they once again argued that, in light of the earlier-filed Collection Action, they were entitled to summary judgment in their favor in the present action

based on the doctrines of compulsory counterclaim and res judicata.[1] (*See* 10/3/23 Memo ISO MSJ at 6-10.) Then, in their reply brief, they voluntarily "withdr[e]w their failure to allege compulsory counterclaim argument[.]" (12/19/23 Reply ISO MSJ at 4, fn. 2.) And less than three weeks after that, they wrote a letter to the Court withdrawing their generic res-judicata argument as well in light of the First District's decision reversing the trial court's grant of summary judgment in Huntington's favor in the Collection Action. (*See* 2/12/24 Entry Denying MSJ at 2.)

Now, more than two-and-a-half years after first raising the issue in their first motion to dismiss and two years after last raising it in their motion for summary judgment, Defendants once more raise the specter of res judicata, this time in a standalone motion asserting that they are entitled to across-the-board summary judgment solely by operation of that doctrine. (*See* 9/22/25 MSJ.) They are mistaken for at least three reasons. First, by voluntarily withdrawing their compulsory-counterclaim argument, they have already waived res judicata and cannot now be permitted to revive the issue. Second, to prevail on the merits of the compulsory-counterclaim/res-judicata issue, Defendants must show that Mr. Schneider had all of the facts necessary to plead the claims raised in the present Corrupt Practices Action in hand back when he answered the complaint in the Collection Action. But Defendants have failed to show this—indeed, they cannot show it—because it is untrue. Third and finally, Defendants' argument fails because the Corrupt Practices Action, though tangentially related to it, does not arise out of the same "transaction or occurrence" as the Collection Action—in other words, the Corrupt Practices Action does not share a "common *nucleus* of operative facts" with the Collection Action.

---

[1] As discussed further below, this formulation, also used in the motions to dismiss, was redundant. The compulsory-counterclaim rule is a subset of the doctrine of res judicata and is the particular form of res judicata at issue here. In other words, if res judicata operated to bar the present case, it would do so via the compulsory-counterclaim rule.

# I. <u>STANDARD OF REVIEW</u>

"[T]he moving party carries a heavy burden in order to be entitled to summary judgment." *Ulrich v. Mercedes-Benz USA, LLC*, 2005-Ohio-1461, ¶ 20 (9th Dist.) (reversing trial-court grant of summary judgment). Specifically, a party seeking summary judgment "bears the initial burden of informing the trial court of the basis for the motion[] and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St. 3d 280, 293 (1996). "[A]ll inferences must be made in the non-moving party's favor," *Linden v. Cincinnati Cyclones Hockey Club, L.P.*, 138 Ohio App. 3d 634, 642 (1st Dist. 2000) (reversing grant of summary judgment), and "[d]oubts," too, "must be resolved in favor of the non-moving party," *Murphy v. City of Reynoldsburg*, 65 Ohio St. 3d 356, 359 (1992).

Even if a movant is able to clear these hurdles, still, "before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *McConnell v. Dudley,* 158 Ohio St. 3d 388, 2019-Ohio-4740, ¶ 18.

The compulsory-counterclaim rule is found at Civil Rule 13(A), which provides, in part, that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" The two-part test for applying the compulsory-counterclaim rule thus asks: "(1) does the claim exist at the time of serving the pleading . . . ; and

(2) does the claim arise out of the transaction or occurrence that is the subject matter of the opposing claim." *Geauga Truck & Implement Co. v. Juskiewicz,* 9 Ohio St.3d 12, 14 (1984).

The compulsory-counterclaim rule is a form of res judicata and, moreover, the form of res judicata applicable to this case. *E.g., Grill v. Artistic Renovations,* 2018-Ohio-747, ¶ 19 (8th Dist.) ("A party's failure to assert a compulsory counterclaim constitutes a form of res judicata."). But Defendants couch their motion in terms of the "generic" form of res judicata, which, in addition to the two elements above, adds two more. Thus, under that formulation, "[t]he party asserting res judicata must show" not only that "the present action raises claims that were or could have been litigated in the prior action" and that "both actions arise out of the same transaction or occurrence" but also that "there was a prior valid judgment on the merits" and that "the second action involved the same parties as the first action[.]" *Meyer v. Chieffo,* 2011-Ohio-1670, ¶ 13 (10th Dist.).

As set forth below, Defendants' motion for summary judgment comes nowhere close to marshalling the record support necessary to prove that these elements are satisfied here. To the contrary, the record—which, at any rate, must be construed in the light most favorable to Mr. Schneider—plainly shows that the doctrine of compulsory counterclaim/res judicata does not operate to bar any claims brought in the Corrupt Practices Action.

