**"EXHIBIT C"**

**COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO
Judge Christian A. Jenkins
Case No. A2300849**

RAYMOND SCHNEIDER, as an individual,
and derivatively on behalf of EUCLID
HEALTH CARE, INC., KENWOOD
TERRACE HEALTH CARE CENTER, INC.,
SOUTHBROOK HEALTHCARE CENTER,
INC. AND BEECHWOOD TERRACE
CENTER, INC.,

      Plaintiffs,

    vs.

THE HUNTINGTON NATIONAL BANK,
GARETT VETTER, AMY BECKER,
SUZANNE MEYERS, TROY JONES,
DAVE EMIG, MIKE VIREN, DAVID
WECHTER, JAMES R. GENTRY, ANGIE
QUATTRONE, MARIA STEINER,
MARINA KRIVENKO and CHRIS
HOFFMAN,

      Defendants.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT BASED ON RES JUDICATA**

                            **BUCHANAN INGERSOLL & ROONEY PC**

      By:    */s/ Christopher P. Schueller*
             Christopher P. Schueller (Ohio ID 0086170)
             Kelly M. Neal (Ohio ID 100889)
             Union Trust Building
             501 Grant Street, Suite 200
             Pittsburgh, PA 15219
             Tel: (412) 562-8800
             Fax: (412) 562-1041
             christopher.schueller@bipc.com
             kelly.neal@bipc.com
             *Attorneys for Defendants*

## I.    INTRODUCTION[1]

Plaintiffs make three arguments against summary judgment, and none have merit.  **First**, the Plaintiffs argue that Schneider did not and could not have litigated his claims in the Collection Action because he did not possess all the information he needed to assert those claims until after Schneider filed his Answer in the Collection Action.  However, the undisputed facts establish that Schneider did litigate his claims as an affirmative defense in the Collection Action.  Furthermore, Schneider admits he received all the information on his lender liability claims at least a year before the Judgment was entered.  Therefore, Schneider had a full and fair opportunity to amend his Answer at any time to assert counterclaims in the Collection Action.  All this supports a finding of res judicata.

**Second**, Schneider argues that there were different transactions or occurrences at issue in the Collection Action.  This is wrong.  Both the Collection Action and the Lender Liability Action involve (i) the Loan, (ii) the check kiting, and (iii) the breach of an alleged duty of Huntington in the administration of the Loan, including failure to inform Schneider of check kiting at the companies he owns.

**Third**, Plaintiffs argue that Defendants waived their res judicata defense because, on a previous motion for summary judgment, the Defendants withdrew their summary judgment argument based on a compulsory counterclaim defense to focus the summary judgment record on Defendants' res judicata arguments.  This is not a clear, unequivocal or decisive waiver of any defense let alone the res judicata defense.

For these and other reasons discussed in more detail below, Defendants respectfully request that the Court grant their motion for summary judgment.

---

[1]    Unless noted otherwise, defined terms herein are the same as the defined terms in the Defendants' opening brief.

## II.     BACKGROUND

In their opposition, Plaintiffs disclosed exactly when they claim to have received all the evidence they needed to support their lender liability claims.  Building on the information the Plaintiffs placed into the record, set forth below is the same chart provided by the Plaintiffs but with additional columns to calculate the number of days between the time Schneider obtained his evidence and (i) the date Schneider opposed Huntington's summary judgment motion in the Collection Action, and (ii) the date the Judgment was entered.  These additional columns will be highly relevant in the legal argument section of this memo.  It cannot be disputed that Schneider could have filed a motion to amend his Answer in the Collection Action to assert lender liability counterclaims.  That means Schneider had a full and fair opportunity to litigate those counterclaims in the Collection Action, and his failure to do so conclusively establishes res judicata.

