## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No: 25-12607 |
| Raymond Joseph Schneider, | : | Chapter 11 |
| | : | |
| Debtor and Debtor in Possession. | : | Judge Beth A. Buchanan |

## DEBTOR'S MOTION TO EXTEND EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES

Raymond Joseph Schneider, the debtor and debtor in possession (the "Debtor"), moves the Court pursuant to 11 U.S.C. § 1121(d) and Local Bankruptcy Rule 3016-1 to extend the Debtor's exclusive right to file a chapter 11 plan and the attendant solicitation period by 90 days. This is the Debtor's first request for an extension. The current exclusivity period expires on February 14, 2026. If granted, this motion would set a new exclusivity date on May 15, 2026, and the attendant solicitation period would then expire on July 14, 2026. Prior to filing this motion, the Debtor sought input from the United States Trustee on a potential extension of the exclusivity periods. Counsel for the UST indicated that the UST would not object to a 90-day extension.

A proposed order granting this motion is attached as Exhibit A. In accordance with Local Bankruptcy Rule 3016-1(b), the proposed order is being submitted at the time the motion is filed, and the order contains the required objection notice language. A memorandum in support follows.

Respectfully submitted,

 /s/ James A. Coutinho
James A. Coutinho     (0082430)
Andrew D. Rebholz     (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
T: (614) 221-8500; F: (614) 221-5988
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel for Debtor / Debtor in Possession*

## MEMORANDUM IN SUPPORT

### I.    BACKGROUND

In accordance with the requirements of Local Bankruptcy Rule 3016-1(a), this section contains the required contents of a motion to extend the exclusivity periods, including:

(1)    a brief description of the procedural status of the case, including the petition filing date and any previous enlargements of time to file a plan;

(2)    the reason for the requested enlargement;

(3)    whether a committee appointed under the Code has consented to the requested enlargement; and

(4)    the length of time for which the enlargement is sought.

*See* LBR 3016-1(a).

### A.    Procedural Posture of Bankruptcy Case (LBR 3016-1(a)(1))

1.    On October 17, 2025 (the "Petition Date"), the Debtor filed his voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate and manage his affairs as debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108. No trustee, examiner, or statutory creditors' committee has been appointed in this case.

2.    This is the second chapter 11 bankruptcy filing for the Debtor. The first case—Case No. 23-10337 (the "First Case")—was filed on March 2, 2023, and dismissed on February 27, 2024, after the Debtor moved for a voluntary dismissal. *See Memorandum Opinion Granting Debtor's Amended Motion to Voluntarily Dismiss Chapter 11 Case*, First Case Doc. 344 (the "Dismissal Opinion"), and *Order Dismissing Chapter 11 Case*, First Case Doc. 345.

3.      The Debtor's primary reason for dismissing the First Case was that the judgment in favor of Huntington had been overturned on appeal to the Ohio First District Court of Appeals. Dismissal Opinion at pg. 6. However, on August 20, 2025, the Ohio Supreme Court reversed, reinstating the judgment in favor of Huntington. *Huntington Natl. Bank v. Schneider*, 2025-Ohio-2920, *reconsideration denied sub nom. Huntington Natl. Bank v. Schneider*, 2025-Ohio-3266, 179 Ohio St. 3d 1478.

4.      After its judgment was revived, Huntington reinitiated its collection efforts, including filing over a dozen garnishments against the Debtor's accounts, filing for charging orders, instructing the local Sheriff to seize personal assets, filing a fraudulent transfer complaint, and seeking the appointment of a receiver. Like the First Case, this second chapter 11 filing was initiated to stop collection actions by Huntington and to provide the Debtor with an opportunity to submit a plan of reorganization to restructure his financial affairs under the protections offered by the Bankruptcy Code.

5.      The background of the Debtor is familiar to the Court and the parties to this case. The Court has heard testimony regarding the Debtor's background and financial affairs and has written opinions detailing those facts in the First Case. *See* Dismissal Opinion; *see also Order Denying Emergency Motion of The Huntington National Bank for the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)*, First Case Doc. 78.

6.      Based on the Petition Date, the exclusivity period for the Debtor to file a chapter 11 plan is currently set to expire on February 14, 2026, and the attendant solicitation period is set to expire on April 15, 2026.

