**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No: 25-12607 |
|     Raymond Joseph Schneider, | : | Chapter 11 |
| | : | |
|     Debtor and Debtor in Possession. | : | Judge Beth A. Buchanan |

**REPLY IN SUPPORT OF DEBTOR'S MOTION TO EXTEND EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES (DOCS. 104 & 120)**

## I.      INTRODUCTION

Before the Court is a request by the Debtor to extend the plan and solicitation exclusivity periods by 90 days. *See Debtor's Motion to Extend Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* (the "Motion") (Doc. 104). Through the Motion, the Debtor demonstrated cause for the extension by addressing each of the relevant *Dow Corning* factors and adhering to the requirements of the local rules. *See In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); LBR 3016-1.

Huntington did not object to the Debtor's request for a 90-day extension. *See Limited Objection of The Huntington National Bank to Debtor's Motion to Extend Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* (the "Objection") (Doc. 120), ¶1. Instead, it seeks to have the Court prospectively bar the Debtor from any further extensions of the exclusivity periods. It does so without seeking relief through its own motion, without any request by the Debtor for a further extension having been filed, and without any support from either a statute or case citation. The request by Huntington is both procedurally improper and substantively unsound. The Court should recognize it for what it is: nothing more than a reservation of rights that does not affect the substantive relief requested by the Debtor. The Objection should be overruled.

1

## II.    LAW & ARGUMENT

The Debtor's Motion contains a substantive and thorough discussion of the requirements under 11 U.S.C. § 1121(d) for the extension the exclusive plan filing and solicitation periods. In accordance with the Court's local rules, the Debtor provided a factual rendition of the work that has been completed in this case and then went on to address the nine-factor test for determining whether "cause" exists to extend a debtor's exclusivity periods, as set out in the *Dow Corning* case. *See* Motion, pp. 11-17. A considerable amount of detail supports the Debtor's request to extend the exclusivity periods. Obviously recognizing that there is good cause for the 90-day extension request, Huntington concedes that this first extension should be granted. *See* Objection at ¶1.

Unable to sit silent, Huntington instead uses the Objection to seek affirmative relief by asking the Court to prospectively bar the Debtor from seeking any additional extensions under section 1121(d). In the first place, this request—contained in an opposition memorandum—is procedurally improper under Bankruptcy Rule 9013, which requires all requests for an order to be made by written motion. By seeking affirmative relief in the form of the Objection, Huntington is side stepping the form and notice requirements of motion practice. Thus, the Objection should be recognized for what it is: nothing more than a reservation of rights to object to a future extension request that the Debtor *might* seek but which is not yet pending before the Court.

Even if Huntington's request were procedurally sound, Huntington provides no support whatsoever for this prospective bar on exclusivity extensions. It did not cite to the Bankruptcy Code or a single bankruptcy case for the proposition that the Court can condition exclusivity extensions with a bar on future requests. While the statute establishes a durational limitation on extensions (no more than 18 months in total), it otherwise sets no limit on *the number of* extensions that can be granted for "cause". A bankruptcy court can grant multiple extensions if the facts of

the case justify it. *See In re Marble Cliff Apartments, LLC*, 488 B.R. 355 (Bankr. S.D. Ohio 2013) (granting debtor's fourth extension). The desire for courts to maintain their discretion and promote flexible solutions is due to the complexity of chapter 11 proceedings. *See, e.g., In re Village Gate, LLC*, 24-10180 (BAP), Doc. 121 (Bankr. S.D. Ohio July 10, 2024) (granting motion to extend where pending objections to debtor's subchapter V election would impact preparation of debtor's plan); *see also In re Hopedale Mining LLC, et al.*, 20-12043 (GRH), Doc. 516 (Bankr. S.D. Ohio Nov. 12, 2020) (granting motion because the parties had been working to sell assets in the case and wanted more time to arrive at a settlement with creditors); *In re Murray Metallurgical Coal Holdings, LLC, et al.*, 20-10390 (JEH), Doc. 766 (Bankr. S.D. Ohio Oct. 6, 2020) (granting motion to extend in a complex chapter 11 case based on the *Dow Corning* factors).

There is no legal justification to bar future extension motions without there first being a request for an extension and then reviewing that request against the statutory criteria. It is impossible to know *now* whether "cause" will exist *then*. As a prime example, after the Motion was filed, Huntington filed a motion seeking the appointment of an examiner under 11 U.S.C. § 1104. *See Motion of The Huntington National Bank for the Appointment of an Examiner Pursuant to 11 U.S.C. § 1104* (Doc. 115) (the "Examiner Motion"). Should the Court grant the Examiner Motion, the involvement of an examiner in this case may, understandably, complicate matters related to the confirmation process. The Debtor's efforts for plan formulation likely will be further distracted by the need to provide documents and information to the examiner, meet with the examiner, and then wait for a report from the examiner. While the Debtor has not yet sought any further extension of the exclusive periods, it would be unhelpful to even appoint an examiner if its report could not be completed prior to the confirmation process triggered by the Debtor's plan filing. An additional extension of the exclusive periods might seem appropriate to the Court and

3

parties, even if not to Huntington, so that the work of an examiner can conclude, especially if the work of an examiner would promote clarity to the confirmation process or allow for the narrowing of confirmation issues. Yet, while on one hand Huntington asks for the examiner, on the other hand it wants to rush through this case before the examiner can even be appointed, let alone allow the Debtor and the Court the benefit of the report of independent third-party examiner sought by Huntington prior to a plan confirmation process.

