**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No: 25-12607 |
| Raymond Joseph Schneider, | : | Chapter 11 |
| | : | |
| Debtor and Debtor in Possession. | : | Judge Beth A. Buchanan |

**<u>DEBTOR'S MOTION TO (1) EXTEND EXCLUSIVE PERIOD TO SOLICIT
ACCEPTANCES FOR CHAPTER 11 PLAN; (2) SCHEDULE DISCLOSURE
STATEMENT HEARING AFTER SUBMISSION OF EXAMINER REPORT</u>**

On May 15, 2026, Raymond Joseph Schneider, the debtor and debtor in possession (the

"Debtor"), filed his *Plan of Reorganization* (the "Plan") (Doc. 189) and *Disclosure Statement for*

*Plan of Reorganization* (the "Disclosure Statement") (Doc. 190). On May 18, 2026, the Court

entered the *Order Approving Appointment of a Chapter 11 Examiner by the United States Trustee*

(Doc. 191) which appointed William Krieger as examiner (the "Examiner"). Through this motion,

the Debtor seeks the following relief: (1) that the Court schedule the hearing to consider the

adequacy of the Disclosure Statement (the "Disclosure Statement Hearing") after the deadline for

submission of the Examiner's report with a reasonable period thereafter for Plan and Disclosure

Statement amendments to be filed, if necessary; and (2) that the Court, pursuant to 11 U.S.C. §

1121(d) and Local Bankruptcy Rule 3016-1, extend the Debtor's exclusive right to solicit

acceptances for the Plan until 60 days after the Disclosure Statement Hearing. This schedule will

permit the Examiner's report to be useful during the Disclosure Statement Hearing and will further

permit the Debtor time to amend the Disclosure Statement to address any issues raised in the

Examiner's report before the Disclosure Statement Hearing.

A proposed order granting this motion is attached as <u>Exhibit A</u>. Although Local

Bankruptcy Rule 3016-1(b) permits an order to be filed with a motion for extension of an

exclusivity period, because the current solicitation period does not expire until July 14, 2026—

1

giving the Court time to hear and determine this motion before expiration—the Debtor has

included a standard 21-day notice with this filing.

A memorandum in support follows.

Respectfully submitted,

 /s/ James A. Coutinho
James A. Coutinho     (0082430)
Andrew D. Rebholz    (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
T: (614) 221-8500; F: (614) 221-5988
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel for Debtor / Debtor in Possession*

**MEMORANDUM IN SUPPORT**

I.      **BACKGROUND**

In accordance with the requirements of Local Bankruptcy Rule 3016-1(a), this section contains the required contents of a motion to extend an exclusivity period, including:

(1)      a brief description of the procedural status of the case, including the petition filing date and any previous enlargements of exclusivity periods;

(2)      the reason for the requested enlargement;

(3)      whether a committee appointed under the Code has consented to the requested enlargement; and

(4)      the length of time for which the enlargement is sought.

*See* LBR 3016-1(a).

A.      **Procedural Posture of Bankruptcy Case (LBR 3016-1(a)(1))**

1.      On October 17, 2025 (the "Petition Date"), the Debtor filed his voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate and manage his affairs as debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108. No trustee or statutory creditors' committee has been appointed in this case, but the Examiner has been appointed.

2.      On February 13, 2026, the Debtor filed the *Debtor's Motion to Extend Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* (Doc. 104) (the "First Extension Motion"). The First Extension Motion provided a detailed background recitation of this case, the procedural posture, and the work done by the Debtor through that date towards development of a plan. To avoid repetition, reference is made to the First Extension Motion for the case background.

3

3.     On February 18, 2026, the Court entered the *Order Granting Debtor's Motion to Extend Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* (Doc. 107), which approved the First Extension Motion conditionally while providing a negative notice period for parties to object to the requested extension. The Huntington National Bank ("Huntington") filed a limited objection to the First Extension Motion (Doc. 120), indicating that it did not object to the initial 90-day extension but reserved its rights to object to a further extension. The Debtor filed a reply (Doc. 131), and on March 23, 2026, the Court entered the *Order: 1) Overruling The Huntington National Bank's Limited Objection [Docket Number 120]; and 2) Granting Debtor's Motion to Extend Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* (Doc. 141) (the "First Extension Order") which overruled Huntington's objection and granted the First Extension Motion.

