**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 25-12607 |
| | : | Chapter 11 |
| Raymond Joseph Schneider, | : | |
| | : | Judge Beth A. Buchanan |
| Debtor and Debtor in Possession. | : | |

**JOINDER AND OBJECTION OF VARIOUS AFFECTED ENTITIES TO MOTION OF
THE HUNTINGTON NATIONAL BANK FOR AUTHORIZATION TO CONDUCT
RULE 2004 DISCOVERY OF THIRD-PARTY BANKS (DOC. 204)**

Circle Storage Operating Company I, LLC; Grasshopper Investments, LLC; Grasshopper Investments II, LLC; Madison Warehouse, LLC; Hyde Park Circle, LLC; Mason RD, LLC; Northern Kentucky Assisted Living, LLC; Northern Kentucky Retirement Community, LLC; The Red Corner, LLC; The Blue Development Company, LLC; Boston RD, LLC; North Shore RD, LLC; 5150 East Galbraith Road, LLC; and To Life, Ltd. (collectively, the "Affected Entities" or individually the "Affected Entity") object to the Motion of The Huntington National Bank ("Huntington") for Authorization to Conduct Rule 2004 Discovery of Third Party Banks (Doc. 204) (the "Motion"), and join in the objection to the Motion filed by First Merchants Bank, Civista Bank, Heritage Bank, and General Electric Credit Union (Doc. 229) (the "Bank Objection").

**I.      INTRODUCTION**

The Affected Entities are the borrowers and account holders whose loan files, account statements, tax returns, and communications Huntington proposes to subpoena from the Affected Entities lenders. Circle Storage Operating Company I, Grasshopper Investments, and Grasshopper Investments II are obligated to First Merchants Bank (Claim No. 8). Madison Warehouse is obligated to Heritage Bank (Claim No. 2). Hyde Park Circle is obligated to General Electric Credit Union and Kemba Credit Union (Claim Nos. 23 and 4). Mason RD, Northern Kentucky Assisted Living, Northern Kentucky Retirement Community, The Red Corner, and The Blue Development

1

Company are obligated to Civista Bank (Claim Nos. 13 through 17). Boston RD and North Shore RD are obligated to Rockland Trust Company (Claim No. 24). 5150 East Galbraith Road is obligated to Stock Yards Bank & Trust Company (Claim No. 22). To Life, Ltd. is the obligor on the mortgage loan held by Transamerica Life Insurance Company.

The Affected Entities will bear the cost of the subpoenas Huntington asks leave to serve. The loan documents governing the various loans permit each lender to charge its borrowers the costs and expenses it incurs, including attorney fees incurred in connection with this bankruptcy case and related litigation.  At least one of the lenders has already advised Debtor that it will do exactly that if required to respond. The revenues of these same companies service the loans and are slated to fund Debtor's proposed plan of reorganization. Every dollar a bank spends collecting and reviewing documents for Huntington is a dollar charged back to an Affected Entity and, ultimately, taken from the recoveries of the creditors this case exists to pay.

The Affected Entities do not oppose reasonable discovery. However, these requests are not reasonable in the context of this case. Huntington is simultaneously pursuing the same information through multiple channels; (i) the Rule 2004 discovery it served on and litigated with the Debtor, which is nearly complete; (ii) the Examiner investigation Huntington itself requested, which covers this exact subject matter and is underway; and; (iii) now twelve (12) bank subpoenas demanding every conceivable document over an eight-year period. Huntington should not be permitted to harm the companies that will fund the Debtor's reorganization to obtain information it already has or will shortly receive from the Examiner or Debtor.

## II.     JOINDER IN THE BANK OBJECTION

The Affected Entities join in and adopt the Bank Objection. As set out there, the Motion is premature while the Examiner's investigation is pending, the requests cover the exact scope of that investigation, the fourteen-day response deadline is unreasonable, and Huntington made no attempt to obtain any of this information consensually before seeking twelve subpoenas. Bank Objection ¶ 20. The Affected Entities write separately to address the burdens the Motion places on them and on the estate.

## III.    THE MOTION SHOULD BE DENIED

The Affected Entities are parties in interest under 11 U.S.C. § 1109(b). They are the direct obligors on the loans that are the subject of the proposed subpoenas, they maintain the deposit accounts that Huntington seeks to examine, and the loan documents permit the lenders to charge the Affected Entities the costs of responding (including attorneys' fees). The Motions therefore directly and adversely affect their property and their ability to fund the Debtor's proposed reorganization.

### A.     The cost of compliance falls on the companies that fund the reorganization.

A Rule 2004 examination "should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery." *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989); *accord Official Comm. of Unsecured Creditors v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994). Here the disruption and cost do not stop with the banks. Through the expense provisions of the various loan documents, the cost of compliance will be passed to fourteen operating companies whose cash flow supports the Debtor's plan. The burden side of the Rule 2004 balance therefore

includes the estate's own funding sources, not merely twelve financial institutions with their own objections on file.

