**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| In re:<br><br>RAYMOND JOSEPH SCHNEIDER,<br><br>Debtor. | )<br>)  Chapter 11<br>)  Case No. 25-12607<br>)  Judge Beth A. Buchanan<br>)<br>) |

**OMNIBUS REPLY OF THE HUNTINGTON NATIONAL BANK IN RESPONSE TO
OBJECTIONS TO RULE 2004 DISCOVERY FILED AT ECF 229 AND 230 BY
CERTAIN DEBTOR RELATED ENTITIES AND BANKS**

The Huntington National Bank ("**Huntington**") respectfully submits this Omnibus Reply in Response to Objections to Rule 2004 Discovery Filed at ECF 229 and 230 by the Certain Debtor Related Entities and Banks[1].

**INTRODUCTION**

1.      Huntington respectfully requests that the Court overrule the objections.

2.      **First**, Huntington seeks 2004 discovery of information that is relevant on multiple issues impacting Huntington and other creditors.  Huntington needs this information from third-parties because, by his own admissions filed with this Court, the debtor Raymond Joseph Schneider ("**Debtor**") does not possess complete and reliable financial and accounting records.

3.      **Second**, Huntington is not duplicating the efforts of the examiner William Kreiger ("**Examiner**").  The Examiner has not served any 2004 discovery on the Banks or the Debtor

---

[1] The objectors ("**Objectors**") are First Merchants Bank, Civista Bank, Heritage Bank and General Electric Credit Union (collectively, the "**Banks**"), and Debtor related entities Circle Storage Operating Company I, LLC, Grasshopper Investments, LLC, Grasshopper Investments II, LLC, Madison Warehouse, LLC, Hyde Park Circle, LLC, Mason RD, LLC, Northern Kentucky Assisted Living, LLC,  Northern Kentucky Retirement Community, LLC, The Red Corner, LLC, The Blue Development Company, LLC, Boston RD, LLC, North Shore RD, LLC,  5150 East Galbraith Road, LLC, and To Life, Ltd. (collectively, the "**Debtor Related Entities**").

Related Entities.  Furthermore, Huntington will share all information it obtains from its 2004 discovery efforts with the Examiner.  Huntington will do this at its own expense, and not at the expense of the estate.

4.  **Third**, all objections as to the scope of the proposed 2004 discovery should be deferred and addressed as needed through the standard Rule 45 process to resolve disputes as to scope.  That includes a meet and confer process to eliminate, or at least narrow,  any disputes before judicial intervention is needed.

5.  **Fourth**, even if the Court were to consider objections as to scope now, the Objectors have failed to establish the required legal foundation for their burden argument.  They provide no details concerning the alleged burden, and do not provide the required affidavit setting forth those details.

6.  For these and other reasons discussed in more detail below, Huntington respectfully requests that the Court overrule the objections.

## **ARGUMENT**

### **Huntington's Discovery is Relevant and Necessary**

7.  None of the Objectors deny that the 2004 discovery is relevant.  That is because any and all financial information related to the income, expenses, assets and liabilities of the Debtor are the proper subject of 2004 discovery.  Here, the discovery is relevant on many different bankruptcy issues, including (i) the financial condition and valuation of the Debtor's ownership interests in real estate companies, (ii) the Debtor's income and expenses, (iii) the accuracy of the Debtor's schedules and the information contained in the Debtor's proposed disclosure statement, (iv) possible fraudulent conveyances of Debtor assets, and (v) the value of any assets which were fraudulently conveyed.

8. It is imperative that Huntington obtain discovery from third-parties because the Debtor, by his own admission, does not maintain regular financial or accounting records. (ECF 50, pp. 6-7)  The Debtor purports to manage his complex business empire and personal finances solely through tax filings and bank statements. (ECF 50, pp. 6-7)  This is indeed a very unusual (and perhaps even suspicious) practice.  Debtor further notes that his bank statements are convoluted because of multiple transfers between himself and his business entities, including the Debtor Related Entities. (ECF 50, pp. 6-7)  Compounding this recordkeeping mess is that Debtor has not filed tax returns in 2024 or 2025. (ECF 50, pp. 6-7)  This effectively means that the Debtor has no solid financial and accounting records for almost two years prior to his bankruptcy filing. In his schedules, the Debtor described his poor and spotty recordkeeping as follows:

> The Debtor's income generation is **complex** and comes from a multitude of business sources, including multiple business interests and investments. As an individual, **the Debtor does not maintain regular financial records** of his personal income other than through his tax filings, which are complex, and through his financial accounts, which are **complicated** by inter-account transfers. The Debtor has used his best efforts to estimate his gross income for this response based on his tax filings and bank statements but continues to review these figures and will amend if appropriate upon a more accurate determination. The Debtor has not yet filed his 2024 tax returns, which further **complicates** the response to this question, and the 2024 and 2025 figures are based on bank statements after accounting, to the extent possible, for inter-account transfers.

