# Huntington's Exhibit 2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

| | |
|---|---|
| In re:<br><br>RAYMOND JOSEPH SCHNEIDER,<br><br>             Debtor. | Chapter 11<br>Case No. 1:25-bk-12607<br>Judge Beth A. Buchanan |

**MOTION OF THE HUNTINGTON NATIONAL BANK FOR
AUTHORIZATION TO PROSECUTE DERIVATIVE ACTIONS**

The Huntington National Bank ("**Huntington**") respectfully submits this Motion for Authorization to Prosecute Derivative Actions ("**Motion**") for the benefit of the bankruptcy estate. Huntington respectfully seeks authority to prosecute various estate causes of action against third parties for the benefit of the bankruptcy estate. These causes of action include those alleged in a pre-petition state court complaint against the Raymond J. Schneider (the "**Debtor**") and his family members which was removed by the Debtor to this Court and is presently pending as adversary proceeding number 1:26-ap-01003 (the "**Adversary Proceeding**"). The causes of action also include other recently discovered claims against the Debtor's family members, trusts and the Debtor's companies.

## I.     INTRODUCTION

1.     This is the Debtor's second bankruptcy case. As described in the complaint in the Adversary Proceeding, prior to the first case (the "**First Case**") in 2023, the Debtor gifted tens of millions of dollars to his spouse, children and family trusts ("**Family Trusts**"). The Debtor also engaged in various transactions to restructure the ownership of some of the Debtor's businesses to shift the bulk of the economic value to the Debtor's family as non-voting interests while the Debtor

retained voting control over the entities. The Debtor received no real value in exchange for these transfers.

2.     The transfers continued in the interim between the First Case and this case (the "**Second Case**"). For example, in one transaction, the Debtor transferred his 100% equity interest in Red Dog Management Company, LLC to Red Dog Operations Holding Company and received in return a 0.5% interest in a newly formed holding company called KPT7 Holding Company, LLC. In another, the Debtor transferred his 100% equity interest in The Blue Development Company, LLC[1] to one of the Family Trusts (with his spouse as the trustee) in exchange for a $1,485,000 promissory note.

3.     In addition, there are other transfers which should be avoided. For example, it appears during the First Case the Debtor diverted $418,654 in distributions from one of his companies to the Debtor's spouse in the form of wages. Evidence, including the Debtor's bankruptcy schedules and tax returns, strongly suggests the spouse was retired may not have done any material work for the compensation. The wages paid to the spouse were likely contrivance to provide the Debtor with funds outside the purview of the Court and the monthly operating report process.

4.     The Debtor also likely has claims against his companies which were obfuscated by the Debtor and not adequately disclosed by the Debtor in his bankruptcy schedules and statements. In particular, there is a disclaimer in his schedules stating transactions between the Debtor and his companies have either been mischaracterized, or not yet characterized by the Debtor, with regard

---

1     "The Blue" is the Debtor's new, large scale, development similar to the Debtor's "The Red" apartment complex. "The Blue" is apparently currently under development. See, https://circledevelopment.com/the-blue.

to whether the transactions were loans or capital contributions.[2] As a result, it is not clear whether transfers to the companies are loans (which can be collected for the benefit of the bankruptcy estate) or capital contributions (which may be avoidable). The disclaimers, which include a statement that the Debtor does not maintain normal financial records, make the Debtor a facially unreliable, untrustworthy and, perhaps, incompetent person to identify and pursue these claims for the benefit of the estate.

5.      It is unlikely the Debtor will ever commence suit against his spouse, children, the Family Trusts or his companies. The Debtor has already refused to prosecute claims in the First Case.[3] In the Second Case, the Debtor responded to Huntington's demand to avoid certain transfers by claiming the Debtor has not completed an "analysis" of his own transactions. This is an excuse to thwart Huntington's efforts to ensure the claims are pursued for the benefit of the estate. The Debtor engaged in these transfers himself. He knows the details and knows the transfers are likely to represent a fraud on creditors. There is no need for further "analysis."

6.      There is no committee or trustee to prosecute these claims. Unless Huntington, the Debtor's largest unsecured creditor by orders of magnitude, is authorized to pursue the claims, these estate assets will be wasted and provide no benefit to creditors.

