# “EXHIBIT B”

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No: 25-12607 |
| Raymond Joseph Schneider, | : | Chapter 11 |
| | : | |
| Debtor and Debtor in Possession. | : | Judge Beth A. Buchanan |

**OBJECTION TO MOTION OF THE HUNTINGTON NATIONAL BANK FOR AUTHORIZATION TO PROSECUTE DERIVATIVE ACTIONS (DOC. 132)**

## I. INTRODUCTION

Upon receipt of Huntington's Motion[1], the Debtor and the undersigned could only feel what can only be described as "whiplash." Just a few hours prior to the Motion being filed, the Court, Debtor, and Huntington met for a status conference, set a schedule for the Debtor's document production and a discovery conference, discussed exclusivity, and set a hearing date for Huntington's Examiner Motion.[2] Huntington had complained that it did not yet have sufficient information to examine potential chapter 5 claims,[3] and sought the appointment of an examiner with "broad investigatory authority." Examiner Motion, p. 22. Huntington was, on one hand, putting the Debtor through a massive discovery exercise and putting this case on a path for a long and costly examiner process, while, on the other hand, preparing the Motion, whereby it seeks to shortchange that process entirely. Of course, it made no mention of this at the status conference.

---

[1] The "Motion" is the *Motion of The Huntington National Bank for Authorization to Prosecute Derivative Actions* (Doc. 132).

[2] The "Examiner Motion" is the *Motion of The Huntington National Bank for the Appointment of an Examiner Pursuant to 11 U.S.C. § 1104* (Doc. 115). The Debtor acknowledged that the appointment of an examiner was mandatory, and objected on a limited basis to the extent of the examination. *See Limited Objection to Motion of The Huntington National Bank for the Appointment of an Examiner Pursuant to 11 U.S.C. § 1104* (the "Limited Objection to Examiner") (Doc. 134).

[3] See, e.g., the *Discovery Status Report of Huntington National Bank for Review at the Status Conference on March 18, 2026* (Doc. 127) (the "Status Report"), at ¶ 2 (complaining that the Debtor has been slow to produce documents that are "necessary for Huntington to examine the Debtor's fraudulent conveyances to family members and also for Huntington to evaluate valuation and feasibility issues in connection with confirmation of a plan").

The process that Huntington now champions—taking away the Debtor's authority to pursue chapter 5 actions—is wildly divergent from the process that has been set forth in this case. It is, at best, premature, given that the examiner process is just starting and the Debtor still maintains exclusivity to formulate and propose a plan that accounts for chapter 5 claims. But it is also meritless, as Huntington cannot meet the basic elements that it has the burden to prove in order to obtain derivative standing. It has not made a valid demand on the Debtor, the Debtor has not refused to pursue the avoidance actions (to the extent they exist), and Huntington cannot show that any alleged inaction by the Debtor is unjustified. *See In re Murray Metallurgical Coal Holdings, LLC*, 614 B.R. 819, 826 (Bankr. S.D. Ohio 2020). Thus, the Motion must be denied.

## II. BACKGROUND INFORMATION

1. In both of the bankruptcy cases filed by the Debtor, Huntington has demanded that the Debtor pursue avoidance claims shortly after filing the case. The first "demand" was in the course of cross examination of the Debtor on March 17, 2023, within two weeks of the First Case being filed. The Debtor was put on the spot, did not have an opportunity to consult with counsel, and, because he is not a bankruptcy lawyer, may not have yet appreciated the requirements of the best interest of creditors test or other fiduciary duties that he would face in presenting a plan. *See* Transcript, First Case Doc. 74, p. 91, ln. 8 (When asked if he would sue the gift trusts, the Debtor asked, "Why should I?", demonstrating his imperfect understanding of the subject matter.)

2. The Debtor ultimately responded that "I have no need to [pursue the actions]." *Id.* at ln. 10. He did not outright refuse to pursue avoidance actions; rather he displayed his understanding that he did not need to supplement the estate with avoidance actions. This was consistent with his other testimony wherein he stated he believed he could pay Huntington in full

with his existing assets. *See Id.* at p. 55, ln. 2-10 ("I still can pay the Huntington debt with where I am today. … I can take care of this as long as the Court allows me to have the time to do it.").

3. Huntington latched onto that testimony in the First Case and continues to parrot it today, even though it never came close to meeting the required showing of refusal and unjustified inaction necessary to obtain derivative standing. Regardless, what the Debtor testified to 14 days into his First Case is irrelevant to this proceeding.

4. In this case, less than 2 months after the case was filed, Huntington made a purported demand on the Debtor for the pursuit of avoidance claims. This demand, attached to the Motion as Exhibit A (the "Demand"), was incredibly generic, seeking to have the Debtor confirm if he would pursue transfers to family members and trusts, and "all other pre-petition transfers which may be avoidable pursuant to the United States Bankruptcy Code or applicable law." *See* Motion, Exhibit A. Unlike the Motion, which sets forth a number of potential transactions for review, the Demand provided no such specifics and simply made a blanket demand.

5. Huntington generously gave the Debtor three days to respond, and the Debtor did respond. Attached as Exhibit B to Huntington's Motion is the detailed and thoughtful response of the Debtor which:

a. established that the Debtor and his advisors were already actively reviewing all potential transfers with an eye for meeting all applicable confirmation requirements, such as the best interest of creditors test under 11 U.S.C. § 1129(a)(7);

b. indicated that, being just two months into the case, the Debtor had been focused on preparing schedules, appearing at the Meeting of Creditors, and completing other reporting such as the Bankruptcy Rule 2015.3 reports, but would be turning his focus to plan preparation;

c. asked Huntington to provide its authority for demanding that the Debtor move immediately on the actions, in light of the plan exclusivity period and a two-year statute of limitations;

d. clearly indicated that the Debtor was not refusing to pursue the actions; and

e. asked Huntington to provide its legal theory as to how to escape statute of limitations defenses.

6. Huntington never responded to the Debtor's letter from December 12, 2025. It never provided any authority to the Debtor or his counsel regarding the necessity for the Debtor to move immediately on filing chapter 5 avoidance actions prior to plan formulation and well before the expiration of the two-year statute of limitations. It never commented on the Debtor's intention to address avoidance actions through his plan. It never provided any legal theory for how it would get around statutes of limitations defenses.

7. Importantly, Huntington has never made a follow-up demand. In fact, while the Debtor has been conducting his own independent investigation through his professional advisors, Huntington has made it seem that it too was conducting an investigation and that it anticipated the need for an examiner to assist in that process. During the intervening months, Huntington has not once asked the Debtor to provide an update as to the status of his and his professional's review of avoidance actions.

8. Instead, Huntington makes the blanket and baseless assumption that because the Debtor engaged in certain transfers himself, he already knows the details and knows that the transfers are likely avoidable; therefore, there is no need for any further "analysis." *See* Motion, ¶ 5. This supposition assumes that the Debtor himself is the one capable of conducting the analysis of very complex legal issues surrounding myriad factual circumstances that span 10 years. Of

Case 1:25-bk-12607 Doc 157-2 Filed 04/09/26 Entered 04/09/26 13:59:20 Desc
Exhibit B Page 6 of 34

course, this analysis is being completed by the Debtor with the assistance of his attorneys, not by the Debtor himself, who is not a legal professional.

9. In fact, the Debtor and his professionals have made substantial progress analyzing the estate's potential chapter 5 claims and related defenses with an eye towards submitting a plan. The Debtor has removed the pending fraudulent transfer action to this Court, engaged in multiple discussions with counsel for Mrs. Schneider, the Debtor's children, and the various trusts to obtain documents and explore potential settlement, held conferences with the Debtor's former counsel from Vorys, Sater, Seymour and Pease LLP to work to obtain the complete estate-planning file and additional information regarding the nature and intent of those transactions, and reviewed additional discovery materials to identify potential claims and incorporate any issues into the disclosure statement and plan requirements.

10. The Debtor is not without proof of these efforts. Debtor's counsel established a separate billing matter dedicated to the review of estate claims and chapter 5 avoidance actions with work beginning on the Petition Date. Attached as Exhibits 1 through 6 are the monthly billing statements for that matter.[4] These bills show that the Debtor has engaged the services of six different attorneys for over 146.5 hours of work at a value of $53,316.06.[5]

11. This research and analysis has covered critical legal issues including review of fraudulent transfer statutes under §§ 544 and 548 of the Bankruptcy Code (with particular focus on § 548(e) and the ten-year lookback), Ohio fraudulent transfer law, the so-called collapsibility doctrine, self-settled and grantor trusts, statute-of-limitations defenses and equitable tolling, removal and procedural issues in this Court, alter-ego/veil-piercing/sham-trust doctrines, attorney-

---

[4] The statement for March 2026 is a draft that has not been finalized for presentation to the Debtor for payment. It may be revised before submission in accordance with counsel's regular billing review and standards.

