# "EXHIBIT I"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **In re:**<br><br>**RAYMOND JOSEPH SCHNEIDER**<br><br>**Debtor.** | **Case # 23-10337**<br><br>**Chapter 11**<br><br>**Judge Beth A. Buchanan** |

# DISCLOSURE STATEMENT WITH RESPECT TO THE PLAN OF REORGANIZATION OF RAYMOND JOSEPH SCHNEIDER

**GOERING & GOERING, LLC**

Eric W. Goering
Robert A. Goering
220 West Third Street
Cincinnati, Ohio 45202
Phone: (513) 621-0912
Email: eric@goering-law.com
bob@goering-law.com

Attorneys for Debtor
and Debtor in
Possession

Dated: November 8, 2023

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ....................................................................1

II. VOTING PROCEDURES, BALLOTS AND VOTING DEADLINE ....................................2

III. GENERAL INFORMATION ....................................................................3

A. History of Debtor. ....................................................................3

B. Events Leading to the Debtor's Chapter 11 Filing. ....................................................................4

IV. THE CHAPTER 11 CASE ....................................................................4

A. Motion for Appointment of Chapter 11 Trustee ....................................................................5

B. Application to employ counsel ....................................................................5

C. Motion to conduct Rule 2004 exam ....................................................................6

D. Motion to prosecute Avoidance Actions ....................................................................6

E. Motion to re-sign guarantees ....................................................................6

F. Huntington adversay seeking nondischargeability ....................................................................6

G. Motion to sell membership interest in 9617 Kenwood Road Development, LLC...……...6

V. DISCUSSION OF OPERATIONS ....................................................................6

A. The Raymond Schneider Irrevocable 2019 Gift Trust & the Patricia Schneider Irrevocable 2020 Gift Trust. ....................................................................7

B. Financial Projections. ....................................................................7

VI. PLAN OF REORGANIZATION ....................................................................7

A. Plan Terms ....................................................................8

B. Means of Implementation of the Plan. ....................................................................9

C. Conditions to Confirmation. ....................................................................10

D. Conditions to Effective Date. ....................................................................10

E. Waiver of Conditions to Confirmation and Consummation of the Plan. ....................................10

VII. EFFECT OF CONFIRMATION OF THE PLAN ....................................................................11

A. Discharge of Claims and Interests—Temporary Injunction. ....................................................................11

B. Exculpation and Limitation of Liability. ....................................................................11

C. Transfer Free of Claims, Liens, Charges and Other Interests. ....................................................................11

D. Causes of Action. ....................................................12
VIII. CONFIRMATION AND CONSUMMATION PROCEDURES ....................................................12
A. Solicitation of Votes. ....................................................12
B. The Confirmation Hearing. ....................................................12
C. Confirmation. ....................................................13
IX. CERTAIN RISK FACTORS ....................................................15
A. Inherent Uncertainty of Financial Projections. ....................................................15
B. Uncertainty in Distributions to Unsecured Creditors. ....................................................15
C. Failure of Conditions to Confirmation and Effective Date. ....................................................15
X. INCOME TAX CONSEQUENCES OF THE PLAN ....................................................15
A. Generally. ....................................................15
B. Federal Income Tax Consequences to Creditors. ....................................................16
C. Importance of Obtaining Professional Assistance. ....................................................17
XI. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN .......17
A. Liquidation Under Chapter 7. ....................................................17
XII. CONCLUSION AND RECOMMENDATION ....................................................18
XIII. DEFINITIONS ....................................................18

## I. INTRODUCTION

Raymond Schneider ("Debtor" or "Plan Proponent") submits this disclosure statement (the "Disclosure Statement") pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy Code"), for use in the solicitation of votes on the plan of reorganization (the "Plan") to be proposed by Debtor upon filing with the United States Bankruptcy Court for the Southern District of Ohio (the "Bankruptcy Court").

**THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF ITS CREDITORS AND EQUITY HOLDERS AND URGES ALL CREDITORS AND EQUITY HOLDERS TO VOTE IN FAVOR OF THE PLAN.**

This Disclosure Statement sets forth certain information regarding the Debtor's prepetition history, significant events that have occurred during the Debtor's Chapter 11 Case and the anticipated reorganization of the Debtor. This Disclosure Statement also describes the Plan, including certain alternatives to the Plan, certain effects of confirmation of the Plan, certain risk factors associated with the Plan, and the manner in which distributions will be made under the Plan. This Disclosure Statement, however, is not the Plan. All descriptions of the Plan are qualified in their entirety by the Plan itself, which is in all instances controlling. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that Holders of Claims or Interests in Impaired Classes must follow for their votes to be counted. Unless otherwise defined herein, all capitalized terms contained in this Disclosure Statement shall have the meanings ascribed to them in the Plan.

Attached as exhibits to this Disclosure Statement are the following documents:

1. The Plan ("Exhibit A").

2. Proposed Order of the Bankruptcy Court approving this Disclosure Statement ("Exhibit B").

3. Financial Projections for Reorganized Debtor ("Exhibit C").

4. The Debtor's Liquidation Analysis ("Exhibit D").

In addition, if you are entitled to vote to accept or reject the Plan, a Ballot for acceptance or rejection of the Plan will be mailed with this Disclosure Statement pursuant to Court Order.

The Bankruptcy Court, after notice and a hearing, will approve a disclosure statement as containing information of a kind and in sufficient detail adequate to enable hypothetical, reasonable investors typical of Holders of Claims against or interests in the Debtor to make an informed judgment as to whether to accept or reject the Plan.

APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR THE MERITS OF THE PLAN.

ALL HOLDERS OF CLAIMS AND INTERESTS IN THE DEBTOR ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING EITHER TO ACCEPT OR TO REJECT THE PLAN. THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN.

No solicitation of votes may be made except after distribution of this Disclosure Statement, and no person has been authorized to distribute any information concerning the Debtor other than the information contained herein.

CERTAIN INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS, AND PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL FUTURE RESULTS. EXCEPT WHERE SPECIFICALLY NOTED, THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

## II. VOTING PROCEDURES, BALLOTS, AND VOTING DEADLINE

After carefully reviewing the Plan, this Disclosure Statement, and the instructions accompanying your Ballot, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed Ballot. Please complete and sign your original Ballot (copies will not be accepted) and return it to:

Eric W Goering
Attorney for Debtor
220 W. 3rd St.
Cincinnati, OH 45202

IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED AND IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT AND **RECEIVED** NO LATER THAN THE DATE FIXED BY THE COURT (THE “VOTING DEADLINE”).

If you have any questions about the procedure for voting your Claim or Interest or the amount of your Claim, please contact Eric W Goering at (513) 621-0912. Ballots must be delivered by mail, email, courier, or delivery service. Facsimile ballots will not be accepted. Any completed Ballots received that do not indicate either an acceptance or rejection of the Plan shall be deemed to constitute an acceptance of the Plan.

Pursuant to Section 1128 of the Bankruptcy Code, the hearing on the confirmation of the Plan will be fixed by the Court before the Honorable Beth A. Buchanan, United States Bankruptcy Judge, Courtroom 2, Eighth Floor, Atrium Two, 221 East Fourth Street, Cincinnati, Ohio 45202. The Bankruptcy Court will provide details regarding the deadlines for objections, if

any, to confirmation of the Plan and that they be filed and served on or before a date certain. The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the confirmation hearing or at any subsequent adjourned date of the confirmation hearing.

THE PLAN PROPONENT BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERIES TO THE CREDITORS. THE PLAN PROPONENT, THEREFORE, BELIEVES THAT THE ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF EACH AND EVERY CLASS OF CLAIMANTS AND RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.

## III. GENERAL INFORMATION

### A. <u>HISTORY OF DEBTOR.</u>

The Debtor is an entrepreneur who presently owns or is a business partner in approximately 70 LLC's in a variety of businesses including storage, pet care, nursing homes, rental real estate, and real estate development. Born and raised in the city of Cincinnati, he is the son of immigrants. After World War II, his parents arrived in the United States speaking very little English and with only a small savings. They settled in Roselawn, Ohio, and his father opened a butcher shop. The Debtor attended primary school and high school near the inner city of Cincinnati. Hard work throughout high school paved the way for Debtor to attend The Ohio State University and then University of Cincinnati where he received a BA in Business.

After college he chose to help his parents with their family butcher/grocery store. Wanting to give back to the community, his mother started a small nursing home in Cincinnati, which eventually grew to house approximately 200 plus residents. Their reputation for quality care and first-class homes allowed them to expand in the nursing home business. By 2007, the Debtor was responsible for the care and well-being of over 1,000 senior citizens.

His knowledge and experience in building development, management and operations acquired during the expansion of senior living facilities gave the Debtor the confidence to pursue other possibilities. Over the past 20 years, he started multiple companies including pet care resorts, self-storage facilities, an assisted living facility, and multiple multi-family housing projects. He opened one of the first luxury pet resorts in Cincinnati in 2007 and now he has over 6 locations in Ohio and Boston, Massachusetts. He employs approximately 250 amazing employees in three states in connection with his businesses. His development company is well respected and has a reputation for being creative, in addition to carrying on the family tradition of giving back to the community.

The Debtor has been married for 41 years and has lived in his Blue Ash home for 36 years. He has three children and 7 grandchildren with whom he spends as much time as

possible. Debtor's honesty, hard work, and dedication have been cultivated both in business and in family.

The Debtor has been in business for over 55 years and until he recently became enmeshed in a business partner's check kiting scheme, he had a very successful and solvent operation.

### B. <u>EVENTS LEADING TO DEBTOR'S CHAPTER 11 FILING</u>

The Debtor is not in this Chapter 11 because of a lack of management ability or any fraud or criminal act on his part. He is in this Chapter 11 only because his business partner in several nursing home businesses, Harold Sosna ("Sosna"), committed a massive fraud in a check kiting scheme. The Debtor was a guarantor/surety with Sosna on a nursing home debt in the original amount of approximately $73,000,000. The check kiting scheme perpetrated by Sosna and unknown to the Debtor totaled over $ 2.2 billion dollars and resulted in a deficiency liability on the loan in excess of $ 26,000,000 to Huntington National Bank ("Huntington") against the borrowers and the Debtor. He only became aware of the issues with Huntington and the check kiting when his partner was arrested by the FBI.

Huntington was granted a judgment for the deficiency in the Hamilton County Common Pleas Court, which is now on appeal to the First District Court of Appeals. The Debtor has filed a separate action against Huntington which is pending in the Hamilton County Common Pleas Court. That Court overruled Huntington's motion to dismiss the case so it will proceed based upon an established court ordered schedule. The trial is scheduled to take place in the middle of 2024.

Huntington was attempting to seize the personal assets of the Debtor and to appoint a third party as a receiver over the business entities. These actions led to the filing of this Chapter 11 case.

## IV. THE CHAPTER 11 CASE

This is an individual Chapter 11 for Raymond Schneider. His corporations are not in bankruptcy. The businesses of the Debtor continue to operate, and all obligations of the LLC's have been paid on a current basis by the LLC's. The Debtor owns two additional homes (one jointly with his non filing spouse), one in Colorado and one in Maine, which are being funded and maintained by his non filing spouse.

Despite all of this, the consummation of this Plan is not dependent on the success or failure of the legal actions involving Huntington. It proposes to pay all of the creditors 100 cents on the dollar regardless of the results of the litigation with Huntington. Should either the appeal of the judgment or the tort claim be decided in the Debtor's favor, it will simply reduce the time

for payments under the Plan. Should the decisions go against the Debtor, any judgment will be paid in full per the terms of the Plan.

The Debtor does not have sufficient Cash to retire the Huntington judgment immediately. However, the Debtor has sufficient assets which, over time, will produce sufficient funds to pay all of the creditors in full. This will be accomplished by a combination of funds from the operation of the businesses and liquidation of some of the LLC's and personally held assets to retire his debts.

With the exception of Huntington and certain Unsecured debts, all of the Debtor's other obligations were current as of the date of filing and remain current to date.

The Debtor and/or his LLC's employ approximately 250 individuals, all of whom will be maintained to manage the various enterprises.

**A. The Emergency Motion to Appoint a Chapter 11 Trustee (Doc. 13)**

Huntington filed a motion to appoint a Chapter 11 Trustee within five days after the filing of this case. They did no discovery prior to the filing of the motion or before trial. The motion was opposed by the Debtor and three other Secured lenders, who maintained that the Debtor was the best person to manage his various enterprises, not a Chapter 11 Trustee. All Secured lenders of the corporate entities have been receiving their regular payments both pre and post-petition and the Debtor has filed pleadings to re-sign several guarantees. Debtor reasonably believed that the appointment of a Trustee would trigger numerous declarations of default that would have resulted in fire sales of the Debtor's assets to the detriment of all creditors.

The Court denied Huntington's motion to appoint a Chapter 11 Trustee on May 5, 2023, and has allowed Debtor to continue to manage his various businesses.

**B. The Debtor's Application to Employ Counsel**

On March 3, 2023, the Debtor filed an application to employ Goering and Goering, LLC as attorneys for the Debtor. An Order approving the employment was entered on May 5, 2023 (doc. 77). On March 28, 2023, an application to employ James Cummins as counsel to represent the Debtor in the litigation against Huntington was filed and an Order approving the employment was entered on August 15, 2023. (doc. 159) On March 28, 2023, an application to employ Brian Giles was filed to represent the Debtor in certain litigation outside the bankruptcy and an Order approving the employment was entered on August 15, 2023. (doc. 161) On March 29, 2023, an application to employ Richard Wayne was filed to represent the Debtor in certain litigation including the Court of Appeals and an Order approving the employment was entered on October 3, 2023. (doc. 194).

**C. Motion for Authorization to Conduct Rule 2004 Discovery with Respect to the Debtor and Third Parties (Doc. 92)**

Huntington filed a Motion for Authorization to Conduct Rule 2004 Discovery with respect to the Debtor and Third Parties on June 6, 2023. A motion to strike was filed by the Debtor since Huntington failed to follow local rules regarding discovery. An agreed Order was entered between the parties on July 20, 2023. (doc 140)

**D. Motion for Authorization to Prosecute Avoidance Actions against the Schneider Family Trusts (Doc. 97)**

Huntington filed a Motion to pursue a claim under the Ohio Fraudulent Conveyance statute against the Raymond Schneider Irrevocable 2019 Gift Trust and the Patricia Schneider Irrevocable 2020 Gift Trust. The Debtor filed an objection claiming that the proposed Plan would provide that the Trusts would guarantee the Allowed Claim of Huntington. This action is pending before the Court.

**E. Motion to Re-sign Guarantees (Doc. 138 & 224)**

The Debtor has filed two separate motions requesting court approval for him to re-sign the guarantees with the lender for different LLC's. These motions are pending before the Court.

