# "EXHIBIT K"

# Exhibit A

# RAYMOND AND PATRICIA SCHNEIDER

# 2020 GIFTING PROGRAM

# CLOSING BINDER

Case 25-bk-10337 Doc 89 Filed 08/19/25 Entered 08/19/25 13:15:19 Desc Main Document Page 4 of 35

## TABLE OF CONTENTS


| Document | Tab |
|---|---|
| | |
| **Red Dog Operations Holding Company LLC** | |
| Overview of 2020 Gifting Program | 1 |
| Assignment of Class B Units – Ray to Patti | 2 |
| Assignment of Class B Units – Patti to Patricia B. Schneider 2020 Gift Trust | 3 |
| Assignment of Class B Units – Ray to Eric | 4 |
| **Grasshopper Investments, LLC** | |
| Overview of 2020 Gifting Program | 5 |
| Assignment of Class B Units – Ray to Patti | 6 |
| Assignment of Class B Units – Patti to Patricia B. Schneider 2020 Gift Trust | 7 |
| **To Life Ltd.** | |
| Overview of 2020 Gifting Program | 8 |
| Assignment of Units – Patti to Danielle | 9 |
| Third Amended and Restated Operating Agreement (as of December 31, 2019) | 10 |

## Overview of 2020 Gifting Program

## Red Dog Operations Holding Company LLC

November 1, 2020.

- Ray gifted 6,999 Class B Units (non-voting) in Red Dog Operations Holding Company LLC to Patti
- As of November 1, 2020, the members of Red Dog Operations Holding Company LLC were as follows:

| Member | Class A Units (voting) | Class B Units (non-voting) | Class C Units (profits interests) |
|---|---|---|---|
| Ray | 1 | 1,000 | |
| Patti | | 6,999 | |
| Eric | | | 2,000 |

December 31, 2020 (effective at 11:59pm):

- Ray gifted 1,000 Class B Units (non-voting) in Red Dog Operations Holding Company LLC to Eric
- Patti gifted 6,999 Class B Units (non-voting) in Red Dog Operations Holding Company to the Patricia B Schneider 2020 Gift Trust (this is a grantor trust with respect to Patti and Ray is the trustee)
- As of 11:59pm on December 31, 2020, the members of Red Dog Operations Holding Company LLC were as follows:

| Member | Class A Units (voting) | Class B Units (non-voting) | Class C Units (profits interests) |
|---|---|---|---|
| Ray | 1 | | |
| Patricia B Schneider 2020 Gift Trust | | 6,999 | |
| Eric | | 1000 | 2,000 |

**ASSIGNMENT OF CLASS B UNITS**

**RED DOG OPERATIONS HOLDING COMPANY LLC**

This Assignment of Units (this "Assignment") is effective as of this 1st day of November, 2020, (the "Effective Date") and is made by and between Raymond Schneider ("Assignor") and Patricia B. Schneider ("Assignee").

**RECITALS**

A Assignor is a member of Red Dog Operations Holding Company LLC, an Ohio limited liability company (the "Company").

B. Assignor owns 7,999 Class B Units in the Company, which are subject to a certain Operating Agreement dated January 1, 2020 (the "Operating Agreement").

C For estate planning purposes and pursuant to this Assignment, Assignor desires to transfer and assign 6,999 Class B Units in the Company (the "Units") to Assignee as a gift

D. Assignee is Assignor's spouse

E Pursuant to Section 8 2 of the Operating Agreement, the transfer contemplated by this Assignment is permitted under the terms of the Operating Agreement

**ASSIGNMENT**

1. Assignment For estate planning purposes, Assignor does hereby assign and transfer as a gift all of Assignor's right, title and interest in and to the Units to Assignee

2 Status Before and After Assignment

a. All distributions related to the Units made up to and including the Effective Date shall be retained by Assignor, and all distributions related to the Units made after the Effective Date shall be paid to Assignee All allocations of Company income, gain, loss, deduction and credit for the taxable year ending December 31, 2020 shall be divided and allocated between the Assignor and the Assignee by taking into account their varying interests during this period in accordance with Code Section 706(d), using any conventions permitted by law and selected by the Company.

b All claims or liabilities associated with the Units up to and including the Effective Date shall remain the sole responsibility of Assignor, and Assignor shall indemnify and hold harmless Assignee from all such claims or liabilities. Any and all claims or liabilities arising in connection with the Units after the Effective Date shall be the sole responsibility of Assignee, provided such claims or liabilities are related to or as a result of activities or events occurring after the Effective Date

3. Acceptance by Assignee. Assignee hereby accepts the assignment of the Units pursuant to this Assignment and agrees to be bound by all terms and conditions of the Operating Agreement as a Member of Company by execution of a joinder agreement, and agrees to perform all of Assignor's duties, responsibilities and obligations with respect to the Units and as a Member of Company in accordance with the Operating Agreement.

4 Further Actions. Assignor and Assignee each hereby further agree to perform, from time to time, such other acts and to execute, acknowledge and deliver such other instruments as may be reasonably necessary in order to effectuate the assignment contemplated hereby and to afford Assignee the full benefits of Assignor with respect to the Units transferred to Assignee

5 Miscellaneous.

a. Headings. The headings in this Assignment are solely for convenience and shall not be given any effect in the construction or interpretation of this Assignment

b. Governing Law. This Assignment shall in all respects be interpreted, governed by and construed in accordance with the laws of the State of Ohio without giving effect to principles of conflict of laws.

c Counterparts This Assignment may be executed in multiple counterparts and by facsimile or electronic transmission (including by PDF), each of which shall be deemed to be an original but all of which taken together shall constitute one and the same Assignment

d Undefined Terms. Any capitalized term used in this Assignment but not defined in this Assignment shall have the meaning ascribed thereto in the Operating Agreement

*[Executed on following page]*

**SIGNATURE PAGE**

**ASSIGNMENT OF CLASS B UNITS**

**RED DOG OPERATIONS HOLDING COMPANY LLC**

ASSIGNOR

Raymond Schneider

ASSIGNEE:

Patricia B. Schneider

# ASSIGNMENT OF CLASS B UNITS

# RED DOG OPERATIONS HOLDING COMPANY LLC

This Assignment of Class B Units (this "Assignment") is effective as of 11:59 p.m. (the "Effective Time") on the 31st day of December, 2020, (the "Effective Date") and is made by and between Patricia B. Schneider ("Assignor") and Raymond Schneider, as Trustee of the Patricia B. Schneider 2020 Gift Trust dated December 28, 2020 ("Assignee").

