# “EXHIBIT O”

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No: 25-12607 |
| Raymond Joseph Schneider, | : | Chapter 11 |
| | : | |
| Debtor and Debtor in Possession. | : | Judge Beth A. Buchanan |

**DEBTOR'S RESPONSE TO FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEBTOR RAYMOND SCHNEIDER**

Debtor Raymond Joseph Schneider (the "Debtor"), submits the following responses and objections to the *First Set of Interrogatories and Requests for Production of Documents to Debtor Raymond Schneider* (the "Requests") submitted by The Huntington National Bank ("Huntington").

No answer, objection, or written response stated in this document shall be deemed an admission that any information requested of the Debtor: (a) exists; (b) is within the possession, custody, or control of the Debtor; (c) is relevant to the subject matter of this case or is reasonably calculated to lead to the discovery of admissible evidence; and/or (d) is admissible evidence in this case. The Debtor is submitting responses that may include information related to third parties, including family members of the Debtor and entities owned by the Debtor, but these are responses of the Debtor and have not been created by those third parties. The Debtor reserves the right to amend and/or supplement these written responses in accordance with the Federal Rules of Civil Procedure as incorporated into this case through the Federal Rules of Bankruptcy Procedure (together, the "Rules").

The Requests and this response arise out of the *Motion of The Huntington National Bank for Authorization to Conduct Rule 2004 Discovery with Respect to the Debtor and Third-Parties* (Doc. 41), which has not been fully ruled upon by the Court. The Debtor incorporates by reference the *Objection to Motion of The Huntington National Bank for Authorization to Conduct Rule 2004 Discovery with Respect to the Debtor and Third-Parties* (the "2004 Objection") (Doc. 69) and all objections made therein without waiver, including the general objections to the undue burden caused by and irrelevance of certain requests. During a discovery conference with the Court, the Debtor agreed to respond to the Requests subject to various adjustments to the scope of certain Requests and with the acknowledgment that certain Requests have already been responded to through the Debtor's document production.

The Debtor's document review and production are ongoing. These responses are based on information presently available to the Debtor following a reasonable search and inquiry, and the Debtor reserves the right to amend, correct, or supplement these responses and his document production as additional information becomes available, in accordance with the Rules. In particular, and as further described below, the Debtor's review of electronically stored information, including a substantial volume of email, is ongoing, and the Debtor will supplement with responsive, non-privileged materials on a rolling basis.

As context for the responses that follow, and as described in Article V of the Disclosure Statement filed in this case, the Debtor's interests in the Entities fall into distinct categories: Operating Companies, in which the Debtor holds a 100% or majority interest and/or exercises management control; Investment Companies, in which the Debtor frequently holds only a small minority interest with no management authority and limited access to books and records; and closed or inactive Entities, certain of which are co-owned with third parties that the Debtor does not control. For Entities the Debtor does not control, the Debtor has provided information to the best of his knowledge but is not in possession, custody, or control of those Entities' complete records, and those Entities are entitled to their own notice and opportunity to respond. The Debtor incorporates this description by reference into the responses below.

Certain of the closed or inactive Entities identified in the Disclosure Statement (the Sosna-related entities) are co-owned entities that were placed under the control of a court-appointed receiver and were administered and liquidated by that receiver. The Debtor did not control these Entities or their assets, the administration and liquidation of which passed to the receiver upon its appointment. Any files relating to these Entities that the Debtor obtained from the receiver are voluminous, are maintained in physical storage, and have not been scanned. Subject to and without waiver of the objections stated in these responses and in the 2004 Objection, the Debtor will make these files available for inspection as they are kept, in accordance with Rule 34(b), at a mutually agreeable time and location. The Debtor incorporates this statement by reference into the responses below.

## SPECIFIC OBJECTIONS TO DEFINITIONS

The Debtor specifically objects to the definitions set forth in the Requests as set forth below. The Debtor reserves the right to seek a protective order should Huntington further demand responses that go outside of the Rules, any agreement, or any order of the Court. Below, the specific definition as set forth in the Requests is first stated in italics, followed by the objection. **Unless specifically stated in a response to a Request, no known documents or information have been withheld on the basis of any of the following objections; the objections have been levied to avoid waiver.**

> **Definition 5:** *"Communication" means any disclosure, transfer, or exchange of information, by any means, and whether orally or by document, or whether face-to-face, by telephone, mail, electronic mail, text message, or personal delivery.*
>
> **OBJECTION:** This definition is overbroad and unduly burdensome. It encompasses virtually every conceivable form of interaction without reasonable limitation. The Debtor will respond in accordance with the applicable Rules, notwithstanding this definition.
>
> **Definition 6:** *"Schneider" means Raymond Schneider and his agents, representatives, attorneys, and all other persons acting or purporting to act on his behalf.*

**OBJECTION:** This definition is overbroad and improperly expands the scope of the Debtor's obligations beyond his personal knowledge and documents within his possession, custody, or control. The Debtor will respond based on his own knowledge and documents in his possession, custody, or control.

**Definition 7:** *"Family Member" means any person related to Schneider by marriage or blood and any trust (revocable or otherwise) in which a person related to Schneider by marriage or blood is a beneficiary.*

**OBJECTION:** This definition is overbroad, vague as to the degree of relation, and unduly burdensome. The Debtor will respond based on his reasonable understanding of close family members and any trust in accordance with the applicable rules.

**Definition 8:** *"Document" shall include, without limitation, all written, typewritten, handwritten, recorded, or printed matter of any kind, including, without limitation, the originals and all non-identical copies thereof, whether different from the originals by reason of any notation made upon such copies or otherwise, including, again without limitation, minutes and/or other records of meetings, agendas, bills, contracts, leases, assignments, agreements, contracts, summaries of negotiations, account books, orders, invoices, statements, bills, checks, accounting records, vouchers, summaries, diaries, forecasts, studies, drawings, graphs, charts, reports and/or summaries of investigations or reports, strategic or business plans or summaries, brochures, pamphlets, publications, circulars, advertisements, trade letters, press releases, statements of policy, correspondence, letters, telegrams, interoffice and intra-office communications, offers, notations of any sort of conversations, appointment books or calendars, teletypes, telefax, thermafax, confirmations, computer files, printouts of computer files, computer data (including, but not limited to, information or programs stored in a computer, whether or not ever printed out or displayed); all drafts, alterations, modifications, changes, and amendments of any of the foregoing; all graphic or manual records or representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotape, records, motion pictures, and electronic, mechanical, or electric records or representations of any kind, including, without limitation, tapes, cassettes, disks, magnetic cards, and recordings; emails, text messages, and all other similar material.*

**OBJECTION:** This definition is overly broad and unduly burdensome, encompassing virtually every conceivable form of record or data without reasonable limitation, including nonsensical categories like "thermafax" or "magnetic cards." It is further unduly burdensome to the extent that it demands production of versions and copies of documents without limitation. The Debtor will produce documents in accordance with the Rules, notwithstanding this definition.

**Definition 9:** "*All documents" shall mean every document, whether an original or copy, as defined herein, known to you, and every such document of which you have knowledge or which you can locate or discover by reasonable diligent efforts.*

**OBJECTION:** This definition imposes an unreasonable duty of investigation beyond what is required by the Rules. The Debtor will produce responsive, non-privileged documents in his possession, custody, or control.

**Definition 13:** *"State the Basis" with respect to any given allegation or proposition means to identify: (a) each person who has or purports to have knowledge of the facts underlying the allegation or proposition; (b) each document used or relied upon to formulate, or which supports or substantiates, the allegation or proposition; and (c) the rationale and each fact supporting the allegation or propositions.*

**OBJECTION:** This definition imposes requirements beyond the scope of the applicable Rules and is unduly burdensome. It turns what would otherwise be permissible interrogatories into burdensome questions with multiple subparts.

**Definition 14:** *"Refer," "relate," "reflect," "regard," "refer to," "relate to," "relating to," and "concerning" (or forms thereof) shall mean directly or indirectly (in whole or in part) referring to, relating to, connected with, commenting on, relevant to, impinging or impacting upon, affecting, responding to, showing, describing, representing, supporting, contradicting, stating, mentioning, evaluating, recording, noting, analyzing, reflecting, or constituting.*

**OBJECTION:** These definitions are vague and overbroad. The Debtor will respond based on a reasonable interpretation.

**Definition 15:** *"You" or "your" refer to defendant Schneider and his agents, representatives, attorneys, and all other persons acting or purporting to act on his behalf.*

**OBJECTION:** This definition is overbroad and improperly expands the scope of the Debtor's obligations beyond his personal knowledge and documents within his possession, custody, or control. The Debtor will respond based on his own knowledge and documents in his possession, custody, or control.

**Definition 18:** *"Identify" and "identification" shall mean...* [detailed subparts].

**OBJECTION:** This definition adds requirements not mandated by the Rules and is unduly burdensome. The Debtor will use reasonable efforts to identify as required by the Rules. Moreover, to the extent that a Request requires to identify a document and that document is being or has been produced, the Debtor is permitted under Rule 33(d) to produce the document due to the burden of identification being substantially the same on Huntington as it is the Debtor.

## SPECIFIC OBJECTIONS TO INSTRUCTIONS

The Debtor specifically objects to the following instructions. The Debtor reserves the right to seek a protective order if needed. **Unless specifically stated in a response to a Request, no known documents or information have been withheld on the basis of any of the following objections; the objections have been levied to avoid waiver.**

**Instruction A, B, & C**: Related to detailed privilege and log requirements.

**OBJECTION:** These instructions impose requirements beyond those set forth in the applicable Rules for claiming and logging privilege. The Debtor will provide a privilege log to the extent and in the format required by the Rules.

**Instruction D**: *If any document responsive to any Request has been destroyed, set forth (i) the identity of all persons who participated in, or who were involved in, the decision to destroy such document, (ii) any document retention or destruction policy under which such document was destroyed and any and all persons who participated in, or who were involved in, the formulation of any such policy, (iii) the reason for the destruction of such document, and (iv) the date (or approximate date if precise date is not known) of the destruction of such document.*

**OBJECTION:** This instruction is unduly burdensome and exceeds Rule requirements by requiring a substantial amount of information about documents that may have been discarded in the ordinary course of the Debtor's business or otherwise destroyed in normal fashion. It further has the effect of adding Interrogatories that would go beyond the permissible number under the Rules. Notwithstanding the foregoing, in the event that the Debtor believes a requested document has been destroyed and can even identify such a document, the Debtor will provide such information as he is able to identify for such document.

**Instruction I**: *Unless otherwise stated, the relevant time period for these Requests shall be from January 1, 2018 through the present.*

**OBJECTION:** The Debtor restates the objection to the time period of the Requests as set forth in the 2004 Objections as being irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case.

**Instruction J**: *These responses are continuing in nature, and when new knowledge or information comes to your attention, responses shall be supplemented forthwith.*

**OBJECTION:** This instruction adds requirements that go beyond the scope of the Civil Rules. Specifically, Rule 26(e) does not require supplementation of information later acquired if the response was complete at the time made, except for certain instances specifically described in the Rule such as if the party learns that in some material respect the disclosure or response was incomplete or incorrect.

The Debtor will supplement in accordance with the Rules notwithstanding this broad instruction.

## RESPONSES TO INTERROGATORIES

**1. Identify the person(s) responding to these Requests, including all persons who were consulted or who assisted in preparing answers to these Requests, identifying which questions each person answered or assisted in answering.**

**RESPONSE:**

Information gathered in response to the Requests has primarily been from the Debtor. During the course of the preparation of the Debtor's schedules, disclosure statement, and other filings in the bankruptcy case, information has been provided that also would have been incorporated into these responses from multiple employees of Circle Development of Cincinnati, LLC, including those set forth below. Due to the overlapping nature of the Requests and multiple sources draw from in responding, it is not possible to identify exactly which person contributed to which Request.

Dennis Packer, General Corporate Counsel
Abigail Smith, Personal Assistant to Raymond Schneider
Jennifer Whitaker Burris, Controller
Gregg Lund, former financial advisor

**2. Identify all Entities (including, without limitation, those Entities listed in the attached Exhibit A) in which Schneider directly or indirectly has held any type of ownership interest from January 1, 2018 through the present, and state (a) the state of formation of each Entity; (b) the nature of the business of each Entity; (c) the nature of the ownership interest Schneider and/or a Family Member and/or a Trust has or had in each such Entity; and (d) the period of time Schneider and/or the Family Member and/or a Trust has held the ownership interest. Identify all corporate organizational documents for each Entity identified herein, including, without limitation, by-laws, membership agreements, shareholder agreements, partnership agreements, and any other similar document, as well as any document which addresses the rights and restrictions concerning the transferability of such ownership interests. Furthermore, identify (i) all federal and state tax returns of each of these Entities from January 1, 2018 through the present; (ii) all financial statements (income statements and balance sheets) of each Entity from January 1, 2018 through the present; and (iii) if the Entity owns real estate, the most recent appraisal of that real estate.**

**RESPONSE:**

**OBJECTION:** This request is overly broad, unduly burdensome, and seeks information that is irrelevant to the administration of the estate and the Debtor's current financial condition, as set forth in the 2004 Objection, particularly to the extent it demands eight years of corporate organizational documents, tax returns, financial statements, and appraisals for more than 100 separate Entities, including Entities the Debtor does not own or control and that are entitled to their own notice and opportunity to object. The request is

further unduly burdensome to the extent that it requires the Debtor to identify numerous documents over a span of more than eight years. The Debtor has produced documents in response to the RFPs that are responsive to the document-identification requirements of this Request, organized into specific folders for each company with other documents (such as financial statements) labeled with the applicable entity names, and including, based on a reasonable search by the Debtor, tax returns, financial statements, and appraisals. The answers may be derived from those documents in accordance with Rule 33(d), and accordingly no separate document-identification response is being provided.

The Debtor further notes that, as described in Article V of the Disclosure Statement, his interests fall into distinct categories: Operating Companies in which he holds a 100% or majority interest and/or exercises management control; Investment Companies in which he frequently holds only a small minority interest with no management authority and limited access to books and records; and closed or inactive Entities, certain of which are co-owned with third parties (including the Sosna-related entities) that the Debtor does not control. For Entities the Debtor does not control, he has provided information to the best of his knowledge but is not in possession, custody, or control of complete organizational, tax, and financial records, and those Entities are entitled to their own notice and opportunity to respond.

The Debtor further objects that Huntington's Exhibit A contains duplicate listings and entities that are misidentified or in which the Debtor holds or held no interest. By way of example only, "9617 Kenwood Road Development, LLC" is listed twice and is the former name of a single entity now known as The Blue Development Company, LLC; "Boston Self Storage LLC" and "Boston Self Storage, LLC," and "Soft Pouch Equipment LLC" and "Soft Pouch Equipment, LTD.," are each listed as separate entities; and several listed entities (including Beechwood Terrace Care Center, Inc. and Pleasant Ridge Realty, LLC) are not owned by the Debtor.

Without waiving the foregoing objection, the Debtor has produced Schedule 2, which sets forth, for the Entities responsive to this Request and to the best of the Debtor's knowledge, (a) the name; (b) the state of formation; (c) the date of formation and, if applicable, dissolution; (d) the Debtor's ownership interest; (e) whether the Debtor controls the Entity; (f) the category of the Entity; and (g) the tax status and related notes. Article V of the Disclosure Statement (Sections D, E, and F) provides further detail for many of these Entities, including their assets, approximate values, associated liens and lienholders, ownership percentages, and a description of operations, and Article VII.D describes certain ownership transfers among the Entities, Trusts, and Family Members. The organizational documents, tax returns, financial statements, and appraisals responsive to the document-identification portions of this Request have been produced and organized by Entity, and the responsive information may be derived from those documents in accordance with Rule 33(d). Many of the Entities are disregarded entities that file no separate tax returns, as reflected in Schedule 2. As to the Sosna-related Entities, the Debtor refers to the statement regarding the Sosna receivership files set forth above.

**3. Identify all persons, management teams, controllers, chief financial officers, bookkeepers, accounting firms, and accountants who have prepared personal financial statements, tax returns, and financial statements for (a) Schneider, (b) a Trust, and/or any Entity in which Schneider directly or indirectly has held an ownership interest, from January 1, 2018 through the present. For the avoidance of doubt, this request encompasses all persons (i) directly employed by Schneider and/or a Trust and/or any Entity in which Schneider has held an ownership interest, or (ii) any third-party vendor used by Schneider and/or a Trust and/or any Entity in which Schneider has held an ownership interest.**

**RESPONSE:**

**OBJECTION:** This request is overly broad and unduly burdensome to the extent it seeks the identification of every person and third-party vendor involved in preparing financial statements and tax returns for more than 100 Entities and the Trusts over a span of more than eight years, much of which is irrelevant to the administration of the estate, as set forth in the 2004 Objection. The Debtor will identify the persons and firms known to him without undertaking an entity-by-entity reconstruction of every preparer over the entire period.

Subject to and without waiving the objection to the definition of "Identify," the Debtor identifies the following to the extent of his knowledge, in addition to those persons states in response to Interrogatory 1:

**Prior Controllers:**
Information as to present employment and contact information is unknown at this time.

Matthew J. Hay
Chris Eldridge
David C. Kennedy
Kathleen Tanner
John Murley (Controller immediately preceding the present Controller; departed the position on or about June 30, 2025)

**Outside Accountants**

Candace J. Salazar
Address: PO Box 25, Milford, OH 45150
Telephone: 513-236-0521
Business Affiliation: Candace J. Salazar, CPA

Seibel & Katz CPA
Address: 3814 West Street Suite 311, Cincinnati, OH. 45227
Telephone: 513-271-7835

Gregg Lund, former financial advisor

The preparer identity for any specific tax return may also be derived from the face of the documents produced in response to the RFPs in accordance with Rule 33(d).

**4. For all the Entities identified in response to Interrogatory 2 above, state (a) whether any part of Schneider's and/or a Trust and/or a Family Member's ownership interest in an Entity was transferred between January 1, 2018 and the present; (b) the date of the transfer; (c) the recipient of the transferred ownership interest; and (d) the terms of the transfer, including, without limitation, the consideration received by Schneider and/or a Trust and/or a Family Member. Identify all documents which refer to the transfer, including, without limitation, all written agreements containing the terms of the transfer.**

**RESPONSE:**

OBJECTION: This request is overly broad, unduly burdensome, and seeks information beyond the scope of Rule 2004 and irrelevant to the administration of the estate, as set forth in the 2004 Objection, particularly to the extent it seeks transfers among Family Members and third parties that did not involve the Debtor and to the extent it reaches transfers outside any applicable limitations period. In relation to the request to identify documents and explain the terms of transactions, the Debtor has produced documents in response to the RFPs from which the answers can be derived in accordance with Rule 33(d). As a result, no separate document-identification response is being provided.

The identification of any transfer in this response is not an admission that the transfer is avoidable or that consideration was inadequate. As set forth in Article VII.D of the Disclosure Statement, transfers were made for legitimate estate-planning and business purposes, at times when the Debtor was solvent, and without intent to hinder, delay, or defraud any creditor. Certain of these transfers are identified in the Disclosure Statement as potential Retained Actions that will be independently evaluated by the Retained Actions Representative.

