# “EXHIBIT HH”

Planet Depos
We Make It Happen™

# Transcript of 341 Meeting of Creditors

**Date:** April 4, 2023
**Case:** In re: Raymond Joseph Schneider

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

--------------------------x
In Re: : Case No.
RAYMOND JOSEPH SCHNEIDER, : 1:23-bk-10337
Debtor. :
--------------------------x

341 Meeting of Creditors
Held remotely
Tuesday, April 4th, 2023
1:33 p.m.

Job No.: 489645
Pages: 1 - 97
Transcribed by: Debra McCostlin

P R O C E E D I N G S

MR. AUSTIN: Good afternoon, ladies and gentlemen. This is a meeting of creditors in the Chapter 11 case of Raymond Joseph Schneider, Case number 23-10337. Today's date is April 4th, 2023 and the time is approximately 1:33 Eastern.

This meeting of creditors is being conducted by the Office of the United States Trustee pursuant to Section 341(a) of the bankruptcy code. The United States Trustee for Region 9 is Andrew R. Vara. My name is David Austin. I'm a trial attorney for the Office of the United States Trustee.

This meeting is being electronically recorded. No other individuals may be allowed to record this proceeding. If you would like a copy of the recording, please reach out to me at David dot Austin, A-U-S-T-I-N, 2 at usdoj.gov. I will give you a warning. If you don't put the 2 on there you'll talk to someone at the Marine -- at the U.S. Marshal Service and he will have no idea what you're talking about. So if you would like a

copy, you need to reach out to me and I will prepare one for you.

I will examine the debtor as to the financial affairs and other matters which concern the administration of this case. After this, you will have an opportunity to ask questions. If you have a question to ask or a statement to be made, please identify yourself and who you represent before doing so. This meeting may be adjourned from time to time as deemed necessary.

Eric Goering is counsel of record for the debtor. I note that Mr. Schneider has provided a copy of his driver's license and proof of his Social Security number by means of a Social Security benefits statement. The Social Security number on that benefits statement does match the Social Security number as identified on official Form 121.

Mr. Goering, is the debtor present with you?

MR. GOERING: He is. He is sitting across the table from me in my conference room.

Hi, everybody.

MR. AUSTIN: And Mr. Goering, can you attest that the person sitting across the conference table from you is the same person you met with to file the petition, schedules and other related documents for this bankruptcy proceeding?

MR. GOERING: I can and I do.

MR. AUSTIN: All right. Excellent. Now, a number of creditors and counsel for creditors have reached out to our office prior to this 341 meeting to indicate that they would be attending. Before we went on the record a number of them identified themselves.

We have Christopher Shuler (ph) for Huntington National Bank. Doug Hayman (ph) and Jay Reckers (ph) for GE Credit Union. Stephanie Decca (ph) for Bank of America and Merrill Lynch. We have John Lieberman (ph) for Heritage Bank. And we have Thomas Sherrer (ph) and Patrick Berghoff (ph) for First Merchants Bank.

Is there anyone on the line other than

the debtor, Mr. Goering or any of these individuals that I have already identified?

MR. SABA: Paul Saba (ph) on behalf of Stockyards Bank.

MR. AUSTIN: All right. Mr. Saba, could you --

MS. LUCKY: Jenny Lucky (ph) from General Electric Credit Union.

MR. AUSTIN: You said Jenny Lucky?

MS. LUCKY: Yes.

MR. AUSTIN: Okay.

MS. PRICE: And Jacqueline Price on behalf of Rockland Trust.

MR. AUSTIN: Rockland Trust, could you say your name one more time, please?

MS. PRICE: Jacqueline Price.

MR. AUSTIN: And I believe there was a Mr. Saba at the very beginning.

MR. SABA: Yes.

MR. AUSTIN: And who do you represent, Mr. Saba?

MR. SABA: Stockyards Bank.

MR. AUSTIN: And how do you spell your last name?

MR. SABA: S-A-B-A.

MR. AUSTIN: Okay. That should be easy.

All right. Anyone else that I have not previously identified or has not previously spoken?

Okay. I will note that I am hearing some background noise. If you are not actively speaking, I would request that you go on mute moving forward.

All right. Mr. Goering, if you could please have your client raise his right hand.

MR. GOERING: Mr. Schneider, raise your right hand.

RAYMOND JOSEPH SCHNEIDER,

being first duly sworn or affirmed to testify to the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

MR. GOERING: All right. Do you understand you're under oath, Mr. Schneider?

MR. SCHNEIDER: Yes.

MR. GOERING: Will you please state your full name and the last four digits of your Social for the record?

MR. SCHNEIDER: Raymond Joseph Schneider, 1170.

MR. GOERING: Do you want me to do more, David, or do you want to do it?

MR. AUSTIN: I'll takeover. Thank you, Mr. Goering. I appreciate it.

And Mr. Schneider, you understand that the oath that you just gave does subject you to the penalty of perjury, correct?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Mr. Goering, now that we've gotten your client sworn in, would you or your client like to make some sort of opening statement?

MR. GOERING: Yeah. I would love to make an opening statement. Thank you, Mr. Austin.

MR. AUSTIN: I assumed you would.

MR. GOERING: We've done this before, haven't we? So this Chapter 11 was commenced individually by Raymond Schneider on March 2nd, 2023. The forces that brought about the filing of this individual Chapter 11 was that Mr. Schneider is or was a guarantor on certain debt where his business partner was criminally indicted and is currently serving time in federal prison.

Mr. Schneider was the co-obligor/surety on certain debts for Huntington Bank. Huntington Bank secured a judgment against Mr. Schneider and proceeded to collect against him. The Chapter 11 was filed on the eve of the attachment of certain accounts that are held at Merrill Lynch which would have created a substantial tax liability to Mr. Schneider and there were also pending motions to appoint receivers over his business entities which, in our opinion, was going to cause a quick liquidation of his assets. So this Chapter 11 was commenced in order to protect Mr. Schneider and allow him to reorganize his debts.

This is, in my opinion, a complicated individual Chapter 11 due to the fact that Mr. Schneider owns all or a portion of over 70 different LLCs with approximately 25 or 30 of them operating. Many of the parties at the 341 today are listed as unsecured debts in his case due to the fact that Mr. Schneider is a guarantor on the business debts. I have reached out and spoken to most people on the phone regarding this case.

And I will reiterate the intent of Mr. Schneider in this Chapter 11 and that is we have a Chapter 11 plan drafted subject to the judge ruling on the issues that were raised in our two-day trial. Mr. Schneider is prepared to move forward with the filing of a Chapter 11 plan which will provide 100 percent repayment to all creditors and an intent to reaffirm his obligation of all the business debt in which he is a guarantor.

We have the plan drafted. We are working on securing funds which would allow for a

down payment at confirmation and then payment of these debts over a time period up to 60 months in order to resolve his financial issues. Once again, it is intended, as we explained to the Court, a 100 percent repayment to all parties.

MR. AUSTIN: Thank you, Mr. Goering.

Mr. Schneider, you've had a chance to listen to Mr. Goering's opening statement. Are you in agreement? Would you adopt that as the basic background for your filing?

MR. SCHNEIDER: I believe that's the start of it. It's very complicated. It's been hanging over my head for two years. I believe that we're in an appeal that has some very highly successful merits coming about. I believe that the bank was aware that I did not own all the assets that were part of this guarantee.

And I can tell you out loud in front of all my bankers that the number one thing when you do banking is to know your banker and in this case Huntington never, ever, ever spoke to me at any time. They worked with two criminals: one of

them is in prison, the other one will probably lose their license along the way. But all of this was done in the background. As a understanding that a bank should know what they're telling their customer, they never spoke to me.

And I just want to let you know there's an appeal out there and there's some parties looking at this from other sides. I'm out to take care of everybody that I've always done. I've been honest and I've done everything correctly according to any of my creditors and you'll see that I'll continue doing that through the rest of my life and I look forward to working with you again.

MR. AUSTIN: All right. Mr. Schneider, I appreciate all that. One note I will make is I understand that you and Huntington Bank have had I'll just say a contentious relationship as indicated by Mr. Goering with that two-day trial. I will request that you try to confine your responses to the questions that are presented

specifically and try to refrain from too much we'll say editorial commenting. Does that make sense?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay.

MR. GOERING: And just to clarify for everyone on the phone, there is an appeal pending of the judgment of Huntington and the debtor has also initiated litigation against Huntington. All of that is disclosed in the schedules.

MR. AUSTIN: Okay. Now Mr. Schneider, your counsel, Mr. Goering, indicated that you have roughly 25 to 30 operating entities. Is there a reason why he can't identify the specific number of operating entities?

MR. SCHNEIDER: As I sit here today I can't tell you the exact number because I have operated them with the assistance of my staff so I didn't put a certain number down on a piece of paper.

MR. AUSTIN: Okay. But you would agree it's between 25 and 30 operating entities?

MR. SCHNEIDER: Most likely.
MR. AUSTIN: Okay. But that implies there are several non-operating entities as well, correct?
MR. SCHNEIDER: Yes.
MR. AUSTIN: And about how many total entities would you say that you control? That means have approximately 20 percent ownership interest in, at least a 20 percent ownership interest in.
MR. GOERING: Are you asking of the total or of the ones that are operating?
MR. AUSTIN: Of the total.
MR. SCHNEIDER: I would say somewhere around 50 plus.
MR. AUSTIN: Okay. And then of those that are operating, about how many do you have a controlling interest in? Again, 20 percent or more ownership interest.
MR. SCHNEIDER: Probably 80 percent of those.
MR. AUSTIN: My math is not great so

you're saying roughly 20 to 25 of those?

MR. GOERING: Yeah, all this information is filed with the Court as exhibits from the trial. We have summaries of every single entity and his ownership interest. If you need exact numbers, I'm more than happy to count them all, but Mr. Schneider is controlling party of all of the LLCs, I believe, except for about eight or ten because he -- some of them he only owns two percent or six percent as disclosed in the schedules.

MR. AUSTIN: I appreciate it, Mr. Goering. I'm just trying to get background for the purposes of our examination today.

MR. GOERING: Understand.

MR. AUSTIN: Okay. All right. So Mr. Schneider, these entities, are they organized in any sort of conglomerates or like is there a single entity that owns all of the subsidiary entities or are they each individually controlled and owned by you? Does that question make sense to you?

MR. SCHNEIDER: Yes. They're owned individually.

MR. AUSTIN: Okay. So there's not an overarching conglomerated entity that owns all these sub entities, correct?

MR. SCHNEIDER: No.

MR. AUSTIN: Okay. Do you have any specialized titles with any of these particular entities?

MR. SCHNEIDER: Each one has their own name and identifying federal ID number. They're all standalone.

MR. GOERING: That wasn't his question.

Will you re-ask your question, David?

MR. AUSTIN: Sure. Do you -- is your interest in these companies titled in some way, CEO, CFO, et cetera?

MR. SCHNEIDER: No.

MR. AUSTIN: Okay. And I believe you testified to this during the trial, but about how long have you been operating these businesses?

MR. SCHNEIDER: Well, I've been in

business since 1968 and each one has got a different date.

MR. AUSTIN: But your total business operations would have started around 1968. Is that what you're saying?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. And --

MR. SCHNEIDER: Well, they also started -- they actually started when I was six years old and I didn't have LLCs back then.

MR. AUSTIN: Fair enough. I don't think we need to inquire too much into your childhood business practices.

MR. SCHNEIDER: We didn't need LLCs back then.

MR. AUSTIN: All right. So what sort of duties do you have vis-à-vis these various entities?

MR. SCHNEIDER: To keep them running, to manage the employees, to assist my bankers and anybody else who needs to understand the economics.

MR. AUSTIN: When you say managing employees, are you operating on-site for each of these businesses on a daily basis or are you more high level?

MR. SCHNEIDER: I'm both. I'm high level. I'm also CEO and I'm also a manager and that's pretty much --

MR. AUSTIN: I guess what I'm trying to ask is do each of these entities have within themselves their own structures like a head person who then reports to you or are you the head person at each individual entity?

MR. SCHNEIDER: A complete variety of all of that.

MR. AUSTIN: Okay. Now, I understand that you don't draw a salary. Instead, you take draws from the companies for your income; is that correct?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Are you fully paid up for all pre-petition draws?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Have you been paid any draws since the filing?
MR. SCHNEIDER: What does he mean?
MR. GOERING: Yeah. Have you been paid anything since you filed?
MR. SCHNEIDER: Yes.
MR. GOERING: Didn't they put 25 grand in there?
MR. SCHNEIDER: Yes.
MR. GOERING: Okay.
MR. AUSTIN: I'm sorry. You said that you've been paid 25,000 since you filed?
MR. SCHNEIDER: Yes.
MR. AUSTIN: Okay. Can you identify your either monthly or annual income from these business draws?
MR. SCHNEIDER: Well, I took the 25 because it's going to hopefully cover everything that I'm responsible for.
MR. AUSTIN: By looking backwards prior to filing, how much would you say you made either on a monthly or an annual basis? How much money

were you drawing from your companies?

MR. SCHNEIDER: Totally varies. I wouldn't know. I would look at the end of the year but I didn't look at it from an exact amount. I made my mortgage payments and I fed the family and paid for any other activities.

MR. AUSTIN: Could you give me a range?

MR. SCHNEIDER: It would go up to a million dollars.

MR. AUSTIN: But no more?

MR. SCHNEIDER: It could. I just never looked at it. I kept money in one direction.

MR. AUSTIN: Okay.

MR. GOERING: David, can I clarify this?

MR. AUSTIN: Sure.

MR. GOERING: So prior to the filing of this bankruptcy things weren't -- the way that Mr. Schneider operated would be that different entities would pay for different expenses and the CPA would true things up at the end of the year, i.e. And so Mr. Schneider gets different sources

of income. One, he was taking money from the corporate entity. And number two, he received certain dividends from some of the entities in which he holds a minority interest.

An example of that is Mr. Schneider just received a couple checks this week from an entity in which he owns a six percent interest and these funds are going to be deposited in the DIP account. He received a check for $3,944.30 from one of the entities listed on Schedule B called Hamilton 2.

Now, if you look at his 2021 tax return, it shows dividends of $315,000 and capital gains/income of $1.7 million. And so the way we set this up when we filed the case is I advised Mr. Schneider that we need to be cleaner in terms of money being paid to him and how he's paying his expenses so that he's not just paying his personal expenses out of the company.

So in the short term we have him taking a draw of $25,000 a month to cover his regular living expenses and then down the road, once we

get a grasp on our plan and how this thing is going to work and what kind of money the companies can spin off to him on a monthly basis, we will amend accordingly and change this. But at this time I just have him taking a $25,000 draw as we work through this process.

MR. AUSTIN: Okay. Mr. Schneider, would you adopt Mr. Goering's assessment there?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. So let me try to angle this one more different way. Mr. Goering referenced your prior tax returns. Do you recall how much income you reported on average in say your last three income tax returns?

MR. SCHNEIDER: So from my tax returns I cover all my other bills in the business but some of them have shortfalls. So what I show as my income is also used to override some of my shortcomings. A lot of my businesses start off and have a loss and then I cover those through my income. The amount of money would be somewhere north of a million dollars.

MR. AUSTIN: Okay. All right. So let's move on to your petition. The petition I assume was physically signed with your counsel, Mr. Goering, is that correct?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. And Mr. Goering has the original signed copies of the petition?

MR. SCHNEIDER: Yes.

MR. AUSTIN: And all the information contained on the petition and the schedules was correct to the best of your knowledge, information and belief?

MR. SCHNEIDER: To the best of my knowledge.

MR. AUSTIN: Okay. And those schedules, the statements have been properly signed and verified?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. And Mr. Goering had mentioned there were going to be some amendments to be filed. Mr. Schneider, can you fill me in a little bit on what those amendments are for?

MR. SCHNEIDER: Finding out what other items might have shown up that I wasn't aware of.

MR. AUSTIN: Are we talking about things you own like Schedule AB or are we talking about additional debts? What sort of things are we talking about?

MR. SCHNEIDER: It might be additional income.

MR. AUSTIN: Okay. So we're looking at -- you're talking about amending the SOFA as well. Is that right, Eric? I think you said that earlier.

MR. GOERING: Yeah, the main stuff that needs to be fixed is the controller is trying to get a grasp on exactly what money came out of the companies for the benefit of Mr. Schneider that will be need to be claimed for income tax purposes so we can use that for (indiscernible) purposes.

MR. AUSTIN: Okay. And Mr. Schneider, I believe you already answered my next question about why you filed. There was an issue related

to Huntington Bank's litigation against you and you're concerned about the liquidation of Merrill Lynch account; is that correct?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. When did you make the decision --

MR. GOERING: That's the only reason.

MR. AUSTIN: I'm sorry. Go ahead.

MR. SCHNEIDER: That's the only reason I'm here.

MR. AUSTIN: Okay. And when did you make that decision to file?

MR. SCHNEIDER: Forty-five minutes before 1:30 on March 2nd.

MR. AUSTIN: When you say 45 minutes before, I assume you mean 45 minutes before you actually filed?

MR. SCHNEIDER: Yes, because I tried to settle this but it wasn't of any benefit.

MR. AUSTIN: And can I assume that that's why the petition was filed without the schedules?

MR. SCHNEIDER: I didn't have a chance -- my schedules are kind of complicated so it was the best I could do at the time.
MR. AUSTIN: No, I totally understand. I'm just, once again, clarifying. So the reason why the schedules weren't there was because this was a, for lack of a better word, a last minute decision, correct?
MR. SCHNEIDER: Right.
MR. AUSTIN: Okay.
MR. SCHNEIDER: That's why Eric doesn't have much hair left because he's had to deal with me.
MR. AUSTIN: Oh, I'm pretty sure Eric was bald beforehand, but that's okay.
MR. GOERING: Why is it always about me?
MR. SCHNEIDER: I'm his easy client.
MR. AUSTIN: All right. So Mr. Schneider, I think Mr. Goering mentioned this earlier that your goal in this is to try to deal with the issue with Huntington Bank; is that

correct?
MR. SCHNEIDER: Yes.
MR. AUSTIN: Okay. And it is also your intention to pay your creditors 100 percent; is that also correct?
MR. SCHNEIDER: Absolutely.
MR. AUSTIN: Okay. And I know you said you've drafted a plan with Mr. Goering. Can you give me some of the particulars of that draft plan?
MR. SCHNEIDER: I think we're working through it. We don't have anything yet.
MR. AUSTIN: Okay. Mr. Goering had indicated that you had drafted it.
MR. GOERING: Well, I have a draft of the document on my desk but what we have to fill in is we are working towards what kind of money -- the exact amounts that he can secure up front to pay on this, the amortization of the remaining balance and how we're going to -- and then we're looking to pay some additional chunks each year and then a balloon at the end is the

thought process.

