# "EXHIBIT KK"

SUBJECT TO COURT APPROVAL

# SETTLEMENT AGREEMENT

This *Settlement Agreement* (the "Agreement") is entered into as of the last date set forth on the signature pages below (the "Effective Date") by the following (the "Parties"):

- **Raymond J. Schneider**, as debtor and debtor in possession (the "Debtor" or "Mr. Schneider")
  10988 Deerfield Road
  Blue Ash, OH 45242

- **Patricia B. Schneider**, solely in her capacity as Trustee (the "Trustee") of the Raymond Schneider 2019 Gift Trust (the "Trust")
  3515 Tiffany Ridge Lane
  Blue Ash, OH 45241

- **To Life, Ltd.**, an Ohio limited liability company ("To Life"), which joins in this Agreement, by and through the Trust, solely for the limited purposes set forth below

## RECITALS

A. The Debtor is the debtor and debtor in possession in a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Case No. 25-12607 (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Southern District of Ohio, Western Division (the "Bankruptcy Court"), before the Honorable Beth A. Buchanan. The Debtor commenced the Bankruptcy Case by voluntary petition filed on October 17, 2025.

B. The Huntington National Bank ("Huntington") is the Debtor's largest creditor. Huntington's claim arises out of the Debtor's guaranty of certain commercial loans and a related judgment entered against the Debtor in the Court of Common Pleas, Hamilton County, Ohio, which judgment was reinstated by the Supreme Court of Ohio on August 20, 2025.

C. In or about September 2025, Huntington commenced an action in the Court of Common Pleas, Hamilton County, Ohio, against the Debtor and certain members of his family, including the Trustee, seeking to avoid or set aside, as fraudulent transfers or otherwise, certain pre-petition transfers of assets by the Debtor, including transfers to the Trust. That action was removed to the Bankruptcy Court and is pending as Adversary Proceeding No. 1:26-ap-01003 (the "Adversary Proceeding").

D. The Trust is an irrevocable trust established under that certain Irrevocable Trust Agreement dated December 20, 2019, by and between the Debtor, as settlor, and Patricia B. Schneider, as trustee.

E. To Life owns and operates a residential apartment community known as "The Red Apartments," located at 5110 Herringbone Drive, Cincinnati, Ohio 45227 (the "To Life

Property"). The To Life Property is encumbered by a first-priority mortgage in favor of Transamerica Life Insurance Company (the "Transamerica Loan"). The Debtor and To Life are pursuing a refinancing of the Transamerica Loan through a loan insured by the U.S. Department of Housing and Urban Development ("HUD") (the "HUD Refinancing").

F. As part of an estate plan implemented in 2019 with the assistance of estate-planning counsel, To Life was recapitalized into Class A voting units and Class B non-voting units, and on or about December 31, 2019 the Debtor transferred his 720 Class B units to the Trust. Following that transfer, the Debtor continues to own eighty (80) Class A voting units of To Life, constituting approximately 8.42% of the total outstanding membership interests, and approximately 84.21% of the voting interests, of To Life (the "To Life Interest").

G. Huntington has asserted, among other things, that the transfer of the Class B units to the Trust is avoidable as a fraudulent transfer, including under section 548(e) of the Bankruptcy Code. The Debtor and the Trust dispute those claims. The Debtor contends, among other things, that (i) section 548(e) does not apply because, although the Trust is self-settled, the Debtor is not a beneficiary of the Trust, which is a required element of a claim under section 548(e); (ii) the transfers were made for legitimate estate-planning purposes, at a time when the Debtor was solvent, and without any intent to hinder, delay, or defraud any creditor; and (iii) any other avoidance claims are barred by applicable statutes of limitations. Huntington has also moved for authority to prosecute avoidance and other actions derivatively on behalf of the bankruptcy estate, which the Debtor has opposed.

H. The Debtor has retained Rebekah Smith of GBQ Consulting LLC ("GBQ") as a valuation expert. Using an adjusted net asset method, GBQ anticipates issuing a valuation report showing that the To Life Interest is valued at $2,164,000 (the "Smith Valuation").