## II. ARGUMENT

### A.  Defendants Have Waived Their Res Judicata Argument.

As stated above, the compulsory-counterclaim rule is a subset of the doctrine of res judicata. *E.g., Grill,* 2018-Ohio-747, ¶ 19 ("failure to assert a compulsory counterclaim" is "a form of res judicata"); *Jarvis v. Wells Fargo Bank,* 2010-Ohio-3283, ¶ 28 (7th Dist.) (same); *O'Connor v. Moore,* 1993 Ohio App. LEXIS 1371, at *8 (4th Dist. Mar. 2, 1993) (same). Not only is it *a* form of res judicata, it is *the* form of res judicata applicable here. Defendants' argument,

after all, is not that Mr. Schneider was a plaintiff in the Collection Action and should therefore be barred from bringing a second plaintiff's case seeking to rehash claims or issues from the Collection Action. Nor do Defendants argue that Mr. Schneider should be barred from raising a defense in this case that he raised or should have raised in the Collection Action. Rather, Mr. Schneider was, of course, a *defendant* in the Collection Action, and Defendants seek to use the doctrine of res judicata to bar him from raising, as a *plaintiff*, affirmative claims against Huntington in this case. Accordingly, the specific species of res judicata at issue is the compulsory-counterclaim rule.

Put another way, Defendants contend that Mr. Schneider should have raised his claims in this case in the Collection Action, and the means by which he would have raised the claims there would have been via counterclaims brought pursuant to Civil Rule 13(A). Accordingly, the particular res-judicata issue before the Court is whether the claims in the present Corrupt Practices Action were in fact compulsory counterclaims in the Collection Action. Defendants studiously avoid using the term "compulsory counterclaim" in their brief, but the logic is inescapable—that is precisely the variety of res judicata at issue here.

Defendants avoid the term presumably because they know that they have already waived the compulsory-counterclaim argument. As noted in the introduction to this brief, Defendants raised the compulsory-counterclaim issue in their previous motion for summary judgment and then voluntarily abandoned it. In their reply in support of that motion, they voluntarily "withdr[e]w their failure to allege compulsory counterclaim argument[.]"[2] (12/19/23 Reply ISO MSJ at 4 fn.

---

[2] One of the reasons Defendants gave for abandoning the compulsory-counterclaim issue was that it "distract[ed] from the *res judicata* argument[.]" (12/19/23 Reply ISO MSJ at 4 fn. 2.) That statement is puzzling, given that the compulsory-counterclaim issue *is* a res-judicata argument. Regardless of whatever flaws might lay behind Defendants' reasoning, the fact remains that they voluntarily relinquished the issue.

2.) That voluntary relinquishment satisfied the textbook definition of waiver. *See, e.g., Gembarski v. PartsSource, Inc.*, 157 Ohio St.3d 255, 2019-Ohio-3231, ¶ 24 ("'A waiver is a voluntary relinquishment of a known right.'" (quoting *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190, 198 (1936))). And once a party voluntarily withdraws an argument, it may not raise it again later in the case. *See Swickrath & Sons*, 2003-Ohio-6288, ¶ 38 (3rd Dist.) (party that "voluntarily withdrew . . . arguments" in trial court could not "raise these arguments . . . on appeal"); *State v. Hale*, 1994 Ohio App. LEXIS 816, at *3 (9th Dist. Mar. 2, 1994) (argument "waived" where party voluntarily "withdrew his motion"). Because Defendants previously waived their argument regarding the particular type of res-judicata at issue here, they may not revive the generic concept of res judicata in their new motion for summary judgment.

## B. Defendants Fail to Establish that the Two Crucial Elements of the Compulsory-Counterclaim/Res Judicata Rule Are Satisfied Here.

Even if the Court concludes that Defendants have not waived the compulsory-counterclaim/res-judicata issue, still their motion for summary judgment fails on the merits. The two-part test for applying the compulsory-counterclaim rule asks: "(1) does the claim exist at the time of serving the pleading . . . ; and (2) does the claim arise out of the transaction or occurrence that is the subject matter of the opposing claim." *Geauga Truck*, 9 Ohio St. 3d at 14. Similarly, the test for application of res judicata in its generic form contains these same two requirements (albeit sometimes worded slightly differently) and adds two more. Thus, just as, under the compulsory-counterclaim test, a party must show that "the claim exist[ed] at the time of serving the pleading" in the first action so, *id.*, to establish generic res judicata, a party must show that "the present action raises claims that were or could have been litigated in the prior action," *Meyer*, 2011-Ohio-1670, ¶ 13. And just as, per the compulsory-counterclaim test, "the claim [must] arise out of the transaction or occurrence that is the subject matter" of the first action, *Geauga Truck*, 9