Here is the chart:

| Document Group | Date the Document Group was First Made Available to Mr. Schneider | How the Document Group was Made Available to Mr. Schneider | Number of Days After the Collection Answer was Filed that the Document was First Available to Mr. Schneider | Number of Days Before Mr. Schneider Opposed Huntington's Summary Judgment Motion (August 10, 2022) | Number of Days Before Judgment Entered (December 13, 2022) |
|---|---|---|---|---|---|
| Internal Emails among Huntington Officials | 2/19/2021 | Produced during Discovery in the Collection Action | 215 days | 537 days | 662 days |
| Harold Sosna Affidavit | 3/16/2021 | Publicly Filed | 240 days | 512 days | 637 days |

2

| | | | | | |
|---|---|---|---|---|---|
| Sosna's Internal Emails | 6/21/2021 | Produced during Discovery in the Collection Action | <u>337 days</u> | <u>415 days</u> | <u>540 days</u> |
| February 25, 2020 Letter from Huntington to Harold Sosna | 7/19/2021 | Produced during Discovery in the Collection Action | <u>365 days</u> | <u>387 days</u> | <u>512 days</u> |
| March 24, 2020 Letter from Huntington to Harold Sosna | 7/19/2021 | Produced during Discovery in the Collection Action | <u>365 days</u> | <u>387 days</u> | <u>512 days</u> |
| *S&T Bank vs. Advance Merchant Services,* Hamilton County, Ohio, Case No. A2102471 | 7/19/2021 | Publicly Filed | <u>365 Days</u> | <u>387 days</u> | <u>512 days</u> |

### III.    ARGUMENT

### A.    ALL FOUR REQUIREMENTS OF RES JUDICATA HAVE BEEN SATISFIED.

Res judicata applies when there is (i) a prior final, valid decision on the merits by a court of competent jurisdiction, (ii) a second action involving the same parties or those in privity with the parties, (iii) a second action which raises claims which were, or could have been, litigated in the first action, and (iv) the second action arises out of the transaction or occurrence which was the subject matter of the previous action. *Wright v. Heller*, 2018-Ohio-149, 102 N.E.3d 1285, ¶ 21 (App. 1st Dist. 2018). Res judicata applies when a party had a "full and fair opportunity" to litigate the claims in the first case. *Ajz's Hauling, LLC v. Trunorth Warranty Programs of N. Am.*, 2023-Ohio-3097, 174 Ohio St. 3d 241, ¶ 19, 236 N.E.3d 176 (2023); *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St. 3d 193, 198, 443 N.E.2d 978 (1983) ("The main legal thread which

3

runs throughout the determination of the applicability of *res judicata* * * * is the necessity of a fair opportunity to fully litigate and to be heard in the due process sense").

Here, the Plaintiffs do not dispute the applicability of the first two requirements of res judicata (the Judgment is final, and the second action involves the same parties or those in privity with them).  Instead, the Plaintiffs challenge the third and fourth requirements (full and fair opportunity to litigate and the same transaction or occurrence).  For the reasons discussed below, Plaintiffs' arguments fail as a matter of law.

**1.      Schneider Actually Litigated, And Had A Full And Fair Opportunity To Litigate, His Claims In The Collection Action.**

(1)      Schneider Actually Litigated His Claims In The Collection Action.

"A final judgment is conclusive as to all claims which **were** or might have been **litigated** in a first lawsuit" (emphasis added).  *Stand Energy Corp. v. Ruyan*, 2005-Ohio-4846, ¶ 12 (App. 1st Dist. 2005).  In the Lender Liability Action, Plaintiffs claim that Huntington knew about the check kiting at the companies owned by Schneider;  failed to disclose the check kiting to Schneider; and have been damaged by the Loan defaults triggered by the check kiting.  However, Schneider already litigated these arguments in the Collection Action.  Schneider made these exact arguments as an affirmative defense in the Collection Action.  For example, in his opposition to Huntington's summary judgment motion in the Collection Action, Schneider argued: "HNB's failure to disclose its knowledge of the check-kiting scheme to Schneider when it was discovered in February 2020 prevented Schneider from having any opportunity to step in and mitigate any losses and salvage the Keller Group companies." [Ex. C at pp. 20-22][2]  In the Collection Action, Schneider lost on all his arguments and the Judgment was entered against him.  But the key point

---

[2] The exhibit reference is to the opening motion papers of the Defendants.

4

here is that Schneider and his privies already had their day in court on their claims.  This satisfies

the third prong of the res judicata test.

(2)     <u>Schneider Could Have Asserted His Lender Liability Claims As Counterclaims In The Collection Action</u>.

A party has a liberal right to amend a complaint or answer to add a claim during litigation.