7.      This is the first request by the Debtor to extend the exclusivity periods.

8.      Since the filing of this case, the Debtor has engaged in a wide variety of activities necessary to meet the requirements of a debtor in possession under the Bankruptcy Code and to advance towards the eventual filing of a plan of reorganization.

9.      **Transition into Chapter 11; UST Requirements:** Upon filing the chapter 11 case, the Debtor began the work of transitioning into the role of debtor in possession. New bank accounts were opened, processes were established for tracking financial transactions for completion of monthly operating reports, pre-petition account closures were processed, and the Debtor communicated with creditors regarding the filing and transition. Upon filing, the United States Trustee provided its operating requirements for chapter 11 debtors and a list of requested forms and documentation. The Debtor worked to provide all required forms and documents to the UST. The Debtor further appeared at the Initial Debtor Interview and a long § 341 meeting conducted by the UST. The Debtor filed a motion to have a proof of claim bar date established, and the Court set the bar date for December 29, 2025 (Doc. 18). A total of 26 claims were filed with a total value of $130,776,585.15, which primarily consists of alleged guarantees of business debt.

10.     **Preparation of Schedules and Related Documents:** The Debtor did not file his schedules and related documents with the petition and obtained an order from the Court (Doc. 37) permitting the Debtor additional time to file the required documents. The schedules and related documents were filed on November 14, 2025 (Doc. 50). Although the Debtor had previously filed schedules in the First Case, it was a large undertaking to update the schedules and related documents, ensure their accuracy, and add additional detail for changed circumstances and recent transactions. In particular, the Debtor and his counsel updated information about the dozens of entities that are owned by the Debtor (Schedule A/B Nos. 19.1 through 19.43; and even more entries on Statement of Financial Affairs Question 27). In addition, due to the litigation in the First

Case, the Debtor took care to ensure that the schedules were complete and accurate to the best of his ability. The schedules and related documents were 124 pages.

11.     **Professional Employment:** The Debtor has filed appropriate applications to employ needed professionals, including bankruptcy counsel and special counsel. The Debtor further sought and obtained approval of interim compensation procedures for professionals. In addition, the Debtor has been working to find and engage a professional appraiser to assist with valuation of the Debtor's numerous business interests. Yesterday, February 12, 2026, the Debtor filed the *Application to Employ GBQ Consulting, LLC, as Appraiser* (Doc. 102), seeking authority to hire GBQ Consulting, LLC, and Rebekah Smith in particular, as an appraiser (the "Appraiser") to assist with the extensive valuation matters necessary to formulate and present a chapter 11 plan capable of being confirmed in this case.

12.     **Reporting:** The Debtor has further worked to comply with the reporting requirements of a chapter 11 debtor and is current on the filing of monthly operating reports. The Debtor and his counsel spent a great deal of time preparing the company reports that were required under Bankruptcy Rule 2015.3. Due to the massive amount of information that needed to be compiled for the Rule 2015.3 reports, the Debtor requested an extension of time, which the Court granted (Doc. 77). The Debtor filed reports on the financial condition of 31 different entities on December 15, 2025 (Doc. 75), which information will be part and parcel with any disclosure statement filed by the Debtor and the confirmation proceedings upon his future plan.

13.     **Huntington Litigation and Document Production:** The Debtor's case was primarily filed as a result of collection efforts by Huntington, and it was anticipated that there would be litigation in this proceeding related to Huntington's claim. As the Court is aware, Huntington filed a motion seeking to conduct a Rule 2004 examination of the Debtor (Doc. 41),

and the Debtor filed a memorandum in opposition to the breadth and procedure of the requested examination (Doc. 69). Since then, the Court has conducted a status conference, entered a preliminary order on initial document production matters (Doc. 87), and is scheduled to hold a discovery conference with the Debtor and Huntington on February 23, 2026. The Debtor has completed an initial production of documents, has worked with Huntington on an agreed protective order, and is collecting additional information for ongoing production.

14.     In addition to the discovery matters with Huntington, the Debtor has continued his pursuit of claims against Huntington in the Hamilton County Court of Common Pleas, including through taking the deposition of Huntington's president. The Debtor's lawsuit, more particularly described in the application to employ special counsel (Doc. 71), seeks a massive recovery against Huntington for, among other claims, civil racketeering and civil liability for criminal acts. The state court is currently considering a dispositive motion filed by Huntington. If that motion is granted, it may resolve the litigation (subject to any appeal); if it is denied, the case is expected to be set for trial in the coming months.