Turning to the arguments raised by Huntington in the Objection, they do not justify the relief requested even if it were proper. Huntington first states that, based on the prior bankruptcy filing by the Debtor, the Debtor has had years to formulate a plan and deserves no more time. That is, even though Huntington's judgment against the Debtor had been overturned on appeal and the Debtor's first case was dismissed, the Debtor apparently was supposed to have, at all times, his then unneeded reorganization plan at the ready. The implication that the Debtor should have been preparing a plan while Huntington pursued an appeal of its reversed judgment to the Ohio Supreme Court—and while he was not even in bankruptcy—is preposterous. The Debtor had no reason to formulate a plan of reorganization during the year and a half period from the dismissal of his first case until the reinstatement of Huntington's judgment.

Second, Huntington claims that the Debtor should have anticipated the tasks enumerated in the Motion and prepared them prior to filing the case. Huntington does not cite to any caselaw for this proposition that a debtor needs to prepare for all complexities of chapter 11 *prior* to filing the case. It is not among the *Dow Corning* factors, and in fact is the polar opposite of the very first factor: that the Court should bear in mind the size and complexity of the case when considering an extension. *Dow Corning*, 208 B.R. at 664. Huntington characterizes the work done in this case as mere "garden variety" chapter 11 work. But what else is there in any chapter 11 in any case? The

4

*Dow Corning* factors *all* describe garden variety chapter 11 work that occurs in every single case, and in fact, the case law cited by the Debtor shows that working diligently on such "garden variety" chapter 11 matters is itself good cause for extending exclusivity. In any event, this argument is disingenuous, coming from the very party that (i) forced the Debtor to file this case by seeking over a dozen garnishments against the Debtor's accounts, filing for charging orders, instructing the local Sheriff to seize personal assets, and seeking the appointment of a receiver, and (ii) is pursuing an overly broad 2004 examination of the Debtor (Doc. 41), has filed the Examiner Motion, and has recently filed three more Rule 2004 motions of third parties, all of which serve to distract the Debtor and his professionals from focusing on plan preparation. Huntington has kept pressure on the Debtor, continually forcing him to react, and then complains that the Debtor has been kept busy by garden variety tasks it should have anticipated.

Finally, with respect to Huntington's claim that it would be prejudiced by any further delay, it is unclear how Huntington's rights would be prejudiced by further extensions. Payment on its claim might be delayed, but its claim would remain intact. Courts tend to find that a creditor is prejudiced when it is impeded from negotiating for its desired outcome, or when a debtor exhibits conduct that shows it is unwilling to negotiate. *See, e.g., Borders Group, Inc.*, 460 B.R. at 828; *see also In re AMKO Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) ("There is no indication whatever that this debtor is unwilling to negotiate in good faith with creditors…prejudice refers to a debtor which has displayed such conduct."). Huntington does not provide any evidence demonstrating such an unwillingness in the Debtor. Huntington understandably wants payment as fast as possible (as would any creditor), but section 1121 was drafted with these considerations in mind. *See* H.R. Rep. 95-595, 231-32, 1978 U.S.C.C.A.N. 5963, 6191 (discussing how section 1121 recognizes both the debtor's and the creditor's needs). The 18-month cap and the Bankruptcy

5

Code's trust in a court's discretion are mechanisms included in the statute to protect creditors from

undue delay. And, again, it is impossible to tell whether Huntington would be prejudiced by the

delay caused by a future extension when the hypothetical motion requesting such has not been

filed and is not before the Court.

## III. CONCLUSION

The Court should preserve its ability to review statutorily-sound and caselaw supported

extension requests. It should deny Huntington's request for a prospective ruling against future

motions. And as to the initial extension request, Huntington admits that it is proper to grant it, and

therefore the Objection should be overruled.

Respectfully submitted,

 /s/ James A. Coutinho
Thomas R. Allen        (0017513)
Richard K. Stovall      (0029978)
James A. Coutinho      (0082430)
Andrew D. Rebholz    (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
T: (614) 221-8500; F: (614) 221-5988
allen@asnalaw.com; stovall@asnalaw.com
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel for Debtor / Debtor in Possession*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing *Reply in Support of Debtor's Motion to Extend Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* was served (i) electronically on the date of filing through the Court's ECF system on all ECF participants registered in this case at the email address registered with the Court, and (ii) by ordinary U.S. Mail on March 17, 2026, addressed to the following:

None.

/s/ James A. Coutinho
James A. Coutinho     (0082430)