4.     Through the First Extension Order, the exclusive period to file a chapter 11 plan was extended to May 15, 2026, and the attendant solicitation period was extended to July 14, 2026 (the "Solicitation Period").

5.     Since the First Extension Motion was filed, the Debtor has continued his efforts to proceed with development of a plan while also working through various other issues in this case. In particular, the Debtor continued to work on production of documents and information to Huntington, including having multiple discovery conferences with the Court. The Debtor further responded to Huntington's motion seeking authority to prosecute certain claims of the bankruptcy estate (Doc. 132). The Debtor's response (Doc. 155) to that motion contains a great deal of information about the Debtor's efforts in the preceding months to review chapter 5 and other causes of action, and is incorporated by reference.

6.      Most important, on February 27, 2026, Huntington filed the *Motion of The Huntington National Bank for the Appointment of an Examiner Pursuant to 11 U.S.C. §1104* (Doc. 115) (the "Examiner Motion"). Through the Examiner Motion, Huntington sought to have a chapter 11 examiner appointed to investigate the financial affairs and other matters related to the Debtor, arguing that because the Debtor's debts are in excess of $5 million, the appointment of an examiner was mandatory.

7.      The Debtor filed a limited objection to the Examiner Motion (Doc. 134), which acknowledged the mandatory nature of the appointment, but detailed the Court's discretion in setting the scope of an examiner's work.

8.      Over the course of the following month, the Debtor, Huntington, and UST engaged in negotiations regarding the terms of the appointment of an examiner, and without further Court intervention the parties were able to reach an agreement with the submission of an agreed order. On April 23, 2026, the Court entered the *Agreed Order Directing the Appointment of Examiner* (Doc. 9) (the "Agreed Examiner Order")

9.      The Agreed Examiner Order, among other things:

   a.   directs the UST to appoint an examiner, subject to Court approval;

   b.   sets the scope of the Investigation, as that term is defined in the order;

   c.   grants investigatory powers to an examiner and provides detail as to the requirements for a report of an examiner;

   d.   directs the Examiner to submit a Work Plan, as defined in the order, within 15 business days of appointment, which Work Plan is subject to Court approval after a 10-day period for objections; and

   e.   finally, orders the Examiner to submit a Report, defined in the order, within 90

5

days of the Court's approval of the Work Plan.

10.     Thus, the Agreed Examiner Order, negotiated by the Debtor, Huntington, and UST, forecasts a process of at least 115 days for the submission of the examiner's report (approximately 25 days for the Work Plan approval, and 90 days for the Report).

11.     Based on the Examiner being appointed on May 18, 2026, it is expected that it will take at least until September 10, 2026, for the Report to be submitted by the Examiner. Based on the complexity of the Debtor's affairs and the volume of work anticipated to be reviewed by the Examiner, the Debtor would not expect the Report to be delivered any sooner.

12.     In the meantime, the Debtor met the deadline to file the Plan within the extended plan-submission exclusivity period.

**B.     The reason for the requested enlargement (LBR 3016-1(a)(2))**

13.     The Plan and Disclosure Statement filed by the Debtor provide a comprehensive overview of the Debtor's history, financial affairs, plan for disposition of assets and payment of creditors, and all other matters required for confirmation. However, the Debtor's case is large and complex for an individual debtor, and the Debtor anticipates that the Examiner's Report will identify additional matters that may need to be discussed within the Disclosure Statement or addressed in the Plan. While the Debtor has done his best to address any known matters at this point, the breadth of the Examiner's Investigation (from January 1, 2018, to present) is substantial and there will at least be questions raised in the Report that the Debtor will need to address.

14.     Because the Examiner's Report will not be ready until September, but the Plan and Disclosure Statement have been filed,[1] there are competing paths forward that are in direct

---

[1] The Debtor would have, of course, preferred to wait until after the Examiner Report was issued to even file the Plan and Disclosure Statement, but Huntington has stood fast on its objection to additional extensions of exclusivity. Instead of risking losing exclusivity—especially since Huntington filed a competing plan in the First Case—the Debtor proceeded with meeting the deadline.

contradiction with one another. On one hand, the Debtor has filed the Plan and Disclosure Statement, and the Solicitation Period expires mid-July. The Court could proceed with determining the adequacy of the Disclosure Statement and setting a confirmation hearing for late Summer or early Fall without the benefit of having the Examiner's Report. This potential timeline was driven by Huntington's insistence that no further exclusivity extensions be granted.