Once an objection is made, good cause is Huntington's burden to establish. *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008). Huntington's entire showing is a single sentence: "Full information is needed from the Banks to analyze Debtor's assets, liabilities, and pre-petition transfers." Motion ¶ 5. This sentence does not satisfy the burden for the six document requests, directed to twelve institutions, covering 107 entities over more than eight years, at a cost Huntington intends someone else to pay.

**B.     The requests are duplicative, overbroad, and Huntington made no effort to tailor them.**

Request 5 of the proposed subpoena demands every communication since January 1, 2018 between each bank and Debtor, Debtor's family, the Debtor's family trusts, any of the 107 entities listed on the schedule attached to the subpoena, and any "representative or agent" of any of them. The remaining requests demand all account statements, all loan documents, all underwriting submissions, all collateral documents, and all tax returns for the same universe over the same period. That period begins nearly eight years before the petition date and reaches beyond any lookback applicable to the avoidance claims Huntington says it wants to investigate.

It does not appear that Huntington drafted these requests for the banks. It copied the definitions and the 107-entity schedule from the discovery it served on Debtor at the outset of this case, and it made no adjustment for anything it has learned since. Each bank's proof of claim identifies the entities it actually lends to; and no bank on Huntington's list deals with more than a handful of the 107 different entities. Debtor's filings and discovery responses establish that many of the scheduled entities are dissolved, never operated, or were never owned or controlled by

Debtor. Requiring each of twelve banks to run all 107 names through its records is beyond unreasonable.

The requests also duplicate the production Debtor has already made under the agreed Rule 2004 process in this case: bank statements, loan and financing documents, financial statements furnished to lenders, and tax returns, organized by entity. Debtor has reported that significant production has already been provided, and Huntington recently entered into an agreed order with Debtor to set final discovery deadlines. (Doc. 217). For example, Request 4 asks the banks for copies of the same tax returns Debtor has already delivered to Huntington. Huntington identifies no gap in Debtor's production that only the banks can fill, and relevance alone is not good cause for requiring production of information already available. Bank Objection ¶ 19. When the burden is on Huntington to justify the breadth of its requests, copying and pasting a set of requests that already went to Debtor is not appropriate.

**C.      The Court has already committed this investigation to the Examiner.**

By agreed order, this Court directed the Examiner to investigate Debtor's assets, liabilities, and financial affairs; his transactions with family members, trusts, and businesses from January 1, 2018 forward; and his tax returns and financial statements, including personal financial statements sent to his lenders. Agreed Order (Doc. 165) ¶ 3. That is the precise subject matter of these subpoenas, down to the January 1, 2018 start date. The Examiner holds subpoena power (Doc. 165 ¶ 11), works under a court-supervised work plan and budget (Doc. 165 ¶ 18; Doc. 198), and anticipates filing his report this fall. Whatever Huntington obtains in discovery must be delivered to the Examiner within two business days (Doc. 165 ¶ 12), and the Court has continued the substantive matters in this case until the report is filed. See Docs. 193, 215.

Huntington agreed to that structure. If bank-level records are needed to complete the investigation, the Examiner can obtain them under his own subpoena power, on a schedule and budget the Court controls at the August hearing. Twelve subpoenas served as an end run around the Examiner would duplicate his work at the expense of the Affected Entities and the estate, before anyone knows whether any gap in the record exists.

**D.      The derivative standing motion supplies no good cause.**

Huntington's request for authority to prosecute avoidance actions (Doc. 132) has not been heard; the evidentiary hearing is continued to October 5, 2026. Doc. 215. Huntington does not control those claims and may never control them. The bank records it seeks also have no bearing on the theories it has actually pleaded, which concern the Debtor's 2019 and 2020 gifts to family trusts. Those transactions are documented in Debtor's production and sit at the center of the Examiner's investigation. Rule 2004 does not authorize litigation discovery in aid of claims the movant does not hold, about transactions an examiner is already investigating.

## IV.   CONCLUSION

For these reasons, the Affected Entities request that the Court deny the Motion or, at a minimum, defer any Rule 2004 discovery directed to the lenders until after the Examiner completed and files his report. If any discovery is permitted, it should be (a) limited to the specific entities each bank actually lends to or banks for, (b) coordinated with and supervised by the Examiner, (c) subject to a reasonable response period of at least 45 to 60 days, and (d) conditioned on Huntington's agreement that Huntington will reimburse the costs incurred by the lenders and not charge these costs to its own loan.

Respectfully submitted,

*/s/ Richard S. Wayne*
Richard S. Wayne (0022390)
STRAUSS TROY CO., LPA
150 East Fourth Street, 4th Floor
Cincinnati, Ohio 45202
T: (513) 621-2120
rewayne@strausstroy.com
***Counsel for the Affected Entities***

7

**CERTIFICATE OF SERVICE**

I certify that on July 21, 2026, a copy of the foregoing was served electronically on all ECF participants registered in this case at the email address registered with the Court, and by first class mail upon the following parties:

None.

/s/ Richard S. Wayne
Richard S. Wayne (0022390)

19616906.1