(ECF 50, pp. 6-7) (emphasis added).  Because the Debtor essentially disclaims that he has complete financial and accounting records, Huntington needs to piece together the financial and accounting picture through the records of third-parties such as the Banks and the Debtor Related Entities.

9. Even the few records in the Debtor's possession are, by Debtor's own admission, unreliable. (ECF 50, p. 3) Debtor states the following in his schedules:

> Prior to the petition date, the Debtor operated as a business owner with the ability to transfer funds as needed to meet personal, business, and future business needs. The Debtor has used his best efforts to track the information from his financial

transactions that is required to be included in the Schedules and Statement, and reserves the right to supplement and amend the disclosures should the need arise. **In addition, the Debtor has had certain financial transactions with his business entities that may not yet have been characterized or may have been improperly characterized**, including characterizations such as whether funds provided to a company were for capital contributions or loans, or whether funds paid to the Debtor were draws or loans.

(ECF 50, p. 3) (emphasis added). The Debtor further disclaims the accuracy of his own financial

information where he states:

> While the Debtor has made a reasonable effort to ensure that the Schedules and Statement are accurate and complete based on information readily available to him at the time of preparation after reasonable inquiries, **inadvertent errors or omissions may exist** or the subsequent receipt of information may result in changes in financial and other data contained in the Schedules and Statement . . .

(ECF 50, p.7) (emphasis added) The Debtor goes so far as to say that his own records are so

unreliable, he had to rely on the claim information from the Banks to compile his list of liabilities.

The Debtor states:

> The Debtor has further relied upon various sources of information about his liabilities that were not generated by the Debtor, such as previously filed creditor claims. **The Debtor has not, and could not have, personally verified the accuracy of each such statement and representation**, including statements and representations concerning amounts owed to creditors.

(ECF 50, p.2) (emphasis added) Huntington clearly needs to obtain financial information from

third-parties to obtain more reliable information than what the Debtor has in his possession.

10.     Third-party discovery is also important to pin down proper asset valuations.  The

Debtor admits that the values he places on his assets are based on his personal estimates and not

upon any specific financial data or any accepted valuation methodology.  He states:

> Except as otherwise noted in the Schedules and Statement, all valuations of assets and the amounts of liabilities are valued as of the petition date to the best of the Debtor's ability. **In certain instances, the Debtor used estimates where actual data as of the petition date was not available**.

(ECF 50, p.2) (emphasis added) Given this, it is critical that Huntington obtain financial data relevant to asset valuations and valuation methodologies from third-parties.

11.     On top of this, the Debtor admits that he has not kept copies of the personal financial statements he provided to different banks.  He states:

> From time to time, in his individual capacity as well as in his capacity as a manager or member of a business, the Debtor has provided financial statements in the ordinary course of business to certain parties for business, statutory, credit, financing, and other reasons. Recipients have included financial institutions, banks, vendors, debt holders, and their legal and financial advisors. **The Debtor has worked to identify those to whom he provided financial statements, but it was not part of the Debtor's regular course of business to document those disclosures**.

(ECF50, p.7)  (emphasis added) Because the Debtor may not have all his financial statements, Huntington needs to obtain that information from other sources.

12.     Aside from seeking new financial and accounting records, Huntington is investigating the transfer of tens of millions of dollars assets into family trusts.  Presumably, these transfers did not go unnoticed by the Objectors, and presumably the Objectors have some records pertaining to these transfers which could prove incredibly important in the investigation.

13.      Huntington very reasonably suspects that the Objectors will produce different documents responsive to the same requests for production which Huntington served on the Debtor. Furthermore, the production of documents by third-parties will help test the truth, accuracy and completeness of the Debtor's production.   For these reasons, the 2004 discovery from the Objectors should move forward.