7.      The Debtor's pre-petition fraudulent conduct and post-petition obfuscation must not go unaddressed. It is imperative for the integrity of the bankruptcy process that someone promptly prosecute the claims so the Debtor does not stymie the creditors through a plan process which puts creditors on their back foot.

---

2      ECF No. 50, page 3

3      Case number 23-10337, ECF no. 76, page 91

8.      For these and other reasons discussed in more detail in this Motion, Huntington respectfully requests that the Motion be granted.

## II.      BACKGROUND

### The bankruptcy cases

9.      This is the second chapter 11 filing in the past three (3) years for the Debtor. On March 1, 2023, the Debtor filed the First Case[4] after Huntington obtained a $75 million judgment against the Debtor in the Ohio Court of Common Pleas ("**Judgment**"). On February 27, 2024, the Court granted the Debtor's motion to dismiss the First Case when the Judgment was vacated by the Ohio First District Court of Appeals.

10.     On August 20, 2025, the Ohio Supreme Court reinstated the Judgment[5] and the Debtor filed this Second Case on October 17, 2025 (the "**Petition Date**").

### The Debtor states his bankruptcy schedules and statements may not be accurate or complete

11.     The Debtor's bankruptcy schedules and statements in the Second Case contain four (4) pages of disclaimers including one in which the Debtor specifically disclaims the accuracy and completion of the schedules and statements:

> 8.      Financial Transactions. The financial affairs and business of the Debtor are complex. Prior to the petition date, the Debtor operated as a business owner with the ability to transfer funds as needed to meet personal, business, and future business needs. The Debtor has used his best efforts to track the information from his financial transactions that is required to be included in the Schedules and Statement, and reserves the right to supplement and amend the disclosures should the need arise. In addition, the Debtor has had certain financial transactions with his business entities that may **not**

---

4       Case number 23-10337

5       See, ECF no. 7, paragraph 3

4

**yet have been characterized** or may have been **improperly characterized**, including characterizations such as whether funds provided to a company were for capital contributions or loans, or whether funds paid to the Debtor were draws or loans. The Debtor continues to review all such transactions and will supplement and/or amend the Schedules and Statement as may be appropriate (emphasis added).[6]

12. Another disclaimer states the Debtor may have "**improperly characterized**" or "**omitted**" items in the schedules and statements.[7]

13. After four (4) months of this case, the Debtor has not amended the schedules to address these irregularities, and it does not appear that the Debtor has any intent to do so as the Debtor has not sought to retain an accountant to fix the problems.

14. The Debtor's disclaimers are inconsistent with the Debtor's "duty to prepare schedules carefully, completely, and accurately." *D.P. Mangan, Inc. v. Kennedy Hills Enters., LLC*, No. B246199, 2013 BL 223325, at *4 (Cal. Ct. App. 2d Dist. Aug. 21, 2013); *M&M Foods, Inc. v. Pacific American Fish Co., Inc.*, (2011) 196 Cal.App.4th 554, 563-564 (M&M Foods); *Cusano v. Klein, supra*, 264 F.3d at p. 946).

15. The disclaimers are not boilerplate which can be ignored. They were not included in the Debtor's bankruptcy schedules in the First Case and it does not appear they were included in the schedules for recent cases filed by Debtor's lead bankruptcy counsel.[8] They are legal machinations designed to avoid the liability and sanctions which come with false bankruptcy reporting and are specifically crafted to address the Debtor's situation which includes

---

6       ECF No. 50, page 3

7       ECF No. 50, page 4

8       See example, *Legacy Beavercreek of Dayton Operating Company, LLC,* case no. 25-31552, ECF no. 39

inappropriate mixing of the Debtor's personal and business finances along with the potential non-disclosure of fraudulent transfers and claims against the Debtor's business entities.

**The Debtor does not maintain regular financial records**

16.    The Debtor acknowledged in his schedules and statements that he does not maintain regular financial records of his personal income other than through his tax filings which, according to the Debtor, are complex, and through his financial accounts, which are complicated by inter-account transfers.[9] The Debtor has not sought to retain an accountant to untangle these transactions. Doing so will likely expose the magnitude of the problems.

### III.    <u>THE ADVERSARY PROCEEDING</u>

17.    The Adversary Proceeding is presently pending before the Court after having been removed by the Debtor from state court. The complaint in the Adversary Proceeding seeks avoidance of vary transfers by the Debtor to his family members and the Family Trusts. It also seeks to invalidate the Family Trusts. The claims in the Adversary Proceeding are summarized as follows.