[5] These bills also do not reflect an additional 20.8 hours that were worked but not charged as a courtesy to the Debtor.

client privilege and evidentiary questions in fraudulent-transfer litigation, and the Debtor's fiduciary duties under the best-interest-of-creditors test.

12. These efforts form only one component of the professionals' broader, ongoing, and systematic review of the Debtor's financial affairs. All of this work is directed toward preparing a complete and accurate disclosure statement and a confirmable plan of reorganization. The Debtor intends to disclose the results of the chapter 5 analysis as part of the plan confirmation process. To the extent pursuing valid avoidance actions is necessary to satisfy confirmation requirements, those actions will be pursued. Cognizant of the fact that the Debtor is related to some of the alleged transferees, the Debtor is also exploring options within the plan context to create a litigation trust that would alleviate potential conflicts. Finally, the Debtor remains in ongoing discussions with counsel for certain transferees and has retained a valuation expert to assist with appraisals and potential resolutions without unnecessary litigation.

## III. LAW & ARGUMENT

The test for a creditor to obtain derivative standing in the Sixth Circuit has four elements:

1. A demand must be made upon the statutorily-authorized party to take action;
2. The demand must be declined;
3. A colorable claim that would benefit the estate, if successful, must exist, "based on a cost-benefit analysis performed by the court"; and
4. The inaction must be an abuse of discretion, or be "unjustified", in light of the debtor-in-possession's duties.

*Murray Metallurgical*, 614 B.R. at 826, citing *Canadian Pacific Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1446 (6th Cir. 1995); *see also Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc., et al. (In re Trailer Source, Inc.)*, 555 F.3d 231, 245 (6th Cir. 2009). While tests vary between courts and circuits, courts consistently look for (i)

colorable claims, and (ii) whether debtor "unjustifiably failed to bring suit" based on a cost-benefit analysis. *See, e.g., Official Comm. of Unsecured Creditors v. Invitae Corp., et al. (In re Invitae Corp., et al.)*, 2025 WL 2538952, at *9 (D. N.J. Aug. 11, 2025); *see also In re Pack Liquidating, LLC, et al.*, 658 B.R. 305, 333 (Bankr. D. Del. 2024). But, the Sixth Circuit has stated that "[g]iven the discretionary nature of the exercise of the avoidance power, perhaps the most important prerequisite to derivative standing is that the debtor-in-possession has abused its discretion in failing to avoid a preferential or fraudulent transfer." *Gibson Group*, 66 F.3d at 1442.

Though bankruptcy courts can confer derivative standing on creditors for the sake of the estate, the decision to grant it is "uncommon" and "the exception rather than the rule." *See In re Invitae Corp.*, 2025 WL 2538952, at *8 (D. N.J. Aug. 11, 2025), citing *In re Decurtis Holdings LLC*, 2023 WL 5274925, at *4 (Bankr. D. Del. Aug. 14, 2023). Further, "[a] party seeking derivative standing to bring a claim on behalf of a bankruptcy estate has the burden of proof on each of the required elements for standing." *Murray Metallurgical*, 614 B.R. at 834; *In re Caesars Ent. Operating Co., Inc.*, 561 B.R. 457, 468 (Bankr. N.D. Ill. 2016) ("...creditor must demonstrate that in refusing to pursue the claim, the debtor in possession is shirking its responsibilities to the estate.").

Here, Huntington has not demonstrated that it can meet a single element of the test. While Huntington made an initial generic demand, it never followed up on that demand. The Debtor did not decline that demand, either, and he and his professionals have taken affirmative steps toward identifying and pursuing claims. As to the claims themselves, whether they are colorable and would benefit the estate to pursue, Huntington has much conjecture in its motion, but very little of substance. Finally, even if the Debtor does eventually refuse to pursue colorable claims, Huntington has not demonstrated that such refusal would be "unjustified." The Debtor believes

that multiple claims referenced by Huntington are either outright barred by statutes of limitations defenses or are fully defensible based on the ability of the Debtor to meet the basic avoidance elements (i.e. the existence of reasonably equivalent value, the lack of fraudulent intent, or the non-existence of a self-settled trust where the Debtor is a beneficiary). Pursuing barred claims could only delay this case and wastefully drain assets from the Debtor's estate. And finally, again as to the cost-benefit analysis, if the Debtor is able to propose a plan that meets the best interest of creditors test without filing costly litigation, then there is no need to pursue chapter 5 claims in the first place.

**A. Huntington has not made a qualified demand.**

For meeting the first element—making a demand on the Debtor—Huntington rests on its laurels with a one-paragraph letter sent less than two months into the case which the Debtor more than adequately responded to. As set forth above, Huntington never responded to the Debtor's letter, never provided information that was requested by the Debtor's counsel, never sought additional inquiries into the status of the Debtor's analysis, and never made any follow-up demand. Instead, Huntington has taken the approach that it has "checked the box" by making a one-paragraph generic demand upon the Debtor at the initiation of the case, without doing any follow-up inquiry or seeking to make an additional demand. This does not and should not count.

Research has been conducted to attempt to find a case that meets these facts, whereby a creditor makes a generic demand upon the Debtor that has little to no substance and to which there is no follow up. No court appears to have addressed this situation. Rather, in each of the cases that have been reviewed in relation to this memorandum, there has been a clear demand made for specific action to take and an easily identified rejection of that demand. *See Murray Metallurgical*, 614 B.R. at 826 ("There is no question here that the Committee has made a demand on the Debtors

to assert a recharacterization claim against the Proposed Defendants and that the Debtors declined to do so."); *Gibson Group*, 66 F.3d 1436 (wherein the creditor sought to pursue a very specific set of claims and the debtor refused). According to the Sixth Circuit, the creditor has to show that "a demand has been made upon the statutorily authorized party *to take action*," *Gibson Group*, 66 F. 3d at 1446 (emphasis added), and that is a specific call to action that is missing here.

This Court should determine whether it is appropriate for a creditor to "check the box" by making a generic request for a debtor to pursue all avoidance actions without providing sufficient specifics of *what* action it seeks the Debtor to take. Here, while there are specifics in relation to the alleged trust transfers that are subject of the Adversary Proceedings, Huntington presents multiple alleged claims in its Motion that it never made any mention of in its demand. For some, the Debtor can't even determine the cause of action that Huntington wants the Debtor to pursue. For example, Huntington alleges that a company in which the Debtor owns a 1% interest employed the Debtor's spouse during the First Case. Until Huntington filed the Examiner Motion and this Motion, it had never brought that claim—whatever it is—to the Debtor's attention. Given that it does not appear this would even be a chapter 5 claim, how can Huntington be determined to have made a demand on the Debtor to pursue the claim without even noting its existence? The generic demand, at least as to anything other than what is included in the Adversary Proceeding, is simply not sufficient.

### B. The Debtor's analysis of estate claims has been reasonable and appropriate for a debtor in possession.

One of Huntington's favorite mantras is that "[t]here is no need for further 'analysis' " where the word "analysis" appears throughout the Motion in mocking quotes, the implication being that the Debtor's analysis of estate claims is some sort of legal machination. *See* Motion ¶¶ 5, 47, 48, 49, 51. "There is no need for further analysis," Huntington claims, because these issues

"were raised" in the Debtor's First Case and have "been pending" in the state court and Adversary Proceeding since September 25, 2025. *Id*. Critically, this understanding of the claims neglects that a lot of time has passed since the First Case and since many of the transfers were made. The Debtor's professionals, for example, have been analyzing how the statute of limitations may prevent any party from effectively pursuing these estate claims, likely the weightiest consideration in the cost-benefit analysis. Efforts have further been made to analyze other issues with potential claims, including whether the Debtor can even meet the underlying elements of the claim by showing fraudulent intent, lack of reasonably equivalent value, and insolvency.