**F. Huntington Adversary Seeking Non-Dischargeability of Claim (Doc. 136)**

Huntington filed an adversary proceeding on July 19, 2023 against the Debtor seeking a determination that the debt owe should be determined nondischargeable. The adversary case was dismissed by Huntington on July 24, 2023.

**G. Motion to Sell Membership Interest in 9617 Kenwood Road Development, LLC (Doc. 214)**

The Debtor filed a Motion to Sell his membership interest in 9617 Kenwood Road Development, LLC to one of the family trusts for $ 1,100,000. The pleading is pending before the Court.

## V. DISCUSSION OF OPERATIONS

The Debtor owns or has an interest in over 70 LLC's of which approximately 24 are active. (Exhibit 1 to 23). Since the filing of the Chapter 11 case, the Debtor has continued to operate the LLC's and all of the managed enterprises are current on their obligations. It is contemplated that the businesses will continue to operate to produce sufficient funds necessary to satisfy the debts of all of the creditors. Because of the steep rise in interest rates, the quick sale

of various enterprises is not in the best interest of the Debtor or Creditors, but it is contemplated that some enterprises will be sold to raise Cash to retire the debts of the Debtor. To date, the businesses project more than $3,000,000.00 in Cash within the next 6 months to provide a down payment to creditors and to fund the payments required by the Plan.

**A. The Raymond Schneider Irrevocable 2019 Gift Trust & The Patricia Schneider Irrevocable 2020 Gift Trust**

Beginning in 2017, the Debtor began comprehensive estate planning in order to take advantage of tax laws prior to their change. Several business entities were appraised and transferred into the trusts over several years and are still being held in that capacity. The estate planning began prior to Huntington becoming the senior syndicate lender, prior to any knowledge of issues with Huntington and prior to the Debtor's knowledge of the check kiting scheme. All transfers occurred more than two years prior to the filing of this Chapter 11. The assets of the two trusts (Exhibit 24-26) continue to operate and grow in value. The terms of the proposed Plan provide that both Trusts will guarantee the debt to Huntington, which would avoid costly litigation proposed by Huntington.

**B. Financial Projections**

Attached to the Disclosure Statement are financial assumptions and projections of the Debtor entities (Exhibit C & 27). These projections were prepared by the Debtor in consultation with his staff and his accountant.

The projections are intended to assess future income and cash flow that is available to make the payments required under the Plan to determine the feasibility of the Plan. These projections present a prediction of future events. These future events may or may not occur and the projections cannot be relied upon as a guarantee, representation or other assurance of the actual results to be obtained. In addition to the projected income, the Debtor is in the process of selling his interest in one LLC and some of the assets of others in order to create a pot of money to help fund the payments required by his Plan.

## VI. PLAN OF REORGANIZATION

THIS SECTION PROVIDES A SUMMARY OF SIGNIFICANT ELEMENTS OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED INFORMATION SET FORTH IN THE PLAN AND THE EXHIBITS THERETO.

A. **Plan Terms**

The proposed Plan provides that the Debtor shall reaffirm all liabilities on debts that he is either the co-obligor, co-borrow or signed a personal guarantee. Payments shall continue in the

regular course of business. The Allowed Claim of Huntington shall be paid over a five (5) year period with substantial paydowns each year.

All priority claims and Administrative Expenses will be paid in Cash on the later of the Effective Date of the Plan or the time when the charges or fees are Allowed by Order of the Court.

Classes 1 and 2 are the loans of Truist Bank and First Merchants Bank on the Maine property and the Colorado property. The loans will not be paid by the Debtor. They will be paid by the Debtor's wife and are not Impaired under the Plan.

Class 3 is the loan of Mr. Cooper on the Debtor's residence which will be paid by the Debtor as a part of his budget in accordance with its terms and is not Impaired under the Plan.

Class 4 are claims of creditors upon which the Debtor is liable as a guarantor or obligor for other entities. They will be paid in full according to the terms of the loans, except that post-petition attorney fees or other charges occasioned by the filing of this Chapter 11 petition will not be charged or paid until the earlier of the time the loan expires or the time the loan is paid in full, whichever is earlier. This Class is Impaired.

Class 5 is the claim of Huntington Bank. This loan will be paid in full over a period of 5 years at the Interest Rate on the outstanding balance.

The schedule of principal payments is:

10% on the Effective date of the Plan

12% in Year 2

15% in year 3

18% in year 4

The balance in year 5.

Interest will be paid quarterly. This Class is Impaired.

Class 6 are the Unsecured claims that are not based on a guarantee or obligor and do not have a judgment. These claims will be paid over a three-year period at no interest in equal quarterly payments beginning on the Effective Date of the Plan. This Class is impaired.

Class 7 is the interest of the Debtor. The Debtor will retain his interest in the Estate property, but will only take distribution to meet his budget, which is a part of the Plan, and to make payments under the Plan. The budget may be adjusted yearly in January beginning in 2025 for inflation. This Class is Impaired.

B. **<u>Means of Implementation of the Plan.</u>**

1. Operations Between the Confirmation Date and Effective Date.

During the period from the Confirmation Date up to and including the Effective Date, the Debtor may continue to operate the Debtor's businesses, subject to all applicable Orders of the Bankruptcy Court.

2. Restructuring Transactions.

Following the Confirmation Date, the Debtor shall take all actions as may be necessary or appropriate to effect such transactions, including any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; and (c) all other actions that the Debtor determines are necessary or appropriate, including making filings or recordings that may be required by applicable law. To the extent deemed helpful or appropriate to the Debtor or Reorganized Debtor, and as long as it does not adversely affect the Estate or Claimants, the restructuring may be affected pursuant to Section 368 and 381 of the Internal Revenue Code, to preserve for the Debtor or Reorganized Debtor the tax attributes of such entities.

3. Vesting of Assets in Reorganized Debtor.

Except as otherwise provided herein or in the Confirmation Order, as of the Effective Date, all property of the Debtor shall vest in Reorganized Debtor free and clear of all claims, liens, charges, or other encumbrances or interests, other than the liens and security interests securing the Class 1,2, 3 and 4 Claim. On and after the Effective Date, except as otherwise provided in the Plan, Reorganized Debtor may operate his businesses and may use, acquire or dispose of property without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

4. Sale of Assets.

Notwithstanding any provision in the Plan, Reorganized Debtor is authorized to sell any of the Reorganized Debtor's assets as long as he is current on the payment obligations under the Confirmed Plan.

C. **<u>Conditions to Confirmation.</u>**

The following shall constitute conditions to confirmation of the Plan:

1. The Bankruptcy Court shall have approved, by Final Order, a Disclosure Statement with respect to the Plan in form and substance acceptable to the Debtor.

D. **<u>Conditions to Effective Date.</u>**

The Plan shall be of no force and effect until the Effective Date. The occurrence of the Effective Date is subject to the satisfaction of the following conditions precedent:

1. The Confirmation Order has become a Final Order.

2. All government approvals, if any, necessary to confirm the Plan and the transactions contemplated thereby shall have occurred.

3. No request for revocation of the Confirmation Order under Section 1145 of the Bankruptcy Code shall have been made or, if made, shall remain pending.

E. **<u>Waiver of Conditions to Confirmation and Consummation of the Plan.</u>**

These estimates are based upon data from the Debtor's Schedules and filed proofs of claim. The Debtor reserves the right to object to one or more of these claims, as provided in this Plan.

1. <u>Objections to Claims</u>. Any Claim which is not timely objected to and which has not previously been Disallowed will be deemed to be an Allowed Claim upon the expiration of the applicable time for making an objection. A Claim which is timely objected to will be considered a Disputed Claim until such time as an Order has been entered by the Bankruptcy Court resolving such dispute and such Order has become a Final Order.

2. <u>Projected Distributions</u>. The Debtor intends to pay all Allowed Claims in full in accordance with the Bankruptcy Code. This is based upon Projections that are subject to change due to factors not within the control of the Debtor. THESE DISTRIBUTIONS ARE IN NO WAY GUARANTEED BY THE DEBTOR OR THE PLAN.

3. <u>Treatment of Disputed Claims</u>. After the Effective Date, Reorganized Debtor alone shall have authority to object to Claims on the Debtor's schedules or filed with the Bankruptcy Court. All objections to Claims shall be filed by the Claims Objection Date. The failure of the Debtor's schedules to designate a claim as contingent, unliquidated and/or disputed shall not preclude the Debtor or Reorganized Debtor from filing an objection to any Claim. A

distribution under the Plan shall only be made to the Holder of a Disputed Claim when, and to the extent that, such Disputed Claim becomes an Allowed Claim.

## VII. EFFECT OF CONFIRMATION OF THE PLAN

A. **<u>Discharge of Claims and Interests—Temporary Injunction.</u>**

Except as otherwise provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, including any interest accrued on Claims from the Filing Date, and the acceptance of distributions provided for under the Plan shall constitute a release of the Debtor from any liability for any Claim. Except as otherwise provided in the Plan or the Confirmation Order, confirmation of the Plan shall (a) discharge the Debtor from all Claims or other debts that arose before the date of confirmation of the Plan, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is Allowed pursuant to Section 502 of the Bankruptcy Code, (iii) the Holder of a Claim based on such debt has accepted the Plan; (b) terminate all Interests and other rights, if any, of equity security Holders in the Debtor; (c) vest the Debtor's Assets in, free and clear of all liens, claims, charges, encumbrances or Interests of any type whatsoever, except those liens specifically created hereunder; and (d) void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim.

B. **<u>Exculpation and Limitation of Liability.</u>**

On the Effective Date, the Debtor and all Holders of Claims against an interest in the Debtor will be conclusively deemed to release all professionals retained by Order of the Bankruptcy Court in the Chapter 11 Case, and all of such professionals', except for Claims arising from fraud, willful misconduct or gross negligence to such persons.

C. **<u>Transfer Free of Claims, Liens, Charges and Other Interests.</u>**

Except as otherwise provided in the Plan, on the Effective Date, all the assets of the Debtor shall vest in Reorganized Debtor, free and clear of all claims, liens, charges, or other encumbrances or interests, other than as provided in the Confirmed Plan. On and after the Effective Date, except as otherwise provided in the Plan, Reorganized Debtor may operate his businesses and may use, acquire or dispose of property without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

D. **<u>Causes of Action.</u>**

On the Effective Date, any and all Causes of Action of the Debtor shall be preserved. Reorganized Debtor shall be deemed the appointed representative of the Debtor's Estate pursuant to Section 1123 of the Bankruptcy Code for the purpose of litigating, compromising and settling, and may pursue, litigate, compromise and settle any such rights, claims or causes of action, as it deems appropriate.

## VIII. CONFIRMATION AND CONSUMMATION PROCEDURES

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

A. **<u>Solicitation of Votes.</u>**

In accordance with Sections 1126 and 1129 of the Bankruptcy Code, the Claims and Interests in each of Classes 4, 5, 6 & 7 of the Plan are Impaired, and Holders of Claims or Interests in each of such Classes are entitled to vote to accept or reject the Plan. Pursuant to Section 1126 of the Bankruptcy Code, any Claimant holding a Claim in an Impaired class under the Plan may vote to accept or reject the Plan so long as such Claim has not been Disallowed and is not the subject of an objection pending as of the Voting Deadline. Nevertheless, if a Claim is the subject of an objection, the Holder thereof may vote if, prior to the Voting Deadline, such Holder obtains an Order of the Bankruptcy Court or the Bankruptcy Court approves a stipulation between the Debtor and such Holder fully or partially allowing such Claim, whether for all purposes or for voting purposes only.

Claims that are Administrative Claims, and Priority Tax Claims are unimpaired. The Holders of Allowed Administrative Claims and Allowed Priority Tax Claims are conclusively presumed to have accepted the Plan, and the solicitation of acceptances with respect to such Classes is not required under Section 1126(f) of the Bankruptcy Code.

Under Bankruptcy Code Section 1126(c), a Class of creditors is deemed to accept the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Claims of that Class have timely voted to accept the Plan.

A Ballot will not be counted if it is not received at the appropriate address by the Voting Deadline fixed by the Court. In addition, a vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

B. **<u>The Confirmation Hearing.</u>**

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a confirmation hearing. The confirmation hearing with respect to the Plan will be scheduled by the court before

Case 1:23-bk-10607 Doc 23 Filed 09/26/23 Entered 09/26/23 16:35:10 Desc Main
Document Page 16 of 63

the Honorable Beth A. Buchanan, United States Bankruptcy Judge, Courtroom 2, Eighth Floor, Atrium Two, 221 East Fourth Street, Cincinnati, Ohio 45202. The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourn date made at the confirmation hearing.

Any objection to confirmation of the Plan must be made in writing and must specify in detail the name and address of the objector, all grounds for the objection, and the amount and Class of the Claim held by the objector. Any such objection must be filed with the Bankruptcy Court and served so that it is received by the Bankruptcy Court and Debtor's counsel by a deadline that will be set by an Order of the Court. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

C. **Confirmation.**

At the confirmation hearing, the Bankruptcy Court will confirm the Plan only if all the requirements of Section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation of the Plan are that the Plan is; (1) accepted by all Impaired Classes of Claims and equity Interests or, if rejected by an Impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class; (2) feasible; and (3) in the "best interests" of creditors and interest Holders that are Impaired under the Plan.

1. Acceptance of the Plan. Section 1126(c) of the Bankruptcy Code defines acceptance of the Plan by a Class of Impaired Claims as acceptance by Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims in that Class. Section 1126(d) of the Bankruptcy Code defines acceptance of a Plan by a class of Impaired interests as acceptance by Holders of at least two-thirds (2/3) of the allowed interests in such class who vote. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan. Classes are Impaired under the Plan and are entitled to vote to accept or reject the Plan. The Debtor reserves the right to seek nonconsensual confirmation of the Plan with respect to any Class of Claims or Interests that is entitled to vote to accept or reject the Plan if such Class rejects the Plan.

2. Feasibility of the Plan. In connection with the confirmation of the Plan, the Bankruptcy Court will have to determine that the Plan is feasible pursuant to Section 1129(a)(11) of the Bankruptcy Code, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.

The Plan Proponent believes that the Plan is feasible within the meaning of Section 1129(a)(11). The Plan will be funded by Reorganized Debtor. At the Effective Date, the Debtor believes that Reorganized Debtor will have sufficient cash flow from operations plus

other collectable assets available to provide the Plan distributions required on and after the Effective Date.

The Projections set forth in Exhibit C & 28 are not prepared with a view toward compliance with the guidelines established by the American Institute of Certified Public Accountants or the Rules and Regulations of the Securities and Exchange Commission regarding Projections.

Many of the assumptions upon which these Projections are based are subject to uncertainties outside the control of the Debtor or Reorganized Debtor. The actual results of operations may vary from the projected results, and such results may be material and adverse. However, based upon the Debtors' past performance, the projections are reasonable.