## RECITALS

A. Assignor is a member of Red Dog Operations Holding Company LLC, an Ohio limited liability company (the "Company").

B. Assignor owns 6,999 Class B Units in the Company (the "Units")

C. The Units are subject to a certain Operating Agreement dated January 1, 2020, as amended (the "Operating Agreement").

D. For estate planning purposes and pursuant to this Assignment, Assignor desires to transfer and assign the Units to Assignee as a gift

E. Assignee is a trust for the benefit of Assignor's spouse and lineal descendants.

F Pursuant to Section 8.2 of the Operating Agreement, the transfer contemplated by this Assignment is permitted under the terms of the Operating Agreement

## ASSIGNMENT

1. Assignment. For estate planning purposes, Assignor does hereby assign and transfer as a gift all of Assignor's right, title and interest in and to the Units to Assignee

2. Status Before and After Assignment

a. All distributions related to the Units made up to the Effective Time on the Effective Date shall be retained by Assignor, and all distributions related to the Units made at or after the Effective Time on the Effective Date shall be paid to Assignee. All allocations of Company income, gain, loss, deduction and credit for the taxable year ending December 31, 2020 shall be divided and allocated between the Assignor and the Assignee by taking into account their varying interests during this period in accordance with Code Section 706(d), using any conventions permitted by law and selected by the Company.

b. All claims or liabilities associated with the Units up to and including the Effective Date shall remain the sole responsibility of Assignor, and Assignor shall indemnify and hold harmless Assignee from all such claims or liabilities Any and all claims or liabilities arising in connection with the Units after the Effective Date shall be the sole responsibility of Assignee,

provided such claims or liabilities are related to or as a result of activities or events occurring after the Effective Date.

3. Acceptance by Assignee. Assignee hereby accepts the assignment of the Units pursuant to this Assignment and agrees to be bound by all terms and conditions of the Operating Agreement as a Member of Company by execution of a joinder agreement, and agrees to perform all of Assignor's duties, responsibilities and obligations with respect to the Units and as a Member of Company in accordance with the Operating Agreement

4. Further Actions Assignor and Assignee each hereby further agree to perform, from time to time, such other acts and to execute, acknowledge and deliver such other instruments as may be reasonably necessary in order to effectuate the assignment contemplated hereby and to afford Assignee the full benefits of Assignor with respect to the Units transferred to Assignee

5. Miscellaneous

a Headings The headings in this Assignment are solely for convenience and shall not be given any effect in the construction or interpretation of this Assignment.

b. Governing Law This Assignment shall in all respects be interpreted, governed by and construed in accordance with the laws of the State of Ohio without giving effect to principles of conflict of laws

c. Counterparts. This Assignment may be executed in multiple counterparts and by facsimile or electronic transmission (including by PDF), each of which shall be deemed to be an original but all of which taken together shall constitute one and the same Assignment.

d. Undefined Terms. Any capitalized term used in this Assignment but not defined in this Assignment shall have the meaning ascribed thereto in the Operating Agreement.

[*Executed on following page*]

**SIGNATURE PAGE**

**ASSIGNMENT OF CLASS B UNITS**

**RED DOG OPERATIONS HOLDING COMPANY LLC**

ASSIGNOR.

____________________________
Patricia B. Schneider

ASSIGNEE.

____________________________
Raymond Schneider, Trustee of the Patricia B Schneider 2020 Gift Trust dated December 28, 2020

# ASSIGNMENT OF CLASS B UNITS

# RED DOG OPERATIONS HOLDING COMPANY LLC

This Assignment of Class B Units (this "Assignment") is effective as of 11:59 p.m. (the "Effective Time") on the 31st day of December, 2020, (the "Effective Date") and is made by and between Raymond Schneider ("Assignor") and Eric P. Schneider ("Assignee").

## RECITALS

A. Assignor is a member of Red Dog Operations Holding Company LLC, an Ohio limited liability company (the "Company").

B. Assignor owns 1,000 Class B Units in the Company (the "Units").

C. The Units are subject to a certain Operating Agreement dated January 1, 2020, as amended (the "Operating Agreement").

D. For estate planning purposes and pursuant to this Assignment, Assignor desires to transfer and assign the Units to Assignee as a gift.

E. Assignee is a trust for the benefit of Assignor's spouse and lineal descendants.

F. Pursuant to Section 8.2 of the Operating Agreement, the transfer contemplated by this Assignment is permitted under the terms of the Operating Agreement.

## ASSIGNMENT

1. Assignment. For estate planning purposes, Assignor does hereby assign and transfer as a gift all of Assignor's right, title and interest in and to the Units to Assignee.

2. Status Before and After Assignment.

a. All distributions related to the Units made up to the Effective Time on the Effective Date shall be retained by Assignor, and all distributions related to the Units made at or after the Effective Time on the Effective Date shall be paid to Assignee. All allocations of Company income, gain, loss, deduction and credit for the taxable year ending December 31, 2020 shall be divided and allocated between the Assignor and the Assignee by taking into account their varying interests during this period in accordance with Code Section 706(d), using any conventions permitted by law and selected by the Company.

b. All claims or liabilities associated with the Units up to and including the Effective Date shall remain the sole responsibility of Assignor, and Assignor shall indemnify and hold harmless Assignee from all such claims or liabilities. Any and all claims or liabilities arising in connection with the Units after the Effective Date shall be the sole responsibility of Assignee,

provided such claims or liabilities are related to or as a result of activities or events occurring after the Effective Date.

3. Acceptance by Assignee. Assignee hereby accepts the assignment of the Units pursuant to this Assignment and agrees to be bound by all terms and conditions of the Operating Agreement as a Member of Company by execution of a joinder agreement, and agrees to perform all of Assignor's duties, responsibilities and obligations with respect to the Units and as a Member of Company in accordance with the Operating Agreement.