Without waiving the foregoing objection, the Debtor identifies the following transfers of ownership interests:

Grasshopper Investments, LLC.

Effective October 6, 2020, Grasshopper Investments, LLC was recapitalized into Class-A (voting) and Class-B (non-voting) Units. In connection with the recapitalization, Schneider-Grasshopper, Inc. (an S-corporation of which the Debtor is the sole shareholder) acquired 2 Class-B Units in exchange for a cash capital contribution of $29,197.12.

Transfer of 396 Class-B Units by the Debtor to Patricia Schneider by gift. Date: November 1, 2020. Terms: See Assignment of Class-B Units (Grasshopper Investments 11.1.20).

Transfer of 396 Class-B Units by Patricia Schneider to the Patricia B. Schneider 2020 Gift Trust by gift. Date: December 31, 2020. Terms: See Assignment of Class-B Units (Grasshopper Investments 12.31.20).

Red Dog Operations Holding Company, LLC (2020 transfers).

Restricted Unit Grant to Eric Schneider. Date: effective January 1, 2020. Terms: Eric Schneider was granted up to 2,000 Class-C profits-interest units, of which 500 vested immediately and the remainder vested over time. See Restricted Unit Grant Agreement to Red Dog Operations Holding Company, LLC dated January 1, 2020; see also the response to Interrogatory No. 17.

Transfer of 6,999 Class-B Units by the Debtor to Patricia Schneider by gift. Date: November 1, 2020. Terms: See Assignment of Class-B Units (Red Dog Operations Holding Company 11.1.20).

Transfer of 6,999 Class-B Units by Patricia Schneider to the Patricia B. Schneider 2020 Gift Trust by gift. Date: December 31, 2020. Terms: See Assignment of Class-B Units (Red Dog Operations Holding Company 12.31.20).

Transfer of 1,000 Class-B Units by the Debtor to Eric Schneider by gift. Date: December 31, 2020. Terms: See Assignment of Class-B Units (Red Dog Operations Holding Company – 1,000 Units – 12.31.20).

Following these 2020 transfers, the Debtor retained a single Class-A (voting) unit, representing the minority interest in the Red Dog enterprise that he held going into the 2024 reorganization and sale described below.

To Life, Ltd.

Transfer of 720 Class-B Units by the Debtor to the Raymond Schneider 2019 Gift Trust by gift. Date: December 31, 2019. Terms: The Class-B membership interest was transferred by gift, without monetary consideration, as part of the Debtor's estate plan. As described in Article V.E.11 and Article VII.D.1 of the Disclosure Statement, To Life, Ltd. was recapitalized in 2019 into Class-A and Class-B membership interests, and on December 31, 2019 the Debtor gifted his Class-B interest to the Raymond Schneider 2019 Gift Trust. See documents produced (To Life recapitalization and assignment documents and trust formation documents); see also the response to Interrogatory No. 16.

The Blue Development Company, LLC fka 9617 Kenwood Road Development, LLC.

Transfer of 100% of the membership interests by the Debtor to the Raymond Schneider 2019 Gift Trust. Date: September 1, 2024. Consideration: A promissory note in the principal amount of $1,485,000.00, bearing interest at five percent (5%) per annum, maturing September 1, 2026, with a balance of $1,633,500.00 due at maturity if no payments are made in the interim (the "Blue Promissory Note"). Terms: As described in Article VII.D.5 and Article V.L of the Disclosure Statement, the sale was undertaken to facilitate development of a mixed-use project on the entity's real property in conjunction with the City of Blue Ash, Ohio, which

could not proceed while the property remained in a company owned solely by the Debtor, and was made for the value of the equity in the real estate after accounting for existing liens. See documents produced (membership interest transfer documents and the Blue Promissory Note); see also the response to Interrogatory No. 16.

Techwoods Circle RD, LLC.

Transfer of 100% of the membership interests by the Debtor to KPT7 Holding Company, LLC. Date: February 6, 2025. Consideration: $324,771.99 in cash. Terms: As described in Article VII.D.6 and Article V.E.8 of the Disclosure Statement, the sale was undertaken to facilitate development of the entity's real property, which could not proceed while the property remained in a company owned solely by the Debtor, and was made for the value of the equity in the real estate after accounting for existing liens. See documents produced.

Red Dog Operations Holding Company, LLC; KPT7 Holding Company, LLC; Kindred Pet Service Holdings, LLC (2024 reorganization and sale).

The Debtor's interest in the Red Dog enterprise was held through KPT7 Holding Company, LLC, in which the Debtor holds a 0.01% interest, Eric Schneider holds a 35% interest, and the Patricia B. Schneider 2020 Gift Trust holds a 64.99% interest. In connection with the 2024 sale of the Red Dog operating business, and as described in Article VII.D.4 of the Disclosure Statement:

*Pre-closing restructuring.* Prior to the closing, (i) the Debtor contributed 100% of the membership interests of Red Dog Management Company, LLC to Red Dog Operations Holding Company, LLC, and (ii) Red Dog Operations Holding Company, LLC transferred out the membership interests of Boston Animal Hospital, LLC and North Station Animal Hospital, LLC (collectively, the "Restructuring"). In addition, effective as of November 1, 2024, the Debtor, Eric Schneider, and the Patricia B. Schneider 2020 Gift Trust each contributed their respective membership interests in Red Dog Operations Holding Company, LLC to KPT7 Holding Company, LLC, in exchange for membership units in KPT7 Holding Company, LLC.

The contribution of the Red Dog interests to KPT7 was equity-neutral as to the Debtor. The contribution of the membership interests of Red Dog Operations Holding Company, LLC to KPT7 Holding Company, LLC was a reorganization of the form in which the existing owners held their interests, undertaken to consolidate the ownership of the Red Dog enterprise into a single holding entity in anticipation of the sale. It was not a transfer by which the Debtor parted with equity: each contributing owner (the Debtor, Eric Schneider, and the Patricia B. Schneider 2020 Gift Trust) received membership units in KPT7 Holding Company, LLC equal in agreed value to the interests each contributed, in a transaction treated as a contribution under 26 U.S.C. § 721. The Debtor's resulting 0.01% interest in KPT7

Holding Company, LLC corresponds to the minority interest in the Red Dog enterprise that the Debtor had retained following the 2020 transfers of the majority of that interest to his Spouse (and, in turn, the Patricia B. Schneider 2020 Gift Trust) and to Eric Schneider. The Debtor's interest in the enterprise was therefore not diminished by the 2024 reorganization; the transfers that reduced the Debtor's interest occurred in 2020 and are separately identified above.

*The sale.* On November 15, 2024, KPT7 Holding Company, LLC, as seller, contributed twenty-five percent (25%) of the membership interests of Red Dog Operations Holding Company, LLC to Kindred Pet Service Holdings, LLC, a Delaware limited liability company, in exchange for 4,500 Class-A Units of Kindred Pet Service Holdings, LLC (the "Rollover Equity"), and sold the remaining seventy-five percent (75%) of those interests to Kindred Pet Service Holdings, LLC for cash consideration as set forth in the Membership Interest Purchase and Contribution Agreement dated November 15, 2024. As a result, KPT7 Holding Company, LLC holds the Rollover Equity in Kindred Pet Service Holdings, LLC, which owns Red Dog Operations Holding Company, LLC. The Debtor also caused several of his other companies to enter into long-term leases with the new operator for real estate owned by those companies.

*See* documents produced (the Membership Interest Purchase and Contribution Agreement dated November 15, 2024; the related Contribution Agreements dated October 31, 2024; the assignments of Contributed Interests and Purchased Interests; the KPT7 Holding Company, LLC operating agreement; and the related reorganization documents).

Monarch RD, LLC.

Transfer of the entity's real property to Circle Storage Operating Company I, LLC. Date: September 9, 2020. Terms: The property was transferred to be combined with the adjacent existing Circle Storage facility. See documents produced. (Identified for completeness; this was a transfer of the entity's real estate rather than of an ownership interest in the entity.)

RD Realty I, LLC.

Contribution of the Debtor's 100% membership interest in RD Realty I, LLC to Hyde Park Circle, LLC, an entity in which the Debtor holds a 100% membership interest, undertaken to simplify accounting and banking. Terms and date: See documents produced. (Both entities are wholly owned by the Debtor.)

**5. For all the Entities identified in response to Interrogatory 2 above, state whether Schneider and/or a Trust and/or a Family Member has received any income or other assets from that Entity from January 1, 2018 through the present, including, without limitation, any salary, distributions, dividends, or other payments of cash, personal property,**

**or real estate, and state (a) the date of the transfer or payment[1], (b) the amount paid or transferred, or as applicable the property transferred as well as the value of the property transferred, (c) the recipient of the payment or transfer, and (d) the terms of the transfer. Identify all documents which refer to the transfer or payment, including, without limitation, all written agreements containing the terms of the payment or transfer, as well as all documents used to report the transfer or payment to the IRS (i.e., W-2, or 1099 form, etc.).**

**RESPONSE:**

**OBJECTION:** This request is overly broad, unduly burdensome, and seeks information irrelevant to the administration of the estate, as set forth in the 2004 Objection, particularly to the extent it seeks income and distributions received by Family Members and the Trusts (as opposed to the Debtor) and to the extent it reaches transactions outside any applicable limitations period. This request is further unduly burdensome to the extent that it requires the Debtor to identify numerous transactions and documents for the span of over eight years. The Debtor has produced documents in response to the RFPs that are responsive to the numerous document identification requirements of this Request, and the answers can be derived from those documents in accordance with Rule 33(d). These documents include all of the Debtor's filed tax returns, tax support documents, personal bank statements, and other documents from which the Debtor's personal income and transactions can be determined. The Debtor is also producing data compiled from various entities showing income and distributions to Family Members from which additional information can be derived. Certain of that information is still in the process of being compiled and will be supplemented.

Consistent with the agreement reached at the discovery conference in this matter, this response addresses transactions in excess of $50,000.00, and, consistent with the footnote to this Request, recurring cash transfers are set forth on an aggregate annual basis. Notwithstanding the agreed threshold, the Debtor is providing additional records reflecting W-2/1099 earnings and distributions from entities that are cumulatively in excess of that amount.

Without waiving the foregoing, and as described in Article II.H of the Disclosure Statement, the Debtor's ongoing sources of income consist of Company Draws received from the Operating Companies, Social Security Income, Colorado Rental Income from the Colorado Property (when rented), and Investment Income (including K-1 distributions) from the Investment Companies. The amounts and sources of the Debtor's income are further reflected in the Debtor's filed tax returns, Schedules, and the Disclosure Statement, including the financial projections set forth in Article VIII of the Disclosure Statement.

As to the Trusts and any Family Member, the receipt of income and distributions derives from the ownership structures described in Article V of the Disclosure Statement. To the extent this Request overlaps with the ownership-interest transfers identified in response to

---

[1] If there are numerous transfers of cash in any given year, the response may be set forth in the aggregate on an annual basis.

Interrogatory No. 4, reference is made to that response. The Debtor has obtained information reflecting W-2 or 1099 income for various Family Members from entities, as well as information regarding distributions from entities, which is being produced in accordance with Rule 33(d). The Debtor does not have possession, custody, or control of complete income or distribution records for Family Members or for Entities that the Debtor does not control. The Debtor has not, to the best of his ability, withheld any information in his possession, custody, or control.

**6. For all Entities identified in Interrogatory 2 above, state each Entity which obtained financing of any type from January 1, 2018 through the present, and state (a) the lender; (b) the date of the financing; (c) the terms of the financing, (d) whether Schneider was a personal guarantor; and (e) the uses of the refinancing proceeds, including whether Schneider and/or a Trust and/or a Family Member received any of the proceeds from the financing. Identify all documents which refer to the financings identified herein, including, without limitation, (i) all loan documents (including, without limitation, all UCC financing statements and security agreements) and closing statements; and (ii) documents containing any financial disclosures made by Schneider personally, including, without limitation, any personal financial statements.**

**RESPONSE:**

**OBJECTION:** This request is unduly burdensome to the extent that it requires the Debtor to identify numerous documents for the span of over eight years. The request is also irrelevant as to the current and even historical financial affairs of the Debtor, and seeks information beyond the scope of Rule 2004, as set forth in the 2004 Objection. The Debtor has produced documents in response to the RFPs that are responsive to the numerous document identification requirements of this Request, and the answers can be derived from those documents in accordance with Rule 33(d). These documents include loan documents that contain dates, loan terms, fund use, and related documents, and the Debtor has further produced, upon reasonable search of his records, personal financial statements related to other lenders. Further stating, various lenders to which the Debtor owes debt obligations have filed their own proofs of claim in this case and the prior bankruptcy filing, to which they attached loan documents, claim balances, and narratives. Finally, the Debtor has identified information about lenders in his Schedules and the Disclosure Statement.

Without waiving any objection, the following is a summary of the financings obtained by the Entities. The date and specific terms of each financing (including principal, rate, maturity, and the related UCC financing statements and security agreements) are set forth in the loan documents produced, from which that information may be derived in accordance with Rule 33(d), and are further reflected in the proofs of claim filed by the respective lenders and in the Debtor's Schedules. To the extent additional documents or information are required to derive information about any of these loans, they may need to be requested from the lender but will be made available upon reasonable request. As to the Sosna-related Entities, the Debtor refers to the statement regarding the Sosna receivership files set forth above.

| **Entity** | **Lender** | **Schneider as Personal Guarantor / Co-Borrower** | **Use of Proceeds** |
|---|---|---|---|
| The Blue Development Company, LLC fka 9617 Kenwood Road Development, LLC | Civista Bank | Co-Borrower | Acquisition of commercial real property at 9617–9651 Kenwood Road, Blue Ash, Ohio |
| The Blue Development Company, LLC fka 9617 Kenwood Road Development, LLC | Civista Bank | Co-Borrower | Acquisition of commercial real property at 9565–9573 Kenwood Road, Blue Ash, Ohio |
| Circle Storage Operating Company I, LLC | First Merchants Bank | Guarantor | Term loan; refinance of storage properties |
| Circle Storage Operating Company I, LLC | First Merchants Bank | Guarantor | Acquisition of commercial real property at 7679 Monarch Ct., West Chester, Ohio; construction and renovation of storage facilities |
| Circle Storage Operating Company I, LLC | First Merchants Bank | Guarantor | Construction/mini-perm and project financing for self-storage facilities, including at 11573 Deerfield Road |
| Circle Development of Cincinnati, LLC | First Federal Savings Bank | Guarantor | Financing of Circle Development of Cincinnati real property |
| Grasshopper Investments II, LLC | Park National Bank | Guarantor | Omni Drive property |
| Hyde Park Circle, LLC | General Electric Credit Union | Guarantor | Financing of Hyde Park Circle real property |
| Hyde Park Circle, LLC | Kemba Credit Union | Guarantor | Financing of Hyde Park Circle real property |
| Madison Warehouse, LLC | Heritage Bank, Inc. | Guarantor | Acquisition of commercial real property at 5027 and 5055 Madison Road |
| The Gatherings of Blue Ash, LLC | Heritage Bank, Inc. | Guarantor | Financing of The Gatherings of Blue Ash real property |
| Mason RD, LLC; Mason Red Dog Pet Resort & Spa, LLC | Civista Bank | Guarantor | Refinance of Mason Red Dog property |
| Northern Kentucky Assisted Living, LLC; Northern Kentucky | Civista Bank | Co-Borrower / Guarantor | Refinance of Ivy Knoll |

| **Entity** | **Lender** | **Schneider as Personal Guarantor / Co-Borrower** | **Use of Proceeds** |
|---|---|---|---|
| Retirement Community, LLC | | | |
| The Red Corner, LLC | Civista Bank | Guarantor | Construction of townhomes |
| Techwoods Circle RD, LLC | Civista Bank | Guarantor | Refinance of acquisition financing |
| Boston RD, LLC | Rockland Trust Company (successor to Blue Hills Bank) | Guarantor | Financing of Boston Red Dog real property |
| North Shore RD, LLC | Rockland Trust Company (successor to Blue Hills Bank) | Guarantor | Financing of North Shore Red Dog real property |
| 5150 East Galbraith Road, LLC (and HRM Realty Holdings, Ltd.) | Stock Yards Bank & Trust Company | Guarantor | Financing of 5150 East Galbraith Road property |
| Montclair Investors, Ltd. | Minnesota Life Insurance | Guarantor | Financing of Montclair Investors real property |
| To Life, Ltd. | Transamerica Life Insurance Company (an Aegon company) | Guarantor | Refinance of existing debt and construction financing |
| Atlanta RD, LLC; Atlanta Red Dog Pet Resort & Spa, LLC | Synovus Bank | Guarantor | Acquisition of property and renovation financing (paid off at closing upon the 2022 sale of the Atlanta property; see response to Interrogatory No. 15) |

Except as may be reflected in the produced loan documents and closing statements, the proceeds of the foregoing financings were used for the entity purposes identified above (acquisition, refinance, and construction), and were not distributed to Schneider, a Trust, or a Family Member.

The Debtor is also a guarantor of, or otherwise secondarily liable on, the obligation owed to Bank of America under the LMA Agreement, which is secured by the Debtor's Merrill Lynch accounts and is addressed in the response to Interrogatory No. 12. To the extent this Request seeks documents containing financial disclosures made by Schneider personally, including any personal financial statements provided in connection with these financings, the personal financial statements have been produced to the best of the Debtor's ability. Reference is made to the responses to Interrogatory Nos. 12 and 14 and to the response to Request for Production No. 2.

**7. Identify all real estate owned in whole or in part personally by Schneider and/or a Trust from January 1, 2018 through the present, and state the address of the real estate; further, state (a) whether the real estate was sold or transferred during this period of time; (b) the date of the sale or transfer; (c) the buyer or recipient of the real property; (d) the terms of the sale or transfer, including the consideration received by Schneider and/or the Trust and/or any Family Member; and (e) whether the real estate is collateral for any loan, and if so, the name of the lender and the current amount of the loan. Identify all appraisals for this real estate and all documents which refer to the sale or transfer of this real estate, including, without limitation, all written agreements containing the terms of the sale or transfer.**

**RESPONSE:**

**OBJECTION:** The Debtor incorporates the general objections set forth in the 2004 Objection, including the objection to the relevant time period. The Debtor has produced documents in response to the RFPs that are responsive to the document identification requirements of this Request, and the answers can be derived from those documents in accordance with Rule 33(d), including copies of the deeds and mortgages to real estate held by the Debtor and any valuation information or appraisals thereof.

Without waiving any objection, all real estate owned by the Debtor, the identification of the liens against those properties, and the value of those properties has been disclosed in the Debtor's Schedules and in the Disclosure Statement. Additional information about the liens can be derived from the proofs of claim filed by the mortgage holders. As set forth in Article V.B of the Disclosure Statement, the Debtor owns three properties:

- The Ohio Property, located at 3515 Tiffany Ridge Lane, Blue Ash, Ohio 45241, owned jointly with the Debtor's Spouse, with a scheduled value of $788,050.00, subject to a first mortgage held by Nationstar in the approximate amount of $100,670.79 (Proof of Claim No. 25). The Debtor has claimed the Ohio homestead exemption in his one-half interest.