However, we haven't yet determined how we're going to put everyone in their class and how we're going to treat the classes and what the chunks are going to be and when we can get them. With the market like it is right now, it's a little tough for us to make the determinations of what we're going to be -- what assets are going to be able to be liquidated in order to pay down the debt.

So while the structure and the plan is out there, we haven't exactly determined i.e. how much money Mr. Schneider will be able to put down on this in six months from now when the plan becomes effective.

MR. AUSTIN: Mr. Schneider, would you adopt Mr. Goering's statement as your response to my question?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. All right. So let's talk a little bit about your post-petition obligations, stuff that's come up since you filed

petition. Are you current on all post-petition payments, taxes, insurance premiums, et cetera?

MR. GOERING: Yes. Oh, sorry. You answer.

MR. SCHNEIDER: No. I'm sorry. I have trouble understanding today, but I apologize.

MR. AUSTIN: Oh, I'm sorry. If you have any trouble --

MR. SCHNEIDER: Could you repeat?

MR. AUSTIN: Yeah. If you ever have trouble understanding my question, please feel free to let me know and I will happily rephrase it or say it again. The question is are you current on all of your post-petition obligations, so taxes, insurance premiums, et cetera?

MR. SCHNEIDER: Yes.

MR. AUSTIN: And so there are no unpaid post-petition obligations?

MR. SCHNEIDER: Nothing other than the creditors I had but I paid all my debts accordingly.

MR. AUSTIN: Okay. Have you opened any

bank accounts since you filed the petition?
MR. SCHNEIDER: Yes. A DIP account.
MR. AUSTIN: So you've opened the DIP accounts?
MR. SCHNEIDER: Yes, one.
MR. AUSTIN: Okay. What about the accounts that you had opened pre-petition, are those still open?
MR. SCHNEIDER: No.
MR. AUSTIN: You have closed all of them?
MR. SCHNEIDER: Yes.
MR. AUSTIN: Eric, have we gotten confirmation of all of that?
MR. GOERING: So Mr. Schneider received a check from Stockyard. So I will be talking to Mr. Saba later today to get an understanding and confirmation because they sent him a check with what was left and Mr. Schneider thought there was more in there. So I -- there were -- other than the Merrill accounts -- and that's an issue that we'll need to talk about, David. It's my

understanding that his pre-petition accounts have been closed. I know you're going to ask me for a copy of a DIP check with void written across it and I owe that to you.

MR. AUSTIN: You --

MR. SCHNEIDER: But that account I only opened up in the last week.

MR. AUSTIN: Okay. Are there any outstanding checks from those pre-petition accounts? In other words, are there any funds that were promised to go out of those accounts that have not been paid to whoever the payee would have been?

MR. SCHNEIDER: No.

MR. AUSTIN: Okay. Have you placed debtor-in-possession legends on the DIP account that you opened? So on those checks, invoices, business forms?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Where have --

MR. SCHNEIDER: I still haven't gotten my checks yet, but I did establish it and there

is funds in there.

MR. AUSTIN: Okay. How much is in the DIP account?

MR. SCHNEIDER: Somewhere around $100,000.

MR. AUSTIN: Okay. Where do you currently deposit any incoming funds post-petition? Is it into that DIP account?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Do you keep a -- you said you're drawing $25,000 per month. Is that going into the DIP account or is that going into a separate account?

MR. SCHNEIDER: It will go in the DIP account.

MR. AUSTIN: Okay. Have you notified all of your banks of the bankruptcy filing?

MR. SCHNEIDER: I think you guys did, but yes.

MR. AUSTIN: I notice there are lots of banks on the call. I assume that they are all here, but just in case they're not. And when did

you send out those notifications to your banks?
MR. SCHNEIDER: I prepared them over the months and in the -- right after I filed, because I wasn't sure I was filing, I had talked to all of them.
MR. AUSTIN: Okay. Do you have any pension plans, 401(k), other kinds of retirement plans?
MR. SCHNEIDER: Yes.
MR. AUSTIN: All right. Can you identify them?
MR. SCHNEIDER: I believe so.
MR. GOERING: No, can you identify them?
MR. SCHNEIDER: Oh, can I identify them?
MR. GOERING: You have one.
MR. SCHNEIDER: I know one is Merrill Lynch.
MR. AUSTIN: So just the Merrill Lynch account? That's the only retirement plan you have?

MR. SCHNEIDER: Yes.
MR. AUSTIN: And that's the same as the Merrill Lynch account that sort of precipitated your filing, correct?
MR. SCHNEIDER: Yes.
MR. GOERING: No, that's a different one, David.
MR. AUSTIN: Okay.
MR. GOERING: The schedules reflect -- do you want me to answer or do you want him to try to explain?
MR. SCHNEIDER: I think he heard it and I couldn't so -- do you want to ask again, David, and I'll be more than happy to answer.
MR. AUSTIN: Okay. You said you have a retirement account at Merrill Lynch and so I was asking if that's the same account that precipitated the filing of the bankruptcy. I'm understanding from Mr. Goering that it's actually a different account; is that correct?
MR. SCHNEIDER: No, the account that I have for retirement is an IRA Roth and it's at

Merrill Lynch.
MR. GOERING: But they weren't executing against that. They were executing against your brokerage account at Merrill.
MR. SCHNEIDER: Yes, everything I had in Merrill.
MR. AUSTIN: Okay. I just want to make sure that you're not thinking of the brokerage account as your retirement account, correct? This is a separate account?
MR. SCHNEIDER: I have several accounts there.
MR. AUSTIN: Okay.
MR. SCHNEIDER: I had five accounts there and one or two of them are my retirement, one is my defense fund and the other ones are my accounts.
MR. AUSTIN: When you say your defense fund, what do you mean by that?
MR. SCHNEIDER: Well, I knew this was coming up and I needed to protect myself from the Huntington issue so, you know, not to hide this,

but I have a complaint against them, and nothing today is easy and I've got Eric as one of my counsel members and the issue with the judgment is another counsel member and then I've also got whatever I need to make this thing come through.

MR. AUSTIN: Okay. Maybe --

MR. GOERING: Funds were --

MR. AUSTIN: Go ahead, Eric.

MR. GOERING: Funds were sat aside -- yeah, funds were sat aside by Mr. Schneider to pay his attorneys for their litigation going forward. There are three applications to appoint lawyers pending with the Court and some money got moved from one Merrill account to another in order to have funds available to pay his lawyers throughout this process. It's all disclosed in the schedules. All the account numbers are listed on the schedules. And I'm happy to provide you details of those accounts if you would like to look at them.

MR. AUSTIN: Okay. Like I said, I'm

just trying to get clarification here because it started off as my understanding --

MR. GOERING: Yes. Sure.

MR. AUSTIN: -- that there was a brokerage account at Merrill. Now I'm understanding a brokerage account and a Roth account at Merrill. Now I'm understanding a brokerage account, a Roth account and a defense fund account.

MR. GOERING: No. See, the defense fund account is just a brokerage account at Merrill. So we're kind of saying the same things, David.

MR. AUSTIN: Okay.

MR. GOERING: There is one retire -- there's one retirement account and then there are four brokerage accounts.

MR. AUSTIN: Okay. I'm following you now. I appreciate that.

Mr. Schneider, is that accurate? Would you adopt Mr. Goering's explanation?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. All right. Your accounting. Are your books maintained on a cash basis or an accrual basis?

MR. SCHNEIDER: Do you want to know how I've been paying my bills or what?

MR. AUSTIN: I just want to know how your books are maintained. Are they maintained on a cash basis or are they based on an accrual basis?

MR. SCHNEIDER: Typically cash.

MR. AUSTIN: And where are those books maintained?

MR. SCHNEIDER: At my office.

MR. AUSTIN: At your office meaning at your home or do you have a separate work office?

MR. SCHNEIDER: I have a work office.

MR. AUSTIN: Eric, do we have an address for that work office?

MR. SCHNEIDER: 10988 Deerfield Road.

MR. AUSTIN: Okay. And where is that located?

MR. SCHNEIDER: Blue Ash, Ohio.

MR. AUSTIN: Okay. All right. And who maintains those books?

MR. SCHNEIDER: I have three people in the office and when I need an accountant I have them.

MR. AUSTIN: And you hired the accountant on sort of an ad hoc basis; is that correct?

MR. SCHNEIDER: Pretty much.

MR. AUSTIN: Okay. How often were income statements and balance sheets prepared prior to filing the petition?

MR. GOERING: Please clarify whether you mean personally or for each of the entities.

MR. AUSTIN: Let's go ahead and do both.

MR. GOERING: All right. For you personally, Ray.

MR. SCHNEIDER: So for me personally they do my accounting and then they also do all of the businesses out of that office.

MR. GOERING: But you don't do a

personal P&L balance sheet, do you?

MR. SCHNEIDER: No, I do nothing for me.

MR. GOERING: But each of the corporations have them?

MR. SCHNEIDER: The businesses have them and then that's what I use to share with my bankers.

MR. AUSTIN: Okay. And how frequently are those balance sheets and income statements prepared?

MR. SCHNEIDER: They were on a regular 30 days but -- 45 days. But I've got a new accounting department so we're catching up on the change of software. So typically it would have been on a 30 to 45-day basis. Right now we're probably 30 days away from catching up the end of last year and following up for the rest of this year.

MR. AUSTIN: Okay. Now, this next question is typically for like a corporate 11 and so it may not make a whole lot of sense, but what

exactly is your fiscal year? I assume in correspondence to the regular calendar year?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Have you ever had an independent auditor?

MR. SCHNEIDER: No.

MR. AUSTIN: And your primary source of income is operating your businesses; is that correct?

MR. SCHNEIDER: I'm sorry. I missed that.

MR. AUSTIN: I apologize. Your primary source of income is operation of business, these various business entities?

MR. SCHNEIDER: Correct. Yes.

MR. AUSTIN: And do you have any international businesses or are they all domestic?

MR. SCHNEIDER: All domestic.

MR. AUSTIN: Can you -- and this might be going back to the question I asked earlier. Can you estimate the total amount of income you

made in the last three years?

MR. SCHNEIDER: Probably one-and-a-half to two a year. We had Covid the last three years so the world changed dramatically.

MR. AUSTIN: Right. So roughly 4.5 to 6 million over the last three years?

MR. SCHNEIDER: Somewhere in there.

MR. AUSTIN: Okay. Do you currently have negative or positive cashflow?

MR. SCHNEIDER: Positive.

MR. AUSTIN: Okay. Is that even considering the Huntington judgment?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay.

MR. GOERING: Well, I don't -- David, I need to ask you to clarify that because cashflow wouldn't have anything to do with Huntington. I mean, Huntington is the only debt he's not paying but, you know, he has positive cashflow at this time. So, you know, other than that he's current on every --

MR. AUSTIN: I guess what I'm driving

at is if you were paying -- if he was paying Huntington would it still be positive cashflow?

MR. SCHNEIDER: It depends if they allow me -- the economy right now is kind of tough. If I get the time -- I've been able to grow my business so I'm looking forward to finding a plan that I can work with Eric and you guys to give me the time to get there.

MR. AUSTIN: So if I'm sort of reading between the lines, if we were to just snapshot it today you would not have a positive cashflow if we're including Huntington?

MR. SCHNEIDER: Having Huntington show up now, no.

MR. AUSTIN: Okay. Do you have any outstanding accounts receivable?

MR. SCHNEIDER: No.

MR. AUSTIN: All right. You've listed real estate properties in Ohio, Maine and Colorado. Do you have any other real estate in your name?

MR. GOERING: You individually.

MR. SCHNEIDER: Oh, me individually, no.

MR. AUSTIN: Okay. You were about to mention a Massachusetts property. Who is the owner of that Massachusetts property?

MR. SCHNEIDER: Those are part of my businesses.

MR. AUSTIN: But it's owned by one of your businesses, correct?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Which business is it?

MR. SCHNEIDER: Well, there's three different businesses and one is called Boston Animal Hospital, another one is called Red Dog.

MR. AUSTIN: And the third?

MR. SCHNEIDER: Northshore Red Dog, South Station Animal Hospital and North Station Red Dog.

MR. AUSTIN: Okay. And do you have controlling interest in all of those entities?

MR. SCHNEIDER: I am a partner and I

have shared control but I don't operate them. They are operated by the partner.

MR. AUSTIN: Okay. Let me ask it another way. Do you own at least 20 percent in each one of those entities?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Are you leasing any real estate? Either leasing it to someone else or leasing it for yourself?

MR. SCHNEIDER: Leasing for the business.

MR. GOERING: Let me clarify his answer. David, will you re-ask your question?

MR. AUSTIN: Sure. Are you leasing any real estate? That is to say are you leasing property you own to someone else?

MR. GOERING: Personally, not corporately, correct?

MR. AUSTIN: Correct.

MR. GOERING: Ray, are you personally leasing any property?

MR. SCHNEIDER: Yes.

MR. GOERING: Which of your three pieces of property do you lease out?

MR. SCHNEIDER: (Indiscernible).

MR. GOERING: Are you asking does he lease it to a third party or is he leasing it from a third party? I'm sorry.

MR. AUSTIN: So the current question is, is he leasing any property that he owns to a third party? So in other words, someone else is on the property he owns and is paying him to use it.

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Which property is that?

MR. SCHNEIDER: All of the entities --

MR. GOERING: No, no, personally.

MR. SCHNEIDER: Oh, none of them on personally.

MR. GOERING: Of your three properties, are you leasing any of them? Do you have a tenant in any of them?

MR. SCHNEIDER: Oh, I have a tenant in

one of my properties.

MR. GOERING: Which one?

MR. SCHNEIDER: The one in Colorado.

MR. AUSTIN: Okay. Now, how much are you being paid for leasing out that Colorado property?

MR. SCHNEIDER: Somewhere between --

MR. GOERING: The schedule is right there.

MR. SCHNEIDER: How much is it? I don't even know.

MR. GOERING: You don't even know.

MR. SCHNEIDER: I don't even know.

MR. GOERING: Well, on your schedules you show that you receive rent of $1,760 a month. Does that sound correct?

MR. SCHNEIDER: Yes, but I also pay the realtor for some of that. It comes off of there.

MR. AUSTIN: So if I understand you correctly, you have a realtor who basically manages the property; is that correct?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. And what percentage of that 1700 is going to the realtor?

MR. SCHNEIDER: I don't know if they raised it yet but somewhere in the $200 a month I think it is.

MR. AUSTIN: Okay. Now, let me ask the question the other way. Are there any properties that you are leasing to use from someone else, that you're paying someone else to use their property?

MR. SCHNEIDER: Not personally.

MR. AUSTIN: Okay. Not personally. Excellent. All right. So is there any property other than Ohio, Maine, Colorado, and the Massachusetts property that you said is owned by several of your entities, is there any other property, either real or personal, that you own that has not been disclosed on your schedules?

MR. SCHNEIDER: Not that I know of.

MR. AUSTIN: Okay. Are your liabilities accurately set forth on Schedules D, E and F?

MR. SCHNEIDER: I believe so.

MR. AUSTIN: Are there any additional liabilities that you came to realize that you had after you filed?

MR. SCHNEIDER: No.

MR. AUSTIN: What types of insurance do you have in place?

MR. SCHNEIDER: I have one insurance company that manages to charge for each of the types of entities.

MR. AUSTIN: Can I get some explanation on that? I wasn't really following.

MR. SCHNEIDER: I have insurance on all the properties. I'll leave it at that.

MR. AUSTIN: When you say the properties, you mean the real properties, correct?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. And that includes the Ohio, the Maine and the Colorado properties?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Do you have any

special riders for jewels, collectibles, guns, coins, et cetera?

MR. SCHNEIDER: I'm not one to collect all that stuff.

MR. GOERING: Yes or no?

MR. SCHNEIDER: No.

MR. AUSTIN: I assume you maintain vehicle insurance?

MR. SCHNEIDER: On all my vehicles I have insurance.

MR. AUSTIN: Okay. And I believe you said earlier you're current on all of your tax liabilities; is that correct?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Other than any transfers disclosed on the schedules, have you transferred any property outside the ordinary course within the last 12 months?

MR. SCHNEIDER: No.

MR. AUSTIN: Any payments to creditors within 90 days to bankruptcy outside the ordinary course?

MR. SCHNEIDER: No.

MR. AUSTIN: All right. Have you sold or transferred any assets after you filed the petition, once again outside the ordinary course?

MR. SCHNEIDER: No.

MR. AUSTIN: Have you made any payments on pre-petition debts other than those made court ordered outside the ordinary course?

MR. SCHNEIDER: No.

MR. AUSTIN: Have you received the U.S. Trustee's guidelines regarding your post-petition obligations and reporting requirements?

MR. SCHNEIDER: I have.

MR. AUSTIN: Are you in compliance with those requirements?

MR. SCHNEIDER: Yes.

MR. GOERING: He's trying. And I think does he understand them, probably he should re-answer that question because they're confusing to me too, Mr. Austin.

But here's what I want to make sure we're -- you and I are on the same page on. You

had requested from me that all the insurance policies for Mr. Schneider on his three pieces of real estate and on any entity in which he owns a 20 percent ownership or more be changed to include the United States Trustee as a loss payee. That is a work in progress, Mr. Austin.

MR. AUSTIN: I can understand with the number of entities involved here. Unfortunately, I didn't get to write the rules. So you'll have to take that up with someone else.

MR. GOERING: Oh, I know better not to take it up with anyone. I'm just trying to comply with your request. But you asked my client if he was in compliance with everything in here and some of the things are a work in progress still, but we are aware of them and we're working towards compliance.

MR. AUSTIN: Okay. And Mr. Schneider, you would adopt Mr. Goering's answer and explanation?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Now, Mr. Schneider,

you understand your obligations regarding filing a monthly operating report and paying quarterly fees to the U.S. Trustee?

MR. SCHNEIDER: Yes, but I don't know anything about the fees.

MR. GOERING: Your controller does.

MR. SCHNEIDER: Oh. See, everybody knows everything about me.

MR. AUSTIN: All right. But there is someone in your organization who will be making those fee payments, correct?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Who is preparing your monthly operating reports?

MR. GOERING: He asked who is preparing your operating reports. Correct, David?

MR. SCHNEIDER: Another gentleman named Chris Eldridge, my controller.

MR. AUSTIN: Can you spell his last name?

MR. SCHNEIDER: E-L-D-R-I-D-G-E, I think.

MR. AUSTIN: And you said he's your controller?

MR. SCHNEIDER: He is.

MR. AUSTIN: Okay. And I hesitate to ask the next question because until a few seconds ago you didn't seem to be aware that you owed fees, but I assume you're aware that your fees will be due on April 30th; is that correct?

MR. GOERING: Yeah, we're aware.

MR. AUSTIN: Okay.

MR. GOERING: We file the report by the 20th and the first fee is due April but it's only for one month I believe, Mr. Austin, that we --

MR. AUSTIN: Just as long as you're aware that it's due.