I. On September 1, 2024, the Debtor sold his 100% membership interest in The Blue Development Company, LLC (f/k/a 9617 Kenwood Road Development, LLC) ("Blue Development") to the Trust pursuant to a Membership Interest Purchase Agreement (the "Blue Purchase Agreement"), in exchange for a promissory note in the original principal amount of $1,485,000, bearing interest at five percent (5%) per annum, with all unpaid principal and accrued interest due on September 1, 2026 (the "Blue Note"). After acquiring Blue Development, the Trust transferred the membership interest in Blue Development to one or more subsidiaries or affiliated entities, including The Blue Operating Company, LLC. The bankruptcy estate may hold a claim that the Blue transaction was for less than reasonably equivalent value and is avoidable as a fraudulent transfer.

J. The Parties desire, subject to and upon the terms set forth in this Agreement, to (i) fully and finally resolve and release all claims of the Debtor and the bankruptcy estate against the Trust, including the claims asserted or that could be asserted against the Trust in the Adversary Proceeding, all claims under section 548(e), and any claim arising out of the Blue transaction; (ii) establish the framework under which the Trust will purchase the To Life Interest from the Debtor's estate; and (iii) provide for the disposition of the Blue Note

and the Blue transaction. The Parties enter into this Agreement to avoid the cost, delay, risk, and uncertainty of litigation, and nothing in this Agreement is or will be construed as an admission of liability or of the validity of any claim or defense.

## TERMS OF AGREEMENT

In consideration of the promises contained in this Agreement and for other valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

**1. Court Approval.**

a. **Generally, Approval Process.** The settlement and releases set forth in the Settlement of Litigation section below, and the covenants set forth in The Blue section below, are contingent upon the approval of the Bankruptcy Court in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Court Approval"). The purchase of the To Life Interest is not part of the Rule 9019 compromise process and must be approved by the Court separately as set forth below. Court Approval occurs when the entry of an order approving the proposed compromise and this Agreement becomes a final non-appealable order. That order may only be entered after notice of the proposed compromise and a chance to object is given to all interested parties, which objections may be heard by the Court at a hearing. The Debtor will work in a commercially reasonable manner to obtain Court Approval. The Debtor cannot represent how long the approval process will take, and delays caused by or related to obtaining Court Approval will not be grounds for default under this Agreement and will not nullify this Agreement. This Agreement is not binding on the Debtor or the bankruptcy estate until Court Approval is obtained. Notwithstanding the foregoing, upon execution of this Agreement, the Agreement is binding on the Trust (and, for the limited purposes set forth herein, To Life) in consideration of the Debtor taking the actions necessary to obtain Court Approval.

b. **Approval of the To Life Purchase.** The purchase of the To Life Interest described in the To Life Membership Interest Purchase section below will be implemented as a sale of estate property under section 363 of the Bankruptcy Code and will be documented in separate definitive transactional documents as described below. The To Life purchase is independent of, and severable from, the balance of this Agreement. Approval of the sale of the To Life Interest will be deemed to occur when an order approving the section 363 sale becomes a final non-appealable order (the "Sale Approval"). If the Bankruptcy Court does not approve the sale of the To Life Interest, or if the definitive documents contemplated below are not executed, such non-approval or non-execution will not affect the validity or enforceability of the Settlement of Litigation section or The Blue section, which will remain in full force and effect. Conversely, the effectiveness of the settlement of litigation is not conditioned upon the closing of the To Life purchase.

c. **Effect of Denial - Settlement.** In the event the Bankruptcy Court does not grant

Court Approval, upon the entry of a final, non-appealable order denying the approval of this Agreement, the settlement and releases and The Blue covenants will immediately terminate and will be considered a nullity. Within a reasonable time thereafter, any funds paid under those provisions to the Debtor or the bankruptcy estate will be returned to the Trust, and the Parties will be released from all obligations and liabilities under those provisions, subject to the Tolling and Reinstatement provision below.

d. **Tolling of Deadlines.** While any motion seeking Court Approval remains pending without the entry of a final non-appealable order, the Debtor and the Trust agree that, as between them only and not for the benefit of any third party: (1) all dates and deadlines in the Adversary Proceeding applicable to the Trust will be tolled or held in abeyance, that they will take no further actions against one another within the Adversary Proceeding, and that if the motion is denied, any deadline that expired while it was pending will be extended by a minimum of 30 days; and (2) if the limitations period under 11 U.S.C. § 546(a) would expire prior to Court Approval, those limitation periods will be extended to 30 days after the entry of a final non-appealable order regarding the settlement. For the avoidance of doubt, the Trust does not agree to extend any limitations period for Huntington or a court-appointed Trustee in the event that derivative standing is granted, the case is converted, or the Debtor is removed as debtor in possession.