6

Ohio St. 3d at 14, so, to establish generic res judicata, a party must show that "both actions arise out of the same transaction or occurrence," *Meyer*, 2011-Ohio-1670, ¶ 13.[3]

But here, Defendants have failed to satisfy *either* of these two requirements. They have failed to show, as a matter of law, (1) that the claims at issue in this Corrupt Practices Action "exist[ed]" at the time Mr. Schneider filed his answer in the Collection Action or "could have been litigated" then, and (2) that the claims at issue here "arise out of the same transaction or occurrence" as the claims raised by Huntington in the Collection Action.

### 1. Mr. Schneider Was Not Able to Raise the Claims He Brings Here When He Filed His Answer in the Collection Action.

Regardless of whether one prefers the wording of the directly applicable compulsory-counterclaim test or the generic res-judicata test, when it comes to the first element Defendants have failed to establish, the requirements under both are the same.  The compulsory-counterclaim formulation requires, per the Supreme Court, that "the claim exist at the time of serving the pleading" in the first action.  *Geauga Truck,* 9 Ohio St.3d at 14.  This corresponds with the text of Civil Rule 13(A), which applies, vis-à-vis this element, to "any claim which at time of serving the pleading the pleader has against any opposing party[.]"  Applying this element to the Corrupt Practices Action, then, the first question is whether Mr. Schneider's claims in the Corrupt Practices Action "exist[ed]"—or whether he "ha[d]" such claims—on the day he served his answer in the Collection Action.  *See Geauga Truck*, 9 Ohio St. 3d at 14 (operative date for purposes of applying the first prong of the compulsory-counterclaim test was the date the party "served its answer to" the complaint in the first lawsuit). Mr. Schneider served his answer in the Collection Action on

---

[3] The generic res-judicata test also requires a party to show that "there was a prior valid judgment on the merits" and that "the second action involved the same parties as the first action."  *Meyer*, 2011-Ohio-1670, ¶ 13.

July 20, 2020. (9/22/25 MSJ Ex. B at 16 (certificate of service attached to answer in Collection Action indicating service on this date); Schneider Aff.[4] at ¶ 5.)

The basics of the timing question settled, the remaining query with respect to this prong of the compulsory-counterclaim rule is whether Mr. Schneider's personal claims in the present Corrupt Practices Action "exist[ed]" on July 20, 2020. *Geauga Truck,* 9 Ohio St.3d at 14. A claim only comes into "exist[ence]" for purposes of this rule once it is "discovered[,] or should have been discovered," by the would-be claimant. *NASA Tool Mfg. Corp. v. Cincinnati Milacron, Inc.*, 12th Dist. No. CA84-09-062, 1985 Ohio App. LEXIS 6593, at *17 (Apr. 29, 1985); *Cooper v. Commer. Savs. Bank*, 2015-Ohio-4131, ¶ 14 (3d Dist.) (proper inquiry is when the claim became "known" to the would-be claimant); *Pullen v. Pierce*, 1993 Me. Super. LEXIS 134, *8-9 (claim "not a compulsory counterclaim within the meaning of Rule 13(a)[]" unless it was "known at the time of serving of the pleading"); *Dickerson v. Goodman*, 161 P.3d 1205, 1208 (Alaska 2007) ("[f]or purposes of Rule 13(a), a pleader 'has' a claim . . . when all of the elements of the claim are known or reasonably should be known" to him).[5]

Given all this, application of the first prong of the compulsory-counterclaim rule boils down to this inquiry: Had Mr. Schneider discovered all of the facts necessary to plead his Corrupt Practices Action claims on or before the day he filed his answer in the Collection Action (July 20, 2020)?

The corresponding prong of the generic res-judicata test ultimately yields precisely the same inquiry. Recall that the generic res-judicata test asks whether the claims in the second action

---

[4] Mr. Schneider's affidavit was originally submitted to the Court on November 30, 2023, in support of his opposition to Defendants' previous summary-judgment motion. Another copy of the very same affidavit is appended hereto for the Court's convenience.
[5] The relevant portions of Maine Civil Rule 13(a) and Alaska Civil Rule 13(a) are identical to the relevant portion of Ohio's Civil Rule 13(A).