Civ. R. 15(A) ("The court shall freely give leave when justice so requires");  *Westfield Cos. v.*

*O.K.L. Can Line*, 2003-Ohio-7151, ¶¶ 42-43, 155 Ohio App. 3d 747, 762, 804 N.E.2d 45, 56–57

(App. 1ˢᵗ Dist. 2003) ("Leave of court to amend or supplement a pleading should be freely given").

Because of the liberal rules on amending pleadings, courts routinely grant leave to amend when

new facts supporting new claims became known for the first time during discovery.  *Restaurant*

*Developers Corp. v. Peterson Group, Inc.*, 2005-Ohio-5448; 2005 WL 2600662 (App. 8ᵗʰ Dist.

2005) (leave to amend answer granted to assert new counterclaim when facts supporting the new

counterclaim were obtained for the first time during discovery); *ABN AMRO Mtge Group, Inc. v.*

*Evans*, 2008-Ohio-4223; 2008 WL 3870623 (App. 8ᵗʰ Dist. 2005) (in mortgage foreclosure action,

trial court abused its discretion by denying defendant's motion for leave to amend answer to assert

lender liability counterclaims after discovery revealed the existence of counterclaims).

Where facts supporting a claim are discovered before or during the first lawsuit,  that is a

claim which "could have been" litigated in the first lawsuit.  *Grava v. Parkman Twp.*, 73 Ohio

St.3d 379, 381-383, 653 N.E.2d 226, 229-230 (1995). Moreover, even if facts supporting a new

claim were never discovered during the first lawsuit, but were only "discoverable," that still

qualifies as a claim which "could have" been litigated in the first lawsuit.  *Stand Energy Corp,*

2005-Ohio-4846, ¶ 15 (because fraudulent conveyances were "discoverable" in the first lawsuit, a

party could not bring a separate lawsuit based on those fraudulent conveyances); *Montgomery v.*

*Vargo*, 2018-Ohio-742, ¶ 21, 107 N.E.3d 799 (App. 8ᵗʰ Dist. 2018) (defective condition of real

5

estate was not a hidden defect and therefore all claims relating to the defect could have been litigated in the first lawsuit).  A party which fails to avail itself of the opportunity to amend a complaint or answer to assert a claim based on discovered or discoverable facts does so at its own peril;  res judicata will bar future claims.  *Brown v. State*, 2019-Ohio-4376, ¶ 35, 147 N.E.3d 1194 (App. 6th Dist. 2019) (res judicata applies where plaintiff could have, but failed to, amend his complaint in the first action to assert a new claim created by a new statute issued during the pendency of the first action).  This should be no surprise because the availability of the liberal amendment procedures creates a full and fair "opportunity" to litigate claims based on information obtained for the first time during discovery.  *See Goodson*, 2 Ohio St. 3d at 198, 443 N.E.2d 978.

Here, Schneider had a full and fair opportunity to litigate his lender liability claims in the Collection Action.  Schneider clearly knew about the Loan and the check kiting before he filed his Answer in the Collection Action.  Moreover, by his own admission, during discovery in the Collection Action, Schneider received all the documents which formed the basis for his lender liability claims.  In fact, he received these documents at least 387 days before filing opposition to Huntington's summary judgment motion in the Collection Action and at least 512 days before the Judgment was entered.  Schneider had plenty of time and opportunity to amend his Answer in the Collection Action to assert his lender liability counterclaims.  This opportunity is all that is required for res judicata to be satisfied.

This is not a situation where "[a] previously undiscovered claim arising from newly discovered facts' is raised in the second lawsuit." *Weber v. MTH Real Est. LLC*, 2025-Ohio-566, ¶ 15  (App. 2d Dist. 2025), *quoting Montgomery*, 2018-Ohio-742, at ¶ 19, 107 N.3d 799.  Here, there are no newly discovered facts.  Schneider possessed all the facts supporting the lender liability claims during the first lawsuit.

6

Plaintiffs argue that because they allegedly did not know all the information which supports their lender liability at the time they filed their Answer in the Collection Action, they could not have litigated their lender liability claims in the Collection Action. But this is not the law. Res judicata applies if claims "could have" been asserted in the first action. Schneider could have asserted counterclaims in the Collection Action through a motion to amend. This satisfies the third prong of res judicata.