15.     **Ongoing Business Operations; Creditor Activity:** Despite having additional burdens and requirements as a chapter 11 debtor-in-possession, the Debtor has also continued to operate his business affairs. Given the number of businesses that the Debtor owns, this is a large undertaking for the Debtor's small team, but the Debtor has continued to manage his affairs appropriately. In addition, while the Debtor's dispute with Huntington is front and center in this case and absorbs a substantial amount of time and resources of the Debtor's team and his professional advisors, there are multiple other creditors with a keen interest in these proceedings. The Debtor has discussed the case and its outlook with multiple creditors, provided information to them, and worked to ensure that his bankruptcy filing did not disrupt ongoing creditor relations.

16.     **Plan and Disclosure Statement Preparation:** While all the foregoing action was proceeding, the Debtor has been working on the formulation of a chapter 11 plan and the preparation of matters for a disclosure statement. As to the latter, the collection and organization of documents for the schedules, SOFA, and Rule 2015.3 reports were done with the eventual disclosure requirements of a plan; however, the disclosure statement in this case will still be a massive undertaking due to the number of businesses that the Debtor currently owns and has previously owned. Regarding a potential plan, the Debtor has been focusing on multiple plan development fronts. First, the Debtor recognizes that certain entities will need to be sold or liquidated to fund a plan, and the Debtor has begun that process. For example, the Debtor has worked to have The Red Corner list multiple residential units for sale, the proceeds of which (after payment of secured debt in that non-debtor entity) will be available to the Debtor. In addition, the Debtor is exploring the sale of the real property owned by The Gatherings of Blue Ash, LLC, and has continued efforts to sell the business and real estate owned by Northern Kentucky Assisted Living, LLC, and Northern Kentucky Retirement Community, LLC.[1] In addition, the Debtor has begun discussions regarding the sale of certain minority interests that he holds to co-owners of those companies that may be interested, though those discussions are in early stages.

17.     Second, the Debtor acknowledges that valuation of his various entities will be extremely important to meet the best interest of creditors test of 11 U.S.C. § 1129(a)(7). To that end, the Debtor has been collecting information that will be needed to complete those valuations and has found and engaged the Appraiser to assist in this task. The Appraiser's role will be

---

[1] At this time, it is anticipated that the assets of these non-debtor companies will be sold by the companies themselves at the entity level. In the event that the Debtor were to sell his membership interests in the companies, the broker for such sale would be employed and the sales would be subject to Court approval. The Debtor is working to ensure that any liquidation of company assets maximizes value.

especially important to evaluate companies where the Debtor does not have a controlling interest, and where there may be restrictions on the Debtor's actions in the operating agreements that affect value.

18.     Third, the Debtor has started his investigation into potential chapter 5 causes of action. In particular, on January 15, 2026, the Debtor filed a *Notice of Removal* (Doc. 94) of the lawsuit captioned *The Huntington National Bank v Schneider, et al.*, which was filed by Huntington in the Hamilton County Court of Common Pleas a few weeks prior to the Petition Date (the "Fraudulent Transfer Case"). The Fraudulent Transfer Case relates to transactions that Huntington alleges were fraudulent transfers, among other things, which are claims included as property of the bankruptcy estate. The Debtor will be seeking to have himself, as debtor in possession and on behalf of the bankruptcy estate, substituted as the real party in interest. The Debtor's counsel has been researching the validity and value of the claims to assist in the Debtor's evaluation. In addition, the Debtor, through his own counsel and counsel for potential fraudulent transferees, has engaged in preliminary discussions regarding the resolution of claims, although those discussions are early.

19.     Fourth, the Debtor has worked with his business team and legal team to begin to devise a budget for a plan of reorganization. For an individual Debtor, 11 U.S.C. § 1129(a)(15) requires the Debtor to commit at least five years of his projected disposable income under a plan. The Debtor has not traditionally had a standard income stream due to his income being primarily from company draws and those draws being from companies that had available cash. Thus, the formulation of a budget of projected disposable income requires the Debtor to budget projections from all of the entities that he owns. It is a large undertaking that is necessary for a plan.