15.     On the other hand, Huntington has demanded the appointment of an Examiner which will be a massive and extraordinarily expensive undertaking for the Debtor and his estate. As the Debtor noted in his response to the Examiner Motion, the Debtor welcomes the clarity that will be provided by having the Examiner's Report and believes that the Court and all creditors (not just Huntington) will benefit from seeing the Report. But that effort would be essentially wasted if the Report is released deep into the confirmation process, or at the very least would render the confirmation process a waste if the parties proceed down that path and are derailed by findings of the Examiner.

16.     For that reason, the Debtor believes the most appropriate path forward is the simplest and most logical one: schedule the Disclosure Statement Hearing for a time after the Examiner's Report is due to be issued, and, in conjunction with that, extend the Solicitation Period until after the Disclosure Statement Hearing.

**C.      Whether a committee has consented to the requested enlargement (LBR 3016-1(a)(3))**

17.     No committee has been appointed in this case. *See United States Trustee's Statement Concerning Inability to Appoint Committee of Unsecured Creditors* (Doc. 46).

**D.      The length of time for which the enlargement is sought (LBR 3016-1(a)(4))**

18.     The Debtor seeks to extend the Solicitation Period by approximately an additional 120 days; specifically, until 60 days after the Court sets the Disclosure Statement Hearing. The

deadline will not extend the exclusivity period past the 18-month limitation set forth in 11 U.S.C.
§ 1121(d)(2)(A). The specific calculation to show the 18-month period is as follows:

    a.   The original Solicitation Period of 180 days was set to expire on April 15, 2026.

    b.   The First Extension Order extended the Solicitation Period by 90 days to July 14, 2026, bringing the total period to 270 days (~9 months).

    c.   The proposed extension of approximately 120 days from July 14, 2026, would bring the total period to 390 days, or approximately 13 months, which is less than the 18-month limitation under 11 U.S.C. § 1121(d)(2)(A).

19.     This extension will permit the Examiner to file his Report within approximately 115-120 days, give the Debtor time to incorporate any needed revisions to the Plan and Disclosure Statement, and allow the Court to hold the Disclosure Statement Hearing after the Examiner's Report is issued.[2]

20.     This timeline will also permit the Debtor to continue to work through various efforts that have been ongoing throughout this case, including the appraisal process for company interests, time for developing the ongoing state court litigation against Huntington, possible settlement of certain chapter 5 claims, and efforts by the Debtor to review and potentially object to claims.

## II.    LAW AND ARGUMENT

### A.    The Court has discretion in determining when to hold the Disclosure Statement Hearing and should set it for after the Examiner Report is due.

There is no deadline by which a bankruptcy court must hold a hearing to consider the adequacy of a disclosure statement. *See* Fed. R. Bankr. P. 3017(a). The hearing must be held on "at least 28 days' notice", but the Bankruptcy Rules set no other deadline for the disclosure

---

[2] The Debtor may very well need an additional extension of the Solicitation Period depending on the timeline for the ultimate approval of the Disclosure Statement, but the Debtor will file a separate motion at that time once more matters are developed in this case.

statement hearing. *Id*. Instead, the Bankruptcy Rules give bankruptcy courts great discretion to schedule hearings on the disclosure statement and confirmation as is appropriate. *See* Fed. R. Bankr. P. 3017(c) (establishing that the court ***must*** set a deadline for claim-holders to accept or reject a plan, but that the court ***may*** set a date for the confirmation hearing, leaving that scheduling up to the court's discretion).

The lack of a deadline in regular chapter 11 cases for a bankruptcy court to hold a disclosure statement hearing is stark in comparison to small business chapter 11 cases and chapter 13 cases, both of which have quick deadlines for the confirmation process. *See, e.g.,* 11 U.S.C. § 1129(e) ("…the court shall confirm a plan…not later than 45 days after the plan is filed…); *see also In re Jones*, 2017 WL 1364967, at *1 (Bankr. D. Maine Apr. 12, 2017) (in the chapter 13 context, "Congress gave bankruptcy courts the discretion to hold confirmation hearings earlier than 20 days after the meeting of creditors but no authority to hold them later than 45 days after that date."). While Congress has set specific deadlines in a regular chapter 11 for the debtor's exclusivity period, *see* 11 U.S.C. § 1121(b), the Bankruptcy Code and Rules have no restrictions on how bankruptcy courts can schedule and structure the confirmation process in a given case, so long as notice is proper and parties get to vote on the plan. *See also In re Roots Rents, Inc.*, 420 B.R. 28, 35 (Bankr. D. Idaho 2009) ("The small business debtor has an outside bar of 300 days from the order of relief…within which it must file a disclosure statement and plan…There is no similar Code-imposed bar for non-small business debtors."). Thus, Congress clearly knows how to require a bankruptcy court to move quickly to confirmation, but in large chapter 11 reorganizations, discretion is left to the Court as to when to proceed through the confirmation process. Naturally, this flexibility lends itself to the unique nature of large chapter 11 cases, while the exclusivity periods still drive debtors to put forward a plan within a reasonable time.