**Huntington is not Duplicating the Efforts of the Examiner**

14.     As a party in interest, creditors have standing to seek Rule 2004 discovery. *E.g. In Matter of Embrace Sys. Corp.,* 178 B.R. 112 (Bankr. W.D. Mich. 1995) (creditor qualifies as a

party in interest under § 1109(b) regardless of whether the claim was acquired before or after the petition date). An examiner does not displace Rule 2004 rights. *In re Residential Cap., LLC*, 474 B.R. 112, n. 4 (Bankr. S.D.N.Y. 2012). Nothing in Rule 2004 or 11 U.S.C. § 1104(d) and 11 U.S.C. § 1106(b) extinguishes Rule 2004 rights after the appointment of an examiner. Therefore, courts permit 2004 discovery from a creditor concurrently with an examiner's investigation so long as the efforts are not duplicative. *In re Residential Cap., LLC,* 474 B.R. 112, at n. 4 ("the Court fully expects that a non-duplicative investigation will be conducted, with complete cooperation expected between the Debtors, the Creditors Committee, and all other parties").

15.    Huntington has not, and will not, duplicate the efforts of the Examiner. The Examiner laid out four phases to his work. (ECF 198) The Examiner will (i) gather information informally and spot issues; (ii) compile a cash flow analysis and income reporting reconciliation; (iii) serve subpoenas and conduct 2004 discovery, and (iv) prepare a report. (ECF 198) The Examiner is currently in Phase 1 of this plan and has not conducted any 2004 discovery with the Objectors. This means that the proposed 2004 discovery of Huntington is not duplicative of the Examiner's efforts.

16.    This is in fact how all 2004 discovery has taken place to date. Huntington has gathered information and given it all to the Examiner. Huntington has even spent hundreds of thousands of dollars on its own financial advisor to compile the information received to date and Huntington has shared all that information in its compiled and organized format with the Examiner. All this has been accomplished at Huntington's expense and not as an estate expense. Huntington proposes that this non-duplicative and cooperative effort continue going forward with 2004 discovery from the Objectors.

17.    Aside from this, Huntington needs evidence to advance its positions and cannot merely sit back and rely on the Examiner's report.  "An examiner has no adjudicatory role, only an investigatory role." *In re Gordon Props., LLC*, 514 B.R. 449, 462-63 (Bankr. E.D. Va. 2013). The examiner's report has no binding effect on the court.  *In re Gordon Props., LLC*, 514 B.R. at 462-63; *In re Ionosphere Cubs, Inc.*, 156 B.R. 414, 433 (S.D.NY. 1993) ("The Examiner's findings are no more binding on the court than those of any other attorney's"); *Rickel & Assoc., Inc. v. Smith (In re Rickel & Assoc., Inc.)*, 272 B.R. 74, 87-88 (Bankr.S.D.N.Y. 2002) ("[T]he evidence and findings in the Report are not binding.  The Examiner conducted an investigation, but he was not charged — nor could he be — with the duty to 'hear and determine' any claims in this case.").  An examiner's report is not admissible into evidence simply because it is an examiner's report.  *United States v. Moore*, 27 F.3d 969, 975 (4th Cir. 1994) ("statement to the examiner, which was contained in that report, is hearsay and inadmissible unless some exception to the hearsay rule applies"); *In re Fibermark, Inc.*, 339 B.R. 321, 326-327 (Bankr.D.Vt. 2006) (examiner's report not admissible, but examiner's conclusions admissible as expert opinion); *Rickel & Assoc.*, 272 B.R. at 87 ("The Report is hearsay").  "There is no request that it be accepted or approved by the court and no procedure to do so. It is publicly filed. It is available to all parties. It may suggest areas to them that they should consider or investigate further.  They may use it or decline to use it as they see fit." *In re Gordon Props., LLC*, 514 B.R. at 463.

18.    For these reasons, Huntington needs to conduct its own discovery to gather its own evidence to protect its own interests.

**Objections as to Scope Should Be Deferred and Resolved Through the Normal Rule 45 Process**

19.     Objections as to the scope of Rule 2004 discovery should not take place at the time of the authorization motion.  *In re Sheetz*, 452 B.R. 746, 750 (Bankr. N.D. Ind. 2011).  Instead, objections as to scope should be addressed through the normal Rule 45 process which includes meet and confer requirements.  *In re Sheetz*, 452 B.R. at 750 ("[a]ny problems in the method, scope, or conduct of the examination should be dealt with through the subpoena process and Rule 45, rather than litigating over whether the trustee has the right to ask her questions in the first place").