**The Red Apartment transfer**

18.    The complaint in the adversary proceeding includes a transfer made by the Debtor, purportedly on December 31, 2019, in which the Debtor reallocated the ownership of the company which owns the "Red Apartments" project. Prior to the reallocation, the Debtor owned approximately 84% of the voting and non-voting interests in the company. After the reallocation, the Debtor retained a supermajority voting position but completely divested his non-voting interests which were reallocated to a self-settled trust.

---

[9]    ECF No. 50, page 3

**The Red Dog Pet Spa transfers**

19.     The complaint in the Adversary Proceeding also addresses a series of transactions in which the Debtor effectively transferred most of his ownership in the entities associated with his Red Dog Pet Spa business (the "**Red Dog Entities**") to his family members and one of the Family Trusts:

>      a.     Prior to Borrowers' financial problems, the Debtor was the sole owner of the Red Dog Entities. On February 28, 2020, the Debtor incorporated Red Dog Operations Holding Company, LLC (the "**Red Dog Holding Company**"). According to the Red Dog Holding Company's original Operating Agreement, the Debtor contributed his membership interests in the Red Dog Entities as capital for the Red Dog Holding Company. In exchange for this contribution, the Debtor received eighty percent (80%) of the ownership interests of the Red Dog Holding Company, represented by one (1) voting Class A Unit and 7,999 non-voting Class B Units. The other initial owner of Red Dog Holding Company was the Debtor's son, Eric Schneider, who contributed $530.87 in exchange for twenty percent (20%) of the ownership interests, represented by two thousand (2,000) non-voting Class C Units. In other words, the Debtor gave his son twenty percent of the Red Dog Spa business for $530.87.

b. On November 1, 2020, the Debtor transferred 6,999 non-voting Class B Units of the Red Dog Holding Company to his wife, Patricia Schneider. On December 31, 2020, Patricia Schneider assigned the 6,999 Class B Units of the Holding Company to the newly created Patricia B. Schneider Gift Trust which has the Debtor as the trustee.

c. On December 31, 2020, the Debtor gifted 1,000 non-voting Class B Units of the Red Dog Holding Company to Eric Schneider.

20. The result of these transfers is that the Debtor went from sole ownership of the Red Dog Entities to owning a single voting membership unit of the Red Holding Company with his son and self-settled trust owning all the non-voting membership units. In other words, the Debtor transferred the economic value of his ownership to insiders while retaining control of the asset.

21. Prior to these transfers, the Debtor provided Huntington with personal financial statements valuing the Red Dog Entities at $28,600,000.

**The Grasshopper transfers**

22. Prior to his financial problems, the Debtor owned hundred percent (100%) of Grasshopper Investments, LLC ("**Grasshopper**") which is the parent company of the Debtor's storage business.

23. By assignment effective on November 1, 2020, the Debtor transferred 396 non-voting Class B units of Grasshopper to Patricia Schneider. The Debtor retained two (2) Class A units of Grasshopper which represent all of the units entitled to vote. By an assignment effective

8

on December 31, 2020 at 11:59 pm, Patricia Schneider transferred 396 non-voting Class B units of Grasshopper to the Patricia B. Schneider Gift Trust. The Debtor is the trustee of that trust.

24.     Prior to these transfers, in 2019, the Debtor represented to Huntington that the total market value of his interests in the Grasshopper entities disclosed was $27,250,000. The Debtor currently values his interests in Grasshopper as $2,000,000.

**The Invalidity of the Family Trusts**

25.     The complaint in the Adversary Proceeding seeks to invalidate the Debtor's self-settled trust for a variety of reasons including:

a.      the trustee, which is the Debtor's spouse, has no material or enforceable duties to perform and any stated duties are immaterial or illusory;

b.      the Debtor is the only practical beneficiary during the trustee's lifetime, and the trustee has the power to withdraw all principal and interest from the trust and no obligation to make any distribution to any other stated beneficiary;

c.      the trust is a sham created to perpetrate creditor fraud and thwart Huntington's claims without any real intent to convey the assets to the trusts and should be disregarded;

d.      At all times, the Debtor continues to exercise dominion and control over the property of the trust;

e.      The Debtor is the real, equitable and beneficial owner of the property in the trust.