Moreover, as stated in the background section, Huntington glosses over the concept that pursuit of chapter 5 legal claims is a *legal* analysis that is not being conducted by the Debtor himself, but rather is being conducted by his professionals who will advise the Debtor as to his rights and responsibilities. The attached billing statements, further described above, show not only that there has been a substantial, consistent and costly outlay of legal time to these efforts, but also that the Debtor's counsel has been engaged in a robust review that looks at numerous issues. Two examples stand out: First, Huntington's counsel mentioned in an early phone call with Debtor's counsel that statutes of limitations may have been tolled by the First Case. *See* Debtor's letter, Exhibit B to Motion, final paragraph. In response, the Debtor's attorneys reviewed not only the Bankruptcy Code's tolling provisions under 11 U.S.C. § 108(c) (which provides tolling for 30 days after the stay is lifted), but also whether Ohio law provided any equitable tolling (in this situation, it does not). Second, Huntington's counsel mentioned in passing at a status conference that alleged fraudulent transfers involving the trusts might be "collapsed" to get around statute of limitations periods. The Debtor's attorneys have carefully reviewed that theory and found it to lack merit or authority. In addition to this, the billing records show that the Debtor's counsel has researched at

Case 1:25-bk-11607 Doc 157 Filed 10/28/25 Entered 10/28/25 15:17:58 Desc Main Document Page 11 of 34

length the claims in the Adversary Proceeding, such as the efforts of Huntington to simply set aside the trusts as "shams." To date, the Debtor has not determined the actual cause of action Huntington attempted to bring, but that research continues.

All of this, of course, was done with an eye towards proposing a confirmable plan of reorganization with a disclosure statement that contains adequate information. In that process, the Debtor will be advised as to the estate claims and his fiduciary duties to pursue those claims if the proposed plan cannot meet the best interest of creditors test. And counsel will advise the Debtor as to the need to create a structure in the plan that avoids conflicts of interest, such as a litigation trust to pursue the actions. This "analysis period" will not extend indefinitely. The Court has recently extended the Debtor's exclusive period to file a plan through May 15, 2026. (*See* Doc. 141). The delay that Huntington fears is nonexistent; the Debtor is preparing his plan. The analysis has not unnecessarily delayed this case—Huntington itself did not object to the initial exclusivity extension—and there is no implication that these proceedings will be delayed going forward.

**C. The Debtor has not failed or refused to pursue estate claims.**

Huntington does not allege that the Debtor refused to pursue causes of action because it cannot. *See* Exhibit B. Instead, Huntington alleges that the Debtor "effectively" refused by stating that he needed to analyze the claims. Very clearly, the Debtor has not refused to pursue these claims in this case and even informed Huntington that his "intention is to complete this analysis in due course, work through the plan requirements…submit a confirmable plan that will pass all applicable confirmation requirements, and timely and appropriately pursue avoidance actions." *See* Motion, Exhibit B. As opposed to a refusal, the Debtor outlined exactly how Huntington could expect him to pursue the claims post-confirmation.

It can't be said that the Debtor "unjustifiably refused" Huntington's demand, because he didn't refuse. *See, e.g., Trailer Source*, 555 F.3d at 244-245 (party moving for derivative standing "must show" that debtor-in-possession declined); *Invitae Corp.*, 2025 WL 2538952, at *10 (the test for derivative standing requires the movant prove "all elements"); *In re Caesars Entertainment Operating Co., Inc.*, 561 B.R. 457, 468 (Bankr. N.D. Ill. 2016) (creditor seeking derivative standing "bears the initial burden to allege facts" showing its demand was refused); *see also In re Makuch*, 2026 WL 525423, at *4 (Bankr. N.D. Ill. Feb. 24, 2026) (failure to show trustee did not refuse demand was "fatal" to plaintiff's standing argument).

Further, the Debtor has taken steps toward pursuing the estate claims, foremost of which was removing the Adversary Proceeding so that the fraudulent transfer claims could be reviewed and determined by this Court. This is far from a refusal. *See In re Full Spectrum Management, LLC*, 621 B.R. 421, 428 (Bankr. W.D. Mich. 2020) (while finding that trustee later stated she would not pursue the claims due to a lack of funds, the court found that her filing of the adversary would "cut against" the second *Gibson* factor). Since then, the Debtor has also taken action to initiate discussions with counsel for the potential transferees about potential resolutions, which discussions also involve ensuring the Debtor is aware of the accurate value of the various assets involved, hence the employment of an appraiser. In so doing, the Debtor intends to see if causes of action can be settled without costly litigation. *See In re MQVP, Inc.*, 477 F. App'x 310, 312 (6th Cir. 2012) ("The law favors compromise and not litigation for its own sake." (cleaned up)). Further, the Debtor has worked to obtain additional information in the file of his estate planning attorneys at Vorys and to have his professionals fully understand those transactions so they can complete an analysis of the estate's claims. If the Debtor's professionals advise him that those claims are valid, the Debtor intends to pursue settlement before filing suit, but will plan for the

Case 1:25-bk-12607 Doc 154 Filed 03/28/25 Entered 03/28/25 15:17:58 Desc Main Document Page 13 of 34

need to bring an action in his plan if necessary. This process matches the Debtor's fiduciary duties as stated in the *Caesars Entertainment* case:

> Whether the refusal [to pursue a claim] is unjustified is gauged in light of a debtor in possession's statutory obligations and fiduciary duties. One of those duties is to wisely manage the estate's legal claims. But wise management does not mean the debtor in possession must always pursue a claim. Sometimes the better course is to settle. As the court of appeals has observed in these very bankruptcy cases, successful resolution of disputes ... is one of the Code's central objectives.

*Caesars*, 561 B.R. at 468 (internal quotes and citations omitted).

To support the concept of the Debtor's refusal, Huntington harps on Debtor's testimony in the First Case, where he stated that he did not need to pursue the avoidance actions in that bankruptcy case. *See* Motion, ¶ 48.[6] Huntington treats this like a smoking gun. *Id*. at ¶¶ 48-49. This emphasis on whatever the Debtor intended in the First Case is irrelevant here and now, where the Debtor has not refused Huntington's demand, has provided Huntington with his plan for addressing claims, and has taken steps toward pursuing the claims by removing the Adversary Proceeding. Moreover, as stated above, even the Debtor's refusal in the First Case is not as cut and dry as Huntington claims; the Debtor clearly believed he had adequate resources to pay Huntington in full without avoidance actions, and he still believes that today.

**D. If the Debtor chooses not to pursue the claims, his refusal will be justified.**

A critical element of the *Gibson* test is that Huntington must prove that the Debtor's refusal to pursue claims was unjustified, assuming there even was a refusal. It is not appropriate for the creditor to simply point to the refusal and claim it is unjustified without more. *See Caesars*, 561 B.R. at 469 (The creditor claimed that "[t]he debtors' refusal to pursue the claims…is unjustified because the debtors have refused to pursue them. A tautology is all the [creditor] offers.").

[6] The Motion directs the Court to "Second Case, ECF No. 76, page 91" for the transcript with this testimony from the Debtor. It is actually from the First Case, Doc. 74, page 91.

A debtor in possession has certain statutory obligations and fiduciary duties, one of which is to "wisely manage the estate's legal claims." *Caesars*, 561 B.R. at 468, citing *In re Smart World Technologies, LLC*, 423 F.3d 166, 175 (2d Cir. 2005). And, of course, "wise management does not mean the debtor in possession must always pursue a claim." *Id*. Even where claims are colorable, courts typically consider factors like the probability of success and the potential costs of the litigation, since the "likelihood of success should justify the anticipated delay and expenses to the estate." *Pack Liquidating*, 658 B.R. at 336; *see Invitae Corp.*, 2025 WL 2538952, at *9.

For example, if the Debtor ends up deciding not to pursue the claims in the Adversary Proceeding, that decision will likely be due to the expiration of the statute of limitations, which may be a complete bar to recovery on many of the claims Huntington raises.[7] The Debtor will further need to determine that there is not a viable claim under 11 U.S.C. § 548(e) and its 10-year lookback.[8] That is the "analysis" that Huntington off-handedly disregards, the analysis the Debtor has diligently conducted in preparation of his plan.

Huntington would not hesitate to file suit anyway (and, in fact, did). It wants to pursue these claims to all ends regardless of the validity or benefit, which is a continuation of its massive pressure campaign to force the Debtor (and his family) to submit. But as Judge Hoffman wisely stated: "[T]he nuisance value of a suit is not a basis for granting derivative standing." *Murray Metallurgical*, 614 B.R. at 837.