3. Best Interests of Creditors. To confirm a Plan, the Bankruptcy Court must independently determine that such Plan is in the best interests of all Classes of creditors and interest holders Impaired by the Plan. The "best interests" test requires that the Plan provide to each non-accepting member of each Impaired Class of Claims and Interests a recovery of a value at least equal to the value of the distribution which each such Class would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

The Plan Proponent has prepared a liquidation analysis for the Plan which it asserts demonstrates that the Plan satisfies the "best interests" test. That liquidation analysis can be found at Exhibit D.

4. Unfair Discrimination and Fair and Equitable Tests. Section 1129(b) of the Bankruptcy Code provides that a Plan can be confirmed even if the Plan is not accepted by all Impaired classes. As long as at least one Impaired class of claims has accepted it, it does not "discriminate unfairly" and is "fair and equitable" as to each Impaired class that has not accepted the Plan. The Plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to other classes of equal rank. The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable" as it applies to Secured creditors, Unsecured creditors and equity holders at Section 1129(b)(2). The Plan Proponent believes that the Plan and the treatment of all Classes of Claims and equity Interests under the Plan satisfy the requirements of Section 1129(b) for nonconsensual confirmation of the Plan.

## IX. CERTAIN RISK FACTORS

### A. **Inherent Uncertainty of Financial Projections.**

The financial Projections for Reorganized Debtor that are included in this Disclosure Statement represent the best estimate of future events based on certain assumptions described in this Disclosure Statement. These future events may or may not occur, and the Projections may not be relied upon as a guaranty, representation or other assurance. Because of the numerous risks and inherent uncertainties that will affect the operations of Reorganized Debtor, the actual results of Reorganized Debtor may be different from those projected and such differences may be material and may adversely affect distributions under the Plan.

### B. **Uncertainty in Distributions to Unsecured Creditors.**

Based upon the Debtor's estimate of Unsecured Claims, the Plan Proponent believes that the Debtor will have sufficient Cash available to satisfy all Allowed general Unsecured Claims in full. To the extent that the amount of Allowed general Unsecured Claims is significantly higher than the amount estimated by the Debtor, or the Debtor's Cash available as of the Effective Date is significantly lower than projected by the Debtor, there can be no assurance that Reorganized Debtor will have sufficient Cash to satisfy all such Claims. However, based on past performances, the Debtor believes that he can make the payments.

### C. **Failure of Conditions to Confirmation and Effective Date.**

The Plan contains a number of conditions precedent to the confirmation of the Plan and the Effective Date of the Plan. If any one of those conditions is not fulfilled, the Debtor can refuse to consummate the Plan. While the Debtor has the right to waive any or all of the conditions set forth in the Plan, it is not required to do so.

## X. INCOME TAX CONSEQUENCES OF THE PLAN

### A. **Generally.**

The following discussion summarizes some of the significant federal income tax consequences of the transactions described herein and in the Plan. This discussion is for informational purposes only, does not represent an opinion of counsel, and is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), the Treasury Regulations promulgated thereunder, judicial authority interpreting the Tax Code, and current administrative rulings and pronouncements of the Internal Revenue Service ("IRS"), any of which may be altered with retroactive effect, thereby changing the federal income tax consequences discussed below. The following discussion does not address foreign, state, or local tax consequences of the Plan, nor does it address special classes of taxpayers (such as S corporations, mutual funds, insurance companies, financial institutions, small business investment companies, foreign

companies, nonresident alien individuals, regulated investment companies, broker-dealers, and tax-exempt organizations). This discussion is limited to taxpayers who own Claims against or Interests in the Debtor as capital assets (generally, property held for investment) within the meaning of Section 1221 of the Tax Code. Due to the lack of applicable legal precedent, the possibility of changes in law, and differences in the nature of the Claims and methods of accounting, the tax consequences described herein are subject to significant uncertainties. No ruling will be sought from the IRS prior to the Effective Date with respect to any of the tax aspects of the Plan. EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OR HER TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

B. **Federal Income Tax Consequences to Creditors.**

The federal income tax consequences of the consummation of the Plan to each creditor will depend, among other things, on the consideration to be received by the creditor, whether the creditor reports income using the accrual or cash method, and on whether the creditor has taken a bad debt deduction with respect to its Claim.

1. Creditors Holding Allowed Claims on the Distribution Date.

(a) Creditors Receiving Cash Only. Those creditors receiving payment under the Plan on the Distribution Date, generally will recognize gain or loss equal to the difference between the amount of Cash received and the adjusted tax basis of the Claim exchanged therefor. For those holders of Claims who acquired their Claims at a significant discount or who have taken a bad debt with respect to all or a portion of their Claims, it is possible that gain may be recognized as a result of this exchange.

2. Holders of Disputed Claims. Although not free from doubt, holders of Disputed Claims under the Plan will be subject to the same tax treatment as the holders of Allowed Claims when such Claims become Allowed Claims and receive distributions in discharge of such Allowed Claims.

3. Character and Timing of Gain or Loss. The character of any gain or loss as capital or ordinary gain or loss and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors. Each creditor recognizing gain or loss pursuant to the Plan should consult with his or her tax advisor as to the applicability of these factors to such creditors.

4. Receipt of Interest. Creditors will recognize ordinary income to the extent that they receive any Cash or property that is attributable to accrued but unpaid interest that has not already been included for federal income tax purposes in such creditor's taxable income. A

holder of a Claim which includes accrued interest who receives consideration which is less than the amount of the Allowed Claim must allocate such consideration between principal and interest for federal income tax purposes. In the event that the amount of Cash and other property attributable to interest on a creditor's Claim is less than the amount previously included as interest on the Claim in the creditor's federal taxable income, the unpaid interest may be deducted, generally as a loss or as an adjustment to a reserve for bad debts.

### C. Importance of Obtaining Professional Assistance.

AS INDICATED ABOVE, THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN MANY AREAS, UNCERTAIN. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OR HER TAX ADVISOR REGARDING SUCH TAX CONSEQUENCES.

## XI. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Plan Proponent believes that the Plan affords holders of Claims and holders of Interests the potential for the greatest realization from the Debtor's assets and, therefore, is in the best interests of such holders. If the Plan is not confirmed, however, the Debtor's alternatives include (i) liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code, and (ii) the preparation and presentation of an alternative plan of reorganization.

### A. Liquidation Under Chapter 7.

If no Chapter 11 Plan can be confirmed, the Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code. In a Chapter 7 Case, a trustee would be appointed to liquidate the assets of the Debtor. It is impossible to predict the outcome of a liquidation of the Debtor's assets with certainty. However, the Plan Proponent believes that liquidation under Chapter 7 would result in a smaller distributions being made to creditors and those provided for under the Plan because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals to assist such trustee, additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and in connection with the cessation of the Debtor's operations; and the failure to realize the greater going concern value of all the Debtor's assets. If the assets of the Debtor were sold at foreclosure or distress sale price, it is doubtful that creditors would receive 100% of other claims as proposed in the Plan.

## XII. CONCLUSION AND RECOMMENDATION

The Plan Proponent believes that confirmation and implementation of the Plan is preferable to any other alternative because it will provide the greatest recoveries to the Debtor's creditors. In addition, other alternatives would involve significant delay, uncertainty, and substantial additional administrative costs. **THE PLAN PROPONENT URGES HOLDERS OF IMPAIRED CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN TO VOTE TO ACCEPT THE PLAN.**

Dated: Cincinnati, Ohio
November 08, 2023

RAYMOND SCHNEIDER

By: */s/ Raymond Schneider*
Raymond Schneider

GOERING & GOERING LLC
Eric W. Goering
220 W. Third Street
Cincinnati, OH 45202
(513) 621-0912
(513) 621-6042 (fax)
eric@goering-law.com

Attorney for the Debtor

## XIII. DEFINITIONS

“Administrative Expense” shall mean, except as otherwise provided in Section 2.03 of the Plan, an administrative expenses of the kind specified in section 507(a)(2) of the Bankruptcy Code, including obligations for goods and services arising after the Filing Date.

“Allowed” shall mean, with respect to (a) any Claim, (i) a Claim, proof of which was filed on or before the date, if any, designated by the Bankruptcy Court as the last date for filing proofs of claim with respect to such Claim, or (ii) a Claim that has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objections to the allowance thereof has been filed within the applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules or an Order of the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such Claim in whole or in part; (b) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and actually allowed in accordance with section 502(h) of the Bankruptcy Code; (c) any Claim allowed under or pursuant to the terms of the Plan; or (d) any Claim to the extent that it has been allowed by a Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered “Allowed Claims” hereunder. Unless otherwise specified herein or by Order of the Bankruptcy Court, “Allowed Claims” shall not, for any purpose under the Plan, include interest, penalties or late charges on such Claims from and after the Filing Date. In addition, “Allowed Claim” shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

“Avoidance Action” shall mean any avoidance or recovery action under causes of action including, but are not limited to, any permissible action under the Bankruptcy Code (such as any applicable action authorized by Chapter 5 of the Bankruptcy Code) including but not limited to, sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

“Bankruptcy Case” shall mean the bankruptcy case commenced in the Bankruptcy Court by the Debtor under Case No. 23-10337.

“Bankruptcy Code” shall mean the Bankruptcy Reform Act of 1978, as amended, Title 11, United States Code.

“Bankruptcy Court” shall mean the court in the Southern District of Ohio conferred with authority over the Bankruptcy Case or the court so authorized with respect to any proceedings in connection therewith for the purpose of such proceedings.

“Bankruptcy Rules” shall mean the Bankruptcy Rules as in effect on the Filing Date, together with local rules adopted by the Bankruptcy Court, or such similar rules as may be in effect from time to time in the Bankruptcy Court.

“Cash” shall mean cash, cash equivalents, and other readily marketable securities or instruments.

“Causes of Action” shall mean the claims of the Debtor against Huntington and other parties as a result of the banks and the syndicates actions.

“Claim” shall mean any claim against the Debtor as defined in section 101(5) of the Bankruptcy Code which has not been disallowed by an Order of the Bankruptcy Court or for which an Order of disallowance of the Bankruptcy Court has been reversed on appeal by a Final Order of an appellate court.

“Claim Objection Date” shall mean the Effective Date.

“Class” shall mean any group of Holders of Claims as specified in ARTICLE 3 of the Plan.

“Confirmation Date” shall mean the date on which the Confirmation Order is entered on the docket, signed by the Bankruptcy Court.

“Confirmation Order” shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

“Debtor” and “Debtor in Possession” shall mean Raymond Joseph Schneider.

“Disallowed” shall mean any Claim which the Debtor or Reorganized Debtor has filed a timely objection and secured a Final Order denying the Claim.

“Discharge Order” shall mean and Order of the Bankruptcy Court discharging the Debtor pursuant to section 1141(d) of the Bankruptcy Code, to the fullest extent provided in and permitted by, section 1141(d) of the Bankruptcy Code, of any and all debts of, Claims against, and liens on the Debtor, his assets, or properties, which debts, Claims and liens arose at any time before the entry of the Confirmation Order, and any debt of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:

(a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code;

(b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or

(c) the Holder of a Claim based upon such debt has accepted the Plan.

“Disclosure Statement” shall mean the disclosure statement approved by the Bankruptcy Court for use in connection with the solicitation of votes on the Plan.

“Disputed Claim” shall mean any Claim that is subject to a Claim objection.

“Estate” shall mean the estate of the Debtor arising under sections 541 and 1115 of the Bankruptcy Code and administered in the Bankruptcy Case.

<u>"Effective Date"</u> shall mean 60 days from when the Confirmation Order becomes a final non appealable Order.

<u>"Filing Date"</u> shall mean March 2, 2023, the date of the filing by the Debtor of his voluntary petition commencing the Bankruptcy Case.

<u>"Final Order"</u> shall mean an order as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for filing a notice of appeal or petition for certiorari has expired and no notice of appeal or petition for certiorari has been timely filed.

<u>"Holder"</u> shall mean the owner of any Claim.

<u>"Impaired"</u> shall mean, with respect to any Claim or Class, the condition or effects described in section 1124 of the Bankruptcy Code.

<u>"Interest Rate"</u> shall mean the Federal Funds Rate as of one week preceding the Initial Payment in year one, the Second Payment in year 2, the Third Payment in year 3, the Fourth Payment in year 4, as provided by the Federal Reserve Bank plus 1%.

<u>"Order"</u> shall mean an order, judgment or decree of the Bankruptcy Court as entered on its docket.

<u>"Plan"</u> shall mean the Debtor's Plan of Reorganization filed by the Debtor, together with the exhibits thereto, either in their present form or as altered, and as such Plan is amended or modified from time to time.

<u>"Priority Tax Claim"</u> shall mean an Unsecured Claim of the kind entitled to priority in payment under Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

<u>"Reorganized Debtor"</u> shall mean the Debtor from and after the Effective Date.

<u>"Secured"</u> shall mean, with respect to any Claim, a Claim secured by a valid and unavoidable lien on or security interest in property of the Debtor, to the extent of the value of such lien or security interest in accordance with section 506(a) of the Bankruptcy Code, including, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the amount of such setoff.

<u>"Unsecured"</u> shall mean, with respect to any Claim, a Claim to the extent of the amount of such Claim that (a) is not secured by any valid and unavoidable lien on or security interest in property of the Debtor or (b) is greater than the value of any valid and unavoidable lien on or security interest in property of the Debtor which secures such Claim.