4. Further Actions. Assignor and Assignee each hereby further agree to perform, from time to time, such other acts and to execute, acknowledge and deliver such other instruments as may be reasonably necessary in order to effectuate the assignment contemplated hereby and to afford Assignee the full benefits of Assignor with respect to the Units transferred to Assignee.

5. Miscellaneous.

a. Headings. The headings in this Assignment are solely for convenience and shall not be given any effect in the construction or interpretation of this Assignment.

b. Governing Law. This Assignment shall in all respects be interpreted, governed by and construed in accordance with the laws of the State of Ohio without giving effect to principles of conflict of laws.

c. Counterparts. This Assignment may be executed in multiple counterparts and by facsimile or electronic transmission (including by PDF), each of which shall be deemed to be an original but all of which taken together shall constitute one and the same Assignment.

d. Undefined Terms. Any capitalized term used in this Assignment but not defined in this Assignment shall have the meaning ascribed thereto in the Operating Agreement.

[*Executed on following page*]

Case 5:23-bk-00337 Doc 28-7 Filed 09/26/25 Entered 09/26/25 13:48:39 Desc Main
Document Page 14 of 35

**SIGNATURE PAGE**

**ASSIGNMENT OF CLASS B UNITS**

**RED DOG OPERATIONS HOLDING COMPANY LLC**

ASSIGNOR:

Raymond Schneider

ASSIGNEE:

Eric P. Schneider

## Overview of 2020 Gifting Program

## Grasshopper Investments, LLC

<u>November 1, 2020</u>.

- Ray gifted 396 Class B Units (non-voting) in Grasshopper Investments, LLC to Patti
- As of November 1, 2020, the members of Grasshopper Investments, LLC were as follows:

| Member | Class A Units (voting) | Class B Units (non-voting) |
|---|---|---|
| Ray | 2 | |
| Schneider-Grasshopper Inc | | 2 |
| Patti | | 396 |

<u>December 31, 2020 (effective at 11 59pm)</u>:

- Patti gifted 396 Class B Units (non-voting) in Grasshopper Investments, LLC to the Patricia B Schneider 2020 Gift Trust (this is a grantor trust with respect to Patti and Ray is the trustee)
- As of 11:59pm on December 31, 2020, the members of Grasshopper Investments, LLC were as follows

| Member | Class A Units (voting) | Class B Units (non-voting) |
|---|---|---|
| Ray | 2 | |
| Schneider-Grasshopper Inc. | | 2 |
| Patricia B. Schneider 2020 Gift Trust | | 396 |

# ASSIGNMENT OF CLASS B UNITS

## GRASSHOPPER INVESTMENTS, LLC

This Assignment of Units (this "Assignment") is effective as of this 1st day of November, 2020, (the "Effective Date") and is made by and between Raymond Schneider ("Assignor") and Patricia B Schneider ("Assignee")

## RECITALS

A. Assignor is a member of Grasshopper Investments, LLC, an Ohio limited liability company (the "Company")

B. Assignor owns 396 Class B Units in the Company (the "Units")

C. The Units are subject to a certain Amended and Restated Operating Agreement dated October 6, 2020 (the "Operating Agreement")

D For estate planning purposes and pursuant to this Assignment, Assignor desires to transfer and assign the Units to Assignee as a gift.

E Assignee is Assignor's spouse

F Pursuant to Section 10 01 of the Operating Agreement, the transfer contemplated by this Assignment is permitted under the terms of the Operating Agreement

## ASSIGNMENT

1. Assignment For estate planning purposes, Assignor does hereby assign and transfer as a gift all of Assignor's right, title and interest in and to the Units to Assignee

2. Status Before and After Assignment

a All distributions related to the Units made up to and including the Effective Date shall be retained by Assignor, and all distributions related to the Units made after the Effective Date shall be paid to Assignee. All allocations of Company income, gain, loss, deduction and credit for the taxable year ending December 31, 2020 shall be divided and allocated between the Assignor and the Assignee by taking into account their varying interests during this period in accordance with Code Section 706(d), using any conventions permitted by law and selected by the Company.

b. All claims or liabilities associated with the Units up to and including the Effective Date shall remain the sole responsibility of Assignor, and Assignor shall indemnify and hold harmless Assignee from all such claims or liabilities. Any and all claims or liabilities arising in connection with the Units after the Effective Date shall be the sole responsibility of Assignee,

provided such claims or liabilities are related to or as a result of activities or events occurring after the Effective Date.

3 <u>Acceptance by Assignee</u>. Assignee hereby accepts the assignment of the Units pursuant to this Assignment and agrees to be bound by all terms and conditions of the Operating Agreement as a Member of Company by execution of a joinder agreement, and agrees to perform all of Assignor's duties, responsibilities and obligations with respect to the Units and as a Member of Company in accordance with the Operating Agreement

4 <u>Further Actions</u>. Assignor and Assignee each hereby further agree to perform, from time to time, such other acts and to execute, acknowledge and deliver such other instruments as may be reasonably necessary in order to effectuate the assignment contemplated hereby and to afford Assignee the full benefits of Assignor with respect to the Units transferred to Assignee.

5 <u>Miscellaneous</u>.

a <u>Headings</u> The headings in this Assignment are solely for convenience and shall not be given any effect in the construction or interpretation of this Assignment.

b <u>Governing Law</u>. This Assignment shall in all respects be interpreted, governed by and construed in accordance with the laws of the State of Ohio without giving effect to principles of conflict of laws.

c. <u>Counterparts</u> This Assignment may be executed in multiple counterparts and by facsimile or electronic transmission (including by PDF), each of which shall be deemed to be an original but all of which taken together shall constitute one and the same Assignment

d. <u>Undefined Terms</u> Any capitalized term used in this Assignment but not defined in this Assignment shall have the meaning ascribed thereto in the Operating Agreement.