- The Maine Property, located at 2 Fort Lane, Kennebunk, Maine 04043, owned jointly with the Debtor's Spouse, with a scheduled value of $2,323,000.00, subject to a first mortgage held by First Merchants in the approximate amount of $2,139,887.74 (Proof of Claim No. 7).

- The Colorado Property, located at 2409 Chamonix Road, Vail, Colorado 81657, owned individually by the Debtor, with a scheduled value of $2,180,000.00, subject to a first mortgage held by Truist in the approximate amount of $421,495.77 (Proof of Claim No. 6).

None of the three properties were sold or transferred during the relevant period, and the Debtor continues to own each as of the date of these responses. Accordingly, subparts (a) through (d) are inapplicable, except that the proposed disposition of each property under the Plan is described in Article V.B of the Disclosure Statement. The Debtor has not

personally owned any other real property during the relevant time period. Notwithstanding that, the Debtor notes that the 2019 PFS referenced elsewhere lists a property called "Eastgate" as being titled to "RBS" by mistake. That property (Clermont County parcel Nos. 413105A156 and 413105A176) has been owned consistently by Grasshopper Investments II, LLC, since August 10, 2005.

To the best of the Debtor's knowledge, none of the Trusts has directly owned any real estate during the stated time period. Any real estate owned by an Entity controlled by a Trust is the subject of the response to Interrogatory No. 8.

As described in Article V.M of the Disclosure Statement, the Debtor has generally not obtained independent appraisals of his real property and has instead relied on county auditor tax-assessed values, which he believes reflect market value. To the extent any appraisal or valuation of the three properties exists, it has been produced. The Plan contemplates that the Debtor will obtain an appraisal of each property within sixty (60) days after the Effective Date, and any such appraisal will be produced when obtained.

**8. Identify all real estate owned in whole or in part by an Entity in which Schneider held an ownership interest from January 1, 2018 through the present, and state (a) whether the real estate was sold or transferred during this period of time; (b) the date of the sale or transfer; (c) the buyer or recipient of the real property; (d) the terms of the sale or transfer, including the consideration received by Schneider and/or a Trust and/or any Family Member; (e) whether the real estate is collateral for any loan, and if so, the name of the lender and the current amount of the loan; and (f) whether the real estate taxes are current, and if not current, the amount and age of the delinquency. Identify all appraisals for this real estate and all documents which refer to the sale or transfer of this real estate, including, without limitation, all written agreements containing the terms of the sale or transfer.**

**RESPONSE:**

**OBJECTION:** This request is overly broad, unduly burdensome, and seeks information beyond the scope of Rule 2004 and irrelevant to the administration of the estate and the Debtor's current financial condition, as set forth in the 2004 Objection. In particular, the request seeks detailed real-estate information for more than 100 Entities over a span of more than eight years, including Entities in which the Debtor holds only a minority interest with no management control and as to which he lacks possession, custody, or control of complete records, and including transactions of Entities that are not transactions of the Debtor and are not avoidable as to the Debtor's estate. The Debtor has produced documents in response to the RFPs that are responsive to the numerous document-identification requirements of this Request, and the answers can be derived from those documents in accordance with Rule 33(d). The Debtor has further provided information about the real estate holdings of his Entities in his various filings in this case, including the Disclosure Statement, and various lenders which hold liens against that real estate have filed their own proofs of claim in this case and the prior bankruptcy filing, to which they attached loan documents, claim balances, and narratives.

Without waiving any objection, see the attached Schedule 8, which sets forth, for the Entities and properties as to which the Debtor possesses responsive information, the property and address, the approximate value, the lienholder and approximate lien balance, the applicable proof of claim, and the status of any sale or transfer during the relevant period. Further detail regarding these properties, including ownership percentages, operations, associated liens, and proposed disposition under the Plan, is set forth in Article V of the Disclosure Statement. As to certain dispositions of Entity-owned real estate during the relevant period, reference is also made to the responses to Interrogatory Nos. 4 and 15. To the extent any field on the attached Schedule 8 is not completed, that information is not within the Debtor's knowledge at this time, and the Debtor will supplement if additional information is received.

For Entities the Debtor does not control, he has provided information to the best of his knowledge but is not in possession, custody, or control of complete real-estate, lien, or valuation records, and those Entities are entitled to their own notice and opportunity to respond. As to the Sosna-related Entities, the Debtor refers to the statement regarding the Sosna receivership files set forth above.

As to subpart (f), to the best of the Debtor's knowledge, real estate taxes on the properties held by the Operating Companies the Debtor controls are current. The Debtor does not have possession, custody, or control of tax-delinquency information for properties held by Entities he does not control. In all events, real estate tax information is a matter of public record maintained by the applicable county auditor, treasurer, or taxing authority, and is equally available to, and may be retrieved as easily by, Huntington as by the Debtor.

As described in Article V.M of the Disclosure Statement, the Debtor has generally not obtained independent appraisals of the Entities' real property and has instead relied on county auditor tax-assessed values, which he believes reflect market value. To the extent any appraisal or valuation exists, it has been produced.

**9. Identify all deposit accounts maintained by Schneider and/or a Trust from January 1, 2018 through the present, and for each, state (a) the name of the depository institution; (b) the dates the deposit accounts were open; (c) the account numbers; and (d) the current balances in each account. Identify the most recent statement for each account which is currently open.**

<u>**RESPONSE:**</u>

**OBJECTION:** The Debtor incorporates the general objections set forth in the 2004 Objection, including the objection to the relevant time period. Subject to and without waiving those objections, and as agreed at the discovery conference in this case, the Debtor responds as follows.

The Debtor has provided bank statements for the deposit accounts that he and the Trusts have held during the requested period, from which the requested account information, including the dates the accounts were open and account numbers, may be derived in accordance with Rule 33(d). To the best of the Debtor's knowledge and recollection, he

has disclosed and provided statements for the deposit accounts that would be responsive to the request, subject to the following: the UBS Account identified in the response to Interrogatory No. 12, which is held in the name of the Joseph Schneider Irrevocable Trust and in which the Debtor holds an approximately one-third beneficial interest as described in that response, includes deposit balances under the UBS FDIC-Insured Deposit Program and the UBS Bank USA Core Savings program, and the Debtor is obtaining and will produce the statements for that account, from which the responsive deposit-account information may be derived in accordance with Rule 33(d).

As reflected in the Debtor's Schedules and Monthly Operating Reports, the cash held in the Debtor's pre-petition deposit accounts was transferred into the Debtor-in-Possession accounts maintained in this case as of, or shortly after, the Petition Date. One pre-petition account was kept open for several months after the Petition Date because it continued to receive the Debtor's Social Security payments, and the funds in that account were subsequently transferred to the Debtor-in-Possession accounts. The current balances of the Debtor-in-Possession accounts, and the dates of any account closures, are reflected in the Monthly Operating Reports filed by the Debtor in this Case, which are updated monthly and equally available to Huntington through the Court's docket.

**10. Identify all safe deposit accounts maintained by Schneider and/or a Trust from January 1, 2018 through the present, and for each, state (a) the name of the depository institution; (b) the dates the deposit box accounts were open; (c) the account numbers; and (d) the contents of the boxes.**

**RESPONSE:**

**OBJECTION:** The Debtor incorporates the general objections set forth in the 2004 Objection.

Subject to and without waiving those objections, to the best of the Debtor's knowledge, neither the Debtor nor any Trust has maintained a safe deposit account during the relevant period.

**11. Identify all stocks, bonds, precious metals, and cryptocurrency owned by Schneider and/or a Trust, and state (a) an itemized accounting of all such assets; and (b) the physical location of those assets or the accounts where those assets are held.**

**RESPONSE:**

**OBJECTION:** The Debtor incorporates the general objections set forth in the 2004 Objection, including the objection to the relevant time period. The Debtor has produced documents in response to the RFPs that are responsive to the identification requirements of this Request, and the itemized accounting requested may be derived from those documents in accordance with Rule 33(d). In particular, as discussed at the discovery conference in this case, the Debtor has provided statements for the various Merrill Lynch accounts where his stocks and bonds are held, and the itemized holdings, their locations, and their values may be derived from those statements.

Without waiving the foregoing, the Debtor's stocks and bonds are held in his Merrill Lynch brokerage accounts. The Debtor's accounts consist of the non-retirement accounts ending in x4923, x4655, x4683, and x3597, and the Debtor's exempt individual retirement account ending in x9663. As reflected on the produced statements, Merrill Lynch reports these accounts in two statement packages and organizes the investments within the accounts into sub-accounts; the Debtor has disclosed and produced statements for the master accounts, and the holdings within any sub-accounts in which Merrill Lynch organizes the investments are reflected on those statements.

As set forth in Article V.C of the Disclosure Statement, the non-retirement accounts had a combined value of approximately $29,522,265 as of March 31, 2026, and the Debtor's exempt IRA had a value of approximately $903,387.49 as of the same date. As reflected on the most recent produced statements, the values of these accounts as of May 29, 2026 were approximately $34.7 million for the non-retirement accounts and approximately $1.05 million for the IRA. The itemized holdings within each account, and their values as of a given date, are set forth in the account statements produced, from which the information responsive to this Request may be derived in accordance with Rule 33(d).

The non-retirement Merrill Lynch accounts are pledged as collateral for the Bank of America Claim. Further detail regarding that secured obligation is set forth in the response to Interrogatory No. 12.

To the best of the Debtor's knowledge, the Debtor and the Trusts own no precious metals and no cryptocurrency.

To the best of the Debtor's knowledge, the Debtor's estate-planning Trusts (the Raymond Schneider 2019 Gift Trust, the Patricia B. Schneider 2020 Gift Trust, and the Schneider Family Insurance Trust) do not directly hold stocks, bonds, precious metals, or cryptocurrency. The Joseph Schneider Irrevocable Trust, of which the Debtor is a beneficiary, holds marketable securities in the UBS Account identified in the response to Interrogatory No. 12, and also holds a position in the common stock of Piper Sandler Companies that is registered directly and held outside the UBS Account, from which those holdings may be derived in accordance with Rule 33(d). The Raymond Schneider 2019 Gift Trust owns a variable universal life insurance contract insuring the Debtor's life, the underlying value of which is invested in a separate-account investment fund; that contract is reported on the Debtor's Merrill Lynch account statement for information only and is not held by Merrill Lynch. Further detail regarding that policy is set forth in the responses to Interrogatory Nos. 16 and 26.

12. Identify all marketable securities accounts maintained by Schneider and/or a Trust from January 1, 2018 through the present, and for each, state (a) the name of the institution maintaining the securities account; (b) the dates the accounts were open; (c) the account numbers, (d) the current balances in each account; and (e) the amount of any loan secured by the marketable securities, as well as the name of the lender and the current balance of the loan. Identify the most recent statement for each marketable securities account which is currently open, and the most recent loan statement.

**RESPONSE:**

**OBJECTION:** The Debtor incorporates the general objections set forth in the 2004 Objection, including the objection to the relevant time period. The Debtor has produced documents in response to the RFPs that are responsive to the identification requirements of this Request, and the answers may be derived from those documents in accordance with Rule 33(d).

The marketable securities accounts maintained by the Debtor are the Merrill Lynch accounts identified in the response to Interrogatory No. 11, which is incorporated herein. The most recent statements for those accounts have been produced, and the information responsive to subparts (a) through (d) may be derived from those statements in accordance with Rule 33(d).

As to subpart (e), the non-retirement Merrill Lynch accounts are pledged as collateral for the obligation owed to Bank of America under a Loan Management Account Agreement dated May 19, 2011, as amended and supplemented (the "LMA Agreement"), a demand line of credit with a maximum line amount of $18,500,000.00, secured by a first-priority security interest perfected by control. Bank of America has filed Proof of Claim No. 21 in this Case in the amount of $18,115,776.59, which sets forth the information relating to its senior lien position, including the pledged accounts and their balances. The current balance of the obligation, and the most recent loan statement, may be derived from the produced statements and from Bank of America's proof of claim in accordance with Rule 33(d).

The Debtor further states, in response to subpart (e), that Huntington asserts a lien against the Debtor's Merrill Lynch accounts by virtue of an Order of Garnishment served on September 17, 2025 (within 90 days of the Petition Date) which the Debtor contends is avoidable as a preference under 11 U.S.C. § 547 and otherwise disputes. The Debtor's identification of Huntington's asserted lien is not an admission of its validity, extent, or priority, and the Debtor expressly reserves all rights to challenge it.

To the best of the Debtor's knowledge, the Debtor's estate-planning Trusts (the Raymond Schneider 2019 Gift Trust, the Patricia B. Schneider 2020 Gift Trust, and the Schneider Family Insurance Trust) do not maintain any marketable securities account. The variable life insurance contract owned by the Raymond Schneider 2019 Gift Trust is addressed in the responses to Interrogatory Nos. 11, 16, and 26.

The Debtor further identifies a marketable securities account that is held in the name of a trust of which the Debtor is a beneficiary and that is not maintained by or titled to the Debtor individually: an account at UBS Financial Services Inc. titled "Joseph Schneider Irrevocable Trust dtd July 14, 1986, as amended," account no. WL B3736 KU (the "UBS Account"). The UBS Account is held in the name of the Joseph Schneider Irrevocable Trust, which was established by the Debtor's father, and of which the Debtor is a beneficiary and serves as a co-trustee. To the best of the Debtor's knowledge, the trust estate is divisible into equal shares for the grantor's three then-living children, namely Henry W. Schneider, Marilyn Zemboch, and the Debtor, such that the Debtor's beneficial interest in the UBS Account is approximately one-third. The Debtor is obtaining and will

produce the periodic statements for the UBS Account, and the institution, account number, balances, holdings, and activity may be derived from those statements in accordance with Rule 33(d). The identification of the UBS Account is not an admission regarding the characterization or extent of the Debtor's interest therein or whether that interest constitutes property of the estate.

To the best of the Debtor's knowledge, the Debtor has disclosed the marketable securities accounts responsive to this Request and, with respect to the UBS Account identified above, is obtaining and will produce the account statements on a rolling basis, from which the responsive information may be derived in accordance with Rule 33(d).

**13. Identify all personal property, including, without limitation, household goods, motor vehicles, boats, planes, motorcycles, artwork, and jewelry of Schneider and/or a Trust, not otherwise described in any other interrogatory response, which has a current marketable value or initial purchase price greater than $10,000, and state (a) the type, make, model, and/or serial or identification number for the personal property; and (b) the physical location of this property.**

**RESPONSE:**

**OBJECTION:** This Request is overly broad and seeks irrelevant information to the extent it defines the threshold by reference to "initial purchase price," which would sweep in property long held by the Debtor that has no current value material to the estate. The relevant inquiry under Rule 2004 is the Debtor's current financial condition, and the Debtor responds on the basis of current marketable value.

Without waiving the foregoing objection, the Debtor's personal property has been disclosed in his Schedules and in Article V.G of the Disclosure Statement. The Debtor's vehicles consist of an Airstream trailer, two BMWs, a Ford Thunderbird, a Tesla, a VW Kit car, a VW Kombi, and a Wolf scooter, with a combined scheduled value of approximately $73,374.00. The make, model, and identifying information for each vehicle, and the physical location of each, are set forth in the Debtor's Schedules and the documents produced, from which that information may be derived in accordance with Rule 33(d).

The Debtor's other personal property consists of household goods and furnishings located at the Ohio, Maine, and Colorado properties, collectibles (pictures, CDs, books, paintings, and wall hangings), wearing apparel, and miscellaneous personal effects. As reflected in Article V.G of the Disclosure Statement, the household goods are scheduled by location in the aggregate (Ohio $10,000.00; Colorado $5,000.00; Maine $25,000.00), and the collectibles at $10,000.00 in the aggregate. To the best of the Debtor's knowledge, no single item of household goods, furnishings, or collectibles not otherwise itemized has a current marketable value in excess of $10,000.00. Much of this property is used consumer property co-owned with the Debtor's Spouse, and the net value to the estate after exemptions and the Spouse's co-ownership interest is modest, as set forth in the Disclosure Statement.

The Debtor's paintings and wall hangings are included within the collectibles category described above and, to the best of the Debtor's knowledge, no individual such item has a current marketable value in excess of $10,000.00. To the best of the Debtor's knowledge, the Debtor owns no boats, aircraft, or jewelry with a current marketable value in excess of $10,000.00.

To the best of the Debtor's knowledge, the Trusts do not hold tangible personal property responsive to this Request; the Trusts' assets are described in the responses to Interrogatory Nos. 4, 11, and 16.

**14. Identify who prepared the 2018 PFS, 2019 PFS, and 2021 PFS, and further identify all documents relied upon by that person in the preparation of these personal financial statements.**

**RESPONSE:**

**OBJECTION:** The Debtor incorporates the general objections set forth in the 2004 Objection, including the objection to the relevant time period.

Without waiving the foregoing, the personal financial statements were prepared by the Debtor based on his personal knowledge of his assets, liabilities, and the entities in which he held interests, together with the financial information then available to him. To the extent the Debtor had assistance in compiling or assembling the personal financial statements, that assistance would have been provided by one or more of the individuals identified in the response to Interrogatory No. 3. However, given the age of the 2018 PFS, 2019 PFS, and 2021 PFS, the Debtor is unable to identify with specificity which individual or individuals assisted with each statement. To the best of his knowledge, the Debtor did not have an outside accounting firm assist in the preparation of the personal financial statements.

For the same reason, the Debtor is unable to identify with specificity each document relied upon in preparing each personal financial statement. The personal financial statements were based on the Debtor's personal knowledge and the financial information then available to him, and the personal financial statements themselves, together with the financial records from which the information in them may be derived, have been produced to the extent possible.

**15. State all Entities in which Schneider and/or a Trust directly or indirectly has owned an ownership interest from January 1, 2018, through the present, where that Entity sold or transferred more than 10% of its assets in the aggregate or in a series of transactions from January 1, 2018, through the present, and, for all such sales or transfers, state (a) the buyer or transferee; (b) the terms of sale or transfer, including, without limitation, a description of the assets sold or transferred; (c) the consideration received from the sale or transfer; and (d) the direct and indirect recipients of the consideration from the sale or transfer. Identify all documents which refer to any sale or transfer identified above, including, without limitation, all written agreements containing the terms of the sale or transfer.**

**RESPONSE:**

OBJECTION: This request is unduly burdensome to the extent that it requires the Debtor to identify numerous transactions and documents for the span of over eight years. The request is also irrelevant as to the current financial affairs of the Debtor and seeks information beyond the scope of Rule 2004, as set forth in the 2004 Objection, particularly to the extent it seeks transactions of Entities that are not transactions of the Debtor and are not avoidable as to the Debtor's estate, and to the extent it reaches Entities the Debtor does not control. The request is further vague and ambiguous in its references to what the Debtor "indirectly has owned" and to "a series of transactions." The Debtor has produced documents in response to the RFPs that are responsive to the numerous document-identification requirements of this Request, and the answers can be derived from those documents in accordance with Rule 33(d).

Without waiving any objection, and to the best of the Debtor's knowledge, the Debtor identifies the following sales or transfers of Entity assets:

- Atlanta RDPR, LLC. On October 7, 2022, Atlanta RDPR, LLC sold its sole asset, the real property located at 516 Ponce de Leon Avenue, Atlanta, GA 30308, to RHG Ventures, LLC. The property had been leased to Atlanta Red Dog Pet Resort & Spa, LLC, which had closed as a result of the COVID-19 pandemic. The consideration was received by Atlanta RDPR, LLC, which was wholly owned by the Debtor.