MR. GOERING: Okay.

MR. AUSTIN: All right.

MR. GOERING: The controller is aware.

MR. AUSTIN: Fair enough.

Mr. Schneider, do you adopt Mr. Goering's answer and explanation?

MR. SCHNEIDER: I guess I have to.

What do you mean? You repeated it twice. I know I have to.

MR. AUSTIN: All right. So I understand that Mr. Goering has filed a number of applications to employ attorneys and there are three of them that he has described as litigation counsel. Are there any other professionals other than those three litigation counsel that you are intending to retain?

MR. SCHNEIDER: Yes.

MR. GOERING: We might have to file something to retain the accountant. We're trying to figure that out, David, because the accountant works for the corporation. I'm not sure -- we haven't -- we don't have a complete grasp yet as to whether we're going to do -- file for him to retain only because he doesn't pay her. She's paid through the corporations.

MR. AUSTIN: Is she an employee of the corporation or is she a third-party contractor?

MR. SCHNEIDER: Third party.

MR. AUSTIN: Okay.

MR. GOERING: Go ahead. She's a --

MR. SCHNEIDER: She's separate from us.

MR. GOERING: Is her name on your tax returns --

MR. SCHNEIDER: Yes.

MR. GOERING: -- that I provided three years of?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Mr. Schneider, again, Mr. Goering answered there. Would you be willing to adopt his responses?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Now, let's talk about these three litigation counsel. I don't have their names in front of me, but can you tell me what services they're going to be providing?

MR. GOERING: So let's start with Brian Giles.

MR. SCHNEIDER: The partner that's in prison and getting sued for fraud and all the issues that he created that put me here. So he's representing me against a gentleman named Sosna.

MR. GOERING: Second lawyer?
MR. SCHNEIDER: Is Ricky Wayne who is -- his law firm is Strauss Troy and he's been retained to deal with the appeal on the Huntington judgment.
MR. GOERING: Okay. Third lawyer?
MR. SCHNEIDER: And the third lawyer is Jimmy Cummins, C-U-M-M-I-N-S, or James Cummins, and he's there for the complaint against Huntington that --
MR. GOERING: Was filed pre-petition.
MR. SCHNEIDER: -- was filed before this all happened.
MR. AUSTIN: And I think Mr. Goering said that's for the complaint against Huntington; is that correct?
MR. SCHNEIDER: It is.
MR. AUSTIN: Okay. One note, one thing I saw in the applications is they all had a section in which they indicated rationale for retaining Cummins. Is Cummins associated with the Wayne case or the Giles case or is that a

typo?

MR. GOERING: I think that's a typo but they are all three working together on this.

MR. AUSTIN: Okay. Is that accurate, Mr. Schneider?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Are you going to be personally reviewing the invoices for legal fees related to these retained or if they are retained attorneys?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Does anyone else have delegated authority to also review those in addition to yourself?

MR. SCHNEIDER: No.

MR. AUSTIN: Okay. Now I'm going to talk very briefly about I'm sure what will be Mr. Goering's favorite activity for the next few days, the Form 426s. Under Federal Bankruptcy Procedure 2015.3 you are required to disclose information relating to any entities you have a 20 percent ownership in or more. I understand

you have a lot of those. These Form 426s under the rules are due seven days prior to the 341 meeting. They have not been completed yet; is that correct?

MR. GOERING: That's correct.

MR. AUSTIN: Mr. Schneider?

MR. GOERING: Mr. Schneider, correct?

MR. SCHNEIDER: Yes, that's correct.

MR. GOERING: I'm working on them though, right?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Can you give me -- and maybe Mr. Goering can answer this better than you can, Mr. Schneider. Can you give me an estimate on when those might be completed?

MR. SCHNEIDER: I would guess the beginning of next week.

MR. GOERING: Sometime next week.

MR. SCHNEIDER: I know we got to get them filed.

MR. AUSTIN: So Mr. Schneider, so you said next week; is that correct?

MR. SCHNEIDER: We're going to try to get them done for next week.

MR. AUSTIN: Okay. Maybe Mr. Goering can answer. What is your expected -- what percentage would you give to the chance that it will be done by next week?

MR. GOERING: I intend to have them all done and filed by next week. So that is our goal. I think that that can happen.

MR. AUSTIN: Okay. All right.

MR. GOERING: We're working on -- you know, getting all the financial information for those is the critical part of it. So, you know, if necessary I'll file something to get an extension on that but we're doing our best.

MR. AUSTIN: And Mr. Goering, I'm sure it will not come as any surprise to you that as much as you are having putting it together, we're going to have just as much fun reviewing them.

MR. GOERING: I'm sure you are. Do you need me to come down there?

MR. AUSTIN: All right. So Mr.

Schneider, let's go ahead and talk about the 2019 gift trust. This was mentioned several times during the trial. Can you just give me a very brief and, once again, high level overview? No need for super specific details. Give me an idea of what the 2019 gift trust is.

MR. SCHNEIDER: So I had some assets that I didn't want to go through probate court. I started it in April of 2018. I placed them in a trust where I own a small portion and the trust owns majority and it's to basically plan on '25 the trust gifting is going to go away. So I saw that as the time to start.

MR. AUSTIN: I'm sorry. I got a little bit confused in there. You mentioned '25 it's going to go away. What do you mean?

MR. SCHNEIDER: So the tax laws -- the gifting is going to be reduced by over 65 percent. So the gift tax is allowed up to a certain level up to 2025. Knowing that was coming up, my accountant and my consultant recognized it's time to start because it took a

while between appraisals and everything that you normally do and the paperwork and all the people involved. I started in April of 2018 and we started the process.

MR. AUSTIN: Okay. So this was related to -- when you say '25 you're referring to requirements under like tax law related in 2025; is that correct? Am I following you?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. All right.

MR. SCHNEIDER: That's why I started early.

MR. AUSTIN: Okay. I think you testified to this a little bit but I don't recall the specific date or the general range. When did you first start looking into creating this trust?

MR. SCHNEIDER: I got my first bill from my lawyer on April 4th of 2018. I started it before that but then, you know, it takes a while to get your bill. So the one thing I can prove to everybody that April 4th was my first bill for my trust plan.

MR. AUSTIN: Okay. And who are the beneficiaries of the trust?

MR. SCHNEIDER: My wife and my three adult children.

MR. AUSTIN: And --

UNIDENTIFIED SPEAKER: (Indiscernible).

MR. AUSTIN: I'm sorry? I'm sorry. I thought I heard you say something else, Mr. Schneider.

MR. GOERING: Yeah, that wasn't us. That was from some other party on the line, David.

MR. AUSTIN: All right. And so it's for the benefit of your wife and three kids. What assets does it hold?

MR. SCHNEIDER: It holds the Red Apartments and that might not be the title. But it holds the Red Apartments, it holds my storage, and it also has my pet resorts.

MR. AUSTIN: Does it hold any bonds, crypto, any other kind of assets?

MR. SCHNEIDER: Nothing.

MR. AUSTIN: Okay. What would you estimate is the current cash value of the trust?
MR. SCHNEIDER: Tax value?
MR. AUSTIN: Cash value.
MR. GOERING: So there was a formal valuation done of those entities.
MR. SCHNEIDER: I can tell you what the valuations were. I gave away $21 million worth of assets.
MR. AUSTIN: And would you say that's roughly what it's worth today?
MR. SCHNEIDER: It's probably worth more just because of the timing.
MR. AUSTIN: Now, did you transfer any -- so this is a trust into which you transferred ownership of some of your businesses, is that correct, and that's the Red Apartments and the pet resorts; is that correct?
MR. SCHNEIDER: Correct.
MR. AUSTIN: Okay. Do you have any other trusts?
MR. SCHNEIDER: I have a trust that my

parents put together 20 years ago. It's a gift trust and it's been around for 20 some years.

MR. AUSTIN: Now you say it's one that your parents put together. So it was a trust that your parents made with you as the beneficiary; is that correct?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. And is that gift trust depleted or does it still have assets in it?

MR. SCHNEIDER: It still has some stocks in it.

MR. AUSTIN: Okay. Are you receiving any sort of residuals from that trust?

MR. SCHNEIDER: No.

MR. AUSTIN: Okay. All right. So we talked a little bit earlier about your various subsidiary companies and you said you didn't really have like a conglomerate or a holding company that all of these are in, that you are individually -- you have individual interest in all of these entities. So at a very high

level -- once again, I don't need minutia here. I just want to get a sense of what is the structure of your business empire.

MR. SCHNEIDER: Each entity is one its own. Each entity has an operating company if that's what's involved. The structure is that I have some managers that operate them and they run out of my business office.

MR. GOERING: But they all flow through on your personal tax return, correct?

MR. SCHNEIDER: I believe they're all on my tax return.

MR. AUSTIN: Do any of these businesses interrelate? What I mean by that is do some of your businesses also have ownership interest in other businesses?

MR. GOERING: Yes. I'll answer that.

MR. SCHNEIDER: I'm going to say yes.

MR. GOERING: Like Grandpauper. You have an interest in Grandpauper.

MR. SCHNEIDER: Yes.

MR. GOERING: And Grandpauper is the

only member of Circle Storage.

MR. SCHNEIDER: Correct.

MR. GOERING: Correct?

MR. SCHNEIDER: Yes.

MR. GOERING: Is that all?

MR. SCHNEIDER: I think that's it.

MR. GOERING: I think that might be it, David.

MR. AUSTIN: Okay. So that would be the only pair of businesses that have sort of a parent-subsidiary relationship; is that correct?

MR. GOERING: The parent-subsidiary, I think that's correct. There's also some landlord-tenant relationships between some of the holding companies that own the building and the entities that operate businesses in those buildings.

MR. AUSTIN: Okay.

MR. GOERING: And I'm sorry. I need to answer these for my client, David, because I know more about it than he does, I'm sorry to tell you.

MR. AUSTIN: And that's totally fine. That's totally fine, Eric. I totally get that. Just, you know, I will need to have Mr. Schneider adopt your responses.

MR. SCHNEIDER: I adopt it. Absolutely.

MR. AUSTIN: Okay. So we have that one parent-subsidiary relationship. There's also landlord-tenant relationships. Mr. Schneider, how do you keep your businesses operating as independent entities? In other words, what prevents them from, you know, just being collapsed and seen as single entities? Like how are you maintaining the veils between these various entities?

MR. SCHNEIDER: They all have their own federal ID number. Except for the storage, they're all cross-collateralized. Otherwise, they're all very independent of each other and the good thing is they all are operational and successful except when they -- the first year of starting up everything takes a little time to get

it over the hump.

MR. GOERING: Own bank accounts, correct?

MR. SCHNEIDER: And they all have their own bank accounts. They all have a relationship separate to each of the bankers and I've been able to sustain that for almost 40 years.

MR. AUSTIN: Do any of the businesses have loans owed to other of your businesses?

MR. SCHNEIDER: Yes. Yes, they all help each other out because there's always a problem in everything we do these days.

MR. AUSTIN: Are the formalities of these loans maintained? So for example, are there loan agreements between the various entities?

MR. SCHNEIDER: There is and I always keep them as accounts payable or accounts receivable. I clean it up at the end of the year. You know, to run a small business is not easy. You won't call this a small business but it's a lot of small businesses helping each other

get to the finish line.
MR. AUSTIN: Do any of your entities owe you any money?
MR. SCHNEIDER: Well, I have a capital cap on all of them. I don't know what you call that.
MR. AUSTIN: I guess what I'm asking is have you like loaned money to any of your entities for which there is an obligation to repay?
MR. SCHNEIDER: No.
MR. AUSTIN: Okay. No formalized loan agreements with any of your entities that would require them to repay you, correct?
MR. SCHNEIDER: Correct.
MR. AUSTIN: Okay.
MR. GOERING: David, from everything I've seen, funds that Mr. Schneider put into the entity have been booked in the capital account and were not booked as loans from him to the companies.
MR. AUSTIN: Okay. Generally speaking,

how do you your companies pay the costs of their operations?

MR. SCHNEIDER: Through daily operations, having customers. Customers have funded the staffing, the operations on a daily basis.

MR. AUSTIN: So you don't have like one company that is essentially your -- you don't have one company that's basically the bank for the rest of your companies, correct? It's not like there's one company that's paying out for everybody else; is that correct?

MR. SCHNEIDER: So I don't do that but that's why I'm here today. My partner did that and the bank allowed him to --

MR. GOERING: All right.

MR. SCHNEIDER: -- you know, be able to put it on one -- I keep it separate because each business has to have its own tax return.

MR. AUSTIN: Okay. So when suppliers are issuing invoices, they don't send them to a single company. They send them to the particular

company that they are dealing with; is that correct?

MR. SCHNEIDER: Yes.

MR. AUSTIN: Okay. Has the amount of business that your companies were doing with the various suppliers changed since the petition date?

MR. SCHNEIDER: I'm not sure what you're asking.

MR. AUSTIN: Basically has there been any substantial change in your companies' relationships with their suppliers?

MR. SCHNEIDER: I adjust my suppliers as I find the need or the cost adjustments or improvements, whatever the case may be.

MR. AUSTIN: Okay. And how is the revenue for each individual company accounted for? Do they each have their own accountant?

MR. SCHNEIDER: They each have their own accounts.

MR. AUSTIN: Do they each have their own accountant?

MR. SCHNEIDER: No.
MR. AUSTIN: Okay. So that is handled centrally; is that correct?
MR. SCHNEIDER: Yes.
MR. AUSTIN: And that goes back to that previous answer about your home office where you have the three staff members and the ad hoc accountant; is that correct?
MR. SCHNEIDER: Yes.
MR. AUSTIN: Okay. So each one of your companies submits their books to your home office and everything is reconciled from that point?
MR. SCHNEIDER: Correct.
MR. AUSTIN: Okay. And I think you answered this already. Every company has its own bank accounts, correct?
MR. SCHNEIDER: Correct.
MR. AUSTIN: Okay. All right, Eric. I'm just checking my notes real quick. I think that that's all the preliminary questions that I have so I'm going to open it up to creditors.
Again, if you have a question as a

creditor, you need to make sure you identify yourself for the record. I'm going to go down the list of individuals that announced their attendance. If there is someone else that has joined the call subsequent to us beginning then I will give you an opportunity at the end of that.

So let's start with Mr. Shuler of Huntington National Bank. Do you have any questions?

MR. SHULER: Yes. Thank you, Mr. Austin. Just a few.

BY MR. SHULER:

Q Mr. Schneider, Mr. Goering mentioned earlier that Huntington is the only personal debt you have not paid. Is that an accurate statement?

A That is new. Other than that, I've been paying all my debts.

Q I'm sorry. I don't understand what you mean by that is new. Could you explain that further?

A I haven't started any new businesses

and all of the debts are in existence and the judgment occurred in December or January and --

MR. GOERING: Ask your question again please, Chris.

MR. SHULER: Okay. Let me start this way.

Q Mr. Schneider, are you current with all of your debts other than the debt to Huntington?

A Yes.

Q Mr. Schneider, the $21 million in assets that you gifted the family trust, how many family trusts received the assets?

A Two.

Q What are the names of the trusts?

MR. GOERING: Can you give me a second, Chris, and I'll put out the legal names?

MR. SHULER: Absolutely. Yes. Thank you, Eric.

MR. GOERING: There you go. One second. Here's the first one.

A One is called the Raymond Schneider 2019 Gift Trust.

Q And the other?
A Is called Patricia Schneider 2020 Gift Trust.
Q Thank you.
MR. SHULER: Eric, maybe you could help streamline this. What legal documentation do you have, Eric, on the creation of these gift trusts and the transfers into the trust?
MR. GOERING: Yeah. I told you, Chris, I've got a ton of -- I have all the -- I think I have all the paperwork here.
MR. SHULER: Oh, great.
MR. GOERING: And it is very large.
MR. SHULER: Okay. Would you be willing, Eric, just to send that to the U.S. Trustee with a copy to Huntington and any other creditor who wants to see it?
MR. GOERING: Well, I will -- I will -- I think I have a Dropbox for you, Chris, don't I?
MR. SHULER: I'm not sure. You probably do. But I'll make sure one is setup.

MR. GOERING: Yeah. I'm happy to give the information into a Dropbox for you and anyone else who requests any of the information.

MR. SHULER: Oh, that's terrific. That will help move things along very quickly. Thank you, Eric.

MR. GOERING: Yeah. And I have the appraisals also, Chris, that were part of that. You know, I'm just anticipating you're going to want all this. I knew you would at some point. So I'll get it together for you by the beginning of next week.

MR. SHULER: Oh, that's terrific. And actually, that was my next question about the appraisals. Thank you very much for that.

BY MR. SHULER:

Q Okay. Mr. Schneider, who maintains the books and records for the family trust?

A I believe Vorys Sater, the law firm.

Q Any accountants?

A No. I think the trustee takes care of it as far as I know.

Q Okay. Do you know if the trust generates financial statements?
A I don't know.
Q Do you know if the trust files tax returns?
A I don't know.
Q All right. And who is the trustee?
A The trustee is Emily Pan from Vorys Sater Law Firm.
Q Thank you. And is she the trustee on both trusts?
A Yes.
Q Could you repeat that, please?
A Emily Pan. Emily Pan from Vorys Sater.
Q Thank you. Mr. Schneider, you mentioned there were three employees in your office. Could you give us the names of all the employees and what their function is?
A I'm not going to remember their names but their functions are to operate the accounting for all the companies.
MR. GOERING: Well, we know two of

them.
A Chris and John and Lori.
MR. GOERING: Evan?
MR. SCHNEIDER: Evan is my assistant.
Q Okay. Mr. Eldridge is the controller; is that right?
A Yeah.
Q And what is John's last name?
A I don't know off the top of my head.
MR. GOERING: If you'll send me an email I'll be happy to get you the information.
MR. SHULER: Okay. Thank you, Eric. That's great.
I don't have any further questions. Thank you.
MR. GOERING: Thank you, Chris.
MR. AUSTIN: Thank you, Mr. Shuler.
We're going to go down to GE Credit Union. Doug Hayman, do you have any questions?
MR. HAYMAN: I have no questions.
MR. AUSTIN: Okay. We're going to go down to Bank of America and Merrill Lynch.

Stephanie Decca, do you have any questions?

MS. DECCA: No questions for me.

MR. AUSTIN: Okay. Heritage Bank, John Lieberman, do you have any questions?

MR. LIEBERMAN: No questions.

MR. AUSTIN: Okay. First Merchants Bank, Thomas Sherrer, do you have any questions?

MR. SHERRER: Thank you. No questions but I will follow up if it's okay with debtor's counsel to make a request for the trust information that's been referenced.

MR. GOERING: Yeah. Tom, will you send me an email and I will get you on a Dropbox so that you can access this and anything else that you need from me in the future?

MR. SHERRER: Okay. Will do. Thanks very much.

MR. GOERING: Yeah. No problem.