e. **Effect of Denial - Sale.** In the event the Bankruptcy Court does not grant Sale Approval, upon the entry of a final, non-appealable order denying the approval of the sale of the To Life Interest, the provisions related to the sale of the To Life Interest under this Agreement will immediately terminate and will be considered a nullity. Within a reasonable time thereafter, any funds paid under those provisions to the Debtor or the bankruptcy estate will be returned to the Trust, and the Parties will be released from all obligations and liabilities under those provisions, subject to the Tolling and Reinstatement provision below.

**2.** **To Life Membership Interest Purchase.** This section sets forth the framework under which the Trust will purchase the To Life Interest from the Debtor's estate. The purchase will be documented and consummated as set forth below and is independent of, and severable from, the settlement of claims set forth in the Settlement of Litigation section below.

a. **Purchase and Sale.** Subject to Bankruptcy Court approval under section 363 and the execution of the definitive documents described below, the Trust will purchase from the Debtor's estate, and the bankruptcy estate will sell to the Trust, the To Life Interest, free and clear of liens, claims, and encumbrances to the extent provided by the approving order.

b. **Purchase Price.** The purchase price for the To Life Interest will be $2,164,000, the amount of the Smith Valuation (the "To Life Purchase Price"). If the Bankruptcy Court determines that the To Life Interest has a value greater than the Smith

Valuation, the To Life Purchase Price will be the value determined by the Bankruptcy Court; provided, however, that if the Bankruptcy Court determines the value of the To Life Interest to be greater than 110% of the Smith Valuation (that is, greater than $2,380,400), the Trust may elect, in its sole discretion, not to proceed with the purchase, in which event the To Life purchase will be of no further force or effect and the balance of this Agreement will remain in full force and effect.

c. **To Life Purchase Note.** The To Life Purchase Price will be paid by delivery of a promissory note from the Trust to the Debtor's estate (the "To Life Purchase Note"). The To Life Purchase Note will bear interest at the prime rate (as published from time to time in *The Wall Street Journal*), will require monthly payments of interest only, and will provide that the entire unpaid principal balance, together with all accrued and unpaid interest, is due and payable in full upon the closing of the HUD Refinancing.

d. **Transfer of the To Life Interest; Reversion.** Upon issuance of the To Life Purchase Note, the Debtor will transfer the To Life Interest to the Trust; provided that such transfer will be subject to, and defeasible upon, an automatic reversion of the To Life Interest to the Debtor's estate in the event of non-payment or other default under the To Life Purchase Note, or upon a failure of the transaction as described below. The definitive documents will provide appropriate mechanisms (which may include a pledge, an escrow of transfer instruments, or a reversionary conveyance) to secure and effectuate the reversion.

e. **Failure of the To Life Transaction.** If (a) the To Life Purchase Note is not paid in full upon the closing of the HUD Refinancing, (b) the HUD Refinancing does not close, or (c) one (1) year elapses following the closing of the purchase of the To Life Interest without payment in full of the To Life Purchase Note, then, in any such event, the sale of the To Life Interest will be null and void, and:

   i. the To Life Interest will revert and be transferred back to the Debtor's estate;

   ii. the To Life Purchase Note will be cancelled, and the Debtor's estate will retain all interest payments theretofore received under the To Life Purchase Note; and

   iii. the Trust will pay to the Debtor's estate the reasonable costs of the failed transaction, including reasonable attorneys' fees and other reasonable transaction costs incurred by the Debtor and the bankruptcy estate (for example, related to litigation over the sale approval process). To Life joins in this Agreement, by and through the Trust, for the limited purpose of acknowledging and giving effect to the reversion of the To Life Interest and the obligations under this provision.

f. **Definitive Documents; Section 363 Approval.** The purchase of the To Life Interest will be documented in definitive transactional documents, including a

membership interest purchase agreement, the To Life Purchase Note, and appropriate transfer and reversion instruments (collectively, the "To Life Transaction Documents"), which the Parties will negotiate in good faith and execute, and which will be submitted to the Bankruptcy Court for approval under section 363. The To Life Transaction Documents are not attached to, and need not be attached to, this Agreement. This section sets forth the Parties' agreement as to the material terms of the To Life purchase and constitutes a binding framework to negotiate, document, and seek approval of the transaction in good faith; consummation of the purchase is subject to Bankruptcy Court approval and execution of the To Life Transaction Documents.