"were or could have been litigated" in the prior action. *Meyer*, 2011-Ohio-1670, ¶ 13. Further, the Supreme Court has noted, favorably, that "in order to avoid . . . possible misleading connotations," some courts have tweaked the language, "prefer[ring] to refer instead to 'claims which *should* have been litigated' in the first lawsuit." *Holzemer v. Urbanski*, 86 Ohio St.3d 129, 133, fn.2 (1999) (quoting *Wilkins v. Jakeway*, 993 F. Supp. 635, 645 (S.D. Ohio 1998) (emphasis added)). Like the compulsory-counterclaim formulation of this element, here in the generic res-judicata setting, as well, this element is *not* satisfied where a plaintiff in a later-filed action did not discover the facts giving rise to his later-filed action until after filing his pleading in the first action.

Thus, in *Montgomery v. Vargo*, 2018-Ohio-742, ¶ 20 (8th Dist.), the court made clear that "res judicata would not bar a claim that is based on newly discovered evidence" if that evidence first came to the party's attention "after they filed the original" pleading in the first action. *See also, e.g.*, *Harris v. Pristera*, 2011-Ohio-2089, ¶ 18 (11th Dist.) (res judicata can only bar a claim where "the party against whom the doctrine is sought to be imposed . . . had a full and fair opportunity to litigate the claim" (internal quotation marks and citation omitted)); *Rodefer v. McCarthy*, 2015-Ohio-3052, ¶ 26 (2nd Dist.) (same).

Judge Branch made the same point recently in *Get Your Back on Track, LLC v. Bashee 3652 LLC*, Hamilton C.P. No. A2003571, 2024 Ohio Misc. LEXIS 1494 (Oct. 31, 2024). There, the plaintiff in the second action—Revolution—had also been a defendant in the first action and had raised counterclaims there. *Id.* at *7. A defendant in the second action who had also been a plaintiff in the first raised res judicata as an affirmative defense. *Id.* at *11. Revolution moved for summary judgment as to the res-judicata defense, arguing that res judicata did not operate to bar the second action, and Judge Branch agreed, granting the motion. *Id.* The 'were or could (should) have been litigated' element was not satisfied, Judge Branch said, because the evidence showed

that Revolution "was not aware of" the facts underlying the claims in the second action "until **after** Revolution filed its counterclaims in the Prior Litigation." *Id.* at \*15 (emphasis in original).

Accordingly, regardless of whether this element is approached from the applicable compulsory-counterclaim angle or the generic res-judicata angle, the inquiry is the same: Has Huntington shown that, viewing all of the evidence in the light most favorable to Mr. Schneider, reasonable minds can only conclude that Mr. Schneider was aware of all of the facts necessary to bring his claims in the Corrupt Practices Action back on July 20, 2020—the day he filed his responsive pleading in the Collection Action?

The answer is an emphatic no. Mr. Schneider did not discover the facts necessary to plead the claims raised in the Corrupt Practices Action until well after July 20, 2020.

Defendants do not even argue to the contrary. As a matter of fact, though Defendants, as movants, bear the burden of proving that there are no outstanding issues of material fact and that they are entitled to judgment as a matter of law, their brief does not even address this timing issue and never asserts that Mr. Schneider had discovered the facts necessary to plead the claims brought in the Corrupt Practices Action prior to July 20, 2020. Accordingly, their motion necessarily fails for this reason, and addressing the issue for the first time in reply would be too little, too late. *See, e.g.*, *City of Elyria v. Lorain County Budget Comm.*, 128 Ohio St. 3d 485, 2011-Ohio-1482, ¶ 24 (a "tribunal need not address an argument raised of the first time in a reply brief" (citing *State ex rel. Grounds v. Hocking County Bd. of Elections*, 117 Ohio St. 3d 116, 2008-Ohio-566, ¶ 24)). This failure is rendered all the more inexcusable considering that Mr. Schneider dealt at length with this very timing deficiency the last time Defendants sought summary judgment on the basis of res judicata. (*See* 11/30/23 Opp. to MSJ at 17-19, 23-25.) So not only case law, but also Mr.

Schneider's previously made argument, put Defendants on notice concerning the importance of this issue.[6] Yet Defendants are silent.

Though Defendants dodge entirely the question of whether Mr. Schneider had discovered the facts necessary to bring his Corrupt Practices Action claims on July 20, 2020, they do briefly assert, generally, that those claims "could have been raised in the Collection Action." (9/22/25 Memo. ISO MSJ at 9.) They say this is so because the "check kiting transactions" at issue in the Corrupt Practices Action "took place prior to May 24, 2020 and prior to the commencement of the Collection Action[.]" (*Id.*) But the mere existence of "check kiting transactions" was not the only fact necessary to pleading the Corrupt Practices Action claims. And far more fundamentally, as the case law above shows, the dispositive question for this element is whether Mr. Schneider *discovered* the facts necessary to bring the Corrupt Practices Action claims before July 20, 2020, not when those facts occurred. Defendants ignore this requirement entirely.