(3)    Plaintiffs Cannot Recast The Res Judicata Defense As A Failure To Assert A Compulsory Counterclaim Defense, And In Any Event, There Is No Knowledge Qualifier For A Compulsory Counterclaim Defense.

Because the law on res judicata is decidedly against them, the Plaintiffs argue that the res judicata defense should be recast as a failure to assert a compulsory counterclaim defense. Plaintiffs then argue that a failure to assert a compulsory counterclaim defense fails where, as here, Schneider allegedly did not know of the facts supporting his lender liability claims at the time he filed his Answer in the Collection Action. Of course, the glaring problem with this argument is that res judicata and the failure to assert a compulsory counterclaim are different defenses with different names and different legal requirements. Another glaring problem is that Defendants have asserted a res judicata defense. Plaintiffs cannot ignore this and recast the defense into another defense where they believe they may have a stronger hand to play.

Aside from this, Plaintiffs are wrong on the law. Defendants have a valid compulsory counterclaim defense. A compulsory counterclaim must "exist" at the time an Answer is filed *Geauga Truck & Implement Co. v. Juskiewicz*, 9 Ohio St. 3d 12, 14, 457 N.E.2d 827, 829 (1984). Here, the lender liability claims based on check kiting "existed" before Schneider filed his Answer in the Collection Action. Plaintiffs try to skirt around this issue by arguing that a claim cannot "exist" unless the claim is "known." However, this is not the law. Courts only require that the claim "exist" at the time an Answer is filed. *E.g. Geauga Truck & Implement Co*, 9 Ohio St. 3d at

7

14, 457 N.E.2d at 829.  There is no knowledge qualifier.  *Id.*  In fact, if there was a knowledge

qualifier, the standard would not be that the claim "exists."  In that scenario (which is not the

current law), the word "exists" would be superfluous and the standard would simply be "known

claims."

Plaintiffs cite a few Ohio cases to manufacture a knowledge qualifier.  But none support

such a qualifier.  In *NASA Tool Mfg. Corp. v. Cincinnati Milacron, Inc.,* 12th Dist. No. CA84-09-

062, 1985 Ohio App. LEXIS 6593, at *17 (Apr. 29, 1985), the dispositive issue was the existence

of the facts, not knowledge of the facts.  *Id.* at p.5 ("As it is not clear from the face of the complaint

when the alleged fraud occurred, we are unable to say with certainty that the fraud should have

been raised as a compulsory counterclaim in the [prior] proceeding").  Also, Plaintiff misstates the

holding in *Cooper v. Commer. Savs. Bank,* 2015-Ohio-4131 (App. 3d Dist. 2015).  There, the

Court noted that the standard is whether a claim "existed" and found that the claims clearly existed

when a party knew about the claims.  However, the Court never held that knowledge of a claim is

the ***only*** way to establish the "existence" of a claim.

Similarly, in *Get Your Back on Track, LLC v. Bashee 3652 LLC*, Hamilton C.P. No.

A2003571, 2024 Ohio Misc. LEXIS 1494 (Oct. 31, 2024) the Court never stated that a claim only

"exists" when it is "known."  Furthermore, the Court held that the transaction in the second action

had been intentionally concealed from the Plaintiff.  *Id.* at p.6 ("The Defendants do not dispute

that Knight was not told about the March 2018 sale").  This made the case akin to a concealed

defect case where res judicata does not apply.  *Id.* (citing *Montgomery v. Vargo, supra,* which

discusses hidden defect situations).  By contrast, with Schneider it is not disputed that he knew

about all the facts to support his lender liability claims for over a year before he opposed

Huntington's summary judgment motion.  No facts were ever concealed from Schneider.

8

In desperation, Plaintiffs look to two other jurisdictions (Alaska and Maine) for support, but even this non-binding authority fails to help the Plaintiffs. In *Dickerson v. Goodman*, 161 P.3d 1205, 1208 (Alaska 2007), an Alaska Court does not apply the "claim exists" standard and never states that a claim "exists" only when it is "known." Furthermore, the holding of the Alaska Court actually cuts against the idea that a claim only "exists" when it is "known." The Alaska Court grappled with the excuse proffered by a plaintiff for failing to allege a counterclaim in a prior action. The plaintiff admitted that she knew all the elements of her counterclaim in the prior action but because she did not know the extent of her damage, she argued she could not have asserted a counterclaim in the prior action. The Alaska Court rejected this reasoning and held that the plaintiff should have brought the counterclaim in the prior action even though she did not know the extent of her damages. Hence, lack of knowledge was not an excuse for failing to assert a compulsory counterclaim.