20. Overall, the Debtor has been working diligently on all of the requirements placed on him as a chapter 11 debtor-in-possession. This has been complicated by the Debtor's need to obtain different counsel from the First Case, but the Debtor and counsel are pursuing this matter diligently.

**B.    The reason for the requested enlargement (LBR 3016-1(a)(2))**

21. As detailed above, the Debtor has been diligently pursuing the matters required of him in this case, but his case is large and complex for an individual debtor. The number of entities alone that require evaluation, budgeting, planning, and—most important—disclosure is many multiples of a standard chapter 11 case. This is a case involving numerous entities tied into one individual. Simply put, it is a difficult plan to formulate, and an even more difficult disclosure statement to draft, such that the initial exclusivity period is not long enough to complete an appropriate plan filing capable of being confirmed.

22. Moreover, in the First Case, Huntington filed a competing plan when the Debtor let exclusivity lapse. The filing of a competing plan here would create a massive distraction (the Debtor does not believe Huntington's plan in the First Case was confirmable) at this time when the Debtor needs to be focused on his own plan formulation. Maintaining the exclusivity period will cut down on unneeded litigation.

23. Finally, the Debtor needs additional time to negotiate with creditors, and not just Huntington. There are multiple creditors where their interest in the Debtor is that of a guarantor, and the treatment of their interests under a plan should reflect those circumstances (as opposed to simply treating over $130M of claims as general unsecured creditors). The Debtor needs more time to formulate a plan that addresses those issues, with a corresponding extension of the solicitation period, so as to negotiate appropriate plan treatments.

**C.    Whether a committee has consented to the requested enlargement (LBR 3016-1(a)(3))**

24.    No committee has been appointed in this case. *See United States Trustee's Statement Concerning Inability to Appoint Committee of Unsecured Creditors* (Doc. 46).

25.    Notwithstanding the fact that there is no committee in this case, prior to filing this motion, the Debtor sought input from the United States Trustee on a potential extension of the exclusivity periods. Counsel for the UST indicated that the UST would not object to a 90-day extension.

**D.    The length of time for which the enlargement is sought (LBR 3016-1(a)(4))**

26.    The Debtor seeks to extend both the plan filing exclusivity period and the attendant solicitation period by 90 days. The deadline will not extend the exclusivity period past the 18-month limitation set forth in 11 U.S.C. § 1121(d)(2)(A).

27.    This amount of time will allow for several important things to occur. First, the governmental unit bar date is April 15, 2026. Setting the exclusivity period after that date will allow for the Debtor to incorporate into his plan the treatment of any claims of governmental units. The Debtor has a complex tax situation and expects that there may be claims filed by one or more governmental units

28.    Second, the extended date will allow enough time for the Appraiser to complete the critical appraisal work necessary for the disclosure statement and plan. The Debtor anticipates that over a dozen entities will need detailed evaluations done by the Appraiser, maybe more, and the Appraiser has indicated that it takes approximately one month to complete a full analysis once all requested documentation is received. The Debtor is working on providing documentation to the Appraiser and expects that this extension will provide enough time for the Appraiser to complete her work.

29.     Third, the extended date will permit time for the state court litigation with Huntington to progress. While the Debtor does not anticipate submitting a plan that relies on the outcome of that litigation, whether that litigation continues will sharply affect the Debtor's budget and potential ongoing litigation expense obligations impacting a post-confirmation budget. Additional time for that case to progress will provide crucial information for a plan.

30.     Fourth, the Debtor anticipates in this time period that he will make progress on advancing or resolving estate chapter 5 claims. In an additional few months, the Debtor will be able to complete any valuation needed of those claims for inclusion in best interest and expected disbursement calculations, or even to obtain Court approval of one or more settlements to help fund a plan.

31.     Fifth, it is anticipated during this extended time period that the discovery matters with Huntington will be resolved, which will give Huntington the information it needs to evaluate a plan of reorganization, and perhaps help the litigants meet upon some common ground and for potential resolution of competing claims.

32.     Finally, among other things, the requested extension of time, absent unforeseen circumstances or delays beyond the Debtor's control, should be sufficient to allow for the work to be done that needs to be put into a plan and disclosure statement. As hard as the Debtor and his professionals have worked on this case so far, an extended timeline is needed to develop a comprehensive disclosure statement and confirmable plan.