The Court has discretion to set the confirmation schedule as it deems appropriate and, in this case, there is ample reason to refrain from considering the Disclosure Statement until after the Examiner issues his Report. The purpose of a disclosure statement "is not to assure acceptance or rejection of a plan, but to provide enough information to interested persons so they may make an informed choice between two alternatives." *In re U.S. Brass Corp.*, 194 B.R. 420, 423 (Bankr. E.D. Tex. 1996); *see also In re Ferguson*, 474 B.R. 466, 470-471 (Bankr. D. S.C. 2012) (disclosure statement is meant to provide claimholders with adequate information to make an informed decision on the chapter 11 plan). If Congress intended for the disclosure statement to "be the primary source of information upon which creditors" make their informed judgment about a plan of reorganization, *see Ferguson*, 474 B.R. at 471, then it is reasonable to allow the Court's appointed Examiner to first complete his Investigation and buttress that source of information.

The alternative would be both frustrating and wasteful. If the Court were to move forward with the Disclosure Statement Hearing at this time, parties would spend time and resources in evaluating a Disclosure Statement that very well may be amended when the Examiner's Report is released. It could very well be that the case progresses towards confirmation over the summer, and then the entire process undertaken during the intervening months would be derailed if the Examiner's Report reveals something that should have been in the Disclosure Statement. And the other possibility is even more wasteful: if the Court does not wait on the Examiner's Report, and it turns out that the Examiner finds nothing further to address in the Disclosure Statement, then the examiner process will have been a massive waste. That is, even a Report that does not identify any major issues is worth waiting for because it will help at confirmation and make the Examiner's Investigation worthwhile. Waiting for the Examiner to issue his Report is both sensible and proper, and extending the Solicitation Period while that process unfolds also makes sense.

B.        **Standard for extension of Solicitation Period**

A debtor has the exclusive right to propose a chapter 11 plan during the first 120 days of

its chapter 11 case. 11 U.S.C. § 1121(b). If a debtor files a plan within such 120-day period,

Bankruptcy Code section 1121(c)(3) extends the exclusivity period for an additional 60 days to

allow the debtor to solicit acceptances with respect to its proposed chapter 11 plan. The purpose

of these exclusivity periods is to foster a stable environment for the debtor to attempt to negotiate

and formulate a consensual chapter 11 plan. *See, e.g., Continental Casualty Co., et al., v. Burns

and Roe Enters., Inc. (In re Burns and Roe Enters., Inc.)*, 2005 WL 6289213, at *4 (D. N.J. Nov.

2, 2005) ("[T]he point of exclusivity is to promote an environment in which the debtor's business

may be rehabilitated and a consensual plan may be negotiated."); *Gaines v. Perkins (In re Perkins)*,

71 B.R. 294, 297-300 (W.D. Tenn. 1987) (noting that Bankruptcy Code section 1121 is designed

to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

Bankruptcy Code section 1121(d) permits a court to extend the periods set forth in sections

1121(b) and (c)(3) "for cause," subject to certain limitations not currently applicable in this case.

The term "cause" is not defined in the Bankruptcy Code in the context of section 1121(d) and thus,

the term should be afforded flexibility "to allow the debtor to reach an agreement." *Perkins*, 71

B.R. at 298, quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess., p. 232 (1977); *see also In re

Pub. Serv. Co. of N.H.*, 88 B.R. 521, 534 (Bankr. D. N.H. 1988) ("[T]he legislative intent has been

construed to leave the question to the reorganization court in the exercise of its discretion and to

promote maximum flexibility[.]").