20.     Huntington proposes that the Court defer objections as to scope until the entire Rule 45 process has run its course.

**The Objectors have Failed to Establish their Alleged Burden with an Affidavit or Otherwise**

21.     Although the scope of the discovery should be deferred for now, it is worth noting that the Objectors have failed to establish a proper evidentiary basis for the Court to evaluate their burden argument.

22.     Once the issuing party meets its burden to show that the requested information is relevant, the burden shifts to the non-movant to show that producing the information would be unduly burdensome.  *Barnes v. Midland Credit Mgmt.*, No. 1:19CV1483, 2020 WL 6778013, at *3 (N.D. Ohio Nov. 17, 2020). "[T]he Sixth Circuit has held that 'limiting the scope of discovery is appropriate when compliance would prove unduly burdensome, not merely expensive or time-consuming.' " *Id.* (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).  Notably, "[a] showing of burden, alone, is inadequate to relieve a party from discovery obligations." *Am. Consol. Indus., Inc. v. Blasingim*, No. 1:19-cv-137, 2021 WL 4204936, at *4

8

(N.D. Ohio Feb. 24, 2021). Instead, "[t]he opposing party must also show that the burden is undue or disproportionate to the needs of the case." *Id*.

23.     A party cannot rely on general assertions that a discovery request is unduly burdensome. Rather, "[a] responding party 'must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden.' " *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 410 (N.D. Ohio Jan. 24, 2011) quoting *Kafele v. Javitch, Block, Eisen & Rathbone*, No. 03-638, 2005 WL 5095186, at *2 n.8 (S.D. Ohio Apr. 20, 2005)). "The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *Id.* (quoting *Kafele*, 2005 WL 5095186, at *2 n.8).

24.     Here, the Objectors have not presented any details in any evidentiary form to substantiate their burden argument.  For that reason, their objections as to scope should be overruled.

**The Debtor Continues His Pattern of Obstruction and Delay**

25.     The Debtor's continued efforts to delay and obstruct the disclosure of information should not be ignored.

26.     The Debtor was sanctioned in his first bankruptcy case for failing to disclose information on his finances for over a year.  In his second bankruptcy filing, this continued.  The Debtor delayed responding to interrogatories and document demands which Huntington served in November of 2025.  In fact, to date, the Debtor has still not produced **any** electronic discovery.  Not even one e-mail.  Moreover, the Debtor even objected to the scope of the Examiner's work claiming much of the work was not necessary.  The entire discovery process to date has been tortured because of the Debtor's dilatory tactics.

27.     Now come the Debtor Related Entities before the Court.  The Debtor Related Entities are all owned by Debtor or family trusts **over which the Debtor maintains voting control**.  Debtor is pulling all the strings here.  By filing an objection to 2004 discovery, the Debtor is using the Debtor Related Entities as his puppets to again obstruct the discovery process.  In fact, the attorney filing the objection for the Debtor Related Entities is the same attorney who represented Debtor in Huntington's lengthy collection action in state court.  The Debtor Related Entities are not true, unrelated third-parties.

28.     Huntington respectfully requests that the Court see through this charade and overrule the objections of the Debtor Related Entities.

**WHEREFORE**, based on the foregoing, Huntington respectfully requests that the 2004 Motions be granted against the Banks and Debtor Related Entities, together with such other and further relief as is just and proper.

Dated:  July 27, 2026                              Respectfully submitted,

                                                   **BUCHANAN INGERSOLL & ROONEY PC**


                                                   /s/*Christopher P. Schueller*
                                                   Christopher P. Schueller (OH Id. No. 0086170)
                                                   Timothy P. Palmer (OH Id. No. 86166)
                                                   Kelly M. Neal (OH Id. No. 100889)
                                                   Union Trust Building
                                                   501 Grant Street, Suite 200
                                                   Pittsburgh, PA 15219
                                                   Telephone: 412-562-8800
                                                   Fax:  412-562-1041
                                                   E-mail: christopher.schueller@bipc.com
                                                   E-mail: timothy.palmer@bipc.com
                                                   E-mail: kelly.neal@bipc.com

                                                   *Attorneys for The Huntington National Bank*