9

26.     The complaint in the Adversary Proceeding also seeks to invalidate the Patricia B. Schneider Gift Trust for a variety of reasons including:

a.      the Debtor, serving as trustee, has no material or enforceable duties to perform and any stated duties are immaterial or illusory;

b.      the Debtor, serving as trustee, has the power to treat the trustee as the only beneficiary during the Debtor's lifetime and the trustee has the power to withdraw and distribute to himself all property from the trust and has no obligation to make any distribution to any beneficiary other than himself;

c.      the trust is a sham created to perpetrate creditor fraud and thwart Huntington's claims without any real intent to convey the assets to the trusts and should be disregarded;

d.      At all times, the Debtor continues to exercise dominion and control over the property of the trust;

e.      The Debtor is the real, equitable and beneficial owner of the property in the trust.

27.     Both of the Family Trusts include a provision expressly declaring each to be "grantor trusts" for federal tax purposes. This means, for federal tax purposes, each trust is "completely ignored" because the grantor retains a sufficient degree of control over, or beneficial interest in the trust and the grantor is treated as the owner of the trust assets for federal income tax purposes. The grantor remains the party which is responsible for payment of taxes related to the assets which are held, in name only, by each trust.

10

## IV.    THE NEWLY DISCOVERED CAUSES OF ACTION

28.    Huntington also respectfully requests authority to bring all causes of action, whether newly or subsequently discovered, on behalf of the Debtor and the bankruptcy estate against the Debtor's spouse, other family members, the Family Trusts and the Debtor's companies. The newly discovered causes of action include claims related to the following.

### Diversion of income to Debtor's spouse

29.    One of the Debtor's companies, Grasshopper, paid Debtor's spouse $418,654 in wages in 2023 during the First Case. The spouse has no history of wages from any source in 2020, 2021, and 2022 and is listed in tax returns dating back to 2020, including the 2023 tax return, as "retired." In contrast, the Debtor is listed in the tax returns as a real estate professional but has no reported wages on the 2023 tax return. These inconsistencies raise the very real possibility that the spouse did no real work for the company and was merely paid the wages to avoid them coming within the purview of this Court and subject to the scrutiny of interested parties, including the Office of the United States Trustee whose statutory fees may have been impacted by the apparent scheme.

30.    Huntington respectfully requests authority to seek avoidance of these payments for the benefit of the bankruptcy estate.

### The transfers in the interim between the First Case and Second Case

31.    In addition to the gifts and transfers which occurred before the First Case, there are additional potentially avoidable transfers which occurred in the interim between the two cases, including:

a.    the Debtor transferred his 100% equity interest in Red Dog

Management  Company,  LLC  to  Red  Dog  Operations

11

Holding Company and apparently received in return a 0.5% interest in a newly formed holding company called KPT7 Holding Company, LLC;[10] and

b.     the Debtor transferred his 100% equity interest in The Blue Development Company, LLC[11] to the Raymond Schneider 2019 Gift Trust c/o Patricia Schneider, Trustee in exchange for a $1,485,000 promissory note.[12]

32.     It does not appear that the Debtor received reasonably equivalent value for these transfers which were made to insiders, related parties and family members while the Debtor was insolvent. Ultimately, despite the changes in the legal title to these assets, the Debtor retained complete and exclusive control over the assets.

33.     Huntington respectfully requests authority to prosecute actions relating to these issues for the benefit of the bankruptcy estate.

**The loans or equity contributions with respect to the companies**

34.     As previously explained, the Debtor's bankruptcy schedules include disclaimers stating the Debtor may have "improperly characterized" or "omitted" items in the schedules and statements.[13]

---

10     ECF No. 50, Statement of Financial Affairs, section 18

11     "The Blue" is the Debtor's new, large scale, development similar to the Debtor's "The Red" apartment complex. "The Blue" is apparently currently under development. See, https://circledevelopment.com/the-blue.

12     ECF No. 50, Statement of Financial Affairs, section 18

13     ECF No. 50, page 4

12

35. The disclaimers also state "the Debtor has had certain financial transactions with his business entities that may not yet have been characterized or may have been improperly characterized, including characterizations such as whether funds provided to a company were for capital contributions or loans, or whether funds paid to the Debtor were draws or loans.[14]

36. To the extent these transactions are loans, they have not been disclosed by the Debtor in his bankruptcy schedules and statements but remain assets of the estate which must be administered for the benefit of creditors. To the extent these transactions are capital contributions, it is likely that the Debtor did not receive reasonable equivalent value for them and that the transactions are avoidable.