---

[7] The Adversary Proceeding was originally filed by Huntington based on state-law claims under the Ohio Uniform Fraudulent Transfer Act. *See* R.C. §§ 1336, *et seq.* Generally, the statute of limitations to pursue a claim under that act is, at most, either (i) 4 years, or (ii) 1 year after the transfer is discovered. *See* R.C. § 1336.09. Huntington's lawsuit was, inexplicably, not filed in that time period. The Debtor's team is reviewing all claims to ensure that there is no way around this issue.

[8] The Debtor testified at length in the first case that the estate planning was not done with the intent to defraud Huntington, which is one of the essential 548(e) elements. But even more basic than that, section 548(e) only applies to transfers to self-settled trusts in which the Debtor remains a beneficiary. Neither of the trusts established with the assistance of the Vorys firm meet that definition. One was established by the Debtor's spouse (i.e. not self-settled) and the other, while self-settled by the Debtor, does not list the Debtor as a beneficiary.

**E. It is not clear that the claims are colorable from a cost-benefit analysis.**

Huntington argues that the claims are "colorable and valuable" because the transfers "include many badges of actual fraudulent intent to hinder creditors". Motion, ¶¶ 42-43, citing *In re Bruce*, 2019 WL 11639533 (Bankr. S.D. Ohio Sept. 16, 2019). After citing a case and listing the badges of fraud, Huntington then fails to conduct any examination of those badges or discuss ***how*** they are implicated in the Debtor's case. *See id*. at ¶¶ 42-45. Unfortunately for Huntington, their assertion is not self-evident, and bald legal conclusions cannot meet the creditor's burden on this element. *See In re On-Site Fuel Serv., Inc*., 2020 WL 3703004, at *13 (Bankr. S.D. Miss. May 8, 2020) ("Because no proposed third-party complaint is attached to the Derivate Standing Motion, the Court's analysis in determining whether the Collateral Agent states any 'colorable' claim for relief is limited. … The Derivative Standing Motion only loosely outlines the proposed contract claims and barely mentions the tort and preference claims.").

Moreover, this element of the *Gibson* test requires a colorable claim "that would benefit the estate is successful…based on a cost-benefit analysis." *See Murray Metallurgical*, 614 B.R. at 826, citing *Gibson*, 66 F.3d at 1446. The cost-benefit analysis requires a court to assume that the colorable claim will be successful, and then to determine whether pursuit would benefit the bankruptcy estate. *See In re Blume*, 625 B.R. 662, 670 (Bankr. E.D. Mich. 2021); *In re Dzierzawski*, 518 B.R. 415, 420 (Bankr. E.D. Mich. 2014). For example, this requirement is easily met in chapter 7 and chapter 13 cases where a trustee does not have the necessary funds to pursue a valuable claim, but a creditor is willing to, *see id*., and this is particularly true where the creditor makes clear that they will cover the litigation costs and their own attorney fees. *See Full Spectrum*, 621 B.R. at 428.

This case differs from those examples. Primarily, though the Debtor has yet to propose a reorganization plan to the Court, it is possible (if not likely) that his plan will be able to meet the best interest test without the need to pursue costly litigation. If that is the case, then the cost-benefit analysis weighs against Huntington's pursuit of the claims; if there is no reason to pursue the claims, the claims become a burden and additional expense, which would actually dilute the estate at the expense of creditors.

Along similar lines, another problem is that Huntington is seeking authority to pursue these claims without any comment on bearing its own costs and attorney fees. Allowing Huntington to pursue the estate claims opens the door to Huntington later seeking an administrative expense claim in this case, to the prejudice of other creditors as Huntington runs up its attorney fees on time-barred causes of action, jousting with windmills. In other cases, when creditors are willing to pay their own way, courts happily recognize that granting derivative standing can only provide benefits to the estate, at no risk of cost. *See Full Spectrum*, 621 B.R. at 428; *Dzierzawski*, 518 B.R. at 423-424. That is not the case here. Unless Huntington is willing to bear the costs of the derivative actions (and its costly discovery review), it should not be given authority to deplete the estate by pursuing them.

**F. Huntington is conflicted.**

In the *On-Site Fuel* case, the court held that "a conflict of interest between a trustee and the creditor seeking derivative standing may justify its denial," in the same way that a corporate debtor's conflict with its management may justify derivative standing. *On-Site*, 2020 WL 3703004, at *13 (Bankr. S.D. Miss. May 8, 2020). There is a recognition that derivative standing exists to make sure the debtor isn't playing favorites, but also an understanding "on the flip side" that a creditor should not be allowed to pursue derivative claims if it will have a conflict of interest. *Id.*

In that case, the creditor sought derivative standing even though they were simultaneously defending against equitable subordination claims brought by the trustee. The Court noted that ignoring the conflict was like "ignoring a herd of elephants in the room." *Id.*

Two conflicts cannot be ignored here. First, the Debtor is maintaining a $100 million lawsuit against Huntington in state court. Despite Huntington's efforts to have that case dismissed—and despite its concealment of evidence in that case for years—the matter has been set for completion of discovery over the summer and arguments on dispositive motions in the fall. This is the Debtor's largest potential asset, and Huntington has every incentive to liquidate the Debtor so that he cannot fund that litigation. It is waging a war of attrition against the Debtor, and suing the Debtor's family and companies is simply another front in that effort. Huntington cannot credibly position itself as the neutral fiduciary the Court can trust to act solely for the benefit of the estate.

Second, the Adversary Proceeding now pending before this Court was originally filed by Huntington in state court. The timing of that filing raises a potential missed statute-of-limitations issue that could create a malpractice claim by Huntington against its own counsel. That potential claim creates an additional conflict that the Court should consider before granting Huntington fiduciary authority over estate claims.

## IV. RESPONSE TO HUNTINGTON'S MISREPRESENTATIONS

In the Motion, Huntington renews its attacks on the Debtor's Schedules and Statement of Financial Affairs, including the Global Notes and the Debtor's income calculations. These arguments were addressed at length in the Debtor's Limited Objection to Examiner (Doc. 134, pp. 9-13, 15), which the Debtor incorporates herein. The disclosures were reasonable, honest, and consistent with the Debtor's fiduciary obligations to the estate. Huntington also repeats allegations

already addressed at length in the Debtor's Limited Objection to Examiner, which the Debtor need not repeat here.

Huntington's sudden insistence on the "prompt" prosecution of avoidance actions (Motion ¶¶ 7, 52) is particularly disingenuous. After serving its demand letter on December 9, 2025, and receiving the Debtor's detailed response three days later, Huntington devoted its efforts to extensive discovery and to seeking appointment of an examiner with broad investigatory authority (Doc. 115). It cannot credibly demand immediate derivative standing while simultaneously pursuing the burdensome and lengthy examiner process it requested. The Debtor's ongoing analysis and plan preparation are proceeding on the Court-approved timeline; Huntington's about-face does not justify the extraordinary relief it now seeks.

## V. CONCLUSION

Huntington has failed to carry its burden under the *Gibson* elements, and there is no equitable, logistical, or policy rationale for granting derivative standing to Huntington at the current stage of the case. The request is at best premature, it is certainly in conflict with the examiner path that Huntington pushed for, and fails to account for the legitimate undertakings of the Debtor. The Motion fails on its legal merits. The Court should deny it.