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| **IN RE:** | **Case No. 23-10337** |
| **RAYMOND JOSEPH SCHNEIDER** | **Chapter 11** |
| **Debtor and Debtor in Possession** | **Judge Beth A. Buchanan** |

---

**PLAN OF REORGANIZATION**
**OF**
**RAYMOND SCHNEIDER**

---

**RAYMOND JOSEPH SCHNEIDER'S PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**GOERING & GOERING, LLC**

Eric W. Goering
Robert A. Goering
220 West Third Street

Cincinnati, Ohio 45202-

Phone: (513) 621-0912

Email: eric@goering-law.com

bob@goering-law.com

Attorneys for Debtor and
Debtor in Possession

Dated:

**XIV. TABLE OF CONTENTS**

Page

ARTICLE 1 - DEFINITIONS; GENERAL PROVISIONS....1

1.01 Terms Defined in the Plan....1

1.02 Terms Defined in the Bankruptcy Code....1

1.03 Rules of Interpretation....1

1.04 Exhibits....1

1.05 Time Periods....1

ARTICLE 2 - PAYMENT OF ADMINISTRATIVE EXPENSES, TAX CLAIMS AND CERTAIN UNCLASSIFIED CLAIMS....2

2.01 Unclassified Claims....2

2.02 Bar Date for All Administrative Expense Claims....2

2.03 Administrative Expenses....2

2.04 Fees of Professionals....2

2.05 United States Trustee Fees....2

2.06 Priority Claims....2

ARTICLE 3 - CLASSIFICATION AND TREATMENT OF CLAIMS....2

3.01 Class 1: Claim of First Merchants Bank on Real Property....2

3.02 Class 2: Claim of Truist Bank on Real Property....3

3.03 Class 3: Claim of Mr. Cooper on Real Property....3

3.04 Class 4: Unsecured Claims which Debor is Liable as guarantor or obligor....3

3.05 Class 5: Huntington National Bank....3

3.06 Class 6: Other Unsecured Claims....4

3.07 Class 7: Interest of the Debtor....4

ARTICLE 4 - TREATMENT OF CLAIMS ........ 5

4.01 Subordination Rights ........ 5

4.02 Withholding Taxes ........ 5

4.03 Set Offs ........ 5

4.04 Disbursement of Funds ........ 5

4.05 Timing of Payments and Distributions ........ 6

4.06 Manner of Payments ........ 6

4.07 Time Bar to Cash Payments ........ 6

4.08 Impaired Classes to Vote ........ 6

4.09 Cram-Down ........ 6

ARTICLE 5 – IMPLEMENTATION OF THE PLAN ........ 6

5.01 Vesting of Assets ........ 6

5.02 Debtor in Possession Bank Account ........ 7

5.03 Operations of the Reorganized Debtor ........ 7

5.04 Causes of Action ........ 7

5.05 Approval of Settlements ........ 7

5.06 Continuation of Stays ........ 7

ARTICLE 6 – PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS ........ 7

6.01 Objections to and Estimation of Claims ........ 7

6.02 Subsequently Allowed Claims ........ 8

6.03 Disallowed Claims ........ 8

6.04 Payments and Distributions on Disputed Claims ........ 8

ARTICLE 7:CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN..8

Case 1:23-bk-11207 Doc 23 Filed 11/08/25 Entered 11/08/23 16:34:15 Desc Main
Document Page 29 of 163

7.01 Conditions to Confirmation ........ 8

7.02 Conditions to Effectiveness ........ 8

7.03 Effect of Failure of Conditions ........ 8

7.04 Notice of Effective Date ........ 9

ARTICLE 8 – EXECUTORY CONTRACTS/UNEXPIRED LEASES ........ 9

8.01 Assumed Executory Contracts and Unexpired Leases ........ 9

8.02 Approval of Rejection ........ 9

8.03 Post-Filing Date Contracts and Leases ........ 9

8.04 Bar Date ........ 9

ARTICLE 9 – ORGANIZATION OF REORGANIZED DEBTOR ........ 9

9.01 Actions of the Reorganized Debtor ........ 9

ARTICLE 10 – DISCHARGE OF ALL CLAIMS AND RELEASES ........ 9

10.01 Scope ........ 9

10.02 Discharge ........ 10

10.03 Release ........ 10

ARTICLE 11 – RETENTION OF JURISDICTION ........ 10

11.01 Retention of Jurisdiction ........ 10

ARTICLE 12 – INJUNCTIONS ........ 11

12.01 Injunction Against Asserting Claims ........ 11

12.02 Injunction Against Interference with Plan ........ 11

ARTICLE 13 – MISCELLANEOUS ........ 11

13.01 Headings ........ 11

13.02 Severability ........ 12

13.03 Governing Law ........ 12

13.04 Successors and Assigns ........ 12

13.05 Revocation of the Plan ........ 12

13.06 Avoidance Actions ........ 12

13.07 Effectuating Documents; Further Transactions; Timing ........ 12

13.08 Substantial Consummation........................................................................12

13.09 Exemption from Transfer Taxes ..................................................................12

13.10 Binding Effect ................................................................................................13

13.10 Modification of Payment Terms ..................................................................13

13.11 Notices ..........................................................................................................13

13.12 Exemption from Registration and Licensing ..............................................13

13.13 Post-Confirmation Fees and Reports ............................................................13

EXHIBIT A – DEFINITIONS..........................................................................................15

Case 1:25-bk-12607 Doc 2279 Filed 08/28/26 Entered 08/28/26 18:15:10 Desc Main Document Page 31 of 163

**XV. DEBTOR'S PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Raymond Schneider (the "Debtor"), by and through his undersigned counsel, proposes the following Plan under section 1121 of title 11 of the Bankruptcy Code:

**XVI. ARTICLE 1**
**DEFINITIONS; GENERAL PROVISIONS**

1.01 Terms Defined in the Plan. Capitalized terms used in the Plan shall have the respective meanings specified in Exhibit A to the Plan.

1.02 Terms Defined in the Bankruptcy Code. Capitalized terms used in the Plan that are not defined in Exhibit A to the Plan but that are defined in the Bankruptcy Code shall have the respective meanings specified in the Bankruptcy Code.

1.03 Rules of Interpretation. For purposes of the Plan: (i) whenever it appears appropriate from the context, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means such document substantially in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document or exhibit means such document or exhibit, as it may have been or may be amended, modified or supplemented; (iv) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; and (v) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, except to the extent inconsistent with the express provisions of this Section 1.03 of the Plan.

1.04 Exhibits. Exhibits to the Plan may be amended from time to time, and both original and amended Exhibits may be filed with the Bankruptcy Court from time to time, but in no event later than five (5) Business Days before the date set for the hearing on the confirmation of the Plan or such other date as may be authorized by the Bankruptcy Court. Current copies of Exhibits may be obtained by reference to the Bankruptcy Court's files or shall be provided to parties in interest upon written request to the Debtor.

1.05 Time Periods. Except as specifically provided in the Plan, Bankruptcy Rule

9006(a) applies to the computation of any period of time prescribed or allowed by the Plan, and Bankruptcy Rules 9006(b) and 9006(c) apply respectively to the enlargement or reduction of any period of time prescribed or allowed by the Plan.

## XVII. ARTICLE 2

### PAYMENT OF ADMINISTRATIVE EXPENSES, TAX CLAIM, UNITED STATES TRUSTEE FEES AND CERTAIN UNCLASSIFIED CLAIMS

2.01 Unclassified Claims. Under § 1123(a)(1), Administrative expense claims.

2.02 Bar Date for All Administrative Expense Claims. All requests for payment of an Administrative Expense Claim are subject to authorization and approval of the Bankruptcy Court. Holders of Administrative Expense Claims, except those identified in Section 2.03, that do not file a request with the Bankruptcy Court and serve on all parties entitled to notice thereof no later than 60 days after the Effective Date, are forever barred from asserting such Claims. Any objections to an Administrative Expense Claim shall be filed in accordance with the Bankruptcy Rules and the local rules of the Bankruptcy Court.

2.03 Administrative Expenses. Allowed Administrative Expense Claims shall be paid by the Reorganized Debtor (i) in Cash, on the Distribution Date or when allowed by Court Order, whichever is later; (ii) after the Distribution Date, in the ordinary course of its business and in accordance with the commercial credit terms extended by the creditor of such obligations; (iii) upon such terms as may be agreed between the Reorganized Debtor and the Holder of such Administrative expense; or (iv) otherwise as required by law.

2.04 Fees of Professionals. Professionals employed at the expense of the Estate of the Debtor and entities that may be entitled to an allowance of fees and expenses from the Estate of the Debtor incurred prior to the Confirmation Date pursuant to sections 503(b)(2) through 503(b)(6) of the Bankruptcy Code shall be paid by the Reorganized Debtor, in Cash, as soon as practicable after the order approving such allowance of compensation or reimbursement of expenses becomes a Final Order.

2.05 United States Trustee Fees. All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

2.06 Priority Claims. Except as otherwise provided in this ARTICLE 2 of the Plan, Allowed Unsecured Claims of the kinds specified in section 507(a) of the Bankruptcy Code shall be paid by the Reorganized Debtor, in Cash, on the Distribution Date or on such later date as they become due and payable in accordance with their respective terms.

## XVIII. ARTICLE 3

## XIX. CLASSIFICATION AND TREATMENT OF CLAIMS

**XX.**

3.01 **CLASS 1.** Secured Claim of First Merchants Bank on property at 2 Fort Lane Kennebunkport ME 04043.

> **TREATMENT:** This Claim will not be paid by the Debtor in the Plan. It will be paid according to the regular term of the loan by the co-owner and co-obligor. All legal, equitable and contractual provisions remain unaltered.

**This Class is not Impaired**.

3.02 **CLASS 2**. Secured Claim of Truist Bank on property at 2309 Chamonix Rd. Vail Colorado 81657.

> **TREATMENT:** This Claim will not be paid by the debtor in the Plan. This property is rented and will be managed by the Debtor's spouse and be paid in accordance with the regular terms of the loan by Debtor's spouse. All legal, equitable and contractual provisions remain unaltered.

**This Class is not Impaired.**

3.03 **CLASS 3**. Secured Claim of Mr. Cooper on the residence of the Debtor at 3535 Tiffany Ridge Lane, Cincinnati OH.

> **TREATMENT:** This Claim will be paid by the Debtor in accordance with the terms of the loan. All legal, equitable and contractual provisions remain unaltered.

**This Class is not Impaired.**

3.04 **CLASS 4**. Unsecured Claims without a judgment upon which the Debtor is liable as a guarantor or obligor for or with other entities who hold collateral for their loans.

> **TREATMENT:** These Claims will be paid in full, except for all post-petition attorney fees and charges ("Post Petition Expenses") incurred by the filing of this Chapter 11. The Post Petition Expenses will not be collected or paid until the earlier of; 1) the loan agreement expires or 2) the loan is paid in full. The personal guarantees and the loans on which the Debtor is a co-borrower shall be reaffirmed upon Confirmation of the Plan. The Debtor or the guaranteed entity shall maintain all monthly payments on these obligations in accordance with the loan documents. All legal, equitable and contractual provisions remain unaltered.

**This Class is Impaired.**

3.05 **CLASS 5. Huntington National Bank**

**TREATMENT**: The Allowed Claim of Huntington National Bank, which has a judgment against the Debtor based on a guaranteed loan, shall be paid as follows:

1. Lump sum of 10% of Allowed Claim within 60 days of the Effective Date (the "Initial Payment")

2. Interest only, at the Interest Rate, of the Allowed Claim minus the Initial Payment (the "Balance 1"), for 12 months

3. Lump sum of 12% of Balance 1, paid one year after the Initial Payment (the "Second Payment")

4. Interest only, at the Interest Rate, of the Balance1 minus the Second Payment (the "Balance 2"), for the next 12 months

5. Lump sum of 15% of the Balance 2, one year after the Second Payment (the "Third Payment")

6. Interest only, at the Interest Rate, of Balance 2 minus the Third Payment (the "Balance 3"), for the next 12 months.

7. Lump sum of 18% of Balance 3, one year after the Third Payment (the "Fourth Payment")

8. Interest only, at the Interest Rate, of Balance 3 minus the Fourth Payment (the "Balance 4"), for the next 12 months

9. Lump sum of 20% of Balance 4 one year after the Fourth Payment (the "Fifth Payment")

10. Interest only, at the Interest Rate, of Balance 4 minus the Fifth Payment (the "Balance 5"), for the next 12 months

11. Lump sum of Balance 5 one year after the Fifth Payment

Interest shall be paid quarterly.

The Allowed Claim of Huntington will be guaranteed by the Raymond Schneider Irrevocable 2019 Gift Trust and the Patricia B. Schneider Irrevocable 2020 Gift Trust.

The judgment held by the Class 5 creditor is currently under appeal. If the judgment is set aside, the Class 5 creditor is granted relief from the automatic stay pursuant to 11 USC 363 for the sole purpose of allowing the litigation against the Debtor to proceed to judgment in the Hamilton County Court of Common Pleas.

**This Class is Impaired**.

3.06 **CLASS 6**. Unsecured Claims that are not based on a guarantee or obligor and do not have a judgment.

**TREATMENT** These Claims will be paid over a 3 year period at no interest in equal quarterly payments beginning on the Effective Date of the Plan.

**This Class is Impaired.**

3.07 **CLASS 7.** The interests of the Debtor.

**TREATMENT** The Debtor will retain his interest in his property and entities but will take no distribution during the term of the Plan except to meet his budget (Exhibit A) and to make payments required under the Plan. The Budget amount may be adjusted annually on January 1 beginning in 2025 due to inflation.

**This Class is Impaired.**

## ARTICLE 4
## TREATMENT OF CLAIMS

4.01 Subordination Rights. The classification and treatment of all Claims under the Plan take into consideration all contractual, legal, and equitable subordination rights, whether arising under general principles of equitable subordination, sections 510(b) and 510(c) of the Bankruptcy Code or otherwise, that a Holder of a Claim may have with respect to any distribution made in accordance with the Plan. As of the Effective Date, all contractual, legal, or equitable subordination rights that a Holder of a Claim may have with respect to any distribution to be made in accordance with the Plan are discharged and terminated, and all actions related to the enforcement of such subordination rights are permanently enjoined. Distributions under the Plan are not subject to payment to any beneficiaries of such terminated subordination rights, or to levy, garnishment, attachment, or other legal process by any beneficiary of such terminated subordination rights.

4.02 Withholding Taxes. The Reorganized Debtor may deduct any applicable federal or state withholding taxes from any distributions made pursuant to the Plan.

4.03 Set Offs. The Reorganized Debtor may, but shall not be required to, set off or recoup against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever which the Reorganized Debtor may have against the Holder of such claim to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor, of any such Claim or counterclaim that they may have against such Holder.

4.04 Disbursement of Funds. Subject to Bankruptcy Rule 9010, all distributions under the Plan are to be made by the Reorganized Debtor and by the Distribution Agent, to the Holder of each Allowed Claim at the address of such Holder as listed on the schedules, unless Debtor has been notified in writing of a change of address, including without limitation, by the filing of a proof of claim or notice of transfer of Claim filed by such Holder that provides an address for such Holder different from the address reflected on the schedules.

At the close of business on the Distribution Record Date, the claims register will be closed, and there will be no further changes in the record Holders of any Claims. The Reorganized Debtor will have no obligation to recognize any transfer of any Claim occurring after the close of business on the Distribution Record Date and will instead by entitled to recognize and deal for all purposes under the Plan (except as to voting on the Plan) with only those Holders of record as of the close of business on the Distribution Record Date.

Except as to applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code, Reorganized Debtor has the exclusive right to make and file objections to Administrative Expense Claims and Claims after the Confirmation Date. All objections will be litigated to a Final Order, provided, however, that Reorganized Debtor retains the authority to compromise, settle, otherwise resolve, or withdraw any objections with the approval of the Bankruptcy Court.

Any payment to be made under the Plan may be accelerated at the option of the Reorganized Debtor.