[*Executed on following page*]

**SIGNATURE PAGE**

**ASSIGNMENT OF CLASS B UNITS**

**GRASSHOPPER INVESTMENTS, LLC**

ASSIGNOR:

______________________________
Raymond Schneider

ASSIGNEE:

______________________________
Patricia B Schneider

ASSIGNMENT OF CLASS B UNITS

GRASSHOPPER INVESTMENTS, LLC

This Assignment of Class B Units (this "Assignment") is effective as of 11.59 p m. (the "Effective Time") on the 31st day of December, 2020, (the "Effective Date") and is made by and between Patricia B. Schneider ("Assignor") and Raymond Schneider, as Trustee of the Patricia B. Schneider 2020 Gift Trust dated December 28, 2020 ("Assignee")

RECITALS

A Assignor is a member of Grasshopper Investments, LLC, an Ohio limited liability company (the "Company").

B Assignor owns 396 Class B Units in the Company (the "Units").

C The Units are subject to a certain Amended and Restated Operating Agreement dated October 6, 2020, as amended (the "Operating Agreement").

D For estate planning purposes and pursuant to this Assignment, Assignor desires to transfer and assign the Units to Assignee as a gift.

E. Assignee is a trust for the benefit of Assignor's spouse and lineal descendants

F. Pursuant to Section 10.01 of the Operating Agreement, the transfer contemplated by this Assignment is permitted under the terms of the Operating Agreement

ASSIGNMENT

1. Assignment For estate planning purposes, Assignor does hereby assign and transfer as a gift all of Assignor's right, title and interest in and to the Units to Assignee

2. Status Before and After Assignment.

a All distributions related to the Units made up to the Effective Time on the Effective Date shall be retained by Assignor, and all distributions related to the Units made at or after the Effective Time on the Effective Date shall be paid to Assignee All allocations of Company income, gain, loss, deduction and credit for the taxable year ending December 31, 2020 shall be divided and allocated between the Assignor and the Assignee by taking into account their varying interests during this period in accordance with Code Section 706(d), using any conventions permitted by law and selected by the Company.

b. All claims or liabilities associated with the Units up to and including the Effective Date shall remain the sole responsibility of Assignor, and Assignor shall indemnify and hold harmless Assignee from all such claims or liabilities. Any and all claims or liabilities arising in connection with the Units after the Effective Date shall be the sole responsibility of Assignee,

provided such claims or liabilities are related to or as a result of activities or events occurring after the Effective Date.

3. Acceptance by Assignee Assignee hereby accepts the assignment of the Units pursuant to this Assignment and agrees to be bound by all terms and conditions of the Operating Agreement as a Member of Company by execution of a joinder agreement, and agrees to perform all of Assignor's duties, responsibilities and obligations with respect to the Units and as a Member of Company in accordance with the Operating Agreement.

4 Further Actions. Assignor and Assignee each hereby further agree to perform, from time to time, such other acts and to execute, acknowledge and deliver such other instruments as may be reasonably necessary in order to effectuate the assignment contemplated hereby and to afford Assignee the full benefits of Assignor with respect to the Units transferred to Assignee.

5. Miscellaneous

a Headings. The headings in this Assignment are solely for convenience and shall not be given any effect in the construction or interpretation of this Assignment

b. Governing Law. This Assignment shall in all respects be interpreted, governed by and construed in accordance with the laws of the State of Ohio without giving effect to principles of conflict of laws

c Counterparts This Assignment may be executed in multiple counterparts and by facsimile or electronic transmission (including by PDF), each of which shall be deemed to be an original but all of which taken together shall constitute one and the same Assignment

d Undefined Terms Any capitalized term used in this Assignment but not defined in this Assignment shall have the meaning ascribed thereto in the Operating Agreement.

*[Executed on following page]*

**SIGNATURE PAGE**

**ASSIGNMENT OF CLASS B UNITS**

**GRASSHOPPER INVESTMENTS, LLC**

ASSIGNOR:

Patricia B Schneider

Patricia B Schneider

ASSIGNEE:

Raymond Schneider

Raymond Schneider, Trustee of the Patricia B Schneider 2020 Gift Trust dated December 28, 2020

Case 25-bk-12603 Doc 289-1 Filed 06/28/23 Entered 06/28/23 18:48:37 Desc
Document Page 22 of 35

**Overview of 2020 Gifting Program**

**To Life Ltd.**

December 31, 2020 (effective at 11:59pm):

- Patti gifted 45 Class A Units (voting) and 5 Class B Units (non-voting) in To Life Ltd. to Danielle*
- As of 11:59pm on December 31, 2020, the members of To Life Ltd were as follows:

| Member | Class A Units (voting) | Class B Units (non-voting) |
|---|---|---|
| Ray | 80 | |
| Raymond Schneider 2019 Gift Trust | | 720 |
| Eric | 5 | 45 |
| Justin | 5 | 45 |
| Danielle | 5 | 45 |

*Note that sometime in December 2019, Danielle redeemed the units she owned in To Life, Ltd (Vorys was not part of this transaction, Dennis Packer has the documentation). Then on December 31, 2019, Ray gifting 720 Class B Units to the Raymond Schneider 2019 Gift Trust. Included in this closing binder is the Third Amended and Restated Operating Agreement of To Life Ltd as of December 31, 2019

ASSIGNMENT OF UNITS

TO LIFE, LTD.

This Assignment of Units (this "Assignment") is effective as of 11:59 p.m. (the "Effective Time") on the 31[st] day of December, 2020 (the "Effective Date") and is made by and between Patricia B Schneider ("Assignor") and Danielle R. Senzer ("Assignee").

RECITALS

A Assignor is a member of To Life, Ltd , an Ohio limited liability company (the "Company").

B Assignor owns 5 Class A Units and 45 Class B Units in the Company (collectively, the "Units").

C The Units are subject to a certain Third Amended and Restated Operating Agreement of the Company effective as of December 31, 2019 (the "Operating Agreement").

D. For estate planning purposes and pursuant to this Assignment, Assignor desires to transfer and assign the Units to Assignee as a gift.

E. Pursuant to Section 10 01 of the Operating Agreement, the transfer contemplated by this Assignment is permitted with the unanimous written consent of the Members holding all of the voting power of the Units entitled to vote on the action.

ASSIGNMENT

1 Assignment. For estate planning purposes, Assignor does hereby assign and transfer as a gift all of Assignor's right, title and interest in and to the Units to Assignee.