- Lebanon RD, LLC. Lebanon RD, LLC sold two parcels of real property located on Columbus Avenue in Lebanon, Ohio, in two separate transactions: (i) on July 28, 2023, the parcel located at 1205 Columbus Avenue was sold to CAT Lebanon, LLC for $560,000.00; and (ii) on September 3, 2024, the parcel located at 1235 Columbus Avenue was sold to FIDC 190 LLC for $2,600,000.00. The consideration was received by Lebanon RD, LLC, which was wholly owned by the Debtor.

- Monarch RD, LLC. On September 9, 2020, Monarch RD, LLC transferred its real property to Circle Storage Operating Company I, LLC, to be combined with the adjacent existing Circle Storage facility. Both entities were, directly or indirectly, under the Debtor's control.

- The Gatherings of Blue Ash, LLC. On April 15, 2026, The Gatherings of Blue Ash, LLC sold its sole remaining asset, the real property located at 10627 Techwoods Circle, Cincinnati, OH 45242, to Crossroads East, LLC, an unrelated third party, for a total purchase price of $1,900,000 (allocated $1,750,000 to the real estate and $150,000 to the contents). At closing, Heritage Bank received $1,271,717.33 in full satisfaction of its Claim (Claim No. 3). The consideration was received by The Gatherings of Blue Ash, LLC, which was wholly owned by the Debtor.

- The Blue Development Company, LLC fka 9617 Kenwood Road Development, LLC. On September 1, 2024, the Debtor sold 100% of the membership interests in this Entity to the Raymond Schneider 2019 Gift Trust in exchange for the Blue Promissory Note. Reference is made to the response to Interrogatory No. 4 for the terms of that transaction.

- RH Real Estate Investments, LLC. On March 4, 2026, RH Real Estate Investments, LLC sold its real property located at 7873 Gail Drive, Cincinnati, OH 45236 (a single-family home), to Moksin Holdings Plus, LLC for $218,000.00, netting the Entity approximately $200,802.80. The Debtor holds a 50% membership interest in this Entity and does not manage it. The Debtor received a distribution of $100,000.00 from the sale on March 11, 2026.

- Delhi Plaza Associates, Ltd. On January 12, 2024, Delhi Plaza Associates, Ltd. sold its sole real estate asset, the Delhi Shopping Center located at 4940–4990 Delhi Road, Cincinnati, Ohio, to Eastern 1031 Starker Exchange Company for $3,150,000.00. The Debtor holds a 2.8304% minority interest in this Entity and does not manage it. The Debtor received a partnership distribution of $89,165.12 from the sale, and the Entity has wound down.

- Techwoods Circle RD, LLC. On February 6, 2025, the Debtor sold 100% of the membership interests in this Entity to KPT7 Holding Company, LLC for $324,771.99 in cash. Reference is made to the response to Interrogatory No. 4 for the terms of that transaction.

- Red Dog Operations Holding Company, LLC. In November 2024, the assets and membership interests of Red Dog Operations Holding Company, LLC and its subsidiaries were sold to a third-party buyer, with ownership rolled into the newly formed KPT7 Holding Company, LLC. Reference is made to the response to Interrogatory No. 4 for the terms of that transaction.

The terms of each transaction, the consideration, and the direct and indirect recipients of the consideration may be derived from the transaction documents produced in accordance with Rule 33(d). The identification of any transfer in this response is not an admission that the transfer is avoidable, that any consideration was inadequate, or that any transfer related to property of the estate. As to the Sosna-related Entities, the Debtor refers to the statement regarding the Sosna receivership files set forth above.

16. Identify any Trust into which Schneider has transferred any of his assets from January 1, 2018 through the present, and state (a) the name of the Trust and whether it is a revocable or irrevocable Trust; (b) the assets currently held by that Trust; (c) the source of funds/assets paid into the Trust; (d) the beneficiaries of the Trust; and (e) where the Trust maintains any deposit or marketable securities accounts. Identify all Trust (i) formation and governing documents; (ii) Trust tax returns from January 1, 2018 through the present; (iii) Trust financial statements from January 1, 2018 through the present; and (iv) a list of all assets currently in each Trust.

**RESPONSE:**

OBJECTION: The Debtor incorporates the general objections set forth in the 2004 Objection, including the objection to the relevant time period. The Debtor has produced documents in response to the RFPs that are responsive to the document-identification requirements of this Request, including the trust formation and governing documents, and the answers may be derived from those documents in accordance with Rule 33(d).

Without waiving the foregoing, the Debtor states as follows. The applicable trusts are the Raymond Schneider 2019 Gift Trust and the Schneider Family Insurance Trust, each of which is addressed below. The Debtor did not transfer any asset directly into the Patricia B. Schneider 2020 Gift Trust; nevertheless, because Huntington's definition of "Trust" includes that trust, it is addressed below.

All answers below are summaries of the Trusts documents and their assets. No statement in this response is a substitute for the actual text of the Trust documents or an admission that those documents mean something different from what they actually say.

Raymond Schneider 2019 Gift Trust (Dated December 20, 2019; Patricia B. Schneider, Trustee).

(a) Revocable or irrevocable: Irrevocable.
(b) Assets currently held:
(i) 720 Class-B membership units of To Life, Ltd.;
(ii) 100% of the membership interests in The Blue Development Company, LLC fka 9617 Kenwood Road Development, LLC, acquired September 1, 2024; and
(iii) a Lincoln VUL ONE 2014 variable universal life insurance policy (Policy No. 4929454) insuring the life of the Debtor.

(c) Source of funds/assets: The To Life Class-B units were gifted to the trust by the Debtor on December 31, 2019, as described in the response to Interrogatory No. 4. The membership interests in The Blue Development Company, LLC were sold to the trust by the Debtor on September 1, 2024 in exchange for the Blue Promissory Note, as described in the responses to Interrogatory Nos. 4 and 15. The variable life insurance policy was issued on October 24, 2019 and is owned by the trust and is a paid-up policy.

(d) Beneficiaries: During the lifetime of Patricia B. Schneider, the trustee may distribute income and principal to or for the benefit of Patricia B. Schneider. Upon her death, the trust estate is divided into shares for the Debtor's issue (Eric Schneider, Justin Schneider, and Danielle (Schneider) Senzer) and their issue, per stirpes. The Debtor is not a beneficiary of the Raymond Schneider 2019 Gift Trust, and the trust expressly prohibits any distribution or appointment to the Debtor, his estate, or his creditors.

(e) Deposit/securities accounts: To the best of the Debtor's knowledge, the trust does not maintain any deposit account or marketable securities account. The variable life insurance policy identified above is held in the issuing insurer's separate account and is not a deposit or securities account.

Patricia B. Schneider 2020 Gift Trust (Dated December 28, 2020; Raymond Schneider, Trustee).

The Debtor did not transfer any asset directly into this trust. The relevant interests were gifted by the Debtor to his Spouse, Patricia B. Schneider, who, as settlor, then contributed them to this trust, which she established.

(a) Revocable or irrevocable: Irrevocable.

(b) Assets currently held:

(i) 396 Class-B membership units of Grasshopper Investments, LLC (a 99% Class-B interest); and

(ii) 6,999 Class-B membership units of Red Dog Operations Holding Company, LLC, the interests in which were reorganized into a 64.99% interest in KPT7 Holding Company, LLC in connection with the 2024 Red Dog transaction described in the response to Interrogatory No. 4.

(c) Source of funds/assets: The interests were gifted to the trust by its settlor, Patricia B. Schneider, on December 31, 2020.

(d) Beneficiaries: During the lifetime of Raymond Schneider, the trustee may distribute income and principal to or for the benefit of Raymond Schneider (with limitations) and the settlor's issue (Eric Schneider, Justin Schneider, and Danielle (Schneider) Senzer). The trust expressly prohibits any distribution or appointment to the Debtor's creditors and contains a spendthrift provision.

(e) Deposit/securities accounts: To the best of the Debtor's knowledge, the trust does not maintain any deposit account or marketable securities account.

Document subparts (i)–(iv). The formation and governing documents for both trusts have been produced. Both trusts are grantor trusts; their income is reported on the joint individual income tax returns filed by the Debtor and his Spouse, which have been produced, and the trusts do not file separate income tax returns. The trusts do not maintain separate financial statements.

Schneider Family Insurance Trust (Dated October 10, 2019; Emily S. Pan, Trustee).
The Debtor and his Spouse are the settlors of this trust. The Debtor is a settlor and is not a beneficiary of this trust.

(a) Revocable or irrevocable: Irrevocable.

(b) Assets currently held: A survivorship (second-to-die) variable universal life insurance policy issued by The Lincoln National Life Insurance Company (Lincoln SVUL One 2016, Policy No. VUL1009746), insuring the lives of the Debtor and his Spouse, with a death benefit of $10,000,000.00 payable upon the death of the survivor of them. The trust is the owner and the beneficiary of the policy, and the Debtor holds no incidents of ownership in the policy.

(c) Source of funds/assets: The trust was established and the policy was placed in connection with the Debtor's 2019 estate planning.

(d) Beneficiaries: The beneficiaries are the Debtor's children (Eric Schneider, Justin Schneider, and Danielle (Schneider) Senzer) and their issue, who hold withdrawal rights with respect to contributions to the trust. The Debtor is not a beneficiary. The trust prohibits revesting any part of the trust estate in the settlors and prohibits any distribution of income or principal to the settlors. The Debtor retains, in a non-fiduciary capacity, a power to substitute trust assets for assets of equivalent value, a power to appoint and remove the trustee (limited to the appointment of an independent trustee), and the role of beneficiary surrogate; the Debtor does not concede that any of these powers renders the trust assets property of the estate.

(e) Deposit/securities accounts: The trust does not maintain any deposit account or marketable securities account. The variable life insurance policy identified above is held in the issuing insurer's separate account and is not a deposit or securities account.

Document subparts (i)–(iv). The formation and governing documents for this trust will be produced. The trust is a grantor trust under Section 672(e) of the Internal Revenue Code and does not file a separate income tax return. The trust does not maintain separate financial statements.

The identification of any transfer or trust asset in this response is not an admission that any transfer is avoidable or that any transferred interest is property of the estate. As set forth in Article VII.D of the Disclosure Statement, the transfers were made for legitimate estate-planning purposes, at times when the Debtor was solvent, and without intent to hinder, delay, or defraud any creditor, and are subject to independent evaluation by the Retained Actions Representative.

**17. Identify any assets which Schneider has sold or transferred to his Wife or another Family Member from January 1, 2018 through the present, and state (a) the date of the sale or transfer; (b) a detailed description of the assets sold or transferred; (c) the buyer or recipient; and (d) the terms of the sale or transfer, including the consideration received by Schneider and/or the Trust and/or any Family Member. Identify all documents which refer or relate to the sales or transfers.**

**RESPONSE:**

**OBJECTION:** Including subparts, the prior interrogatories have exceeded the limit of 25 total interrogatories permitted under Rule 33, obviating the need for any further responses; the Debtor nevertheless responds below without waiving this objection. The Debtor further incorporates the general objections set forth in the 2004 Objection, including the objection to the relevant time period, and objects that this Request is overly broad and unduly burdensome based on the duration of the period covered. The Debtor has produced documents in response to the RFPs that are responsive to the document-identification requirements of this Request, and the answers may be derived from those documents in accordance with Rule 33(d).

At the discovery conference in this matter, it was agreed that this Request would relate to transactions in excess of $7,500.00.

Without waiving any objection, the Debtor transferred the following interests to Family Members during the relevant period: (i) 396 Class-B units of Grasshopper Investments, LLC to his Spouse, Patricia B. Schneider, on November 1, 2020; (ii) 6,999 Class-B units of Red Dog Operations Holding Company, LLC to his Spouse on November 1, 2020; and (iii) 1,000 Class-B units of Red Dog Operations Holding Company, LLC to his son, Eric Schneider, on December 31, 2020. The terms of these transfers, which were gifts made for estate-planning purposes, are described in the response to Interrogatory No. 4, and the documents have been produced.

The issuance of 2,000 Class-C profits-interest units in Red Dog Operations Holding Company, LLC to Eric Schneider under a Restricted Unit Grant Agreement effective January 1, 2020 is also described in the response to Interrogatory No. 4, and the documents have been produced. Eric Schneider had for years managed the Red Dog operating businesses for a salary without any equity interest, and had advised the Debtor that he had no reason to remain without an equity stake in the business. The reorganization of the Red Dog entities and the issuance of the Class-C profits interests to Eric were undertaken to retain him and to provide him an equity interest as compensation for his services in managing the operating businesses. Notably, Eric received an equity interest in the operating businesses only and did not receive an equity interest in the real estate holding companies.

For further disclosure, and although the Debtor does not concede that these are transfers of “assets” within the meaning of this Request, the Debtor paid for certain Family Members to accompany him on a trip to the Super Bowl in 2022 and on a vacation to Japan in 2025. The Debtor did not directly transfer any asset to those Family Members in connection with the trips; rather, the Debtor paid for the costs of the trips. Because it does not appear that the amount attributable to any single Family Member would exceed the $7,500.00 threshold agreed at the discovery conference, the Debtor has not searched for documentation relating to these trips and is not certain that he would be able to identify from his financial records any direct transfers to Family Members, as distinguished from the Debtor’s own purchases for the trips. The Debtor will supplement with such records if necessary.

To the best of the Debtor's knowledge, no other assets have been sold or transferred to his Wife or another Family Member that would be responsive to this Request based on the minimum transaction amount agreed at the discovery conference.

**18. Identify any agreements (written or otherwise) between (a) Schneider and an Entity; (b) a Trust and Schneider; (c) a Trust and an Entity; and (d) Schneider and a Family Member, including, without limitation, any agreement to transfer assets to Schneider in the future, and state the terms of the agreement. Identify all documents which refer or relate to such an agreement.**

**RESPONSE:**

**OBJECTION:** Including subparts, the prior interrogatories have exceeded the limit of 25 total interrogatories permitted under Rule 33, obviating the need for any further responses; the Debtor nevertheless responds below without waiving this objection. The Debtor incorporates the general objections set forth in the 2004 Objection, including the objection to the relevant time period, and further objects that this Request is vague and overly broad to the extent it seeks "agreements (written or otherwise)," which would encompass every ordinary-course arrangement among commonly owned Entities. The Debtor has produced documents responsive to the document-identification requirements of this Request, and the answers may be derived from those documents in accordance with Rule 33(d).

Without waiving the foregoing, the responsive agreements include: (a) the operating, membership, and governance agreements for the Entities in which the Debtor, the Trusts, or Family Members hold interests, which have been produced; (b) the Blue Promissory Note, under which the Raymond Schneider 2019 Gift Trust owes the Debtor the amounts described in the responses to Interrogatory Nos. 16 and 24; (c) the assignment and gift instruments effecting the transfers described in the responses to Interrogatory Nos. 4 and 17; and (d) the Restricted Unit Grant Agreement with Eric Schneider described in the response to Interrogatory No. 17. The terms of these agreements are set forth in the documents themselves, which have been produced, and may be derived from those documents in accordance with Rule 33(d).

The Debtor further states that there is no agreement, written or otherwise, providing for the transfer of any asset to the Debtor in the future, other than the Raymond Schneider 2019 Gift Trust's obligation to the Debtor under the Blue Promissory Note. In particular, there is no agreement, understanding, or arrangement of any kind for the return or re-transfer to the Debtor of any interest gifted or transferred to the Trusts or to any Family Member. To the contrary, the Raymond Schneider 2019 Gift Trust, of which the Debtor is not a beneficiary, by its terms prohibits any distribution or appointment to the Debtor, his estate, or his creditors.

To the best of the Debtor's knowledge, there are no other agreements responsive to this Request.

19. State the legal name of each entity referenced in Schedule B of the 2018 PFS, 2019 PFS, and 2021 PFS.

**RESPONSE:**

**OBJECTION:** Including subparts, the prior interrogatories have exceeded the limit of 25 total interrogatories permitted under Rule 33, obviating the need for any further responses; the Debtor nevertheless responds below without waiving this objection. The Debtor has produced the personal financial statements and the documents from which the responsive information may be derived in accordance with Rule 33(d).

Without waiving the foregoing, the abbreviations and shorthand references used in Schedule B of the 2018 PFS, 2019 PFS, and 2021 PFS correspond to the following:

| **Reference in Schedule B** | **Legal Name** |
|---|---|
| RBS | Raymond Schneider |
| Hyde P. Circle / HPC / Retail | Hyde Park Circle, LLC |
| Boston RD | Boston RD, LLC |
| | Boston Red Dog Pet Resort & Spa, LLC |
| GRHPR | Grasshopper Investments, LLC |
| IKRD | Northern Kentucky Assisted Living, LLC |
| | Northern Kentucky Retirement Community, LLC |
| RD Realty | RD Realty I, LLC |
| Saugus RD | North Shore RD, LLC |
| | North Shore Red Dog Pet Resort & Spa, LLC |
| Red Dog (2021 PFS) | Atlanta RD, LLC |
| CD | Circle Development of Cincinnati, LLC |
| Eastgate | Refers to real estate owned by Grasshopper Investments II, LLC |

The 2021 PFS used the same entity references with a "Trust-" prefix (for example, "Trust-GRHPR" and "Trust-RD Realty") to denote interests then held by one of the Trusts. Each such prefixed reference corresponds to the same Entity identified in the table above.

The foregoing sets forth the legal names corresponding to each abbreviation or shorthand reference used in Schedule B of the 2018 PFS, 2019 PFS, and 2021 PFS, to the best of the Debtor's knowledge. To the extent any abbreviation cannot be matched to a specific Entity, the Debtor will supplement upon identification.

**20. State the basis for the change in Schneider's personal net worth between the 2019 PFS and 2021, PFS and identify (a) all transactions which caused the change in Schneider's net worth; and (b) all documents which refer or relate to these transactions.**

**RESPONSE:**

**OBJECTION:** Including subparts, the prior interrogatories have exceeded the limit of 25 total interrogatories permitted under Rule 33, obviating the need for any further responses; the Debtor nevertheless responds below without waiving this objection. This Request is further objectionable as overly broad and unduly burdensome, and as seeking information of no relevance to the current administration of the estate, as set forth in the 2004 Objection. The Request is additionally premised on the assumption that the 2019 PFS and the 2021 PFS are accurate statements of the Debtor's personal net worth and may be meaningfully compared on a line-by-line basis; as explained below, that premise is incorrect. Consistent with the parties' treatment of these net-worth interrogatories, the Debtor responds with respect to transactions affecting the stated values by more than $50,000.00.

Without waiving the foregoing, the Debtor states that the apparent decline in "net worth" between the 2019 PFS and the 2021 PFS is, in substantial part, an artifact of computational errors in the 2019 PFS and of the manner in which both statements were prepared, rather than the result of any transaction by which the Debtor stripped assets or diminished value available to creditors. The Debtor addresses the basis for the change below.