MR. AUSTIN: Going down to Rockland Trust. And I apologize. I can't read my own handwriting. Jacqueline --

MS. PRICE: Yeah, Jacqueline Price and

no questions.

MR. AUSTIN: Sorry about that. No questions? Okay. And then Stockyards Bank, Mr. Saba?

MR. SABA: I have no questions. Thank you.

MR. AUSTIN: Okay. Is there anyone else on the line that has not noticed their appearance? All right. I'm not hearing anyone else.

Mr. Goering, our accountant -- or sorry, not accountant -- our auditor, sorry, Mr. Kramer, is on the line and he did want to bring up one thing with you here very quickly so I'm going to let him take the floor.

MR. GOERING: Yeah.

MR. KRAMER: Thank you, David. I had a couple questions and then one point to clarify.

Now, Eric, I know you had mentioned the insurance. I believe you had said that we had requested that UST would be the certificate holder and you have to make those DIP accounts.

For those business insurance, we --

MR. GOERING: Casey?

MR. AUSTIN: Casey, you cut out.

MR. GOERING: I guess he has no questions. I guess we're finished now.

MR. AUSTIN: Hold on a second, Eric.

MR. GOERING: Okay.

MR. AUSTIN: While we're waiting for Casey to come back on, I did want to at least go over the rather extensive list of things that we're still missing from you, which I'm sure you are well aware of. But I did want to mention that we sent out a couple of email requests for documents and information, things that are still outstanding. You know, proof of the closure of the previous bank accounts, proof of the new DIP bank account, closure of books and records for separate accounting, you know, physical inventory, need to review the insurance coverage for adequacy, copies of property, liability and auto insurance including making sure the UST is the certificate holder.

We also haven't gotten any sort of insurance information related to the Colorado and Maine properties. So we're going to need that specifically. Copies of check registers and bank statements for all accounts that were open during the three-month period prior to the petition. Copies of financial --

MR. GOERING: Of what period? The check register for what period?

MR. AUSTIN: The three-month period. All of this is in the emails that Casey has sent to you.

MR. GOERING: Yeah, yeah, yeah. Yeah. I follow you.

MR. AUSTIN: Copies of financial statements prepared in the last two years, cash projection for the first 90 days of operation under Chapter 11, year-to-date financial statements, Ohio Corporate Franchise tax report for the past two years.

MR. GOERING: There are none.

MR. AUSTIN: Okay. Schedules for tax

returns, forecasts for the first three months of the business plan, voided check for the DIP account, which you already mentioned earlier so I know you're aware of that. Signature cards for the DIP accounts. We're going to need some sort of proof of the salary draws that your client took. So a ledger of draws and, you know, some sort of proof of when those draws were made. We're going to need a copy of the last -- I'm sorry?

MR. GOERING: Yeah. Well, keep going.

MR. AUSTIN: A copy of the last two years of any business federal tax returns for which the debtor had a 20 percent interest. We're going to need proof of -- we're going to need the account statements for the Merrill Lynch brokerage accounts. Already talked about the 426s. And we need a copy of the gift trust.

MR. GOERING: Yeah. I have most of that together. I'll finalize and get it all over to you.

MR. AUSTIN: Okay. I'm going to put us

on a brief pause while I go see what's going on with Casey. Okay.

MR. KRAMER: My apology. I got disconnected. I tried to pull the phone closer and the cord pulled out.

MR. AUSTIN: Okay. All right. Go ahead, Casey.

MR. KRAMER: I think you covered everything. You know, just when I was gone just to make sure. In terms of the DIP account, a tax DIP account will have to be setup if it hasn't already. Didn't seem like it was. And that's to pay property taxes and income tax.

MR. GOERING: I have to ask why, Casey. He has losses on his tax return so he doesn't pay quarterly taxes and he --

MR. KRAMER: Well, does he pay property taxes on his residences?

MR. GOERING: So the --

MR. SCHNEIDER: It gets taken out.

MR. GOERING: So the mortgage --

MR. SCHNEIDER: I usually pay that

through the mortgage, the actual mortgages.

MR. GOERING: Yeah.

MR. KRAMER: Okay. So you're only paying -- I'm sorry. Go ahead.

MR. GOERING: I'll -- yeah, I'll address this in a separate email with you as to -- so we can talk about the DIP account and what you need.

MR. KRAMER: Okay. Yeah, and what I was getting at before I got disconnected, with the insurance, I was just -- for the businesses that he -- that the debtor owns controlling interest in for more than 20 percent, I was just requesting copies of those. Not necessarily to name UST as certificate holder at this point.

MR. GOERING: Oh, great. I can have those to you pretty quickly. It's his personal ones that you guys need to be the certificate holder, right?

MR. KRAMER: That's correct. Yes.

MR. GOERING: Okay. And that's on the three houses. All right.

MR. KRAMER: Correct.

MR. GOERING: I got it. I'll get that over to you.

MR. KRAMER: Okay. Yeah. And then detail on those investments in the Merrill Lynch account as well.

MR. GOERING: So brokerage statements for 90 days cover it pre-petition?

MR. KRAMER: That will work, yes.

MR. GOERING: Okay.

MR. KRAMER: And that's it. Once again, I apologize for getting disconnected.

MR. AUSTIN: Yeah. No problem.

MR. SCHNEIDER: I want all this stuff back when get out of bankruptcy.

MR. AUSTIN: I will remind you, Mr. Schneider, that you are still on the record so be careful what you say to your attorney.

MR. SCHNEIDER: All I said is I want to make sure you guys return all of this back to me when I come out of bankruptcy.

MR. GOERING: I'm uploading copies so

it won't be destroyed.

MR. AUSTIN: All right. So Mr. Goering, I recognize the risk I put myself in whenever I ask this of you, but do you have any closing remarks?

MR. GOERING: No. I appreciate everyone's patience as this is pretty complicated and a lot of work for me. But I will comply with your requests and, as I said to everyone else on the phone, please just send me an email or give me a call as to any of this information that you would like me to provide to you. I have several files filled with paperwork and I am happy to share it with whoever needs it.

MR. AUSTIN: I'm sure everyone appreciates the offer, Mr. Goering. At this time I think that we can conclude the 341 meeting. If there are -- I repeat my statement at the beginning of this that if there's anyone who needs a copy or would like a copy of this recording, please feel free to reach out to me. Again, my email address is David dot Austin,

A-U-S-T-I-N, just like the capital of Texas, with the number 2 at usdoj.gov. And with that I will --

MR. FECHTER: Mr. Austin?

MR. AUSTIN: Yes.

MR. FECHTER: This is Bill Fechter. I thought I had entered an appearance and I do have some questions on behalf of Mr. Sosna if it's not too late.

MR. AUSTIN: Oh. You had not indicated your appearance before. I apologize for missing you.

MR. FECHTER: I was on my cell phone and I thought -- I could hear everything everybody else was saying but apparently nobody could hear what I was saying even though I was not muted.

MR. AUSTIN: That is weird. Okay. Well, Mr. Fechter, you can proceed. I understand that your client is currently in litigation with the debtor on what may not necessarily be bankruptcy related matters so I'm going to ask

you to just make sure you confine your questions to things related to the administration of the bankruptcy estate.

MR. FECHTER: I understand that limitation.

BY MR. FECHTER:

Q Mr. Schneider, you have identified in your schedules the claim -- the value of the claim against Mr. Sosna as unknown, correct?

A Yes.

Q Since you've filed your schedule have you done anything to determine the value of that claim?

A No.

Q You already have a monetary judgment against Mr. Sosna, correct?

A I'm not sure.

Q Based upon the indemnity agreement. You're unaware of that judgment you have?

MR. GOERING: I mean, Bill -- hi, Bill. It's Eric.

MR. FECHTER: Hi, Eric.

MR. GOERING: How are you?
MR. FECHTER: Good.
MR. GOERING: So we didn't -- I didn't really look into that claim very much in order to get the monetary amount of his claim against Sosna but collectability is certainly a problem in that and that will be widely valued as unknown.
MR. FECHTER: Okay. Eric, I can represent to you and I will -- you can find it and I will send it to you, there is a judgment in favor of Mr. Schneider against Mr. Sosna on the indemnity agreement.
Q Are you aware that Mr. Sosna has a $68 million restitution order that has to be satisfied before you can collect anything against him?
A I got to go back to my lawyers. This is totally foreign to me. I didn't know anything about anything. So if you're telling me that, I'll check with them.
Q Okay. To date, have you paid Mr.

Giles' law firm any money for the services he has performed?

A Yes.

Q You're current on all your billings with Mr. Giles?

A Yes.

Q Has any retainer been paid to Mr. Giles?

A I don't believe so.

Q Has Mr. Giles provided you an active analysis on the likelihood of success on the claims you have asserted against Mr. Sosna?

A I don't think we know what that is.

Q Has Mr. Giles provided you with a litigation budget?

A No.

Q Has Mr. Giles provided you with an analysis of the collectability of any judgment you recover against Mr. Sosna?

A I don't know if we got that far yet.

MR. FECHTER: Eric, this may be something you need to correct because I'm

somewhat confused. In the application to retain you indicate you're going to pay Mr. Giles a $20,000 retainer from the pay that's paid to Mr. Goering.

MR. GOERING: No, that's not correct. I need to work on that. I'll be amending the application. I think two of the ones are wrong. So I'll need to look at that. No, there's no retainer held by Mr. Giles. He's just going forward.

MR. FECHTER: Okay. And taking a look at the statement of financial affairs, there are four listed brokerage accounts with Merrill, one with approximately $2.7 million, one with $137,000, one with $1.5 million, and one with $21.3 million. You referenced a defense fund. Is that the Merrill Lynch account with $137,000 in it?

MR. GOERING: No, I think it's the one with the $1.5 million in it.

MR. SCHNEIDER: 2.7.

MR. GOERING: Oh, the 2.7.

MR. SCHNEIDER: 2.7.

MR. GOERING: You know, it's not a formal defense fund. That was the intent of it. It's just money of the debtor's that's being held in a Merrill account.

MR. FECHTER: I was just using your terminology, Eric. I wasn't suggesting anything special about it.

MR. GOERING: Yeah, yeah, yeah. Well, that's actually my client's terminology, but yes.

MR. FECHTER: Okay. And also on the statement of financial affairs you list your only source of income for the last two calendar years as Social Security income. Is that also going to be corrected by you, Eric?

MR. GOERING: If you look -- so number four, it shows his business loss and number five his Social Security. So it looks like for summaries in 2022 is not on here because we didn't know what that loss was yet but, you know, I'm taking the net of the tax return.

Yeah, I probably will get into some

more detail and an amendment of his income. These tax returns are complicated to read but, you know, we're showing his business losses on number four.

MR. FECHTER: Well, the only reason I ask is, you know, we all acknowledge these forms aren't the best. He testified earlier that he's receiving about a million dollars a year from the businesses. As I recall, you're paying a personal expense of $25,000 payment from the businesses and I just didn't see any of that referenced in the statement of financial affairs where I think that should have been -- you know, his actual income should have been listed in paragraph 5 in the statement of financial affairs.

MR. GOERING: Well, you mean four. You mean four, not five. Five is Social Security. Four is from operation of the business. And I just took the net from his tax return and that is what is referenced on -- at that number four is the net. I'll be happy to break it out more.

MR. FECHTER: Yeah, I just think more information is needed whether it's four or five.

MR. GOERING: Sure.

MR. FECHTER: I think that that would be appropriate. And so the money that was put into the -- I'll call it -- I'll use the term defense fund account. Was that -- did it first go to Mr. Schneider and then into the account or did the businesses transfer the money directly to that account?

MR. GOERING: Is that just your Merrill account?

MR. SCHNEIDER: It's my Merrill account.

MR. GOERING: You just opened another Merrill account, right?

MR. SCHNEIDER: Yeah.

MR. FECHTER: And you funded it by transferring money from one of the other Merrill accounts?

MR. SCHNEIDER: Yeah.

MR. FECHTER: Okay. That's all I have.

MR. AUSTIN: Okay. Thank you, Mr. Fechter.

MR. FECHTER: Thank you.

MR. AUSTIN: Do any other creditors have any questions based off of Mr. Fechter's additional questions? Hearing none, I'm going to assume that nobody has any additional questions.

As I said before, my questions are concluded. I don't have anything else to add so I think that we can conclude this 341 meeting. As I've stated before, I offer the invitation to anyone who wants a copy of the 341 meeting to email me. I've given my email address twice but just -- the third time is a charm, david.austin2@usdoj.gov. And with that we can go off the record and I will conclude this meeting. Thank you very much.

(Off the record.)

CERTIFICATE OF TRANSCRIBER

I, DEBRA MCCOSTLIN, do hereby certify that the foregoing transcript is a true and correct record of the recorded proceedings; that said proceedings were transcribed to the best of my ability from the audio recording and supporting information; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

DEBRA MCCOSTLIN
APRIL 28, 2023

**A**

**a-u-s-t-i-n**
2:18, 88:1
**ab**
23:4
**ability**
97:6
**able**
27:9, 27:13, 42:5, 68:7, 70:17
**about**
2:22, 8:4, 10:15, 13:6, 13:17, 14:8, 15:20, 23:3, 23:5, 23:6, 23:10, 23:22, 24:2, 25:16, 27:21, 29:6, 29:22, 43:3, 52:5, 52:8, 55:14, 57:17, 60:1, 64:17, 66:21, 72:6, 76:14, 80:2, 83:17, 85:7, 90:20, 93:8, 94:8
**absolutely**
26:6, 67:6, 74:17
**access**
79:14
**according**
11:12
**accordingly**
21:4, 28:21
**account**
20:9, 24:3, 29:2, 30:6, 30:16, 31:3, 31:8, 31:12, 31:13, 31:15, 32:21, 33:3, 33:16, 33:17, 33:20, 33:21, 34:4, 34:9, 34:10, 35:15, 35:18, 36:5, 36:6, 36:7, 36:8, 36:9, 36:11, 36:16, 69:19, 81:17, 83:3, 83:16, 84:10, 84:11, 85:7, 86:6, 92:17, 93:5, 95:7, 95:8, 95:10, 95:12, 95:14, 95:16
**accountant**
38:4, 38:7, 54:12, 54:13, 60:21, 71:18, 71:22, 72:8, 80:11, 80:12
**accountants**
76:20
**accounted**
71:17
**accounting**
37:2, 38:20, 39:14, 77:20, 81:18
**accounts**
8:15, 29:1, 29:4, 29:7, 29:21, 30:1, 30:10, 30:11, 34:11, 34:14, 34:17, 35:20, 36:17, 42:16, 68:2, 68:5, 68:18, 71:20, 72:16, 80:22, 81:16, 82:5, 83:5, 83:17, 92:13, 95:20
**accrual**
37:3, 37:8
**accurate**
36:20, 57:4, 73:15
**accurately**
47:21
**acknowledge**
94:6
**across**
3:22, 4:3, 30:3
**active**
91:10
**actively**
6:10
**activities**
19:6
**activity**
57:18
**actual**
85:1, 94:14
**actually**
16:9, 24:17, 33:19, 76:14, 93:10
**ad**
38:7, 72:7
**add**
96:9
**addition**
57:14
**additional**
23:5, 23:7, 26:21, 48:2, 96:6, 96:7
**address**
37:18, 85:6, 87:22, 96:13
**adequacy**
81:20
**adjourned**
3:9
**adjust**
71:13
**adjustments**
71:14
**administration**
3:5, 89:2
**adopt**
10:9, 21:8, 27:17, 36:21, 51:19, 53:20, 55:11, 67:4, 67:5
**adult**
62:4
**advised**
20:16
**affairs**
3:4, 92:12, 93:12, 94:12, 94:16
**affirmed**
6:18
**after**
3:5, 32:3, 48:4, 50:3
**afternoon**
2:2
**again**
10:4, 11:15, 13:18, 25:5, 28:13, 33:13, 50:4, 55:10, 60:4, 65:1, 72:22, 74:3, 86:12, 87:22
**against**
8:12, 8:13, 12:9, 24:1, 34:3, 34:4, 35:1, 55:22, 56:9, 56:15, 89:9, 89:16, 90:5, 90:12, 90:16, 91:12, 91:19
**ago**
53:6, 64:1
**agree**
12:21
**agreement**
10:9, 89:18, 90:13
**agreements**
68:15, 69:13
**ahead**
24:8, 35:8, 38:15, 55:1, 60:1, 84:7, 85:4
**allow**
8:22, 9:22, 42:4
**allowed**
2:15, 60:19,

70:15
**almost**
68:7
**along**
11:2, 76:5
**already**
5:2, 23:21, 72:15, 83:3, 83:17, 84:12, 89:15
**also**
8:17, 12:9, 16:8, 17:6, 21:18, 26:3, 26:5, 35:4, 38:20, 46:17, 57:13, 62:19, 65:15, 66:13, 67:8, 76:8, 82:1, 93:11, 93:14
**always**
11:10, 25:16, 68:11, 68:17
**amend**
21:4
**amending**
23:10, 92:6
**amendment**
94:1
**amendments**
22:20, 22:22
**america**
4:18, 78:22
**amortization**
26:19
**amount**
19:5, 21:21, 40:22, 71:4, 90:5
**amounts**
26:18
**analysis**
91:11, 91:18
**andrew**
2:11
**angle**
21:11
**animal**
43:15, 43:18
**announced**
73:3
**annual**
18:15, 18:22
**another**
35:4, 35:15, 43:15, 44:4, 52:17, 95:15
**answer**
28:4, 33:10, 33:14, 44:13, 50:19, 51:19, 53:21, 58:13, 59:4, 65:17, 66:20, 72:6
**answered**
23:21, 55:10, 72:15
**anticipating**
76:9
**any**
5:1, 10:22, 11:12, 14:18, 15:7, 15:8, 18:1, 19:6, 24:19, 28:8, 28:22, 30:8, 30:10, 31:7, 32:6, 40:16, 42:15, 42:20, 44:7, 44:14, 44:21, 45:8, 45:20, 45:21, 47:7, 47:13, 47:16, 48:2, 48:22, 49:15, 49:17, 49:20, 50:3, 50:6, 51:3, 54:7, 57:21, 59:17, 62:20, 62:21, 63:15, 63:20, 64:14, 65:13, 68:8, 69:2, 69:3, 69:8, 69:13, 71:11, 73:8, 73:22, 75:16, 76:3, 76:20, 78:14, 78:19, 79:1, 79:4, 79:7, 82:1, 83:13, 87:4, 87:11, 91:1, 91:7, 91:18, 94:11, 96:4, 96:5, 96:7, 97:8
**anybody**
16:21
**anyone**
4:22, 6:6, 51:12, 57:12, 76:2, 80:7, 80:9, 87:19, 96:12
**anything**
18:5, 26:12, 41:17, 52:5, 79:14, 89:12, 90:16, 90:19, 90:20, 93:7, 96:9
**apartments**
62:17, 62:18, 63:17
**apologize**
28:6, 40:12, 79:20, 86:12, 88:11
**apology**
84:3
**apparently**
88:15
**appeal**
10:14, 11:8, 12:7, 56:4
**appearance**
80:9, 88:7, 88:11
**application**
92:1, 92:7
**applications**
35:13, 54:5, 56:19
**appoint**
8:18, 35:13
**appraisals**
61:1, 76:8, 76:15
**appreciate**
7:10, 11:17, 14:12, 36:19, 87:6
**appreciates**
87:16
**appropriate**
95:5
**approximately**
2:6, 9:4, 13:8, 92:14
**april**
1:12, 2:5, 53:8, 53:12, 60:9, 61:3, 61:18, 61:21, 97:16
**aren't**
94:7
**around**
13:15, 16:4, 31:4, 64:2
**ash**
37:22
**aside**
35:10
**asked**
40:21, 51:13, 52:15
**asking**
13:11, 33:17, 45:4, 69:7, 71:9
**asserted**
91:12
**assessment**
21:8
**assets**
8:20, 10:17, 27:8, 50:3, 60:7, 62:15, 62:21, 63:9, 64:9, 74:11, 74:12