3. **Settlement of Litigation; Payment; Release.** The Debtor and the Trust settle the claims between the bankruptcy estate and the Trust on the following terms:

a. **Payment of Settlement Amount.** In addition to, and separate from, the purchase of the To Life Interest described above, the Trust will pay to the Debtor's estate the sum of One Million Five Hundred Thousand Dollars and No Cents ($1,500,000.00) (the "Settlement Amount"). The Settlement Amount will be paid within thirty (30) days after Court Approval (that being when an order approving the settlement becomes a final order that is no longer subject to appeal, rehearing, reconsideration, or certiorari).

b. **Manner of Payment.** The Settlement Amount will be paid in immediately available funds by wire transfer pursuant to instructions provided by the Debtor, or by certified or cashier's check payable to "Raymond J. Schneider, Debtor in Possession," referencing the Bankruptcy Case number (25-12607).

c. **Release by the Debtor and the Bankruptcy Estate.** Effective upon the bankruptcy estate's receipt of the Settlement Amount, the Debtor, on behalf of himself and the bankruptcy estate, forever releases and discharges the Trust and Patricia B. Schneider, solely in her capacity as Trustee of the Trust (collectively, the "Released Trust Parties"), from any and all Claims (as defined below) that the Debtor or the bankruptcy estate has or may have against the Released Trust Parties, including (i) all claims asserted or that could have been asserted against the Trust in the Adversary Proceeding; (ii) all claims under section 548(e) of the Bankruptcy Code and any other avoidance claim under chapter 5 of the Bankruptcy Code or applicable state law (including the Ohio Uniform Fraudulent Transfer Act); and (iii) any claim arising out of or relating to the Blue transaction, including any claim that the Blue transaction is avoidable as a fraudulent transfer (collectively, the "Released Claims").

d. **Release by the Trust.** Effective upon the bankruptcy estate's receipt of the Settlement Amount, the Trust forever releases and discharges the Debtor and the bankruptcy estate from any and all Claims that the Trust has or may have against the Debtor or the bankruptcy estate relating to the subject matter of the Released Claims; provided that this release does not affect (i) the Parties' respective rights

and obligations under this Agreement; (ii) the Trust's obligations under the Blue Note, as addressed in The Blue section below; or (iii) the rights and obligations under the To Life Transaction Documents.

e. **Definition of Claim.** For purposes of this Agreement, the term "Claim" means any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, whether existing now or to come into existence in the future, including all claims made or that could have been made against the Trust in the Adversary Proceeding, whether such Claims arise at law or in equity, by right of action or otherwise.

f. **Reservation of Claims.** The releases set forth in this section are limited to the Released Trust Parties. The Debtor and the bankruptcy estate expressly reserve, and do not release, any and all claims against any other person or entity, including Patricia B. Schneider in her individual capacity, Eric P. Schneider, Justin F. Schneider, Danielle R. Senzer, the Patricia B. Schneider 2020 Gift Trust, any other defendant in the Adversary Proceeding, and any non-Trust transferee.

g. **Tolling and Reinstatement.** The Trust agrees that if Court Approval is denied, if the order granting Court Approval is reversed or vacated on appeal, or if the Settlement Amount is not paid when due (each, a "Reinstatement Event"), the Released Claims will be reinstated as though this Agreement had not been executed. To prevent the Released Claims from expiring while the Parties await Court Approval, the Trust agrees that the running of any applicable statute of limitations or other time-based defense with respect to the Released Claims is tolled and suspended from the Effective Date, and that the Debtor and the bankruptcy estate (and any successor to the bankruptcy estate's claims under a confirmed chapter 11 plan, including any litigation trustee or plan representative) will have not less than 30 days after the date of a Reinstatement Event within which to commence any proceeding on the Released Claims, notwithstanding any statute of limitations that would otherwise have expired during such period. The Trust waives, and will not assert, any statute of limitations, laches, or similar time-based defense to the extent inconsistent with this provision. This provision survives termination of this Agreement.

h. **Dismissal.** Upon the bankruptcy estate's receipt of the Settlement Amount, the Debtor and the Trust will file appropriate papers dismissing the Adversary Proceeding, with prejudice, solely as between the bankruptcy estate and the Trust, with each such party to bear its own costs and fees. Such dismissal will not affect the claims reserved above.