Perhaps they do so because they know this requirement dooms their argument. In their brief, Defendants make much of the fact that Mr. Schneider discussed certain aspects of the check-kiting scheme in his opposition to Huntington's motion for summary judgment in the Collection Action. (*Id.*) And they likewise cite to affidavits submitted in support of that motion. (*Id.*) But Mr. Schneider's opposition brief and the documents supporting it were filed with the court in the Collection Action in August 2022, <u>more than two years after</u> Mr. Schneider filed his answer in that

---

[6] Indeed, it appears Defendants may fundamentally misunderstand what this prong of the test requires. They close this section of their brief—the section devoted to addressing whether the claims in this action "were, or could have been, raised in the Collection Action" by asserting that this case and the Collection Action "involve the same 'common nucleus of operative facts[.]'" (9/22/25 Memo ISO MSJ at 10 (citation omitted).) But the "common nucleus" query applies to the second element, discussed below, regarding whether the claims "arise out of the transaction or occurrence." It has nothing to do with whether the claims could or should have been raised at the time the party filed his pleading in the first action.

case.  (*See* 9/22/25 MSJ Ex. C at 1 (showing that Mr. Schneider filed his summary-judgment opposition in the Collection Action on August 10, 2022).)

As this timeline suggests, the record shows that, as of July 20, 2020, Mr. Schneider had not yet discovered (nor could he have yet discovered) the claims he now raises before this Court. (Schneider Aff. at ¶ 6, 7.)  Indeed, Mr. Schneider did not even learn that Huntington accounts were involved in the check kiting until well after serving his answer in the Collection Action, and, likewise, the first indication that Huntington and the individual Defendants were possibly culpably involved in the check-kiting scheme was discovered long after Huntington began producing documents in the Collection Action (which process, of course, did not begin until after Mr. Schneider had filed his answer).  (*See id* at ¶ 7, 9.)

The table attached as Exhibit A to Mr. Schneider's affidavit discusses the primary document groups relied upon to plead the Corrupt Practices Action.  As shown in the table, none of these documents were available to Mr. Schneider at the time he served his answer in the Collection Action.  In fact, he received the first of them more than 7 months (215 days) after his answer was served.  (Schneider Aff. Table A.)  The Harold Sosna affidavit (upon which large portions of the Complaint and First Amended Complaint in the Corrupt Practices Action are based) was not executed until March 16, 2021—8 months after Mr. Schneider filed his answer in the Collection Action.  (*Id.*)  Further, Mr. Schneider had no way of knowing that Defendants had sent letters to Harold Sosna in February and March of 2020 noting that Huntington knew that Sosna was "manipulating funds" (and yet allowed him to keep the accounts open and thus continue to use them as part of the scheme) until Huntington turned over these documents on July 19, 2021— one year after the answer was filed in the Collection Action.  (*Id.*)  Therefore, until Defendants provided these documents to Mr. Schneider in the Collection Action, Mr. Schneider did not have

a good-faith basis to allege that Defendants negligently or knowingly participated in the check-kiting scheme with Sosna. (Schneider Aff. at ¶ 9.) Defendants, in asking for summary judgment based on compulsory counterclaim/res judicata, thus now effectively ask the Court to reward them for their decision to keep their involvement with the check-kiting scheme secret for so long.[7]

Defendants have known these facts for nearly two years, as Mr. Schneider pointed them out explicitly in his opposition to Defendants' previous motion for summary judgment. (*E.g.*, 11/30/23 Opp. to MSJ at 19.) Yet still Defendants fail to marshal any record evidence to refute what this uncontroverted evidence shows, namely, that Mr. Schneider did not discover the facts undergirding his Corrupt Practices Action claim until long after he filed his answer in the Collection Action. Defendants come nowhere close to meeting their summary-judgment burden regarding this prong of the compulsory-counterclaim/res-judicata test. Accordingly, their motion for summary judgment should be denied for this reason as well.