Similarly, in the unpublished decision *Pullen v. Pierce*, 1993 Me. Super. LEXIS 134 (Superior Ct. Lincoln Co. July 14, 1993), an intermediate appellate court in Maine never applied the Ohio "claim exists" standard and never stated that a claim "exists" only when it is "known." Instead, the Maine Court grappled with a legal malpractice claim and whether an attorney should have asserted a res judicata defense for a client. There was a boundary dispute in the first action involving a 19 acre parcel. The client won that boundary dispute. Five years later, a second boundary dispute arose between the same parties but involving an entirely different 40 acre parcel. The client lost the second boundary dispute. The client then sued his attorney and argued that the attorney committed malpractice by not asserting a res judicata defense in the second action. The Maine Court rejected this argument and held that because the two actions involved two different parcels of land and there was no dispute over the 40 acre parcel for over 5 years, the actions did

9

not involve the same transactions.  The Maine Court never held that a claim "exists" only when it is "known."

**2.      The Lender Liability Claims Arose Out of the Same Transaction Or Occurrence That Was At Issue in the Collection Action.**

The Collection Action and Lender Liability Action each involve the (i) Loan, (ii) check kiting, and (iii) the alleged breach of a duty by Huntington in the administration of the Loan, including the failure of Huntington to warn Schneider about the check kiting at his own companies.  As detailed in Defendants' opening brief, references to the Loan, check kiting and failure to warn are replete in both actions.  For example, the Loan Documents are attached as exhibits to the complaints in both actions.  As another example, Schneider submitted the Sosna Affidavit in opposition to Huntington's summary judgment motion in the Collection Action and attached that same affidavit as an exhibit to the complaint in the Lender Liability Action.  Even Plaintiffs' expert report of Bobby Winstead, filed three days after Huntington filed its Motion for Summary Judgment, acknowledges that this "dispute centers on the claim that Huntington National Bank failed to inform Raymond Schneider, as a guarantor, of material adverse information regarding the condition of Premier and its entities." (Winstead Report, p. 4, "Nature of the Dispute").  The report says that this case relates to "the Bank's lending relationship and lending and credit risk administration and management practices as they relate to Raymond Schnieder…" and whether "the Bank exercised good faith and fair dealing in administering the guarantee of Schneider." (Winstead Report, p. 1, "Nature of Engagement").  Both cases clearly involve the same transactions and occurrences.

All Plaintiffs' arguments to the contrary run afoul of Ohio Supreme Court guidelines on res judicata.  The Ohio Supreme Court stated:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar * * *, the claim extinguished includes

all rights of the plaintiff to remedies against the defendant with respect **to all or any part of** the transaction, or series of connected transactions, out of which the action arose.

That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. **This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.**

*Grava*, 73 Ohio St.3d at 382, 653 N.E.2d at 229 (citations omitted)(emphasis added).  All of the Plaintiffs' arguments run afoul of *Grava* in one way or another.  Here is a chart which summarizes the arguments, how they run afoul of Grava, and further reasons why Plaintiffs' arguments have no merit:

| Plaintiffs' Attempt to Distinguish the Cases | Plaintiffs' Explanation of Differences: | Plaintiffs' Attempt to Distinguish Fails under *Grava* because: |
|---|---|---|
| The Loan is relevant to the cases in different ways (Response, p. 14). | <u>Collection Action</u>: Loan was relevant on liability and damages.<br><br><u>Lender Liability Action</u>: Loan only relevant on damages element. | • The Judgment extinguished claims relating to all or **any part of** the Loan transaction.<br><br>• Plaintiffs are merely attempting to emphasize different elements of the same Loan transaction.<br><br>• The administration of the Loan and relationship between Huntington, as lender, and Plaintiffs, as borrowers and guarantor, underlie both cases. |