## II.     LAW AND ARGUMENT

### A.     Standard for Extension of Exclusivity Period

A debtor has the exclusive right to propose a chapter 11 plan during the first 120 days of its chapter 11 case. 11 U.S.C. § 1121(b). If a debtor files a plan within such 120-day period,

Bankruptcy Code section 1121(c)(3) extends the exclusivity period for an additional 60 days to allow the debtor to solicit acceptances with respect to its proposed chapter 11 plan. The purpose of these exclusivity periods is to foster a stable environment for the debtor to attempt to negotiate and formulate a consensual chapter 11 plan. *See, e.g., Continental Casualty Co., et al., v. Burns and Roe Enters., Inc. (In re Burns and Roe Enters., Inc.)*, 2005 WL 6289213, at *4 (D. N.J. Nov. 2, 2005) ("[T]he point of exclusivity is to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated."); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297-300 (W.D. Tenn. 1987) (noting that Bankruptcy Code section 1121 is designed to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

Bankruptcy Code section 1121(d) permits a court to extend the periods set forth in sections 1121(b) and (c)(3) "for cause," subject to certain limitations not currently applicable in this case. The term "cause" is not defined in the Bankruptcy Code in the context of section 1121(d) and thus, the term should be afforded flexibility "to allow the debtor to reach an agreement." *Perkins*, 71 B.R. at 298, quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess., p. 232 (1977); *see also In re Pub. Serv. Co. of N.H.*, 88 B.R. 521, 534 (Bankr. D. N.H. 1988) ("[T]he legislative intent has been construed to leave the question to the reorganization court in the exercise of its discretion and to promote maximum flexibility[.]").

Whether to grant or deny a request to extend the exclusivity period is a matter committed to the sound discretion of the bankruptcy court. *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 642 (B.A.P. 8th Cir. 2003); *In re Borders Group, Inc.*, 460 B.R. 818, 821-22 (Bankr. S.D. N.Y. 2011). In general, an extension of exclusivity should be granted where "the [d]ebtors have shown the requisite good cause for an exclusivity extension [and] have given the Court no reason to believe that they are abusing their exclusivity rights." *In re Global Crossing Ltd.*, 295 B.R. 726, 730

(Bankr. S.D. N.Y. 2003).

Courts examine several factors in determining whether "cause" exists to extend the exclusivity periods, including:

a. the size and complexity of the case;

b. the existence of good faith progress toward reorganization;

c. the necessity of sufficient time to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan;

d. whether the debtor is paying its debts as they become due;

e. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

f. whether the debtor has made progress negotiating with creditors;

g. the amount of time that has elapsed in the case;

h. whether the debtor is seeking an extension to pressure creditors; and

i. whether an unresolved contingency exists.

*In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); see also *In re Michigan Produce Haulers, Inc.*, 525 B.R. 408, 413 (Bankr. W.D. Mich. 2015); *see also In re Marble Cliff Crossing Apartments, LLC*, 488 B.R. 355, 357 (Bankr. S.D. Ohio 2013) (citing similar factors); *In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) (citing to the nine *Dow Corning* factors for whether to extend or terminate exclusivity periods); *Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Meml. Hosp. (In re Henry Mayo Newhall Meml. Hosp.)*, 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002) (same).

Not all of the *Dow Corning* factors set forth above are relevant to every case, and courts apply only the relevant factors in determining whether cause exists to extend the exclusivity periods in any particular chapter 11 case. *See, e.g., In re Central Jersey Airport Services, LLC*, 282

B.R. 176, 184 (Bankr. D. N.J. 2002) (cause found where debtor was making sufficient progress in negotiating with its creditors towards a viable plan); *In re Service Merchandise Co., Inc.*, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000) (cause found where the debtors had reasonable prospects to filing a viable plan); *In re AMKO Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (cause found where extensive turnaround efforts were undertaken even though the debtor to date had shown only losses); *In re Homestead Partners, Ltd.*, 197 B.R. 706, 720 (Bankr. N.D. Ga. 1996) (cause found where there was substantial progress, the recalcitrance of creditors posed a significant hurdle, and there were complicated legal issues); *In re Express One International, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (cause found, even after two previous extensions, where the debtor had been diligent in its attempts to reorganize and extension was not sought for an indefinite period). Further, the size and complexity of a case alone may provide cause for granting an extension of a debtor's exclusivity periods. *See In re Texaco, Inc., et al.*, 76 B.R. 322, 327 (Bankr. S.D. N.Y. 1987) (holding that the size and complexity of the chapter 11 case provided sufficient cause to extend exclusivity).