Whether to grant or deny a request to extend the exclusivity period is a matter committed

to the sound discretion of the bankruptcy court. *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 642

(B.A.P. 8th Cir. 2003); *In re Borders Group, Inc.*, 460 B.R. 818, 821-22 (Bankr. S.D. N.Y. 2011).

11

In general, an extension of exclusivity should be granted where "the [d]ebtors have shown the requisite good cause for an exclusivity extension [and] have given the Court no reason to believe that they are abusing their exclusivity rights." *In re Global Crossing Ltd.*, 295 B.R. 726, 730 (Bankr. S.D. N.Y. 2003).

Courts examine several factors in determining whether "cause" exists to extend the exclusivity periods, including:

a. the size and complexity of the case;

b. the existence of good faith progress toward reorganization;

c. the necessity of sufficient time to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan;

d. whether the debtor is paying its debts as they become due;

e. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

f. whether the debtor has made progress negotiating with creditors;

g. the amount of time that has elapsed in the case;

h. whether the debtor is seeking an extension to pressure creditors; and

i. whether an unresolved contingency exists.

*In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); see also *In re Michigan Produce Haulers, Inc.*, 525 B.R. 408, 413 (Bankr. W.D. Mich. 2015); *see also In re Marble Cliff Crossing Apartments, LLC*, 488 B.R. 355, 357 (Bankr. S.D. Ohio 2013) (citing similar factors); *In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) (citing to the nine *Dow Corning* factors for whether to extend or terminate exclusivity periods); *Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Meml. Hosp. (In re Henry Mayo Newhall Meml. Hosp.)*, 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002) (same).

Not all of the *Dow Corning* factors set forth above are relevant to every case, and courts apply only the relevant factors in determining whether cause exists to extend the exclusivity periods in any particular chapter 11 case. *See, e.g., In re Central Jersey Airport Services, LLC*, 282 B.R. 176, 184 (Bankr. D. N.J. 2002) (cause found where debtor was making sufficient progress in negotiating with its creditors towards a viable plan); *In re Service Merchandise Co., Inc.*, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000) (cause found where the debtors had reasonable prospects to filing a viable plan); *In re AMKO Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (cause found where extensive turnaround efforts were undertaken even though the debtor to date had shown only losses); *In re Homestead Partners, Ltd.*, 197 B.R. 706, 720 (Bankr. N.D. Ga. 1996) (cause found where there was substantial progress, the recalcitrance of creditors posed a significant hurdle, and there were complicated legal issues); *In re Express One International, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (cause found, even after two previous extensions, where the debtor had been diligent in its attempts to reorganize and extension was not sought for an indefinite period). Further, the size and complexity of a case alone may provide cause for granting an extension of a debtor's exclusivity periods. *See In re Texaco, Inc., et al.*, 76 B.R. 322, 327 (Bankr. S.D. N.Y. 1987) (holding that the size and complexity of the chapter 11 case provided sufficient cause to extend exclusivity).

C.    **Application of the Dow Corning Factors**

The Debtor has already met the exclusive period for filing a plan, which was met by the Debtor filing the Plan on May 15, 2026. Through this motion, the Debtor seeks only to extend the Solicitation Period in line with the Debtor's requested schedule for consideration of the Disclosure Statement. The Debtor submits that cause exists to extend the Debtor's Solicitation Period. The Debtor addressed each of the nine *Dow Corning* factors when seeking the first extension, much of

13

which still applies to this motion. The Debtor incorporates the arguments from the First Extension Motion and adds to them as to each factor as follows.

### a.      The size and complexity of the case

As set forth in the First Extension Motion, this case is large and complex for an individual chapter 11 debtor. A review of the Disclosure Statement shows the complexity, with dozens of entities owned by the Debtor and substantial assets that the Plan proposes to monetize over time. Additional complexity now comes into play primarily with what Huntington has requested through the Examiner. Despite the Debtor's insistence that an investigation going back to 2018 was beyond nearly all applicable statutes of limitations for avoidance actions, Huntington demanded the Investigation go back that far, that it cover review of all of the Debtor's entities (over 100 when counting those that are inactive), and that the Examiner review substantial documentation provided by the Debtor. The Debtor has already produced to Huntington and is providing to the Examiner over 41,000 pages of documents, with available financial statements for each company stretching back up to eight years, hundreds of bank statements, dozens of tax documents, and governance documents for each entity. It is an extraordinary amount of information and will likely take the Examiner the full 90-days to review and summarize.