37. Either way, Huntington respectfully requests authority to prosecute these claims for the benefit of the estate.

## V. ARGUMENT

### A. Huntington should be granted derivative standing to pursue the causes of action against the family members, the Family Trusts and the Debtor's companies.

38. The Sixth Circuit Court of Appeals has recognized that "the [bankruptcy] system designed by Congress ensures that the value of the estate is maximized and that creditors' rights are protected because the trustee will pursue valuable [causes of action]. However, when the trustee [as in this case] unjustifiably refuses to bring [claims], the system 'breaks down.'" *In re Trailer Source, Inc.*, 555 F.3d 231, 242-243 (6th Cir. 2009)(in the avoidance claim context).

39. "It is in precisely this situation that bankruptcy courts' equitable powers are most valuable, for the courts are able to craft flexible remedies that, while not expressly authorized by

---

14      ECF No. 50, page 3

13

the Code, effect the result the Code was designed to obtain." *Id*. When a debtor in possession is delinquent, the bankruptcy court should be able to exercise its equitable powers to authorize a creditor to pursue recovery of valuable claims. *Id*.

40. A creditor may be granted derivative standing to prosecute causes of action on behalf of the bankruptcy estate if the following conditions are met: (i) a colorable avoidance claim exists, (ii) a demand has been made upon the debtor to pursue the claims; (iii) the debtor fails to take action and the inaction by the debtor is an abuse of discretion in light of the debtor's duties in a chapter 11 case. *In re Gibson Group, Inc.*, 66 F.3d 1436, 1446 (6th Cir. 1995); see also, *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231, 245 (6th Cir. 2009).

41. Huntington should be granted derivative standing to pursue all claims, whether known or subsequently discovered, against the Debtor's spouse, family members, the Family Trusts and the Debtor's companies.

### The claims are colorable

42. The claims are colorable and valuable. Based on the Debtor's bankruptcy schedules in the First Case and the Second Case, the Debtor was insolvent at all relevant times having reported negative net worth exceeding $100 million on his schedules in both bankruptcy cases. Despite this insolvency, the Debtor either gifted, or transferred for negligible value, ownership interests in the companies worth tens of millions of dollars, at least, to his spouse, children and the Family Trusts. Accordingly, the transfers are avoidable as constructively fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(B) and (e) and the parallel provisions of state law.

43. These transfers also include many of the badges of actual fraudulent intent to hinder creditors pursuant to 11 U.S.C. §§ 548(a)(1)(A) and (e) along with the parallel provisions of state

law. *See, In re Bruce,* No. 15-13536 (Bankr. S.D. Ohio Sept. 16, 2019) (listing badges of fraud including (i) transfers that occur immediately prior to the bankruptcy filing; (ii) lack or inadequacy of consideration; (iii) transfers to family members or close associates; (iv) the debtor's retention of possession, benefit or use of the property in question; and (v) transfers during the pendency of a lawsuit or following the entry of a judgment against the debtor).

44.     In addition, the Debtor's schedules allude to, but do not properly disclose, various financial transactions with his companies which the Debtor claims may be either loans which are recoverable for the benefit of the estate or capital contributions for which the Debtor likely did not receive any reasonable equivalent value and may be avoided under section 548 or other applicable law.

45.     Accordingly, these claims are colorable and will benefit the estate and the creditors if prosecuted.

**The demand to pursue causes of action**

46.     On December 9, 2025, Huntington served a letter upon the Debtor's counsel which demanded that the Debtor pursue various causes of action against Debtor's related parties. A copy of the letter is attached as **Exhibit A**.[15]

**The Debtor fails to take action and the abuse of discretion**

47.     On December 12, 2025, the Debtor responded to the demand letter by, effectively, refusing to take any action at this time and stating further "analysis" needed to be completed. A copy of the response is attached as **Exhibit B**.  This response is an excuse to thwart Huntington's efforts to ensure the claims are asserted for the benefit of the estate. The Debtor engaged in these

---

[15]     To the extent this letter does not demand the prosecution of the newly discovered claims referenced in this Motion, this Motion hereby demands the Debtor pursue those claims.

transfers himself. He knows the details and knows the transfers are likely to represent nothing but a fraud on creditors. The issues with respect to the transfers to the Family Trusts were raised at the inception of the First Case nearly four years ago and these issues have been pending in the state court, and now the Adversary Proceeding, since the complaint was initially filed on September 25, 2025. There is no need for further "analysis."