Respectfully submitted,

/s/ James A. Coutinho

Thomas R. Allen (0017513)
Richard K. Stovall (0029978)
James A. Coutinho (0082430)
Andrew D. Rebholz (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
T: (614) 221-8500; F: (614) 221-5988
allen@asnalaw.com; stovall@asnalaw.com
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel for Debtor / Debtor in Possession*

EXHIBIT 1
Page 1 of 2

**ALLEN STOVALL NEUMAN & ASHTON LLP**

ATTORNEYS

November 26, 2025
File# 3434-013
Invoice# 50170

**Raymond Schneider**

Re: Estate Claims and Chapter 5 Actions
**Invoice for Legal Services**

**Balance Now Due: $2,972.00**

---

**ATTORNEY FEE DETAIL**

| DATE | DESCRIPTION | LAWYER | Hours | AMOUNT |
|---|---|---|---|---|
| 10/17/2025 | Reviewed correspondence between Mr. Coutinho, Ms. McCabe, and Ms. Vertin discussing research into proving intent for transferring assets to the trust and attempting to avoid waiving attorney-client privilege if providing bills as evidence. | AR23 | 0.20 | 60.00 |
| 10/17/2025 | Continued reviewing HNB's complaint in Hamilton County, then conducted research related to the statute of limitations for fraudulent transfer claims. | AR23 | 0.70 | 210.00 |
| 10/17/2025 | Conducting legal research regarding various state statutes on trust transfer avoidance. | MM25 | 0.70 | 210.00 |
| 10/17/2025 | Began conducting research regarding section 548 of the Bankruptcy Code and the definition of "beneficiary of such trust" thereunder. | AR23 | 0.50 | 150.00 |
| 10/17/2025 | Continue conducting research related to the statute of limitations for fraudulent transfer claims (0.5), and confer with Mr. Coutinho, Ms. McCabe, and Ms. Vertin related to same (0.1). | AR23 | 0.60 | 180.00 |
| 10/20/2025 | Complete legal research regarding privilege waiver issues (0.8). Prepare email to Mr. Coutinho with summary (0.4) | MM25 | 1.20 | 360.00 |
| 10/20/2025 | Review research memorandum from Ms. McCabe regarding privilege waiver issues in relation to estate planning by Vorys. | JIM3 | 0.10 | 46.00 |
| 10/20/2025 | Met with Ms. McCabe to discuss fraudulent transfer statutes and related research. | AR23 | 0.10 | 30.00 |
| 10/20/2025 | Continued research related to section 548(e) of the Bankruptcy Code and the definition of "beneficiary" (1.6), then conferred with Mr. Coutinho relatedly (.1). | AR23 | 1.70 | 510.00 |
| 10/21/2025 | Confer with Mr. Coutinho to discuss continued research into estate planning defenses to the 548(e) 10-year lookback period (0.2); then conducted research (2.1). | AR23 | 2.30 | 690.00 |
| 10/21/2025 | Confer with Ms. McCabe to discuss research related to fraudulent transfer claims and precedent in the state of Ohio. | AR23 | 0.10 | 30.00 |

ALLEN STOVALL NEUMAN & ASHTON LLP

ATTORNEYS

EXHIBIT 1
Page 2 of 2

| | | | | |
|---|---|---|---|---|
| 10/24/2025 | Continue conducting research related to estate planning as a defense to fraudulent transfer allegations. | AR23 | 0.50 | 150.00 |
| 10/24/2025 | Confer with Ms. McCabe to discuss research related to alternate statutory and common law authorities, besides R.C. 1336, for pursuing fraudulent transfer claims. | AR23 | 0.10 | 30.00 |
| 10/24/2025 | Finalize research regarding statute of limitations issue (0.2); email to Attorneys Jim Coutinho and Andrew Rebholz (0.1). | MM25 | 0.30 | 0.00 |
| 10/27/2025 | Continue research into the definition of a beneficiary for the purposes of section 548(e). | AR23 | 0.50 | 150.00 |
| 10/27/2025 | Receipt and review of research results from Ms. McCabe regarding fraudulent transfer lookback. | JIM3 | 0.10 | 46.00 |
| 10/31/2025 | Finalized research related to the definition of "beneficiary" for the purposes of section 548(e) of the Bankruptcy Code. | AR23 | 0.40 | 120.00 |
| | **Total ATTORNEY FEE DETAIL** | | **10.10** | **$2,972.00** |

**FEE EARNER SUMMARY**

| Fee Earner | | Hours | Effective Rate | Amount |
|---|---|---|---|---|
| JIM3 | James A. Coutinho | 0.20 | 460.00 | 92.00 |
| AR23 | Andrew Rebholz | 7.70 | 300.00 | 2,310.00 |
| MM25 | Maddie McCabe | 2.20 | 259.09 | 570.00 |

| | |
|---|---|
| New Charges | $2,972.00 |
| **Balance Due** | **$2,972.00** |

EXHIBIT 2
Page 1 of 2

**ALLEN STOVALL NEUMAN & ASHTON LLP**

ATTORNEYS

December 18, 2025
File# 3434-013
Invoice# 50308

**Raymond Schneider**

Re: Estate Claims and Chapter 5 Actions
**Invoice for Legal Services**

**Balance Now Due: $4,883.80**

---

**ATTORNEY FEE DETAIL**

| DATE | DESCRIPTION | LAWYER | Hours | AMOUNT |
|---|---|---|---|---|
| 11/1/2025 | Reviewing and analizing trust documents and estate planning documentation from trust transactions. | JIM3 | 1.20 | 552.00 |
| 11/3/2025 | Began conducting research related to when the bankruptcy estate is the party in interest for state court litigation against the debtor. | AR23 | 0.90 | 270.00 |
| 11/4/2025 | Continue research related to when the bankruptcy estate is the party in interest for state court litigation against the debtor, and a debtor-in-possession's rights relatedly. | AR23 | 2.40 | 720.00 |
| 11/5/2025 | Email to Mr. Rebholz regarding follow-up on open research questions regarding estate causes of action. | JIM3 | 0.10 | 46.00 |
| 11/18/2025 | Review and initial analysis of research memorandum from Mr. Rebholz regarding trust transfer lookback under 11 U.S.C. 548(e); review relevant statues and caselaw (.4). Prepared email to Mr. Rebholz with additional questions for expanded research (.2). | JIM3 | 0.60 | 276.00 |
| 11/18/2025 | Finish conducting research related to the statute of limitations for fraudulent transfers and the definition of "beneficiary" for the purposes of 548(e) (.9), and then confer with Mr. Coutinho relatedly to discuss research conclusions (.2). | AR23 | 1.10 | 330.00 |
| 11/18/2025 | After reviewing additional questions from Mr. Coutinho, continue conducting research related to section 548(e), constructive fraud, and potential estate planning defenses. | AR23 | 1.30 | 390.00 |
| 11/18/2025 | Confer with Mr. Coutinho and Mr. Allen to discuss research and strategies related to HNB's claims of fraudulent transfer. | AR23 | 0.20 | 60.00 |
| 11/19/2025 | Review and respond to Mr. Coutinho and Mr. Rebholz emails regarding trust research and review cited cases. | TA24 | 0.20 | 117.00 |
| 11/19/2025 | Continued conferring with Mr. Coutinho and Mr. Allen to discuss research in preparation for addressing HNB's fraudulent transfer claims. | AR23 | 0.10 | 30.00 |
| 11/19/2025 | Continue conducting research related to HNB's fraudulent transfer claims and potential defenses. | AR23 | 0.60 | 180.00 |

ALLEN STOVALL NEUMAN & ASHTON LLP

ATTORNEYS

EXHIBIT 2
Page 2 of 2

| | | | | |
|---|---|---|---|---|
| 11/20/2025 | Continue conducting research related to potential defenses to HNB's fraudulent transfer claims. | AR23 | 0.40 | 120.00 |
| 11/25/2025 | Review HNB Complaint, related statutes and case authorities (1.3); review and respond to Mr. Coutinho emails regarding same (.2). | TA24 | 1.50 | 877.50 |
| 11/26/2025 | Discussion with Mr. Allen regarding remedies available for a fraudulent transfer action to recover an interest in an LLC, and whether it is limited based on charging order limitations (.1). Review applicable Ohio statute (.1). | JIM3 | 0.20 | 92.00 |
| 11/26/2025 | Review charging order law and R.C. 1706.342 related to creditor recoveries for fraudulent transfers. | TA24 | 0.40 | 234.00 |
| 11/26/2025 | Meet with Mr. Coutinho regarding avoidance action issues and strategies. | TA24 | 1.10 | 643.50 |
| | **Total ATTORNEY FEE DETAIL** | | **12.30** | **$4,938.00** |
| | Courtesy Discount | | | -$500.00 |
| | **After Discount** | | | **$4,438.00** |

**FEE EARNER SUMMARY**

| Fee Earner | | Hours | Effective Rate | Amount |
|---|---|---|---|---|
| JIM3 | James A. Coutinho | 2.10 | 460.00 | 966.00 |
| AR23 | Andrew Rebholz | 7.00 | 300.00 | 2,100.00 |
| TA24 | Thomas R. Allen | 3.20 | 585.00 | 1,872.00 |

**PAYMENTS**

| Date | Description | Amount |
|---|---|---|
| 11/26/2025 | | 2,526.20 |
| | **Total PAYMENTS** | **$2,526.20** |

| | |
|---|---|
| New Charges | $4,438.00 |
| Previous Balance | $2,972.00 |
| Payments | -$2,526.20 |
| **Balance Forward** | **$445.80** |
| **Balance Due** | **$4,883.80** |