4.05 Timing of Payments and Distributions. Any payments or distributions to be made under the Plan shall be deemed to be timely if made or mailed on the date specified in the Plan. Whenever any distribution to be made under the Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

4.06 Manner of Payments. Unless the person or entity receiving a payment agrees otherwise, any payment of Cash to be made by the Reorganized Debtor or the Distribution Agent shall be made, at the election of the Reorganized Debtor or the Distribution Agent as the case may be, by check drawn on a domestic bank or by wire transfer from a domestic bank; *provided, however*, that no Cash payments shall be made to a Holder of an Allowed Claim unless the amount payable thereto is equal to or greater than Five United States Dollars ($5.00).

4.07 Time Bar to Cash Payments. Checks issued by the Reorganized Debtor or the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly, as applicable, to either the Reorganized Debtor or Distribution Agent by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the later of (i) the first anniversary of the Effective Date or (ii) ninety (90) days after the date of issuance of such check, if such check represents a final distribution hereunder on account of such Claim. After such date, all Claims in respect of voided checks shall be discharged and forever barred and forwarded to the Reorganized Debtor who shall retain all monies related thereto.

4.08 Impaired Classes to Vote. Each Holder of a Claim in an Impaired Class, not otherwise deemed to have rejected the Plan, shall be entitled to vote to accept or reject the Plan.

Case 1:23-bk-10267 Doc 279-1 Filed 08/28/25 Entered 08/28/25 16:34:51 Desc
Document Page 38 of 163

A Holder of more than one Impaired Claim may vote separately with respect to each such Claim but a Claim in a particular Class may not be subdivided by the Holder for voting purposes. In the event of a controversy as to whether any Class of Claims is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

4.09 Cram-Down. If any Impaired Class fails to accept the Plan by the requisite statutory majority, Debtor reserves the right to confirm the Plan by a "cram-down" of such non-accepting Class pursuant to section 1129(b) of the Bankruptcy Code. In the event the Bankruptcy Court declines to impose a "cram-down" on a non-accepting Class unless certain modifications are made to the terms and conditions of such Class's treatment under the Plan, Debtor reserves the right, without re-solicitation to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules, to propose any such modifications and to confirm the Plan as amended by the required modification.

## XXI. ARTICLE 5
## IMPLEMENTATION OF THE PLAN

5.01 Vesting of Assets. On the Effective Date, the Retained Property and Exempt Property shall vest in the Reorganized Debtor free and clear of all liens, Claims interests and other encumbrances, except as provided in the Plan

5.02 Debtor in Possession Bank Account. On or immediately after the Effective Date, Reorganized Debtor may close his Debtor in Possession Bank Account.

5.03 Operations of the Reorganized Debtor. On and after the Effective Date, the Reorganized Debtor will implement the terms of the Plan. After the Effective Date, the Reorganized Debtor may buy, use, acquire and dispose of his assets, free of any restrictions contained in the Bankruptcy Code.

5.04 Causes of Action. The Reorganized Debtor shall be the only party authorized to object to Claims. As of the Effective Date, the Debtor and Reorganized Debtor shall be deemed to waive the right to prosecute, and on behalf of himself and the Debtor's Estate, any Avoidance Actions that belong to or could have been raised by or on behalf of the Debtor or the Debtor-in-Possession or the Estate. Notwithstanding the foregoing waiver of the Avoidance Actions, the Reorganized Debtor may assert any Claim or cause of action underlying such Avoidance Action as a defense or counterclaim to any Claim or action, including, but not limited to, any rights under section 502(d) of the Bankruptcy Code. Unless the Reorganized Debtor consents, or unless otherwise ordered by the Bankruptcy Court, no other party shall have the right or obligation to pursue any actions on behalf of the Debtor or his Estate. The Debtor and the Reorganized Debtor shall retain all rights to pursue the Claims against Huntington Bank.

5.05 Approval of Settlements. If the distributions set forth in the Plan and certain other provisions of the Plan incorporate the terms of a compromise and settlement with respect to,

among other things, various Claims asserted by or against the Debtor, the entry of the Confirmation Order shall constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (i) in the best interests of the Debtor and his Estate; (ii) fair, equitable and reasonable; (iii) made in good faith; (iv) approved by the Bankruptcy Court; and (v) *inter alia,* in full satisfaction, settlement, release, and discharge of any rights which might otherwise exist. Subject to obtaining the approval of the settlements reflected in this Plan by the Bankruptcy Court, on the Effective Date the Reorganized Debtor will take all actions necessary or reasonably required to affect the matters and terms set forth in such settlements.

5.06 Continuation of Stays. Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect pursuant to sections 105 or 362 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

## XXII. ARTICLE 6
## PROVISIONS FOR TREATMENT OF

## DISPUTED CLAIMS

6.01 Objections to and Estimation of Claims. The Reorganized Debtor may object to the allowance of Claims with respect to which he disputes liability in whole or in part. All objections shall be litigated to a Final Order; *provided, however,* that the Reorganized Debtor may compromise and settle, withdraw or resolve by any other method approved by the Bankruptcy Court, any objections to Claims. The Debtor may, at any time, request that the Bankruptcy Court estimate any Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Reorganized Debtor has previously objected to such Claim. Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall serve and file any objections to Claims as soon as practicable, but in no event later than the date that distributions would otherwise be made to Holders of such Claims under the Plan.

6.02 Subsequently Allowed Claims. Subsequent to the Distribution Date when a Claim shall become an Allowed Claim, the Distribution Agent shall, as soon as practicable, pay to the Holder of such Allowed Claim, Cash in an amount equal to, if any, that would have previously been made to such Holder by the Distribution Agent, if such Allowed Claim had been an Allowed Claim eligible for distribution on the applicable Distribution Date or Class 4 and Class 6 Distribution Date.

6.03 Disallowed Claims. Subsequent to the applicable Distribution Date or Class 4 and Class 6 Distribution Date, when a Claim or portion of a Claim shall become disallowed by a Final Order, the Debtor may pay an amount of Cash equal to the amount that would have been required to be distributed pursuant to Section 6.03 of the Plan had such disallowed Claim or portion of a Claim been an Allowed Claim and shall use same to make distribution of such funds to the remaining Holders with Allowed Claims in the Class wherein the disallowed Claim originated.

6.04 Payments and Distributions on Disputed Claims. No partial payments and no partial distributions shall be made with respect to a disputed Claim until the resolution of such disputes by settlement or Final Order. As soon as practicable after a disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim shall receive all payments and distributions to which such Holder is then entitled under the Plan.

## XXIII. ARTICLE 7
## CONDITIONS TO CONFIRMATION

## AND EFFECTIVENESS OF THE PLAN

7.01 Conditions to Confirmation. The Effective Date of the Plan shall be 60 days after the Confirmation Order of the Plan by the Bankruptcy Court becomes a Final Order and shall be subject to, and conditioned upon, the Confirmation Order being entered in form and substance acceptable to the Reorganized Debtor.

7.02 Conditions to Effectiveness. The effectiveness of the Plan shall be subject to, and conditioned upon (i) the Confirmation Order having become a Final Order; (ii) no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code having been made or, if made, remaining pending; and (iii) all other actions and documents necessary to implement the Plan shall have been effected or executed. The conditions set forth herein may be waived in the sole discretion of the Debtor.

7.03 Effect of Failure of Conditions. Notwithstanding entry of the Confirmation Order, if each of the conditions set forth in Section 7.02 of the Plan has not been satisfied, then upon motion by the Debtor or any party in interest made before the time that each of the conditions has been satisfied, the Order confirming the Plan may be vacated by the Bankruptcy Court; *provided, however,* that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions set forth in Section 7.02 of the Plan is satisfied before the Bankruptcy Court enters an Order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this Section 7.03 of the Plan, the Plan shall be void and of no effect.

7.04 Notice of Effective Date. The Reorganized Debtor shall provide notice of the Effective Date of the Plan in accordance with the Bankruptcy Rules and Orders of the Bankruptcy Court.

## XXIV. ARTICLE 8

## EXECUTORY CONTRACTS/ UNEXPIRED LEASES

8.01 Assumed Executory Contracts and Unexpired Leases. Other than the Assumed Personal Guarantee Claims to the extent they could be deemed executory contracts, there are no executory contracts or unexpired leases being assumed in the Plan.

8.02 Approval of Rejection. Entry of the Confirmation Order shall constitute approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of any executory contracts and unexpired leases rejected pursuant to Section 8.01 of the Plan. Notwithstanding anything contained herein to the contrary, the Debtor hereby retains the right to add or delete any executory contract or unexpired lease that is designated for rejection at any time prior to the Confirmation Date, upon notice to parties affected by such change.

8.03 Post-Filing Date Contracts and Leases. Executory contracts and unexpired leases entered into and other obligations incurred after the Filing Date by the Debtor shall, unless expressly rejected, be performed by the Reorganized Debtor in the ordinary course of his affairs.

8.04 Bar Date. All proofs of claim with respect to Claims arising from the rejection of any contract or unexpired lease shall be filed with the Bankruptcy Court and served on the Reorganized Debtor no later than thirty (30) days after the Confirmation Date. Any Claim not filed within such date shall be forever barred from assertion against the Debtor and his Estate and Reorganized Debtor.

## XXV. ARTICLE 9

## ORGANIZATION OF REORGANIZED DEBTOR

9.01 Actions of the Reorganized Debtor. On the Effective Date, the control over the finances of the Debtor shall become the sole property and responsibility of the Reorganized Debtor.

## XXVI. ARTICLE 10

## DISCHARGE OF ALL CLAIMS AND RELEASES

10.01 Scope. Pursuant to section 1141(d)(5)(A) of the Bankruptcy Code and except as otherwise provided in this Plan, confirmation of this Plan will not discharge the Debtor until all payments are made under this Plan. The Reorganized Debtor may immediately apply for a discharge upon the final payment in accordance with the terms of this Plan.

10.02 Discharge. Upon the granting of a discharge under section 1141(d) of the Bankruptcy Code, the Discharge Order shall operate as a discharge pursuant to, and to the fullest

extent provided in and permitted by, section 1141(d) of the Bankruptcy Code, of any and all debts of, Claims against, and liens on the Debtor, his assets, or properties, which debts, Claims and liens arose at any time before the entry of the Confirmation Order, and any debt of a kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:

(a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code;

(b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; or

(c) the Holder of a Claim based upon such debt has accepted the Plan.

10.03 Release. Confirmation of this Plan (subject to the occurrence of the Effective Date) shall act as a discharge and release of all Claims and causes of action (including without limitation, causes of action of a trustee, creditor and debtor in possession under the Bankruptcy Code), of the Debtor and his Estate, whether known or unknown, and excluding any Claims or causes of action arising out of gross negligence, bad faith or willful misconduct, against the Debtor’s financial advisors, investment bankers, representatives, advisers affiliates, successors, assigns and attornies.

## XXVII. ARTICLE 11
## RETENTION OF JURISDICTION

11.01 Retention of Jurisdiction. The Bankruptcy Court shall retain exclusive jurisdiction of these proceedings to the extent permitted by applicable law, including but not limited to:

(a) to determine any and all applications, adversary proceedings and contested matters pending as of the Effective Date;

(b) to determine any and all objections to the allowance of Claims;

(c) to determine any and all applications for allowance of compensation and reimbursement of expenses;

(d) to determine any and all controversies and disputes arising under or in connection with the Plan and such other matters as may be provided for in the Confirmation Order;

(e) to effectuate payments under and performance of the provisions of the Plan;

(f) to enter such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(g) to determine the Reorganized Debtor's motion, if any, to modify the Plan in accordance with section 1127 of the Bankruptcy Code;

(h) to issue such Orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(i) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and any related documents;

(k) to hear and determine any issue for which the Plan or any related document requires a Final Order of the Bankruptcy Court;

(l) to enter a final decree closing the Bankruptcy Case; and

(m) to determine any other matter not inconsistent with Chapter 11 of the Bankruptcy Code.

**XXVIII. ARTICL**
**E 12**
**INJUNCTIONS**

12.01 Injunction Against Asserting Claims. Upon the granting of a discharge under section 1141(d) of the Bankruptcy Code and in accordance with section 524 of the Bankruptcy Code, the discharge provided by this Section and section 1141 of the Bankruptcy Code and the Discharge Order, shall provide that, among other things, aany person or entity which have held, hold or may hold Claims against the Debtor or Reorganized Debtor that are discharged pursuant to Section 10.02 of the Plan, are, with respect to those Claims, permanently stayed, restrained and enjoined on and after the date of the Discharge Order from taking any actions prohibited by sections 541 and 1141 of the Bankruptcy Code on account of those discharged Claims, other than

actions brought to enforce any rights or obligations under this Plan.

12.02 Injunction Against Interference with Plan. Upon the entry of the Confirmation Order, all Holders of Claims and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation and or consummation of the Plan.

## XXIX. ARTICLE 13

## XXX. MISCELLANEOUS

13.01 Headings. The headings used in the Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

13.02 Severability. Should any provision in the Plan be determined to be unenforceable following the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

13.03 Governing Law. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Ohio.

13.04 Successors and Assigns. The rights, duties and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors, heirs and assigns of such person.

13.05 Revocation of the Plan. Debtor reserves the right to revoke and withdraw the Plan prior to the Confirmation Date. If Debtor revokes or withdraws the Plan, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

13.06 Avoidance Actions. No Avoidance Actions will be pursued.

13.07 Effectuating Documents; Further Transactions; Timing. The Reorganized Debtor or authorized representatives of the Reorganized Debtor shall be deemed to be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or

documents, and to take such action(s) as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously.

13.08 Substantial Consummation. The Plan shall be deemed to be substantially consummated, as provided in sections 1101 and 1127(b) on the Bankruptcy Code, on the later of (i) the Effective Date; or (ii) the date on which the Debtor makes final distribution under the Plan.

13.09 Exemption from Transfer Taxes. In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, distribution, transfer, or exchange Estate property; (b) the creation, modification, consolidation, or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with, this Plan or the Confirmation Order; (c) the making, assignment, modification, or recording of any lease or sublease; or (d) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

13.10 Binding Effect. The Plan shall be binding upon, and shall inure to the benefit of the Debtor, the Holders of all Claims and their respective successors and assigns.

13.11 Modification of Payment Terms. The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the Holder of such Claim at any time after the Effective Date upon the prior written consent of the Holder whose Allowed Claim treatment is being adversely affected.

13.12 Notices. Any notice required or permitted to be provided under the Plan shall be in writing and served by: (a) certified mail, return receipt requested, postage prepaid; (b) hand delivery; or (c) reputable overnight carrier service, freight prepaid, to be addressed as follows:

For Debtor, to: Raymond Schneider

3535 Tiffany Ridge Lane

Cincinnati, Ohio 45230

with copies to:

Eric W. Goering, #0061146

Robert A. Goering #0003884
220 West Third Street
Cincinnati, Ohio 45202
Phone: (513) 621-0912
Email: eric@goering-law.com
bob@goering-law.com
Counsel for Debtor

13.13 Exemption from Registration and Licensing. Section 1145 of the Bankruptcy Code creates certain exemptions from the registration and licensing requirements of federal and state securities laws with respect to the issuance and distribution of securities by a debtor under a Plan or reorganization to Holders of Claims or equity interests wholly or principally in exchange for those Claims or equity interests. The Plan does not contemplate the issuance of securities to Holders of Allowed Claims. However, to the extent that any distribution contemplated herein is deemed the issuance of a "security," such transfers are exempt pursuant to section 1145 of the Bankruptcy Code.