2 Status Before and After Assignment

a. All distributions related to the Units made up to the Effective Time on the Effective Date shall be retained by Assignor, and all distributions related to the Units made at or after the Effective Time shall be paid to Assignee. All allocations of Company income, gain, loss, deduction and credit for the taxable year ending December 31, 2020 shall be divided and allocated between the Assignor and the Assignee by taking into account their varying interests during this period in accordance with Code Section 706(d), using any conventions permitted by law and selected by the Company

b All claims or liabilities associated with the Units up to and including the Effective Date shall remain the sole responsibility of Assignor, and Assignor shall indemnify and hold harmless Assignee from all such claims or liabilities Any and all claims or liabilities arising in connection with the Units after the Effective Date shall be the sole responsibility of Assignee, provided such claims or liabilities are related to or as a result of activities or events occurring after the Effective Date

3 Acceptance by Assignee Assignee hereby accepts the assignment of the Units pursuant to this Assignment and agrees to be bound by all terms and conditions of the Operating Agreement as a Member of Company by execution of a joinder agreement, and agrees to perform all of Assignor's duties, responsibilities and obligations with respect to the Units and as a Member of Company in accordance with the Operating Agreement.

4 Further Actions Assignor and Assignee each hereby further agree to perform, from time to time, such other acts and to execute, acknowledge and deliver such other instruments as may be reasonably necessary in order to effectuate the assignment contemplated hereby and to afford Assignee the full benefits of Assignor with respect to the Units transferred to Assignee.

5 Miscellaneous

a Headings. The headings in this Assignment are solely for convenience and shall not be given any effect in the construction or interpretation of this Assignment.

b. Governing Law. This Assignment shall in all respects be interpreted, governed by and construed in accordance with the laws of the State of Ohio without giving effect to principles of conflict of laws

c Counterparts. This Assignment may be executed in multiple counterparts and by facsimile or electronic transmission (including by PDF), each of which shall be deemed to be an original but all of which taken together shall constitute one and the same Assignment.

d. Undefined Terms. Any capitalized term used in this Assignment but not defined in this Assignment shall have the meaning ascribed thereto in the Operating Agreement.

[*Executed on following page*]

**SIGNATURE PAGE**

**ASSIGNMENT OF UNITS**

**TO LIFE, LTD.**

ASSIGNOR.

[signature]

Patricia B. Schneider

ASSIGNEE:

________________________

Danielle R Senzer

**UNANIMOUS WRITTEN CONSENT OF THE MEMBERS TO**

**ASSIGNMENT OF UNITS**

**TO LIFE, LTD.**

The undersigned, being the Members of the Company holding all of the voting power of the Units entitled to vote with respect to the foregoing Assignment of Units, hereby consent to the transfer contemplated by such Assignment. This consent may be executed in multiple counterparts and by facsimile or electronic transmission (including by PDF), each of which shall be deemed to be an original but all of which taken together shall constitute one and the same consent

[signature]

Raymond Schneider

________________________

Justin F. Schneider

________________________

Eric P. Schneider

[signature]

Patricia B Schneider, as Trustee of the Raymond Schneider 2019 Gift Trust dated December 20, 2019

Document Page 26 of 35

**SIGNATURE PAGE**

**ASSIGNMENT OF UNITS**

**TO LIFE, LTD.**

ASSIGNOR:

Patricia B. Schneider

ASSIGNEE:

Danielle R. Senzer

**UNANIMOUS WRITTEN CONSENT OF THE MEMBERS TO**

**ASSIGNMENT OF UNITS**

**TO LIFE, LTD.**

The undersigned, being the Members of the Company holding all of the voting power of the Units entitled to vote with respect to the foregoing Assignment of Units, hereby consent to the transfer contemplated by such Assignment. This consent may be executed in multiple counterparts and by facsimile or electronic transmission (including by PDF), each of which shall be deemed to be an original but all of which taken together shall constitute one and the same consent.

Raymond Schneider

Justin F. Schneider

Eric P. Schneider

Patricia B. Schneider, as Trustee of the Raymond Schneider 2019 Gift Trust dated December 20, 2019

**SIGNATURE PAGE**

**ASSIGNMENT OF UNITS**

**TO LIFE, LTD.**

ASSIGNOR:

Patricia B. Schneider

ASSIGNEE:

Danielle R. Senzer

**UNANIMOUS WRITTEN CONSENT OF THE MEMBERS TO**

**ASSIGNMENT OF UNITS**

**TO LIFE, LTD.**

The undersigned, being the Members of the Company holding all of the voting power of the Units entitled to vote with respect to the foregoing Assignment of Units, hereby consent to the transfer contemplated by such Assignment. This consent may be executed in multiple counterparts and by facsimile or electronic transmission (including by PDF), each of which shall be deemed to be an original but all of which taken together shall constitute one and the same consent.

Raymond Schneider

Justin F. Schneider

Eric P. Schneider

Patricia B. Schneider, as Trustee of the Raymond Schneider 2019 Gift Trust dated December 20, 2019

**SIGNATURE PAGE**

**ASSIGNMENT OF UNITS**

**TO LIFE, LTD.**

ASSIGNOR:

Patricia B. Schneider

ASSIGNEE:

Danielle R. Senzer

**UNANIMOUS WRITTEN CONSENT OF THE MEMBERS TO**

**ASSIGNMENT OF UNITS**

**TO LIFE, LTD.**

The undersigned, being the Members of the Company holding all of the voting power of the Units entitled to vote with respect to the foregoing Assignment of Units, hereby consent to the transfer contemplated by such Assignment. This consent may be executed in multiple counterparts and by facsimile or electronic transmission (including by PDF), each of which shall be deemed to be an original but all of which taken together shall constitute one and the same consent.