**A. The personal financial statements are not statements of the Debtor's personal net worth but instead incorporate other factors.** The 2019 PFS and 2021 PFS were prepared on lender forms that aggregate, on a gross basis, the market values of real estate and operating businesses held not by the Debtor individually but through numerous limited liability companies, limited partnerships, corporations, and trusts in which the Debtor held varying direct and indirect interests. On both statements, each holding is listed at the full (100%) market value of the underlying property and, where shown, the full mortgage balance encumbering that property, without regard to the Debtor's fractional percentage interest in the entity that owns it. That convention is apparent on the face of the 2021 PFS, which reports certain interests at a one-percent ownership figure while nonetheless carrying the entire value and entire mortgage of the underlying asset. Because the statements blend the gross asset values and gross liabilities of the Debtor with those of the many entities and trusts in which he holds interests, a line-by-line comparison of the two statements does not measure any change in the Debtor's personal net worth. It measures, at most, the change in the combined gross balance sheet of the Debtor and all such entities and trusts, the substantial majority of which is attributable to assets and liabilities the Debtor does not own directly and, in many instances, owns only as a minority interest holder.

**B. The 2019 PFS materially overstated net worth because of computational errors, to which the Debtor has previously identified under oath.** A substantial portion of the apparent decline is the product of arithmetic errors in the 2019 PFS that overstated net worth, and not any change in the Debtor's actual financial condition. The Debtor testified to these errors, and was questioned about them by Huntington's counsel, during the hearing on the appointment of a Chapter 11 Trustee in the First Case. The errors are apparent on the face of the document:

> **Understatement of secured bank debt.** The 2019 PFS's largest liability entry, "Notes Payable – Bank Secured," reported as $54,043,000, was computed as the

sum of the Schedule C mortgage total ($18,367,000), the Schedule D mortgage total ($711,000), and the total of the "Banks Where Credit Has Been Obtained" schedule. The "Banks Where Credit Has Been Obtained" schedule, however, does not foot: the individual current balances listed on that schedule total $77,061,000, but the schedule carried a total of only $34,965,000, understating the Debtor's secured bank debt by $42,096,000. That shortfall corresponds precisely to the omission of the two largest balances on the schedule.

**Duplication of mortgage debt.** Partially offsetting that understatement, the 2019 PFS separately listed real-estate mortgage balances on the front page that were already embedded within the "Notes Payable – Bank Secured" figure, thereby double-counting approximately $19,789,000 of mortgage debt.

**Duplication of marketable securities.** On the asset side, the 2019 PFS reported the same block of marketable securities twice (once as "Marketable Securities" and again as "Securities Held-Broker In Margin Accounts"), overstating assets by $13,605,400. That duplication does not appear on the 2021 PFS.

Correcting these errors, the Debtor's net worth as reflected on the 2019 PFS was approximately $42 million, not the $77,954,300 stated on the form. The corresponding change between the 2019 PFS and the 2021 PFS (which reported net worth of $17,725,000) is therefore on the order of $24 million, rather than the approximately $60 million suggested by an uncorrected comparison. The Debtor emphasizes that these errors were the product of computational and spreadsheet miscalculations in the preparation of the 2019 PFS, and not of any failure to disclose assets or liabilities; the underlying assets and obligations were reflected on the supporting schedules and have been disclosed.

**C. Changes in the Debtor's reported percentage ownership did not reduce the net worth reflected on the statements.** Several differences between the two statements reflect changes in the Debtor's reported percentage ownership of entity-held assets arising from estate planning, not any reduction in value available to creditors. Because the statements carry each holding at its full value and full mortgage regardless of the Debtor's percentage interest, a reduction in the Debtor's reported ownership percentage from one statement to the next did not reduce the values reflected on the statements. The clearest example concerns the interest in the real estate referred to as "the RED" (The Red Apartments), held through To Life, Ltd. The Debtor's reported interest in that holding declined between the 2019 PFS and the 2021 PFS following the December 31, 2019 gift of his Class-B membership interest in To Life, Ltd. to the Raymond J. Schneider 2019 Gift Trust. Both statements nonetheless carry the full market value of the property and the full mortgage encumbering it, so that transfer produced no reduction in the net worth shown on the statements; the same gross figures appear in both years. The same is true of the other entity interests addressed in the Debtor's 2019 and 2020 estate planning.

**D. Explanation of remaining differences.** With the foregoing corrections and methodological points accounted for, the remaining differences between the two

statements do not reflect any transfer by the Debtor that diminished value otherwise available to creditors:

> **The 54/72 interest.** The single largest asset-side reduction is the partial interest in the real estate referred to as "54/72" (held through 54 Realty, Ltd. and 72 Ventures, Ltd., in which the Debtor held a 50% interest), carried on the 2019 PFS at a gross market value of approximately $18.5 million against a mortgage of approximately $17.5 million, and shown on the 2021 PFS as "taken by receiver." That was a loss of control to a court-appointed receiver, not a transfer by the Debtor, and the associated equity was modest after the encumbrance.
>
> **Marketable securities.** The reduction in marketable and margin-account securities reflects the correction of the 2019 duplication described above, not the disposition of any security.
>
> **Non-marketable securities (Schedule B).** The non-marketable securities held through operating and investment entities are carried at higher gross values on the 2021 PFS than on the 2019 PFS. The apparent change in their composition reflects the 2021 PFS's separate itemization of entity-level mortgage debt that the 2019 PFS did not break out, together with the reorganization of certain holdings into newly formed holding companies, and not the loss of any asset.
>
> **"Eastgate."** The property identified on the 2019 PFS as "Eastgate," which does not appear as a separate line on the 2021 PFS, was not disposed of. Eastgate is real estate owned by Grasshopper Investments II, LLC, and has been since 2005. It was listed separately on the 2019 PFS because it was unencumbered, but it is properly an entity-held asset, and its value was included within the value reported for the Grasshopper holdings on the 2021 PFS, the reported market value of which increased from approximately $27 million to approximately $35 million between the two statements. The change is therefore a reclassification, not a disposition.
>
> **Other differences.** The balance of the differences (for example, in cash on hand, loans receivable, automobiles and personal property, and the values assigned to individually owned real estate) reflects ordinary-course activity and revaluation over the more than two years between the statements.

**E. Subpart (a) - Transactions.** As explained above, the Request is not reasonably susceptible to a transaction-by-transaction reconstruction, because the substantial majority of the difference between the two statements is attributable to the correction of computational errors, to revaluation, and to reclassification (none of which involves a transaction) rather than to discrete transfers. Distinguishing actual transactions from such non-transactional changes, the genuine transfers and events occurring between the date of the 2019 PFS and the date of the 2021 PFS that the Debtor presently identifies as affecting the stated values by more than $50,000.00 are: (i) the December 31, 2019 gift of the Debtor's Class-B membership interest in To Life, Ltd. to the Raymond J. Schneider 2019 Gift Trust; (ii) the 2020 transfers of certain entity interests to the Debtor's Spouse and, in

turn, to the Patricia B. Schneider 2020 Gift Trust; and (iii) the placement of the 54/72 interest with a court-appointed receiver. These transfers are described more fully in the responses to Interrogatory Nos. 4, 16, and 17.

**F. Subpart (b) - Documents.** Documents that refer or relate to the foregoing include the Debtor's Statement of Financial Affairs, Schedules, and Disclosure Statement filed in this Case; the 2019 PFS and 2021 PFS themselves; the transcript of the hearing on the appointment of a Chapter 11 Trustee in the First Case, at which the Debtor testified regarding the errors in the 2019 PFS; the instruments establishing the Raymond J. Schneider 2019 Gift Trust and the Patricia B. Schneider 2020 Gift Trust, together with the related assignment and gift instruments; the organizational and governance documents of To Life, Ltd. and the other referenced entities; the pleadings and orders in the receivership proceeding concerning the 54/72 interest; and the loan, note, and mortgage documents underlying the obligations reflected on the statements. Many of these documents are part of the public record in the Debtor's bankruptcy case, are equally available to Huntington, and/or have already been produced. The responsive information may be derived from those documents in accordance with Rule 33(d).

**21. State the basis for the change in Schneider's personal net worth between the 2021 PFS and the present and identify (a) all transactions which caused a change in Schneider's net worth; and (b) all documents which refer or relate to these transactions.**

**RESPONSE:**

**OBJECTION:** Including subparts, the prior interrogatories have exceeded the limit of 25 total interrogatories permitted under Rule 33, obviating the need for any further responses; the Debtor nevertheless responds below without waiving this objection. The Debtor further objects to this Interrogatory to the extent it (i) rests on the incorrect premise that the 2021 personal financial statement and any present measure of the Debtor's net worth are prepared on a comparable basis such that the difference between them can be attributed to identifiable transactions; (ii) is overly broad, unduly burdensome, and not proportional to the needs of the case insofar as it seeks the identification of "all" transactions and "all" documents over a multi-year period spanning the operations of more than two dozen separate entities; (iii) seeks information and documents that are duplicative of, and equally available to the propounding party through, the public record of the Debtor's bankruptcy case; and (iv) seeks information protected by the attorney-client privilege, the work-product doctrine, or applicable tax-return privileges. As agreed at the discovery conference in this matter, the Debtor responds with respect to transactions affecting net worth by more than $50,000.00. Subject to and without waiving these objections, the Debtor responds as follows:

**A. The Interrogatory rests on the premise that the 2021 statement and the Debtor's present financial condition are comparable; they are not, and the difference between them cannot be decomposed into transactions.** The 2021 personal financial statement stated "net worth" as a gross enterprise roll-up: it listed real estate and operating businesses held through numerous entities at the full (100%) market value of each underlying property, reduced by the full mortgage encumbering that property, without regard to the

Debtor's fractional percentage interest in the entity that owned it. A meaningful statement of the Debtor's present personal net worth is a fundamentally different measure: it reflects the Debtor's proportionate interest in each entity (the entity's net asset value multiplied by the Debtor's actual ownership percentage) and nets adequately-collateralized debt against the corresponding asset rather than carrying it as a separate liability. Because the 2021 figure and any proper present measure of personal net worth are computed on these incompatible bases, the difference between them is overwhelmingly a function of methodology, not of identifiable transactions. Moreover, because the 2021 figure aggregated the gross balance sheets of dozens of separate entities, any change in the assets or liabilities of any one of those entities over the intervening period would alter it. There is accordingly no principled way to decompose the difference between two non-comparable figures into the finite list of discrete transactions that subpart (a) demands.

The Interrogatory is also premised on the assumption that the only relevant changes are negative ones, which is incorrect and renders subpart (a) impossible to answer as framed. Net worth is the product of both increases and decreases across all of the Debtor's assets and liabilities. The Debtor's net worth has changed materially in the positive direction in several respects since the 2021 statement. For example, the value of the Debtor's Merrill Lynch holdings is now in excess of $30,000,000, materially greater than at the time of the 2021 statement, and the value of certain entity-held assets, including the real estate referred to as "the RED" (held through To Life, Ltd.), has appreciated. A proper calculation of "the change in net worth" would require netting every such positive change against every negative change across the Debtor and all of the entities and trusts in which he holds interests. It is not possible to identify discrete transactions "which caused a change in net worth" without computing the Debtor's entire net worth before and after every transaction across every entity, an exercise that is not feasible and that the Interrogatory does not and could not reasonably require. The Debtor can identify transactions, and can identify changes in his overall financial condition, but cannot identify transactions on the basis of their isolated effect on a net-worth figure.

To the extent any difference between the net worth stated on the 2021 statement and the Debtor's present financial condition can be described at all, its bases are: (1) the difference in methodology described above; (2) the correction of the computational errors addressed in the Debtor's response to the preceding Interrogatory, which materially overstated the historical figures; (3) the revaluation of assets and entity interests over the more than four years between the 2021 statement and the present, including both increases (such as the appreciation in the Debtor's marketable securities and in certain entity-held real estate) and decreases, driven by market conditions rather than by transactions; (4) the disclosed transactions identified below; and (5) the commencement of the Debtor's Chapter 11 case and the reinstatement of the disputed Huntington judgment. Any present measure of the Debtor's net worth is itself materially affected by that reinstated Huntington judgment (a liability that Huntington asserts, that the Debtor disputes, and against which the Debtor has a pending counterclaim), such that the "change" this Interrogatory asks the Debtor to explain is, in significant part, a function of a contested claim asserted by the propounding party itself.

**B. The Debtor's present financial condition and the material events of the period are comprehensively set forth in his sworn, public bankruptcy filings, which are equally available to the propounding party.** The Debtor refers the propounding party to his Schedules of Assets and Liabilities and Statement of Financial Affairs, filed under penalty of perjury, which set out his assets, liabilities, interests in operating and investment companies, and (in the Statement of Financial Affairs) his recent business sales, transfers, and other pre-petition transactions. The Debtor has also filed a Disclosure Statement describing his entity structure, the valuation methodology applied to his interests, and the events of the relevant period, as well as periodic reports under Bankruptcy Rule 2015.3 and monthly operating reports. These filings, prepared and verified under oath, constitute the comprehensive statement of the Debtor's present financial condition and of the material transactions of the period. They are matters of public record in the bankruptcy case, are equally available to the propounding party, and are incorporated herein by reference. The Debtor refers the propounding party to those filings for the complete statement of his current assets, liabilities, and financial history.

**C. Subpart (a) - Transactions exceeding $50,000.** For the reasons stated in Section A, the difference between the 2021 statement and the Debtor's present financial condition cannot be reduced to an exhaustive list of discrete transactions, and the Debtor objects to subpart (a) to the extent it purports to require one. Subject to and without waiving that objection, and distinguishing between actual transactions and changes in reported value that did not involve any transaction (such as revaluations, reclassifications, changes in methodology, and the correction of computational errors), the material transactions and changes of the period that the Debtor presently identifies (each of which has been disclosed in, or will be supplemented in, the Debtor's Schedules, Statement of Financial Affairs, and/or Disclosure Statement) are:

> **Changes increasing the Debtor's net worth:** (i) the appreciation in the value of the Debtor's Merrill Lynch holdings, which are now valued in excess of $30,000,000; and (ii) the appreciation in the value of certain entity-held real estate, including the real estate referred to as "the RED," held through To Life, Ltd.
>
> **Changes decreasing the Debtor's net worth:** (iii) the reinstatement of the Huntington judgment and the commencement of the Debtor's Chapter 11 case; (iv) the Debtor's payment of substantial professional and attorney's fees over the course of the litigation with Huntington and the related proceedings, which has drained certain of the Debtor's cash reserves; (v) the 2024 sale of interests relating to Red Dog Operations Holding Company, LLC, and the related reorganization of those interests into KPT7 Holding Company, LLC; (vi) the September 1, 2024 sale of the Debtor's interest in The Blue Development Company, LLC to the Raymond J. Schneider 2019 Gift Trust in exchange for a promissory note in the principal amount of $1,485,000.00, bearing interest at five percent (5%) per annum, with $1,633,500.00 due at maturity on September 1, 2026; (vii) the February 6, 2025 sale of the Debtor's interest in Techwoods Circle RD, LLC to KPT7 Holding Company, LLC for $324,771.99; and (viii) the sale of real estate held by The Gatherings of Blue Ash, LLC (10627 Techwoods Circle, Cincinnati, Ohio), and the

disposition of other real estate held by certain of the Debtor's entities, together with the dissolution of numerous inactive entities, as disclosed in or to be supplemented in the Statement of Financial Affairs.

**Other changes:** (ix) ordinary-course operations, distributions, and revaluations across the Debtor's operating and investment companies over the period.

The transactions identified above are described more fully in the responses to Interrogatory Nos. 4, 15, and 16. The Debtor emphasizes that the foregoing reflects both increases and decreases, and that it is not possible to state the net effect of these and the many other changes across the Debtor's entities on a single net-worth figure without calculating the Debtor's entire net worth at each transaction date, which the Debtor has not undertaken for purposes of this response.

**D. Subpart (b) - Documents.** Documents that refer or relate to the foregoing include the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs; the Disclosure Statement filed in the bankruptcy case; the Debtor's periodic reports under Bankruptcy Rule 2015.3 and his monthly operating reports; the transaction documents for the identified transactions (including the membership interest purchase and contribution agreement relating to Red Dog Operations Holding Company, LLC, the promissory note relating to The Blue Development Company, LLC, and the sale documents relating to Techwoods Circle RD, LLC); the Debtor's Merrill Lynch account statements; the Huntington proof of claim and the underlying judgment; and the financial records of the operating and investment companies referenced in those filings. Substantially all of these documents are part of the public record in the Debtor's bankruptcy case, are equally available to the propounding party, and/or have already been produced, and the responsive information may be derived from those documents in accordance with Rule 33(d).

**22. State the name and address of Schneider's Wife and any of Schneider's siblings and children.**

**<u>RESPONSE:</u>**

**OBJECTION:** Including subparts, the prior interrogatories have exceeded the limit of 25 total interrogatories permitted under Rule 33, obviating the need for any further responses; the Debtor nevertheless responds below without waiving this objection.

| | |
|---|---|
| Patricia Schneider | 3515 Tiffany Ridge Lane, Blue Ash, OH 45241 |
| Justin Schneider | 108 Harwich Road, Newton, MA 02467 |
| Danielle Senzer | 19 Ware Road, Needham, MA 02492 |
| Eric Schneider | 10 Winfield Street, Needham, MA 02492 |
| Henry Schneider | 3472 E. Galbraith Road, Cincinnati, OH 45236 |
| Marilyn Zemboch | 159 Orchid Cay Drive, Palm Beach Gardens, FL 33418 |

**23. Identify if any of the Entities identified in Interrogatory 2 are currently marketing for sale, or are under agreement to sell or transfer, any assets, and state (a) the expected date of the sale or transfer; (b) the assets to be sold or transferred; (c) the expected gross proceeds from the sale or transfer; (d) whether there are any liens which need to be paid out of the sale or transfer proceeds; and (e) the amount of the liens to be paid and the lienors out of the sale or transfer. Identify all documents which refer or relate to these sales or transfers, including, without limitation, all listing and sale agreements.**

**RESPONSE:**

**OBJECTION:** Including subparts, the prior interrogatories have exceeded the limit of 25 total interrogatories permitted under Rule 33, obviating the need for any further responses; the Debtor nevertheless responds below without waiving this objection. The Debtor further objects that this Request seeks information that is set forth comprehensively in the Debtor's publicly filed Plan, Disclosure Statement, and Schedules, which are equally available to Huntington, and to the extent it seeks "expected gross proceeds" that cannot reasonably be stated with precision because the Debtor's Assets are to be sold in an orderly fashion over a period of time and appraisals have not yet been obtained for most Assets.

Without waiving the foregoing, the Debtor states that, as described in the Plan and Disclosure Statement, substantially all of the Debtor's Operating Companies and Investment Companies are contemplated to be sold or otherwise monetized in an orderly fashion over the term of the Plan. The Debtor is not, however, currently actively marketing all of those Assets, because the Plan's deliberate, value-maximizing timeline calls for staged dispositions rather than an immediate or forced sale of all Assets. For Entities in which the Debtor does not hold a 100% interest, any sale of an underlying asset will require the Debtor to follow appropriate corporate formalities, including obtaining any necessary approvals from other owners or managers, as described in Article V of the Disclosure Statement.