**assist**
16:20
**assistance**
12:18
**assistant**
78:4
**associated**
56:21
**assume**
22:3, 24:16, 24:20, 31:21, 40:1, 49:7, 53:7, 96:7
**assumed**
7:22
**attachment**
8:14
**attendance**
73:4
**attending**
4:13
**attest**
4:3
**attorney**
2:12, 86:18
**attorneys**
35:11, 54:5, 57:10
**audio**
97:6
**auditor**
40:5, 80:12
**austin2@usdoj**
96:15
**authority**
57:13
**auto**
81:21
**available**
35:16
**average**
21:13
**aware**
10:16, 23:2, 51:16, 53:6, 53:7, 53:9, 53:15, 53:18, 81:12, 83:4, 90:14
**away**
39:17, 60:12, 60:16, 63:8

**B**

**back**
16:10, 16:15, 40:21, 72:5, 81:9, 86:15, 86:20, 90:18
**background**
6:10, 10:10, 11:3, 14:13
**backwards**
18:20
**balance**
26:20, 38:11, 39:1, 39:10
**bald**
25:15
**balloon**
26:22
**bank**
4:16, 4:18, 4:19, 4:21, 5:4, 5:22, 8:11, 8:12, 10:16, 11:4, 11:18, 25:22, 29:1, 68:2, 68:5, 70:9, 70:15, 72:16, 73:8, 78:22, 79:3, 79:7, 80:3, 81:16, 81:17, 82:4
**bank's**
24:1
**banker**
10:20
**bankers**
10:19, 16:20, 39:8, 68:6
**banking**
10:20
**bankruptcy**
1:1, 2:10, 4:6, 19:18, 31:17, 33:18, 49:21, 57:19, 86:15, 86:21, 88:22, 89:3
**banks**
31:17, 31:21, 32:1
**based**
37:8, 89:18, 96:5
**basic**
10:10
**basically**
46:20, 60:11, 70:9, 71:10
**basis**
17:3, 18:22, 21:3, 37:3, 37:8, 37:9, 38:7, 39:16, 70:6
**because**
12:17, 14:9, 18:18, 24:18, 25:6, 25:12, 29:18, 32:4, 36:1, 41:16, 50:19, 53:5, 54:13, 54:17, 60:22, 63:13, 66:20, 68:11, 70:18, 91:22, 93:19
**becomes**
27:15
**been**
10:12, 11:11, 15:21, 15:22, 18:1, 18:4, 18:12, 22:16, 30:2, 30:12, 30:13, 37:5, 39:16, 42:5, 47:18, 56:3, 58:3, 64:2, 68:6, 69:19, 71:10, 73:18, 79:11, 91:7, 94:13, 94:14
**before**
3:9, 4:13, 8:1, 24:14, 24:16, 56:12, 61:19, 85:10, 88:11, 90:16, 96:8, 96:11
**beforehand**
25:15
**beginning**
5:18, 58:17, 73:5, 76:11, 87:19
**behalf**
5:3, 5:13, 88:8
**being**
2:7, 2:14, 6:18, 20:17, 46:5, 67:12, 93:4
**belief**
22:12
**believe**
5:17, 10:11, 10:13, 10:15, 14:8, 15:19, 23:21, 32:12, 48:1, 49:11, 53:13, 65:11, 76:19, 80:20, 91:9
**beneficiaries**
62:2
**beneficiary**
64:6
**benefit**
23:16, 24:19, 62:14
**benefits**
3:15, 3:16
**berghoff**
4:21
**best**
22:11, 22:13, 25:3, 59:15, 94:7, 97:5

**better**
25:7, 51:11, 58:13
**between**
12:22, 42:10, 46:7, 61:1, 66:14, 67:14, 68:15
**bill**
61:17, 61:20, 61:22, 88:6, 89:20
**billings**
91:4
**bills**
21:16, 37:5
**bit**
22:22, 27:21, 60:15, 61:14, 64:17
**blue**
37:22
**bonds**
62:20
**booked**
69:19, 69:20
**books**
37:2, 37:7, 37:11, 38:2, 72:11, 76:18, 81:17
**boston**
43:14
**both**
17:5, 38:16, 77:11
**break**
94:22
**brian**
55:17
**brief**
60:4, 84:1
**briefly**
57:17
**bring**
80:13
**brokerage**
34:4, 34:8, 36:5, 36:6, 36:8, 36:11, 36:17, 83:17, 86:7, 92:13
**brought**
8:4
**budget**
91:15
**building**
66:15
**buildings**
66:17
**business**
8:7, 8:18, 9:8, 9:19, 16:1, 16:3, 16:13, 18:16, 21:16, 30:18, 40:13, 40:14, 42:6, 43:11, 44:11, 65:3, 65:8, 68:20, 68:21, 70:19, 71:5, 81:1, 83:2, 83:13, 93:17, 94:3, 94:19
**businesses**
15:21, 17:3, 21:19, 38:21, 39:6, 40:8, 40:17, 43:7, 43:9, 43:14, 63:16, 65:13, 65:15, 65:16, 66:10, 66:16, 67:10, 68:8, 68:9, 68:22, 73:22, 85:11, 94:9, 94:11, 95:9

**C**

**c-u-m-m-i-n-s**
56:8
**calendar**
40:2, 93:13
**call**
31:21, 68:21, 69:5, 73:5, 87:11, 95:6
**called**
20:11, 43:14, 43:15, 74:21, 75:2
**came**
23:15, 48:3
**can't**
12:14, 12:17, 79:20
**cap**
69:5
**capital**
20:14, 69:4, 69:19, 88:1
**cards**
83:4
**care**
11:10, 76:21
**careful**
86:18
**case**
1:5, 2:4, 3:5, 9:6, 9:10, 10:21, 20:15, 31:22, 56:22, 71:15, 97:9
**casey**
81:2, 81:3, 81:9, 82:11, 84:2, 84:7, 84:14
**cash**
37:2, 37:8, 37:10, 63:2, 63:4, 82:16
**cashflow**
41:9, 41:16, 41:19, 42:2, 42:11
**catching**
39:14, 39:17
**cause**
8:19
**cell**
88:13
**centrally**
72:3
**ceo**
15:17, 17:6
**certain**
8:6, 8:11, 8:14, 12:19, 20:3, 60:20
**certainly**
90:6
**certificate**
80:21, 81:22, 85:15, 85:18, 97:1
**certify**
97:2
**cetera**
15:17, 28:2, 28:15, 49:2
**cfo**
15:17
**chance**
10:7, 25:2, 59:5
**change**
21:4, 39:15, 71:11
**changed**
41:4, 51:4, 71:6
**chapter**
2:4, 8:2, 8:5, 8:13, 8:20, 9:2, 9:12, 9:13, 9:16, 82:18
**charge**
48:9
**charm**
96:14
**check**
20:9, 29:16, 29:18, 30:3, 82:4, 82:9, 83:2, 90:21
**checking**
72:19
**checks**
20:6, 30:9, 30:17, 30:22
**childhood**
16:13

**children**
62:4
**chris**
52:18, 74:4, 74:16, 75:9, 75:19, 76:8, 78:2, 78:16
**christopher**
4:15
**chunks**
26:21, 27:5
**circle**
66:1
**claim**
89:8, 89:9, 89:13, 90:4, 90:5
**claimed**
23:17
**claims**
91:12
**clarification**
36:1
**clarify**
12:6, 19:14, 38:13, 41:16, 44:12, 80:18
**clarifying**
25:5
**class**
27:3
**classes**
27:4
**clean**
68:19
**cleaner**
20:16
**client**
6:14, 7:16, 7:17, 25:18, 51:14, 66:20, 83:6, 88:20
**client's**
93:10
**closed**
29:10, 30:2
**closer**
84:4
**closing**
87:5
**closure**
81:15, 81:17
**co-obligor**
8:10
**code**
2:10
**coins**
49:2
**collapsed**
67:13
**collect**
8:13, 49:3, 90:16
**collectability**
90:6, 91:18
**collectibles**
49:1
**colorado**
42:20, 46:3, 46:5, 47:14, 48:20, 82:2
**come**
27:22, 35:5, 59:17, 59:21, 81:9, 86:21
**comes**
46:18
**coming**
10:15, 34:21, 60:21
**commenced**
8:2, 8:21
**commenting**
12:2
**companies**
15:16, 17:17, 19:1, 21:3, 23:16, 64:18, 66:15, 69:21, 70:1, 70:10, 71:5, 71:11, 72:11, 77:21
**company**
20:19, 48:9, 64:20, 65:5, 70:8, 70:9, 70:11, 70:22, 71:1, 71:17, 72:15
**complaint**
35:1, 56:9, 56:15
**complete**
17:13, 54:15
**completed**
58:3, 58:15
**compliance**
50:14, 51:14, 51:17
**complicated**
9:1, 10:12, 25:2, 87:7, 94:2
**comply**
51:13, 87:8
**concern**
3:4
**concerned**
24:2
**conclude**
87:17, 96:10, 96:16
**concluded**
96:9
**conducted**
2:8
**conference**
3:22, 4:4
**confine**
11:21, 89:1
**confirmation**
10:1, 29:14, 29:18
**confused**
60:15, 92:1
**confusing**
50:19
**conglomerate**
64:19
**conglomerated**
15:4
**conglomerates**
14:18
**considering**
41:12
**consultant**
60:21
**contained**
22:10
**contentious**
11:19
**continue**
11:13
**contractor**
54:20
**control**
13:7, 44:1
**controlled**
14:20
**controller**
23:14, 52:6, 52:18, 53:2, 53:18, 78:5
**controlling**
13:18, 14:7, 43:21, 85:12
**copies**
22:7, 81:20, 82:4, 82:7, 82:15, 85:14, 86:22
**copy**
2:16, 3:1, 3:13, 30:3, 75:16, 83:9, 83:12, 83:18, 87:20, 96:12
**cord**
84:5
**corporate**
20:2, 39:21, 82:19
**corporately**
44:18
**corporation**
54:14, 54:20
**corporations**
39:5, 54:18
**correct**
7:13, 13:4, 15:5, 17:18, 22:4, 22:11, 24:3, 25:8,

26:1, 26:5, 33:4, 33:20, 34:9, 38:8, 40:9, 40:15, 43:9, 44:18, 44:19, 46:16, 46:21, 48:17, 49:13, 52:11, 52:16, 53:8, 56:16, 58:4, 58:5, 58:7, 58:8, 58:22, 61:8, 63:17, 63:18, 63:19, 64:6, 65:10, 66:2, 66:3, 66:11, 66:13, 68:3, 69:14, 69:15, 70:10, 70:12, 71:2, 72:3, 72:8, 72:13, 72:16, 72:17, 85:20, 86:1, 89:9, 89:16, 91:22, 92:5, 97:4

**corrected**
93:15

**correctly**
11:12, 46:20

**correspondence**
40:2

**cost**
71:14

**costs**
70:1

**could**
5:6, 5:14, 6:13, 19:7, 19:11, 25:3, 28:9, 73:20, 75:5, 77:13, 77:17, 88:14, 88:16

**couldn't**
33:13

**counsel**
3:11, 4:10, 12:12, 22:3, 35:3, 35:4, 54:7, 54:8, 55:14, 79:10, 97:8

**count**
14:6

**couple**
20:6, 80:18, 81:13

**course**
49:18, 49:22, 50:4, 50:8

**court**
1:1, 10:5, 14:3, 35:14, 50:7, 60:8

**cover**
18:18, 20:21, 21:16, 21:20, 86:8

**coverage**
81:19

**covered**
84:8

**covid**
41:3

**cpa**
19:21

**created**
8:16, 55:21

**creating**
61:16

**creation**
75:7

**credit**
4:17, 5:8, 78:18

**creditor**
73:1, 75:17

**creditors**
1:10, 2:3, 2:7, 4:10, 4:11, 9:18, 11:12, 26:4, 28:20, 49:20, 72:21, 96:4

**criminally**
8:7

**criminals**
10:22

**critical**
59:13

**cross-collateral-ized**
67:18

**crypto**
62:21

**cummins**
56:8, 56:21

**current**
28:1, 28:14, 41:20, 45:7, 49:12, 63:2, 74:7, 91:4

**currently**
8:8, 31:7, 41:8, 88:20

**customer**
11:5

**customers**
70:4

**cut**
81:3

D

**daily**
17:3, 70:3, 70:5

**date**
2:5, 16:2, 61:15, 71:7, 90:22

**david**
2:11, 2:17, 7:8, 15:14, 19:14, 29:22, 33:7, 33:13, 36:13, 41:15, 44:13, 52:16, 54:13, 62:12, 66:8, 66:20, 69:17, 80:17, 87:22, 96:15

**day**
9:15, 39:16

**days**
39:13, 39:17, 49:21, 57:19, 58:2, 68:12, 82:17, 86:8

**deal**
25:12, 25:21, 56:4

**dealing**
71:1

**debra**
1:22, 97:2, 97:15

**debt**
8:6, 9:19, 27:10, 41:18, 73:14, 74:8

**debtor**
1:7, 3:3, 3:12, 3:19, 5:1, 12:8, 83:14, 85:12, 88:21

**debtor's**
79:9, 93:4

**debtor-in-posses-sion**
30:16

**debts**
8:11, 8:22, 9:6, 9:8, 10:2, 23:5, 28:20, 50:7, 73:18, 74:1, 74:8

**decca**
4:18, 79:1, 79:2

**december**
74:2

**decision**
24:6, 24:12, 25:8

**deemed**
3:10

**deerfield**
37:19

**defense**
34:16, 34:18, 36:8, 36:10, 92:16, 93:3, 95:7

**delegated**
57:13
**department**
39:14
**depends**
42:3
**depleted**
64:9
**deposit**
31:7
**deposited**
20:8
**described**
54:6
**desk**
26:16
**destroyed**
87:1
**detail**
86:5, 94:1
**details**
35:19, 60:5
**determinations**
27:7
**determine**
89:12
**determined**
27:2, 27:12
**different**
9:4, 16:2, 19:19, 19:20, 19:22, 21:11, 33:6, 33:20, 43:14
**digits**
7:3
**dip**
20:9, 29:2, 29:3, 30:3, 30:16, 31:3, 31:8, 31:12, 31:14, 80:22, 81:16, 83:2, 83:5, 84:10, 84:11, 85:7
**direction**
19:12
**directly**
95:9
**disclose**
57:20
**disclosed**
12:10, 14:10, 35:17, 47:18, 49:16
**disconnected**
84:4, 85:10, 86:12
**district**
1:2
**dividends**
20:3, 20:13
**division**
1:3
**document**
26:16
**documentation**
75:6
**documents**
4:6, 81:14
**dog**
43:15, 43:17, 43:19
**doing**
3:9, 11:13, 59:15, 71:5
**dollars**
19:9, 21:22, 94:8
**domestic**
40:18, 40:19
**done**
8:1, 11:3, 11:10, 11:11, 59:2, 59:6, 59:8, 63:6, 89:12
**dot**
2:18, 87:22
**doug**
4:16, 78:19
**down**
10:1, 12:19, 20:22, 27:9, 27:13, 59:21, 73:2, 78:18, 78:22, 79:19
**draft**
26:9, 26:15
**drafted**
9:13, 9:21, 26:8, 26:14
**dramatically**
41:4
**draw**
17:16, 20:21, 21:6
**drawing**
19:1, 31:11
**draws**
17:17, 17:21, 18:2, 18:16, 83:6, 83:7, 83:8
**driver's**
3:13
**driving**
41:22
**dropbox**
75:19, 76:2, 79:13
**due**
9:2, 9:7, 53:8, 53:12, 53:15, 58:2
**duly**
6:18
**during**
15:20, 60:3, 82:5
**duties**
16:17

**E**

**e-l-d-r-i-d-g-e**
52:21
**each**
14:20, 15:10, 16:1, 17:2, 17:9, 17:12, 26:22, 38:14, 39:4, 44:5, 48:9, 65:4, 65:5, 67:19, 68:6, 68:11, 68:22, 70:18, 71:17, 71:18, 71:19, 71:21, 72:10
**earlier**
23:12, 25:21, 40:21, 49:12, 64:17, 73:14, 83:3, 94:7
**early**
61:12
**eastern**
2:6
**easy**
6:5, 25:18, 35:2, 68:21
**economics**
16:22
**economy**
42:4
**editorial**
12:2
**effective**
27:15
**eight**
14:9
**either**
18:15, 18:21, 44:8, 47:17
**eldridge**
52:18, 78:5
**electric**
5:8
**electronically**
2:14
**else**
6:6, 16:21, 44:8, 44:16, 45:9, 47:8, 47:9, 51:10, 57:12, 62:8, 70:12, 73:4, 76:3, 79:14, 80:8, 80:10, 87:9, 88:15, 96:9
**email**
78:11, 79:13, 81:13, 85:6,