**4.** **The Blue.** As additional consideration for the settlement and releases set forth above, the Trust agrees to the following with respect to the Blue Note and the Blue transaction:

a. **Unwind Upon Non-Payment.** If the Trust fails to pay the Blue Note in full on or before its maturity date of September 1, 2026, then the sale of Blue Development to the Trust under the Blue Purchase Agreement will be unwound, the Blue Note will be cancelled, and the membership interest in Blue Development will be transferred back to the Debtor's estate, all as provided in this section.

b. **Reconveyance Through Subsidiaries.** The Parties acknowledge that, following its acquisition of Blue Development, the Trust transferred the membership interest in Blue Development to one or more subsidiaries or affiliated entities, including The Blue Operating Company, LLC. Upon an unwind, the Trust will convey, and will cause each subsidiary or affiliated entity (including The Blue Operating Company, LLC and any other entity holding all or any part of the membership interest in Blue Development or its assets) to convey, to the Debtor's estate all right, title, and interest in and to the membership interest in Blue Development (or, to the extent the assets of Blue Development have been transferred, such assets), free and clear of all liens, claims, and encumbrances created by, through, or under the Trust or any such subsidiary or affiliated entity. The Trust further covenants that, pending payment of the Blue Note, it will not, and will not permit any subsidiary or affiliated entity to, further transfer, pledge, or encumber the membership interest in Blue Development or the assets of Blue Development, other than encumbrances existing as of the Effective Date.

c. **Effect of Unwind.** Upon an unwind, (i) the Blue Note will be deemed cancelled and of no further force or effect; (ii) the Debtor's estate will retain all interest and other payments theretofore received under the Blue Note; and (iii) neither the bankruptcy estate nor the Trust will have any further obligation to the other in respect of the Blue transaction, except for the conveyance and further-assurances obligations set forth in this section.

d. **Further Assurances.** The Trust will, and will cause its subsidiaries and affiliated entities to, execute and deliver such assignments, resolutions, and other instruments, and take such further actions, as are reasonably necessary to effectuate the unwind and reconveyance contemplated by this section.

5. **Representations and Warranties.** Each of the Parties represents and warrants that, subject to Bankruptcy Court approval as provided herein, it is duly authorized to enter into this Agreement as set forth by the signature of each Party below. Each Party is acting under its own accord, has reviewed the terms of this Agreement, and is entering into this Agreement with full knowledge of its provisions and the effect thereof. The Trustee represents that she is authorized to act on behalf of the Trust and, for the limited purposes set forth herein, on behalf of To Life.

6. **Breach of Agreement.** The Parties expressly reserve their right to enforce a breach of this Agreement. Nothing in this Agreement will be construed as prohibiting the non-breaching party from pursuing any remedies available for such breach, including the recovery of

damages and the costs incurred by the non-breaching party to enforce the terms of this Agreement, including its reasonable attorneys' fees. In the event of a breach of the payment obligations under this Agreement by the Trust, and in the absence of a cure of the breach within five business days of written demand, the Debtor, at his election, may either terminate the affected provisions of this Agreement and proceed with any and all claims the bankruptcy estate may have against the Trust (subject to the Tolling and Reinstatement provision above), or seek to enforce this Agreement by specific performance.