**2.    Defendants Fail to Show that the Claims at Issue Here Are Based on the "Same Transaction or Occurrence" as the Claims Raised by Huntington in the Collection Action.**

Defendants' compulsory-counterclaim/res-judicata argument also fails under the other shared prong of the test, which requires that the claim sought to be precluded must "arise out of the transaction or occurrence that is the subject matter of" the claim(s) raised in the first action, *Geauga Truck*, 9 Ohio St. 3d at 14, or, worded a bit more simply, that "both actions arise out of the same transaction or occurrence," *Meyer*, 2011-Ohio-1670, ¶ 13. In their brief, Defendants do not say a word, or offer a single citation, fleshing out the scope of this element. Instead, they simply assert that the element is satisfied here because, in their telling, "[b]oth actions involved

---

[7] In a similar vein, it is also important to point out that Mr. Schneider's counsel continuously tried to obtain documents in the Collection Action but was met with opposition and delay from Huntington at nearly every turn. (Schneider Aff. at ¶ 8.)

. . . the Loan"—that is, the business loan at issue in the Collection Action and of which Mr. Schneider was a guarantor.  (9/22/25 Memo. ISO MSJ at 10, 13.)

But Defendants admit that the role of "the Loan" in the Collection Action is radically different from its role in the Corrupt Practices Action.  In the Collection Action, the loan guaranty signed by Mr. Schneider was the basis for his liability and the very center of the case.  (*See id.* at 10; 9/22/25 MSJ Ex. A at 5-7 (all three counts at issue in the Collection Action were for "Breach of Guaranty").)  Yet in the Corrupt Practices Action, liability is *not* premised on the terms of the guaranty.  Instead, all Defendants manage to point out is that, with regard to the Corrupt Practices Action, the guaranty is one possible "basis for [measuring] damages."  (9/22/25 Memo. ISO MSJ at 10.)

Defendants also argue that the two actions arise out of the "same transaction or occurrence" because the Sosna-Huntington check-kiting is a primary feature of the Corrupt Practices Action and was also discussed, years after the Collection Action began, in Mr. Schneider's opposition to Huntington's motion for summary judgment in that case.  (*Id.* at 11-12.)  But that argument doesn't get the job done for Huntington either, as partial factual overlap, without far more, is insufficient to satisfy this element of the compulsory-counterclaim/res-judicata test.

Courts have explained the "same transaction or occurrence" requirement in several different ways, all of which lead to the conclusion that this prong of the compulsory-counterclaim/res-judicata test is not satisfied here.  Consider, first, the case of *Wilson v. Jo-Ann Stores, Inc.,* 2012-Ohio-2748, ¶ 12 (9th Dist.).  There, an employer brought a replevin action against two terminated employees for return of company documents that the employer claimed the former employees were not entitled to retain following termination.  *Id.* at ¶ 2, 3.  Following resolution of that action, the former employees filed a new suit for unlawful discrimination,

retaliatory discharge, and additional claims related to their termination. *Id.* at ¶ 2, 4. The trial court granted the employer's motion for summary judgment in the new suit, concluding that the employment claims were compulsory counterclaims that should have been raised in the replevin action. *Id.* at ¶ 4.

The court of appeals reversed.  On appeal, the parties agreed that the first prong of the compulsory-counterclaim test was satisfied because the employees' wrongful-termination claim was available and could have been raised when the employer brought its claim in the earlier action. *Id.* at ¶ 9.   The only issue, then, was whether the employment claims "arose out of the same transaction or occurrence" as the replevin action.   *Id.* (internal quotation marks and citation omitted).   The court of appeals found it "noteworthy that, from an elemental standpoint, the claims of discrimination and replevin lack even the slightest resemblance." *Id.* at ¶ 11.   The claims in the two matters (just like the claims in the Collection Action and those in the Corrupt Practices Action presently before this Court) were "distinctly different."  *Id.*   The court acknowledged that, if one viewed the claims in the two matters "in the absolute broadest sense," they certainly had a relationship (i.e., they originated in one way or another from the terminations), but that was insufficient to satisfy the second prong of the same-transaction-or-occurrence test. *Id.* at ¶ 13.

Properly understood, the "transaction or occurrence" that was the "subject matter" of the Collection Action was Mr. Schneider's alleged failure to meet his financial obligations as guarantor after default had occurred on the underlying business loan.  (*E.g.*, 9/22/25 MSJ Ex. A at ¶ 29 (alleging Mr. Schneider "personally guaranteed" the loan); *id.* at ¶ 30 (alleging that the borrowers were "in default"); *id.* at ¶ 32 (alleging that Mr. Schneider was therefore liable to Huntington).  Here, by contrast, the subject matter of Mr. Schneider's claims against Huntington and the individual Defendants is Defendants' role in an elaborate check-kiting scheme perpetrated

15

by Defendants and Harold Sosna.  Moreover, viewing them through the lens of *Wilson*, the two matters are not only premised on different transactional "subject matters," they also rest on very different legal bases and elements. While the claim in the Collection Action was premised on contractual obligation, the claims Mr. Schneider now brings against Huntington are for serious statutory violations. (*See generally* 4/26/23 Verified FAC.)