11

| The causes of action are different. (Response, p. 15-16). | Collection Action: Involved breach of contract claim.[3]<br><br>Lender Liability Action: Involves "serious statutory violations." | • Plaintiffs are merely attempting to change the legal theory based on the same underlying transactions.<br><br>• Plaintiffs are merely changing their requested relief based on the same facts. In the Collection Action, Schneider raised affirmative defenses to try to escape liability on the Loan based on the alleged conduct of Huntington relating to the administration of the Loan. In the Lender Liability Action, the Plaintiffs seek money damages based on the same alleged conduct. |
|---|---|---|
| The proof required for the causes of action are different. (Response, p. 16-17). | Collection Action: Requires evidence of a contract, default and failure to pay.<br><br>Lender Liability Action: Requires evidence of knowing or negligent participation in check kiting scheme. | • The Judgment extinguished claims relating to all or **any part of** the Loan and check kiting transactions.<br><br>• Plaintiffs are merely attempting to emphasize different elements of the same Loan and check kiting transactions.<br><br>• Plaintiffs are merely attempting to change the legal theory of relief based on the same Loan and check kiting transactions.<br><br>• In both actions, Plaintiffs alleged that Huntington breached duties to Schneider, failed to mitigate damages in administration of the Loan, and failed to disclose to Schneider the check kiting at the companies owned by Schneider. In both actions, this requires evidence of check kiting and a duty to inform Schneider which was breached by Huntington. |

**B.   DEFENDANTS NEVER WAIVED ANY DEFENSES.**

The First District established the following standard for a waiver:

Waiver is the voluntary relinquishment of a known right. A party can waive a right by express words or through conduct that is inconsistent with that right. But mere silence will not amount to waiver where one is not bound to speak. A party asserting waiver must prove it by establishing a clear, unequivocal, decisive act by the other party, demonstrating the intent to waive. That is the party must

---

3    Plaintiffs focus entirely on the causes of action and proof required for Huntington's affirmative claim (breach of contract) in the Collection Action. Plaintiffs neglect to analyze the 14 *affirmative defenses* Schneider pled in the Collection Action relating to, among other things, the administration of the Loan. [Ex. B, pp. 5-6]

demonstrate (1) that the party knew of its right to assert an argument or defense and (2) that the totality of the circumstances establish that the party acted inconsistently with that right.

*The William Powell Co. v. Onebeacon Ins. Co.*, 2020-Ohio-5325, ¶ 38, 162 N.E.3d 927 (App. 1st Dist. 2020) (internal citations and quotations omitted).  Here, the Defendants never waived their res judicata or any other defense.

As evidence of waiver, Plaintiffs cite to the record on Defendants' first summary judgment motion filed at the outset of the case and prior to any discovery.  At that time, Defendants withdrew their failure to assert a compulsory counterclaim argument ***and expressly stated that the Defendants would continue to advance a res judicata argument***.  That is not a "clear, unequivocal or decisive" waiver of a res judicata defense.

## IV.   CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant the Motion and dismiss all claims against all Defendants with prejudice based on res judicata, and award other and further appropriate relief.

Respectfully submitted,

Dated:  November 17, 2025      **BUCHANAN INGERSOLL & ROONEY PC**

By:    */s/ Christopher P. Schueller*

Christopher P. Schueller (Ohio ID 0086170)
Kelly M. Neal (Ohio ID 100889)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel: (412) 562-8800
Fax: (412) 562-1041
christopher.schueller@bipc.com

*Attorneys for Defendants*

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of November, 2025 a true copy of the foregoing was

served via electronic mail and first-class mail, postage prepaid upon the following:

James R. Cummins
Rebecca S. Rhein
CUMMINS LAW LLC
312 Walnut Street, Suite 1530
Cincinnati, OH 45202

Emmett E. Robinson, Esquire
Robinson Law Firm LLC
6600 Lorain Avenue, #731
Cleveland, OH 44102

*Counsel for Plaintiffs*

/s/ *Christopher P. Schueller*
Christopher P. Schueller (Ohio ID 0086170)
Kelly M. Neal (Ohio ID 0100889)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel: (412) 562-8800
Fax: (412) 562-1041
christopher.schueller@bipc.com

*Attorneys for Defendants*

14