### B.   Application of the Dow Corning Factors

The Debtor submits that cause exists to extend the Debtor's exclusivity periods. Each of the nine *Dow Corning* factors is addressed below.

#### a.   The size and complexity of the case

This case is large and complex for an individual chapter 11 debtor. The Debtor owns or has owned dozens of entities (71 entries on SOFA Question 27 and dozens on Schedule A/B), filed extensive schedules, prepared Rule 2015.3 reports on 31 entities, and faces over $130 million in claims (primarily guarantees of business debt). The case requires extensive valuation work, investigation and potential resolution of chapter 5 causes of action (including the removed

14

Fraudulent Transfer Case), and a five-year disposable-income budget drawn from multiple non-debtor entities each with their own varying financial circumstances. The disclosure statement, alone will be a massive undertaking but the Debtor and his professional advisors are prepared to deliver one that will meet the requirements of 11 U.S.C. § 1125 . These facts alone provide cause for the extension. *See Texaco, Inc.*, 76 B.R. at 327.

### b. The existence of good faith progress toward reorganization

The Debtor has acted in good faith and made substantial progress. Since the Petition Date, the Debtor has opened new accounts and established operating-report processes, appeared at the § 341 meeting and initial debtor interview, obtained a bar date, filed detailed schedules and a SOFA, employed professionals (including the newly-retained Appraiser), filed Rule 2015.3 reports on 31 entities, engaged in extensive discovery and document production with Huntington, continued business operations across multiple entities, pursued asset sales to fund the plan (Red Corner units, Gatherings of Blue Ash, Northern Kentucky properties, minority interests), removed and is evaluating chapter 5 claims, and begun plan and disclosure-statement formulation. The Debtor is current on all monthly operating reports and UST payments. This record of compliance and progress satisfies the good-faith-progress factor. *See In re Central Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D. N.J. 2002).

### c. The necessity of sufficient time to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan

Additional time is necessary. The Debtor must complete appraisals of at least a dozen entities, advance or resolve chapter 5 claims (including valuation for best-interest and feasibility analyses), allow the governmental claims bar date (April 15, 2026) to pass so treatment of all claims can be incorporated, permit the state-court Huntington litigation to progress (which directly

affects the Debtor's budget and legal-fee obligations), and resolve ongoing discovery with Huntington so that creditor evaluations of any plan are fully informed. The extended timeline is necessary to prepare a comprehensive disclosure statement and confirmable plan. *See Homestead Partners*, 197 B.R. at 720 (complicated legal issues); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405 (E.D. N.Y. 1989) (ongoing negotiations).

### d.    Whether the debtor is paying its debts as they become due

The Debtor is current on all post-petition obligations, including monthly operating reports, UST quarterly fees, and ongoing business expenses. No post-petition obligations are in default. This factor supports the extension because the Debtor's affairs are in order.

### e.    Whether the debtor has demonstrated reasonable prospects for filing a viable plan

The Debtor has demonstrated reasonable prospects for a viable plan. The Debtor has already begun asset sales to fund the plan, retained an appraiser for best-interest valuations, removed and is evaluating chapter 5 claims (including potential settlements), and is formulating a five-year disposable-income budget. These concrete steps, combined with the absence of any trustee motion or conversion request, show reasonable prospects for a confirmable plan.

### f.    Whether the debtor has made progress negotiating with creditors

The Debtor has engaged multiple creditors (beyond Huntington) whose claims arise from guarantees and has begun discussions regarding appropriate plan treatment that reflects those circumstances. The Debtor has also provided information to creditors and worked to maintain ongoing business relationships. Progress continues, but additional time is needed to finalize negotiations.

### g.    The amount of time that has elapsed in the case

Only four months have elapsed since the Petition Date on October 17, 2025. This is the Debtor's first extension request. The short time elapsed supports the modest 90-day extension requested.