To that end, the Examiner's Report will be extremely helpful to the Court and all creditors. Having the independent Examiner review and report on the Debtor's financial affairs will prevent each party from independently needing to obtain documents and pay professionals to review them, substantially cutting down the review burden for everyone. Providing time for that Report to be completed in advance of the Disclosure Statement Hearing allows for the Report to be useful to everyone and will help cut through the complexities in this case. Moving forward without the Report is a waste of resources.

**b.      The existence of good faith progress toward reorganization**

The Debtor has acted in good faith and made substantial progress. More details on the Debtor's progress in the first months of the case were set forth in the First Extension Motion. But the ultimate showing of good faith progress towards reorganization is manifest: the Debtor filed the Plan and Disclosure Statement within the first exclusivity extension period. Those documents, together spanning 150 pages, are thorough and demonstrate the Debtor's good faith efforts to reorganize.

**c.      The necessity of sufficient time to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan**

The Debtor believes that the Disclosure Statement as written provides substantial and adequate information to creditors regarding his financial affairs and the proposed Plan, and but for the Examiner's appointment, the Debtor would be ready and willing to proceed forward with confirmation. However, as stated above, the Debtor anticipates that the Examiner Report, based on the sheer fact that it will cover 8 years of information about substantial business interests—will likely detail *something* that needs to be explained or dealt with in the Plan and Disclosure Statement. Thus, providing the Examiner time to complete the Report and then the Debtor enough time to amend the filings is important. This timeline will ensure that creditors have enough information to formulate their position on the Plan.

This timeline will further give the Debtor time to continue to discuss positions of various creditors, address questions about proposed treatments in the Plan, and otherwise attempt to negotiate with various parties. The Debtor does not intend to sit idle while waiting for the Examiner's Report, and he will continue to pursue efforts that advance his cause of reorganization.

15

**d.      Whether the debtor is paying its debts as they become due**

The Debtor is current on all post-petition obligations, including monthly operating reports, UST quarterly fees, and ongoing business expenses. No post-petition obligations are in default. This factor supports the extension because the Debtor's affairs are in order.

**e.      Whether the debtor has demonstrated reasonable prospects for filing a viable plan**

This factor does not appear to apply at this point: the Debtor has proposed a Plan and the Disclosure Statement discusses its viability.

**f.      Whether the debtor has made progress negotiating with creditors**

Since the filing of this case, the Debtor has been communicating with his creditors regarding business matters, and now that the Plan is filed will be discussing their proposed treatment. Until the Plan was formulated and filed, discussing specific treatment was not possible, but the Debtor intends to use the extended period while waiting for the Examiner's Report wisely.

**g.      The amount of time that has elapsed in the case**

This case has been pending for seven months and the Debtor has been making consistent progress towards reorganization. As set forth above, the requested extension will keep the Debtor well within the 18-month exclusivity limits. And while the additional time will extend out the timeline of the case, that is not due to anything the Debtor himself initiated: this examiner process was at the request of Huntington which cannot credibly complain about the timeline at this point.

**h.      Whether the debtor is seeking an extension to pressure creditors**

The Debtor is not seeking the extension to pressure creditors. The opposite is true: the Debtor is seeking the extension so that creditors will have the benefit of receiving the Examiner's Report before having to vote on the Plan. This is meant to help creditors, the Court, and even the Debtor to obtain maximum clarity into the Debtor's financial affairs.

### i.   Whether an unresolved contingency exists

The examiner process is a significant unresolved contingency and is the critical reason for this extension request.

All relevant *Dow Corning* factors weigh in favor of the requested extension. Cause therefore exists under § 1121(d) to extend the Solicitation Period.

## III.   CONCLUSION

The Debtor would like this bankruptcy process to conclude quickly, but he sees the benefit in having the Examiner complete his Investigation and Report before proceeding with confirmation. It's the only timeline that makes sense and takes advantage of the massive administrative expense the Examiner is about to incur. For the foregoing reasons, granting the relief requested herein is appropriate and in the best interests of all parties-in-interest. The Debtor respectfully requests that the Court enter an order substantially in the form attached as Exhibit A.