48.     The Debtor's attempt to use "analysis" as a tool for delay is more subtle than the Debtor's outright refusal to pursue claims in the First Case in which the Debtor testified under oath[16]:

```
Q     Will you, as the Debtor, sue the gift trusts  or
your family members over the course of this  bankruptcy
case to recover any fraudulent conveyances?
A     Why should I?
Q     I'm not asking you why, I'm asking will  you.
A     I have no need to.
Q     So, the answer is no?
A     No.
Q     Any part of you doubt that answer?
A     I've got a clear mind, and the answer is  no.
```

49.     The reality of the situation is the Debtor will never sue his spouse, his children, the Family Trusts he created or his companies. If unchecked, the "analysis" period will extend the length of this case without any action by the Debtor.

---

16      Second Case, ECF No. 76, page 91

16

**The Debtor's inaction is a breach of his fiduciary duty**

50. The Debtor owes a fiduciary duty to the estate and creditors to pursue the recovery of valuable assets. The Debtor's refusal to pursue the claims is not in the best interests of the creditors, it is in the best interests of his family and companies. The Debtor has an obvious conflict and cannot be counted upon to work solely in the best interests of creditors.

51. The Debtor' breach of his fiduciary duties is evidenced by the numerous irregularities including the disclaimers in the bankruptcy schedules and statements. The Debtor has told the Court that his schedules and statements may be inaccurate and incomplete, and he blamed his complicated financial situation for the problem. Yet, the Debtor has not fixed the problem in the four months of the case and has not even sought to retain an accountant to sort things out. The Debtor has an obligation to file accurate schedules and statements at the inception of the case, not four months later, not when the Debtor completes his "analysis" and not when the Debtor finally decides to retain an accountant to do the job.

52. It is vitally important that the claims are commenced now. The fraudulently transferred assets are not under the control or supervision of the Court and the claims against the companies could become valueless if the Debtor continues his machinations which amount to little more than a shell game among his corporations. If the claims are not timely pursued, valuable assets may be transferred, lost, encumbered or dissipated which will directly harm creditors of the estate.

53. Based on the foregoing, Huntington respectfully requests that the Court grant the Motion and award other and further appropriate relief.

Dated: March 18, 2026

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Christopher P. Schueller*
Christopher P. Schueller (OH ID No. 0086170)
Timothy P. Palmer (OH ID No. 86166)
Kelly M. Neal (OH ID, No. 100889)
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: (412) 562-8800
christopher.schueller@bipc.com
timothy.palmer@bipc.com
kelly.neal@bipc.com

*Attorneys for The Huntington National Bank*

# Exhibit A

# Buchanan

**Kelly M. Neal**
412 562 8338
kelly.neal@bipc.com

Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA  15219-4413

T 412 562 8800
F 412 562 1041

www.bipc.com

December 9, 2025

**VIA FEDEX AND ELECTRONIC MAIL**

Jim Coutinho, Esquire
Allen Stovall Neuman & Ashton LLP
10 West Broad Street
Suite 2400
Columbus, OH 43215
Email: coutinho@aksnlaw.com

Eric W. Goering, Esquire
Goering & Goering, LLC
220 West Third Street
Third Floor
Cincinnati, OH 45202
Email: eric@goering-law.com

Re:  **Raymond Joseph Schneider (the "Debtor"); Case No. No. 1:25-bk-12607**

Mr. Coutinho and Mr. Goering:

We represent The Huntington National Bank ("Huntington"), a creditor in the above referenced bankruptcy proceeding. Huntington demands the Debtor seek avoidance of all transfers to family members of the Debtor and to any trusts associated with the Debtor or any of the Debtor's family members along with all other pre-petition transfers which may be avoidable pursuant to the United States Bankruptcy Code or applicable law. Please let me know by the close of business on December 12, 2025 whether the Debtor will be seeking avoidance of the transfers. Otherwise, Huntington will assume your client does not intend to seek avoidance of the transfers, consistent with his testimony during the prior bankruptcy case, and will seek appropriate relief from the Court.