EXHIBIT 3
Page 1 of 3

**ALLEN STOVALL NEUMAN & ASHTON LLP**

ATTORNEYS

January 14, 2026
File# 3434-013
Invoice# 50452

**Raymond Schneider**

Re: Estate Claims and Chapter 5 Actions
**Invoice for Legal Services**

**Balance Now Due: $10,190.50**

---

**ATTORNEY FEE DETAIL**

| DATE | DESCRIPTION | LAWYER | Hours | AMOUNT |
|---|---|---|---|---|
| 12/9/2025 | Review letter from Huntington's counsel regarding estate avoidance actions and consider implications and response (.1). Confer with Mr. Rebholz regarding status of his review of removal matters (.1) | JIM3 | 0.20 | 92.00 |
| 12/9/2025 | Met and conferred with Mr. Coutinho to discuss research related to fraudulent transfers; then reviewed letter from Ms. Neal relatedly. | AR23 | 0.30 | 90.00 |
| 12/12/2025 | Exchanged emails with Mr. Rebholz regarding removal of fraudulent transfer complaint, including review of process and rule example documents provided by Mr. Rebholz.. | JIM3 | 0.20 | 92.00 |
| 12/12/2025 | Consider response to Huntington avoidance action derivative standing demand letter and prepared draft response to Ms. Neal (.9). Meeting with Mr. Stovall to review response, discuss avoidance action strategy, and identify areas in need of additional research (.5). With feedback from Mr. Stovall, revise and finalize response to Huntington (.3). | JIM3 | 1.70 | 782.00 |
| 12/12/2025 | Conduct preliminary legal research regarding equitable tolling of fraudulent transfer statutes of limitations to identify elements and obtain general overview (.3). Prepared email memorandum to Ms. McCabe and Mr. Schwartz regarding background of equitable tolling issues, additional research for each of them to conduct (.3). | JIM3 | 0.60 | 276.00 |
| 12/12/2025 | Conferred with Mr. Coutinho to discuss preparation of the Notice of Removal of the state court fraudulent transfer case. | AR23 | 0.10 | 30.00 |
| 12/12/2025 | Meeting with Mr. Coutinho re: demand letter from HNB on derivative standing demand (.5); review letter and revise, edit response on behalf of Debtor to HNB demand (.3). | RS23 | 0.80 | 460.00 |
| 12/12/2025 | Review Mr. Rebholz email regarding absolute priority rule and Hoffman research; review Mr. Coutinho email to HNB counsel regarding chapter 5 prosecution demand and respond to same. | TA24 | 0.20 | 117.00 |
| 12/12/2025 | Continued conducting research related to removal of the fraudulent transfer action. | AR23 | 0.60 | 180.00 |

ALLEN STOVALL NEUMAN & ASHTON LLP
ATTORNEYS



| | | | | |
|---|---|---|---|---|
| 12/12/2025 | Conferred with Mr. Coutinho and Ms. McCabe to discuss conducting research into substitution of Mr. Schneider's estate as the plaintiff and real party in interest in the fraudulent transfer case (.1). Then conducted research relatedly (.7). | AR23 | 0.80 | 240.00 |
| 12/15/2025 | Reviewed correspondence between Mr. Coutinho and Ms. Neal discussing the debtor's pursuit of potential chapter 5 claims. | AR23 | 0.10 | 30.00 |
| 12/15/2025 | Continued conducting research related to the substitution of debtor as real party in interest to potential chapter 5 claims. | AR23 | 0.80 | 240.00 |
| 12/16/2025 | Continued research related to substitution of the bankruptcy estate as real party in interest. | AR23 | 0.60 | 180.00 |
| 12/22/2025 | Continued conducting research related to substitution of a bankruptcy estate as the real party in interest in a state court case. | AR23 | 1.20 | 360.00 |
| 12/22/2025 | Research equitable tolling of statute of limitations under Ohio law. | MM25 | 1.30 | 390.00 |
| 12/22/2025 | Conferred with Ms. McCabe to discuss research related to whether transferor is an essential party to fraudulent transfer litigation. | AR23 | 0.20 | 60.00 |
| 12/23/2025 | Continued research on equitable tolling of statute of limitations under Ohio law. | MM25 | 1.60 | 480.00 |
| 12/23/2025 | Research into mitigation of damages in defense to bankrutpcy claim, including whether Debtor can demand certain types of creditor mitigation. | AS23 | 3.30 | 1,402.50 |
| 12/29/2025 | Email to Mr. Coutinho re research status and projected completion of equitable tolling research assignment. | MM25 | 0.10 | 30.00 |
| 12/29/2025 | Review researched cases re equitable tolling while drafting a memorandum outlining the findings from the researched cases. | MM25 | 6.40 | 1,920.00 |
| 12/30/2025 | Continue research into mitigation and marshaling; look into state court litigation and underlying lender documents in file and research generalized claim defenses. | AS23 | 2.70 | 1,147.50 |
| 12/31/2025 | Research necessary parties for fraudulent transfer litigation. | MM25 | 1.30 | 390.00 |
| 12/31/2025 | Email Attorney Jim Coutinho re findings from equitable tolling research with the equitable tolling memorandum attached. | MM25 | 0.20 | 90.00 |
| | **Total ATTORNEY FEE DETAIL** | | **25.30** | **$9,079.00** |

**FEE EARNER SUMMARY**

| Fee Earner | | Hours | Effective Rate | Amount |
|---|---|---|---|---|
| JIM3 | James A. Coutinho | 2.70 | 460.00 | 1,242.00 |
| AR23 | Andrew Rebholz | 4.70 | 300.00 | 1,410.00 |
| AS23 | Adam Schwartz | 6.00 | 425.00 | 2,550.00 |
| MM25 | Maddie McCabe | 10.90 | 302.75 | 3,300.00 |
| RS23 | Richard K. Stovall | 0.80 | 575.00 | 460.00 |
| TA24 | Thomas R. Allen | 0.20 | 585.00 | 117.00 |

**PAYMENTS**

| Date | Description | Amount |
|---|---|---|
| 12/19/2025 | | 3,772.30 |

ALLEN STOVALL NEUMAN & ASHTON LLP

ATTORNEYS

EXHIBIT 3
Page 3 of 3

| | |
|---|---|
| **Total PAYMENTS** | **$3,772.30** |

| | |
|---|---|
| New Charges | $9,079.00 |
| Previous Balance | $4,883.80 |
| Payments | -$3,772.30 |
| **Balance Forward** | **$1,111.50** |
| **Balance Due** | **$10,190.50** |

**ALLEN STOVALL NEUMAN & ASHTON LLP**

ATTORNEYS

February 10, 2026
File# 3434-013
Invoice# 50602

**Raymond Schneider**

Re: Estate Claims and Chapter 5 Actions
**Invoice for Legal Services**

**Balance Now Due: $16,636.56**

---

**ATTORNEY FEE DETAIL**

| DATE | DESCRIPTION | LAWYER | Hours | AMOUNT |
|---|---|---|---|---|
| 1/2/2026 | Finalize research re necessary parties for fraudulent transfer litigation. | MM25 | 0.50 | 150.00 |
| 1/2/2026 | Email Attorney Andrew Rebholz re findings from researching necessary parties for fraudulent transfer litigation. | MM25 | 0.20 | 60.00 |
| 1/2/2026 | Draft research memorandum for Attorney Andrew Rebholz re necessary parties for fraudulent transfer litigation. | MM25 | 0.30 | 90.00 |
| 1/5/2026 | Review email from Attorney Andrew Rebholz. | MM25 | 0.10 | 30.06 |
| 1/5/2026 | Conferred with Ms. McCabe regarding research related to necessary parties to litigation and the debtor as uninterested transferor; then conducted further research, and conferred with Mr. Coutinho relatedly. | AR23 | 0.10 | 30.00 |
| 1/7/2026 | Review email from Attorney Jim Coutinho re equitable tolling research. | MM25 | 0.10 | 30.00 |
| 1/7/2026 | Conferred with Mr. Coutinho to discuss Ms. McCabe's research related to equitable tolling; reviewed research memo, then conducted additional research relatedly. | AR23 | 0.10 | 30.00 |
| 1/8/2026 | Reviewed research prepared by Ms. McCabe related to equitable tolling; conducted additional research. | AR23 | 0.40 | 120.00 |
| 1/9/2026 | Confer with Mr. Rebholz regarding removal of fraudulent transfer action and requirement for providing transmittal of process and pleadings. | JIM3 | 0.10 | 46.00 |
| 1/9/2026 | Reviewed and responded to email from Mr. Rebholz regarding his review of research memorandum on equitable tolling of statute of limitations. | JIM3 | 0.10 | 46.00 |
| 1/9/2026 | Conferred with Mr. Coutinho to discuss preparation of the notices of removal for state court litigation. | AR23 | 0.10 | 30.00 |
| 1/9/2026 | Conducted research related to removal procedures, and conferred with Mr. Coutinho relatedly. | AR23 | 0.20 | 60.00 |