13.14 Post-Confirmation Fees And Reports. Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall be responsible for the timely payment of all fees incurred pursuant to section 1930 of Title 28 to the United States Code. Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor also shall file with the court, and serve on the U.S. Trustee, a quarterly financial report for each quarter (or portion thereof) that the Bankruptcy Case remain open, in a format prescribed by the U.S. Trustee in accordance with the guidelines of the Office of the U.S. Trustee.

Cincinnati, Ohio
Novemver ___, 2023

/s/___________________________________
Raymond Schneider

*/s/*______________________________
Eric W. Goering, #0061146
Robert A. Goering #0003884 220 West Third Street
Cincinnati, Ohio 45202

Phone: (513) 621-0912

Email: eric@goering-law.com

bob@goering-law.com

Attorneys for Debtor and Debtor in Possession

**XXXI. <u>EXHIBIT A</u>**

**XXXII. <u>DEFINITIONS</u>**

**XXXIII.**

<u>"Administrative Expense</u> " shall mean, except as otherwise provided in Section 2.03 of the

Plan, an administrative expenses of the kind specified in section 507(a)(2) of the Bankruptcy Code, including obligations for goods and services arising after the Filing Date.

<u>"Allowed"</u> shall mean, with respect to (a) any Claim, (i) a Claim, proof of which was filed on or before the date, if any, designated by the Bankruptcy Court as the last date for filing proofs of claim with respect to such Claim, or (ii) a Claim that has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objections to the allowance thereof has been filed within the applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules or an Order of the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such Claim in whole or in part; (b) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and actually allowed in accordance with section 502(h) of the Bankruptcy Code; (c) any Claim Allowed under or pursuant to the terms of the Plan; or (d) any Claim to the extent that it has been Allowed by a Final Order; *provided, however*, that Claims Allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder. Unless otherwise specified herein or by Order of the Bankruptcy Court, "Allowed Claims" shall not, for any purpose under the Plan, include interest, penalties or late charges on such Claims from and after the Filing Date. In addition, "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

<u>"Avoidance Action"</u> shall mean any avoidance or recovery action under causes of action including, but are not limited to, any permissible action under the Bankruptcy Code (such as any applicable action authorized by Chapter 5 of the Bankruptcy Code) including but not limited to, sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

<u>"Bankruptcy Case"</u> shall mean the bankruptcy case commenced in the Bankruptcy Court by the Debtor under Case No. 23-10337.

“Bankruptcy Code” shall mean the Bankruptcy Reform Act of 1978, as amended, Title 11, United States Code.

“Bankruptcy Court” shall mean the court in the Southern District of Ohio conferred with authority over the Bankruptcy Case or the court so authorized with respect to any proceedings in connection therewith for the purpose of such proceedings.

“Bankruptcy Rules” shall mean the Bankruptcy Rules as in effect on the Filing Date, together with local rules adopted by the Bankruptcy Court, or such similar rules as may be in effect from time to time in the Bankruptcy Court.

“Business Day” shall mean a day other than a Saturday, a Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

“Cash” shall mean cash, cash equivalents, and other readily marketable securities or instruments.

“Claim” shall mean any claim against the Debtor as defined in section 101(5) of the Bankruptcy Code which has not been disallowed by an Order of the Bankruptcy Court or for which an Order of disallowance of the Bankruptcy Court has been reversed on appeal by a Final Order of an appellate court.

“Class” shall mean any group of Holders of Claims as specified in ARTICLE 3 of the Plan.

“Confirmation Date” shall mean the date on which the Confirmation Order is entered on the docket, signed by the Bankruptcy Court.

“Confirmation Order” shall mean the order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

“Debtor” and “Debtor in Possession” shall mean Raymond Joseph Schneider.

“Debtor In Possession Bank Account” shall mean the Debtor’s Debtor in Possession Bank Account at Axios Bank.

“Discharge Order” shall mean and Order of the Bankruptcy Court discharging the Debtor pursuant to section 1141(d) of the Bankruptcy Code, to the fullest extent provided in and permitted by, section 1141(d) of the Bankruptcy Code, of any and all debts of, Claims against, and liens on the Debtor, his assets, or properties, which debts, Claims and liens arose at any time before the entry of the Confirmation Order, and any debt of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:

(a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code;

(b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; or

(c) the Holder of a Claim based upon such debt has accepted the Plan.

“Distribution Agent” shall mean the Debtor who shall be authorized to make all the distributions to Holder of Allowed Claims in Class 3 through Class 7 under this Plan.

“Distribution Record Date” shall mean the fifth Business Day after the Effective Date.

“Estate” shall mean the estate of the Debtor arising under sections 541 and 1115 of the Bankruptcy Code and administered in the Bankruptcy Case.

“Effective Date” shall mean 60 days from when the Confirmation Order becomes a final non appealable Order.

`

"Exempt Property" shall mean all property permitted to be exempted from property of the Estate under section 522 of the Bankruptcy Code and/or applicable state law, including but not limited to the property listed on Debtor's Schedule C, as has been amended from time to time.

"Filing Date" shall mean March 2, 2023, the date of the filing by the Debtor of his voluntary petition commencing the Bankruptcy Case.

"Final Order" shall mean an Order as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for filing a notice of appeal or *petition for certiorari* has expired and no notice of appeal or *petition for certiorari* has been timely filed.

"Holder" shall mean the owner of any Claim.

"Impaired" shall mean, with respect to any Claim or Class, the condition or effects described in section 1124 of the Bankruptcy Code.

"Interest Rate" shall mean the Federal Funds Rate as of one week preceding the Initial Payment in year one, the Second Payment in year 2, the Third Payment in year 3, the Fourth Payment in year 4 as provided by the Federal Reserve Bank plus 1%.

"Order" shall mean and order, judgment or decree of the Bankruptcy Court as entered on its docket.

"Plan" shall mean the Debtor's Plan of Reorganization filed by the Debtor on July 25, 2014, together with the exhibits thereto, either in their present form or as altered, and as such Plan is amended or modified from time to time.

"Reorganized Debtor" shall mean the Debtor from and after the Effective Date.

"Retained Property" shall mean (i) all property of the Estate (ii) the Exempt Property which was not subject to administration but was retained by Debtor/Reorganized Debtor and (iii) all funds held by the Debtor/Reorganized Debtor, if any, after payment of all distributions required under the Plan.

<u>"Secured"</u> shall mean, with respect to any Claim, a Claim secured by a valid and unavoidable lien on or security interest in property of the Debtor, to the extent of the value of such lien or security interest in accordance with section 506(a) of the Bankruptcy Code, including, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the amount of such setoff.

<u>"Unsecured"</u> shall mean, with respect to any Claim, a Claim to the extent of the amount of such Claim that (a) is not Secured by any valid and unavoidable lien on or security interest in property of the Debtor or (b) is greater than the value of any valid and unavoidable lien on or security interest in property of the Debtor which secures such Claim.

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| **IN RE:** | **Case No. 23-10337** |
| **RAYMOND JOSEPH SCHNEIDER** | **Chapter 11** |
| **Debtor and Debtor in Possession** | **Judge Beth A. Buchanan** |

**DRAFT ORDER CONDITIONALLY APPROVING DISCLOSURE STATEMENT, SETTING DEADLINETO FILEFILE PLAN OF REORGANIZATION, SETTING HEARING ON CONFIMATION OF PLAN AND FIXING RELATED DEADLINES**

On March 2, 2023, Raymond Joseph Schneider ("Debtor") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. In connection with the bankruptcy filing, the Debtor has filed a disclosure statement, is preparing to file a Chapter 11 Plan, and creditor The Huntington Bank has filed a disclosure statement and plan.

Accordingly, this Court orders and provides notice, of the following:

1. Deadline to File Plan. Debtor's Chapter 11 Plan (the "Plan") shall be filed no later than ?????.
2. Date, Time and Location of the Hearing on approval of Disclosure Statement. The hearing regarding approval of the Disclosure Statement shall be held on ?????? before the Honorable Beth A. Buchanan, United States Bankruptcy Judge at the United States Bankruptcy Court, Atrium Two, Suite 814, Courtroom 1, 221 East Fourth Street, Cincinnati, Ohio 45202.
3. Service of Plan, Ballot and This Order. **Within three (3) days of the order approving the Disclosure Statement**, the Debtor and Huntington shall serve a copy of this Order, the Disclosure Statement, the Plan, and a ballot conforming substantially to Official Form No. 314 on all creditors, equity security holders and other parties interest, including the United States Trustee, in accordance with Federal Rule of Bankruptcy Procedure 2002. Debtor and

Huntington shall file a certificate of service showing compliance with this Order within three (3) days of service.

4. Deadline to Be Security Holder of Record. ???? is fixed as the date on which an equity security holder or creditor whose claim is based on a security must be the holder of record of the security in order to be eligible to accept or reject the Plan.

5. Deadline for Secured Creditor Election Pursuant to 11 U.S.C. § 1111(b). Creditors shall have up to and including ???? to make an election pursuant to 11 U.S.C. § 1111(b).

6. Deadline to Submit Ballots. ??????? is the last day for creditors and equity security holders entitled to vote on the Plan to submit ballots indicating written acceptance or rejection of the Plan (the "Voting Deadline"). Completed ballots for Debtor's Plan must be returned to the Debtor, care of Goering & Goering, LLC, Attn: Eric W Goering, Esq., 220 West Third Street, Cincinnati, Ohio 45202, such as to be received on or before the Voting Deadline. Completed ballots for Huntington's Plan must be returned to the Huntington, care of Christopher Schuller , such as to be received on or before the Voting Deadline. Ballots shall not be filed with the Court.
7. Deadline to File Written Objections to Confirmation. Parties shall have up to and including ?????? to file and serve, pursuant to Federal Rule of Bankruptcy Procedure 3020(b)(1), written objections to confirmation of the plan. Any written objections to confirmation must be filed with this Court and served on Debtor's counsel, the United States Trustee. Any objections to the Plan will be considered at the hearing on confirmation of the Plan

8. Certification of Ballots. On or before ??????, the Debtor and Huntington shall file with this Court a certification of the amount and number of allowed claims of each class accepting or rejecting the Plan and the amount of allowed interests of each class accepting or rejecting the Plan.

9. Date, Time and Location of the Hearing on Confirmation of the Plan. A hearing on confirmation of the Plan will be held on ?????? before the Honorable Beth A. Buchanan,

United States Bankruptcy Judge at the United States Bankruptcy Court, Atrium Two, Suite 814, Courtroom 1, 221 East Fourth Street, Cincinnati, Ohio 45202.

10. In-Person or Telephonic Attendance at the Hearing on Confirmation of the Plan. All persons attending the hearing in-person shall abide by CDC Guidelines with respect to courthouse entry and face coverings and shall further comply with any additional precautions required by Judge Buchanan (e.g., bring your own face covering in case it is needed). As an alternative to attendance in-person, parties may choose to attend the hearing telephonically. However, any party attending telephonically is not permitted to present exhibits or examine or cross-examine witnesses. Please refer to the instructions for telephonic attendance of the hearing, including a call in number and access code (free of cost), in Judge Buchanan's Instructions for Attendance of Telephonic Hearings located on the Bankruptcy Court's website at: www.ohsb.uscourts.gov under the Judges' Information / Judge Beth A. Buchanan / Policies and Procedures tab. If you cannot access the instructions located on the website, please contact Judge Buchanan's Courtroom Deputy, Heather Gilliam, by telephone at (513) 684-2468 or by email at Heather_Gilliam@ohsb.uscourts.gov.

11. Presentation of Evidence and Objections to Evidence at Hearing on Confirmation of the Plan. In accordance with Local Bankruptcy Rule 3020-1, not later than ?????:

a. Witness Lists. Each party shall file a witness list with the Court containing the identity, address and a brief synopsis of the testimony expected to be elicited from each witness whom a party may call or have available for testimony at the hearing on confirmation of the Plan, including separately designated expert witnesses. See LBR Form 7016-1 Attachment A—Witness List. Witnesses not timely identified may be precluded from testifying at the hearing.

b. Exhibit Lists and Exhibits. Each party shall file an exhibit list with the Court together with copies of all exhibits. See LBR Form 7016-1 Attachment B—Exhibit List. Prior to filing, each party shall PRE-MARK all exhibits as follows:

| | |
|---|---|
| Debtor: | Numbers (e.g., Debtor Exhibit 1) |
| Objecting Party: | Letters (e.g., [Name of Party] Exhibit A) |

Upon reasonable request by a party in interest, the filing party shall provide copies of the exhibits in a format agreed upon by the parties. Exhibits not timely filed and exchanged may not be admitted at the hearing.

c. Objection to Admission of Exhibit. Unless a written objection, identifying the specific exhibit to which an objection is made, is filed and served at least two business days before the hearing, all listed exhibits, for which there is a request for admission at the time of the hearing, will be admitted into evidence without further identification or authentication (subject to any other evidentiary objection).

**SO ORDERED**.

Distribution list: Default List

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| **IN RE:** | **Case No. 23-10337** |
| **RAYMOND JOSEPH SCHNEIDER** | **Chapter 11** |
| **Debtor and Debtor in Possession** | **Judge Beth A. Buchanan** |

---

**FINANCIAL PROJECTIONS AND ASSUMPTIONS**

---

The Debtor projects annual income from the operation of his business entities of approximately $ 1,807,100.00. (Exhibit 27) In addition to his income, the Debtor has been working diligently to secure the sale of certain business assets. The follow are current sales that are either under purchase contracts or letters of intent:

1. **Assets of Lebanon RD, LLC**

   The company has a contract for the sale of the assets for $ 2,500,000.

2. **Assets of N. KY Assisted Living LLC**

   The company has a contract for the sale of the assets for $ 6,100,000.