Raymond Schneider

Justin F. Schneider

Eric P. Schneider

Patricia B. Schneider, as Trustee of the Raymond Schneider 2019 Gift Trust dated December 20, 2019

**FINAL**

**THIRD AMENDED AND RESTATED
OPERATING AGREEMENT
OF
TO LIFE, LTD.**

THIS THIRD AMENDED AND RESTATED OPERATING AGREEMENT ("Agreement") of TO LIFE, LTD , a limited liability company organized pursuant to Chapter 1705 of the Ohio Revised Code, (the "Company") is made, entered into and shall be effective as of December 31, 2019, by and among the Company and the persons executing this Operating Agreement as Members and fully amends and restates that certain Second Amended and Restated Operating Agreement of To Life, Ltd dated as of October 12, 2017, as amended by that First Amendment to the Second Amended and Restated Operating Agreement dated as of October 10, 2018

## Article I. DEFINITIONS

Capitalized terms used herein without specific definition shall have the meanings respectively ascribed thereto in the Glossary appended to this Agreement

## Article II. FORMATION

Section 2 01 **Organization.** The Members hereby ratify the Articles and the Original Appointment of Agent that have been filed with the Secretary of State of Ohio pursuant to which the Company was organized as an Ohio limited liability company pursuant to the provisions of the Act. The Members shall take such action as may be required to effect any related securities or any other filings required under applicable law.

Section 2.02 **Agreement.** For and in consideration of the mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Members hereby agree to the terms and conditions of this Agreement, as it may from time to time be amended according to its terms, and subject to the terms set out in the Articles To the extent any provision of this Agreement is prohibited or ineffective under the Act, this Agreement shall be considered amended to the least degree possible in order to make the agreement effective under the Act In the event the Act is subsequently amended or interpreted in such a way to make any provision of this Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment

Section 2 03 **Articles to Govern.** In the event of an inconsistency between the Articles and this Agreement, the Articles shall govern.

Section 2 04 **Name.** The name of the Company is TO LIFE, LTD and all business of the Company shall be conducted under that name or under any other name determined by the Members to be appropriate, but, in any case only to the extent permitted by applicable law

Section 2.05 **Character of Business.** The company's purpose is to own, lease, operate and maintain the Property. The Company shall have the authority to do all things necessary and permissible by law to accomplish its purpose and operate its business so long as the Company operates within the restrictions set forth in the Articles.

Section 2 06 **Term.** The term of the Company shall be as stated in the Articles unless the Company shall sooner be dissolved and its affairs wound up in accordance with this Agreement

Section 2 07 **Registered Agent and Office.** The registered agent for the service of process and registered office shall be as stated in the Articles The Board may change the registered agent or office from time to time through appropriate filings with the Secretary of State of Ohio. In the event that the registered agent ceases to act as such for any reason or the registered office shall change, the Company shall promptly designate a replacement registered agent or file a notice of change of address as the case may be

Section 2.08 **Principal Office.** The Principal Office of the Company shall be located at the address set forth in Section 2.07 above or such other address and place as shall be determined by the Board.

Section 2.09 **Partnership Status.** The Members intend that the Company be treated as a partnership for federal and, to the extent permitted by applicable state and local law, state and local income tax purposes (but not for any other purpose), in accordance with, among other legal authorities, §§301 7701-1, 301 7701-2 and 301 7701-3 of the Regulations and the applicable income tax provisions of any applicable state or local law. Accordingly, this Agreement shall be construed in a manner that ensures the Company's classification as a partnership for federal, state and local income tax purposes at all times, and any provision of this Agreement that would have the effect of preventing the Company from being classified as a partnership for federal, state and local income tax purposes shall be null and void The Managers shall take all actions, and execute, acknowledge and deliver all documents, which in the judgment of the Managers, or in the opinion of counsel satisfactory to the Managers, are necessary or desirable to obtain and/or maintain the Company's classification as a partnership for such purposes at all times.

## Article III. ACCOUNTING AND RECORDS

Section 3.01 **Units.** Units may be divided into one or more types, classes or series. Each type, class or series of Units shall have the privileges, preference, duties, liabilities, obligations and rights, including voting rights, if any, set forth in this Agreement with respect to such type, class or series

Section 3.02 **Certificates for Membership Units; Initial Classes of Units.**

(a) If designated by the Board in its sole discretion, the Units may be represented by a certificate (a "Certificate of Membership"). The exact contents of a Certificate of Membership will be determined by the Board, provided, however, that the contents of a Certificate of Membership may not modify or expand any rights or obligations of any Member as provided for in this Agreement

(b) The Company is hereby authorized to issue classes of Units designated in separate classes as follows Class A Units and Class B Units The relative rights, powers, preferences and obligations of each class of Units shall be as set forth with respect to such class in this Agreement The rights, privileges or preferences of or with respect to any particular outstanding Units may be further restricted, reduced or eliminated (but, for the avoidance of doubt, not expanded, increased or otherwise made more favorable than the rights, privileges or preferences provided for herein), as determined by the Board in its sole discretion, and as agreed to by such Unit holder

(c) Each Member holding Class A Units shall be entitled to one vote per Class A Unit on matters requiring a vote by the Members under this Agreement The Class B Units shall be non-voting

Section 3 03 **Records to be Maintained.** The Company shall maintain the following records at the Principal Office:

(a) a copy of the Articles and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any Articles have been executed,

(b) copies of the Company's federal, foreign, state and local income tax returns and reports, if any,

(c) a copy of this Agreement, including all amendments thereto, and executed copies of any written powers of attorney pursuant to which this Agreement or any amendment may have been executed;

(d) any financial statements of the Company for the three (3) most recent years or for such shorter period of time as the Company shall have been in existence, and

(e) minutes of the meetings of the Members and/or the Board

Section 3 04 **Reports to Members.** The Board shall prepare or have prepared, within ninety (90) days after end of each Company fiscal year· (i) complete financial statements of the Company including a balance sheet as of the end of such year and profit and loss statement for such fiscal year, and (ii) such information and reports as shall enable each Member to comply with all federal, state and local income tax laws and reporting requirements applicable to each such Member

Section 3.05 **Capital Accounts.** The Company shall maintain a record of the Capital Account for each Member and Assignee in accordance with Article VII

Section 3.06 **Company Account.** All funds of the Company shall be deposited in its name in a bank checking account or such other accounts that shall be determined by the Board from time to time The Board or any person designated by the Board shall be entitled to endorse in the name of the Company checks and drafts payable to (or to the order of) the Company for deposit to such Company accounts

Section 3 07 **Inspection.** All documents required to be maintained at the Principal Office pursuant to Section 3 03, as well as true and full information regarding the state of the Company's business, financial condition and other information regarding the affairs of the Company shall be made available upon reasonable demand for any purpose reasonably related to the Member's interest as a Member, during ordinary business hours for inspection and copying at the expense of the Member.