The Entities that are presently marketing or otherwise actively pursuing the sale of assets include: Madison Warehouse, LLC; Grasshopper Investments II, LLC (with respect to the real property referred to as "Eastgate"); The Blue Development Company, LLC; and Northern Kentucky Assisted Living, LLC and Northern Kentucky Retirement Community, LLC. In addition, as described in the responses to Interrogatory Nos. 15 and 21, The Gatherings of Blue Ash, LLC sold its real property (10627 Techwoods Circle, Cincinnati, Ohio) to Crossroads East, LLC on April 15, 2026. The Red Corner, LLC previously marketed its individual townhome units for sale; however, those efforts did not attract satisfactory offers, and The Red Corner, LLC has ceased marketing the units for sale and has resumed renting them to generate revenue, with an eventual aim to sell a leased-up building.

As to subparts (c), (d), and (e), the assets to be sold, the liens encumbering those assets, and the lienholders are set forth in Article V of the Disclosure Statement and in the treatment of the secured Claims in the Plan (Classes 2 through 15), and are further reflected in the Debtor's Schedules and the proofs of claim filed in this Case. The Debtor's best estimates of the value realizable from the disposition of his Assets are set forth in the

liquidation analysis attached to the Disclosure Statement as Exhibit B. The Debtor incorporates those filings by reference rather than restating their contents, and the responsive information may be derived from them in accordance with Rule 33(d).

As to documents, the listing agreements, purchase agreements, and related sale documents for the foregoing transactions are being produced. To the extent any such Asset is not yet listed or under agreement, no listing or sale agreement yet exists, and the Debtor will produce such documents as they come into existence consistent with the quarterly reporting required under the Plan.

**24. Identify all notes/obligations receivable and notes/obligations payable of Schneider and/or a Trust, and state (a) the amount of the debt; (b) the parties to the notes/obligations receivable or payable; and (c) the terms of repayment. Identify all documents which refer or relate to the notes/obligations receivable and payable.**

**RESPONSE:**

**OBJECTION:** Including subparts, the prior interrogatories have exceeded the limit of 25 total interrogatories permitted under Rule 33, obviating the need for any further responses; the Debtor nevertheless responds below without waiving this objection. The Debtor further objects that this Request is duplicative of information set forth comprehensively in the Debtor's Schedules, the Plan and Disclosure Statement, and the proofs of claim filed in this Case, all of which are part of the public record, are equally available to Huntington, and from which the responsive information may be derived in accordance with Rule 33(d).

Without waiving the foregoing, the Debtor states as follows.

Notes/obligations receivable (owed to the Debtor):

The Blue Promissory Note. The Debtor holds the Blue Promissory Note, made by the Raymond Schneider 2019 Gift Trust, in the original principal amount of $1,485,000.00, bearing interest at five percent (5%) per annum, maturing September 1, 2026, with a balance of $1,633,500.00 due at maturity if no payments are made in the interim. This note is further described in the responses to Interrogatory Nos. 4, 16, and 18, and the note itself has been produced.

Entity loans. The Debtor is owed approximately $952,542.09 by The Blue Development Company, LLC, and approximately $250,000.00 by Circle Development of Cincinnati, LLC. These obligations arose from advances made by the Debtor, as owner, to those companies. They are not evidenced by written promissory notes and have no stated terms of repayment; they are reflected in the books and records of the respective companies and in the Debtor's Schedules. To the best of the Debtor's knowledge, the Debtor holds no other notes or obligations receivable.

Notes/obligations payable (owed by the Debtor): The Debtor's obligations payable have been identified in prior responses and in the Debtor's public filings, and rather than restate them, the Debtor incorporates those responses by reference:

- the mortgages encumbering the Debtor's three real properties, as set forth in the response to Interrogatory No. 7;

- the obligation owed to Bank of America under the LMA Agreement, secured by the Debtor's Merrill Lynch accounts, as set forth in the response to Interrogatory No. 12;

- the Debtor's guaranty and co-obligor obligations on the secured debt of his Operating Companies (including the Civista, First Federal, GECU, Heritage, Kemba, Rockland, and Stock Yards obligations), which are primarily obligations of the respective Entities on which the Debtor is secondarily liable, as set forth in the response to Interrogatory No. 6 and in the treatment of the secured Claims in the Plan (Classes 7 through 14);

- the reinstated Huntington judgment, which the Debtor disputes and against which the Debtor has a pending counterclaim, as set forth in the responses to Interrogatory Nos. 12 and 21; and

- the Debtor's remaining scheduled liabilities, including general unsecured trade obligations, as set forth in the Debtor's Schedules.

The amounts, parties, and terms of the foregoing obligations may be derived from the Debtor's Schedules, the Plan and Disclosure Statement, and the proofs of claim filed in this Case in accordance with Rule 33(d).

Trust obligations: As to the Trusts, the Raymond Schneider 2019 Gift Trust is the maker of the Blue Promissory Note described above, which is an obligation payable of that Trust and a receivable of the Debtor. The Entities owned by the Trusts have their own liabilities, which have been identified in prior responses and in the documents produced; because this Interrogatory does not specifically request the obligations of Entities owned by the Trusts, those obligations are not separately detailed here. To the best of the Debtor's knowledge, the Trusts have no other notes or obligations receivable or payable in their own names except through entities they own.

**25. Identify all notes/obligations receivable and notes/obligations payable between a Family Member and an Entity identified in the responses to Interrogatory 2, and state (a) the amount of the debt; (b) the parties to the notes/obligations receivable or payable; and (c) the terms of repayment. Identify all documents which refer or relate to the notes/obligations receivable and payable.**

**RESPONSE:**

**OBJECTION:** Including subparts, the prior interrogatories have exceeded the limit of 25 total interrogatories permitted under Rule 33, obviating the need for any further responses; the Debtor nevertheless responds below without waiving this objection. The Debtor further objects that this Request seeks information regarding obligations between Family Members and Entities (including Entities the Debtor does not control and to which he is not a party) that is not within the Debtor's possession, custody, or control, that is beyond the scope of Rule 2004, and that is irrelevant to the administration of the estate, as set forth in the 2004 Objection. Those Family Members and Entities are entitled to respond on their own behalf as to their own affairs.

Without waiving the foregoing, and to the best of the Debtor's knowledge, there are no notes or obligations receivable or payable between a Family Member and an Entity identified in the response to Interrogatory No. 2, other than the rights that accrue to Family Members in their capacity as equity owners of the Entities in which they hold ownership interests. Those ownership interests, and the rights attendant to them, are described in the responses to Interrogatory Nos. 2, 4, 16, and 17 and in the documents produced. The Debtor is not aware of any promissory note or loan obligation between a Family Member and any such Entity.

**26. Identify all life insurance policies which insure Schneider's life, and the names and addresses of all beneficiaries, and whether the policies have been pledged as collateral to any other creditor. Identify all documents which refer or relate to these life insurance policies and pledges.**

**RESPONSE:**

**OBJECTION:** Including subparts, the prior interrogatories have exceeded the limit of 25 total interrogatories permitted under Rule 33, obviating the need for any further responses; the Debtor nevertheless responds below without waiving this objection. The Debtor has produced documents from which the responsive information may be derived in accordance with Rule 33(d).

Without waiving the foregoing, the Debtor states that his life is currently insured under a variable universal life insurance policy issued by The Lincoln National Life Insurance Company (Lincoln VUL ONE 2014, Policy No. 4929454, issued October 24, 2019). The policy is owned by the Raymond Schneider 2019 Gift Trust, not by the Debtor. As reflected on the Debtor's produced Merrill Lynch account statements, on which the policy is reported for informational purposes only, the policy has a death benefit of approximately $4,083,170.77 and a contract value of approximately $2,740,383.07, with no policy loans outstanding. The Debtor's life is also insured, jointly with his Spouse, under a survivorship (second-to-die) variable universal life insurance policy issued by The Lincoln National Life Insurance Company (Lincoln SVUL One 2016, Policy No. VUL1009746), which provides a death benefit of $10,000,000.00 payable upon the death of the survivor of the Debtor and his Spouse. That policy is owned by the Schneider Family Insurance Trust dated October 10, 2019 (Emily S. Pan, Trustee), and the trust is the beneficiary; the policy

is not owned by the Debtor, and the Debtor holds no incidents of ownership in it. Neither policy has been pledged as collateral to any creditor. Further detail regarding the Schneider Family Insurance Trust is set forth in the response to Interrogatory No. 16.

The beneficiary of the policy is the Raymond Schneider 2019 Gift Trust. The terms of the Raymond Schneider 2019 Gift Trust, including its beneficiaries, are described in the response to Interrogatory No. 16, and the trust instrument has been produced.
To the best of the Debtor's knowledge, the policy has not been pledged as collateral to any creditor. The policy is owned by the Raymond Schneider 2019 Gift Trust and is not among the assets pledged to Bank of America under the LMA Agreement described in the response to Interrogatory No. 12.

The documents referring or relating to the policy include the policy itself and the Debtor's Merrill Lynch account statements, which have been produced, and the instrument establishing the Raymond Schneider 2019 Gift Trust, which has also been produced. Further detail regarding the policy as a trust asset is set forth in the responses to Interrogatory Nos. 11 and 16.

**27. State whether Schneider intends to pay off the Judgment, and if so, the source of funds he intends to use.**

**<u>RESPONSE:</u>**

OBJECTION: Including subparts, the prior interrogatories have exceeded the limit of 25 total interrogatories permitted under Rule 33, obviating the need for any further responses; the Debtor nevertheless responds below without waiving this objection. The Debtor further objects that this Request seeks information set forth in the Debtor's publicly filed Plan and Disclosure Statement, which are equally available to Huntington.

Without waiving the foregoing, the Debtor states that he disputes the Judgment, has asserted a claim against Huntington that he contends may reduce or eliminate any amount owed, and expressly reserves all rights with respect to the Judgment and Huntington's asserted claim, including all rights of objection, offset, and recoupment. Accordingly, the premise of the Request, that the Debtor intends to "pay off" the Judgment, does not accurately reflect the Debtor's position or the manner in which Huntington's claim will be addressed.

Huntington's claim will be treated in accordance with the Debtor's Plan. As set forth in the Plan and Disclosure Statement, to the extent Huntington holds an allowed secured claim, that claim is addressed through the treatment of the collateral securing it, and to the extent Huntington holds an allowed unsecured claim, that claim will share in distributions to general unsecured creditors on the terms provided in the Plan. No distribution is owed on Huntington's claim except to the extent the claim is ultimately allowed, after resolution of the Debtor's objections and claim.

The source of funds for distributions under the Plan, including any distribution ultimately payable on account of Huntington's allowed claim, is the Plan's funding mechanism,

principally the orderly sale and monetization of the Debtor's assets over the term of the Plan, together with the Debtor's income, as described in the Disclosure Statement and reflected in the liquidation analysis attached as Exhibit B. The Debtor incorporates the Plan and Disclosure Statement by reference for the complete description of the treatment of Huntington's claim and the means of implementation of the Plan.

**28. For each of the Entities identified in response to Interrogatory 2 and any Trust, identify (i) the accounting system and payroll provider used by each Entity/Trust; (ii) the corporate credit card account information for each Entity or Trust, including the issuer of the card and the current balance owed; and (iii) the manager or trustee of each Entity or Trust.**

**RESPONSE:**

**OBJECTION:** Including subparts, the prior interrogatories have exceeded the limit of 25 total interrogatories permitted under Rule 33, obviating the need for any further responses; the Debtor nevertheless responds below without waiving this objection. The Debtor further objects that this Request is overly broad and unduly burdensome to the extent it seeks entity-by-entity detail for more than 100 Entities over an extended period, and that it seeks information regarding Entities the Debtor does not control and as to which he lacks possession, custody, or control of complete records, as set forth in the 2004 Objection. The Debtor responds below with respect to the Entities he controls.

Without waiving the foregoing, the Debtor states as follows.

(i) Accounting system and payroll provider. The Entities the Debtor controls currently use the Sage accounting software system. Prior to June 1, 2022, those Entities used QuickBooks. For those Entities that have payroll, payroll services have been provided by Paylocity and ADP at different times during the relevant period. The Debtor does not have possession, custody, or control of the accounting-system or payroll information for Entities he does not control.

(ii) Corporate credit card account information. The corporate credit card statements for the Entities the Debtor controls have been produced in response to the Requests for Production, and the card issuers and balances may be derived from those statements in accordance with Rule 33(d). The Debtor does not have possession, custody, or control of corporate credit card information for Entities he does not control.

(iii) Manager or trustee. The Debtor, Raymond Schneider, is the manager of the Operating Companies he controls. The Trusts do not have managers. As set forth in the response to Interrogatory No. 16, Patricia B. Schneider is the trustee of the Raymond Schneider 2019 Gift Trust, and Raymond Schneider is the trustee of the Patricia B. Schneider 2020 Gift Trust. For Entities the Debtor does not control, the identity of the manager or managing member is reflected in those Entities' organizational documents, which are being produced to the extent in the Debtor's custody and control. If there is a specific entity in which a contact person or manager is requested, the Debtor can supplement.

**RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

**GLOBAL RESPONSE NOTE:** As a global matter applicable to all Requests below, the parties have negotiated search terms for the review of the Debtor's electronically stored information, including a volume of email. The Debtor's production of responsive, non-privileged email and the attachments thereto is ongoing and will be supplemented on a rolling basis as that review proceeds, subject to the Debtor's objections and the withholding and logging of privileged materials. In addition, because of the volume of the documents being produced, there may be instances in which particular documents (such as a bank statement or financial statement for a given period) were inadvertently not produced; to the extent any responsive documents are missing, the Debtor will supplement. The following responses are made subject to that ongoing review.

**1. Produce copies of all documents identified in, concerning, relating to, or supporting your responses to interrogatories.**

**OBJECTION**: The Debtor incorporates the general objections set forth above and the objections set forth in the 2004 Objection, including the objection to the relevant time period. The Debtor further objects that this Request is overly broad and unduly burdensome to the extent the phrase "concerning, relating to, or supporting" would require the Debtor to identify and produce every document with any conceivable connection to his interrogatory responses across more than 100 Entities and an eight-year period, and to the extent it seeks documents of Entities the Debtor does not control and that are not within his possession, custody, or control. The Debtor further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or applicable tax-return privileges.

**RESPONSE**: Subject to and without waiving the foregoing objections, the Debtor has produced the non-privileged documents within his possession, custody, or control that are responsive to this Request, organized into folders by Entity and by category. As to Entities the Debtor does not control, the Debtor has produced the documents within his possession, custody, or control, including documents obtained from third parties upon the Debtor's request, and is not the custodian of those Entities' complete records.

**2. Produce copies of all personal financial statements Debtor has provided to any lender from January 1, 2018 through the present.**

**OBJECTION**: The Debtor incorporates the general objections set forth above and the objections set forth in the 2004 Objection, including the objection to the relevant time period. The Debtor further objects that this Request seeks information that is irrelevant to the administration of the estate and the Debtor's current financial condition, particularly to the extent it reaches personal financial statements predating the petition date by more than five years.

**RESPONSE**: Subject to and without waiving the foregoing objections, the Debtor has produced the personal financial statements within his possession, custody, or control that he provided to lenders during the relevant period, following a reasonable search of his records. The Debtor further states that additional personal financial statements may exist

within the Debtor's email records and, to the extent located in the ongoing review of the Debtor's electronically stored information, will be produced at a later time. See also the responses to Interrogatory Nos. 14 and 19.

**3. Produce organizational charts for the ownership of the Entities identified in response to Interrogatory 2.**

**OBJECTION**: The Debtor incorporates the general objections set forth above and the objections set forth in the 2004 Objection. The Debtor further objects that this Request is overly broad and unduly burdensome to the extent it seeks organizational charts the Debtor does not maintain, and to the extent it reaches Entities the Debtor does not control and whose ownership documentation is not within his possession, custody, or control.

**RESPONSE**: Subject to and without waiving the foregoing objections, the Debtor has produced the organizational chart(s) reflecting the ownership of the Entities within his possession, custody, or control. The ownership of the Entities is also set forth in Schedule 2 to the Debtor's interrogatory responses and in Article V of the Disclosure Statement.

**4. Produce copies of all state, local, and federal tax returns from 2018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.**

**OBJECTION**: The Debtor incorporates the general objections set forth above and the objections set forth in the 2004 Objection, including the objection to the relevant time period. The Debtor further objects that this Request is overly broad, unduly burdensome, and seeks information of no relevance to the administration of the estate to the extent it demands eight years of tax returns for more than 100 Entities, including Entities the Debtor does not control and as to which complete tax records are not within his possession, custody, or control. The Debtor further objects to the extent the Request seeks information protected by applicable tax-return privileges.

**RESPONSE**: Subject to and without waiving the foregoing objections, the Debtor has produced the tax returns within his possession, custody, or control for the Debtor and for the Entities he controls, organized by Entity. As stated in the response to Interrogatory No. 16, the Debtor's estate-planning Trusts (the Raymond Schneider 2019 Gift Trust, the Patricia B. Schneider 2020 Gift Trust, and the Schneider Family Insurance Trust) are grantor trusts whose income is reported on the joint individual income tax returns of the Debtor and his Spouse, which have been produced, and those Trusts do not file separate income tax returns. The Joseph Schneider Irrevocable Trust, of which the Debtor is a beneficiary (see the response to Interrogatory No. 12), is a separate taxpayer that files its own fiduciary income tax returns and issues Schedule K-1s to its beneficiaries; the Debtor will produce the fiduciary income tax returns and any Schedule K-1s issued to him that are within his possession, custody, or control. Many of the Entities are disregarded entities that file no separate returns, as reflected in Schedule 2. As to Entities the Debtor does not control, the Debtor is not in possession, custody, or control of complete tax records and has produced the returns provided to him.

**5. Produce all existing financial statements from 2018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.**

**OBJECTION**: The Debtor incorporates the general objections set forth above and the objections set forth in the 2004 Objection, including the objection to the relevant time period. The Debtor further objects that this Request is overly broad and unduly burdensome to the extent it seeks eight years of financial statements for more than 100 Entities, including Entities the Debtor does not control and as to which complete records are not within his possession, custody, or control.

**RESPONSE**: Subject to and without waiving the foregoing objections, the Debtor has produced the existing financial statements within his possession, custody, or control for the Debtor and for the Entities he controls, organized by Entity, including profit-and-loss statements and balance sheets. The most recent financial statements for the Entities for which the Debtor files reports under Bankruptcy Rule 2015.3 have also been filed with the Court as part of those 2015.3 reports. The Trusts do not maintain separate financial statements, as stated in the response to Interrogatory No. 16. As to Entities the Debtor does not control, the Debtor has produced the financial statements provided to him and is not the custodian of those Entities' complete records.

**6. Produce all bank statements and cancelled checks from 2018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.**

**OBJECTION**: The Debtor incorporates the general objections set forth above and the objections set forth in the 2004 Objection, including the objection to the relevant time period. The Debtor further objects that this Request is overly broad and unduly burdensome to the extent it seeks eight years of bank statements and individual cancelled checks for more than 100 Entities, including Entities the Debtor does not control, and to the extent the separate retrieval and production of individual cancelled checks over that period is disproportionate to the needs of the case.