87:10, 87:22, 96:13
**emails**
82:11
**emily**
77:8, 77:14
**empire**
65:3
**employ**
54:5
**employed**
97:8
**employee**
54:19
**employees**
16:20, 17:2, 77:16, 77:18
**end**
19:3, 19:21, 26:22, 39:17, 68:19, 73:6
**enough**
16:11, 53:19
**entered**
88:7
**entities**
8:18, 12:13, 12:15, 12:22, 13:3, 13:7, 14:17, 14:20, 15:5, 15:9, 16:18, 17:9, 19:20, 20:3, 20:10, 38:14, 40:14, 43:21, 44:5, 45:15, 47:16, 48:10, 51:8, 57:21, 63:6, 64:22, 66:16, 67:11, 67:13, 67:15, 68:16, 69:2, 69:9, 69:13
**entity**
14:5, 14:19, 15:4, 17:12, 20:2, 20:7, 51:3, 65:4, 65:5, 69:19
**eric**
3:11, 23:11, 25:11, 25:14, 29:13, 35:2, 35:8, 37:17, 42:7, 67:2, 72:18, 74:18, 75:5, 75:7, 75:15, 76:6, 78:12, 80:19, 81:6, 89:21, 89:22, 90:9, 91:21, 93:7, 93:15
**essentially**
70:8
**establish**
30:22
**estate**
42:19, 42:20, 44:8, 44:15, 51:3, 89:3
**estimate**
40:22, 58:14, 63:2
**et**
15:17, 28:2, 28:15, 49:2
**evan**
78:3, 78:4
**eve**
8:14
**even**
41:11, 46:11, 46:12, 46:13, 88:16
**ever**
10:21, 28:10, 40:4
**every**
14:4, 41:21, 72:15
**everybody**
4:1, 11:10, 52:7, 61:21, 70:12, 88:15
**everyone**
12:7, 27:3, 87:9, 87:15
**everyone's**
87:7
**everything**
11:11, 18:18, 34:5, 51:14, 52:8, 61:1, 67:22, 68:12, 69:17, 72:12, 84:9, 88:14
**exact**
12:17, 14:6, 19:4, 26:18
**exactly**
23:15, 27:12, 40:1
**examination**
14:14
**examine**
3:3
**examined**
6:20
**example**
20:5, 68:14
**excellent**
4:9, 47:13
**except**
14:8, 67:17, 67:21
**executing**
34:3
**exhibits**
14:3
**existence**
74:1
**expected**
59:4
**expense**
94:10
**expenses**
19:20, 20:18, 20:19, 20:22
**explain**
33:11, 73:20
**explained**
10:4
**explanation**
36:21, 48:11, 51:20, 53:21
**extension**
59:15
**extensive**
81:10

**F**

**fact**
9:2, 9:7
**fair**
16:11, 53:19
**family**
19:6, 74:11, 74:12, 76:18
**far**
76:22, 91:20
**favor**
90:12
**favorite**
57:18
**fechter**
88:4, 88:6, 88:13, 88:19, 89:4, 89:6, 89:22, 90:2, 90:9, 91:21, 92:11, 93:6, 93:11, 94:5, 95:1, 95:4, 95:18, 95:22, 96:2, 96:3
**fechter's**
96:5
**fed**
19:5
**federal**
8:8, 15:11, 57:19, 67:17, 83:13
**fee**
52:11, 53:12
**feel**
28:11, 87:21
**fees**
52:3, 52:5, 53:7, 57:8
**few**
53:5, 57:18,

73:11
**figure**
54:13
**file**
4:5, 24:12, 53:11, 54:11, 54:16, 59:14
**filed**
8:14, 14:3, 18:5, 18:12, 20:15, 22:21, 23:22, 24:17, 24:21, 27:22, 29:1, 32:3, 48:4, 50:3, 54:4, 56:11, 56:12, 58:20, 59:8, 89:11
**files**
77:4, 87:13
**filing**
8:4, 9:16, 10:10, 18:2, 18:21, 19:17, 31:17, 32:4, 33:4, 33:18, 38:12, 52:1
**fill**
22:21, 26:16
**filled**
87:13
**finalize**
83:20
**financial**
3:4, 10:3, 59:12, 77:2, 82:7, 82:15, 82:18, 92:12, 93:12, 94:12, 94:15, 97:10
**find**
71:14, 90:10
**finding**
23:1, 42:7
**fine**
67:1, 67:2
**finish**
69:1
**finished**
81:5
**firm**
56:3, 76:19, 77:9, 91:1
**first**
4:21, 6:18, 53:12, 61:16, 61:17, 61:21, 67:21, 74:20, 79:6, 82:17, 83:1, 95:7
**fiscal**
40:1
**five**
34:14, 93:17, 94:18, 95:2
**fixed**
23:14
**floor**
80:15
**flow**
65:9
**follow**
79:9, 82:14
**following**
36:18, 39:18, 48:12, 61:8
**follows**
6:20
**forces**
8:4
**forecasts**
83:1
**foregoing**
97:3
**foreign**
90:19
**form**
3:18, 57:19, 58:1
**formal**
63:5, 93:3
**formalities**
68:13
**formalized**
69:12
**forms**
30:18, 94:6
**forth**
47:21
**forty-five**
24:13
**forward**
6:12, 9:16, 11:14, 35:12, 42:6, 92:10
**four**
7:3, 36:17, 92:13, 93:17, 94:4, 94:17, 94:18, 94:19, 94:21, 95:2
**franchise**
82:19
**fraud**
55:20
**free**
28:12, 87:21
**frequently**
39:9
**front**
10:18, 26:19, 55:15
**full**
7:3
**fully**
17:20
**fun**
59:19
**function**
77:18
**functions**
77:20
**fund**
34:16, 34:19, 36:9, 36:11, 92:16, 93:3, 95:7
**funded**
70:5, 95:18
**funds**
9:22, 20:8, 30:10, 31:1, 31:7, 35:7, 35:9, 35:10, 35:15, 69:18
**further**
73:21, 78:14
**future**
79:15

**G**

**gains**
20:14
**gave**
7:12, 63:8
**ge**
4:17, 78:18
**general**
5:8, 61:15
**generally**
69:22
**generates**
77:2
**gentleman**
52:17, 55:22
**gentlemen**
2:3
**getting**
55:20, 59:12, 85:10, 86:12
**gift**
60:2, 60:6, 60:19, 64:1, 64:8, 74:22, 75:2, 75:7, 83:18
**gifted**
74:11
**gifting**
60:12, 60:18
**giles**
55:18, 56:22, 91:1, 91:5, 91:8, 91:10, 91:14, 91:17, 92:2, 92:9
**give**
2:19, 19:7, 26:9, 42:8, 58:12, 58:14, 59:5, 60:3, 60:5, 73:6, 74:15, 76:1,

77:17, 87:10
**given**
96:13
**go**
6:11, 19:8, 24:8, 30:11, 31:14, 35:8, 38:15, 55:1, 60:1, 60:8, 60:12, 60:16, 73:2, 74:19, 78:18, 78:21, 81:9, 84:1, 84:6, 85:4, 90:18, 95:8, 96:15
**goal**
25:21, 59:9
**goering's**
10:8, 21:8, 27:17, 36:21, 51:19, 53:21, 57:18
**goes**
72:5
**going**
8:19, 18:18, 20:8, 21:2, 22:20, 26:20, 27:3, 27:4, 27:5, 27:8, 30:2, 31:12, 31:13, 35:12, 40:21, 47:2, 54:16, 55:16, 57:7, 57:16, 59:1, 59:19, 60:12, 60:16, 60:18, 65:18, 72:21, 73:2, 76:9, 77:19, 78:18, 78:21, 79:19, 80:15, 82:3, 83:5, 83:9, 83:11, 83:15, 83:22, 84:1, 88:22, 92:2, 92:9, 93:14, 96:6
**gone**
84:9
**good**
2:2, 67:20, 90:2
**gotten**
7:16, 29:13, 30:21, 82:1
**gov**
2:18, 88:2, 96:15
**grand**
18:7
**grandpauper**
65:19, 65:20, 65:22
**grasp**
21:1, 23:15, 54:15
**great**
13:22, 75:12, 78:13, 85:16
**grow**
42:6
**guarantee**
10:17
**guarantor**
8:6, 9:7, 9:20
**guess**
17:8, 41:22, 53:22, 58:16, 69:7, 81:4, 81:5
**guidelines**
50:11
**guns**
49:1
**guys**
31:18, 42:8, 85:18, 86:20

**H**

**hair**
25:12
**hamilton**
20:11
**hand**
6:14, 6:16
**handled**
72:2
**handwriting**
79:21
**hanging**
10:13
**happen**
59:9
**happened**
56:13
**happily**
28:12
**happy**
14:6, 33:14, 35:19, 76:1, 78:11, 87:13, 94:22
**hayman**
4:16, 78:19, 78:20
**head**
10:13, 17:10, 17:12, 78:9
**hear**
88:14, 88:16
**heard**
33:12, 62:8
**hearing**
6:9, 80:9, 96:6
**held**
1:11, 8:15, 92:9, 93:4
**help**
68:11, 75:5, 76:5
**helping**
68:22
**here**
12:16, 24:10, 31:22, 36:1, 51:8, 51:15, 55:21, 65:1, 70:14, 75:11, 80:14, 93:19
**here's**
50:21, 74:20
**hereby**
97:2
**heritage**
4:19, 79:3
**hesitate**
53:4
**hi**
4:1, 89:20, 89:22
**hide**
34:22
**high**
17:4, 17:5, 60:4, 64:22
**highly**
10:14
**hired**
38:6
**hoc**
38:7, 72:7
**hold**
62:15, 62:20, 81:6
**holder**
80:22, 81:22, 85:15, 85:19
**holding**
64:19, 66:15
**holds**
20:4, 62:16, 62:18
**home**
37:15, 72:6, 72:11
**honest**
11:11
**hopefully**
18:18
**hospital**
43:15, 43:18
**houses**
85:22
**however**
27:2
**hump**
68:1
**huntington**
4:16, 8:11, 10:21, 11:18, 12:8, 12:9,

24:1, 25:22, 34:22, 41:12, 41:17, 41:18, 42:2, 42:12, 42:13, 56:5, 56:10, 56:15, 73:8, 73:14, 74:8, 75:16

**I**

**id**
15:11, 67:17
**idea**
2:21, 60:5
**identified**
3:17, 4:14, 5:2, 6:7, 89:7
**identify**
3:8, 12:14, 18:14, 32:11, 32:13, 32:15, 73:1
**identifying**
15:11
**implies**
13:2
**improvements**
71:15
**include**
51:5
**includes**
48:19
**including**
42:12, 81:21
**income**
17:17, 18:15, 20:1, 20:14, 21:13, 21:14, 21:18, 21:21, 23:8, 23:17, 38:11, 39:10, 40:8, 40:13, 40:22, 84:13, 93:13, 93:14, 94:1, 94:14
**incoming**
31:7
**indemnity**
89:18, 90:13
**independent**
40:5, 67:11, 67:19
**indicate**
4:12, 92:2
**indicated**
11:20, 12:12, 26:14, 56:20, 88:10
**indicted**
8:8
**individual**
8:5, 9:2, 17:12, 64:21, 71:17
**individually**
8:3, 14:20, 15:2, 42:22, 43:1, 64:21
**individuals**
2:15, 5:2, 73:3
**information**
14:3, 22:9, 22:12, 57:21, 59:12, 76:2, 76:3, 78:11, 79:11, 81:14, 82:2, 87:11, 95:2, 97:7
**initiated**
12:9
**inquire**
16:12
**instead**
17:16
**insurance**
28:2, 28:15, 48:6, 48:8, 48:13, 49:8, 49:10, 51:1, 80:20, 81:1, 81:19, 81:21, 82:2, 85:11
**intend**
59:7
**intended**
10:4
**intending**
54:9
**intent**
9:11, 9:18, 93:3
**intention**
26:4
**interest**
13:9, 13:10, 13:18, 13:19, 14:5, 15:16, 20:4, 20:7, 43:21, 64:21, 65:15, 65:20, 83:14, 85:13, 97:9
**international**
40:17
**interrelate**
65:14
**inventory**
81:19
**investments**
86:5
**invitation**
96:11
**invoices**
30:17, 57:8, 70:21
**involved**
51:8, 61:3, 65:6
**ira**
33:22
**issue**
23:22, 25:22, 29:21, 34:22, 35:3
**issues**
9:14, 10:3, 55:21
**issuing**
70:21
**items**
23:2

**J**

**jacqueline**
5:12, 5:16, 79:21, 79:22
**james**
56:8
**january**
74:2
**jay**
4:17
**jenny**
5:7, 5:9
**jewels**
49:1
**jimmy**
56:8
**job**
1:20
**john**
4:19, 78:2, 79:3
**john's**
78:8
**joined**
73:5
**joseph**
1:6, 2:4, 6:17, 7:5
**judge**
9:13
**judgment**
8:12, 12:8, 35:3, 41:12, 56:5, 74:2, 89:15, 89:19, 90:11, 91:18

**K**

**k**
32:7
**keep**
16:19, 31:10, 67:10, 68:18, 70:18, 83:11
**kept**
19:12
**kids**
62:14
**kind**
21:2, 25:2, 26:17, 36:12, 42:4, 62:21

**kinds**
32:7
**knew**
34:20, 76:10
**know**
10:20, 11:4, 11:7, 19:3, 26:7, 28:12, 30:2, 32:18, 34:22, 37:4, 37:6, 41:19, 41:20, 46:11, 46:12, 46:13, 47:3, 47:19, 51:11, 52:4, 54:1, 58:19, 59:12, 59:13, 61:19, 66:20, 67:3, 67:12, 68:20, 69:5, 70:17, 76:9, 76:22, 77:1, 77:3, 77:4, 77:6, 77:22, 78:9, 80:19, 81:15, 81:18, 83:4, 83:7, 84:9, 90:19, 91:13, 91:20, 93:2, 93:20, 94:3, 94:6, 94:13
**knowing**
60:20
**knowledge**
22:11, 22:14
**knows**
52:8
**kramer**
80:13, 80:17, 84:3, 84:8, 84:17, 85:3, 85:9, 85:20, 86:1, 86:4, 86:9, 86:11

**L**

**lack**
25:7
**ladies**
2:2
**landlord-tenant**
66:14, 67:9
**large**
75:13
**last**
6:2, 7:3, 21:14, 25:7, 30:7, 39:18, 41:1, 41:3, 41:6, 49:18, 52:19, 78:8, 82:16, 83:9, 83:12, 93:13
**late**
88:9
**later**
29:17
**law**
56:3, 61:7, 76:19, 77:9, 91:1
**laws**
60:17
**lawyer**
56:1, 56:6, 56:7, 61:18
**lawyers**
35:13, 35:16, 90:18
**lease**
45:2, 45:5
**leasing**
44:7, 44:8, 44:9, 44:10, 44:14, 44:15, 44:21, 45:5, 45:8, 45:20, 46:5, 47:8
**least**
13:9, 44:4, 81:9
**leave**
48:14
**ledger**
83:7
**left**
25:12, 29:19
**legal**
57:8, 74:16, 75:6
**legends**
30:16
**let's**
22:2, 27:21, 38:15, 55:13, 55:17, 60:1, 73:7
**level**
17:4, 17:6, 60:4, 60:20, 65:1
**liabilities**
47:21, 48:3, 49:13
**liability**
8:16, 81:20
**license**
3:13, 11:2
**lieberman**
4:19, 79:4, 79:5
**life**
11:14
**likelihood**
91:11
**likely**
13:1
**limitation**
89:5
**line**
4:22, 62:11, 69:1, 80:8, 80:13
**lines**
42:10
**liquidated**
27:9
**liquidation**
8:20, 24:2
**list**
73:3, 81:10, 93:12
**listed**
9:6, 20:10, 35:18, 42:18, 92:13, 94:14
**listen**
10:8
**litigation**
12:9, 24:1, 35:12, 54:6, 54:8, 55:14, 88:20, 91:15
**little**
22:22, 27:7, 27:21, 60:14, 61:14, 64:17, 67:22
**living**
20:22
**llcs**
9:4, 14:8, 16:10, 16:14
**loan**
68:15, 69:12
**loaned**
69:8
**loans**
68:9, 68:14, 69:20
**located**
37:21
**long**
15:21, 53:14
**look**
11:14, 19:3, 19:4, 20:12, 35:20, 90:4, 92:8, 92:11, 93:16
**looked**
19:12
**looking**
11:9, 18:20, 23:9, 26:21, 42:6, 61:16
**looks**
93:18
**lori**
78:2
**lose**
11:2
**loss**
21:20, 51:5,

93:17, 93:20
**losses**
84:15, 94:3
**lot**
21:19, 39:22, 58:1, 68:22, 87:8
**lots**
31:20
**loud**
10:18
**love**
7:19
**lucky**
5:7, 5:9, 5:10
**lynch**
4:18, 8:15, 24:3, 32:19, 32:20, 33:3, 33:16, 34:1, 78:22, 83:16, 86:5, 92:17

**M**

**made**
3:7, 18:21, 19:5, 41:1, 50:6, 50:7, 64:5, 83:8
**main**
23:13
**maine**
42:19, 47:14, 48:20, 82:3
**maintain**
49:7
**maintained**
37:2, 37:7, 37:12, 68:14
**maintaining**
67:14
**maintains**
38:2, 76:17
**majority**
60:11
**make**
7:17, 7:20, 11:17, 12:2, 14:21, 24:5, 24:12, 27:7, 34:7, 35:5, 39:22, 50:21, 73:1, 75:22, 79:10, 80:22, 84:10, 86:20, 89:1
**making**
52:10, 81:21
**manage**
16:20
**manager**
17:6
**managers**
65:7
**manages**
46:21, 48:9
**managing**
17:1
**many**
9:5, 13:6, 13:17, 74:11
**march**
8:3, 24:14
**marine**
2:20
**market**
27:6
**marshal**
2:21
**massachusetts**
43:4, 43:5, 47:15
**match**
3:16
**math**
13:22
**matters**
3:4, 88:22
**maybe**
35:6, 58:13, 59:3, 75:5
**mccostlin**
1:22, 97:2, 97:15
**mean**
18:3, 24:16, 34:19, 38:14, 41:18, 48:16, 54:1, 60:16, 65:14, 73:20, 89:20, 94:17, 94:18
**meaning**
37:14
**means**
3:14, 13:8
**meeting**
1:10, 2:3, 2:7, 2:14, 3:9, 4:12, 58:3, 87:17, 96:10, 96:12, 96:16
**member**
35:4, 66:1
**members**
35:3, 72:7
**mention**
43:4, 81:12
**mentioned**
22:20, 25:20, 60:2, 60:15, 73:13, 77:16, 80:19, 83:3
**merchants**
4:21, 79:6
**merits**
10:15
**merrill**
4:18, 8:15, 24:2, 29:21, 32:18, 32:20, 33:3, 33:16, 34:1, 34:4, 34:6, 35:14, 36:5, 36:7, 36:12, 78:22, 83:16, 86:5, 92:13, 92:17, 93:5, 95:11, 95:13, 95:16, 95:19
**met**
4:5
**might**
23:2, 23:7, 40:20, 54:11, 58:15, 62:17, 66:7
**million**
19:9, 20:14, 21:22, 41:6, 63:8, 74:10, 90:15, 92:14, 92:15, 92:16, 92:20, 94:8
**minority**
20:4
**minute**
25:7
**minutes**
24:13, 24:15, 24:16
**minutia**
65:1
**missed**
40:10
**missing**
81:11, 88:11
**monetary**
89:15, 90:5
**money**
18:22, 19:12, 20:1, 20:17, 21:2, 21:21, 23:15, 26:18, 27:13, 35:14, 69:3, 69:8, 91:1, 93:4, 95:5, 95:9, 95:19
**month**
20:21, 31:11, 46:15, 47:4, 53:13
**monthly**
18:15, 18:22, 21:3, 52:2, 52:14
**months**
10:2, 27:14, 32:3, 49:18, 83:1
**more**
5:15, 7:8,