**7. Miscellaneous Provisions.**

a. **No Admission.** Nothing contained in this Agreement will be construed as an admission of any liability by any Party to this Agreement of any claims alleged by any Party. This Agreement and the negotiations relating to it are settlement communications and are inadmissible under Federal Rule of Evidence 408 and any comparable rule.

b. **Binding Effect; No Assignments; No Third-Party Benefit.** Except as to the Debtor and the bankruptcy estate in the provision defining Court Approval, this Agreement is binding upon the Parties and upon, as applicable, their respective heirs, administrators, representatives, executors, successors, and assigns. No Party may assign either this Agreement or any of its rights, interests, or obligations under this Agreement without prior written approval of the other Parties. None of the provisions of this Agreement are for the benefit of, or enforceable by, any person that is not a Party, nor will any provisions be deemed to create any right in any person not a Party to this Agreement.

c. **Severability.** If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable. It is the intention of the Parties that if any provision of this Agreement is susceptible of two or more constructions, one which would render the provision enforceable and the other or others of which would render the provision unenforceable, then the provision will have the meaning that renders it enforceable.

d. **Modifications to Agreement.** No provision of this Agreement may be modified or discharged unless that modification or discharge is agreed to in writing and signed by all Parties. Certain provisions may only be modified with Court Approval, the determination of which is at the sole discretion of the Debtor. No provision of this Agreement may be waived unless such waiver is in writing and signed by the party to be charged with the waiver. No waiver of a breach under this Agreement will be deemed a waiver of any other provisions of the Agreement or any other breaches.

e. **Entire Agreement.** This Agreement contains the entire agreement of the Parties about the subjects in it, and it replaces all prior contemporaneous oral or written

agreements, understandings, statements, representations and promises by any Party, except that the To Life Transaction Documents, when executed, will govern the To Life purchase as set forth above.

f. **Governing Law; Venue.** This Agreement will be governed by the laws of the State of Ohio or the Bankruptcy Code, as applicable. The Bankruptcy Court retains exclusive jurisdiction to interpret and enforce this Agreement, and all matters related to this Agreement must be filed in the Bankruptcy Court.

g. **Counterpart Execution.** This Agreement may be executed in several counterparts and, as so executed, will constitute one agreement binding on all Parties, notwithstanding that all Parties have not signed the original or the same counterpart. Digital images, digital signature service (i.e. Docusign), faxes, and photocopies of this Agreement and the signatures are sufficient for enforcement of this Agreement.

h. **Notices.** All notices and other communications under this Agreement must be mailed by nationally recognized overnight courier or delivered by personal service. Notices are deemed delivered when received. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice was given shall be deemed to be a receipt of the notice, request, or other communication. Notices will be sent to the addresses set forth at the beginning of this Agreement, which notice address may be changed by giving notice of the change in writing. Any notice sent to either of the Parties must also be copied to counsel for that Party that has appeared in the Adversary Proceeding.

i. **Further Assurances.** The Parties agree to freely execute any and all additional documents required to give this Agreement its full effect.

j. **Time of the Essence.** Time is of the essence for all provisions of this Agreement.

k. **Headings for Convenience Only.** The headings to the sections of this Agreement have been inserted for convenience only and will in no way modify or restrict any provisions hereof or be used to construe any such provisions.

l. **Representation of Parties and Joint Drafting.** Each of the Parties have had the opportunity to have this Agreement reviewed by the appropriate professionals. The Parties are deemed to have jointly drafted this Agreement, and no interpretation will be construed against any Party as the drafter.

[EXECUTION ON FOLLOWING PAGE]

## SIGNATURES

By execution of this Agreement, the Parties each acknowledge that they are in agreement with the foregoing provisions and that this Agreement shall be a binding contract between them.