To be sure, the guaranty agreement that was the subject of the Collection Action is mentioned in Mr. Schneider's First Amended Complaint in the Corrupt Practices Action.  But, unlike the Collection Action, it is Defendants' participation in the Sosna-Huntington check-kiting scheme, and not the guaranty agreement, that forms the basis for the present Corrupt Practices Action.  That the guaranty plays a tangential role in this case does not mean that this matter and the Collection action arise from the same transaction or occurrence.  *See Wilson v. Jo-Ann Stores, Inc.,* 2012-Ohio-2748, ¶ 12 (9th Dist.) (a "tangential relationship" does not satisfy the second prong of the compulsory counterclaim test).

Along similar lines, the Ohio Supreme Court has endorsed a "logical relation" test for determining whether claims brought in an action arise from the same "transaction or occurrence" as those raised in a previous action.  *Rettig Ents. v. Koehler*, 68 Ohio St.3d 274, 278 (1994).  Under this test, claims arise out of the same transaction or occurrence "where separate trials on each of the[] respective claims would involve a substantial duplication of effort and time by the parties and the courts." *Id.*

Application of the "logical relation" test here shows that the claims raised in the Collection Action and Corrupt Practices Action are supported by very different bodies of proof.  Indeed, the proofs required to sustain the two distinct actions involve virtually no overlap.  The Collection Action required proof of a contract, of a default, and of a failure to pay. (*See generally* 9/22/25

16

MSJ Ex. A.)  The Corrupt Practices Action, by contrast, involves, among other things, evidence of knowing participation in (or negligence with respect to) an elaborate check-kiting scheme, of numerous separate instances of corrupt activity, of various benefits accruing to Defendants as a reward for their participation in the scheme, and of damages to Mr. Schneider and the businesses on whose behalf he also sues.  (*See generally* 4/26/23 Verified FAC.)  In other words, the legal and factual bases for the Collection Action, on the one hand, and the present Corrupt Practices Action, on the other, are apples and oranges.  The "logical relation" test thus also favors the conclusion that Mr. Schneider's claims are not part of the same "transaction or occurrence" as the breach-of-guaranty claim raised in the Collection Action.

Finally, consider the issue from yet another angle:  The Ohio Supreme Court has also stated that, for two actions to be based on the same "'transaction or occurrence,'" they must share a "'common *nucleus* of operative facts.'"  *Denton v. Bedinghaus*, 2002-Ohio-3273, ¶ 12 (1st Dist.) (emphasis added; quoting *Grava v. Parkman Twp.,* 73 Ohio St.3d 379, 382 (1995)).  The nucleus is, of course, the "core," *Random House Webster's Dictionary* 494 (4th Ed. 2001), or "the central and most important part . . . ," *The New Oxford American Dictionary* 1174 (2001).  The Collection Action centered on the alleged loan default and Mr. Schneider's role as a guarantor.  The check-kiting scheme was, at most, a background issue that arose only later in the litigation.  It certainly was not "the central and most important part" of the Collection Action.  By contrast, the check-kiting scheme and Defendants' role in it is indeed the "core" and "central and most important part" of the Corrupt Practices Action while the guaranty is a mere side issue.  Thus, while some tangential factual overlap between the two cases is certainly present, it is likewise undeniable that the factual nuclei—the factual centers—of the two cases are entirely different.

Because Defendants have also failed to meet their summary-judgment burden with respect to this second common prong of the compulsory-counterclaim/res-judicata test, their motion should be denied for this reason as well.

### III. <u>CONCLUSION</u>

For these reasons, Plaintiff Raymond Schneider respectfully asks the Court to deny Defendants' motion for summary judgment based on res judicata.