### h.    Whether the debtor is seeking an extension to pressure creditors

The Debtor is not seeking the extension to pressure creditors. The extension is sought to complete the complex work required for a confirmable plan with ***all*** creditor constituents in mind and to avoid the distraction and expense of a competing plan of a single creditor—exactly what occurred in the First Case when exclusivity lapsed. No creditor has been pressured; the Debtor has engaged in good-faith discussions with multiple creditors. *See Express One International, Inc.*, 194 B.R. at 101 ("This is not a case where the creditors are being held hostage by debtor.").

### i.    Whether an unresolved contingency exists

Several key contingencies remain unresolved: completion of the Appraiser's work on over a dozen entities, progress in the state-court Huntington litigation (which sharply affects the Debtor's budget and legal-fee obligations), advancement or resolution of estate chapter 5 claims (including valuation and potential settlements), and resolution of discovery matters with Huntington. These unresolved contingencies justify the requested extension. *See Homestead Partners, Ltd.*, 197 B.R. at 720 (complicated legal issues).

All relevant *Dow Corning* factors weigh in favor of the requested extension. Cause therefore exists under § 1121(d) to extend the exclusivity periods. The Court should grant the Debtor's first request to extend both the plan-filing and solicitation exclusivity periods by 90 days.

### III.     CONCLUSION

For the foregoing reasons, granting the relief requested herein is appropriate and in the best

interests of all parties-in-interest. The Debtor respectfully requests that the Court enter an order

substantially in the form attached as <u>Exhibit A.</u>

Respectfully submitted,

<u>/s/ James A. Coutinho</u>
James A. Coutinho     (0082430)
Andrew D. Rebholz     (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
T: (614) 221-8500; F: (614) 221-5988
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel for Debtor / Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No: 25-12607 |
|     Raymond Joseph Schneider, | : | Chapter 11 |
| | : | |
|     Debtor and Debtor in Possession. | : | Judge Beth A. Buchanan |

## <u>ORDER GRANTING DEBTOR'S MOTION TO EXTEND EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES (DOC.      )</u>

This matter is before the Court on the *Debtor's Motion to Extend Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* (the "Motion") (Doc. ___) filed by Raymond Joseph Schneider, the debtor and debtor in possession (the "Debtor"). Through the Motion and pursuant to 11 U.S.C. § 1121(d) and Local Bankruptcy Rule 3016-1, the Debtor seeks to extend the Debtor's exclusive right to file a chapter 11 plan and the attendant solicitation period by 90 days. This is the Debtor's first request for an extension. The current exclusivity period expires on February 14, 2026. The Debtor seeks to extend the exclusivity period to May 15, 2026, and the attendant

solicitation period to July 14, 2026.

The Motion was served on the Debtor, the Office of the United States Trustee, the twenty largest unsecured creditors, and those other parties requesting notice. In accordance with Local Bankruptcy Rule 3016-1, the Debtor submitted the order granting the Motion at the time the Motion was filed. The Court is permitted by the Local Rules to immediately enter this order, subject to the objection procedure set forth below.

Based upon the matters contained in the Motion, proper service of the Motion having been completed, and compliance by the Debtor with LBR 3016-1, the Court finds the Motion should be approved subject to the objection provisions set forth below.

It is therefore ORDERED as follows:

1.      Within two (2) business days of the entry of this order, the Debtor shall serve this order and a copy of the Motion on all creditors and parties in interest (except that the Motion itself need not be served a second time on any party that received the initial service). The Debtor will also within that time period file a certificate of service indicating compliance with the service requirements of this order.

2.      All creditors and parties in interest shall have twenty-one (21) days from the service of this order within which to file an objection to the Motion.

3.      If no objection to the Motion is filed, the Motion will be deemed granted and the exclusivity period for the Debtor to file a plan will be extended to May 15, 2026, and the attendant solicitation period will be extended to July 14, 2026.

4.      If there is an objection to the Motion filed, the Court will issue a subsequent order for further proceedings on the Motion.

**SO ORDERED.**

SUBMITTED BY:

  /s/ James A. Coutinho
James A. Coutinho     (0082430)
Andrew D. Rebholz    (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
T: (614) 221-8500; F: (614) 221-5988
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel for Debtor / Debtor in Possession*

Service of Order to be completed by Debtor pursuant to terms of Order.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Debtor's Motion to Extend Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* was served (i) electronically on the date of filing through the court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) by ordinary U.S. Mail on February 13, 2026, addressed to the following:

See attached mailing matrix containing the Debtor, Office of the United States Trustee, Top 20 Unsecured Creditors, and those parties requesting notice.