Respectfully submitted,

/s/ James A. Coutinho
James A. Coutinho     (0082430)
Andrew D. Rebholz    (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
T: (614) 221-8500; F: (614) 221-5988
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel for Debtor / Debtor in Possession*

17

EXHIBIT A
PROPOSED ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No: 25-12607 |
| Raymond Joseph Schneider, | : | Chapter 11 |
| | : | |
| Debtor and Debtor in Possession. | : | Judge Beth A. Buchanan |

**ORDER GRANTING DEBTOR'S MOTION TO (1) EXTEND EXCLUSIVE PERIOD TO SOLICIT ACCEPTANCES FOR CHAPTER 11 PLAN; (2) SCHEDULE DISCLOSURE STATEMENT HEARING AFTER SUBMISSION OF EXAMINER REPORT (DOC.      )**

This matter is before the Court on the *Debtor's Motion to (1) Extend Exclusive Period to Solicit Acceptances for Chapter 11 Plan; (2) Schedule Disclosure Statement Hearing After Submission of Examiner Report* (the "Motion") (Doc. ___) filed by Raymond Joseph Schneider, the debtor and debtor in possession (the "Debtor"). Through this motion, the Debtor moves the Court to schedule the hearing (the "Disclosure Statement Hearing") to consider the adequacy of the *Disclosure Statement for Plan of Reorganization* (the "Disclosure Statement") (Doc. 190), but

# EXHIBIT A
# PROPOSED ORDER

that such hearing be held after the deadline for submission of the report (the "Report") of William Krieger, the Court-appointed examiner (the "Examiner"). The Debtor further moves pursuant to 11 U.S.C. § 1121(d) and Local Bankruptcy Rule 3016-1, to extend the Debtor's exclusive right to solicit acceptances (the "Solicitation Period") for the *Plan of Reorganization* (the "Plan") (Doc. 189) until 60 days after the Disclosure Statement Hearing. The Debtor argues that this schedule will permit the Examiner's Report to be useful during the Disclosure Statement Hearing and will further permit the Debtor time to amend the Plan and Disclosure Statement to address any issues raised in the Examiner's report before the Disclosure Statement Hearing.

The Motion was served on the Debtor, the Office of the United States Trustee, the twenty largest unsecured creditors, and those other parties requesting notice. Based upon the matters contained in the Motion, proper service of the Motion having been completed, the Court finds the Motion to be well-taken and it is approved.

It is therefore ORDERED as follows:

1. By separate order, the Court will schedule the Disclosure Statement Hearing to consider the adequacy of information in the Disclosure Statement. The Disclosure Statement Hearing will be set for a date that permits time for the Examiner's Report to be filed with a reasonable period thereafter for the Debtor to amend the Plan and Disclosure Statement prior to the Disclosure Statement Hearing, if necessary.

2. The Solicitation Period shall be extended to the date that is sixty (60) days after the Disclosure Statement Hearing, without prejudice to the Debtor seeking any further extension.

**SO ORDERED.**

SUBMITTED BY:

 /s/ James A. Coutinho
James A. Coutinho     (0082430)

# EXHIBIT A
# PROPOSED ORDER

Andrew D. Rebholz    (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
T: (614) 221-8500; F: (614) 221-5988
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel for Debtor / Debtor in Possession*

Copies to Default List Plus Top 20
.

## NOTICE OF DEBTOR'S MOTION TO (1) EXTEND EXCLUSIVE PERIOD TO SOLICIT ACCEPTANCES FOR CHAPTER 11 PLAN; (2) SCHEDULE DISCLOSURE STATEMENT HEARING AFTER SUBMISSION OF EXAMINER REPORT

The Debtor has filed a motion seeking to have the Court schedule a hearing on the adequacy of the Debtor's Disclosure Statement, but that the hearing be held after the court-appointed Examiner files his Report. The Debtor further seeks to extend the attendant solicitation period until after the disclosure statement hearing.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you do not want the Court to grant the relief sought in the motion, **then on or before twenty-one (21) days from the date set forth in the certificate of service for the motion**, you must file with the Court a response explaining your position by mailing your response by regular U.S. Mail to Clerk, United States Bankruptcy Court, Atrium Two, Suite 800, 221 E. Fourth St., Cincinnati, OH 45202, OR your attorney must file a response using the Court's ECF system.

The Court must **receive** your response on or before the date set forth above.