Respectfully,

Kelly M. Neal

cc:  Christopher P. Schueller, Esquire (via electronic mail)

**Debbie Trillow**

| | |
|---|---|
| **From:** | no-reply@pb.com |
| **Sent:** | Wednesday, December 10, 2025 11:47 AM |
| **To:** | Debbie Trillow |
| **Subject:** | Shipment Delivered |

View details below

view as webpage



# Your package has been delivered



Your package from Buchanan, Ingersoll & Rooney has been delivered. Please see details below.

## Shipment delivery details

| | |
|---|---|
| Tracking number: | 396472575279 |
| Carrier: | FEDEX |
| Service: | FedEx Priority Overnight® |
| Delivery date: | December 10, 2025 |
| Delivery address: | 220 W 3rd St, Fl 3rd Cincinnati OH 45202-3407 US |
| Shipped on: | 2025-12-09 |

Learn more about sending solutions available from Pitney Bowes

f 🐦 in ▶

pitneybowes.com/us    Contact us

1

**Debbie Trillow**

| | |
|---|---|
| **From:** | no-reply@pb.com |
| **Sent:** | Wednesday, December 10, 2025 11:38 AM |
| **To:** | Debbie Trillow |
| **Subject:** | Shipment Delivered |

view details below

view as webpage



# Your package has been delivered



Your package from Buchanan, Ingersoll & Rooney has been delivered. Please see details below.

## Shipment delivery details

| | |
|---|---|
| Tracking number: | 396472477268 |
| Carrier: | FEDEX |
| Service: | FedEx Priority Overnight® |
| Delivery date: | December 10, 2025 |
| Delivery address: | 10 W Broad St, Ste 2400 Columbus OH 43215-3469 US |
| Shipped on: | 2025-12-09 |

Learn more about sending solutions available from Pitney Bowes

  

pitneybowes.com/us    Contact us

1

# Exhibit B

# ALLEN STOVALL NEUMAN & ASHTON LLP

### ATTORNEYS

**James A. Coutinho**
coutinho@asnalaw.com

December 12, 2025

Kelly M. Neal, Esq.
Via email: kelly.neal@bipc.com

Re:    *In re Raymond Joseph Schneider*, Case No. 25-12607

Dear Ms. Neal –

I write in response to your letter of December 9. Your client demanded that Mr. Schneider respond by today with a confirmation that the Debtor will "seek avoidance of all transfers to family members of the Debtor and to any trusts associated with the Debtor or any of the Debtor's family members along with all other pre-petition transfers which may be avoidable pursuant to the United States Bankruptcy Code or applicable law."

Please be advised that we are in the process of evaluating potential chapter 5 and other claims in this case and will continue that evaluation as a part of our process for formulating a chapter 11 plan. Our efforts are consistent with the requirement that Mr. Schneider's eventual plan pass the best interest of creditors test under 11 U.S.C. § 1129(a)(7), any other applicable confirmation requirements, the disclosure statement requirements, and Mr. Schneider's fiduciary duties to all creditors. Our intention is to complete this analysis in due course, work through the plan requirements with Mr. Schneider, submit a confirmable plan that will pass all applicable confirmation requirements, and timely and appropriately pursue avoidance actions. Of course, if passing the best interest test requires the liquidation of any chapter 5 actions, that will be disclosed and incorporated into the plan.

Less than two months into this proceeding, we have not yet finished the analysis of chapter 5 or other claims. We have reviewed your client's pre-petition fraudulent transfer complaint, identified transactions for review that were part of the Debtor's initial case disclosures, and are working through a full analysis of all estate claims. With the Meeting of Creditors only recently behind us, we are just turning to this analysis and plan formulation within the exclusivity period.

It was not clear from your letter, but to the extent that your client's demand is that the Debtor initiate such actions *immediately*, we are not prepared to do so and do not see any basis for Huntington to demand it. The Bankruptcy Code provides a two-year statute of limitations for a reason, and while we would not intend to delay any avoidance actions, we also do not intend to prematurely begin litigation that would burden the estate with costs and distractions. If you have any authority that requires a chapter 11 debtor to begin pursuit of chapter 5 claims within 60 days of the petition date, please provide it. I am unaware of such authority.