ALLEN STOVALL NEUMAN & ASHTON LLP
ATTORNEYS

EXHIBIT 4
Page 2 of 3

| | | | | |
|---|---|---|---|---|
| 1/9/2026 | Continue to Review research prepared by Ms. McCabe related to equitable tolling; conducted additional research; then conferred with Mr. Coutinho to discuss. | AR23 | 1.40 | 420.00 |
| 1/12/2026 | Drafted notice of removal for the fraudulent transfer case, then finalized with Mr. Coutinho. | AR23 | 1.70 | 510.00 |
| 1/12/2026 | Working on notices of removal of state court actions, including ensuring all documents are available to transfer to Bankruptcy Court. | JIM3 | 0.90 | 414.00 |
| 1/12/2026 | Multiple conferences to discuss removal notices and contents with Mr. Rebholz (.1 each). | JIM3 | 0.30 | 138.00 |
| 1/13/2026 | Reviewed and consolidated conclusions on equitable tolling research, then conferred with Mr. Coutinho and Mr. Schneider relatedly. | AR23 | 0.70 | 210.00 |
| 1/13/2026 | Continued research related to removal and remand to prepare strategies for the removal of state court actions, then conferred with Mr. Coutinho relatedly. | AR23 | 0.20 | 60.00 |
| 1/13/2026 | Continued conducting research related to transferors being unnecessary to fraudulent transfer actions; reviewed Ms. McCabe's research relatedly; then conferred with Mr. Coutinho to discuss. | AR23 | 0.80 | 240.00 |
| 1/14/2026 | Telephone conference with Mr. Giles, counsel for Mrs. Schneider and kids, to discuss fraudulent transfer case and claims, possible resolution of claims, and issues with trusts. | JIM3 | 0.40 | 184.00 |
| 1/14/2026 | Meeting with Mr. Rebholz to discuss issues related to removal and stay relief on pending fraudulent transfer case. | JIM3 | 0.20 | 92.00 |
| 1/14/2026 | Drafted motion to determine that bankruptcy estate is real party in interest in the fraudulent transfer case, as well as its proposed order, then conferred with Mr. Coutinho relatedly. | AR23 | 3.60 | 1,080.00 |
| 1/14/2026 | Conducted research in support of the motion to determine that Mr. Schneider's bankruptcy estate is the real party in interest to HNB's fraudulent transfer case, substitute the debtor in possession as plaintiff, and dismiss Mr. Schneider personally. | AR23 | 1.00 | 300.00 |
| 1/14/2026 | Met with Mr. Coutinho to discuss strategies related to removal, the accompanying notices, and pursuit of the fraudulent transfer action on behalf of the debtor's bankruptcy estate. | AR23 | 0.30 | 90.00 |
| 1/15/2026 | Call with client to discuss removal of state court actions. | JIM3 | 0.20 | 92.00 |
| 1/15/2026 | Meeting with Mr. Rebholz to discuss removal matters. | JIM3 | 0.10 | 46.00 |
| 1/15/2026 | Reviewed, revised, and finalized notice of removal of Fraudulent Transfer case from state court, including review of caselaw provided by Mr. Rebholz regarding property of the estate matters. | JIM3 | 1.30 | 598.00 |
| 1/15/2026 | Reviewed and revised notice for filing in State Court for removal (.1). Prepared notice of filing pleadings and process (.2). | JIM3 | 0.30 | 138.00 |
| 1/15/2026 | Conducted research related to continuation of the automatic stay when an action is removed to the bankruptcy court; then conferred with Mr. Coutinho to discuss. | AR23 | 1.70 | 510.00 |

ALLEN STOVALL NEUMAN & ASHTON LLP

ATTORNEYS

EXHIBIT 4
Page 3 of 3

| | | | | |
|---|---|---|---|---|
| 1/15/2026 | Met with Mr. Coutinho to discuss strategies for pursuing estate claims and final preparation of the notice to remove the fraudulent transfer case; then revised the notice and its accompanying documents, and conferred with Mr. Coutinho relatedly. | AR23 | 0.40 | 120.00 |
| 1/18/2026 | Prepared email to Mr. Rebholz regarding additional research related to 548(e) and "collapsed" transactions. | JIM3 | 0.10 | 46.00 |
| 1/19/2026 | Exchanged emails with Mr. Rebholz regarding additional research on stay relief after removal of actions. | JIM3 | 0.10 | 46.00 |
| 1/19/2026 | Conferred with Mr. Coutinho to discuss research related to continuation of the automatic stay upon removal. Conducted additional research relatedly. | AR23 | 0.70 | 210.00 |
| 1/21/2026 | Conducted research related to 548(e) and the statute of limitations for potential fraudulent transfer actions of the estate. | AR23 | 0.60 | 180.00 |
| | **Total ATTORNEY FEE DETAIL** | | **19.30** | **$6,446.06** |

**FEE EARNER SUMMARY**

| Fee Earner | | Hours | Effective Rate | Amount |
|---|---|---|---|---|
| JIM3 | James A. Coutinho | 4.10 | 460.00 | 1,886.00 |
| AR23 | Andrew Rebholz | 14.00 | 300.00 | 4,200.00 |
| MM25 | Maddie McCabe | 1.20 | 300.05 | 360.06 |

| | |
|---|---|
| New Charges | $6,446.06 |
| Previous Balance | $10,190.50 |
| **Balance Due** | **$16,636.56** |

EXHIBIT 5
Page 1 of 2

**ALLEN STOVALL NEUMAN & ASHTON LLP**

ATTORNEYS

March 10, 2026
File# 3434-013
Invoice# 50721

**Raymond Schneider**

Re: Estate Claims and Chapter 5 Actions
**Invoice for Legal Services**

**Balance Now Due: $5,412.01**

---

**ATTORNEY FEE DETAIL**

| DATE | DESCRIPTION | LAWYER | Hours | AMOUNT |
|---|---|---|---|---|
| 2/13/2026 | Finished conducting research related to the collapse theory for statute of limitations purposes, then conferred with Mr. Coutinho to discuss. | AR23 | 1.10 | 330.00 |
| 2/18/2026 | Conferred with Mr. Coutinho to discuss research regarding the collapsing of transactions and self-settled trusts for statute of limitations purposes under 548(e). | AR23 | 0.20 | 60.00 |
| 2/19/2026 | Continued conducting research regarding the collapsing of transactions and self-settled trusts for statute of limitations purposes under 548(e ); then conferred with Mr. Coutinho relatedly. | AR23 | 0.70 | 210.00 |
| 2/20/2026 | Reviewed and responded to email from Mr. Rebholz regarding additional 548 research. | JIM3 | 0.10 | 46.00 |
| 2/20/2026 | Finished conducting research regarding the collapsing of transactions and self-settled trusts for statute of limitations purposes under 548(e ); then conferred with Mr. Coutinho relatedly. | AR23 | 3.40 | 1,020.00 |
| 2/23/2026 | Conference with Mr. Rebholz to discuss research findings and creating compilation of various research outcomes; additional items to communicate to Mr. Schwartz for review. | JIM3 | 0.20 | 92.00 |
| 2/23/2026 | Met with Mr. Coutinho to discuss strategies related to collapsibility of transactions, next steps for research related to the fraudulent transfer case, and consolidation of research in preparation for discussions with the client. Then conferred with Mr. Schwartz relatedly. | AR23 | 0.70 | 210.00 |
| 2/23/2026 | Conferred with Mr. Coutinho to discuss the theory of collapsing transactions and its origins, related to research from last week and as pertains to estate claims in the case. Conducted some additional research relatedly. | AR23 | 2.10 | 630.00 |
| 2/24/2026 | Conferred with Mr. Schwartz and Mr. Coutinho to discuss strategies and research related to the fraudulent transfer case and potential collapsibility of transactions. | AR23 | 0.20 | 60.00 |