**EXHIBIT D**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| **IN RE:** | **Case No. 23-10337** |
| **RAYMOND JOSEPH SCHNEIDER** | **Chapter 11** |
| **Debtor and Debtor in Possession** | **Judge Beth A. Buchanan** |

---

**LIQUIDATION ANALYSIS**

---

As discussed in Section IX of the Disclosure Statement, to confirm the Plan the Court must determine that the Plan is in the best interests of each holder of a Claim or Interest who is a member of any Impaired Class which has not voted to accept the Plan. To make that finding the Court must determine that the Plan provides to each dissenting member of such Impaired Class a recovery that has a value as of the Effective Date at least equal to the value of the distribution that such member would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. While any liquidation analysis is, by its nature, speculative, the Debtor has presented a general summary of the expected results of a Chapter 7 liquidation below:

## RAYMOND SCHNEIDER
### Asset Analysis

| | | | | |
|---|---|---|---|---|
| 3515 Tiffany Ridge Lane<br>Cincinnati, Ohio 45241 | | Value | $ 710,000 | |
| 1st Mtg.– Mr. Cooper | $ 320,000 | | | |
| Costs | $ 70,000 | | | |
| | | | $ 390,000 | |
| | Equity | | $ 320,000 | |
| | Exemption | | $ 161,375 | |
| | | | **Equity** | **$ 158,625** |

| | | | | |
|---|---|---|---|---|
| 2409 Chamonix Road<br>Vail CO 81657 | | Value | $ 1,500,000 | |
| 1st Mtg- Trusist | $ 365,000 | | | |
| Costs | $ 150,000 | | | |
| | | | $ 515,000 | |
| | | | **Equity** | **$ 985,000** |
| 2 Fort Lane<br>Kennebunk ME 04043 | | Value | $ 2,700,000 | |
| 1st Mtg- First Merchant | $ 2,200,000 | | | |
| Costs | $ 200,000 | | | |
| | | | $ 2,400,000 | |
| | | | Net | $ 300,000 |
| | | | ½ Interest | $ 150,000 |
| | | | **Equity** | **$ 150,000** |
| 2021 VW Kitcar | | Value | $ 35,000 | |
| | | | **Equity** | **$ 35,000** |
| Other Vehicles | | Value | $ 23,000 | |
| | | | **Equity** | **$ 23,000** |
| Merrill Roth IRA | | Value | $ 483,106 | |
| | Exemption | | 100% | |
| | | | **Equity** | **$ 0** |
| Merrill Brokerage | | Value | $ 137,034 | |
| Merrill Brokerage | | Value | $ 1,502,599 | |
| Merrill Brokerage | | Value | $ 21,390,170 | |
| Merrill Brokerage | | Value | $ 2, 712,004 | |
| | Total | | $ 25,741,807 | |

| | | | |
|---|---|---|---|
| | Margin | <u>$ 17,084,286</u> | |
| | Net | $ 8,657,521 | |
| | | **Equity** | **$ 8,657,521** |
| 54 Realty, LTD | | **Equity** | **$ 0** |
| 72 Ventures, LTD | | **Equity** | **$ 0** |
| 82 Lafayette Road LLC | | **Equity** | **$ 0** |
| 5150 E Galbraith Rd LLC | | **Equity** | **$ 0** |
| 9617 Kenwood Road Development, LLC | | **Equity** | **$ 1,100,000** |
| Beechwood Terrace Care Center | | **Equity** | **$ 0** |
| Boston Rd LLC | | **Equity** | **$ 12,339,319** |
| Boston Self Storage LLC | | **Equity** | **$ 0** |
| Circle Development of Cincinnati, LLC | | **Equity** | **$ 0** |
| Circle Health Care Operating Co. I, LLC | | **Equity** | **$ 0** |
| Circle Health Care Operating Co. II, LLC | | **Equity** | **$ 0** |
| Circle Health Care Operating Co. III, LLC | | **Equity** | **$ 0** |
| Circle Health Care Operating Co. IV, LLC | | **Equity** | **$ 0** |
| Circle Health Care Operating Co. V, LLC | | **Equity** | **$ 0** |
| Circle Health Care Operating Co. VI, LLC | | **Equity** | **$ 0** |
| Corporate Park Investors, Ltd. | | **Equity** | **$ 0** |
| Dana Ventures LTD | | **Equity** | **$ 0** |
| Delhi Plaza Associates, Ltd. | | **Equity** | **$ 0** |
| East Galbraith Health Care Center, Inc. | | **Equity** | **$ 0** |
| EGHC Holdings | | **Equity** | **$ 0** |

| | | |
|---|---|---|
| Euclid Health Care, INC | **Equity** | **$ 0** |
| Executive Park Investors, Ltd. | **Equity** | **$ 0** |
| Framingham RD LLC | **Equity** | **$ 0** |
| Framingham Red Dog | **Equity** | **$ 0** |
| Grasshopper Investments, LLC<br>(0.5% owner)<br>Owns Circle Storage Operating Co. I | **Equity** | **$ 11,834** |
| Grasshopper Investments II, LLC | **Equity** | **$ 1,185,000** |
| Hamilton II, LLC | **Equity** | **$ 11,400** |
| Harmony Health Care, Inc. | **Equity** | **$ 0** |
| Horizon Health Management LLC | **Equity** | **$ 0** |
| Horizon Health Management II, LLC | **Equity** | **$ 0** |
| HRM Realty Holding Co LTD | **Equity** | **$ 46,200** |
| Hyde Park Circle LLC | **Equity** | **$ 4,475,000** |
| JDE Holdings LLC | **Equity** | **$ 0** |
| Keller Road Realty Co., LLC | **Equity** | **$ 0** |
| Kenwood Terrace Health Care | **Equity** | **$ 0** |
| Lebanon RD | **Equity** | **$ 2,300,000** |
| Loveland Red Dog Pet Resort & Spa LLC | **Equity** | **$ 0** |
| Madison Warehouse, LLC<br>Owns 5027 and 5055 Madison | **Equity** | **$ 0** |
| Mason RD, LLC | **Equity** | **$ 0** |
| Monarch RD LLC | **Equity** | **$ 0** |
| Montclair Investors Ltd | **Equity** | **$ 15,000** |
| New England Self Storage LLC | **Equity** | **$ 0** |

| | | |
|---|---|---|
| Northern Kentucky Assisted Living LLC | **Equity** | **$ 2,132,392** |
| Northern Kentucky Retirement Community LLC | **Equity** | **$ 0** |
| Northwest Self Storage LLC | **Equity** | **$ 0** |
| North Shore RD LLC | **Equity** | **$ 150,000** |
| Pleasant Ridge Realty, LLC | **Equity** | **$ 0** |
| R & T Development, Inc. | **Equity** | **$ 0** |
| RD Realty I, LLC | **Equity** | **$ 0** |
| Red Corner LLC | **Equity** | **$ 6,800,000** |
| Red Cup Espresso | **Equity** | **$ 0** |
| Red Dog Management Company, LLC | **Equity** | **$ 0** |
| Red Dog Operations Holding Company LLC<br>Owns 8 LLC's | **Equity** | **$ 372** |
| RH Real estate Investments LLC | **Equity** | **$ 0** |
| Schneider-Grasshopper INC | **Equity** | **$ 11,834** |
| Seminole Avenue Realty, LLC | **Equity** | **$ 0** |
| Shaya B, LLC | **Equity** | **$ 0** |
| Skipton Kennel and Pet Center | **Equity** | **$ 0** |
| Soft Pouch Equipment LTD | **Equity** | **$ 0** |
| Southbrook Health Care Center, Inc. | **Equity** | **$ 0** |
| Steigler Road Realty, LLC | **Equity** | **$ 0** |
| Sterling Glen Health Center LTD | **Equity** | **$ 0** |
| Sterling Manor LTD | **Equity** | **$ 0** |
| Techwoods Circle Rd. | **Equity** | **$ 390,000** |

| | | |
|---|---|---|
| The Cambridge Health Care Center LTD | **Equity** | **$ 0** |
| The Gatherings of Blue Ash | **Equity** | **$ 124,000** |
| The Red Kitchen, LLC | **Equity** | **$ 0** |
| To Life, Ltd | **Equity** | **$ 2,820,700** |
| Retainers | **Equity** | **$ 108,659** |
| Bank balances | **Equity** | **$ 110,000** |

**Total Equity $ 44,140,856**

**RAY SCHNEIDER'S CORPORATE HOLDINGS EXHIBIT 1**

| Operating Company | Value | MORTGAGE | Cost of Sale | Net Value of Interest | Exhibit # |
|---|---|---|---|---|---|
| 5150 East Galbraith Road LLC (1/3rd Inter | $ 2,500,000.00 | $ 2,500,000.00 | $ - | $ - | 2 |
| 9617 Kenwood Road Development LLC | $ 4,430,000.00 | $ 2,951,400.00 | $ 378,600.00 | $ 1,100,000.00 | 3 |
| Boston RD LLC | $ 20,000,000.00 | $ 6,160,681.00 | $ 1,500,000.00 | $ 12,339,319.00 | 4 |
| Circle Development of Cincinnati LLC | $ 950,000.00 | $ 937,000.00 | $ 13,000.00 | $ - | 5 |
| Corporate Park Investors, Ltd | | | | | 6 |
| Executive Park Investors, Ltd (5%) | | | | | 7 |
| Grasshopper Investments II, LLC | $ 1,400,000.00 | | $ 65,000.00 | $ 1,185,000.00 | 8 |
| Hamilton II, LLC (6%) | $ 190,000.00 | | | $ 11,400.00 | 9 |
| HRM Realty Holdings Ltd (1/3 Interest) | $ 150,000.00 | | $ 10,000.00 | $ 46,200.00 | 10 |
| Hyde Park Circle LLC | $ 7,850,000.00 | $ 3,060,000.00 | $ 315,000.00 | $ 4,475,000.00 | 11 |
| Lebanon Rd, LLC | $ 2,500,000.00 | | $ 200,000.00 | $ 2,300,000.00 | 12 |
| Madison Warehouse, LLC | $ 2,200,000.00 | $ 2,152,000.00 | | $ - | 13 |
| Mason RD, LLC | $ 2,500,000.00 | $ 2,300,000.00 | $ 200,000.00 | $ - | 14 |
| Montclair Investors Ltd (5%) | $ 300,000.00 | $ 2,500,000.00 | $ 200,000.00 | $ 15,000.00 | 15 |
| North Shore RD LLC | $ 3,500,000.00 | $ 3,100,000.00 | $ 250,000.00 | $ 150,000.00 | 16 |
| N. KY Assisted Living LLC (85%) | $ 6,100,000.00 | $ 3,191,303.00 | $ 300,000.00 | $ 2,132,392.00 | 17 |
| Red Corner LLC | $ 14,500,000.00 | $ 7,200,000.00 | $ 500,000.00 | $ 6,800,000.00 | 18 |
| Red Dog Operations Holding (.01%) | | | | | 19 |
| Schneider-Grasshopper Inc | | | | $ 11,834.00 | 20 |
| Techwoods Circle RD, LLC | $ 1,250,000.00 | $ 760,000.00 | $ 100,000.00 | $ 390,000.00 | 21 |
| The Gatherings of Blue Ash, LLC | $ 2,000,000.00 | $ 1,776,000.00 | $ 100,000.00 | $ 124,000.00 | 22 |
| To Life Ltd (8.42%) | $ 80,000,000.00 | $ 46,500,000.00 | $ 1,500,000.00 | $ 2,820,700.00 | 23 |
| | | | **TOTAL EQUITY** | **$ 33,900,845.00** | |

**Corporations with No Physical Assets**

747 LLC (1/2 Interest)
54 Realty, LTD
72 Ventures, LTD (50%)
82 Lafayetrtte Road LLC
Boston Self Storage, LLC
Circle Health Care Operating Co 1
Circle Health Care Operating Co II
Circle Health Care Operating Co III
Circle Health Care Operating Co IV
Circle Health Care Operating Co V
Circle Health Care Operating Co VI
Dana Ventures Ltd
Delhi Plaza Associates, Ltd.
East Galbraith Health Care Center, Inc.
EGHC Holdings, Inc.
Euclid Health Care, Inc
Framingham RD LLC
Framingham Red Dog
Harmony Health Care, Inc.
Horizon Health Management, LLC
Horizon Health Management II, LLC
Ivy Health Care LLC
jde Holdings LLC
Keller Road Realty Co LLC
Kenwood Terrace Health Care
Loveland Red Dog Pet Resort
Monarch Rd LLC
New England Self Storage LLC
N. KY Retirement Community
Northwest Self Storage LLC
Pleasant Ridge Realty LLC
R&T Development LLC
RD Realty I, LLC
Red Cup Expresso LLC
Red Dog Management Company
RH Real Estate Investments LLC
Seminole Avenue Realty LLC
Shaua B LLC
Skipton Kennel and Pet Center
Soft Pouch Equipment LLC
Southbrook Health Care Center
Steigler Road Realty LLC
Sterling Glen Health Center Ltd
Sterling Manor Ltd
Cambridge Health Care Center Ltd
The Red Kitchen LLC
West Chester Pet resort & Spa

# EXHIBIT 2

## 5150 East Galbraith Road LLC
## Asset Analysis

**Ray Schneider- 1/3**
**Henry Schneider- 1/3**
**Thomas Zemboch- 1/3**

**ASSETS:**

| | |
|---|---|
| **5150 East Galbraith**<br>**Cinti, Ohio**<br>**Office Building**<br>**Tax Value ($2,307,130)** | **V- $2,500,000** |

| | |
|---|---|
| **1st- Stockyard**<br>**Book 14659 Page 1203**<br>**5/3/22** | **$ 2,500,000** |
| **Costs** | **$ 200,000** |
| | **$ 2,700,000** |

**Net Equity $ 0**

# EXHIBIT 3

## 9617 KENWOOD ROAD DEVELOPMENT, LLC
## Asset Analysis

**Ray Schneider- 100%**

**ASSETS:**

| | | |
|---|---|---|
| **9565-9573 Kenwood Road**<br>**Blue Ash, OH 45242**<br>**5 Parcel**<br>**4 Acres Vacant**<br>**Not Zoned**<br>**Tax value ($166,140)** | **Value** | **$ 4,430,000** |
| **Civista Bank**<br>**1/24/20**<br>**Book 14090 Page 26**<br>(SB Released) | | |
| **1st- Civista Bank**<br>**5/24/21Book 14424 Page 1544** | **$ 927,000** | |
| **2nd- Civista Bank**<br>**3/7/22**<br>**Book 14618 Page 997** | **$ 2,024,400** | |
| **Costs** | **$ 378,600** | |
| | | **$ 3,330,000** |
| | **Net Equity** | **$ 1,100,000** |

# EXHIBIT 4

## BOSTON RD LLC (MA)
## Asset Analysis

**Ray Schneider-100%**

**ASSETS:**

| | | |
|---|---|---|
| **274 S. Hampton**<br>**Boston MA, 02118**<br>**Tax Value ($2,287,877)**<br>**LOI Pending** | **Value** | **$ 20,000,000** |

| | |
|---|---|
| **1st- Rockland Trust** | **$ 6,160,681** |
| **Costs** | **$ 1,500,000** |
| | **$ 7,660,681** |
| **Net Equity** | **$ 12,339,319** |