Section 3 08 **Fiscal Year.** The fiscal year of the Company shall be the calendar year. The books and records of the Company shall be closed and balanced at the end of each Company fiscal year

## Article IV. NAMES AND ADDRESSES OF MEMBERS

Section 4 01 **Member Information.** The Board shall maintain a schedule of all Members on Exhibit A, their respective mailing addresses and the amount and series of Units held by them. The Board is authorized and empowered to cause Exhibit A to be amended, updated, supplemented or modified from time to time to reflect the admission or withdrawal of Members to the extent permitted hereunder, a change in a Member's address, the sale, grant, issuance or redemption of Units or other event that results in a change in the information on Exhibit A; and any such amendment, which shall not require the consent, approval or vote of the Members, shall be effective as of the date of the event necessitating such amendment

## Article V. MEETINGS OF MEMBERS

Section 5 01 **Meetings.** Meetings of the Members holding voting Units, for any purpose or purposes, unless otherwise prescribed by statute, may be called by the Board or any Member or group of Members holding at least twenty percent (20%) of the voting power of the Units. The chairman of the Board (the "Chairman") shall preside at all meetings of the Members

Section 5.02 **Place of Meetings.** The Board may designate the Principal Office or any other place that is reasonably accessible, either within or outside the State of Ohio, as the place of meeting for any meeting of the Members. If no designation is made, or if a special meeting is otherwise called, the place of meeting shall be at the Principal Office. To the extent permitted by law, Members may participate in a meeting through the use of telephone conference or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting in such manner shall constitute presence in person at such meeting.

Section 5.03 **Record Date.** For the purpose of determining Members entitled to notice of, or to vote at, any meeting of Members or any adjournment thereof, or Members entitled to receive payment of any distribution, or in order to make a determination of Members for any other purpose, the date on which notice of the meeting is mailed or the date on which the resolution declaring such distribution is adopted, as the case may be, shall be the record date for such determination of Members When a determination of Members entitled to vote at any meeting of Members has been made as provided in this Section 5.03, such determination shall apply to any adjournment thereof

Section 5.04 **Quorum.** Members holding a majority of the voting power of all Units entitled to vote on the matters to be presented at a meeting of the Members, whether represented in person or by proxy shall constitute a quorum at such meeting In the absence of a quorum at any such meeting, the Members holding at least two thirds (2/3) of the voting power of the Units so represented may adjourn the meeting from time to time for a period not to exceed 60 days without further notice other than announcement of the meeting However, if the adjournment is for more than 60 days, or if after the adjournment a new record date is fixed for the adjourned meeting, then a notice of the adjourned meeting shall be given to each Member of record entitled to vote at the meeting. At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally noticed. The Members present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal during such meeting of that number of Units whose absence would cause less than a quorum

Section 5.05 **Manner of Acting** The affirmative vote of Members holding at least a majority of the voting power of all Units entitled to vote on the action shall be the act of the Members, unless the vote of a greater or lesser proportion or number is otherwise required by the Act, the Articles or this Agreement For purposes of determining which Members can vote, transferees of Units that are not admitted as Members shall not be entitled to vote on any matter and that the Units held by such transferees shall not count as part of the calculation of the amount of Units outstanding.

Section 5.06 **Notice.**

(a) Notice stating the place, day and hour of the meeting and, in case of a special meeting, the purpose or purposes for which the meeting is called, shall be given to each Member entitled to vote at such meeting not less than ten (10) nor more than fifty (50) days before the date of the meeting by or at the direction of any person calling the meeting to each Member of record entitled to vote at such meeting

(b) Notice to Members of record shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt), (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by or email (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail (in each case, return receipt requested, postage pre-paid) Notices must be

sent to the Members at the addresses shown in Exhibit A

Section 5.07 **Waiver of Notice.**

(a) When any notice is required to be given to any Member of the Company under the provisions of the Act or under the provisions of the Articles or this Company Agreement, a waiver thereof in writing signed by the person entitled to such notice, whether before, at or after the time stated herein, shall be equivalent to the giving of such notice

(b) By attending a meeting, a Member

(i) waives objection to lack of notice or defective notice of such meeting unless the Member, at the beginning of the meeting objects to the holding of the meeting or the transaction of business at the meeting, and

(ii) waives objection to consideration at such meeting of a particular matter not within the purpose or purposes described in the meeting notice unless the Member objects to considering the matter when it is presented.

Section 5 08 **Action Without a Meeting.** Action required or permitted to be taken at a meeting of the Members may be taken without a meeting if such action is set forth in a written consent that is distributed to all Members and is subsequently approved by the Members holding a majority of the voting power of the Units entitled to vote on the action, unless the approval of a greater or lesser proportion or number or separate approval is required by the Act, Articles or this Agreement, and such approval is evidenced by one or more written consents describing the action taken, signed by the requisite number of qualified Members and delivered to the Company for inclusion in the minutes of the Company or for filing with the Company records Action taken under this Section 5 08 is effective when the requisite number of qualified Members have signed the consent, unless the consent specifies a different effective date. The record date for determining Members entitled to take action without a meeting shall be the date the first Member signs a written consent. Notice of any action taken under this Section 5.08 shall be given to each Member who did not sign a written consent with respect to such action.

Section 5 09 **Proxies.** At all meetings of Members, a Member may vote in person or by proxy executed in writing by the Member or by his duly authorized attorney-in-fact. Such proxy shall be filed with the Company before or at the time of the meeting No proxy shall be valid after three (3) months from the date of its execution, unless otherwise provided in the proxy.

Section 5 10 **Liability of Members.** No Member shall be liable for the liabilities of the Company The failure of the Company to observe any formalities or requirements relating to the exercise of powers or management of its business or affairs under this Company Agreement or the Act shall not be grounds for imposing personal liability on the Members or the Board for liabilities of the Company The Company shall indemnify each Member, in the Member's capacity as a Member, for any act performed by the Member with respect to Company matters, except for gross negligence or intentional misconduct by the Member.