**RESPONSE**: Subject to and without waiving the foregoing objections, the Debtor has produced the bank statements within his possession, custody, or control for the Debtor and for the Entities he controls, organized by Entity and account. As stated in the response to Interrogatory No. 16, the Debtor's estate-planning Trusts do not maintain separate deposit accounts. The Joseph Schneider Irrevocable Trust, of which the Debtor is a beneficiary, maintains deposit balances within the UBS Account described in the response to Interrogatory No. 12, the statements for which are being produced. To the extent copies of cancelled checks are not included within the produced bank statements, the Debtor does not separately maintain his own copies of such checks, and those copies would need to be obtained from the applicable bank. As to Entities the Debtor does not control, the Debtor is not the custodian of complete records and has produced what is within his possession, custody, or control.

**7. Produce all credit card statements from 2018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.**

**OBJECTION**: The Debtor incorporates the general objections set forth above and the objections set forth in the 2004 Objection, including the objection to the relevant time period. The Debtor further objects that this Request seeks information that is irrelevant to the administration of the estate, and is overly broad and unduly burdensome, to the extent it seeks eight years of credit card statements for more than 100 Entities, including Entities the Debtor does not control and as to which such records are not within his possession, custody, or control.

**RESPONSE**: Subject to and without waiving the foregoing objections, the Debtor has produced the credit card statements within his possession, custody, or control for the Debtor and for the Entities he controls. As stated in the response to Interrogatory No. 16, the Trusts do not maintain separate accounts. See also the response to Interrogatory No. 28.

**8. Produce all investment account statements from 2018 to the present for a) the Debtor; b) the Entities; and c) the Trusts.**

**OBJECTION**: The Debtor incorporates the general objections set forth above and the objections set forth in the 2004 Objection, including the objection to the relevant time period. The Debtor further objects that this Request is overly broad and unduly burdensome to the extent it reaches Entities the Debtor does not control and as to which such records are not within his possession, custody, or control.

**RESPONSE**: Subject to and without waiving the foregoing objections, the Debtor has produced the investment account statements within his possession, custody, or control, including the Merrill Lynch account statements for the Debtor's accounts. As stated in the responses to Interrogatory Nos. 11 and 12, the Debtor's stocks, bonds, and other marketable securities are held in those accounts, and the Debtor's estate-planning Trusts do not maintain separate marketable securities accounts. The Joseph Schneider Irrevocable Trust, of which the Debtor is a beneficiary, maintains the UBS Account described in the response to Interrogatory No. 12, the statements for which are being produced. See also the responses to Interrogatory Nos. 11 and 12.

**9. Produce all governance documents (operating agreements, articles of incorporation, bylaws, buy-sell agreements, and the like), and amendments, modifications, or restatements thereof, for all of the Entities.**

**OBJECTION**: The Debtor incorporates the general objections set forth above and the objections set forth in the 2004 Objection. The Debtor further objects that this Request is overly broad and unduly burdensome to the extent it seeks governance documents for more than 100 Entities, including Entities the Debtor does not control and whose governance documents are not within his possession, custody, or control.

**RESPONSE**: Subject to and without waiving the foregoing objections, the Debtor has produced the governance documents within his possession, custody, or control for the Entities, organized by Entity, including operating agreements, articles of organization or incorporation, and amendments, modifications, and restatements thereof. As to Entities the Debtor does not control, the Debtor has produced the governance documents within his possession, custody, or control and is not the custodian of those Entities' complete records.

**10. Produce all governing documents and agreements, including any amendments, modifications, and restatements, for the Trusts.**

**OBJECTION**: The Debtor incorporates the general objections set forth above and the objections set forth in the 2004 Objection.

**RESPONSE**: Subject to and without waiving the foregoing objections, the Debtor has produced the governing documents for the Raymond Schneider 2019 Gift Trust and the Patricia B. Schneider 2020 Gift Trust, including any amendments, modifications, and restatements within his possession, custody, or control. The Debtor is also producing the governing documents for the Joseph Schneider Irrevocable Trust datd July 14, 1986, as amended, of which the Debtor is a beneficiary (see the response to Interrogatory No. 12), to the extent within his possession, custody, or control. The Debtor has also obtained a copy of the relevant files from his estate-planning counsel and is reviewing those files prior to production; those files may contain additional responsive documents that have not already been produced, which the Debtor will produce following his review, subject to the withholding and logging of any privileged materials. See also the response to Interrogatory No. 16.

**11. Produce all documents and correspondence related to any direct or indirect transfer to the Trusts within the last ten (10) years.**

**OBJECTION**: The Debtor incorporates the general objections set forth above and the objections set forth in the 2004 Objection. The Debtor further objects that this Request is overly broad and unduly burdensome, and seeks information beyond the scope of Rule 2004, to the extent the phrase "related to" and the inclusion of "indirect" transfers would require the Debtor to identify and produce every document with any conceivable connection to a transfer over a ten-year period. The Debtor further objects to the extent the Request seeks documents protected by the attorney-client privilege or the work-product doctrine, including communications with estate-planning, tax, and legal counsel; such privileged materials will be withheld and logged. The Debtor further objects to the extent responsive correspondence is among the Debtor's electronically stored information still under review, which will be supplemented as described above.

**RESPONSE**: Subject to and without waiving the foregoing objections, the Debtor has produced the non-privileged transactional documents within his possession, custody, or control relating to the transfers to the Trusts, including the assignment and gift instruments, the membership-interest transfer documents, and the Blue Promissory Note, as described in the responses to Interrogatory Nos. 4, 16, and 18. The Debtor has also obtained a copy of the relevant files from his estate-planning counsel and is reviewing those files prior to

production; those files may contain additional responsive documents that have not already been produced, which the Debtor will produce following his review, subject to the withholding and logging of any privileged materials. Responsive, non-privileged correspondence, to the extent located in the ongoing review of the Debtor's electronically stored information, will be produced on a rolling basis.

**12. Produce all electronic versions of the documents created, modified, or used in connection with any transfers by the Debtor to the Trusts within the past ten (10) years, including the unaltered metadata included in the documents.**

**OBJECTION**: The Debtor incorporates the general objections set forth above and the objections set forth in the 2004 Objection. The Debtor further objects that this Request is overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks native electronic versions with metadata for all documents "created, modified, or used in connection with" transfers over a ten-year period, without limitation as to custodian or source, and to the extent the form of production and any metadata fields are subject to the parties' ongoing negotiation regarding the review and production of the Debtor's electronically stored information. The Debtor further objects to the extent the Request seeks documents protected by the attorney-client privilege or the work-product doctrine, which will be withheld and logged.

**RESPONSE**: Subject to and without waiving the foregoing objections, the Debtor has produced the transactional documents relating to the transfers to the Trusts as set forth in the response to Request No. 11. The Debtor has also obtained a copy of the relevant files from his estate-planning counsel and is reviewing those files prior to production; those files may contain additional responsive documents that have not already been produced, which the Debtor will produce following his review, subject to the withholding and logging of any privileged materials. The Debtor is prepared to meet and confer regarding the form of production of electronically stored information, including native formats and metadata, as part of the parties' ongoing discussions regarding the Debtor's electronically stored information, and will produce responsive, non-privileged electronic documents consistent with the protocol the parties reach.

**13. Request No. 13: Produce all existing appraisals, valuations, or business valuations from 2018 to the present for a) any property of the Debtor; b) the Entities; and c) the Trusts.**

**OBJECTION**: The Debtor incorporates the general objections set forth above and the objections set forth in the 2004 Objection, including the objection to the relevant time period. The Debtor further objects that this Request is overly broad and unduly burdensome to the extent it reaches Entities the Debtor does not control and as to which such records are not within his possession, custody, or control.

**RESPONSE**: Subject to and without waiving the foregoing objections, the Debtor has produced the existing appraisals and valuations within his possession, custody, or control. As described in the responses to Interrogatory Nos. 7 and 8, the Debtor will obtain an appraisal where there is a particular business purpose for doing so (such as a requirement

imposed by a lender) but otherwise relies on the county auditor tax-assessed values, which he believes reflect market value. To the extent appraisals or valuations have been obtained, the Debtor is producing them. The Debtor has also obtained a copy of the relevant files from his estate-planning counsel and is reviewing those files prior to production; those files may contain additional responsive documents that have not already been produced, which the Debtor will produce following his review. The Debtor has further engaged an appraiser with respect to his interest in To Life, Ltd. and will supplement when that appraisal is available.

**As to all objections:**

/s/ James A. Coutinho
James A. Coutinho (0082430)

Respectfully submitted,

/s/ James A. Coutinho
James A. Coutinho (0082430)
Allen Stovall Neuman & Ashton LLP
10 W. Broad St., Ste. 2400
Columbus, Ohio 43215
T: (614) 221-8500 F: (614) 221-5988
coutinho@asnalaw.com
*Counsel for Debtor*

**Schedule 2**

| Entity Name | State | EIN | Formation Date | Closure/Dissolution Date | Debtor's Ownership Interest | Type | Tax Status / Notes |
|---|---|---|---|---|---|---|---|
| 5027 and 5055 Madison Road LLC | Ohio | | 2/15/2021 | | Madison Warehouse, LLC | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flows through Madison Warehouse, LLC |
| 5150 East Galbraith Road LLC | Ohio | 20-2585670 | 3/16/2005 | | Ray Schneider - 1/3<br>Henry Schneider - 1/3<br>Thomas Zemboch - 1/3 | Investment Company | Debtor receives a K-1 |
| 54 Realty, LTD | Ohio | | 11/25/1997 | | Ray Schneider - 50%<br>Harold Sosna - 50% | Closed / Inactive | Liquidated by receiver; no known tax filings since liquidation |
| 72 Ventures Ltd | Ohio | | 11/25/1997 | | Ray Schneider - 50%<br>Harold Sosna - 50% | Closed / Inactive | Assets sold after state closed facility in 2017. No returns. |
| 747 LLC | Ohio | | 2/2/2000 | 8/28/2025 | RH Real Estate Investments LLC | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flowed through RH Real Estate Investments, LLC |
| 82 Lafayette Road Development, LLC | MA | | | | Not Debtor | Not Debtor / third party | Debtor sold interest in company in 2017. |
| 82 Lafayette Road LLC | Unknown | | | | Not Debtor | Not Debtor / third party | This company never existed to the best of the Debtor's knowledge. |
| 9617 Kenwood Road Development, LLC | | | | | | Renamed (see note) | RENAMED. See The Blue Development Company, LLC |
| All Realty of Blue Ash, LLC | Ohio | | 11/20/2002 | 7/18/2024 | HRM Realty - 100% | Other | Flowed through to HRM Realty |
| Alternative Home Care and Staffing Incorporated | Ohio | | 7/18/1995 | 10/12/2022 | Not Debtor | Not Debtor / third party | No longer owned by Debtor; transferred in 2020. |
| Atlanta RDPR, LLC | GA | 84-2020485 | 6/4/2019 | 2/20/2023 | Ray Schneider - 100% | Closed / Inactive | No Tax Returns. Appeared on Debtor's Schedule E |
| Atlanta Red Dog Pet Resort & Spa, LLC | GA | | 6/4/2019 | 7/15/2024 | Red Dog Operations Holding Company, LLC | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flowed into Red Dog Operations Holding Company, LLC. Debtror did own 100% of Atlanta Red Dog before the 2020 reorganization in which he contributed his membership interest in it to Red Dog Operations Holding Company. |
| Beechwood Terrace Care Center, Inc. | Ohio | | 9/24/2007 | | Harold Sosna | Not Debtor / third party | Not owned by Debtor. Liquidated by Huntington. Tax status unknown. |
| Boston Animal Hospital LLC | MA | | 8/12/2009 | | KPT7 Holding Company LLC | Operating Company | Disregarded Entity. No Tax Returns. Flowed initially into Red Dog Operations Holding Company, LLC, now flows into KPT7 Holding Company, LLC. Debtor owned 100% of the membership interest before the 2020 reorganization in which he contributed all of his membership interest to Red Dog Operations Holding Company. |
| Boston Pet Rehabilitation Center, LLC | MA | | 4/11/2022 | 12/31/2024 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Dissolved in 2024 in MA. Would have been Sch E. |
| Boston RD LLC | MA | 26-4030402 | 9/5/2008 | | Ray Schneider - 100% | Operating Company | Disregarded Entity. No Tax Returns. Appears on Debtor's Schedule E |

| Entity Name | State | EIN | Formation Date | Closure/Dissolution Date | Debtor's Ownership Interest | Type | Tax Status / Notes |
|---|---|---|---|---|---|---|---|
| Boston Red Dog Pet Resort & Spa LLC | MA | | | | Red Dog Operations Holding Co - 100% | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flows into Red Dog Operations Holding Company, LLC. Debtor owned 100% of the membership interest before the 2020 reorganization in which he contributed all of his membership interest to Red Dog Operations Holding Company. |
| Boston Self Storage LLC | MA | | 5/13/2015 | 6/30/2021 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Dissolved in 2021 in MA. Would have been Sch E. |
| Circle Development of Cincinnati LLC | Ohio | 20-2704600 | 6/29/2004 | | Ray Schneider - 100% | Operating Company | Disregarded Entity. No Tax Returns. Appears on Debtor's Schedule E |
| Circle Health Care Operating Co. I, LLC | Ohio | | 3/28/2021 | 3/15/2024 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Circle Health Care Operating Co. II, LLC | Ohio | | 3/28/2021 | 3/15/2024 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Circle Health Care Operating Co. III, LLC | Ohio | | 3/28/2021 | 3/15/2024 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Circle Health Care Operating Co. IV, LLC | Ohio | | 3/28/2021 | 3/15/2024 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Circle Health Care Operating Co. V, LLC | Ohio | | 3/28/2021 | 3/15/2024 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Circle Health Care Operating Co. VI, LLC | Ohio | | 3/28/2021 | 3/15/2024 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Circle Health Care Real Estate Acquisition Co., LLC | Ohio | | 3/29/2021 | 3/15/2024 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Circle Home Theater, LLC | Ohio | | 2/26/2004 | | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. No business operations for 15+ years. Would have been Sch E. |
| Circle Storage Operating Company I, LLC | Ohio | | 11/18/2016 | | Grasshopper Investments LLC - 100% | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flows into Grasshopper Investments, LLC |
| Circle Storage Operating Company II, LLC | Ohio | | 11/18/2026 | 1/11/2018 | N/A | Other | Merged out of existence in 2018 into Circle Storage Operating Company I, LLC |
| Columbus Health Care Partners, Inc. | Ohio | | 11/26/1997 | 1/4/2007 | Ray Schneider - 100% | Other | No returns. No assets. Terminated in 2007. |
| Corporate Park Investors, LTD. | Ohio | 31-1497845 | 1/28/1997 | | Ray Schneider - 5.5%<br>Multipe other owners | Investment Company | Debtor receives a K-1 |
| Dana Ventures LTD | Ohio | | 3/29/1998 | 6/19/2024 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Ceased operations in 2004. |
| Delhi Plaza Associates, LTD. | Ohio | 34-1431143 | 1/29/1995 | 10/31/2025 | Ray Schneider - 2.8304%<br>Multiple other owners | Investment Company | Debtor receives a K-1 |
| DSES LLC | Ohio | | 11/19/2014 | | Danielle Schneider - 50%<br>Eric Schneider - 50% | Operating Company | Not owned by Debtor. |
| East Galbraith Health Care Center, INC. | Ohio | | 3/30/1997 | | Ray Schneider - 1/3<br>Henry Schneider - 1/3<br>Marilyn Zamboch - 1/3 | Closed / Inactive | No returns. No assets. Ceased operations in 2003 |
| EGHC Holdings, Ltd | Ohio | 31-1573722 | 8/6/1997 | | HRM Realty Holdings, LLC 100% | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flows into HRM Realty Holdings, Ltd. |
| Euclid Health Care, INC. | Ohio | 20-0389875 | 11/26/2003 | | Ray Schneider - 50%<br>Harold Sosna - 50% | Closed / Inactive | Liquidated by receiver; no known tax filings since liquidation |

| Entity Name | State | EIN | Formation Date | Closure/Dissolution Date | Debtor's Ownership Interest | Type | Tax Status / Notes |
|---|---|---|---|---|---|---|---|
| Executive Park Investors, Ltd | Ohio | 31-1416007 | 8/30/1994 | | Ray Schneider - 5%<br>Multiple other owners | Investment Company | Debtor receives a K-1 |
| Framingham RD LLC | MA | 84-4728706 | 2/12/2020 | 12/29/2023 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Framingham Red Dog Pet Resort & Spa, LLC | MA | 84-4813453 | 2/12/2020 | 12/29/2023 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Grasshopper Investments II, LLC | Ohio | 20-2675886 | 4/12/2005 | | Ray Schneider - 100% | Operating Company | Disregarded Entity. No Tax Returns. Appears on Debtor's Schedule E |
| Grasshopper Investments LLC | Ohio | 31-1776586 | 4/3/2001 | | Ray Schneider - 0.5% (2/400 shares)<br>Schneider-Grasshopper Inc. - 0.5% (2/400 shares)<br>Patricia B Schneider Gift Trust - 99% (396 shares) | Investment Company | Debtor receives a K-1. |
| Hamilton II, LLC | Ohio | 34-1371411 | 11/9/1999 | | Ray Schneider - 6%<br>Multiple other owners | Investment Company | Debtor receives a K-1 |
| Harmony Health Care, INC. | Ohio | | 12/23/1996 | 10/17/2003 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Dissolved in 2003 |
| Horizon Health Management II, LLC | Ohio | | 4/24/2013 | | HRM Realty Holdings, LLC - 100% | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flows into HRM Realty Holding, LLC. No assets since 2016. |
| Horizon Health Management LLC | Ohio | | 4/24/2013 | | HRM Realty Holdings, LLC - 100% | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flows into HRM Realty Holding, LLC. No assets since 2016. |
| HRM Realty Holdings LTD | Ohio | 31-0983106 | 1/15/1998 | | Henry Schneider - 1/3<br>Ray Schneider - 1/3<br>Marilyn Zembach - 1/3 | Investment Company | Debtor receives a K-1 |
| Hyde Park Circle LLC | Ohio | 20-3095425 | 3/16/2005 | | Ray Schneider - 100% | Operating Company | Disregarded Entity. No Tax Returns. Appears on Debtor's Schedule E |
| IF2, Ltd | Ohio | | 4/27/1998 | | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Ivy Health Care LLC | Ohio | | | | Harold Sosna | Not Debtor / third party | Not owned by Debtor. |
| Ivy Knoll | n/a | | n/a | | n/a | Other | This is not a separate entity. Ivy Knoll is the trade name for Northern Kentucky Retirement Community, LLC |
| JDE Holdings LLC | Ohio | | 6/26/2014 | 9/4/2025 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Keller Road Realty Co LLC | Ohio | 31-1622097 | 9/24/1998 | | Ray Schneider - 50%<br>Harold Sosna - 50% | Closed / Inactive | Liquidated by receiver; no known tax filings since liquidation |
| Kenwood Terrace Health Care Center, INC. | Ohio | 01-0684229 | 4/24/2002 | | Ray Schneider - 50%<br>Harold Sosna - 50% | Closed / Inactive | Liquidated by receiver; no known tax filings since liquidation |
| KPT7 Holding Company, LLC | Ohio | | 10/22/2024 | | Ray Schneider – 0.01%<br>Patricia B. Schneider 2020 Gift Trust – 64.99%<br>Eric Schneider – 35% | Investment Company | Debtor receives a K-1 |
| Lebanon Rd, LLC | Ohio | 85-4246195 | 12/9/2020 | | Ray Schneider - 100% | Operating Company | Disregarded Entity. No Tax Returns. Appears on Debtor's Schedule E |