13:19, 14:6, 17:3, 19:10, 21:11, 29:20, 33:14, 51:4, 57:22, 63:13, 66:21, 85:13, 94:1, 94:22, 95:1
**mortgage** 19:5, 84:21, 85:1
**mortgages** 85:1
**most** 9:9, 13:1, 83:19
**motions** 8:17
**move** 9:15, 22:2, 76:5
**moved** 35:14
**moving** 6:12
**much** 12:1, 16:12, 17:7, 18:21, 18:22, 21:13, 25:12, 27:13, 31:2, 38:9, 46:4, 46:10, 59:18, 59:19, 76:15, 79:17, 90:4, 96:17
**mute** 6:11
**muted** 88:17
**myself** 34:21, 87:3

**N**

**name** 2:11, 5:15, 6:2, 7:3, 15:11, 42:21, 52:20, 55:3, 78:8, 85:15
**named** 52:17, 55:22
**names** 55:15, 74:14, 74:16, 77:17, 77:19
**national** 4:16, 73:8
**necessarily** 85:14, 88:21
**necessary** 3:10, 59:14
**need** 3:1, 14:6, 16:12, 16:14, 20:16, 23:17, 29:22, 35:5, 38:4, 41:16, 59:21, 60:5, 65:1, 66:19, 67:3, 71:14, 73:1, 79:15, 81:19, 82:3, 83:5, 83:9, 83:15, 83:16, 83:18, 85:8, 85:18, 91:22, 92:6, 92:8
**needed** 34:21, 95:2
**needs** 16:21, 23:14, 87:14, 87:20
**negative** 41:9
**neither** 97:7
**net** 93:21, 94:20, 94:22
**never** 10:21, 11:5, 19:11
**new** 39:13, 73:17, 73:20, 73:22, 81:16
**next** 23:21, 39:20, 53:5, 57:18, 58:17, 58:18, 58:22, 59:2, 59:6, 59:8, 76:12, 76:14
**nobody** 88:15, 96:7
**noise** 6:10
**non-operating** 13:3
**none** 45:17, 82:21, 96:6
**normally** 61:2
**north** 21:22, 43:18
**northshore** 43:17
**note** 3:12, 6:9, 11:17, 56:18
**notes** 72:19
**nothing** 6:19, 28:19, 35:1, 39:2, 62:22
**notice** 31:20
**noticed** 80:8
**notifications** 32:1
**notified** 31:16
**number** 2:5, 3:14, 3:16, 3:17, 4:10, 4:13, 10:19, 12:15, 12:17, 12:19, 15:11, 20:2, 51:8, 54:4, 67:17, 88:2, 93:16, 93:17, 94:4, 94:21
**numbers** 14:6, 35:18

**O**

**oath** 6:22, 7:12
**obligation** 9:19, 69:9
**obligations** 27:22, 28:14, 28:18, 50:12, 52:1
**occurred** 74:2
**offer** 87:16, 96:11
**office** 2:8, 2:12, 4:11, 37:13, 37:14, 37:15, 37:16, 37:18, 38:4, 38:21, 65:8, 72:6, 72:11, 77:17
**official** 3:17
**often** 38:10
**oh** 25:14, 28:3, 28:7, 32:15, 43:1, 45:17, 45:22, 51:11, 52:7, 75:12, 76:4, 76:13, 85:16, 88:10, 92:22
**ohio** 1:2, 37:22, 42:19, 47:14, 48:20, 82:19
**old** 16:10
**on-site** 17:2
**once** 10:3, 20:22,

25:5, 50:4, 60:4, 65:1, 86:11
**one**
3:2, 5:15, 10:19, 10:22, 11:1, 11:17, 15:10, 16:1, 19:12, 20:1, 20:10, 21:11, 29:5, 32:17, 32:18, 33:7, 34:15, 34:16, 35:2, 35:14, 36:15, 36:16, 43:8, 43:14, 43:15, 44:5, 46:1, 46:2, 46:3, 48:8, 49:3, 53:13, 56:18, 61:20, 64:3, 65:4, 67:7, 70:7, 70:9, 70:11, 70:18, 72:10, 74:19, 74:20, 74:21, 75:22, 80:14, 80:18, 92:13, 92:14, 92:15, 92:19, 95:19
**one-and-a-half**
41:2
**ones**
13:12, 34:16, 85:18, 92:7
**only**
14:9, 24:7, 24:9, 30:6, 32:21, 41:18, 53:12, 54:17, 66:1, 66:10, 73:14, 85:3, 93:12, 94:5
**open**
29:8, 72:21, 82:5
**opened**
28:22, 29:3, 29:7, 30:7, 30:17, 95:15
**opening**
7:17, 7:20, 10:8
**operate**
44:1, 65:7, 66:16, 77:20
**operated**
12:18, 19:19, 44:2
**operating**
9:5, 12:13, 12:15, 12:22, 13:12, 13:17, 15:21, 17:2, 40:8, 52:2, 52:14, 52:16, 65:5, 67:10
**operation**
40:13, 82:17, 94:19
**operational**
67:20
**operations**
16:4, 70:2, 70:4, 70:5
**opinion**
8:19, 9:1
**opportunity**
3:6, 73:6
**order**
8:21, 10:3, 27:9, 35:15, 90:4, 90:15
**ordered**
50:8
**ordinary**
49:17, 49:21, 50:4, 50:8
**organization**
52:10
**organized**
14:17
**original**
22:7
**other**
2:15, 3:4, 4:6, 4:22, 11:1, 11:9, 19:6, 21:16, 23:1, 28:19, 29:20, 30:10, 32:7, 34:16, 41:20, 42:20, 45:9, 47:7, 47:14, 47:16, 49:15, 50:7, 54:7, 62:11, 62:21, 63:21, 65:16, 67:11, 67:19, 68:9, 68:11, 68:22, 73:17, 74:8, 75:1, 75:16, 95:19, 96:4
**otherwise**
67:18, 97:10
**out**
2:17, 3:1, 4:11, 9:8, 10:18, 11:8, 11:9, 20:19, 23:1, 23:15, 27:12, 30:11, 32:1, 38:21, 45:2, 46:5, 54:13, 65:8, 68:11, 70:11, 74:16, 81:3, 81:13, 84:5, 84:20, 86:15, 86:21, 87:21, 94:22
**outcome**
97:10
**outside**
49:17, 49:21, 50:4, 50:8
**outstanding**
30:9, 42:16, 81:15
**over**
8:18, 9:3, 10:2, 10:13, 32:2, 41:6, 60:18, 68:1, 81:10, 83:20, 86:3
**overarching**
15:4
**override**
21:18
**overview**
60:4
**owe**
30:4, 69:3
**owed**
53:6, 68:9
**own**
10:16, 15:10, 17:10, 23:4, 44:4, 44:16, 47:17, 60:10, 65:5, 66:15, 67:16, 68:2, 68:5, 70:19, 71:18, 71:20, 71:22, 72:15, 79:20
**owned**
14:21, 15:1, 43:8, 47:15
**owner**
43:5
**ownership**
13:8, 13:9, 13:19, 14:5, 51:4, 57:22, 63:16, 65:15
**owns**
9:3, 14:10, 14:19, 15:4, 20:7, 45:8, 45:10, 51:3, 60:11, 85:12

**P**

**p&l**
39:1
**page**
50:22
**pages**
1:21

**paid**
17:20, 18:1, 18:4, 18:12, 19:6, 20:17, 28:20, 30:12, 46:5, 54:18, 73:15, 90:22, 91:7, 92:3
**pair**
66:10
**pan**
77:8, 77:14
**paper**
12:20
**paperwork**
61:2, 75:11, 87:13
**paragraph**
94:15
**parent-subsidiary**
66:11, 66:12, 67:8
**parents**
64:1, 64:4, 64:5
**part**
10:17, 43:6, 59:13, 76:8
**particular**
15:8, 70:22
**particulars**
26:9
**parties**
9:5, 10:5, 11:8, 97:9
**partner**
8:7, 43:22, 44:2, 55:19, 70:14
**party**
14:7, 45:5, 45:6, 45:9, 54:21, 62:11
**past**
82:20
**patience**
87:7
**patricia**
75:2
**patrick**
4:20
**paul**
5:3
**pause**
84:1
**pay**
19:20, 26:4, 26:19, 26:21, 27:9, 35:11, 35:16, 46:17, 54:17, 70:1, 84:13, 84:15, 84:17, 84:22, 92:2, 92:3
**payable**
68:18
**payee**
30:12, 51:6
**paying**
20:18, 37:5, 41:18, 42:1, 45:10, 47:9, 52:2, 70:11, 73:18, 85:4, 94:9
**payment**
10:1, 94:10
**payments**
19:5, 28:2, 49:20, 50:6, 52:11
**penalty**
7:13
**pending**
8:17, 12:7, 35:13
**pension**
32:7
**people**
9:9, 38:3, 61:2
**percent**
9:17, 10:5, 13:8, 13:9, 13:18, 13:20, 14:10, 20:7, 26:4, 44:4, 51:4, 57:22, 60:19, 83:14, 85:13
**percentage**
47:1, 59:5
**performed**
91:2
**period**
10:2, 82:6, 82:8, 82:9, 82:10
**perjury**
7:13
**person**
4:3, 4:4, 17:11, 17:12
**personal**
20:19, 39:1, 47:17, 65:10, 73:14, 85:17, 94:10
**personally**
38:14, 38:18, 38:19, 44:17, 44:20, 45:16, 45:18, 47:11, 47:12, 57:8
**pet**
62:19, 63:18
**petition**
4:5, 22:2, 22:7, 22:10, 24:21, 28:1, 29:1, 31:8, 38:12, 50:4, 71:6, 82:6
**ph**
4:15, 4:16, 4:17, 4:18, 4:19, 4:20, 4:21, 5:3, 5:7
**phone**
9:9, 12:7, 84:4, 87:10, 88:13
**physical**
81:18
**physically**
22:3
**piece**
12:19
**pieces**
45:2, 51:2
**place**
48:7
**placed**
30:15, 60:9
**plan**
9:13, 9:16, 9:21, 21:1, 26:8, 26:10, 27:11, 27:14, 32:21, 42:7, 60:11, 61:22, 83:2
**plans**
32:7, 32:8
**please**
2:17, 3:8, 5:15, 6:14, 7:2, 28:11, 38:13, 74:4, 77:13, 87:10, 87:21
**plus**
13:15
**point**
72:12, 76:10, 80:18, 85:15
**policies**
51:2
**portion**
9:3, 60:10
**positive**
41:9, 41:10, 41:19, 42:2, 42:11
**post**
31:7
**post-petition**
27:21, 28:1, 28:14, 28:18, 50:11
**practices**
16:13
**pre-petition**
17:21, 29:7, 30:1, 30:9,

50:7, 56:11, 86:8
**precipitated** 33:3, 33:18
**preliminary** 72:20
**premiums** 28:2, 28:15
**prepare** 3:2
**prepared** 9:15, 32:2, 38:11, 39:11, 82:16
**preparing** 52:13, 52:15
**present** 3:19
**presented** 11:22
**pretty** 17:7, 25:14, 38:9, 85:17, 87:7
**prevents** 67:12
**previous** 72:6, 81:16
**previously** 6:7
**price** 5:12, 5:16, 79:22
**primary** 40:7, 40:12
**prior** 4:11, 18:20, 19:17, 21:12, 38:12, 58:2, 82:6
**prison** 8:9, 11:1, 55:20
**probably** 11:1, 13:20, 39:17, 41:2, 50:18, 63:12, 75:22, 93:22
**probate** 60:8
**problem** 68:12, 79:18, 86:13, 90:6
**procedure** 57:20
**proceed** 88:19
**proceeded** 8:13
**proceeding** 2:16, 4:7
**proceedings** 97:4, 97:5
**process** 21:6, 27:1, 35:17, 61:4
**professionals** 54:7
**progress** 51:6, 51:16
**projection** 82:17
**promised** 30:11
**proof** 3:13, 81:15, 81:16, 83:6, 83:8, 83:15
**properly** 22:16
**properties** 42:19, 45:19, 46:1, 47:7, 48:14, 48:16, 48:20, 82:3
**property** 43:4, 43:5, 44:16, 44:21, 45:2, 45:8, 45:10, 45:13, 46:6, 46:21, 47:10, 47:13, 47:15, 47:17, 49:17, 81:20, 84:13, 84:17
**protect** 8:21, 34:21
**prove** 61:21
**provide** 9:17, 35:19, 87:12
**provided** 3:13, 55:6, 91:10, 91:14, 91:17
**providing** 55:16
**pull** 84:4
**pulled** 84:5
**purposes** 14:14, 23:18, 23:19
**pursuant** 2:9
**put** 2:19, 12:19, 18:7, 27:3, 27:13, 55:21, 64:1, 64:4, 69:18, 70:18, 74:16, 83:22, 87:3, 95:5
**putting** 59:18

**Q**

**quarterly** 52:2, 84:16
**question** 3:7, 14:21, 15:13, 15:14, 23:21, 27:18, 28:11, 28:13, 39:21, 40:21, 44:13, 45:7, 47:7, 50:19, 53:5, 72:22, 74:3, 76:14
**questions** 3:6, 11:22, 72:20, 73:9, 78:14, 78:19, 78:20, 79:1, 79:2, 79:4, 79:5, 79:7, 79:8, 80:1, 80:3, 80:5, 80:18, 81:5, 88:8, 89:1, 96:5, 96:6, 96:7, 96:8
**quick** 8:19, 72:19
**quickly** 76:5, 80:14, 85:17

**R**

**raise** 6:14, 6:15
**raised** 9:14, 47:4
**range** 19:7, 61:15
**rather** 81:10
**rationale** 56:20
**ray** 38:18, 44:20
**raymond** 1:6, 2:4, 6:17, 7:5, 8:3, 74:21
**re-ask** 15:14, 44:13
**reach** 2:17, 3:1, 87:21
**reached** 4:11, 9:8
**read** 79:20, 94:2
**reading** 42:9
**reaffirm** 9:18
**real** 42:19, 42:20, 44:8, 44:15, 47:17, 48:16,

51:3, 72:19
**realize**
48:3
**really**
48:12, 64:19, 90:4
**realtor**
46:18, 46:20, 47:2
**reason**
12:14, 24:7, 24:9, 25:5, 94:5
**recall**
21:12, 61:14, 94:9
**receivable**
42:16, 68:19
**receive**
46:15
**received**
20:2, 20:6, 20:9, 29:15, 50:10, 74:12
**receivers**
8:18
**receiving**
64:13, 94:8
**reckers**
4:17
**recognize**
87:3
**recognized**
60:22
**reconciled**
72:12
**record**
2:16, 3:11, 4:13, 7:4, 73:2, 86:17, 96:16, 96:18, 97:4
**recorded**
2:15, 97:4
**recording**
2:17, 87:21, 97:6
**records**
76:18, 81:17
**recover**
91:19
**red**
43:15, 43:17, 43:19, 62:16, 62:18, 63:17
**reduced**
60:18
**referenced**
21:12, 79:11, 92:16, 94:12, 94:21
**referring**
61:6
**reflect**
33:10
**refrain**
12:1
**regarding**
9:9, 50:11, 52:1
**region**
2:11
**register**
82:9
**registers**
82:4
**regular**
20:21, 39:12, 40:2
**reiterate**
9:11
**related**
4:6, 23:22, 57:9, 61:5, 61:7, 82:2, 88:22, 89:2, 97:8
**relating**
57:21
**relationship**
11:19, 66:11, 67:8, 68:5
**relationships**
66:14, 67:9, 71:12
**remaining**
26:20
**remarks**
87:5
**remember**
77:19
**remind**
86:16
**remotely**
1:11
**rent**
46:15
**reorganize**
8:22
**repay**
69:10, 69:14
**repayment**
9:17, 10:5
**repeat**
28:9, 77:13, 87:18
**repeated**
54:1
**rephrase**
28:12
**report**
52:2, 53:11, 82:19
**reported**
21:13
**reporting**
50:12
**reports**
17:11, 52:14, 52:16
**represent**
3:8, 5:20, 90:10
**representing**
55:22
**request**
6:11, 11:21, 51:13, 79:10
**requested**
51:1, 80:21
**requesting**
85:14
**requests**
76:3, 81:13, 87:9
**require**
69:14
**required**
57:20
**requirements**
50:12, 50:15, 61:7
**residences**
84:18
**residuals**
64:14
**resolve**
10:3
**resorts**
62:19, 63:18
**response**
27:17
**responses**
11:22, 55:11, 67:4
**responsible**
18:19
**rest**
11:14, 39:18, 70:10
**restitution**
90:15
**retain**
54:9, 54:12, 54:17, 92:1
**retained**
56:4, 57:9
**retainer**
91:7, 92:3, 92:9
**retaining**
56:21
**retire**
36:16
**retirement**
32:7, 32:21, 33:16, 33:22, 34:9, 34:15, 36:16
**return**
20:13, 65:10, 65:12, 70:19, 84:15, 86:20, 93:21, 94:20
**returns**
21:12, 21:14,

21:15, 55:4, 77:5, 83:1, 83:13, 94:2
**revenue** 71:17
**review** 57:13, 81:19
**reviewing** 57:8, 59:19
**ricky** 56:2
**riders** 49:1
**right** 4:9, 5:5, 6:6, 6:13, 6:14, 6:16, 6:21, 11:16, 14:16, 16:16, 22:1, 23:11, 25:9, 25:19, 27:6, 27:20, 32:3, 32:10, 37:1, 38:1, 38:17, 39:16, 41:5, 42:4, 42:18, 46:8, 47:13, 50:2, 52:9, 53:17, 54:3, 58:10, 59:10, 59:22, 61:10, 62:13, 64:16, 70:16, 72:18, 77:7, 78:6, 80:9, 84:6, 85:19, 85:22, 87:2, 95:16
**risk** 87:3
**road** 20:22, 37:19
**rockland** 5:13, 5:14, 79:19
**room** 3:22
**roth** 33:22, 36:6, 36:8
**roughly** 12:13, 14:1, 41:5, 63:11
**rules** 51:9, 58:2
**ruling** 9:14
**run** 65:7, 68:20
**running** 16:19