Raymond J. Schneider 07/06/2026

**Raymond J. Schneider** Date
**Debtor and Debtor in Possession**

Patricia B. Schneider 07/06/2026

**Patricia B. Schneider, Trustee** Date
**Raymond Schneider 2019 Gift Trust**

**TO LIFE, LTD.**
By: Raymond Schneider 2019 Gift Trust, its Authorized Member

Patricia B. Schneider 07/01/2026

**Patricia B. Schneider, Trustee** Date
Solely for the limited purposes set forth in this Agreement

SUBJECT TO COURT APPROVAL

Progress | RightSignature

REFERENCE NUMBER
82F5B941-3BD6-49C8-B7DF-E8659078F0DA

## SIGNATURE CERTIFICATE

| TRANSACTION DETAILS | DOCUMENT DETAILS |
|---|---|
| **Reference Number**<br>82F5B941-3BD6-49C8-B7DF-E8659078F0DA | **Document Name**<br>Settlement Agreement - Schneider 2019 Gift Trust v3 |
| **Transaction Type**<br>Signature Request | **Filename**<br>Settlement_Agreement_-_Schneider_2019_Gift_Trust_v3.pdf |
| **Sent At**<br>07/06/2026 01:20:57 PM EDT | **Pages**<br>11 pages |
| **Executed At**<br>07/06/2026 02:27:10 PM EDT | **Content Type**<br>application/pdf |
| **Identity Method**<br>email | **File Size**<br>220 KB |
| **Distribution Method**<br>email | **Original Checksum**<br>25ef2983947d668de2a2ebd1698f851080d7efdcbd243ebce7511f1cc11c0b14 |
| **Signed Checksum**<br>bde97f434da7abade0055ef1ee130b313707ce75ce069914f58d8e00b10c5a81 | |
| **Signer Sequencing**<br>Disabled | |
| **Document Passcode**<br>Disabled | |
| **eIDAS Authentication**<br>Disabled | |

## SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name**<br>Patricia B. Schneider<br>**Email**<br>pattibschneider@gmail.com<br>**Components**<br>4 | **Status**<br>signed<br>**Multi-factor Digital Fingerprint Checksum**<br>4f53cda18c2baa0c0354bb5f9a3ecbe5ed12ab4d8e11ba873c2f11161202b945<br>**IP Address**<br>174.196.198.132<br>**Device**<br>Mobile Safari via iOS<br>**Typed Signature**<br>Patricia B. Schneider<br>**Signature Reference ID**<br>F61C50BD<br>**Typed Signature**<br>Patricia B. Schneider<br>**Signature Reference ID**<br>2A03406B | **Viewed At**<br>07/06/2026 02:24:07 PM EDT<br>**Identity Authenticated At**<br>07/06/2026 02:27:10 PM EDT<br>**Signed At**<br>07/06/2026 02:27:10 PM EDT |
| **Name**<br>Raymond J. Schneider<br>**Email**<br>ray@circledev.com<br>**Components**<br>2 | **Status**<br>signed<br>**Multi-factor Digital Fingerprint Checksum**<br>4f53cda18c2baa0c0354bb5f9a3ecbe5ed12ab4d8e11ba873c2f11161202b945<br>**IP Address**<br>69.204.166.68<br>**Device**<br>Microsoft Edge via iOS<br>**Typed Signature**<br>Raymond J. Schneider<br>**Signature Reference ID**<br>31143642 | **Viewed At**<br>07/06/2026 01:25:51 PM EDT<br>**Identity Authenticated At**<br>07/06/2026 01:28:34 PM EDT<br>**Signed At**<br>07/06/2026 01:28:34 PM EDT |

## AUDITS

| TIMESTAMP | AUDIT |
|---|---|

| TIMESTAMP | AUDIT |
|---|---|
| 07/06/2026 01:20:57 PM EDT | Hannah Kittle (kittle@asnalaw.com) created document 'Settlement_Agreement_-_Schneider_2019_Gift_Trust_v3.pdf' on Chrome via Windows from 50.58.118.234. |
| 07/06/2026 01:20:58 PM EDT | Patricia B. Schneider (pattibschneider@gmail.com) was emailed a link to sign. |
| 07/06/2026 01:20:58 PM EDT | Raymond J. Schneider (ray@circledev.com) was emailed a link to sign. |
| 07/06/2026 01:25:51 PM EDT | Raymond J. Schneider (ray@circledev.com) viewed the document on Microsoft Edge via iOS from 69.204.166.68. |
| 07/06/2026 01:28:34 PM EDT | Raymond J. Schneider (ray@circledev.com) authenticated via email on Microsoft Edge via iOS from 69.204.166.68. |
| 07/06/2026 01:28:34 PM EDT | Raymond J. Schneider (ray@circledev.com) signed the document on Microsoft Edge via iOS from 69.204.166.68. |
| 07/06/2026 02:24:07 PM EDT | Patricia B. Schneider (pattibschneider@gmail.com) viewed the document on Mobile Safari via iOS from 174.196.198.132. |
| 07/06/2026 02:27:10 PM EDT | Patricia B. Schneider (pattibschneider@gmail.com) authenticated via email on Mobile Safari via iOS from 174.196.198.132. |
| 07/06/2026 02:27:10 PM EDT | Patricia B. Schneider (pattibschneider@gmail.com) signed the document on Mobile Safari via iOS from 174.196.198.132. |