Respectfully Submitted,

<u>/s/ James R. Cummins</u>
James R. Cummins, Esq. (0000861)
Rebecca S. Rhein, Esq. (0102219)
Cummins Law LLC.
312 Walnut Street, Suite 1530
Cincinnati, Ohio 45202
Telephone:     (513) 721-9000
Fax:             (513) 721-9001
jcummins@cumminslaw.us
rrhein@cumminslaw.us

Emmett E. Robinson (0088537)
Robinson Law Firm LLC
6600 Lorain Avenue #731
Cleveland, Ohio 44102
Telephone:     (216) 505-6900
erobinson@robinsonlegal.org

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served upon the following by electronic mail this 31st day of October 2025:

Christopher P. Schueller (0086170)
Kelly M. Neal (0100889)
Jordon M. Webster (*pro hac vice*)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
412-562-8800
christopher.schueller@bipc.com
kelly.neal@bipc.com
jordon.webster@bipc.com
*Co-Counsel for Defendants*

Michael R. Gladman (0059797)
Dustin M. Koenig (0092426)
325 John H. McConnell Blvd., Suite 600
Columbus, Ohio 43215
mrgladman@jonesday.com
dkoenig@jonesday.com
*Co-Counsel for Defendant the Huntington National Bank and
Counsel for Non-Party Stephen Steinour*

/s/ James R. Cummins
James R. Cummins (0000861)

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

RAYMOND SCHNEIDER,                    )
                                      )        Case No. A2300849
            Plaintiff,                )
                                      )        Judge Wende C. Cross
      v.                              )
                                      )
                                      )
THE HUNTINGTON NATIONAL BANK, et      )
al.,                                  )
                                      )
            Defendants.               )

## AFFIDAVIT OF RAYMOND SCHNEIDER IN SUPPORT OF MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1.      My name is Raymond Schneider. I am over the age of 18 and have personal knowledge of each matter discussed herein. I am competent to testify as to all matters set forth in this affidavit. I am the plaintiff in Hamilton County Common Pleas Court case number A2300849 ("this Case").

2.      I did not participate, in any way, in the wrongdoing alleged in the First Amended Complaint in this Case.

3.      I was a 50% investor/owner at all relevant times of the four businesses (the "Businesses") on whose behalf I am suing derivatively in this Case.

4.      The check kiting and other wrongdoing alleged in the First Amended Complaint in this case did not benefit the Businesses. To the contrary, the check kiting and other wrongdoing caused the Businesses to take on tremendous additional debt and pushed them deeper into insolvency without any benefit. The check kiting and other wrongdoing was, rather, solely beneficial to Harold Sosna individually and to Huntington National Bank and the other Defendants in this Case.

5.      My attorneys served my answer in what Defendants have termed the "Collection Action" (Hamilton County Common Pleas Court civil case number A2002093) on July 20, 2020.

6.      At that time, I had only learned—through an 8-K filing by S&T Bank on May 26, 2020—

that Harold Sosna had engaged in a check-kiting scheme.

7.      At the time that my attorneys in the Collection Action served my answer, I had not learned

of the scope of the check-kiting scheme, had not learned that the check kiting even involved

accounts at Huntington National Bank, had not learned that Huntington National Bank or the

individual Defendants were involved with the check kiting in any way, had not learned of

Defendants' knowledge of the check kiting, and had not learned of Defendants' responsibility and

culpability in relation to that kiting activity.

8.      Throughout the Collection Action, my attorneys made multiple attempts to obtain

documents from Huntington, but Huntington opposed each of these efforts.

9.      According to the records that I have reviewed regarding the Collection Action, Exhibit A

attached hereto is true and accurate as to (1) the documents relied on in bringing the current

litigation, (2) the dates that these documents were first made available to me or my counsel, and

(3) how these documents were ultimately made available to me.  It is through these documents that

I first learned of facts crucial to the claims brought in this Case.


                Further Affiant sayeth naught.

                                              _____
                                              Raymond Schneider


Sworn and subscribed before me in ___Hamilton___ County, Ohio, this __30__ day of
November, 2023.

_____
Notary Public

EXHIBIT

**A**

| Document Group | Date the Document Group was First Made Available to Mr. Schneider | How the Document Group was Made Available to Mr. Schneider | Number of Days <u>After</u> the Collection Answer was Filed that the Document was First Available to Mr. Schneider |
|---|---|---|---|
| Internal Emails among Huntington Officials | 2/19/2021 | Produced during Discovery in the Collection Action | <u>215 days</u> |
| Harold Sosna Affidavit | 3/16/2021 | Publicly Filed | <u>240 days</u> |
| Sosna's Internal Emails | 6/21/2021 | Produced during Discovery in the Collection Action | <u>337 days</u> |
| February 25, 2020 Letter from Huntington to Harold Sosna | 7/19/2021 | Produced during Discovery in the Collection Action | <u>365 days</u> |
| March 24, 2020 Letter from Huntington to Harold Sosna | 7/19/2021 | Produced during Discovery in the Collection Action | <u>365 days</u> |
| *S&T Bank vs. Advance Merchant Services,* Hamilton County, Ohio, Case No. A2102471 | 7/19/2021 | Publicly Filed | <u>365 Days</u> |