  /s/ James A. Coutinho                     
James A. Coutinho     (0082430)

1

**Asst US Trustee**
Office of the US Trustee
J.W. Peck Federal Building
550 Main Street, Suite 4-812
Cincinnati, OH 45202-5212
*United States Trustee*

**Austin Z. Baurichter, Esq.**
Bricker Graydon LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
*Counsel for Park National Bank*

**Branden P. Moore, Esq.**
McGuireWoods LLP
260 Forbes Ave., Suite 1800
Pittsburgh, PA 15222
*Counsel for Merrill Lynch, Pierce,
Fenner & Smith Inc.*

**Brian Green, Esq.**
Shapero & Green, LLC
25101 Chagrin Boulevard
Beechwood, OH 44122
*Counsel for First Federal Savings
& Loan Association of Lakewood*

**Christopher P. Schueller, Esq.**
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
*Counsel for The Huntington
National Bank*

**David Mullen, Esq.**
McGlinchey Stafford, PLLC
3401 Tuttle Rd, Ste 200
Cleveland, OH 44122
*Counsel for Bank of America, N.A.*

**Donald W. Mallory, Esq.**
WOOD + LAMPING LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202
*Counsel for General Electric Credit
Union*

**First Federal Savings Bank**
PO Box 250
Washington Court House, OH
43160
*Top 20*

**Jon J. Lieberman, Esq.**
Sottile & Barile, Attorneys at Law
394 Wards Corner Road, Suite 180
Loveland, OH 45140
*Counsel for Heritage Bank*

**Kelly M. Neal, Esq.**
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
*Counsel for The Huntington
National Bank*

**Partick Hruby, Esq.**
Brock & Scott, PLLC
3825 Forrestgate Drive
Winston Salem, NC 27103
*Counsel for First Merchants Bank*

**Patricia B. Fugée, Esq.**
FisherBroyles, LLP
27100 Oakmead Drive, #306
Perrysburg, OH 43551
*Counsel for Civista Bank*

**Paul T. Saba, Esq.**
SSP Law Co., L.P.A.
2623 Erie Avenue
Cincinnati, OH 45208
*Counsel for Stock Yards Bank &
Trust Company*

**Raymond Joseph Schneider**
3515 Tiffany Ridge Lane
Cincinnati, OH 45241
*Debtor*

**Richard Boydston, Esq.**
Dentons Bingham Greenebaum
LLP
312 Walnut Street #2450
Cincinnati, OH 45202
*Counsel for First Merchants Bank*

**Rockland Trust Company**
288 Union Street
Rockland, MA 02370
*Top 20*

**Rudy J. Cerone, Esq.**
McGlinchey Stafford, PLLC
601 Poydras Street, 12th Floor
New Orleans, LA 70130
*Counsel for Bank of America, N.A.*

**Stefanie L. Deka, Esq.**
McGlinchey Stafford, PLLC
3401 Tuttle Rd, Ste 200
Cleveland, OH 44122
*Counsel for Bank of America, N.A.*

**Steven M. Hartmann, Esq.**
Smith, Gambrell & Russell, LLP
155 North Wacker Drive, Stuite
3000
Chicago, IL 60606
*Counsel for Transamerica Life
Insurance Company*

**Susan M. Argo, Esq.**
Bricker Graydon LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
*Counsel for Three Notes, LLC &
Park National Bank*

**Timothy P. Palmer, Esq.**
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
*Counsel for The Huntington
National Bank*

**Tricia Morra, Esq.**
ALDRIDGE PITE, LLP
3333 Camino del Rio South
Suite 225
San Diego, CA 92108
*Counsel for Nationstar Mortgage, LLC*

**GBQ Consulting LLC**
c/o Rebekah A. Smith
230 West Street, Suite 700
Columbus, OH 43215

**Truist Bank**
Bankruptcy Department
306-40-04-95
PO Box 27767
Richmond, VA 23261
*Secured Creditor - PoC Notice Address*

**Whitney L. Mosby, Esq.**
Dentons Bingham Greenebaum LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204
*Counsel for First Merchants Bank*