You must also send a copy of your response either by (1) the Court's ECF system, or (2) regular U.S. Mail to:

Office of the United States Trustee
550 Main Street, Suite 4-812
Cincinnati, OH 45202

James A. Coutinho, Esq.
Allen Stovall Neuman & Ashton, LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief without further notice or hearing.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing *Debtor's Motion to (1) Extend Exclusive Period to Solicit Acceptances for Chapter 11 Plan; (2) Schedule Disclosure Statement Hearing After Submission of Examiner Report* was served (i) electronically on the date of filing through the court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) by ordinary U.S. Mail on May 21, 2026, addressed to the following:

See attached mailing matrix containing the Debtor, Office of the United States Trustee, Top 20 Unsecured Creditors, and those parties requesting notice.

 /s/ James A. Coutinho
James A. Coutinho    (0082430)

**David T. Austin, Esq.**
Office of the US Trustee
J.W. Peck Federal Building
550 Main Street, Suite 4-812
Cincinnati, OH 45202-5212
*Counsel for United States Trustee*

**Austin Z. Baurichter, Esq.**
Bricker Graydon LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
*Counsel for Park National Bank*

**Branden P. Moore, Esq.**
McGuireWoods LLP
260 Forbes Ave., Suite 1800
Pittsburgh, PA 15222
*Counsel for Merrill Lynch, Pierce, Fenner & Smith Inc. & Bank of America, NA*

**Brian Green, Esq.**
Shapero & Green, LLC
25101 Chagrin Boulevard
Beechwood, OH 44122
*Counsel for First Federal Savings & Loan Association of Lakewood*

**Christopher P. Schueller, Esq.**
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
*Counsel for The Huntington National Bank*

**David Mullen, Esq.**
McGlinchey Stafford, PLLC
3401 Tuttle Rd, Ste 200
Cleveland, OH 44122
*Counsel for Bank of America, N.A.*

**Donald W. Mallory, Esq.**
Wood + Lamping, LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202
*Counsel for General Electric Credit Union*

**First Federal Savings Bank**
PO Box 250
Washington Court House, OH 43160
*Top 20*

**Karolina F. Perr, Esq.**
Wood + Lamping, LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202
*Counsel for Village of Evendale, Ohio*

**Kelly M. Neal, Esq.**
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
*Counsel for The Huntington National Bank*

**Partick Hruby, Esq.**
Brock & Scott, PLLC
3825 Forrestgate Drive
Winston Salem, NC 27103
*Counsel for First Merchants Bank*

**Patricia B. Fugée, Esq.**
FisherBroyles, LLP
27100 Oakmead Drive, #306
Perrysburg, OH 43551
*Counsel for Civista Bank*

**Paul T. Saba, Esq.**
SSP Law Co., L.P.A.
2623 Erie Avenue
Cincinnati, OH 45208
*Counsel for Stock Yards Bank & Trust Company*

**Raymond Joseph Schneider**
3515 Tiffany Ridge Lane
Cincinnati, OH 45241
*Debtor*

**Richard Boydston, Esq.**
Dentons Bingham Greenebaum LLP
312 Walnut Street #2450
Cincinnati, OH 45202
*Counsel for First Merchants Bank*

**Jon J. Lieberman, Esq.**
McCalla Yamer Leibert Pierce, LLP
1544 Old Alabama Road
Roswell, GA 30076
*Counsel for Heritage Bank*

**Rockland Trust Company**
288 Union Street
Rockland, MA 02370
*Top 20*

**Steven M. Hartmann, Esq.**
Smith, Gambrell & Russell, LLP
155 North Wacker Drive, Stuite 3000
Chicago, IL 60606
*Counsel for Transamerica Life Insurance Company*

**Susan M. Argo, Esq.**
Bricker Graydon LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
*Counsel for Three Notes, LLC & Park National Bank*

**Timothy P. Palmer, Esq.**
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
*Counsel for The Huntington National Bank*

**Tricia Morra, Esq.**
ALDRIDGE PITE, LLP
3333 Camino del Rio South, Suite 225
San Diego, CA 92108
*Counsel for Nationstar Mortgage, LLC*

**Truist Bank**
1001 Semmes Ave.
Richmond, VA 23224
*Secured Creditor - NoA Service Address*

**Robert McIntosh, Esq.**
Brock & Scott, PLLC
3825 Forrestgate Drive
Winston Salem, NC 27103
*Counsel for Truist Bank*

**Whitney L. Mosby, Esq.**
Dentons Bingham Greenebaum LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204
*Counsel for First Merchants Bank*