# ALLEN STOVALL NEUMAN & ASHTON LLP

### ATTORNEYS

Kelly M. Neal, Esq.
December 12, 2025
Page 2 of 2

To the extent that your letter is a preface to Huntington filing a motion in this case for authority to derivatively pursue avoidance actions in place of the Debtor, please be advised that we would oppose such an effort. In the first place, Huntington cannot meet the first element to obtain derivative standing—that the Debtor refuses to act in this case—because the Debtor has not refused the request. Further, for the reasons I have indicated, the Debtor is already attending to his fiduciary duties in relation to these actions and preparing an appropriate plan for this case. I am aware that in the first bankruptcy case Mr. Schneider under examination declined that he would pursue certain avoidance actions. Of course, that testimony came just a few weeks into the first case, was without the benefit of our counsel, and was a question posed to Mr. Schneider likely before he understood the full requirements of plan confirmation. In this case, we are ensuring that these evaluations are being completed in an appropriate and timely manner.

As indicated, we are still working to review all potential estate actions and will review them with our client. Nothing in this letter should be construed as an admission that any such actions exist, are valid claims, or are worthy of pursuit. We simply have not completed our review to determine the same, and certainly were not able to complete the review in the three business days you gave us to respond to your letter.

Finally, in our call on December 5, 2025, I asked if you would provide any authority on the tolling of statutes of limitation that might be applicable to any alleged fraudulent transfers here. We are independently conducting our research, including any equitable tolling that may be appropriate, but to the extent that your client has a factual or legal theory on the tolling of expired statutes of limitations, it would, of course, be made a part of our analysis.

Sincerely,

James A. Coutinho

Enclosure
cc:      Client, Co-counsel

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) Case No. 25-12607 |
| RAYMOND JOSEPH SCHNEIDER, | ) Judge Beth A. Buchanan |
|  | ) |
| Debtor. | ) |
|  | ) |

**NOTICE OF MOTION OF THE HUNTINGTON NATIONAL BANK FOR
<u>AUTHORIZATION TO PROSECUTE DERIVATIVE ACTIONS</u>**

The Huntington National Bank, as Administrative Agent ("**Huntington**") has filed papers with the court for an order approving Huntington's **Motion for Authorization to Prosecute Derivative Actions.**

**Your rights may be affected**. **You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  If you do not have an attorney, you may wish to consult one.**

If you do not want the court to grant the relief sought in the motion, then on or before **twenty-one (21) days from the date set forth in the certificate of service for the motion/objection**, you must file with the court a response explaining your position by mailing your response by first class mail to the United States Bankruptcy Court for the Southern District of Ohio, 221 East Fourth Street, Cincinnati, Ohio 45202 OR your attorney must file a response using the court's ECF System.

The court must **receive** your response on or before the above date.

You must also send a copy of your response either by 1) the court's ECF System or by 2) first class mail to counsel for Huntington ("Movant").

Respectfully submitted,

Date:  March 18, 2026       **BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Christopher P. Schueller*
Christopher P. Schueller (OH ID No. 0086170)
Timothy P. Palmer (OH ID No. 86166)
Kelly M. Neal (OH ID, No. 100889)
501 Grant Street, Suite 200
Pittsburgh, PA 15219
(412) 562-8800

christopher.schueller@bipc.com
timothy.palmer@bipc.com
kelly.neal@bipc.com

*Attorneys for The Huntington National Bank*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| RAYMOND JOSEPH SCHNEIDER, | ) Case No. 25-12607 |
|  | ) |
| Debtor. | ) Judge Beth A. Buchanan |
|  | ) |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I served or caused to be served the 18th day of March, 2026, a copy of

the Motion of The Huntington National Bank for Authorization to Prosecute Derivative Actions

through the court's ECF System on all ECF participants registered in this case.

Respectfully submitted,

Date:  March 18, 2026

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Chistopher P. Schueller*
Christopher P. Schueller (OH ID No. 86170)
Timothy P. Palmer (OH ID No. 86166)
Kelly M. Neal (OH ID No. 100889)
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: (412) 562-8800
christopher.schueller@bipc.com
timothy.palmer@bipc.com
kelly.neal@bipc.com

*Attorneys for The Huntington National Bank*