ALLEN STOVALL NEUMAN & ASHTON LLP

ATTORNEYS

EXHIBIT 5
Page 2 of 2

| | | | | |
|---|---|---|---|---|
| 2/24/2026 | Conferred with Mr. Coutinho to discuss and consolidate research to prepare a memorandum for the client. | AR23 | 0.20 | 60.00 |
| 2/25/2026 | Conferred with Mr. Coutinho to discuss the fraudulent transfer case, then began reviewing transfers accordingly. | AR23 | 0.10 | 30.00 |
| | **Total ATTORNEY FEE DETAIL** | | **9.00** | **$2,748.00** |

**FEE EARNER SUMMARY**

| Fee Earner | | Hours | Effective Rate | Amount |
|---|---|---|---|---|
| JIM3 | James A. Coutinho | 0.30 | 460.00 | 138.00 |
| AR23 | Andrew Rebholz | 8.70 | 300.00 | 2,610.00 |

**PAYMENTS**

| Date | Description | Amount |
|---|---|---|
| 2/18/2026 | | 5,801.45 |
| 2/18/2026 | | 8,171.10 |
| | **Total PAYMENTS** | **$13,972.55** |

| | |
|---|---|
| New Charges | $2,748.00 |
| Previous Balance | $16,636.56 |
| Payments | -$13,972.55 |
| **Balance Forward** | **$2,664.01** |
| **Balance Due** | **$5,412.01** |

EXHIBIT 6
Page 1 of 3

**ALLEN STOVALL NEUMAN & ASHTON LLP**

ATTORNEYS

April 10, 2026
File# 3434-013
Invoice# -draft-

**Raymond Schneider**

Re: Estate Claims and Chapter 5 Actions
**Invoice for Legal Services**

**Balance Now Due: $33,545.01**

**ATTORNEY FEE DETAIL**

| DATE | DESCRIPTION | LAWYER | Hours | AMOUNT |
|---|---|---|---|---|
| 3/2/2026 | Review certain 548(e) research provided by Mr. Rebholz and email inquiry to Mr. Rebholz regarding same. | JIM3 | 0.20 | 92.00 |
| 3/2/2026 | Conducted research related to "self-settled" trusts and "similar devices" under section 548(e ) and Ohio law. | AR23 | 1.60 | 480.00 |
| 3/3/2026 | Continued conducting research related to "self-settled" trusts and "similar devices" under section 548(e ) and Ohio law. | AR23 | 3.70 | 1,110.00 |
| 3/3/2026 | Conferred with Mr. Coutinho to continue discussing collapsibility theory in relation to 548(e ); then conducted additional research accordingly. | AR23 | 0.10 | 30.00 |
| 3/4/2026 | Continued conducting research related to "self-settled" trusts and "similar devices" under section 548(e ) and Ohio law. | AR23 | 1.40 | 420.00 |
| 3/5/2026 | Continued conducting research related to "self-settled" trusts and "similar devices" under section 548(e ) and Ohio law, in preparation for pursuing claims in the fraudulent transfer case. | AR23 | 0.30 | 90.00 |
| 3/5/2026 | Conducted research related to caselaw where collapsibility doctrine was used within 548(e ) claims. | AR23 | 2.50 | 750.00 |
| 3/6/2026 | Continued conducting research related to caselaw where collapsibility doctrine was used within 548(e ) claims. | AR23 | 2.20 | 660.00 |
| 3/9/2026 | Met with Mr. Coutinho and Mr. Stovall to discuss research and strategies related to collapsibility, 548(e ), and fraudulent transfer claims in the removed case. | AR23 | 0.10 | 30.00 |
| 3/9/2026 | Consolidated research related to 548(e ), collapsing transactions, and self-settled trusts. | AR23 | 0.20 | 60.00 |
| 3/9/2026 | Confer with Mr. Rebholz regarding status of 548(e) and collapse theory research. | JIM3 | 0.10 | 46.00 |
| 3/11/2026 | Review additional research memo from Mr. Rebholz regarding trust claims and 548(e). | JIM3 | 0.20 | 92.00 |

ALLEN STOVALL NEUMAN & ASHTON LLP

ATTORNEYS

EXHIBIT 6
Page 2 of 3

| | | | | |
|---|---|---|---|---|
| 3/11/2026 | Consolidated research related to self-settled trusts, similar devices, and collapsility doctrine as relates to section 548(e ), and then conferred with Mr. Coutinho relatedly. | AR23 | 1.10 | 330.00 |
| 3/11/2026 | Prepared email to Ms. Pan regarding status of obtaining Vory's file documents related to estate planning. | JIM3 | 0.10 | 46.00 |
| 3/12/2026 | Conferred with Mr. Coutinho to discuss research related to section 548(e ), self-settled trusts and similar devices, and collapsibility doctrine; then consolidated research and prepared correspondence to the client team and associated counsel relatedly. | AR23 | 0.60 | 180.00 |
| 3/16/2026 | Call with debtor's prior estate planning counsel at Vorys to discuss turnover of debtor's file and ongoing litigation matters related to possible claims against trusts and beneficiaries. | JIM3 | 0.30 | 138.00 |
| 3/16/2026 | Continue research into collapse doctrine in all courts and all variations and begin review of cases. | AS23 | 9.00 | 3,825.00 |
| 3/17/2026 | Continue research including on related doctrines and continue review of cases | AS23 | 8.30 | 3,527.50 |
| 3/18/2026 | Conference with Attorney Jim Coutinho re attorney client privilege research project. | MM25 | 0.10 | 30.00 |
| 3/18/2026 | Reviewed correspondence between Mr. Coutinho and Mr. Schwartz discussing research related to HNB's claims that the client's trust was a "sham" created to perpetuate fraud. | AR23 | 0.30 | 90.00 |
| 3/18/2026 | Continue review of cases and begin draft of memo on the same. | AS23 | 7.70 | 3,272.50 |
| 3/18/2026 | Meeting with Ms. McCabe to discuss research needed on attorney-client privilege issues related to trust formation (.2). Exchanged emails with Mr. Schwartz regarding research needed on causes of action claimed by Huntington in motion (.2). | JIM3 | 0.40 | 184.00 |
| 3/23/2026 | Continue draft and edit of collapse doctrine analysis and finish memo on the same. | AS23 | 8.00 | 3,400.00 |
| 3/23/2026 | Begin review of Huntington motion and draft complaint on potential adversary claims; begin research into declaratory actions and property of the estate. | AS23 | 2.20 | 935.00 |
| 3/24/2026 | Continue research into 541, 544, and 548 actions in combination with trusts and trusts as estate property and alter ego, instrumentality, sham and veil piercing doctrines in Ohio and in other states. | AS23 | 7.50 | 3,187.50 |
| 3/25/2026 | Continue review of all cases on all issues and begin draft of memo on the same. | AS23 | 6.80 | 2,890.00 |
| 3/27/2026 | Conducted additional research related to collapsibility doctrine with fraudulent transfer claims. | AR23 | 0.80 | 240.00 |
| 3/27/2026 | Continue review of all cases on all issues and continue draft of memo on the same. | AS23 | 4.70 | 1,997.50 |
| | **Total ATTORNEY FEE DETAIL** | | **70.50** | **$28,133.00** |

ALLEN STOVALL NEUMAN & ASHTON LLP

ATTORNEYS

EXHIBIT 6
Page 3 of 3

**FEE EARNER SUMMARY**

| Fee Earner | | Hours | Effective Rate | Amount |
|---|---|---|---|---|
| JIM3 | James A. Coutinho | 1.30 | 460.00 | 598.00 |
| AR23 | Andrew Rebholz | 14.90 | 300.00 | 4,470.00 |
| AS23 | Adam Schwartz | 54.20 | 425.00 | 23,035.00 |
| MM25 | Maddie McCabe | 0.10 | 300.00 | 30.00 |

**TASK SUMMARY**

| Task | | Hours | Effective Rate | Amount |
|---|---|---|---|---|
| BW | Billable Work | 70.50 | 399.05 | 28,133.00 |

| | |
|---|---|
| New Charges | $28,133.00 |
| Previous Balance | $5,412.01 |
| **Balance Due** | **$33,545.01** |

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Objection to Motion of The Huntington National Bank for Authorization to Prosecute Derivative Actions* was served (i) electronically on the date of filing through the Court's ECF system on all ECF participants registered in this case at the email address registered with the Court, and (ii) by ordinary U.S. Mail on April 10, 2026, addressed to the following:

None.

/s/ James A. Coutinho
James A. Coutinho (0082430)