# EXHIBIT 5

## CIRCLE DEVELOPMENT OF CINCINNATI LLC
## Asset Analysis

**Ray Schneider- 100%**

**ASSETS:**

| | | |
|---|---|---|
| **5211 Madison Road<br>Cinti, Ohio 45227<br>(Will be vacant April 2023)<br>(Tax Value $1,084,770)** | **Value** | **$ 950,000** |
| **1st- First Federal Savings<br>Book 14712 Page 367<br>7/20/22** | **$ 937,000** | |
| **Costs** | **$ 13,000** | |
| | | **$ 950,000** |
| | **Net Equity** | **$ 0** |

# EXHIBIT 6

## CORPORATE PARK INVESTORS, LTD.
## Asset Analysis

**Ray Schneider-5.5%**

**Monetary Interest**

**No rights to sell anything**

**Able to transfer to spouse or child otherwise the company has the option to purchase his shares.**
**Income approx. $ 2,500 per year**

**ASSETS:**

**2 Office Buildings**

# EXHIBIT 7

## EXECUTIVE PARK INVESTORS, LTD.
## Asset Analysis

**Ray Schneider – 5%**
**12 others, they have first right of refusal**

**ASSETS:**

**No right to sell**
**Income approx. $ 2,000 per year**

# EXHIBIT 8

## GRASSHOPPER INVESTMENTS II, LLC
## Asset Analysis

**Ray Schneider- 100%**

**ASSETS:**

| | | | |
|---|---|---|---|
| **3220 + 3226 Omni Drive**<br>**(2 Lots)**<br>**(Tax Value: $ 691,500)** | **Value** | **$ 900,000** | |
| **Costs** | | **$ 50,000** | |
| | | **Net** | **$ 700,000** |
| **9972 Reading Road**<br>**Cincinnati, OH 45241**<br>**3 parcels**<br>**(Tax Value: $ 324,110)**<br>**Bad Zoning** | **Value** | **$ 500,000** | |
| **Costs** | | **$ 15,000** | |
| | | **Net** | **$ 485,000** |

**Total Equity $ 1,185,000**

# EXHIBIT 9

## HAMILTON II, LLC
## Asset Analysis

**Ray Schneider- 6%**

**ASSETS:**

| | | | | |
|---|---|---|---|---|
| **Dillonville Shopping Center** (Tax Value: $ 152,910) | **Value** | **$ 200,000** | | |
| | **Costs** | **<u>$ 10,000</u>** | | |
| | | | **Net Equity** | **$ 190,000** |
| **Minority interest only** | | | **6% =** | **$ 11,400** |

**No value**

# EXHIBIT 10

## HRM REALTY HOLDINGS LTD
## Asset Analysis

**Henry Schneider-33.33%**
**Ray Schneider- 33.33%**
**Marilyn Zembach-33.3%**
**Right of First Refusal**

| | | | |
|---|---|---|---|
| **ASSETS:** | **3873 E. Galbraith<br>Cinti, OH<br>(Tax Value: $ 131,860)** | **Value** | **$ 150,000** |
| | | **Costs** | **$ 10,000** |
| | | **Net Equity** | **$ 140,000** |
| | | **1/3 Interest** | **$ 46,200** |

# EXHIBIT 11

## HYDE PARK CIRCLE LLC
## Asset Analysis

**Ray Schneider- 100%**

**ASSETS:**

**5207 Madison Road** — **Value** — **$ 7,500,000**
**Cincinnati Ohio 45227**
**3 parcels**
**(Tax Value: $ 4,961,990)**

**1st mtg- GE Credit Union** — **$ 2,900,000**
**12/20/16**
**Book 13317 Page 156**

**2nd mtg- LCNB** — **$ 0**
**6/4/21**
**Book 14433 Page 86**

**Costs** — **$ 300,000**
**$ 3,200,000**

**Equity** — **$ 4,300,000**

**4989, 4991 Madison** — **Value** — **$ 350,000**
**4986 Oaklawn**
**(Tax Value: $ 200,000)**

**1st mtg- Kemba Credit Union** — **$ 160,000**
**10/22/19**
**Book 14028/ Page 973**

**Costs** — **$ 15,000**

**$ 175,000**

**Equity** — **$ 175,000**

**Net Equity** — **$ 4,475,000**

# EXHIBIT 12

## LEBANON RD, LLC
## Asset Analysis

**Ray Schneider – 100%**

**ASSETS:**

| | | | |
|---|---|---|---|
| | **1235 Columbus Ave<br>Lebanon OH<br>(Tax Value: $926,060)<br>Sale contract pending** | **Value** | **$ 2,500,000** |
| | **Costs of sale** | | **$ 200,000** |
| | | **Net Equity** | **$ 2,300,000** |

# EXHIBIT 13

## MADISON WAREHOUSE LLC
## Asset Analysis

**Madison Warehouse, LLC**
**Which is owned by Ray Schneider 100%**

**ASSETS:**

| | | |
|---|---|---|
| **5021 & 5055 Madison Road**<br>**Cincinnati Ohio 45227**<br>**(Tax Value: $ 2,340,010)** | **Value** | **$ 2,200,000** |

| | |
|---|---|
| **Heritage Bank**<br>**4/23/21**<br>**Book 14403 Page 2724** | **$ 2,152,000** |
| **Costs** | **<u>$ 100,000</u>** |
| | **<u>$ 2,252,000</u>** |

**Total Equity $ 0**

# EXHIBIT 14

## MASON RD, LLC
## Asset Analysis

**Ray Schneider- 100%**

**ASSETS:**

| | | | |
|---|---|---|---|
| **7036 Columbia Road<br>Maineville, OH 45039<br>(Tax Value: $ 2,100,000)** | | **Value** | **$ 2,500,000** |
| **Civista<br>Doc # 2019-011747<br>5/9/19** | **$ 2,300,000** | | |
| **Costs** | **$ 200,000** | | |
| | | | **$ 2,500,000** |
| | | **Equity** | **$ 0** |

# EXHIBIT 15

## MONTCLAIR INVESTORS LTD
## Asset Analysis

**Ray Schneider- 5%**

**ASSETS:**

| | | |
|---|---|---|
| **3470 Hazelwood Ave** | **Value** | **$ 3,000,000** |
| **(Tax Value: $ 1,723,100)** | | |
| **3501 McFarlan** | | |
| **(Tax Value: $ 2,980)** | | |
| **Urwiler Ave** | | |
| **(Tax Value: $ 5,070)** | | |
| **1st- Minnesota Life** | **$ 2,500,000** | |
| **Costs** | **$ 200,000** | |
| | | **$ 2,700,000** |
| | **Net Equity** | **$ 300,000** |
| **Minority Interest** | **5%=** | **$ 15,000** |

# EXHIBIT 16

## NORTH SHORE RD LLC
## Asset Analysis

**Ray Schneider- 100%**

**ASSETS:**

| | | |
|---|---|---|
| **190 Main St**<br>**Saugus, MA**<br>**(Tax Value: $ 1,742,000)** | **Value** | **$ 3,500,000** |

| | |
|---|---|
| **1st- Rockland-** | **$ 3,100,000** |
| **Costs** | **$ 250,000** |
| | **$ 3,350,000** |

**Net Equity $ 150,000**

# EXHIBIT 17

## NORTHERN KENTUCKY ASSISTED LIVING LLC (KY)
## Asset Analysis

**Ray Schneider-85%**
**DSES LLC-15%**
**No rights of management to transfer**
**Dissolves only on agreement or court order**

**ASSETS:**

| | | | |
|---|---|---|---|
| **800 Highland Ave<br>Covington, KY<br>96 Units<br>(Contract pending)** | | **Value** | **$ 6,100,000** |
| **1st- Civitas** | **$ 3,291,303** | | |
| **Costs** | **$ 300,000** | | |
| | | | **$ 3,591,303** |
| | | **Net Equity** | **$ 2,508,697** |
| | | **85%** | **$ 2,132,392.40** |

# EXHIBIT 18

## RED CORNER LLC
## Asset Analysis

**Ray Schneider- 100%**

**ASSETS:**

| | | | |
|---|---|---|---|
| **3500 Madison Park Ave<br>Cinti, Ohio<br>10 parcels<br>(Tax Value: $ 1,877,170)** | | **Value** | **$14,500,000** |
| **1st mtg- Civista Bank<br>2/19/21<br>Book 14358 Page 61** | **$ 7,200,000** | | |
| **Costs** | **$ 500,000** | | |
| | | | **$ 7,700,000** |
| | | **Net Equity** | **$ 6,800,000** |

# EXHIBIT 19

## RED DOG OPERATIONS HOLDING COMPANY LLC
## Asset Analysis

**Ray Schnieder- 1- Class A shares of a total of 10,000 share (.01%)**
**Patt Schnieder 2019 Gift Trust- 6999 Class B nonvoting shares**
**Eric Schnieder- 2000 non voting shares (Class C) + 1,000 B Units (Non-voting)**
**2,000 C Units (2,000 votes)**
**Drag along sale rights**

**ASSETS:**

**Atlanta RDPS, LLC**
**Boston Animal Hospital LLC**
**Boston Red Dog Pet Resort and Spa, LLC**
**Mason Red Dog Pet Resort and Spa LLC**
**North Shore Red Dog Pet Resort and Spa, LLC**
**North Station Animal Hospital LLC**
**Red Dog Resort and Spa, LLC**
**Springdale Red Dog Pet Resort and Spa, LLC**
**West Chester Pet Resort & Spa LLC**

**Estate planning valuation $ 3,715,559**

**Ray's Interest (0.01%) $ 371.56**

# EXHIBIT 20

## SCHNEIDER-GRASSHOPPER INC
## Asset Analysis

**Ray Schnieder- 100%**

**Assets:**

**2 of 400 shares (.005) of Grasshopper Investments LLC**

**Value: $11,834**

# EXHIBIT 21

## TECHWOODS CIRCLE RD. LLC
## Asset Analysis

**Ray Schneider- 100%**

**ASSETS:**

| | | |
|---|---|---|
| **10635 Techwoods Circle Road**<br>**Cincinnati Ohio 45242**<br>**(Tax Value: $953,640)** | **Value** | **$ 1,250,000** |
| **1st- Heritage Bank**<br>**6/21/22**<br>**Book 14692 Page 1566** | **$ 760,000** | |
| **2nd- Heavenly Blue, LLC**<br>**PG**<br>**10/25/21**<br>**Book 14530 Page 2960**<br>**(Should be Released)** | **$ 0** | |
| **Costs** | **<u>$ 100,000</u>** | |
| | **Net Equity** | **$ 390,000** |

# EXHIBIT 22

## THE GATHERINGS OF BLUE ASH, LLC
## Asset Analysis

**Ray Schneider- 100%**

**ASSETS:**

| | | |
|---|---|---|
| **10627 Techwoods Circle**<br>**Cincinnati, Ohio 45242**<br>**(Tax Value: $ 1,877,170)** | **Value** | **$ 2,000,000** |
| **1st- Heritage Bank**<br>**8/16/21**<br>**Book 14481 Page 3672** | **$ 1,776,000** | |
| **Costs** | **$ 100,000** | |
| | | **$ 1,876,000** |
| | **Net Equity** | **$ 124,000** |

# EXHIBIT 23

## TO LIFE LTD
## Asset Analysis

**Ray Schneider- 80 Class A (8.42%)**
**Raymond Schneider 2019 Gift Trust- 720 class B shares**
**Eric Schneider- 45 class B shares 5 Class A**
**Justin Schneider- 45 class B shares 5 Class A**
**Danielle Schneider- 45 class B shares 5 Class A**

**ASSETS:**

| | | |
|---|---|---|
| **5110 Herringbone Drive**<br>**Cinti, OH 45227**<br>**(Tax Value: $ 43,979,800)**<br>**Madison Lot**<br>**(Tax Value: $ 296,620)** | **Value** | **$ 80,000,000** |
| **1st mtg- Transamerica Life Ins.**<br>**1/2/19**<br>**Book 13825 Page 2190** | **$ 45,000,000** | |
| **1st Amendment**<br>**7/23/21**<br>**Book 14465 Page 1513** | | |
| **Costs** | **$ 1,500,000** | |
| | | **$ 46,500,000** |
| | **Net Equity** | **$ 33,500,000** |

**Valuation at time of estate planning $ 9,957,848**

**RAYMOND SCHNEIDER IRREVOCABLE 2019 GIFT TRUST** **EXHIBIT 24**

| Operating Company | Total Value | Exhibit # |
| --- | --- | --- |
| To Life LTD. (75.80%) | $ 9,957,848.00 | 23 |

**PATRICIA B. SCHNEIDER IRREVOCABLE 2020 GIFT TRUST** **EXHIBIT 25**

| Operating Company | Total Value | Exhibit # |
|---|---|---|
| Red Dog Operations Holding Company LLC (69.99%) | $ 3,715,559.00 | 19 |
| Grasshopper Investments, LLC (99%) | $ 2,366,897.00 | 26 |
| **Total** | **$ 6,082,456.00** | |

# EXHIBIT 26

## GRASSHOPPER INVESTMENTS LLC
## Asset Analysis

**Ray Schneider- 2 of 400 shares (0.5%)**
**Schneider-Grasshopper Inc.- 2 of 400 shares (0.5%)**
**Patricia B Schneider Gift Trust- 396 shares**

**ASSETS:**

**Circle Storage Operating Company I, LLC**

**Estate planning valuation $ 2,366,897**

# EXHIBIT 27

| Operating Company | PROJECTED ANNUAL INCOME | |
|---|---|---|
| 5150 East Galbraith Road LLC (1/3rd Interest) | $ | - |
| 9617 Kenwood Road Development LLC | $ | - |
| Boston RD LLC | $ | 1,120,000.00 |
| Circle Development of Cincinnati LLC | $ | 250,000.00 |
| Corporate Park Investors, Ltd | $ | 4,500.00 |
| Executive Park Investors, Ltd (5%) | $ | 5,500.00 |
| Grasshopper Investments II, LLC | $ | 35,000.00 |
| Hamilton II, LLC (6%) | $ | 3,600.00 |
| HRM Realty Holdings Ltd (1/3 Interest) | $ | 21,000.00 |
| Hyde Park Circle LLC | $ | 28,000.00 |
| Lebanon Rd, LLC | $ | - |
| Madison Warehouse, LLC | $ | 35,000.00 |
| Mason RD, LLC | $ | 55,000.00 |
| Montclair Investors Ltd (5%) | $ | 6,500.00 |
| North Shore RD LLC | $ | 45,000.00 |
| N. KY Assisted Living LLC (85%) | $ | 35,000.00 |
| Red Corner LLC | $ | 115,000.00 |
| Red Dog Operations Holding (.01%) | $ | - |
| Schneider-Grasshopper Inc | $ | - |
| Techwoods Circle RD, LLC | $ | - |
| The Gatherings of Blue Ash, LLC | $ | 12,000.00 |
| To Life Ltd (8.42%) | $ | 36,000.00 |
| **TOTAL ANNUAL INCOME** | **$** | **1,807,100.00** |