Section 5.11 **Representations and Warranties.** Each Member represents and warrants that (a) the Member is acquiring its Units in the Company for the Member's own account as an investment and without an intent to distribute the Units, (b) the Member is aware that no market may exist for the resale of the Member's Units in the Company and (c) the Member is aware of any and all restrictions imposed by the Company on the further distribution of the Member's Units, including, as applicable, but not limited to any restrictive legends appearing on a Certificate of Membership, holding periods, stop transfer orders, or

buy-back rights of the Company or the holders of the Units The Member acknowledges that the Units have not been registered under the Securities Act of 1933 or any state securities laws and may not be resold or transferred by the Member without appropriate registration or the availability of an exemption from such requirements.

Section 5.12 **Conflicts of Interest.**

(a) A Member shall be entitled to enter into transactions that may be considered to be competitive with, or a business opportunity that may be beneficial to, the Company, it being expressly understood that some of the Members may enter into transactions that are similar to transactions into which the Company may enter.

(b) All contracts for products or services between a Member or an affiliate or other party related to a Member and the Company shall require the unanimous consent of the Members holding all of the voting power of the Units entitled to vote on the action

Section 5 13 **Compensation and Reimbursements of Members.** No Member shall receive any payment for services rendered to the Company except upon unanimous approval of the Members Subject to the Company's budget, including budgeted reserves, each Member shall be reimbursed for direct out-of-pocket expenses incurred by the Member on behalf of the Company.

Section 5 14 **Guarantees.** To the extent that any lender requires a personal guarantee of its loan and all of the Members agree to personally guarantee such loan, the Members agree that any guarantee by the Members shall be limited to a percentage of the loan equal to their respective Sharing Ratios The Members intend that each Member shall be responsible for each Member's proportionate share of the total loan guarantees based on the Member's Sharing Ratio in the Company If a guarantee by a Member is of a loan approved by all other Members and if the Member pays more than the Member's proportionate share of the loan pursuant to a guarantee, the other Member(s) shall be obligated to pay to such Member the excess of the amount paid by such Member over the Member's proportionate share

## Article VI. MANAGEMENT

Section 6 01 **Board of Managers.** Subject to the limitations imposed by the Act, the Articles, and this Agreement, the business and affairs of the Company shall be managed, operated, and controlled by or under the direction of the Board Subject to the provisions of Section 6.03, the Board shall have full and complete discretion to (a) manage and control the business, property, activities, and affairs of the Company, (b) make all decisions affecting the business, property, activities, and affairs of the Company, and (c) take all such actions as he or she deems necessary or appropriate The actions of the Board taken in accordance with the provisions of this Agreement shall bind the Company No other Member of the Company shall have any authority or right to act on behalf of or bind the Company, unless otherwise provided herein or unless specifically authorized by the Board pursuant to a resolution expressly authorizing such action

(a) The Company may have up to three (3) natural persons on its Board of Managers, but shall have one (1) natural person as a member of its Board of Managers (individually, each a "Manager" and, collectively, "Managers") so long as Raymond Schneider serves as a Manager The Class A Members by the written consent of the Class A Members holding at least a majority of the voting power of the Class A Units shall be entitled to designate the Manager(s). The Class A Members designate Raymond Schneider as the initial Manager and he shall serve until his death or resignation Each Manager other than Raymond Schneider shall serve until a successor is duly appointed, or until the earlier of the resignation, removal or death of such Manager A Manager may be removed only for Cause as determined by unanimous vote of

the Members holding all the voting power entitled to vote on the action (excluding the person in question). "Cause" means intentional misconduct or gross negligence in the management of the Company's affairs A Manager may resign at any time by giving written notice to the Members The resignation of a Manager shall take effect upon receipt of notice thereof or at such later time as may be specified in such notice A Board vacancy will be filled by the written consent of the Members holding at least a majority of the voting power of the Units entitled to vote on the action. In the event of any vacancy, the Company and each Member hereby agree to take such actions as may be required to ensure the election or appointment of such designee to fill such vacancy on the Board Notwithstanding anything to the contrary in this Agreement, the Articles, the Act or any common law, no Member shall have cumulative voting rights with respect to any action to be taken by the Members, including the election of Managers.

(b) Any action under this Agreement requiring the consent of or determination or approval of the Board, will require the consent or approval of a majority of the Managers or, if the action is taken at a meeting at which a quorum is present, by a majority of the Managers present at such meeting

(c) Meetings of the Board may be called by the Chairman on 5 business days' notice to each Manager, either delivered personally or electronic mail (with confirmation of transmission) Meetings may be held at such times and places as may be designated in the notices of their call, or they may be held at any time or place, without notice, by the presence of all Managers

(d) At all meetings of the Board, a majority of the Managers in office shall be necessary to constitute a quorum for the transaction of business, and the acts of a majority of the Managers present at a meeting at which a quorum is present shall be the acts of the Board Managers who have a personal or financial interest in a contract or transaction which is before the Board, or who are common managers or directors of the Company and another Person with respect to which a contract or transaction is before the Board, may be counted in determining the presence of a quorum at a meeting of the Managers, or a committee thereof. If a quorum shall not be present at any meeting of Managers, the Managers present thereat may adjourn the meeting from time to time, without notice other than announcement of the meeting, until a quorum shall be present

(e) To the extent permitted by law, Managers may participate in a meeting of the Board or any committee thereof through the use of telephone conference or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting pursuant to this Section 6 01(e) shall constitute presence in person at such meeting

(f) Any action required or permitted to be taken at a meeting of the Board may be taken without a meeting if such action is approved by an unanimous written consent of all of the Managers, and such approval is evidenced by one or more written consents describing the action taken, signed by all of the Managers and delivered to the Company for inclusion in the minutes of the Company or for filing with the Company records. Such action taken is effective when the consent is signed by all of the Managers, unless the consent specifies a different effective date

(g) The Chairman may be designated by the vote of the Members holding at least a majority of the voting power of Units entitled to vote on the action, who shall preside over all meetings of the Board The initial Chairman shall be Raymond Schneider

(h) The Board may from time to time establish committees and any committee shall have and may exercise all of the powers and authority conferred on such committee by the Board.

Section 6 02 **Authority of the Board.** The Board may delegate to one or more individuals or entities the authority to act Without limiting the generality of the authority of the Board set forth in Section