| Entity Name | State | EIN | Formation Date | Closure/Dissolution Date | Debtor's Ownership Interest | Type | Tax Status / Notes |
|---|---|---|---|---|---|---|---|
| Loveland Rd Realty, LLC | Ohio | | 10/17/2018 | | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Loveland Rd, LLC | Ohio | | 9/10/2012 | | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Loveland Red Dog Pet Resort & Spa LLC | Ohio | 83-2213888 | 9/10/2012 | 3/31/2025 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Madison Warehouse, LLC | Ohio | 86-2380200 | 3/1/2021 | | Ray Schneider - 100% | Operating Company | Disregarded Entity. No Tax Returns. Appears on Debtor's Schedule E |
| Mason Rd, LLC | Ohio | 46-4330633 | 1/31/2014 | | Ray Schneider - 100% | Operating Company | Disregarded Entity. No Tax Returns. Appears on Debtor's Schedule E |
| Mason Red Dog Pet Resort & Spa, LLC | Ohio | | 1/31/2014 | | Red Dog Operations Holding Co - 100% | Operating Company | Disregarded Entity. No Tax Returns. Flows into Red Dog Operations Holding Company, LLC. Debtor owned 100% of the membership interest before the 2020 reorganization in which he contributed all of his membership interest to Red Dog Operations Holding Company. |
| Monarch Rd LLC | Ohio | | 1/31/2016 | 4/7/2025 | Ray Schneider - 100% | Closed / Inactive | No assets. Previously held real estate that was transferred to Circle Storage Operating Company I, LLC in 2020. Would have been on Sch E anyway. |
| Montclair Investors Ltd | Ohio | 31-1453091 | 1/9/1996 | | Ray Schneider - 5%<br>Multiple other owners | Investment Company | Debtor receives a K-1 |
| New England Self Storage LLC | MA | | 11/5/2014 | 6/30/2017 | Ray Schneider - 100% | Other | No returns. No assets. Dissolved in 2017 |
| North Shore RD LLC | MA | 81-2457627 | 10/28/2015 | | Ray Schneider - 100% | Operating Company | Disregarded Entity. No Tax Returns. Appears on Debtor's Schedule E |
| North Shore Red Dog Pet Resort & Spa, LLC | MA | | 6/1/2016 | | Red Dog Operations Holding Co - 100% | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flows into Red Dog Operations Holding Company, LLC. Debtor owned 100% of the membership interest before the 2020 reorganization in which he contributed all of his membership interest to Red Dog Operations Holding Company. |
| North Station Animal Hospital LLC | MA | | | | KPT7 Holding Company LLC | Operating Company | Disregarded Entity. No Tax Returns. Flowed initially into Red Dog Operations Holding Company, LLC, now flows into KPT7 Holding Company, LLC |
| Northeast Self Storage, LLC | n/a | | 4/15/2015 | | Not Debtor | Not Debtor / third party | Debtor sold his membership interest to partner in 2017 prior to construction. No current assets. Dissolved in MA in 2021 |
| Northern Kentucky Assisted Living LLC | KY | 47-3751427 | 1/12/2015 | | Ray Schneider - 85%<br>DSES LLC - 15% | Operating Company | Debtor receives a K-1 |
| Northern Kentucky Retirement Community, LLC | KY | 47-3817874 | 2/2/2015 | | Ray Schneider - 100% | Operating Company | Disregarded Entity. No Tax Returns. Appears on Debtor's Schedule E |
| Northwest Self Storage LLC | n/a | | | | | Other | Not a known entity; confused with Northwest Self Storage, LLC |
| Peabody RD | MA | | | | | Renamed (see note) | RENAMED to North Shore RD, LLC, in 2016. |

| Entity Name | State | EIN | Formation Date | Closure/Dissolution Date | Debtor's Ownership Interest | Type | Tax Status / Notes |
|---|---|---|---|---|---|---|---|
| Pleasant Ridge Care Center, Inc. | Ohio | | | | Harold Sosna | Not Debtor / third party | Not owned by Debtor. |
| Pleasant Ridge Realty, LLC | Ohio | | 7/15/2008 | | Harold Sosna | Not Debtor / third party | Not owned by Debtor. |
| R & T Development LLC | Ohio | | 2/18/1987 | | Ray Schneider - 100% | Closed / Inactive | No assets for over 20 years (used to own a single family house). No returns. |
| RD Realty I, LLC | Ohio | | 1/8/2007 | | Hyde Park Circle, LLC | Operating Company | Disregarded Entity. No Tax Returns. Appeared on Debtor's Schedule E; now flows through Hyde Park Circle, LLC |
| Red Cup Espresso LLC | Ohio | | 2/20/2020 | 3/31/2025 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Red Dog Management Company, LLC | Ohio | 83-4443618 | 4/16/2019 | | Red Dog Operations Holding Co - 100% | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flows into Red Dog Operations Holding Company, LLC |
| Red Dog Operations Holding Company LLC | Ohio | 86-2160115 | 2/28/2020 | | Kindred Pet Service Holdings, LLC (in which KPT7 Holding Company, LLC holds rollover equity of approximately 31.6%; remainder held by third-party buyer) | Operating Company | Debtor previously received K-1. Company transferred in 2024 through sale transaction. |
| Red Dog Resort & Spa LLC | Ohio | | 8/1/2006 | | Red Dog Operations Holding Co - 100% | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flows into Red Dog Operations Holding Company, LLC |
| RH Real Estate Investments LLC | Ohio | 31-0938830 | 5/22/2008 | | Ray Schneider - 50%<br>Henry Schneider Trust - 50% | Closed / Inactive | Debtor receives a K-1 |
| Schneider-Grasshopper Inc | Ohio | 85-3337936 | 10/6/2020 | | Ray Schneider - 100% | Operating Company | Separate returns filed; Debtor controls. |
| Seminole Avenue Realty, LLC | Ohio | 31-1679953 | 8/18/2016 | | Ray Schneider - 50%<br>Harold Sosna - 50% | Closed / Inactive | Liquidated by receiver; no known tax filings since liquidation |
| Shaya B LLC | Ohio | 86-1184994 | 12/30/2020 | 3/31/2025 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Skipton Kennel and Pet Center | MA | | 5/1/1989 | 12/31/2024 | Ray Schneider - 100% | Closed / Inactive | No assets for many years. Purchased in 2015 and pet supply sale operation was rolled into Boston Red Dog Pet Resort & Spa, LLC. No returns. |
| Soft Pouch Equipment LLC | Ohio | | 5/12/1999 | 3/31/2025 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Southbrook Health Care Center, INC. | Ohio | 01-0687408 | 5/1/2002 | | Ray Schneider - 50%<br>Harold Sosna - 50% | Closed / Inactive | Liquidated by receiver; no known tax filings since liquidation |
| Springdale Red Dog Pet Resort & Spa, LLC | Ohio | | 7/2/2019 | | Red Dog Operations Holding Co LLC - 100% | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flows into Red Dog Operations Holding Company, LLC |
| Steigler Road Realty, LLC | Ohio | 20-0164475 | 8/18/2003 | | Ray Schneider - 50%<br>Harold Sosna - 50% | Closed / Inactive | Liquidated by receiver; no known tax filings since liquidation |
| Sterling Glen Health Center LTD | Ohio | | 8/12/1996 | 3/31/2025 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| Sterling Manor LTD | Ohio | | 8/11/1996 | 3/31/2025 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |

| Entity Name | State | EIN | Formation Date | Closure/Dissolution Date | Debtor's Ownership Interest | Type | Tax Status / Notes |
|---|---|---|---|---|---|---|---|
| Techwoods Circle Rd. LLC | Ohio | 87-3158078 | 10/18/2021 | | KPT7 Holding Company LLC | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flowed into Debtor's Schedule E until February 6, 2025, when Debtor sold all of the membership interest in this company to the KPT7 Holding Company, LLC |
| The Blue Development Company, LLC (Original) | Ohio | | 10/18/2023 | 7/3/2024 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| The Blue Development Company, LLC FKA 9617 Kenwood Road Development, LLC | Ohio | 84-3502331 | 10/28/2019 | | Raymond Schneider 2019 Gift Trust | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flowed into Debtor's Schedule E (as 9617 Kenwood Rd) until September 1, 2024 when Debtor sold all of the membership interest in this company to the Raymond Schneider 2019 Gift Trust |
| The Cambridge Health Care Center LTD | Ohio | | 6/23/1996 | 3/31/2025 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| The Gatherings of Blue Ash, LLC | Ohio | 87-1104980 | 6/7/2021 | | Ray Schneider - 100% | Operating Company | Disregarded Entity. No Tax Returns. Appears on Debtor's Schedule E |
| The Red at Madison Circle, LLC | Ohio | | 7/14/2016 | | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| The Red Corner LLC | Ohio | 83-4636337 | 5/3/2019 | | Ray Schneider - 100% | Operating Company | Disregarded Entity. No Tax Returns. Appears on Debtor's Schedule E |
| The Red Kitchen LLC | Ohio | 83-0672620 | 5/21/2018 | 3/31/2025 | Ray Schneider - 100% | Closed / Inactive | No returns. No assets. Never operated. Would have been Sch E. |
| To Life III, LTD | Ohio | | 9/10/2009 | | Ray Schneider - 100% | Operating Company | No returns. No assets. Never operated. Would have been Sch E. |
| To Life LTD | Ohio | 31-1487413 | 6/23/1996 | | Ray Schneider - 80 Class A (8.42%)<br>Raymond Schneider 2019 Gift Trust - 720 Class B shares<br>Eric Schneider - 45 Class B shares + 5 Class A<br>Justin Schneider - 45 Class B shares + 5 Class A<br>Danielle Schneider - 45 Class B shares + 5 Class A | Operating Company | Debtor receives a K-1 |
| West Chester Pet Resort & Spa LLC | Ohio | | 6/23/2014 | 9/3/2024 | Red Dog Operations Holding Co - 100% | Subsidiary / disregarded | Disregarded Entity. No Tax Returns. Flows into Red Dog Operations Holding Company, LLC |

**Schedule 8**

| Company | Real Estate / Address | Approx. Value | Lienholder | Approx. Lien Balance | Proof of Claim No. | Sale or Lease During Period |
|---|---|---|---|---|---|---|
| 5150 East Galbraith Road, LLC | 5150 East Galbraith Road, Cincinnati, OH 45236 (office building) | $2,500,000 | Stock Yards Bank | $1,201,222.30 | Claim No. 22 | |
| Atlanta RDPR, LLC | 516 Ponce de Leon Avenue, Atlanta, GA 30308 | | Synovus Bank (paid at closing) | Paid at closing | | Sold October 7, 2022 to RHG Ventures, LLC. See Sale documentation being provided |
| The Blue Development Company, LLC fka 9617 Kenwood Road Development, LLC | 9617–9651 Kenwood Road and 9565–9573 Kenwood Road, Blue Ash, Ohio | | Civista Bank | Part of Civista Claims Nos. 13-17 ($16,914,651.76 aggregate) | Claims 13-17 | Membership interests transferred by the Debtor to the Raymond Schneider 2019 Gift Trust on September 1, 2024 in exchange for the Blue Promissory Note. See Interrogatory Nos. 4 and 15. |
| Boston RD, LLC | 274 Southampton Street, Boston, MA 02118 | $9,600,000 | Rockland | $6,160,681 | Claim No. 24 | Leased under a ten-year triple-net lease (November 2024) to Boston Red Dog Pet Resort & Spa, LLC ($500,000/year), with a portion to Boston Animal Hospital, LLC. |
| Circle Development of Cincinnati, LLC | 5211 Madison Road, Cincinnati, OH 45227 | $1,400,000 | First Federal Savings Bank | $937,500.00 | Claim No. 20 | |
| Corporate Park Investors, Ltd. | Two office buildings, 8150–8180 Hetz Drive | | | | | |
| Delhi Plaza Associates, Ltd. | Delhi Shopping Center, 4940–4990 Delhi Road, Cincinnati, OH | | | | | Sold January 12, 2024 to Eastern 1031 Starker Exchange Company for $3,150,000. The Debtor received a partnership distribution of $89,165.12. See Interrogatory No. 15. |
| Executive Park Investors, Ltd. | Office building, 4000–4100 Executive Park Drive | | | | | |
| The Gatherings of Blue Ash, LLC | 10627 Techwoods Circle, Cincinnati, OH 45242 | | Heritage Bank (paid at closing) | $1,271,717.33 (paid in full) | Claim No. 3 | Sold April 15, 2026 to Crossroads East, LLC for $1,900,000 ($1,750,000 real estate / $150,000 contents). |
| Glidden House Partners, Ltd. | Boutique hotel, 1901 Ford Drive, Cleveland, OH | | | | | |
| Grasshopper Investments, LLC (through Circle Storage Operating Company I, LLC) | Nine self-storage facilities titled in Circle Storage Operating Company I, LLC, including 7717 and 7679 Monarch Ct., West Chester; 11573, 10996, and 11367 Deerfield Rd.; and facilities in Amelia, Colerain Township, Harrison, and Liberty Township | $40,000,000 | First Merchants Bank | $37,725,186.13 | Claim No. 8 | The Debtor gifted his Class-B membership interest to his Spouse on November 1, 2020, which was in turn gifted to the Patricia B. Schneider 2020 Gift Trust on December 31, 2020. See Interrogatory No. 4. |
| Grasshopper Investments II, LLC | 3220 and 3226 Omni Drive (two lots) and 9972 Reading Road, Cincinnati, OH 45241 | | First Merchants Bank (cross-collateral; primary obligor is Circle Storage Operating Company I, LLC) | See Claim No. 8 | | The Park National Bank loan on the Omni Drive lots was paid in full after the Petition Date. |
| Hamilton II, LLC | Dillonville Shopping Center, 3900 East Galbraith Road | | | | | |
| HRM Realty Holding, Ltd. | 3873 E. Galbraith Rd., Cincinnati, OH | $254,000.00 | None | | | Sold November 22, 2024 for $254,000.00. |
| Hyde Park Circle, LLC | 5207 Madison Road, Cincinnati, OH 45227 (three parcels; retail center and Red Dog resort) | $6,000,000 | General Electric Credit Union | $2,900,000 | Claim No. 23 | Leased to the acquirer of the Red Dog operating businesses (ten-year lease, November 15, 2024). |
| Hyde Park Circle, LLC | 4989 and 4991 Madison Road, Cincinnati, OH | $1,100,000 | | | | |
| Hyde Park Circle, LLC | 4986 Oaklawn Drive, Cincinnati, OH (single-family home) | $350,000 | Kemba Credit Union | $160,000 | Claim No. 4 | |
| Lebanon RD, LLC | 1205 and 1235 Columbus Avenue, Lebanon, OH (two parcels) | | LCNB National Bank (paid off at closing) | Paid in full at sale | | Sold — 1205 Columbus Avenue to CAT Lebanon, LLC on July 28, 2023 for $560,000; 1235 Columbus Avenue to FIDC 190 LLC on September 3, 2024 for $2,600,000. |
| Madison Warehouse, LLC | 5027 and 5055 Madison Road, Cincinnati, OH 45227 (title held by subsidiary 5027 and 5055 Madison Road LLC) | | Heritage Bank | $1,899,926.42 | Claim No. 2 | |
| Mason RD, LLC | 7036 Columbia Road, Maineville, OH 45039 | | Civista Bank | Part of Civista Claims Nos. 13-17 ($16,914,651.76 aggregate) | Claims 13-17 | |
| Monarch RD, LLC | Real property formerly held; transferred to Circle Storage Operating Company I, LLC in 2020 | | | | | Real property transferred to Circle Storage Operating Company I, LLC on September 9, 2020. |
| Montclair Investors, Ltd. | Three parcels of real estate (3470 Hazelwood Avenue; 3501 McFarlan; Urwiler Avenue) | Approximately $3,000,000 | Minnesota Life | Approximately $2,500,000 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| North Shore RD, LLC | 190 Main Street, Saugus, MA | $8,500,000 | Rockland | Part of combined Rockland Claim No. 24 ($8,970,342.54 aggregate, with Boston RD, LLC) | Claim No. 24 | |
| Northern Kentucky Assisted Living, LLC | 800 Highland Avenue, Covington, KY 41011 (96 units) | $4,000,000 | Civista Bank | $3,291,303 | Claims 13-17 | Leased to affiliate Northern Kentucky Retirement Community, LLC. |
| The Red Corner, LLC | 3500 Madison Park Avenue, Cincinnati, OH (condominium development; 19 townhome units) | $11,200,000 | Civista Bank | $7,200,000 | Claims 13-17 | |
| RH Real Estate Investments, LLC | 7873 Gail Drive, Cincinnati, OH 45236 (single-family home) | | | | | Sold March 4, 2026 to Moksin Holdings Plus, LLC for $218,000 (cash; no lender). |
| Techwoods Circle RD, LLC | 10635 Techwoods Circle, Cincinnati, OH 45242 | | Civista Bank | Part of Civista Claims Nos. 13 and 14-1 | Claims 13 & 14-1 | The Debtor sold his membership interest in this entity to KPT7 Holding Company, LLC on February 6, 2025 for $324,771.99 (interest transfer). See Interrogatory Nos. 4 and 15. |
| To Life III, Ltd. | Vacant land, Cincinnati, OH — Parcel No. 117-0003-0320-00 | $98,110.00 (auditor value) | n/a | | | |
| To Life III, Ltd. | Vacant land, Cincinnati, OH — Parcel No. 117-0004-0014-00 | $22,540.00 (auditor value) | n/a | | | |
| To Life, Ltd. | The Red Apartments, 5110 Herringbone Drive, Cincinnati, OH 45227 | $65,000,000 | Transamerica Life Insurance Company | Approximately $42,000,000 | No separate proof of claim (per Schedules) | The Debtor gifted his Class-B membership interest to the Raymond Schneider 2019 Gift Trust on December 31, 2019; the Debtor retains his Class-A interest and operating control. See Interrogatory No. 4. |
| Waldorf Partners, LP | Apartment complex, 2300 Overlook Drive, Cleveland, OH | | | | | |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No: 25-12607 |
| Raymond Joseph Schneider, | : | Chapter 11 |
| | : | |
| Debtor and Debtor in Possession. | : | Judge Beth A. Buchanan |

## VERIFICATION

I, Raymond Joseph Schneider, declare under penalty of perjury that I am the Debtor and Debtor in Possession in the above-captioned case; that I have read the foregoing Debtor's Response to First Set of Interrogatories and Requests for Production of Documents to Debtor Raymond Schneider; and that the answers to the interrogatories set forth therein are true and correct to the best of my knowledge, information, and belief.

I further state that certain of the answers were prepared with the assistance of counsel and were derived from information and records assembled by me and by others acting on my behalf, and that as to those matters I verify the answers to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 10, 2026.

______________________________
Raymond Joseph Schneider
Debtor and Debtor in Possession