S

**s-a-b-a** 6:3
**saba** 5:3, 5:5, 5:18, 5:19, 5:21, 5:22, 6:3, 29:17, 80:4, 80:5
**said** 5:9, 18:11, 23:11, 26:7, 31:11, 33:15, 35:22, 47:15, 49:12, 53:1, 56:15, 58:22, 64:18, 80:20, 86:19, 87:9, 96:8, 97:5
**salary** 17:16, 83:6
**same** 4:4, 33:2, 33:17, 36:12, 50:22
**sat** 35:9, 35:10
**sater** 76:19, 77:9, 77:14
**satisfied** 90:16
**saw** 56:19, 60:12
**say** 5:15, 11:19, 12:2, 13:7, 13:14, 17:1, 18:21, 21:13, 24:15, 28:13, 34:18, 44:15, 48:15, 61:6, 62:8, 63:10, 64:3, 65:18, 86:18
**saying** 14:1, 16:5, 36:12, 88:15, 88:16
**schedule** 20:10, 23:4, 46:8, 89:11
**schedules** 4:5, 12:10, 14:11, 22:10, 22:16, 24:22, 25:2, 25:6, 33:9, 35:17, 35:19, 46:14, 47:18, 47:21, 49:16, 82:22, 89:8
**second** 56:1, 74:15, 74:20, 81:6
**seconds** 53:5
**section** 2:9, 56:20
**secure** 26:18
**secured** 8:12
**securing** 9:22
**security** 3:14, 3:15, 3:17, 93:14, 93:18, 94:18
**see** 11:13, 36:10, 52:7, 75:17, 84:1, 94:11
**seem** 53:6, 84:12
**seen** 67:13, 69:18
**send** 32:1, 70:21, 70:22, 75:15, 78:10, 79:12, 87:10, 90:11
**sense** 12:3, 14:21, 39:22, 65:2
**sent** 29:18, 81:13, 82:11
**separate** 31:13, 34:10, 37:15, 55:2, 68:6, 70:18, 81:18, 85:6
**service** 2:21
**services** 55:16, 91:1
**serving** 8:8
**set** 20:15, 47:21
**settle** 24:19
**setup** 75:22, 84:11
**seven** 58:2
**several** 13:3, 34:11, 47:16, 60:2, 87:12
**share** 39:7, 87:14
**shared** 44:1
**sheet** 39:1
**sheets** 38:11, 39:10
**sherrer** 4:20, 79:7, 79:8, 79:16
**short** 20:20

**shortcomings**
21:19
**shortfalls**
21:17
**should**
6:4, 11:4, 50:18, 94:13, 94:14
**show**
21:17, 42:13, 46:15
**showing**
94:3
**shown**
23:2
**shows**
20:13, 93:17
**shuler**
4:15, 73:7, 73:10, 73:12, 74:5, 74:17, 75:5, 75:12, 75:14, 75:21, 76:4, 76:13, 76:16, 78:12, 78:17
**sides**
11:9
**signature**
83:4
**signature-p1kal**
97:13
**signed**
22:3, 22:7, 22:17
**since**
16:1, 18:2, 18:5, 18:12, 27:22, 29:1, 71:6, 89:11
**single**
14:5, 14:19, 67:13, 70:22
**sit**
12:16
**sitting**
3:21, 4:3
**six**
14:10, 16:9, 20:7, 27:14
**small**
60:10, 68:20, 68:21, 68:22
**snapshot**
42:10
**social**
3:14, 3:15, 3:17, 7:4, 93:14, 93:18, 94:18
**sofa**
23:10
**software**
39:15
**sold**
50:2
**some**
6:10, 7:17, 10:14, 11:8, 14:9, 15:16, 20:3, 21:17, 21:18, 22:20, 26:9, 26:21, 35:14, 46:18, 48:11, 51:15, 60:7, 62:11, 63:16, 64:2, 64:11, 65:7, 65:14, 66:13, 66:14, 76:10, 83:5, 83:7, 88:8, 93:22
**someone**
2:20, 44:8, 44:16, 45:9, 47:8, 47:9, 51:10, 52:10, 73:4
**something**
54:12, 59:14, 62:8, 91:22
**sometime**
58:18
**somewhat**
92:1
**somewhere**
13:14, 21:21, 31:4, 41:7, 46:7, 47:4
**sorry**
18:11, 24:8, 28:3, 28:5, 28:7, 40:10, 45:6, 60:14, 62:7, 66:19, 66:21, 73:19, 80:2, 80:12, 83:10, 85:4
**sort**
7:17, 14:18, 16:16, 23:5, 33:3, 38:7, 42:9, 64:14, 66:10, 82:1, 83:5, 83:8
**sosna**
55:22, 88:8, 89:9, 89:16, 90:6, 90:12, 90:14, 91:12, 91:19
**sound**
46:16
**source**
40:7, 40:13, 93:13
**sources**
19:22
**south**
43:18
**southern**
1:2
**speaker**
62:6
**speaking**
6:11, 69:22
**special**
49:1, 93:8
**specialized**
15:8
**specific**
12:14, 60:5, 61:15
**specifically**
12:1, 82:4
**spell**
6:1, 52:19
**spin**
21:3
**spoke**
10:21, 11:5
**spoken**
6:8, 9:9
**staff**
12:18, 72:7
**staffing**
70:5
**standalone**
15:12
**start**
10:12, 21:19, 55:17, 60:13, 60:22, 61:16, 73:7, 74:5
**started**
16:4, 16:9, 36:2, 60:9, 61:3, 61:4, 61:11, 61:18, 73:22
**starting**
67:22
**state**
7:2
**stated**
96:11
**statement**
3:7, 3:15, 3:16, 7:18, 7:20, 10:8, 27:17, 73:16, 87:18, 92:12, 93:12, 94:12, 94:15
**statements**
22:16, 38:11, 39:10, 77:2, 82:5, 82:16, 82:19, 83:16, 86:7
**states**
1:1, 2:8, 2:10, 2:13, 51:5

**station**
43:18
**stephanie**
4:17, 79:1
**still**
29:8, 30:21, 42:2, 51:16, 64:9, 64:11, 81:11, 81:14, 86:17
**stocks**
64:12
**stockyard**
29:16
**stockyards**
5:4, 5:22, 80:3
**storage**
62:18, 66:1, 67:17
**strauss**
56:3
**streamline**
75:6
**structure**
27:11, 65:3, 65:6
**structures**
17:10
**stuff**
23:13, 27:22, 49:4, 86:14
**sub**
15:5
**subject**
7:12, 9:13
**submits**
72:11
**subsequent**
73:5
**subsidiary**
14:19, 64:18
**substantial**
8:16, 71:11
**success**
91:11
**successful**
10:15, 67:21
**sued**
55:20
**suggesting**
93:7
**summaries**
14:4, 93:19
**super**
60:5
**suppliers**
70:20, 71:6, 71:12, 71:13
**supporting**
97:7
**sure**
15:15, 19:16, 25:14, 32:4, 34:8, 36:3, 44:14, 50:21, 54:14, 57:17, 59:16, 59:20, 71:8, 73:1, 75:21, 75:22, 81:11, 81:21, 84:10, 86:20, 87:15, 89:1, 89:17, 95:3
**surety**
8:10
**surprise**
59:17
**sustain**
68:7
**sworn**
6:18, 7:16

**T**

**table**
3:22, 4:4
**take**
11:10, 17:16, 51:10, 51:12, 80:15
**taken**
84:20
**takeover**
7:9
**takes**
61:19, 67:22, 76:21
**taking**
20:1, 20:20, 21:5, 92:11, 93:21
**talk**
2:20, 27:21, 29:22, 55:13, 57:17, 60:1, 85:7
**talked**
32:4, 64:17, 83:17
**talking**
2:22, 23:3, 23:4, 23:6, 23:10, 29:16
**tax**
8:16, 20:12, 21:12, 21:14, 21:15, 23:17, 49:12, 55:3, 60:17, 60:19, 61:7, 63:3, 65:10, 65:12, 70:19, 77:4, 82:19, 82:22, 83:13, 84:10, 84:13, 84:15, 93:21, 94:2, 94:20
**taxes**
28:2, 28:15, 84:13, 84:16, 84:18
**tell**
10:18, 12:17, 55:15, 63:7, 66:21
**telling**
11:5, 90:20
**ten**
14:9
**tenant**
45:21, 45:22
**term**
20:20, 95:6
**terminology**
93:7, 93:10
**terms**
20:17, 84:10
**terrific**
76:4, 76:13
**testified**
6:20, 15:20, 61:14, 94:7
**testify**
6:18
**texas**
88:1
**th**
53:8, 53:12
**thank**
7:9, 7:20, 10:6, 73:10, 74:17, 75:4, 76:5, 76:15, 77:10, 77:15, 78:12, 78:15, 78:16, 78:17, 79:8, 80:5, 80:17, 96:1, 96:3, 96:17
**thanks**
79:16
**themselves**
4:14, 17:10
**thing**
10:19, 21:1, 35:5, 56:18, 61:20, 67:20, 80:14
**things**
19:18, 19:21, 23:4, 23:5, 36:13, 51:15, 76:5, 81:10, 81:14, 89:2
**think**
16:12, 23:11, 25:20, 26:11, 31:18, 33:12, 47:5, 50:17, 52:22, 56:14, 57:2, 59:9, 61:13, 66:6, 66:7, 66:13, 72:14, 72:19, 75:10, 75:19,

76:21, 84:8, 87:17, 91:13, 92:7, 92:19, 94:13, 95:1, 95:4, 96:10
**thinking**
34:8
**third**
43:16, 45:5, 45:6, 45:9, 54:21, 56:6, 56:7, 96:14
**third-party**
54:20
**thomas**
4:20, 79:7
**thought**
27:1, 29:19, 62:8, 88:7, 88:14
**three**
21:14, 35:12, 38:3, 41:1, 41:3, 41:6, 43:13, 45:1, 45:19, 51:2, 54:6, 54:8, 55:6, 55:14, 57:3, 62:3, 62:14, 72:7, 77:16, 83:1, 85:22
**three-month**
82:6, 82:10
**through**
11:13, 21:6, 21:20, 26:12, 35:5, 54:18, 60:8, 65:9, 70:3, 85:1
**throughout**
35:16
**time**
2:6, 3:10, 5:15, 8:8, 10:2, 10:22, 21:5, 25:3, 41:20, 42:5, 42:8, 60:13, 60:22, 67:22, 87:16, 96:14
**times**
60:2
**timing**
63:13
**title**
62:17
**titled**
15:16
**titles**
15:8
**today**
9:6, 12:16, 14:14, 28:6, 29:17, 35:2, 42:11, 63:11, 70:14
**today's**
2:5
**together**
57:3, 59:18, 64:1, 64:4, 76:11, 83:20
**told**
75:9
**tom**
79:12
**ton**
75:10
**took**
18:17, 60:22, 83:7, 94:20
**top**
78:9
**total**
13:6, 13:12, 13:13, 16:3, 40:22
**totally**
19:2, 25:4, 67:1, 67:2, 90:19
**tough**
27:7, 42:5
**towards**
26:17, 51:17
**transcribed**
1:22, 97:5
**transcriber**
97:1
**transcript**
97:3
**transfer**
63:14, 95:9
**transferred**
49:17, 50:3, 63:16
**transferring**
95:19
**transfers**
49:16, 75:8
**treat**
27:4
**trial**
2:12, 9:15, 11:20, 14:4, 15:20, 60:3
**tried**
24:18, 84:4
**trouble**
28:6, 28:8, 28:11
**troy**
56:3
**true**
19:21, 97:3
**trust**
5:13, 5:14, 60:2, 60:6, 60:10, 60:12, 61:16, 61:22, 62:2, 63:2, 63:15, 63:22, 64:2, 64:4, 64:9, 64:14, 74:11, 74:22, 75:3, 75:8, 76:18, 77:1, 77:4, 79:10, 79:20, 83:18
**trustee**
2:9, 2:10, 2:13, 51:5, 52:3, 75:16, 76:21, 77:7, 77:8, 77:10
**trustee's**
50:11
**trusts**
63:21, 74:12, 74:14, 75:7, 77:11
**truth**
6:19, 6:20
**try**
11:21, 12:1, 21:10, 25:21, 33:11, 59:1
**trying**
14:13, 17:8, 23:14, 36:1, 50:17, 51:12, 54:12
**tuesday**
1:12
**twice**
54:1, 96:13
**two**
9:14, 10:13, 10:22, 14:10, 20:2, 34:15, 41:3, 74:13, 77:22, 82:16, 82:20, 83:12, 92:7, 93:13
**two-day**
11:20
**types**
48:6, 48:10
**typically**
37:10, 39:15, 39:21
**typo**
57:1, 57:2

**U**

**unaware**
89:19
**under**
6:22, 57:19, 58:1, 61:7, 82:18

**understand**
6:22, 7:11, 11:18, 14:15, 16:21, 17:15, 25:4, 46:19, 50:18, 51:7, 52:1, 54:4, 57:22, 73:19, 88:19, 89:4
**understanding**
11:4, 28:6, 28:11, 29:17, 30:1, 33:19, 36:2, 36:6, 36:7
**unfortunately**
51:8
**unidentified**
62:6
**union**
4:17, 5:8, 78:19
**united**
1:1, 2:8, 2:10, 2:13, 51:5
**unknown**
89:9, 90:8
**unpaid**
28:17
**unsecured**
9:6
**until**
53:5
**uploading**
86:22
**usdoj**
2:18, 88:2
**use**
23:18, 39:7, 45:10, 47:8, 47:9, 95:6
**using**
93:6
**ust**
80:21, 81:21, 85:15
**usually**
84:22

V

**valuation**
63:6
**valuations**
63:8
**value**
63:2, 63:3, 63:4, 89:8, 89:12
**valued**
90:7
**vara**
2:11
**varies**
19:2
**variety**
17:13
**various**
16:17, 40:14, 64:17, 67:15, 68:15, 71:6
**vehicle**
49:8
**vehicles**
49:9
**veils**
67:14
**verified**
22:17
**vis-à-vis**
16:17
**void**
30:3
**voided**
83:2
**vorys**
76:19, 77:8, 77:14

W

**waiting**
81:8
**want**
7:7, 7:8, 11:7, 33:10, 33:11, 33:13, 34:7, 37:4, 37:6, 50:21, 60:8, 65:2, 76:10, 80:13, 81:9, 81:12, 86:14, 86:19
**wants**
75:17, 96:12
**warning**
2:19
**way**
11:2, 15:16, 19:18, 20:15, 21:11, 44:4, 47:7, 74:6
**wayne**
56:2, 56:22
**we'll**
12:2, 29:22
**we're**
10:14, 23:9, 26:11, 26:20, 26:21, 27:3, 27:4, 27:8, 36:12, 39:14, 39:16, 42:12, 50:22, 51:17, 53:9, 54:12, 54:16, 59:1, 59:11, 59:15, 59:18, 78:18, 78:21, 81:5, 81:8, 81:11, 82:3, 83:5, 83:9, 83:15, 94:3
**we've**
7:16, 8:1
**week**
20:6, 30:7, 58:17, 58:18, 58:22, 59:2, 59:6, 59:8, 76:12
**weird**
88:18
**went**
4:13
**weren't**
19:18, 25:6, 34:2
**western**
1:3
**whatever**
35:5, 71:15
**whenever**
87:4
**whether**
38:13, 54:16, 95:2
**whoever**
30:12, 87:14
**whole**
6:19, 39:22
**widely**
90:7
**wife**
62:3, 62:14
**willing**
55:11, 75:15
**within**
17:9, 49:18, 49:21
**without**
24:21
**word**
25:7
**words**
30:10, 45:9, 67:11
**work**
21:2, 21:6, 37:15, 37:16, 37:18, 42:7, 51:6, 51:15, 86:9, 87:8, 92:6
**worked**
10:22
**working**
9:22, 11:14, 26:11, 26:17, 51:17, 57:3, 58:9, 59:11
**works**
54:14
**world**
41:4
**worth**
63:8, 63:11, 63:12
**wouldn't**
19:3, 41:17

**write**
51:9
**written**
30:3
**wrong**
92:7

Y

**yeah**
7:19, 14:2, 18:4, 23:13, 28:10, 35:10, 53:9, 62:10, 75:9, 76:1, 76:7, 78:7, 79:12, 79:18, 79:22, 80:16, 82:13, 83:11, 83:19, 85:2, 85:5, 85:9, 86:4, 86:13, 93:9, 93:22, 95:1, 95:17, 95:21
**year**
19:4, 19:21, 26:22, 39:18, 39:19, 40:1, 40:2, 41:3, 67:21, 68:20, 94:8
**year-to-date**
82:18
**years**
10:13, 16:10, 41:1, 41:3, 41:6, 55:7, 64:1, 64:2, 68:7, 82:16, 82:20, 83:13, 93:13
**yourself**
3:8, 44:9, 57:14, 73:2

$

**$1,760**
46:15
**$1.5**
92:15, 92:20
**$1.7**
20:14
**$100,000**
31:5
**$137,000**
92:15, 92:17
**$2.7**
92:14
**$20,000**
92:3
**$200**
47:4
**$21**
63:8, 74:10
**$21.3**
92:16
**$25,000**
20:21, 21:5, 31:11, 94:10
**$3,944.30**
20:9
**$315,000**
20:13
**$68**
90:14

1

**1**
1:13, 2:6, 24:14
**100**
9:17, 10:5, 26:4
**10337**
1:6, 2:5
**10988**
37:19
**11**
2:4, 8:2, 8:5, 8:13, 8:20, 9:2, 9:12, 9:13, 9:16, 39:21, 82:18
**1170**
7:6
**12**
49:18
**121**
3:18
**1700**
47:2
**1968**
16:1, 16:4
**1:-bk**
1:6

2

**2.7**
92:21, 92:22, 93:1
**20**
2:5, 13:8, 13:9, 13:18, 14:1, 44:4, 51:4, 53:12, 57:22, 64:1, 64:2, 83:14, 85:13
**2015.3**
57:20
**2018**
60:9, 61:3, 61:18
**2019**
60:1, 60:6, 74:22
**2020**
75:2
**2021**
20:12
**2022**
93:19
**2023**
1:12, 2:5, 8:4, 97:16
**2025**
60:20, 61:7
**23**
1:6, 2:5
**25**
9:4, 12:13, 12:22, 14:1, 18:7, 18:17, 60:11, 60:15, 61:6
**25,000**
18:12
**28**
97:16
**2nd**
8:3, 24:14

3

**30**
9:4, 12:13, 12:22, 24:14, 39:13, 39:16, 39:17, 53:8
**33**
1:13, 2:6
**341**
1:10, 2:9, 4:12, 9:5, 58:2, 87:17, 96:10, 96:12

4

**4.5**
41:5
**40**
68:7
**401**
32:7
**426**
57:19, 58:1, 83:18
**45**
24:15, 24:16, 39:13, 39:16
**489645**
1:20
**4th**
1:12, 2:5, 61:18, 61:21

5

**50**
13:15

6

**60**
10:2
**65**
60:18

**7**

**70**
9:3

**8**

**80**
13:20

**9**

**90**
49:21, 82:17, 86:8

**97**
1:21