**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| RAYMOND JOSEPH SCHNEIDER, | ) | Case No. 25-12607 |
| Debtor. | ) | Judge Beth A. Buchanan |

**MOTION OF THE HUNTINGTON NATIONAL BANK FOR THE APPOINTMENT OF AN EXAMINER PURSUANT TO 11 U.S.C. §1104**

The Huntington National Bank, as Administrative Agent ("**Huntington**"), respectfully submits this Motion for Appointment of an Examiner pursuant to 11 U.S.C. §1104 (the "**Motion**").[1]

## I. INTRODUCTION

1. Section 1104(c)(2) of the Bankruptcy Code, 11 U.S.C. § 1104(c)(2), "requires" the Court to grant the Motion and appoint an examiner because the Debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.[2] See, *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 501 (6th Cir. 1990)("When the total 'fixed, liquidated, unsecured' debt is greater than $5 million, the statute requires the court to appoint an examiner").

2. There is no official committee of unsecured creditors to investigate the Debtor but there is plenty for an examiner to investigate. The Debtor's financial affairs are complex and involve dozens of companies. The Debtor acknowledges he does not maintain regular financial records of his personal income other than through his tax filings (the Debtor has not filed a 2024

---

[1] Huntington incorporates the exhibits in the Appendix to this Motion.
[2] Second Case, ECF no. 50, "Summary of Your Assets and Liabilities and Certain Statistical Information"

tax return yet) and financial accounts, which are complicated by inter-account transfers.[3] The Debtor also acknowledges his bankruptcy schedules and statements may contain information which is "**improperly characterized**" and some information may be "**omitted**" or "**not yet [] characterized**."(emphasis added).[4]

3. Given the Debtor's failure to maintain adequate records, it may not be surprising that this case, and the Debtor's prior bankruptcy case, are replete with irregularities. However, many of the irregularities appear, at least on the surface, to be more nefarious than record keeping deficiencies. As subsequently explained in more detail, some examples of the irregularities include:

a. a $100 million disparity in reported asset values;

b. irreconcilable discrepancies in reported income;

c. the Debtor's delinquent 2024 personal and business tax returns yet;

d. a $12 million in unauthorized and unreported investment sales in the Debtor's first bankruptcy case;

e. a false Statement of Financial Affairs;

f. potential diversion of income to the Debtor's spouse;

g. potentially avoidable gifts worth tens of millions of dollars;

h. transfers of ownership interests in the Debtor's businesses to the Debtor's family;

---

[3] ECF No. 50, page 3
[4] ECF No. 50, page 3

i. a transfer of a 100% equity interest in one of Debtor's businesses in exchange for a 0.5% interest in another business;

j. gifts to the Debtor's self-settled trust;

k. the failure to fully disclose trust transfers;

l. the failure to disclose household debts;

m. the unauthorized and concealed payments to Debtor's spouse;

n. an initial failure to disclose bank account records containing evidence of potentially unauthorized $100,000 transaction in October 2025 between the Debtor and his spouse;

o. the apparent underreporting of disbursements on the Debtor's monthly operating reports in the Second Case; and

p. a potential undisclosed loan owed to the Debtor.

4. Due to the deficiencies in the Debtor's financial records and because the Debtor has a history of incomplete and false reporting, the Debtor cannot be counted upon to explain the multitude of irregularities to the Court and the interested. The true facts must be ascertained by an independent examiner. If the Debtor has explanations for the irregularities, the Debtor will have the opportunity to present those explanations to the examiner who will have the ability to probe the veracity of the explanations.

5. Accordingly, Huntington respectfully requests the Court order the appointment of an examiner with broad authority to conduct an investigation of the Debtor's assets, liabilities,

bankruptcy reporting and financial affairs including, but not limited, an investigation of the Debtor's business activities and transactions with the Debtor's family and gift trusts.

## II. BACKGROUND

### The bankruptcy cases

6. This is the second chapter 11 filing in the past three (3) years for the Debtor, Raymond Schneider. On March 1, 2023, the Debtor filed his first chapter 11 case in this Court (the "**First Case**")[5] after Huntington obtained a $75 million judgment against the Debtor in the Ohio Court of Common Pleas ("**Judgment**").

7. On February 27, 2024, the Court granted the Debtor's motion to dismiss the First Case when the Judgment was vacated by the First District Court of Appeals.

8. On August 20, 2025, the Ohio Supreme Court reinstated the Judgment[6] and the Debtor filed this Second Case (the "**Second Case**") on October 17, 2025 (the "**Petition Date**").

### The Debtor's debts exceed the threshold of 11 U.S.C. § 1104(c)(2)

9. The Debtor's bankruptcy schedules establish the Debtor has fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, which exceed the $5,000,000 threshold for the mandatory appointment of an examiner pursuant to 11 U.S.C. § 1104(c)(2).[7] In particular, the Debtor disclosed fixed, liquidated and unsecured debts totaling $166,618,627.79 in his bankruptcy schedules.[8] The vast majority of the unsecured claims relate to bank debt which is not insider debt for goods, services or taxes.

---

[5] Case number 23-10337
[6] See, ECF no. 7, paragraph 3
[7] ECF no. 50, Schedule E/F, nos. 3.9 to 3.14, 3.21 to 3.29, 3.31, 3.35, 3.38 to 3.39, 3.41, 3.43, 3.45, 3.47
[8] ECF no. 50, Schedule E/F, nos. 3.9 to 3.14, 3.21 to 3.29, 3.31, 3.35, 3.38 to 3.39, 3.41, 3.43, 3.45, 3.47

## III. <u>THE KNOWN IRREGULARITIES</u>

**The Debtor states his bankruptcy schedules and statements may not be accurate or complete**

10. The Debtor's bankruptcy schedules and statements include four (4) pages of disclaimers including one disclaimer in which the Debtor specifically disclaims the accuracy and completion of the schedules and statements:

> 8. Financial Transactions. The financial affairs and business of the Debtor are complex. Prior to the petition date, the Debtor operated as a business owner with the ability to transfer funds as needed to meet personal, business, and future business needs. The Debtor has used his best efforts to track the information from his financial transactions that is required to be included in the Schedules and Statement, and reserves the right to supplement and amend the disclosures should the need arise. In addition, the Debtor has had certain financial transactions with his business entities that may **<u>not yet have been characterized</u>** or may have been **<u>improperly characterized</u>**, including characterizations such as whether funds provided to a company were for capital contributions or loans, or whether funds paid to the Debtor were draws or loans. The Debtor continues to review all such transactions and will supplement and/or amend the Schedules and Statement as may be appropriate (emphasis added).[9]

11. Another disclaimer states the Debtor may have "**<u>improperly characterized</u>**" or "**<u>omitted</u>**" items in the schedules and statements.[10]

12. These disclaimers are inconsistent with the Debtor's "duty to prepare schedules carefully, completely, and accurately." *D.P. Mangan, Inc. v. Kennedy Hills Enters., LLC*, No. B246199, 2013 BL 223325, at *4 (Cal. Ct. App. 2d Dist. Aug. 21, 2013); *M&M Foods, Inc. v. Pacific American Fish Co., Inc.*, (2011) 196 Cal.App.4th 554, 563-564 (M&M Foods); *Cusano v. Klein, supra*, 264 F.3d at p. 946.)

---

[9] ECF No. 50, page 3

13. The disclaimers are not boilerplate which can be ignored. They were not included in the Debtor's bankruptcy schedules in the First Case and it does not appear they were included in the schedules for recent cases filed by Debtor's lead bankruptcy counsel.[11] They legal machinations designed to avoid the liability and sanctions which come with false bankruptcy reporting and are specifically crafted to address the Debtor's situation which includes inappropriate mixing of the Debtor's personal and business finances.

**The Debtor does not maintain regular financial records**

14. The Debtor acknowledged in his schedules and statements that he does not maintain regular financial records of his personal income other than through his tax filings which, according to the Debtor, are complex, and through his financial accounts, which are complicated by inter-account transfers.[12]

**The Debtor has not filed 2024 personal or business tax returns and has not sought to retain an accountant to remedy this problem**

15. Although the Debtor uses his tax returns as a principal method of financial record keeping,[13] the Debtor has not filed a federal tax return for 2024. The deadline for filing the 2024 tax return, even if extended, has expired and the Debtor is in violation of the Internal Revenue Code.[14] This failure, which highlights fundamental problems with the Debtor's financial record keeping and likely infects his reporting in this case, is compounded because the Debtor has not sought to retain an accountant to prepare his delinquent 2024 tax return. This should raise alarm.

---

10 ECF No. 50, page 3
11 See example, *Legacy Beavercreek of Dayton Operating Company, LLC,* case no. 25-31552, ECF no. 39
12 ECF No. 50, page 3
13 ECF No. 50, page 3
14 See, 26 U.S.C. § 6072 (time for filing income tax returns); 26 U.S.C. § 6081 (extension of time for filing returns)

**Discrepancies in reported assets**

16. The value of the assets the Debtor reported in his bankruptcy schedules in both cases cannot be reconciled with financial statements[15] provided by the Debtor to various lenders before the First Case and in the interim period between the First Case and Second Case. It appears the Debtor is assigning value to his assets depending upon the audience. To lenders other than Huntington, the Debtor is portraying himself as wealthy and in control of his entities. To this Court and the interested parties, the Debtor is painting a different picture with suppressed asset values and minority interests. The differences are exceptionally material. Outside of bankruptcy, a little more than a year before the Petition Date, the Debtor claimed his assets are worth more than $200 million. Inside of bankruptcy, the Debtor claims his assets are approximately $66 million. That is a disparity of more than $100 million which cannot be easily, or perhaps legitimately, explained.

17. In particular, the Debtor reported his assets and liabilities as follows:

| "As of " Date | Source | Assets | Liabilities | Net Worth |
|---|---|---|---|---|
| July 1, 2016 | Financial Statements | $91,925,400 | $33,115,500 | $58,809,900 |
| June 1, 2017 | Financial Statements | $124,325,000 | $67,365,000 | $56,960,000 |
| January 25, 2018 | Financial Statements | $121,886,800 | $65,319,000 | $56,567,800 |
| February 1, 2019 | Financial Statements | $147,415,800 | $74,005,000 | $73,410,800 |
| October 1, 2019 | Financial Statements | $157,387,900 | $77,971,900 | $79,416,000 |
| March 1, 2022 | Financial Statements | $151,675,000 | $94,349,000 | $57,326,000 |
| March 1, 2023 | Schedules | $35,427,931 | $178,226,461 | -$142,798,530 |
| April 30, 2023 | Financial Statements | $231,576,000 | $133,093,000 | $98,483,000 |
| September 1, 2024 | Financial Statements | $249,806,000 | $132,528,000 | $117,278,000 |
| October 17, 2025 | Schedules | $66,897,683 | $166,618,628 | -$99,720,944 |

[15] Copies of the personal financial statements are attached as **Exhibits A to H**.

18. As can be seen by the chart, according to the Debtor, the value of his assets: a) decreased by $115 million on the run up to the First Case; b) increased by $200 million after the First Case only to decrease again by nearly $200 million in the run up to the Second Case. There was nothing in the economy, or the Debtor's real estate industry, which would account for such whiplash inducing fluctuations. It appears the Debtor is not ascribing legitimate values to his assets in the bankruptcy schedules, the financial statements, or both. Either way, an examiner is needed to investigate this irregularity.

**Irreconcilable discrepancies in reported income**

19. There are irreconcilable discrepancies of millions of dollars between the receipts the Debtor reported during the First Case in 2023 and the 2023 income the Debtor reported on his personal financial statements and tax return after the dismissal of the First Case.

20. In particular, the Debtor provided a personal financial statement to a lender in September 2024[16] which stated the Debtor had the following categories of income in 2023:

| | |
|---|---|
| Interest income | $485,000 |
| Other income | $3,825,000 |

21. The Debtor's 2023 federal tax joint tax return (filed with his spouse)[17] shows the following items of income before deductions:

| | |
|---|---|
| Compensation | $418,654 |
| Dividends/Distributions | $330,067 |
| Interest | $56,283 |
| Capital Gains | $1,229,114 |
| Business/Profession | $4,661,723 |
| Rents/Royalty | $3,067,175 |
| Partnership/S Corporation | $1,178,905 |
| Other income | $56,506 |

16 Exhibit H
17 Exhibit I

| | |
|---|---|
| Total | $10,998,427 |

22. Some of the income reported on the tax return may be attributable to the Debtor's spouse[18] like the $418,654 in wage compensation which, as subsequently explained, was potentially diverted to her to avoid it coming under the purview of this Court. However, given the Debtor identifies himself as a real estate professional and his wife as "retired",[19] it is likely that a good portion of this income legitimately belongs to the Debtor and should have made its way into the Debtor's schedules, statements or monthly operating report. For the most part, it did not.

23. The Debtor's bankruptcy filings omit the bulk of the income reported on the Debtor's 2023 tax return. The Debtor disclosed pre-petition monthly income of $30,360 in his schedules.[20] The Debtor's monthly operating reports in the First Case[21] show annualized receipts of $974,409.33 as follows:

| | **Receipts** | **Disbursements** |
|---|---|---|
| March 2023 | $113,576.00 | $4,838.00 |
| April 2023 | $40,794.00 | $11,671.00 |
| May 2023 | $35,266.00 | $8,683.00 |
| June 2023 | $35,038.00 | $6,239.00 |
| July 2023 | $28,085.00 | $9,328.00 |
| August 2023 | $222,210.00 | $13,148.00 |
| September 2023 | $32,055.00 | $126,825.00 |
| October 2023 | $6,857.00 | $52,335.00 |
| November 2023 | - | - |
| December 2023 | $216,926.00 | $185,062.00 |
| Total | $730,807 | $418,129 |
| Monthly average (9 months) | $81,200.78 | $46,458.78 |

---

18 The Debtor's bankruptcy schedules in the First Case do not disclose any monthly income attributable to his spouse. See, First Case, ECF ___.
19 Exhibit I (2023 return), signature page
20 ECF no. 50, page 8
21 The Debtor did not file a monthly operating report for November 2023.

| | | |
|---|---|---|
| Annualized | $974,409.33 | $557,505.33 |

24. It does not appear that the monthly operating reports included any of the capital gains from the more than $12 million in securities sales which were not disclosed and which are discussed in more detail later. It also does not appear the rents and royalties were disclosed in the monthly operating reports.

25. The Debtor's inconsistent, and unexplainable, reporting of his 2023 income continues in the Second Case. In particular, the Debtor disclosed his income from operating businesses in 2023 as $347,000 and his 2023 social security receipts as $43,200.[22] There may be no legitimate explanation for the stark contrast. The Debtor did not disclose on his Schedule I more than $265,000 in capital distributions he received from his various entities from February 12, 2025 to August 5, 2025 through more than twenty-five (25) different transactions.

26. An examiner is needed to sort this out so the Court and the interested parties can know the true state of the Debtor's financial affairs.

**The Debtor sold $12 million in securities without authorization during the First Case and did not report the sales in his monthly operating reports**

27. The Debtor's 2023 federal tax return indicates that the Debtor sold more than $12 million in securities in his Merril Lynch accounts in 2023.[23] The Debtor did not report these sales in his bankruptcy schedules and statements to the extent the sales took place before his filed the First Case. To the extent the sales occurred after the filing of the First Case, the Debtor did not obtain authorization for the sales and did not report the sale in his monthly operating reports. The

---

22 ECF no 50, Statement of Financial Affairs, item 4.

23 Exhibit I, Schedule D (Capital Gains and Losses), line 1b, column (d) (proceeds from sale of assets held for less than one year) and line 8b, column (d)(proceeds from sale of assets held less than one year).

Debtor appears to acknowledge sales of securities in the Merrill Lynch accounts are outside of the ordinary course of the Debtor's business as the Debtor filed a motion to authorize a $1 million sale[24] which remained pending when the First Case was dismissed.

**False Statement of Financial Affairs**

28. The Debtor filed a false Statement of Financial Affairs[25] in the First Case indicating he gave only one creditor, Huntington, financial statements when, in reality, the Debtor gave financial statements to numerous banks including Warsaw Bank, Synovus Bank, Kemba Credit, LCNB Bank, First Merchant Bank, FCN Bank, Civista Bank, Heritage Bank, and "Capital Partners" during the applicable period. There is no reason for this non-disclosure other than the Debtor is selective about what he discloses, even though the Bankruptcy Code requires full disclosure, and the Debtor views the bankruptcy cases as a two-party dispute between him and Huntington.

**Potential diversion of income to Debtor's spouse**

29. One of the Debtor's companies, Grasshopper Investments LLC, paid Debtor's spouse $418,654 in wages in 2023 during the First Case.[26] The spouse has no history of wages from any source in 2020, 2021, and 2022 and is listed in tax returns dating back to 2020, including the 2023 tax return, as "retired." In contrast, the Debtor is listed in the tax returns as a real estate professional but has no reported wages on the 2023 tax return.[27] These inconsistencies raise the possibility that the spouse did no real work for the company and was merely paid the wages to avoid them coming within the purview of this Court and subject to the scrutiny of

---

24 First Case, ECF no. 109
25 First Case, ECF no.44, Statement of Financial Affairs, item 28
26 Exhibit I, statement 1 (The spouse's income is designated with an "S" and the Debtor is designated with a "T" as the taxpayer)
27 Exhibit I, signature page and statement 1 (the Debtor is designated with a "T" as the taxpayer)

interested parties, including the Office of the United States Trustee whose statutory fees may have been impacted by the apparent scheme.

**Potentially avoidable gifts and transfers worth tens of millions of dollars**

30. As the Court is aware, shortly before the First Case, the Debtor gifted various equity interests in his businesses to his family and to trusts which are either self-settled or a "similar device" under the meaning of the Bankruptcy code. The Court may not be aware that the Debtor also engaged in various transactions which restructured the ownership of the Debtor's businesses to shift the bulk of the economic value to the Debtor's family as non-voting interests while the Debtor retained control over the entities through majority ownership of *de minimis* and diluted voting interests.

31. The Debtor refused to seek avoidance of these gifts and transfers in the First Case and Huntington's motion for authority to pursue avoidance actions related to these transactions remained pending when the First Case was dismissed. In other words, by obtaining dismissal of the First Case, the Debtor was able to stifle full review of the transactions by the Court and Huntington and it is now time for an independent examiner to look at the situation.

32. In addition to the gifts and transfers which occurred before the First Case, there are additional potentially avoidable transfers which occurred in the interim between the two cases, including:

a. the Debtor transferred his 100% equity interest in Red Dog Management Company, LLC to Red Dog Operations Holding Company and apparently received in return a 0.5%

interest in a newly formed holding company called KPT7 Holding Company, LLC;[28] and

b. the Debtor transferred his 100% equity interest in The Blue Development Company, LLC[29] to the Raymond Schneider 2019 Gift Trust c/o Patricia Schneider, Trustee in exchange for a $1,485,000 promissory note.[30]

33. Although the Debtor claims that the gifts prior to the First Case were innocent estate planning transactions done without the knowledge of his own financial problems, the Debtor cannot credibly make the same claim about the new transactions which were done while Huntington's claims remained pending against him and after the First Case in which the legitimacy of his purported estate planning came under attack. It is incredulous that the Debtor would have innocently engaged in these transactions after disclosing a net worth of negative $142 million in his First Case.

**Failure to fully disclose trust transfers**

34. Section 19 of the Statement of Financial Affairs[31] in the Second Case required the Debtor to disclose transfers made to a self-settled trust or similar device within ten years of the Petition Date. Although the Debtor disclosed the aforementioned transfer of his 100% equity interest in The Blue Development Company, LLC to the Raymond Schneider 2019 Gift Trust c/o Patricia Schneider, Trustee in another part of the Statement of Financial Affairs, it was not disclosed in section 19. The Debtor also did not disclose the transfers to the gift trusts which

---

[28] ECF No. 50, Statement of Financial Affairs, section 18

[29] "The Blue" is the Debtor's new, large scale, development similar to the Debtor's "The Red" apartment complex. "The Blue" is apparently currently under development. See, https://circledevelopment.com/the-blue.

[30] ECF No. 50, Statement of Financial Affairs, section 18

[31] ECF No. 50, Statement of Financial Affairs, section 19

occurred before the First Case but within the ten-year window. Instead, the Debtor affirmatively answered the question in section 19 stating that there were no such transfers. This answer was patently false.

**Failure to disclose household debts and payments to household creditors**

35. As discussed at length at the hearing on the Debtor's motion to dismiss the First Case,[32] the Debtor did not disclose all of his household debts in his bankruptcy schedules in the First Case. In particular, the Debtor did not disclose a debt owed to American Express and continued to use, and make payments on, the American Express card throughout the case without disclosure in his monthly operating reports. The Debtor also did not disclose other household debts, which would be expected from the Debtor's ownership of three houses, including utilities, communications, household services and the like.

36. The American Express situation is particularly troublesome because the Debtor engaged in transactions outside of his monthly operating reports, for at least eight (8) months,[33] which were kept secret from the Court, the Office of the United States Trustee and the creditors. The following summarizes the Debtor's payments to American Express in comparison to the disbursements he reported on his monthly operating reports:

| Month | MOR Reported Disbursements | Amex Payments |
|---|---|---|
| March 2023 | $4,838 | $6,691.63 |
| April 2023 | $11,671 | $58,992.81 |
| May 2023 | $8,683 | $8,624 |
| June 2023 | $6,239 | $1,272.26 |

32 See, First Case, ECF no. 344, pages 9-11.
33 See, First Case, ECF no. 335, Exhibit M

| | | |
|---|---|---|
| July 2023 | $9,328 | $78,052.09 |
| August 2023 | $13,148 | $5,860.75 |

37. On a much smaller scale, Huntington recently discovered that the Debtor had a second American Express account (account number ending in 05005) (the "**Second American Express Account**") during First Case which was never disclosed to the Court or the interested parties even after the continued use of the other American Express account was discovered. The Second American Express Account was in the Debtor's name but it appears that the account was used by the Debtor's family members for living expenses. Use of the Second American Express account was curtailed over the First Case but there were payments made on the Second American Express Account were not reported on the Debtor's monthly operating reports in the First Case which leaves open the question of whether the source of the payments was undisclosed. These payments were as follows:

| **Date** | **Amount** |
|---|---|
| March 31, 2023 | $2,904.96 |
| May 12, 2023 | $740.95 |

38. It is unclear why the Debtor was not reporting these transactions and how the Debtor was funding the American Express payments outside of the official reporting. It may be that the Debtor was attempting to save on his quarterly bankruptcy fees which are based on disbursements. See, 28 U.S.C. §1930(a)(6). It may also be that the Debtor was attempting to hide his ongoing lifestyle, expenditures and source of funds from his creditors. Certainly, the Debtor had incentive to avoid disclosure of the Second American Express Account which showed purchases by his family members. In any event, the Debtor was required to report all

disbursements pursuant to F.R.B.P 2015(a)(5) and an examiner should be appointed to investigate these issues so the Debtor does not continue to engage in undisclosed shadow transactions in the Second Case.

**Unauthorized and concealed transactions with the Debtor's spouse**

39. During the First Case, the Debtor made payments to his spouse totaling $82,000 as follows:

| **Date** | **Amount** |
|---|---|
| September 23, 2023 | $24,000[34] |
| September 26, 2023 | $18,000[35] |
| October 17, 2023 | $10,000[36] |
| October 6, 2023 | $30,000[37] |
| Total | $82,000 |

40. These payments were not authorized by the Court. The Debtor's monthly operating reports also include affirmative misrepresentations hiding the insider nature of the payments. In particular, on two separate operating reports, the Debtor affirmatively answered "no" to the question which asked "[w]here any payments made to or on behalf of insiders."[38]

41. In the Second Case, the Debtor initially failed to disclose a $100,000 transaction with his spouse when he omitted a Stockyards Bank and Trust statement from his October 2025

[34] First Case, ECF no. 227, page 18 of 18
[35] First Case, ECF no. 227, page 18 of 18
[36] First Case, ECF no. 256, page 16 of 18
[37] First Case, ECF no. 256, page 16 of 18
[38] First Case, ECF no 227, part 7(c); First Case, ECF no. 256, part 7(c)

monthly operating report.[39] The Debtor amended the operating report,[40] about a month later, to include the missing bank statement and documentation concerning the spousal transaction. Huntington does not know whether the amendment occurred as a result of questions from the Office of the United States Trustee or if the Debtor amended on his own accord.

**Potential underreporting of disbursements**
**<u>on monthly operation reports in the Second Case</u>**

42. It appears the Debtor may be underreporting disbursements on his monthly operating reports in the Second Case. From January 2025 to August 19, 2025, the Debtor made payments to American Express totaling $198,550.33[41] from his Stockyards Bank and Trust account (ending in 1743). This represents more than $23,000 per month. It appears the Debtor uses the American Express card for living and travel expenses. Despite spending more than $23,000 per month on the American Express card alone in the run up to the Second Case, the Debtor has only reported $23,271 in total disbursements from the October 17, 2025 Petition Date through the end of 2025.[42] In other words, the Debtor is reporting post-petition disbursements on his monthly operating reports of approximately $9,500 per month which is inconsistent with the Debtor's pre-petition spending. The disbursements listed on the Debtor's monthly operating reports also do not comport with a debtor who maintains three (3) homes and who reported approximately $46,000 average spending per month[43] in the First Case, not including the American Express payments which were not disclosed to the Court or the interested parties.

43. An examiner should investigate this apparent irregularity.

---

[39] ECF no. 67
[40] ECF no. 83
[41] The Debtor has provided a "2025 Year-End Summary" from American Express to Huntington in discovery. The summary only shows only $2,155.03 in transactions which cannot be reconciled with the $198,550.33 in payments to American Express in the Stockyards Bank statements. This suggests there is another American Express card which has not been disclosed.
[42] ECF no. 98, page 2

**Potential undisclosed loan owing to the Debtor**

44. The Debtor's Stockyards Bank & Trust statement show the Debtor made a "loan" in the amount of $128,000 on May 29, 2025[44] to "KTP7" which is apparently one of the Debtor's business entities. The bank statements reflect a subsequent payment from KPT7[45] Holding Company on June 25, 2025 to the Debtor in the amount of $15,731.72. Huntington has not identified any other payments from this entity to the Debtor to satisfy the loan. This loan, to the extent it remained outstanding, was not disclosed in the Debtor's bankruptcy schedules.[46]

## IV. STANDARD

**Mandatory appointment of an examiner**

45. The appointment of a chapter 11 examiner is authorized by 11 U.S.C. §1104(c)(2) is mandatory if the "debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000." 11 U.S.C. § 1104(c)(2); see also, *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 501 (6th Cir. 1990)(When the total 'fixed, liquidated, unsecured' debt is greater than $5 million, the statute requires the court to appoint an examiner)(emphasis added); *In re Collins & Aikman Corp.*, 368 B.R. 623, 626 (Bankr. E.D. Mich. 2007)("If the thresholds of § 1104(c)(2) are met, it is indeed mandatory to appoint an examiner to conduct an investigation of the debtor"); *In re Walton*, 398 B.R. 77, 83-84 (N.D. Ga. 2008)(emphasis added); *In re UAL Corp*, 307 B.R. 80, 86 (Bankr. N.D. Ill. 2004); *In re Loral Space Commc'ns*, 2004 WL 29797856, *5 (S.D.N.Y. Dec. 23, 2004).

---

[43] See paragraph 23 to this Motion.
[44] The bank account statement reflects an unexplained deposit of the same amount on the prior day.
[45] There is a spelling inconsistency. The Debtor's schedules use "KTP7" to describe a transfer made in connection with this entity on with regard to this entity on November 15, 2024.
[46] ECF no. 50, Schedule A/B, item 30

**Discretionary appointment of an examiner**

46. In addition to section 1104(c)(2) which requires mandatory appointment when the unsecured debts exceed the $5 million threshold, the Court has discretion to appoint an examiner if the "appointment is in the interests of creditors, any equity security holders,[47] and other interests of the estate." 11 U.S.C. §1104(c)(1).

47. Huntington respectfully submits that the Court does not need to analyze the best interests test because section 1104(c)(1) is not discretionary and compels the appointment in this case.

## V. <u>ANALYSIS</u>

### A. The appointment of an examiner is mandatory.

48. The appointment of an examiner is **<u>mandatory</u>** because the Debtor's bankruptcy schedules unequivocally show the Debtor has fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, which exceed $5,000,000.[48] See, *Morgenstern v. Revco D.S., Inc*. (In re Revco D.S., Inc.), 898 F.2d 498, 501 (6th Cir. 1990)(When the total 'fixed, liquidated, unsecured' debt is greater than $5 million, the statute requires the court to appoint an examiner"). *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 501 (6th Cir. 1990); see also, *In re Collins & Aikman Corp*., 368 B.R. 623, 626 (Bankr. E.D. Mich. 2007) ("If the thresholds of § 1104(c)(2) are met, it is indeed mandatory to appoint an examiner to conduct an investigation of the debtor"); *In re Walton*, 398 B.R. 77, 83-84 (N.D. Ga. 2008); *In re UAL Corp*, 307 B.R. 80, 86 (Bankr. N.D. Ill. 2004); *In re Loral Space Commc'ns*, 2004 WL 29797856, *5 (S.D.N.Y. Dec. 23, 2004).

---

[47] There are no equity security holders in this case because the Debtor is an individual.
[48] Second Case, ECF no. 50, Schedule E/F, nos. 3.9 to 3.14, 3.21 to 3.29, 3.31, 3.35, 3.38 to 3.39, 3.41, 3.43, 3.45, 3.47

49. Accordingly, an examiner must be appointed in this case.

**B. The appointment of an examiner is in the best interests of the creditors and the estate.**

50. Even if the appointment of an examiner were not mandatory, the Court would have ample grounds to appoint an examiner on a discretionary basis.

51. The bankruptcy system requires and depends upon accurate reporting. *In re Libbus*, 2018 Bankr Lexis 857, 2018 WL 1470513, at *5 (Bankr. E.D.N.C. Mar. 23, 2018) ("One of the primary purposes of the Bankruptcy Code is to provide the honest debtor with a 'fresh start,' which in the case of an individual debtor is given through a discharge. In exchange for this relief, the debtor is required by [11 U.S.C.] § 521 to file disclosures with the court, at the top of the list being 'a schedule of assets and liabilities.'…[I]t is a 'fundamental necessity in bankruptcy' that the information which debtors provided in their petition, Schedules, and Statement of Financial Affairs be accurate, thorough, and reliable…The importance of these pronouncements cannot be understated; the bankruptcy system as a whole, and each particular case which forms a component part of it, cannot function without the honest and forthcoming efforts of its debtors. Absent this, the process, and the foundation laid in preparation for a debtor's 'fresh start,' are destroyed") (internal citations omitted).

52. The Debtor has acknowledged that his reporting may be deficient in that he may have "improperly characterized" and omitted information.[49] The Debtor cannot be counted on to produce accurate information because he acknowledges he does not maintain financial records other than his tax returns (the most recent of which is delinquent) and financial accounts which

[49] ECF No. 50, page 3

are complicated by inter-account transfers.[50] To frustrated creditors like Huntington, the Debtor's financial web is like a shell game and even the Debtor has lost track of the ball.

53. As more fully described previously, the Debtor has also, on numerous occasions during these bankruptcy cases, filed false and incomplete schedules, statements and reports with this Court.

54. The Debtor has also engaged in transfers (sometimes outright gifts) to trusts which are enter self-settled or are "other similar devices", to his spouse and his children and has restructured the ownership of his businesses to shift economic value to family members while maintaining complete control.

55. As a result, an examiner must be reported for the integrity of the bankruptcy system and for the best interests of creditors.

**C. The Proposed Scope of the Examiner's Investigation**

56. The examiner should be given the broadest authority to investigate the affairs of the Debtor permitted under the Bankruptcy Code including, but not limited to, the authority to investigate:

a. the Debtor's assets, liabilities and financial affairs;

b. transactions involving the Debtor, his family, all trusts associated with the Debtor or his family, the Debtor's businesses and any transaction with any other party which may materially impact this bankruptcy case;

c. the Debtor's reporting in the bankruptcy cases;

d. the Debtor's tax returns and financial statements;

---

[50] ECF No. 50, page 3

e. the irregularities identified in this motion as well as any other irregularities discovered by the examiner;

**WHEREFORE**, Huntington respectfully requests the Court to direct the Office of the United States Trustee to appoint an examiner with broad investigatory authority.

Dated: February 27, 2026

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Christopher P. Schueller*
Christopher P. Schueller (OH Id. No. 0086170)
Timothy P. Palmer (OH Id. No. 86166)
Kelly M. Neal (OH Id. No. 100889)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: 412-562-8800
Fax: 412-562-1041
E-mail: christopher.schueller@bipc.com
E-mail: timothy.palmer@bipc.com
E-Mail: kelly.neal@bipc.com

*Attorneys for The Huntington National Bank*

**"EXHIBIT A"**

DEBTOR'S EXHIBIT 10
Page 23 of 69

## PERSONAL FINANCIAL STATEMENT

**CONFIDENTIAL TO:** **Capital Pointe** **7/1/16**

| | |
|---|---|
| **Name:** | RAYMOND SCHNEIDER |
| **Residence Address:** | 3515 TIFFANY RIDGE LANE |
| **City,State & Zip:** | Cincinnati, Ohio 45241 |
| **Occupation:** | Developer / NH Administrator |
| **Business Address:** | 10988 Deerfield Road |
| **City, State & Zip:** | Cincinnati, Ohio 45242 |
| **Business Phone:** | 842-2359 |
| **Finanacial Condition As Of:** | 7/1/16 |

| | | | |
|---|---|---|---|
| **Cash On Hand:** | $ 425,000 | **Notes Payable Bank Secured:** | $ 22,666,500 |
| **Marketable Securities: (See Schedule A)** | $ 3,115,400 | **Notes Payable Bank Unsecured:** | $ 40,000 |
| **Non-Marketable Securities: (See Schedule B)** | $ 66,150,000 | **Amounts Payable To Others Secured:** | $ 83,000 |
| **Securities Held-Broker: In Margin Accounts** | $ 0 | **Amounts Payable To Others Unsecured:** | $ 95,000 |
| **Partial Interest In Real Estate:(See Schedule C)** | $ 18,170,000 | **Amounts and Bills Due:** | $ 65,000 |
| **Real Estate Owned: (See Schedule D)** | $ 1,950,000 | **Real Estate Mortgages Payables** | $ 745,000 |
| **Loans Receivable:** | $ 585,000 | **See Schedules C & D)** | $ 9,421,000 |
| **Automobiles & Other Personal Property:** | $ 450,000 | **Other Debts:** | |
| **Cash-Value L-Insurance: (See Schedule E)** | $ 515,000 | | |
| **Other Assets:** | $ 565,000 | | |
| **TOTAL ASSETS** | **$ 91,925,400** | **TOTAL LIABILITIES:** | $ 33,115,500 |
| | | **NET WORTH** | **$ 58,809,900** |

**SCHEDULE A - MARKETABLE SECURITIES** 7/1/16

| # of Shares Face Value: (Bonds) | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| N/A | Various | RBS | Yes | $ 10,344,400 |
| N/A | LMA Loan | RBS | Merrill Lynch Loan | $ 7,229,000 |
| | | | Liquidity beyond pledge | $ 3,115,400 |

**SCHEDULE B NON- MARKETABLE SECURITIES**

| # of Shares Face Value: | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| 100% | Land/Office/Wrhse | RBS | NO | $ 1,600,000 |
| 100% | Land | Hyde P. Circle | Yes | $ 4,000,000 |
| 100% | Pet Mall | Boston RD | Yes | $ 10,500,000 |
| 100% | To Life | RBS | Yes | $ 5,000,000 |
| 100% | Amelia | GRHPR | Yes | $ 3,500,000 |
| 100% | 74 Self Storage | GRHPR | Yes | $ 5,000,000 |
| 100% | Blue Ash | GRHPR | Yes | $ 6,500,000 |
| 100% | Circle Colerain | GRHPR | Yes | $ 8,500,000 |
| 100% | Horizon Health Mgt. | GRHPR | Yes | $ 450,000 |
| 100% | West Chester | GRHPR | Yes | $ 2,500,000 |
| 100% | Ivy Knoll | IKRD | Yes | $ 6,500,000 |
| 100% | Cinti Red Dog | RD Realty | Yes | $ 7,600,000 |
| 100% | Mason Red Dog | RD Realty | Yes | $ 4,500,000 |
| | | | | $ 66,150,000 |

**SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE**

| Address & Type Of Property | Title In Name Of: | % Of Own: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: |
|---|---|---|---|---|---|---|
| Pet Resort | Boston Red Dog | 100% | 2009 | $ 3,800,000 | $ 12,000,000 | 5,850,000 |
| NHome-Various | HRM Realty | 33% | Various | $ 296,000 | $ 610,000 | $ 194,000 |
| Various-Apt Blgs | RH Investmt | 50% | Various | $ 296,000 | $ 600,000 | $ 131,000 |
| HRM/Horizon | RBS LLC | 100% | 1973 | $ 2,000,000 | $ 4,600,000 | $ 2,400,000 |
| Warehouse | All Realty | 33% | 1979 | $ 26,000 | $ 110,000 | $ 55,000 |
| Alternative Home Car | Alternative | 25% | 2001 | $ 610,000 | $ 250,000 | $ 46,000 |
| | | | | $ 7,028,000 | $ 18,170,000 | $ 8,676,000 |

## SCHEDULE D - REAL ESTATE OWNED

7/1/16

| Address & Type: | Title In Name Of: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: | Monthly Payments: |
|---|---|---|---|---|---|---|
| Tiffany Ridge | RBS | 1985 | $ 345,000 | $ 700,000 | $ 330,000 | $ 2,600 |
| Colorado.* | RBS | 1995 | $ 495,000 | $ 1,250,000 | $ 415,000 | $ 2,900 |
| | TOTAL | | $ 840,000 | $ 1,950,000 | $ 745,000 | $ 5,500 |

* Rental income 1100 mth

## SCHEDULE E - LIFE INSURANCE

| Company: | Name Of Policy: | Owner: | | Benificiary Amount: | Face Loans: | Policy Value: | Cash Surrender: |
|---|---|---|---|---|---|---|---|
| Prudential | RBS | WIFE | | $ 4,800,000 | N/A | $ 4,800,000 | $ 143,000 |
| Prudential | RBS | WIFE | | $ 500,000 | N/A | $ 500,000 | $ 36,500 |
| Guardian | RBS | WIFE | | $ 500,000 | N/A | $ 535,000 | $ 84,000 |
| | | | TOTAL | $ 5,800,000 | | $ 5,835,000 | $ 263,500 |

## BANKS WHERE CREDIT HAS BEEN OBTAINED

| Name Of Lender: | Credit In Name Of: | Secured Unsecured: | Original Date: | High Credit: | Current Balance: | Monthly Payment: |
|---|---|---|---|---|---|---|
| U. S. Bank | RBS | S | 2004 | $ 5,500,000 | $ 0 | $ 0 |
| Bank of America | GRSHP LLC. | S | 2004 | $ 10,500,000 | $ 0 | $ 0 |
| SBA | BRD LLC. | S | 2009 | $ 2,000,000 | $ 1,842,500 | $ 11,000 |
| FTUB/Radius | RD LLC. | S | 2009 | $ 4,250,000 | $ 3,815,000 | $ 28,500 |
| Cheviot Bank | RBS | S | 2015 | $ 3,000,000 | $ 2,999,000 | $ 11,300 |
| Integra Bank | RBS | S | 2004 | $ 6,600,000 | $ 0 | $ 0 |
| Stockyard Bank | GRSHP LLC. | S | 2015 | $ 10,500,000 | $ 10,355,000 | $ 24,500 |
| BB&T/BofK | RD Cincy | S | 2009 | $ 14,250,000 | $ 3,655,000 | $ 11,500 |
| | | TOTAL | | $ 51,100,000 | $ 22,666,500 | $ 86,800 |

**TOTAL ASSETS**

| Sources of Income for the Year Ending: | | 12/31/15 |
|---|---|---|
| Interest Income | $ 365,000 | |
| Depreciation/Deduct | $ (465,000) | |
| Real Estate Income:ADJ-Inc | $ (1,070,000) | |
| Other Income: | $ 2,439,000 | |
| TOTAL | $ 1,269,000 | |

**Signature:** ______________________

**Date Signed:** ______________________

Exhibit B Page 1 of 4

“**EXHIBIT B**”

DEBTOR'S EXHIBIT 10
Page 27 of 69

## PERSONAL FINANCIAL STATEMENT

| | | | |
|---|---|---|---|
| **CONFIDENTIAL TO:** | **Fifth Third Bank** | | **6/1/17** |
| **Name:** | RAYMOND SCHNEIDER | | |
| **Residence Address:** | 3515 TIFFANY RIDGE LANE | | |
| **City,State & Zip:** | Cincinnati, Ohio 45241 | | |
| **Occupation:** | Developer / NH Administrator | | |
| **Business Address:** | 10988 Deerfield Road | | |
| **City, State & Zip:** | Cincinnati, Ohio 45242 | | |
| **Business Phone:** | 842-2359 | | |
| **Finanacial Condition As Of:** | 6/1/17 | | |
| **Cash On Hand:** | $ 350,000 | **Notes Payable Bank Secured:** | $ 45,322,000 |
| **Marketable Securities: (See Schedule A)** | $ 4,590,000 | **Notes Payable Bank Unsecured:** | $ 40,000 |
| **Non-Marketable Securities: (See Schedule B)** | $ 70,750,000 | **Amounts Payable To Others Secured:** | $ 35,000 |
| **Securities Held-Broker: In Margin Accounts** | $ 4,590,000 | **Amounts Payable To Others Unsecured:** | $ 145,000 |
| **Partial Interest In Real Estate:(See Schedule C)** | $ 38,785,000 | **Amounts and Bills Due:** | $ 60,000 |
| **Real Estate Owned: (See Schedule D)** | $ 2,050,000 | **Real Estate Mortgages Payables** | $ 711,000 |
| **Loans Receivable:** | $ 1,500,000 | **See Schedules C & D)** | $ 21,052,000 |
| **Automobiles & Other Personal Property:** | $ 450,000 | **Other Debts:** | |
| **Cash-Value L-Insurance: (See Schedule E)** | $ 410,000 | | |
| **Other Assets:** | $ 850,000 | | |
| **TOTAL ASSETS** | **$ 124,325,000** | **TOTAL LIABILITIES:** | $ 67,365,000 |
| | | **NET WORTH** | **$ 56,960,000** |

**SCHEDULE A - MARKETABLE SECURITIES** 6/1/17

| # of Shares Face Value: (Bonds) | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| N/A | Various | RBS | Yes | $ 14,850,000 |
| N/A | LMA Loan | RBS | Merrill Lynch Loan | $ 10,260,000 |
| | | | Liquidity beyond pledge | $ 4,590,000 |

**SCHEDULE B NON- MARKETABLE SECURITIES**

| # of Shares Face Value: | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| 100% | Land/Office/Wrhse-EG | RBS | NO | $ 1,600,000 |
| 100% | Land | Hyde P. Circle | Yes | $ 5,000,000 |
| 100% | Pet Mall | Boston RD | Yes | $ 12,000,000 |
| 100% | Amelia | GRHPR | Yes | $ 3,000,000 |
| 100% | 74 Self Storage | GRHPR | Yes | $ 4,000,000 |
| 100% | Blue Ash | GRHPR | Yes | $ 6,000,000 |
| 100% | Circle Colerain | GRHPR | Yes | $ 7,000,000 |
| 100% | Horizon Health Mgt. | GRHPR | Yes | $ 550,000 |
| 100% | West Chester | GRHPR | Yes | $ 3,000,000 |
| 100% | Ivy Knoll | IKRD | Yes | $ 4,000,000 |
| 100% | Cinti Red Dog | RD Realty | Yes | $ 6,600,000 |
| 85% | the RED | HPC | NO | $ 12,500,000 |
| 100% | Retail | Retail | NO | $ 1,000,000 |
| 100% | Mason Red Dog | RD Realty | Yes | $ 4,500,000 |
| | | | | $ 70,750,000 |

**SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE**

| Address & Type Of Property | Title In Name Of: | % Of Own: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: |
|---|---|---|---|---|---|---|
| NHome-Various | HRM Realty | 33% | Various | $ 296,000 | $ 450,000 | $ 125,000 |
| Various-Apt Blgs | RH Investmt | 50% | Various | $ 288,000 | $ 475,000 | $ 85,000 |
| HRM/Horizon | RBS LLC | 33% | 1973 | $ 2,000,000 | $ 4,000,000 | $ 2,300,000 |
| Red Dog Saugus | Saugus RD | 10% | 2016 | $ 160,000 | $ 5,000,000 | $ 140,000 |
| 54/72 Various | 54/72 Kenwood ( | 50% | 2000 | $ 13,000,000 | $ 28,500,000 | $ 17,500,000 |
| Warehouse | All Realty | 33% | 1979 | $ 6,000 | $ 110,000 | $ 45,000 |
| Alternative Home Care | Alternative | 25% | 2001 | $ 85,000 | $ 250,000 | $ 146,000 |
| | | | | | $ 38,785,000 | $ 20,341,000 |

DEBTOR'S EXHIBIT 10
Page 30 of 69



## SCHEDULE D - REAL ESTATE OWNED

6/1/17

| Address & Type: | Title In Name Of: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: | Monthly Payments: |
|---|---|---|---|---|---|---|
| Tiffany Ridge | RBS | 1985 | $ 345,000 | $ 800,000 | $ 320,000 | $ 2,600 |
| Colorado.* | RBS | 1995 | $ 495,000 | $ 1,250,000 | $ 391,000 | $ 2,900 |
| | TOTAL | | $ 840,000 | $ 2,050,000 | $ 711,000 | $ 5,500 |

* Rental income 1100 mth

## SCHEDULE E - LIFE INSURANCE

| Company: | Name Of Policy: | Owner: | | Benificiary Amount: | Face Loans: | Policy Value: | Cash Surrender: |
|---|---|---|---|---|---|---|---|
| Prudential | RBS | WIFE | | $ 4,800,000 | N/A | $ 4,800,000 | $ 158,000 |
| Prudential | RBS | WIFE | | $ 500,000 | N/A | $ 500,000 | $ 48,500 |
| Guardian | RBS | WIFE | | $ 500,000 | N/A | $ 535,000 | $ 92,000 |
| | | | TOTAL | $ 5,800,000 | | $ 5,835,000 | $ 298,500 |

## BANKS WHERE CREDIT HAS BEEN OBTAINED

| Name Of Lender: | Credit In Name Of: | Secured Unsecured: | Original Date: | High Credit: | Current Balance: | Monthly Payment: |
|---|---|---|---|---|---|---|
| 5/3 | RBS | S | 2016 | $ 17,500,000 | $ 17,100,000 | $ 62,000 |
| Bank GE Credit | Red Dog RD | S | 2016 | $ 3,250,000 | $ 3,220,000 | $ 12,000 |
| SBA | BRD LLC. | S | 2009 | $ 5,000,000 | $ 0 | $ 0 |
| FTUB/Radius | RD LLC. | S | 2009 | $ 4,250,000 | $ 0 | $ 0 |
| MainSource Bank | RBS | S | 2015 | $ 7,000,000 | $ 6,695,000 | $ 11,300 |
| Integra Bank | RBS | S | 2004 | $ 6,600,000 | $ 0 | $ 0 |
| Stockyard Bank | BRSHP LLC. | S | 2015 | $ 13,500,000 | $ 12,900,000 | $ 34,500 |
| BB&T/BofK | RD Cincy | S | 2009 | $ 14,250,000 | $ 1,455,000 | $ 3,650 |
| | | TOTAL | | $ 53,850,000 | $ 24,270,000 | $ 123,450 |
| | | TOTAL ASSETS | | | | |

| Sources of Income for the Year Ending: | | 12/31/16 |
|---|---|---|
| Interest Income | $ 235,000 | |
| Depreciation/Deduct | $ (365,000) | |
| Real Estate Income:ADJ-Inc | $ (1,070,000) | |
| Other Income: | $ 3,359,000 | |
| TOTAL | $ 2,159,000 | |

Signature: [signature]

Date Signed: 8/17/17

**"EXHIBIT C"**

DEBTOR'S EXHIBIT 10
Page 31 of 69

## PERSONAL FINANCIAL STATEMENT

**CONFIDENTIAL TO:** **Capital Point** **1/25/2018**

| | |
|---|---|
| **Name:** | RAYMOND SCHNEIDER |
| **Residence Address:** | 3515 TIFFANY RIDGE LANE |
| **City,State & Zip:** | Cincinnati, Ohio 45241 |
| **Occupation:** | Developer / NH Administrator |
| **Business Address:** | 10988 Deerfield Road |
| **City, State & Zip:** | Cincinnati, Ohio 45242 |
| **Business Phone:** | 842-2359 |
| **Finanacial Condition As Of:** | 1/25/2018 |

| | | | |
|---|---|---|---|
| **Cash On Hand:** | $ 650,000 | **Notes Payable Bank Secured:** | $ 49,217,000 |
| **Marketable Securities: (See Schedule A)** | $ 6,345,400 | **Notes Payable Bank Unsecured:** | $ 40,000 |
| **Non-Marketable Securities: (See Schedule B)** | $ 77,700,000 | **Amounts Payable To Others Secured:** | $ 35,000 |
| **Securities Held-Broker: In Margin Accounts** | $ 6,345,400 | **Amounts Payable To Others Unsecured:** | $ 120,000 |
| **Partial Interest In Real Estate:(See Schedule C)** | $ 25,420,000 | **Amounts and Bills Due:** | $ 60,000 |
| **Real Estate Owned: (See Schedule D)** | $ 2,200,000 | **Real Estate Mortgages Payables** | $ 700,000 |
| **Loans Receivable:** | $ 1,500,000 | **See Schedules C & D)** | $ 15,147,000 |
| **Automobiles & Other Personal Property:** | $ 450,000 | **Other Debts:** | |
| **Cash-Value L-Insurance: (See Schedule E)** | $ 426,000 | | |
| **Other Assets:** | $ 850,000 | | |
| **TOTAL ASSETS** | **$ 121,886,800** | **TOTAL LIABILITIES:** | $ 65,319,000 |
| | | **NET WORTH** | **$ 56,567,800** |

**SCHEDULE A - MARKETABLE SECURITIES** 1/25/2018

| # of Shares Face Value: (Bonds) | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| N/A | Various | RBS | Yes | $ 16,800,400 |
| N/A | LMA Loan | RBS | Merrill Lynch Loan | $ 10,455,000 |
| | | | Liquidity beyond pledge | $ 6,345,400 |

**SCHEDULE B NON- MARKETABLE SECURITIES**

| # of Shares Face Value: | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| 100% | Land/Office/Wrhse-EG | RBS | NO | $ 1,600,000 |
| 100% | Land | Hyde P. Circle | Yes | $ 2,500,000 |
| 100% | Pet Mall | Boston RD | Yes | $ 12,000,000 |
| 100% | Amelia | GRHPR | Yes | $ 3,000,000 |
| 100% | 74 Self Storage | GRHPR | Yes | $ 4,000,000 |
| 100% | Blue Ash | GRHPR | Yes | $ 6,000,000 |
| 100% | Circle Colerain | GRHPR | Yes | $ 7,000,000 |
| 100% | West Chester | GRHPR | Yes | $ 3,000,000 |
| 100% | EastGate | RBS | Yes | $ 3,000,000 |
| 100% | Ivy Knoll | IKRD | Yes | $ 5,000,000 |
| 100% | Cinti Red Dog | RD Realty | Yes | $ 6,600,000 |
| 85% | the RED | HPC | Yes | $ 18,500,000 |
| 100% | Retail | Retail | NO | $ 1,000,000 |
| 100% | Mason Red Dog | RD Realty | Yes | $ 4,500,000 |
| | | | | $ 77,700,000 |

**SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE**

| Address & Type Of Property | Title In Name Of: | % Of Own: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: |
|---|---|---|---|---|---|---|
| NHome-Various | HRM Realty | 33% | Various | $ 296,000 | $ 610,000 | $ 178,000 |
| Various-Apt Blgs | RH Investmt | 50% | Various | $ 288,000 | $ 600,000 | $ 118,000 |
| Northshore Red DOG | Northshore LLC | 10% | 2017 | $ 550,000 | $ 600,000 | $ 300,000 |
| Red Dog Saugus | Saugus RD | 10% | 2016 | $ 660,000 | $ 750,000 | $ 160,000 |
| 54 Various | 54 Kenwood etc | 50% | 2000 | $ 11,000,000 | $ 22,500,000 | $ 13,500,000 |
| Warehouse | All Realty | 33% | 1979 | $ 6,000 | $ 110,000 | $ 45,000 |
| Alternative Home Car | Alternative | 25% | 2001 | $ 85,000 | $ 250,000 | $ 146,000 |
| | | | | | $ 25,420,000 | $ 14,447,000 |

DEBTOR'S EXHIBIT 10
Page 34 of 69



**SCHEDULE D - REAL ESTATE OWNED** 1/25/2018

| Address & Type: | Title In Name Of: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: | Monthly Payments: |
|---|---|---|---|---|---|---|
| Tiffany Ridge | RBS | 1985 | $ 345,000 | $ 850,000 | $ 315,000 | $ 2,600 |
| Colorado.* | RBS | 1995 | $ 495,000 | $ 1,350,000 | $ 385,000 | $ 2,900 |
| | TOTAL | | $ 840,000 | $ 2,200,000 | $ 700,000 | $ 5,500 |

* Rental income 1100 mth

**SCHEDULE E - LIFE INSURANCE**

| Company: | Name Of Policy: | Owner: | Benificiary Amount: | Face Loans: | Policy Value: | Cash Surrender: |
|---|---|---|---|---|---|---|
| Prudential | RBS | WIFE | $ 4,800,000 | N/A | $ 4,800,000 | $ 165,000 |
| Prudential | RBS | WIFE | $ 500,000 | N/A | $ 500,000 | $ 51,000 |
| Guardian | RBS | WIFE | $ 500,000 | N/A | $ 535,000 | $ 96,000 |
| | | TOTAL | $ 5,800,000 | | $ 5,835,000 | $ 312,000 |

**BANKS WHERE CREDIT HAS BEEN OBTAINED**

| Name Of Lender: | Credit In Name Of: | Secured Unsecured: | Original Date: | High Credit: | Current Balance: | Monthly Payment: |
|---|---|---|---|---|---|---|
| 5/3 | RBS | S | 2016 | $ 12,500,000 | $ 11,100,000 | $ 52,000 |
| Bank GE Credit | Red Dog RD | S | 2016 | $ 3,250,000 | $ 3,220,000 | $ 12,000 |
| SBA | BRD LLC. | S | 2009 | $ 5,000,000 | $ - | $ - |
| FTUB/Radius | RD LLC. | S | 2009 | $ 4,250,000 | $ - | $ - |
| MainSource Bank | RBS | S | 2015 | $ 7,000,000 | $ 6,695,000 | $ 11,300 |
| Commonwealth Bank First Merchant | RBS | S | 2017 | $ 19,000,000 | $ 11,000,000 | $ 43,000 |
| Stockyard Bank | GRSHP LLC. | S | 2015 | $ 13,500,000 | $ 13,155,000 | $ 24,500 |
| BB&T/BofK | RD Cincy | S | 2009 | $ 14,250,000 | $ - | $ - |
| | | TOTAL | | $ 66,250,000 | $ 34,070,000 | $ 142,800 |

**TOTAL ASSETS**

| Sources of Income for the Year Ending: | 12/31/2017 |
|---|---|
| Interest Income | $ 325,000 |
| Depreciation/Deduct | $ (865,000) |
| Real Estate Income:ADJ-Inc | $ (1,050,000) |
| Other Income: | $ 4,259,000 |
| TOTAL | $ 2,669,000 |

Signature: [signature]

Date Signed: 1/31/18

Case 1:25-bk-12607 Doc 185-4 Filed 01/28/26 Entered 01/28/26 16:10:47 Desc
Exhibit D Page 1 of 4



**"EXHIBIT D"**

# PERSONAL FINANCIAL STATEMENT

**CONFIDENTIAL TO:** CBRE — 2/1/19

| | |
|---|---|
| **Name:** | RAYMOND SCHNEIDER |
| **Residence Address:** | 3515 TIFFANY RIDGE LANE |
| **City,State & Zip:** | Cincinnati, Ohio 45241 |
| **Occupation:** | Developer / NH Administrator |
| **Business Address:** | 10988 Deerfield Road |
| **City, State & Zip:** | Cincinnati, Ohio 45242 |
| **Business Phone:** | 842-2359 |
| **Finanacial Condition As Of:** | 2/1/19 |

| | | | |
|---|---|---|---|
| **Cash On Hand:** | $ 475,000 | **Notes Payable Bank Secured:** | $ 54,043,000 |
| **Marketable Securities: (See Schedule A)** | $ 14,605,400 | **Notes Payable Bank Unsecured:** | $ 23,000 |
| **Non-Marketable Securities: (See Schedule B)** | $ 90,100,000 | **Amounts Payable To Others Secured:** | $ 25,000 |
| **Securities Held-Broker: In Margin Accounts** | $ 14,605,400 | **Amounts Payable To Others Unsecured:** | $ 85,000 |
| **Partial Interest In Real Estate:(See Schedule C)** | $ 20,920,000 | **Amounts and Bills Due:** | $ 40,000 |
| **Real Estate Owned: (See Schedule D)** | $ 3,500,000 | **Real Estate Mortgages Payables** | $ 711,000 |
| **Loans Receivable:** | $ 1,500,000 | **See Schedules C & D)** | $ 19,078,000 |
| **Automobiles & Other Personal Property:** | $ 450,000 | **Other Debts:** | |
| **Cash-Value L-Insurance: (See Schedule E)** | $ 410,000 | | |
| **Other Assets:** | $ 850,000 | | |
| **TOTAL ASSETS** | **$ 147,415,800** | **TOTAL LIABILITIES:** | $ 74,005,000 |
| | | **NET WORTH** | **$ 73,410,800** |

DEBTOR'S EXHIBIT 10
Page 37 of 69



## SCHEDULE A - MARKETABLE SECURITIES

2/1/19

| # of Shares Face Value: (Bonds) | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| N/A | Various | RBS | Yes | $ 19,454,400 |
| N/A | LMA Loan | RBS | Merrill Lynch Loan | $ 4,849,000 |
| | | | Liquidity beyond pledge | $ 14,605,400 |

## SCHEDULE B NON- MARKETABLE SECURITIES

| # of Shares Face Value: | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| 100% | Land/Office/Wrhse-EG | RBS | NO | $ 1,600,000 |
| 100% | Land | Hyde P. Circle | Yes | $ 650,000 |
| 100% | Pet Mall | Boston RD | Yes | $ 12,000,000 |
| 100% | Amelia | GRHPR | Yes | $ 3,500,000 |
| 100% | 74 Self Storage | GRHPR | Yes | $ 4,400,000 |
| 100% | Blue Ash | GRHPR | Yes | $ 6,800,000 |
| 100% | Circle Colerain | GRHPR | Yes | $ 8,500,000 |
| 100% | Horizon Health Mgt. | GRHPR | Yes | $ 550,000 |
| 100% | West Chester | GRHPR | Yes | $ 3,500,000 |
| 100% | Ivy Knoll | IKRD | Yes | $ 5,500,000 |
| 100% | Cinti Red Dog | RD Realty | Yes | $ 6,600,000 |
| 85% | the RED | HPC | NO | $ 25,500,000 |
| 100% | Retail | Retail | NO | $ 1,000,000 |
| 100% | Saugus Red Dog | Saugus RD | YES | $ 5,500,000 |
| 100% | Mason Red Dog | RD Realty | Yes | $ 4,500,000 |
| | | | | $ 90,100,000 |

## SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE

| Address & Type Of Property | Title In Name Of: | % Of Own: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: |
|---|---|---|---|---|---|---|
| NHome-Various | HRM Realty | 33% | Various | $ 296,000 | $ 210,000 | $ 78,000 |
| Various-Apt Blgs | RH Investmt | 50% | Various | $ 288,000 | $ 100,000 | $ 38,000 |
| HRM/Horizon | RBS LLC | 33% | 1973 | $ 2,000,000 | $ 1,000,000 | $ 0 |
| West Chester RD | West Chester | 10% | 2016 | $ 660,000 | $ 750,000 | $ 560,000 |
| 54/72 Various | 54/72 Kenwood ( | 50% | 2000 | $ 13,000,000 | $ 18,500,000 | $ 17,500,000 |
| Warehouse | All Realty | 33% | 1979 | $ 6,000 | $ 110,000 | $ 45,000 |
| Alternative Home Care | Alternative | 25% | 2001 | $ 85,000 | $ 250,000 | $ 146,000 |
| | | | | | $ 20,920,000 | $ 18,367,000 |

## SCHEDULE D - REAL ESTATE OWNED

2/1/19

| Address & Type: | Title In Name Of: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: | Monthly Payments: |
|---|---|---|---|---|---|---|
| Tiffany Ridge | RBS | 1985 | $ 345,000 | $ 850,000 | $ 320,000 | $ 2,600 |
| Colorado.* | RBS | 1995 | $ 495,000 | $ 1,250,000 | $ 391,000 | $ 2,900 |
| Eastgate | RBS | 1994 | $ 120,000 | $ 1,400,000 | $ 0 | $ 0 |
| | TOTAL | | $ 960,000 | $ 3,500,000 | $ 711,000 | $ 5,500 |

* Rental income 1100 mth

## SCHEDULE E - LIFE INSURANCE

| Company: | Name Of Policy: | Owner: | | Benificiary Amount: | Face Loans: | Policy Value: | Cash Surrender: |
|---|---|---|---|---|---|---|---|
| Prudential | RBS | WIFE | | $ 4,800,000 | N/A | $ 4,800,000 | $ 258,000 |
| Prudential | RBS | WIFE | | $ 500,000 | N/A | $ 500,000 | $ 58,500 |
| Guardian | RBS | WIFE | | $ 500,000 | N/A | $ 535,000 | $ 117,000 |
| | | | TOTAL | $ 5,800,000 | | $ 5,835,000 | $ 433,500 |

## BANKS WHERE CREDIT HAS BEEN OBTAINED

| Name Of Lender: | Credit In Name Of: | Secured Unsecured: | Original Date: | High Credit: | Current Balance: | Monthly Payment: |
|---|---|---|---|---|---|---|
| ıntington Bank | RBS | S | 2016 | $ 17,500,000 | $ 17,100,000 | $ 62,000 |
| Bank GE Credit | Red Dog RD | S | 2016 | $ 3,250,000 | $ 3,220,000 | $ 12,000 |
| SBA | BRD LLC. | S | 2009 | $ 5,000,000 | $ 0 | $ 0 |
| Bluehills Bank | RD LLC. | S | 2009 | $ 6,250,000 | $ 5,840,000 | $ 32,500 |
| First Financial | RBS | S | 2015 | $ 7,000,000 | $ 6,595,000 | $ 21,300 |
| Integra Bank | RBS | S | 2004 | $ 6,600,000 | $ 0 | $ 0 |
| Stockyard Bank | ƎRSHP LLC. | S | 2015 | $ 18,500,000 | $ 17,855,000 | $ 59,500 |
| BB&T/BofK | RD Cincy | S | 2009 | $ 14,250,000 | $ 1,455,000 | $ 3,650 |
| Aegon | the RED | S | 2018 | $ 45,000,000 | $ 24,996,000 | $ 126,000 |
| | | TOTAL | | $ 123,350,000 | $ 34,965,000 | $ 190,950 |
| | | TOTAL ASSETS | | | | |

| Sources of Income for the Year Ending: | 12/31/18 |
|---|---|
| Interest Income | $ 245,000 |
| Depreciation/Deduct | $ (415,000) |
| Real Estate Income:ADJ-Inc | $ (1,070,000) |
| Other Income: | $ 3,439,000 |
| TOTAL | $ 2,199,000 |
| Signature: | [signature] |
| Date Signed: | 2/19/19 |

Case 1:25-bk-12607 Doc 185-5 Filed 02/18/26 Entered 02/18/26 16:40:46 Desc
Exhibit E Page 1 of 4

“**EXHIBIT E**”

DEBTOR'S EXHIBIT 10
Page 39 of 69

## PERSONAL FINANCIAL STATEMENT

**CONFIDENTIAL TO:** **Park National Bank** **10/1/19**

| | |
|---|---|
| **Name:** | RAYMOND SCHNEIDER |
| **Residence Address:** | 3515 TIFFANY RIDGE LANE |
| **City,State & Zip:** | Cincinnati, Ohio 45241 |
| **Occupation:** | Developer Operator |
| **Business Address:** | 10988 Deerfield Road |
| **City, State & Zip:** | Cincinnati, Ohio 45242 |
| **Business Phone:** | 842-2359 |
| **Finanacial Condition As Of:** | 10/1/19 |

| | | | |
|---|---|---|---|
| **Cash On Hand:** | $ 275,000 | **Amounts and Bills Secured:** | $ 60,000 |
| **Marketable Securities: (See Schedule A)** | $ 20,454,400 | **Debt Marketable Securities: (See Schedule A)** | $ 10,850,000 |
| **Non-Marketable Securities: (See Schedule B)** | $ 116,100,000 | **Debt Non-Marketable Securities (See Schedule F)** | $ 59,668,000 |
| **Partial Interest In Real Estate:(See Schedule C)** | $ 16,500,000 | **Debt Partial Interests in RE: (See Schedule C)** | $ 7,987,000 |
| **Real Estate Owned: (See Schedule D)** | $ 2,130,000 | **Debt Real Estate Owned: (See Schedule D** | $ 711,000 |
| **Loans Receivable:** | $ 360,000 | **Notes Payable Bank Unsecured:** | $ 40,000 |
| **Automobiles & Other Personal Property:** | $ 320,000 | **Amounts Payable to Others Secured:** | $ 35,000 |
| **Cash-Value L-Insurance: (See Schedule E)** | $ 898,500 | **Amounts Payable to Others Unsecured:** | $ 65,000 |
| **Other Assets:** | $ 350,000 | | |
| **TOTAL ASSETS** | **$ 157,387,900** | **TOTAL LIABILITIES:** | $ 79,416,000 |
| | | **NET WORTH** | **$ 77,971,900** |

**SCHEDULE A - MARKETABLE SECURITIES** 10/1/19

| # of Shares Face Value: (Bonds) | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| N/A | Various | RBS | Yes | $ 20,454,400 |
| N/A | LMA Loan | RBS | Merrill Lynch Loan | $ 10,850,000 |
| | | | Liquidity beyond pledge | $ 9,604,400 |

**SCHEDULE B NON- MARKETABLE SECURITIES**

| # of Shares Face Value: | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| 100% | Land/Office/Wrhse-EG | RBS | NO | $ 275,000 |
| 100% | Land | Hyde P. Circle | Yes | $ 750,000 |
| 100% | Pet Mall | Boston RD | Yes | $ 12,150,000 |
| 100% | Amelia | GRHPR | Yes | $ 4,250,000 |
| 100% | 74 Self Storage | GRHPR | Yes | $ 4,750,000 |
| 100% | Blue Ash | GRHPR | Yes | $ 7,650,000 |
| 100% | Circle Colerain | GRHPR | Yes | $ 10,800,000 |
| 100% | Springdale CS | GRHPR | Yes | $ 6,000,000 |
| 100% | West Chester | GRHPR | Yes | $ 3,000,000 |
| 100% | Ivy Knoll | IKRD | Yes | $ 4,450,000 |
| 100% | Cinti Red Dog | RD Realty | Yes | $ 7,750,000 |
| 85% | the RED | HPC | NO | $ 40,550,000 |
| 100% | Red Dog Saugus | NSRD | Yes | $ 6,650,000 |
| 100% | Retail | Retail | NO | $ 1,050,000 |
| 100% | Mason Red Dog | RD Realty | Yes | $ 6,025,000 |
| | | | | $ 116,100,000 |

**SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE**

| Address & Type Of Property | Title In Name Of: | % Of Own: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: |
|---|---|---|---|---|---|---|
| NHome-Various | HRM Realty | 33% | Various | $ 296,000 | $ 610,000 | $ 178,000 |
| Various-Apt Blgs | RH Investmt | 50% | Various | $ 288,000 | $ 800,000 | $ 118,000 |
| HRM/Horizon | RBS LLC | 33% | 1973 | $ 2,000,000 | $ 300,000 | $ - |
| 72 Various | 72 Kenwood etc | 50% | 2000 | $ 6,500,000 | $ 14,500,000 | $ 7,500,000 |
| Warehouse | All Realty | 33% | 1979 | $ 6,000 | $ 90,000 | $ 45,000 |
| Alternative Home Care | Alternative | 25% | 2001 | $ 85,000 | $ 200,000 | $ 146,000 |
| | | | | | $ 16,500,000 | $ 7,987,000 |
| | | | | | | $ 8,513,000 |

DEBTOR'S EXHIBIT 10
Page 42 of 69



**SCHEDULE D - REAL ESTATE OWNED** 10/1/19

| Address & Type: | Title In Name Of: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: | Monthly Payments: |
|---|---|---|---|---|---|---|
| Tiffany Ridge | RBS | 1985 | $ 345,000 | $ 880,000 | $ 320,000 | $ 2,600 |
| Colorado.* | RBS | 1995 | $ 495,000 | $ 1,250,000 | $ 391,000 | $ 2,900 |
| | TOTAL | | $ 840,000 | $ 2,130,000 | $ 711,000 | $ 5,500 |

* Rental income 1100 mth

**SCHEDULE E - LIFE INSURANCE**

| Company: | Name Of Policy: | Owner: | | Beneficiary Amount: | Face Loans: | Policy Value: | Cash Surrender: |
|---|---|---|---|---|---|---|---|
| Prudential | RBS | WIFE | | $ 4,800,000 | N/A | $ 4,800,000 | $ 458,000 |
| Prudential | RBS | WIFE | | $ 500,000 | N/A | $ 500,000 | $ 148,500 |
| Guardian | RBS | WIFE | | $ 500,000 | N/A | $ 535,000 | $ 292,000 |
| | | | TOTAL | $ 5,800,000 | | $ 5,835,000 | $ 898,500 |

**BANKS WHERE CREDIT HAS BEEN OBTAINED**

| Name Of Lender: | Credit In Name Of: | Secured Unsecured: | Original Date: | High Credit: | Current Balance: | Monthly Payment: |
|---|---|---|---|---|---|---|
| Huntington | RBS | S | 2016 | $ 17,500,000 | $ 7,500,000 | $ 40,000 |
| Bank GE Credit | Red Dog RD | S | 2016 | $ 3,250,000 | $ 3,220,000 | $ 12,000 |
| SBA | BRD LLC. | S | 2009 | $ 3,500,000 | $ 1,758,000 | $ 11,000 |
| Blue Hills | RD LLC. | S | 2009 | $ 4,250,000 | $ 3,840,000 | $ 28,500 |
| Civista Bank | RBS | S | 2015 | $ 7,000,000 | $ 6,695,000 | $ 11,300 |
| Aegon | RBS | S | 2017 | $ 45,000,000 | $ 27,000,000 | $ 118,000 |
| Stockyard Bank | 3RSHP LLC. | S | 2015 | $ 18,500,000 | $ 17,155,000 | $ 24,500 |
| | | TOTAL | | $ 81,500,000 | $ 59,668,000 | $ 245,300 |

**TOTAL ASSETS**

**Sources of Income for the Year Ending:** 12/31/18

| | |
|---|---|
| **Interest Income** | $ 235,000 |
| **Depreciation/Deduct** | $ (365,000) |
| **Real Estate Income:ADJ-Inc** | $ (1,070,000) |
| **Other Income:** | $ 3,359,000 |
| **TOTAL** | $ 2,159,000 |

**Signature:** [signature]

**Date Signed:** 12/5/19

Case 1:25-bk-12607 Doc 189-6 Filed 01/28/26 Entered 01/28/26 16:40:47 Desc
Exhibit F Page 1 of 4

"**EXHIBIT F**"

DEBTOR'S EXHIBIT 10
Page 43 of 69

## PERSONAL FINANCIAL STATEMENT

**CONFIDENTIAL TO:** **Heritage Bank** **3/1/22**

| | | | |
|---|---|---|---|
| **Name:** | RAYMOND SCHNEIDER | | |
| **Residence Address:** | 3515 TIFFANY RIDGE LANE | | |
| **City,State & Zip:** | Cincinnati, Ohio 45241 | | |
| **Occupation:** | Developer Operator | | |
| **Business Address:** | 10988 Deerfield Road | | |
| **City, State & Zip:** | Cincinnati, Ohio 45242 | | |
| **Business Phone:** | 842-2359 | | |
| **Finanacial Condition As Of:** | 3/1/22 | | |

| | | | |
|---|---|---|---|
| **Cash On Hand:** | $ 245,000 | **Amounts and Bills Secured:** | $ 55,000 |
| **Marketable Securities: (See Schedule A)** | $ 23,400,000 | **Debt Marketable Securities: (See Schedule A)** | $ 13,750,000 |
| **Non-Marketable Securities: (See Schedule B)** | $ 116,525,000 | **Debt Non-Marketable Securities (See Schedule F)** | $ 75,688,000 |
| **Partial Interest in Real Estate:(See Schedule C)** | $ 6,050,000 | **Debt Partial Interests in RE: (See Schedule C)** | $ 4,087,000 |
| **Real Estate Owned: (See Schedule D)** | $ 3,480,000 | **Debt Real Estate Owned: (See Schedule D** | $ 689,000 |
| **Loans Receivable:** | $ 220,000 | **Notes Payable Bank Unsecured:** | $ 12,000 |
| **Automobiles & Other Personal Property:** | $ 320,000 | **Amounts Payable to Others Secured:** | $ 28,000 |
| **Cash-Value L-Insurance: (See Schedule E)** | $ 1,085,000 | **Amounts Payable to Others Unsecured:** | $ 40,000 |
| **Other Assets:** | $ 350,000 | | |
| **TOTAL ASSETS** | **$ 151,675,000** | **TOTAL LIABILITIES:** | $ 94,349,000 |
| | | **NET WORTH** | **$ 57,326,000** |

**SCHEDULE A - MARKETABLE SECURITIES** 3/1/22

| # of Shares Face Value: (Bonds) | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| N/A | Various | RBS | Yes | $ 23,400,000 |
| N/A | LMA Loan | RBS | Merrill Lynch Loan | $ 13,750,000 |
| | | | Liquidity beyond pledge | $ 9,650,000 |

**SCHEDULE B NON- MARKETABLE SECURITIES**

| # of Shares Face Value: | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| 100% | Land/Office/Wrhse-EG | RBS | NO | $ 600,000 |
| 100% | Land | Hyde P. Circle | Yes | $ 750,000 |
| 100% | Pet Mall | Boston RD | Yes | $ 10,150,000 |
| 100% | Amelia | GRHPR | Yes | $ 3,250,000 |
| 100% | 74 Self Storage | GRHPR | Yes | $ 3,750,000 |
| 100% | Blue Ash | GRHPR | Yes | $ 6,250,000 |
| 100% | Circle Colerain | GRHPR | Yes | $ 7,800,000 |
| 100% | Springdale CS | GRHPR | Yes | $ 10,700,000 |
| 100% | West Chester | GRHPR | Yes | $ 3,500,000 |
| 100% | Ivy Knoll | IKRD | Yes | $ 3,850,000 |
| 100% | Lebanon Krogers | GRHPR | Yes | $ 2,000,000 |
| 100% | Cinti Red Dog | RD Realty | Yes | $ 6,050,000 |
| 85% | the RED | HPC | Yes | $ 40,550,000 |
| 100% | Red Dog Saugus | NSRD | Yes | $ 5,650,000 |
| 100% | Retail | Retail | Yes | $ 950,000 |
| 100% | Gatherings | Techwoods LLC | Yes | $ 3,500,000 |
| 100% | Kett Warehouse | Madison LLC | Yes | $ 3,200,000 |
| 100% | Mason Red Dog | RD Realty | Yes | $ 4,025,000 |
| | | | | $ 116,525,000 |

**SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE**

| Address & Type Of Property | Title In Name Of: | % Of Own: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: |
|---|---|---|---|---|---|---|
| NHome-Various | HRM Realty | 33% | Various | $ 296,000 | $ 610,000 | $ 178,000 |
| Various-Apt Blgs | RH Investmt | 50% | Various | $ 288,000 | $ 600,000 | $ 118,000 |
| HRM/Horizon | RBS LLC | 33% | 1973 | $ 2,000,000 | $ 300,000 | $ - |
| Atlanta RD | Atlanta RD LLC | 80% | 2019 | $ 3,400,000 | $ 3,650,000 | $ 3,300,000 |
| Warehouse | All Realty | 33% | 1979 | $ 6,000 | $ 90,000 | $ 45,000 |
| Kenwood Ptr. | Kenwood LCC | 33% | 2001 | $ 585,000 | $ 800,000 | $ 446,000 |
| | | | | | $ 6,050,000 | $ 4,087,000 |
| | | | | | | $ 1,963,000 |

DEBTOR'S EXHIBIT 10
Page 46 of 69



**SCHEDULE D - REAL ESTATE OWNED** 3/1/22

| Address & Type: | Title In Name Of: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: | Monthly Payments: |
|---|---|---|---|---|---|---|
| Tiffany Ridge | RBS | 1985 | $ 345,000 | $ 880,000 | $ 309,000 | $ 2,600 |
| Colorado.* | RBS | 1995 | $ 495,000 | $ 1,250,000 | $ 380,000 | $ 2,900 |
| EastGate Land | RBS | 1997 | $ 1,250,000 | $ 1,350,000 | -0- | -0- |
| | TOTAL | | $ 2,090,000 | $ 3,480,000 | $ 689,000 | $ 5,500 |

* Rental income 1100 mth

**SCHEDULE E - LIFE INSURANCE**

| Company: | Name Of Policy: | Owner: | | Benificiary Amount: | Face Loans: | Policy Value: | Cash Surrender: |
|---|---|---|---|---|---|---|---|
| Lincoln National | RBS | WIFE | | $ 3,250,000 | N/A | $ 3,250,000 | $1,085,000 |
| Lincoln National | RBS | WIFE | | $ 10,000,000 | N/A | $ 10,000,000 | -0- |
| | | | TOTAL | $ 13,250,000 | | $ 13,250,000 | $1,085,000 |

**BANKS WHERE CREDIT HAS BEEN OBTAINED**

| Name Of Lender: | Credit In Name Of: | Secured Unsecured: | Original Date: | High Credit: | Current Balance: | Monthly Payment: |
|---|---|---|---|---|---|---|
| leritage Bank | RBS | S | 2019 | $ 4,100,000 | $ 4,065,000 | $ 21,500 |
| Bank GE Credit | Red Dog RD | S | 2016 | $ 3,250,000 | $ 3,160,000 | $ 18,000 |
| SBA | BRD LLC. | S | 2009 | $ 3,500,000 | $ 1,758,000 | $ 11,000 |
| Rockland Bank | RD LLC. | S | 2009 | $ 4,250,000 | $ 3,840,000 | $ 28,500 |
| Civista Bank | RBS | S | 2015 | $ 10,000,000 | $ 9,395,000 | $ 34,500 |
| Aegon | RBS | S | 2017 | $ 45,000,000 | $ 38,000,000 | $ 158,000 |
| First Merchant | 3RSHP LLC. | S | 2019 | $ 20,000,000 | $ 19,535,000 | $ 74,500 |
| | | TOTAL | | $ 86,000,000 | $ 75,688,000 | $ 346,000 |

**TOTAL ASSETS**

| Sources of Income for the Year Ending: | | 12/31/21 |
|---|---|---|
| Interest Income | $ 372,000 | |
| Depreciation/Deduct | $ (880,000) | * Depreciation $5,450,000 |
| Real Estate Income:ADJ-Inc | $ (1,140,000) | |
| Other Income: | $ 3,860,000 | |
| TOTAL | $ 2,212,000 | |

Signature: [signature]

Date Signed: 5/1/22

Case 1:25-bk-12607 Doc 189-1 Filed 02/27/26 Entered 02/27/26 12:10:37 Desc
Exhibit G Page 1 of 4

“**EXHIBIT G**” DEBTOR'S EXHIBIT 10
Page 47 of 69

## PERSONAL FINANCIAL STATEMENT

**CONFIDENTIAL TO:** **AEGON** **4/30/23**

| | | | |
|---|---|---|---|
| **Name:** | RAYMOND SCHNEIDER | | |
| **Residence Address:** | 3515 TIFFANY RIDGE LANE | | |
| **City,State & Zip:** | Cincinnati, Ohio 45241 | | |
| **Occupation:** | Developer Operator | | |
| **Business Address:** | 10988 Deerfield Road | | |
| **City, State & Zip:** | Cincinnati, Ohio 45242 | | |
| **Business Phone:** | 842-2359 | | |
| **Finanacial Condition As Of:** | 4/30/23 | | |
| **Cash On Hand:** | $ 165,000 | **Amounts and Bills Secured:** | $ 12,000 |
| **Marketable Securities: (See Schedule A)** | $ 24,500,000 | **Debt Marketable Securities: (See Schedule A)** | $ 16,950,000 |
| **Non-Marketable Securities: (See Schedule B)** | $ 194,700,000 | **Debt Non-Marketable Securities (See Schedule F)** | $ 109,686,000 |
| **Partial Interest In Real Estate:(See Schedule C)** | $ 5,230,000 | **Debt Partial Interests In RE: (See Schedule C)** | $ 3,640,000 |
| **Real Estate Owned: (See Schedule D)** | $ 5,550,000 | **Debt Real Estate Owned: (See Schedule D** | $ 2,790,000 |
| **Loans Receivable:** | $ 1,000 | **Notes Payable Bank Unsecured:** | $ |
| **Automobiles & Other Personal Property:** | $ 75,000 | **Amounts Payable to Others Secured:** | $ 10,000 |
| **Cash-Value L-Insurance: (See Schedule E)** | $ 1,085,000 | **Amounts Payable to Others Unsecured:** | $ 5,000 |
| **Other Assets:** | $ 270,000 | | |
| **TOTAL ASSETS** | **$ 231,576,000** | **TOTAL LIABILITIES:** | $ 133,093,000 |
| | | **NET WORTH** | **$ 98,483,000** |

DEBTOR'S EXHIBIT 10
Page 49 of 69



**SCHEDULE A - MARKETABLE SECURITIES** 4/30/23

| # of Shares Face Value: (Bonds) | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| N/A | Various | RBS | Yes | $ 24,500,000 |
| N/A | LMA Loan | RBS | Merrill Lynch Loan | $ 16,950,000 |
| | | | Liquidity beyond pledge | $ 7,550,000 |

**SCHEDULE B NON- MARKETABLE SECURITIES**

| Control | Ownership RAY | Description: | In Name Of: | Are These Pledged: | Market Value: | Mortgage Balances: |
|---|---|---|---|---|---|---|
| 100% | 100% | American Heart | Circle Dev. | Yes | $ 1,600,000 | $ 1,250,000 |
| 100% | 80% | Pet Hotel & Spa | Trust-GRHPR | Yes | $ 14,500,000 | $ 6,875,000 |
| 100% | 80% | Amelia CS | Trust-GRHPR | Yes | $ 6,500,000 | $ 3,000,000 |
| 100% | 80% | Harrison CS | Trust-GRHPR | Yes | $ 6,000,000 | $ 3,000,000 |
| 100% | 80% | Blue Ash CS | Trust-GRHPR | Yes | $ 6,000,000 | $ 4,500,000 |
| 100% | 80% | Circle Colerain CS | Trust-GRHPR | Yes | $ 9,000,000 | $ 4,600,000 |
| 100% | 80% | Springdale CS | Trust-GRHPR | Yes | $ 11,000,000 | $ 8,600,000 |
| 100% | 80% | West Chester CS | Trust-GRHPR | Yes | $ 10,500,000 | $ 7,700,000 |
| 100% | 85% | Ivy Knoll | IKRD | Yes | $ 7,500,000 | $ 3,700,000 |
| 100% | 80% | Cinti Red Dog | Trust-RD Realty | Yes | $ 6,000,000 | $ 2,800,000 |
| 100% | 80% | the RED | Trust-RED | Yes | $ 80,000,000 | $ 43,700,000 |
| 100% | 80% | Red Dog Saugus | Trust-NSRD | Yes | $ 6,000,000 | $ 3,890,000 |
| 100% | 100% | RED Corner | Red Corner | Yes | $ 14,000,000 | $ 7,700,000 |
| 100% | 100% | Oaklawn | HP Circle | Yes | $ 300,000 | $ 190,000 |
| 100% | 100% | Ringo Lane | 9617 Kenwood | Yes | $ 3,500,000 | $ 2,024,000 |
| 100% | 100% | Lebanon Krogers | Lebanon | Yes | $ 3,000,000 | $ 950,000 |
| 100% | 100% | Retail | Retail | Yes | $ 1,250,000 | $ 550,000 |
| 100% | 100% | Gatherings | Tech Woods | Yes | $ 2,250,000 | $ 1,450,000 |
| 100% | 100% | Applebees | Tech Woods | Yes | $ 1,250,000 | $ 750,000 |
| 100% | 80% | Mason Red Dog | Trust-RD | Yes | $ 4,550,000 | $ 2,457,000 |
| | | | | | $ 194,700,000 | $ 109,686,000 |

**SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE**

| Address & Type Of Property | Title In Name Of: | % Of Own: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: |
|---|---|---|---|---|---|---|
| Hamilton Propty | Hamilton | 5% | Various | $ 150,000 | $ 210,000 | NA |
| Rookwood | Rookwood | 4% | Various | $ 185,000 | $ 220,000 | NA |
| Point Blank | RBS LLC | 1% | 2018 | $ 125,000 | $ 175,000 | NA |
| Dillionvale SC | Dillonvale | 6% | 2000 | $ 85,000 | $ 125,000 | $ 65,000 |
| Kett Tool | Warehouse | 100% | 2020 | $ 2,800,000 | $ 3,200,000 | $ 2,600,000 |
| Kenwood Land | 9617 Kenwood | 100% | 2021 | $ 1,218,000 | $ 1,300,000 | $ 975,000 |
| | | | | | $ 5,230,000 | $ 3,640,000 |

DEBTOR'S EXHIBIT 10
Page 50 of 69



**SCHEDULE D - REAL ESTATE OWNED** 4/30/23

| Address & Type: | Title In Name Of: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: | Monthly Payments: |
|---|---|---|---|---|---|---|
| Tiffany Ridge | RBS | 1985 | $ 345,000 | $ 750,000 | $ 300,000 | $ 2,600 |
| Colorado.* | RBS | 1995 | $ 495,000 | $ 1,300,000 | $ 390,000 | $ 2,900 |
| Maine | RBS | 2021 | $ 2,550,000 | $ 3,500,000 | $ 2,100,000 | $ 9,100 |
| | TOTAL | | $ 3,390,000 | $ 5,550,000 | $ 2,790,000 | $ 14,600 |

* Rental income 1100 mth

**SCHEDULE E - LIFE INSURANCE**

| Company: | Name Of Policy: | Owner: | | Beneficiary Amount: | Face Loans: | Policy Value: | Cash Surrender: |
|---|---|---|---|---|---|---|---|
| Lincoln National | RBS | WIFE | | $ 3,250,000 | N/A | $ 3,250,000 | $1,085,000 |
| Lincoln National | RBS | WIFE | | $ 10,000,000 | N/A | $ 10,000,000 | -0- |
| | | | TOTAL | $ 13,250,000 | | $ 13,250,000 | $1,085,000 |

**BANKS WHERE CREDIT HAS BEEN OBTAINED**

| Name Of Lender: | Credit In Name Of: | Secured Unsecured: | Original Date: | High Credit: | Current Balance: | Monthly Payment: |
|---|---|---|---|---|---|---|
| Heritage | RBS | S | 2019 | $ 3,500,000 | $ 2,970,000 | $ 5,300 |
| GE Credit Union | Red Dog RD | S | 2016 | $ 3,250,000 | $ 3,220,000 | $ 18,000 |
| SBA | BRD LLC. | S | 2009 | $ 3,500,000 | $ 1,758,000 | $ - |
| Blue Hills | RD LLC. | S | 2009 | $ 11,250,000 | $ 10,540,000 | $ 35,500 |
| Civista Bank | RBS | S | 2015 | $ 12,000,000 | $ 9,695,000 | $ 44,300 |
| Aegon | To Life | S | 2017 | $ 45,000,000 | $ 43,800,000 | $ 220,000 |
| First Merchant | the RED 3RSHP LLC. | S | 2019 | $ 35,000,000 | $ 29,875,000 | $ 86,500 |
| Heritage | RBS | S | 2021 | $ 1,500,000 | $ 1,450,000 | $ 4,500 |
| | | TOTAL | | $115,000,000 | $ 103,308,000 | $ 414,100 |

**TOTAL ASSETS**

| Sources of Income for the Year Ending: | | 12/31/22 |
|---|---|---|
| Interest Income | $ 395,000 | |
| Depreciation/Deduct | $ (345,000) | * Depreciation $5,150,000 |
| Real Estate Income:ADJ-Inc | $ (1,570,000) | |
| Other Income: | $ 3,425,000 | |
| TOTAL | $ 1,905,000 | |

**Signature:** [signature]

**Date Signed:** 5/1/23

**"EXHIBIT H"**

DEBTOR'S EXHIBIT 10
Page 51 of 69

DEBTOR'S EXHIBIT 10
Page 52 of 69



**PERSONAL FINANCIAL STATEMENT**

| | | | |
|---|---|---|---|
| **CONFIDENTIAL TO:** | **Warsaw Bank** | | **9/1/24** |
| **Name:** | RAYMOND SCHNEIDER | | |
| **Residence Address:** | 3515 TIFFANY RIDGE LANE | | |
| **City,State & Zip:** | Cincinnati, Ohio 45241 | | |
| **Occupation:** | Developer Operator | | |
| **Business Address:** | 10988 Deerfield Road | | |
| **City, State & Zip:** | Cincinnati, Ohio 45242 | | |
| **Business Phone:** | 842-2359 | | |
| **Finanacial Condition As Of:** | 9/1/24 | | |

| | | | |
|---|---|---|---|
| **Cash On Hand:** | $ 245,000 | **Amounts and Bills Secured:** | $ 8,000 |
| **Marketable Securities: (See Schedule A)** | $ 32,850,000 | **Debt Marketable Securities: (See Schedule A)** | $ 18,350,000 |
| **Non-Marketable Securities: (See Schedule B)** | $ 201,500,000 | **Debt Non-Marketable Securities (See Schedule F)** | $ 107,636,000 |
| **Partial Interest In Real Estate:(See Schedule C)** | $ 5,230,000 | **Debt Partial Interests in RE: (See Schedule C)** | $ 3,640,000 |
| **Real Estate Owned: (See Schedule D)** | $ 7,350,000 | **Debt Real Estate Owned: (See Schedule D** | $ 2,790,000 |
| **Loans Receivable:** | $ 1,000 | **Notes Payable Bank Unsecured:** | $ |
| **Automobiles & Other Personal Property:** | $ 275,000 | **Amounts Payable to Others Secured:** | $ 100,000 |
| **Cash-Value L-Insurance: (See Schedule E)** | $ 1,985,000 | **Amounts Payable to Others Unsecured:** | $ 4,000 |
| **Other Assets:** | $ 370,000 | | |
| **TOTAL ASSETS** | **$ 249,806,000** | **TOTAL LIABILITIES:** | $ 132,528,000 |
| | | **NET WORTH** | **$ 117,278,000** |

**SCHEDULE A - MARKETABLE SECURITIES** 9/1/24

| # of Shares Face Value: (Bonds) | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| N/A | Various | RBS | Yes | $ 32,850,000 |
| N/A | LMA Loan | RBS | Merrill Lynch Loan | $ 18,350,000 |
| | | | Liquidity beyond pledge | $ 14,500,000 |

**SCHEDULE B NON- MARKETABLE SECURITIES**

| Control | Ownership RAY | Description: | In Name Of: | Are These Pledged: | Market Value: | Mortgage Balances: |
|---|---|---|---|---|---|---|
| 100% | 100% | American Heart | Circle Dev. | Yes | $ 2,000,000 | $ 1,200,000 |
| 100% | 80% | Boston Pet Hotel & Spa | Boston RD. | Yes | $ 19,500,000 | $ 6,875,000 |
| 100% | 80% | Amelia CS | Trust-GRHPR | Yes | $ 6,500,000 | $ 3,000,000 |
| 100% | 1% | Harrison CS | Trust-GRHPR | Yes | $ 6,000,000 | $ 3,000,000 |
| 100% | 1% | Blue Ash CS | Trust-GRHPR | Yes | $ 8,000,000 | $ 4,500,000 |
| 100% | 1% | Circle Colerain CS | Trust-GRHPR | Yes | $ 10,000,000 | $ 4,600,000 |
| 100% | 1% | Springdale CS | Trust-GRHPR | Yes | $ 11,000,000 | $ 8,600,000 |
| 100% | 1% | West Chester CS | Trust-GRHPR | Yes | $ 10,500,000 | $ 7,700,000 |
| 100% | 85% | Ivy Knoll | NKAL | Yes | $ 6,000,000 | $ 3,200,000 |
| 100% | 80% | Cinti Red Dog | RD Realty | Yes | $ 6,000,000 | $ 2,800,000 |
| 100% | 9% | the RED | Trust-To Life | Yes | $ 80,000,000 | $ 43,700,000 |
| 100% | 80% | Red Dog Saugus | NSRD | Yes | $ 6,000,000 | $ 3,890,000 |
| 100% | 100% | RED Corner | Red Corner | Yes | $ 14,000,000 | $ 7,700,000 |
| 100% | 100% | Oaklawn | HP Circle | Yes | $ 300,000 | $ 190,000 |
| 100% | 100% | Ringo Lane | 9617 Kenwood | Yes | $ 3,150,000 | $ 2,024,000 |
| 100% | 100% | Lebanon Krogers | Lebanon RD. | NO | $ 2,400,000 | -0- |
| 100% | 100% | Retail | HPC | NO | $ 1,250,000 | -0- |
| 100% | 100% | Gatherings | The Gathering | Yes | $ 2,250,000 | $ 1,450,000 |
| 100% | 100% | Applebees | Tech Woods RD. | Yes | $ 1,250,000 | $ 750,000 |
| 100% | 100% | Grasshopper | Grasshopper II | NO | $ 850,000 | -0- |
| 100% | 100% | Mason Red Dog | Mason RD.-RD | Yes | $ 4,550,000 | $ 2,457,000 |
| | | | | | $ 201,500,000 | $ 107,636,000 |

**SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE**

| Address & Type Of Property | Title In Name Of: | % Of Own: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: |
|---|---|---|---|---|---|---|
| Hamilton Propty | Hamilton | 5% | Various | $ 150,000 | $ 210,000 | NA |
| Rookwood | Rookwood | 4% | Various | $ 185,000 | $ 220,000 | NA |
| Point Blank | RBS LLC | 1% | 2018 | $ 125,000 | $ 175,000 | NA |
| Dillionvale SC | Dillionvale | 6% | 2000 | $ 85,000 | $ 125,000 | $ 65,000 |
| Kett Tool | Warehouse | 100% | 2020 | $ 2,800,000 | $ 3,200,000 | $ 2,600,000 |
| Kenwood Land | 9617 Kenwood | 100% | 2021 | $ 1,218,000 | $ 1,300,000 | $ 975,000 |
| | | | | | $ 5,230,000 | $ 3,640,000 |

**SCHEDULE D - REAL ESTATE OWNED** 9/1/24

| Address & Type: | Title In Name Of: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: | Monthly Payments: |
|---|---|---|---|---|---|---|
| Tiffany Ridge | RBS | 1985 | $ 345,000 | $ 1,050,000 | $ 300,000 | $ 3,600 |
| Colorado.* | RBS | 1995 | $ 495,000 | $ 2,800,000 | $ 390,000 | $ 2,900 |
| Maine | RBS | 2021 | $ 2,550,000 | $ 3,500,000 | $ 2,100,000 | $ 9,100 |
| | TOTAL | | $ 3,390,000 | $ 7,350,000 | $ 2,790,000 | $ 15,600 |

* Rental income 1800 mth

**SCHEDULE E - LIFE INSURANCE**

| Company: | Name Of Policy: | Owner: | | Benificiary Amount: | Face Loans: | Policy Value: | Cash Surrender: |
|---|---|---|---|---|---|---|---|
| Lincoln National | RBS | WIFE | | $ 3,250,000 | N/A | $ 3,250,000 | $1,985,000 |
| Lincoln National | RBS | WIFE | | $ 10,000,000 | N/A | $ 10,000,000 | -0- |
| | | | TOTAL | $ 13,250,000 | | $ 13,250,000 | $1,985,000 |

**BANKS WHERE CREDIT HAS BEEN OBTAINED**

| Name Of Lender: | Credit In Name Of: | Secured Unsecured: | Original Date: | High Credit: | Current Balance: | Monthly Payment: |
|---|---|---|---|---|---|---|
| ritage-Kett/App | RBS | S | 2019 | $ 3,500,000 | $ 2,970,000 | $ 5,300 |
| GE Credit Union | Red Dog RD | S | 2016 | $ 3,250,000 | $ 3,220,000 | $ 18,000 |
| SBA | BRD LLC. | S | 2009 | $ 3,500,000 | $ 1,758,000 | $ - |
| Blue Hills | RD LLC. | S | 2009 | $ 11,250,000 | $ 10,540,000 | $ 35,500 |
| Civista Bank | RBS | S | 2015 | $ 12,000,000 | $ 9,695,000 | $ 44,300 |
| Aegon | To Life the RED | S | 2017 | $ 45,000,000 | $ 42,800,000 | $ 220,000 |
| First Merchant | 3RSHP LLC. | S | 2019 | $ 35,000,000 | $ 29,875,000 | $ 138,500 |
| Heritage-Gatherings | RBS | S | 2021 | $ 1,500,000 | $ 1,450,000 | $ 8,500 |
| | | TOTAL | | $115,000,000 | $ 102,308,000 | $ 470,100 |

**TOTAL ASSETS**

| Sources of Income for the Year Ending: | | 12/31/23 |
|---|---|---|
| **Interest Income** | $ 485,000 | |
| **Depreciation/Deduct** | $ (345,000) | * Depreciation $5,150,000 |
| **Real Estate Income:ADJ-Inc** | $ (1,570,000) | |
| **Other Income:** | $ 3,825,000 | |
| **TOTAL** | $ 2,395,000 | |

**Signature:**

**Date Signed:** 9/24/24

# EXHIBIT I

Form **1040** Department of the Treasury - Internal Revenue Service
**U.S. Individual Income Tax Return** **2023** OMB No. 1545-0074 IRS Use Only - Do not write or staple in this space.

For the year Jan. 1 - Dec. 31, 2023, or other tax year beginning , ending — See separate instructions.

| Your first name and middle initial | Last name | Your social security number |
|---|---|---|
| RAYMOND | SCHNEIDER | [redacted] |
| If joint return, spouse's first name and middle initial | Last name | Spouse's social security number |
| PATRICIA | SCHNEIDER | [redacted] |

Home address (number and street). If you have a P.O. box, see instructions. Apt. no.
3515 TIFFANY RIDGE LANE

City, town, or post office. If you have a foreign address, also complete spaces below. State ZIP code
CINCINNATI OH 45241

Foreign country name | Foreign province/state/county | Foreign postal code

**Presidential Election Campaign** Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund. ☐ You ☐ Spouse

**Filing Status** Check only one box.
☐ Single
☒ Married filing jointly (even if only one had income)
☐ Married filing separately (MFS)
☐ Head of household (HOH)
☐ Qualifying surviving spouse (QSS)
If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QSS box, enter the child's name if the qualifying person is a child but not your dependent

**Digital Assets** At any time during 2023, did you: (a) receive (as a reward, award, or payment for property or services); or (b) sell, exchange, or otherwise dispose of a digital asset (or a financial interest in a digital asset)? (See instructions.) ☐ Yes ☒ No

**Standard Deduction** Someone can claim: ☐ You as a dependent ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness** You: ☒ Were born before January 2, 1959 ☐ Are blind **Spouse:** ☒ Was born before January 2, 1959 ☐ Is blind

**Dependents** (see instructions): If more than four dependents, see instr. and check here ☐

| (1) First name | Last name | (2) Social security number | (3) Relationship to you | (4) Child tax credit | Credit for other dependents |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Income**
Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.
If you did not get a Form W-2, see instructions.

| Line | Description | | | Line | Amount |
|---|---|---|---|---|---|
| 1a | Total amount from Form(s) W-2, box 1 (see instructions) STMT 1 | | | 1a | 418,654. |
| b | Household employee wages not reported on Form(s) W-2 | | | 1b | |
| c | Tip income not reported on line 1a (see instructions) | | | 1c | |
| d | Medicaid waiver payments not reported on Form(s) W-2 (see instructions) | | | 1d | |
| e | Taxable dependent care benefits from Form 2441, line 26 | | | 1e | |
| f | Employer-provided adoption benefits from Form 8839, line 29 | | | 1f | |
| g | Wages from Form 8919, line 6 | | | 1g | |
| h | Other earned income (see instructions) | | | 1h | |
| i | Nontaxable combat pay election (see instructions) | 1i | | | |
| z | Add lines 1a through 1h | | | 1z | 418,654. |
| 2a | Tax-exempt interest | 2a | 65,586. | b Taxable interest 2b | 56,283. |
| 3a | Qualified dividends | 3a | 303,208. | b Ordinary dividends 3b | 330,067. |
| 4a | IRA distributions | 4a | | b Taxable amount 4b | |
| 5a | Pensions and annuities | 5a | | b Taxable amount 5b | |
| 6a | Social security benefits | 6a | 66,478. | b Taxable amount 6b | 56,506. |
| c | If you elect to use the lump-sum election method, check here (see instructions) ☐ | | | | |
| 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ☐ | | | 7 | 763,683. |
| 8 | Additional income from Schedule 1, line 10 | | | 8 | -1,267,988. |
| 9 | Add lines 1z, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** | | | 9 | 357,205. |
| 10 | Adjustments to income from Schedule 1, line 26 | | | 10 | 10,238. |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** | | | 11 | 346,967. |
| 12 | **Standard deduction or itemized deductions** (from Schedule A) | | | 12 | 30,700. |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A | | | 13 | |
| 14 | Add lines 12 and 13 | | | 14 | 30,700. |
| 15 | Subtract line 14 from line 11. If zero or less, enter -0-. This is your **taxable income** | | | 15 | 316,267. |

Attach Sch. B if required.

**Standard Deduction for -**
- Single or Married filing separately, $13,850
- Married filing jointly or Qualifying surviving spouse, $27,700
- Head of household, $20,800
- If you checked any box under Standard Deduction, see instructions.

Form 1040 (2023) RAYMOND & PATRICIA SCHNEIDER [redacted] STMT 5 Page 2

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 16 | **Tax** (see instructions). Check if any from Form(s): 1 ☐ 8814 2 ☐ 4972 3 ☐ | 16 | 34,053. |
| | 17 | Amount from Schedule 2, line 3 | 17 | |
| | 18 | Add lines 16 and 17 | 18 | 34,053. |
| | 19 | Child tax credit or credit for other dependents from Schedule 8812 | 19 | |
| | 20 | Amount from Schedule 3, line 8 | 20 | 7,654. |
| | 21 | Add lines 19 and 20 | 21 | 7,654. |
| | 22 | Subtract line 21 from line 18. If zero or less, enter -0- | 22 | 26,399. |
| | 23 | Other taxes, including self-employment tax, from Schedule 2, line 21 | 23 | 20,555. |
| | 24 | Add lines 22 and 23. This is your **total tax** | 24 | 46,954. |
| **Payments** | 25 | Federal income tax withheld from: | | |
| | a | Form(s) W-2 SEE STATEMENT 6 — 25a: 91,276. | | |
| | b | Form(s) 1099 — 25b: | | |
| | c | Other forms (see instructions) SEE STATEMENT 7 — 25c: 1,968. | | |
| | d | Add lines 25a through 25c | 25d | 93,244. |
| If you have a qualifying child, attach Sch. EIC. | 26 | 2023 estimated tax payments and amount applied from 2022 return | 26 | |
| | 27 | Earned income credit (EIC) — 27: | | |
| | 28 | Additional child tax credit from Schedule 8812 — 28: | | |
| | 29 | American opportunity credit from Form 8863, line 8 — 29: | | |
| | 30 | Reserved for future use — 30: | | |
| | 31 | Amount from Schedule 3, line 15 — 31: | | |
| | 32 | Add lines 27, 28, 29, and 31. These are your **total other payments and refundable credits** | 32 | |
| | 33 | Add lines 25d, 26, and 32. These are your **total payments** | 33 | 93,244. |
| **Refund** | 34 | If line 33 is more than line 24, subtract line 24 from line 33. This is the amount you **overpaid** | 34 | 46,290. |
| | 35a | Amount of line 34 you want **refunded to you.** If Form 8888 is attached, check here ☐ | 35a | |
| Direct deposit? See instructions. | b | Routing number c Type: ☐ Checking ☐ Savings | | |
| | d | Account number | | |
| | 36 | Amount of line 34 you want **applied to your 2024 estimated tax** — 36: 46,290. | | |
| **Amount You Owe** | 37 | Subtract line 33 from line 24. This is the **amount you owe.** For details on how to pay, go to *www.irs.gov/Payments* or see instructions | 37 | |
| | 38 | Estimated tax penalty (see instructions) — 38: | | |

**Third Party Designee** Do you want to allow another person to discuss this return with the IRS? See instructions ☒ **Yes.** Complete below. ☐ **No**

Designee's name CANDICE SALAZAR Phone no. [redacted] Personal identification number (PIN) [redacted]

**Sign Here** Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature | Date | Your occupation: RE PROFESSIONAL | If the IRS sent you an Identity Protection PIN, enter it here (see inst.) [redacted]

Joint return? See instructions. Keep a copy for your records.

Spouse's signature. If a joint return, **both** must sign. | Date | Spouse's occupation: RETIRED | If the IRS sent your spouse an Identity Protection PIN, enter it here (see inst.) [redacted]

Phone no. | Email address

**Paid Preparer Use Only**

| Preparer's name | Preparer's signature | Date | PTIN | Check if: |
|---|---|---|---|---|
| CANDICE SALAZAR | CANDICE SALAZAR | 10/12/24 | [redacted] | ☒ Self-employed |

Firm's name CANDICE J SALAZAR — Phone no. [redacted]

Firm's address 5589 PLUM RUN ROAD MILFORD, OH 45150 — Firm's EIN [redacted]



313922 12-04-23

DEBTOR'S EXHIBIT 10
Page 58 of 69



**SCHEDULE D** (Form 1040)
Department of the Treasury Internal Revenue Service

# Capital Gains and Losses

Attach to Form 1040, 1040-SR, or 1040-NR.
**Use Form 8949 to list your transactions for lines 1b, 2, 3, 8b, 9, and 10.**
**Go to www.irs.gov/ScheduleD for instructions and the latest information.**

OMB No. 1545-0074
**2023**
Attachment Sequence No. 12

Name(s) shown on return: RAYMOND & PATRICIA SCHNEIDER
Your social security number: [redacted]

Did you dispose of any investment(s) in a qualified opportunity fund during the tax year? ☐ Yes ☒ No
If "Yes," attach Form 8949 and see its instructions for additional requirements for reporting your gain or loss.

## Part I Short-Term Capital Gains and Losses - Generally Assets Held One Year or Less (see instructions)

| See instructions for how to figure the amounts to enter on the lines below. This form may be easier to complete if you round off cents to whole dollars. | (d) Proceeds (sales price) | (e) Cost (or other basis) | (g) Adjustments to gain or loss from Form(s) 8949, Part I, line 2, column (g) | (h) Gain or (loss) Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|
| 1a Totals for all short-term transactions reported on Form 1099-B for which basis was reported to the IRS and for which you have no adjustments (see instructions). However, if you choose to report all these transactions on Form 8949, leave this line blank and go to line 1b | | | | |
| 1b Totals for all transactions reported on Form(s) 8949 with **Box A** checked | 6,451,143. | 6,827,655. | 117. | <376,395.> |
| 2 Totals for all transactions reported on Form(s) 8949 with **Box B** checked | | | | |
| 3 Totals for all transactions reported on Form(s) 8949 with **Box C** checked | | | | |

| | | |
|---|---|---|
| 4 Short-term gain from Form 6252 and short-term gain or (loss) from Forms 4684, 6781, and 8824 | 4 | |
| 5 Net short-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 | 5 | |
| 6 Short-term capital loss carryover. Enter the amount, if any, from line 8 of your **Capital Loss Carryover Worksheet** in the instructions | 6 | ( ) |
| 7 **Net short-term capital gain or (loss).** Combine lines 1a through 6 in column (h). If you have any long-term capital gains or losses, go to Part II below. Otherwise, go to Part III on page 2 | 7 | <376,395.> |

## Part II Long-Term Capital Gains and Losses - Generally Assets Held More Than One Year (see instructions)

| See instructions for how to figure the amounts to enter on the lines below. This form may be easier to complete if you round off cents to whole dollars. | (d) Proceeds (sales price) | (e) Cost (or other basis) | (g) Adjustments to gain or loss from Form(s) 8949, Part II, line 2, column (g) | (h) Gain or (loss) Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|
| 8a Totals for all long-term transactions reported on Form 1099-B for which basis was reported to the IRS and for which you have no adjustments (see instructions). However, if you choose to report all these transactions on Form 8949, leave this line blank and go to line 8b | | | | |
| 8b Totals for all transactions reported on Form(s) 8949 with **Box D** checked | 6,133,026. | 5,353,423. | | 779,603. |
| 9 Totals for all transactions reported on Form(s) 8949 with **Box E** checked | 343,581. | 47,325. | | 296,256. |
| 10 Totals for all transactions reported on Form(s) 8949 with **Box F** checked | | | | |

| | | |
|---|---|---|
| 11 Gain from Form 4797, Part I; long-term gain from Forms 2439 and 6252; and long-term gain or (loss) from Forms 4684, 6781, and 8824 | 11 | |
| 12 Net long-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 SEE STATEMENT 11 | 12 | 61,679. |
| 13 Capital gain distributions. See the instructions STMT 12 | 13 | 2,540. |
| 14 Long-term capital loss carryover. Enter the amount, if any, from line 13 of your **Capital Loss Carryover Worksheet** in the instructions | 14 | ( ) |
| 15 **Net long-term capital gain or (loss).** Combine lines 8a through 14 in column (h). Then, go to Part III on page 2 | 15 | 1,140,078. |

**Part III** **Summary**

| | | | |
|---|---|---|---|
| 16 | Combine lines 7 and 15 and enter the result | 16 | 763,683. |

- If line 16 is a **gain,** enter the amount from line 16 on Form 1040, 1040-SR, or 1040-NR, line 7. Then, go to line 17 below.
- If line 16 is a **loss,** skip lines 17 through 20 below. Then, go to line 21. Also be sure to complete line 22.
- If line 16 is **zero,** skip lines 17 through 21 below and enter -0- on Form 1040, 1040-SR, or 1040-NR, line 7. Then, go to line 22.

17 Are lines 15 and 16 **both** gains?
[X] **Yes.** Go to line 18.
[ ] **No.** Skip lines 18 through 21, and go to line 22.

| | | | |
|---|---|---|---|
| 18 | If you are required to complete the **28% Rate Gain Worksheet**(see instructions), enter the amount, if any, from line 7 of that worksheet | 18 | |
| 19 | If you are required to complete the **Unrecaptured Section 1250 Gain Worksheet** (see instructions), enter the amount, if any, from line 18 of that worksheet SEE STATEMENT 13 | 19 | |

20 Are lines 18 and 19 both zero or blank and you are not filing Form 4952?

[X] **Yes.** Complete the **Qualified Dividends and Capital Gain Tax Worksheet** in the instructions for Form 1040, line 16. **Don't** complete lines 21 and 22 below.

[ ] **No.** Complete the **Schedule D Tax Worksheet** in the instructions. **Don't** complete lines 21 and 22 below.

21 If line 16 is a loss, enter here and on Form 1040, 1040-SR, or 1040-NR, line 7, the **smaller** of:

- The loss on line 16; or
- ($3,000), or if married filing separately, ($1,500)

| | | |
|---|---|---|
| 21 | ( | ) |

**Note:** When figuring which amount is smaller, treat both amounts as positive numbers.

22 Do you have qualified dividends on Form 1040, 1040-SR, or 1040-NR, line 3a?

[ ] **Yes.** Complete the **Qualified Dividends and Capital Gain Tax Worksheet** in the instructions for Form 1040, line 16.

[ ] **No.** Complete the rest of Form 1040, 1040-SR, or 1040-NR.

Form **8949**

Department of the Treasury
Internal Revenue Service

# Sales and Other Dispositions of Capital Assets

File with your Schedule D to list your transactions for lines 1b, 2, 3, 8b, 9, and 10 of Schedule D.
Go to www.irs.gov/Form8949 for instructions and the latest information.

OMB No. 1545-0074
**2023**
Attachment Sequence No. **12A**

Name(s) shown on return: RAYMOND & PATRICIA SCHNEIDER

Social security number or taxpayer identification no.: [redacted]

*Before you check Box A, B, or C below, see whether you received any Form(s) 1099-B or substitute statement(s) from your broker. A substitute statement will have the same information as Form 1099-B. Either will show whether your basis (usually your cost) was reported to the IRS by your broker and may even tell you which box to check.*

**Part I** **Short-Term.** Transactions involving capital assets you held 1 year or less are generally short-term (see instructions). For long-term transactions, see page 2.
**Note:** You may aggregate all short-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS and for which no adjustments or codes are required. Enter the totals directly on Schedule D, line 1a; you aren't required to report these transactions on Form 8949 (see instructions).

**You must check Box A, B, or C below. Check only one box.** If more than one box applies for your short-term transactions, complete a separate Form 8949, page 1, for each applicable box. If you have more short-term transactions than will fit on this page for one or more of the boxes, complete as many forms with the same box checked as you need.

[X] **(A)** Short-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS (see **Note** above)
[ ] **(B)** Short-term transactions reported on Form(s) 1099-B showing basis **wasn't** reported to the IRS
[ ] **(C)** Short-term transactions not reported to you on Form 1099-B

| 1 (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold or disposed of (Mo., day, yr.) | (d) Proceeds (sales price) | (e) Cost or other basis. See the **Note** below and see *Column (e)* in the instructions | Adjustment, if any, to gain or loss. If you enter an amount in column (g), enter a code in column (f). See instructions. (f) Code(s) | (g) Amount of adjustment | (h) **Gain or (loss).** Subtract column (e) from column (d) & combine the result with column (g) |
|---|---|---|---|---|---|---|---|
| ML [redacted] | | | 6,108,328. | 6,459,912. | W | 117. | <351,467.> |
| ML | | | 8,484. | 17,309. | | | <8,825.> |
| ML | | | 313,994. | 328,504. | | | <14,510.> |
| ML | | | 20,337. | 21,930. | | | <1,593.> |
| **2 Totals.** Add the amounts in columns (d), (e), (g), and (h) (subtract negative amounts). Enter each total here and include on your Schedule D, **line 1b** (if **Box A** above is checked), **line 2** (if **Box B** above is checked), or **line 3** (if **Box C** above is checked) ......... | | | 6,451,143. | 6,827,655. | | 117. | <376,395.> |

**Note:** If you checked Box A above but the basis reported to the IRS was incorrect, enter in column (e) the basis as reported to the IRS, and enter an adjustment in column (g) to correct the basis. See *Column (g)* in the separate instructions for how to figure the amount of the adjustment.

DEBTOR'S EXHIBIT 10
Page 61 of 69



Form 8949 (2023) Attachment Sequence No. **12A** Page **2**

Name(s) shown on return. Name and SSN or taxpayer identification no. not required if shown on page 1

RAYMOND & PATRICIA SCHNEIDER

**Social security number or taxpayer identification no.** [redacted]

*Before you check Box D, E, or F below, see whether you received any Form(s) 1099-B or substitute statement(s) from your broker. A substitute statement will have the same information as Form 1099-B. Either will show whether your basis (usually your cost) was reported to the IRS by your broker and may even tell you which box to check.*

**Part II Long-Term.** Transactions involving capital assets you held more than 1 year are generally long-term (see instructions). For short-term transactions, see page 1.

**Note:** You may aggregate all long-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS and for which no adjustments or codes are required. Enter the totals directly on Schedule D, line 8a; you aren't required to report these transactions on Form 8949 (see instructions).

**You must check Box D, E, or F below. Check only one box.** If more than one box applies for your long-term transactions, complete a separate Form 8949, page 2, for each applicable box. If you have more long-term transactions than will fit on this page for one or more of the boxes, complete as many forms with the same box checked as you need.

[X] **(D)** Long-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS (see **Note** above)

[ ] **(E)** Long-term transactions reported on Form(s) 1099-B showing basis **wasn't** reported to the IRS

[ ] **(F)** Long-term transactions not reported to you on Form 1099-B

| 1 (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold or disposed of (Mo., day, yr.) | (d) Proceeds (sales price) | (e) Cost or other basis. See the **Note** below and see *Column (e)* in the instructions | Adjustment, if any, to gain or loss. If you enter an amount in column (g), enter a code in column (f). See instructions. (f) Code(s) | (g) Amount of adjustment | (h) Gain or (loss). Subtract column (e) from column (d) & combine the result with column (g) |
|---|---|---|---|---|---|---|---|
| ML [redacted] | | | 5,482,304. | 4,678,610. | | | 803,694. |
| ML [redacted] | | | 294,947. | 317,305. | | | <22,358.> |
| ML [redacted] | | | 774. | 3,900. | | | <3,126.> |
| ML [redacted] | | | 51,546. | 108,531. | | | <56,985.> |
| ML [redacted] | | | 267,828. | 202,883. | | | 64,945. |
| ML [redacted] | | | 35,627. | 42,194. | | | <6,567.> |
| **2 Totals.** Add the amounts in columns (d), (e), (g), and (h) (subtract negative amounts). Enter each total here and include on your Schedule D, **line 8b** (if **Box D** above is checked), **line 9** (if **Box E** above is checked), or **line 10** (if **Box F** above is checked) ........ | | | 6,133,026. | 5,353,423. | | | 779,603. |

**Note:** If you checked Box D above but the basis reported to the IRS was incorrect, enter in column (e) the basis as reported to the IRS, and enter an adjustment in column (g) to correct the basis. See *Column (g)* in the separate instructions for how to figure the amount of the adjustment.

**Form 1116** **U.S. and Foreign Source Income Summary**

NAME
RAYMOND & PATRICIA SCHNEIDER [redacted]

| INCOME TYPE | | TOTAL | U.S. | FOREIGN GENERAL |
|---|---|---|---|---|
| Compensation | | 418,654. | 418,654. | |
| Dividends/Distributions | SEE STATEMENT 51 | 330,067. | 24,777. | 305,290. |
| Interest | | 56,283. | 56,283. | |
| Capital Gains | | 1,229,114. | 1,229,114. | |
| Business/Profession | | 4,661,723. | 4,661,723. | |
| Rent/Royalty | | 3,067,175. | 3,067,175. | |
| State/Local Refunds | | | | |
| Partnership/S Corporation | | 1,178,905. | 1,178,905. | |
| Trust/Estate | | | | |
| Other Income | | 56,506. | 56,506. | |
| Gross Income | | 10,998,427. | 10,693,137. | 305,290. |
| Less: | | | | |
| Section 911 Exclusion | | | | |
| Capital Losses | | 465,431. | 465,431. | |
| Capital Gains Tax Adjustment | | | | |
| Total Income - Form 1116 | | 10,532,996. | 10,227,706. | 305,290. |
| Deductions: | | | | |
| Business/Profession Expenses | | 4,327,727. | 4,327,727. | |
| Rent/Royalty Expenses | | 3,171,995. | 3,171,995. | |
| Partnership/S Corporation Losses | | 1,166,654. | 1,166,654. | |
| Trust/Estate Losses | | | | |
| Capital Losses | | | | |
| Non-capital Losses | | 1,463. | 1,463. | |
| Individual Retirement Account | | | | |
| Moving Expenses | | | | |
| Self-employment Tax Deduction | | 6,280. | 6,280. | |
| Self-employment Health Insurance | | 3,958. | 3,958. | |
| Keogh Contributions | | | | |
| Alimony | | | | |
| Forfeited Interest | | | | |
| Foreign Housing Deduction | | | | |
| Other Adjustments | | 1,507,952. | 1,507,952. | |
| Capital Gains Tax Adjustment | | | | |
| Total Deductions | | 10,186,029. | 10,186,029. | |
| Adjusted Gross Income | | 346,967. | 41,677. | 305,290. |
| Less Itemized Deductions: | | | | |
| Specifically Allocated | | | | |
| Home Mortgage Interest | | | | |
| Other Interest | | | | |
| Ratably Allocated | | 30,700. | 29,848. | 852. |
| Other Deductions | | | | |
| Total Adjustments to Adjusted Gross Income | | 30,700. | 29,848. | 852. |
| Taxable Income | | 316,267. | 11,829. | 304,438. |

327931 11-28-23

RAYMOND & PATRICIA SCHNEIDER [redacted]

FORM 1040 WAGES RECEIVED AND TAXES WITHHELD STATEMENT 1

| T S | EMPLOYER'S NAME | AMOUNT PAID | FEDERAL TAX WITHHELD | STATE TAX WITHHELD | CITY SDI TAX W/H | FICA TAX | MEDICARE TAX |
|---|---|---|---|---|---|---|---|
| S | GRASSHOPPER INVESTMENTS LLC | 418,654. | 91,276. | 18,884. | 5,233. | 9,932. | 8,038. |
| | TOTALS | 418,654. | 91,276. | 18,884. | 5,233. | 9,932. | 8,038. |

FORM 1040 TAX-EXEMPT INTEREST STATEMENT 2

| NAME OF PAYER | AMOUNT |
|---|---|
| ML [redacted] | 115,120. |
| ML [redacted] BOND PREM, | -47,153. |
| ML [redacted] LESS ACC INT PAID | -2,381. |
| TOTAL TO FORM 1040, LINE 2A | 65,586. |

FORM 1040 QUALIFIED DIVIDENDS STATEMENT 3

| NAME OF PAYER | ORDINARY DIVIDENDS | QUALIFIED DIVIDENDS |
|---|---|---|
| INTERNATIONAL BANKCSHARES CORP | 3,655. | 3,655. |
| ML [redacted] | 13,043. | 11,853. |
| ML | 295,411. | 270,173. |
| ML | 817. | 817. |
| ML | 992. | 992. |
| ML | 9,879. | 9,602. |
| ML | 2,011. | 1,857. |
| FROM K-1 - JOSEPH SCHNEIDER TRUST | 4,259. | 4,259. |
| TOTAL INCLUDED IN FORM 1040, LINE 3A | | 303,208. |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| RAYMOND JOSEPH SCHNEIDER, | ) | Case No. 25-12607 |
| Debtor. | ) | Judge Beth A. Buchanan |

**CERTIFICATE OF SERVICE**

I hereby certify that I served or caused to be served the 27th day of February, 2025, a copy of The Huntington National Bank's Motion for Appointment of an Examiner Pursuant to 11 U.S.C. §1104 and Notice of Motion through the court's ECF System on all ECF participants registered in this case at the email address registered with the court, and upon all creditors and parties-in-interest on the attached service via the methods noted thereon.

Respectfully submitted,

Date: February 27, 2026

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Chistopher P. Schueller*
Christopher P. Schueller (OH ID No. 86170)
Timothy P. Palmer (OH ID No. 86166)
Kelly M. Neal (OH ID No. 100889)
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: 412-562-8800
Fax: 412-562-1041
E-mail: christopher.schueller@bipc.com
E-mail: timothy.palmer@bipc.com
E-Mail: kelly.neal@bipc.com

*Attorneys for The Huntington National Bank*

**Service List**

**Via Electronic Mail and ECF Notification**

*Counsel for Debtor*
Thomas R Allen, allen@aksnlaw.com
James A. Coutinho, coutinho@asnalaw.com
Andrew Dennis Rebholz, rebholz@asnalaw.com
Richard K. Stovall, stovall@asnalaw.com
Eric W. Goering, eric@goering-law.com

*Counsel for Asst US Trustee (Cin)*
David, T. Austin, david.austin2@usdoj.gov
Ryan Steven Lett, ryan.lett@usdoj.gov

*Counsel for Three Notes LLC*
Susan M. Argo, sargo@brickergraydon.com

*Counsel for Park National Bank*
Austin Z. Baurichter, abaurichter@brickergraydon.com

*Counsel for First Merchants Bank*
Richard Boydston, richard.boydston@dentons.com
Whitney L. Mosby, whitney.mosby@dentons.com

*Counsel for Creditor Bank of America, N.A.*
Stefanie L. Deka, sdeka@mcglinchey.com
David Mullen, dmullen@mcglinchey.com

*Counsel for Creditor Civista Bank*
Patricia B. Fugee, patricia.fugee@fisherbroyles.com, ecf@cftechsolutions.com

*Counsel for First Merchants Bank*
Patrick Allen Hruby, patrick.hruby@brockandscott.com, wbecf@brockandscott.com

*Counsel for Heritage Bank*
Jon J. Lieberman, bankruptcy@sottileandbarile.com

*Counsel for Stock Yards Bank & Trust Company*
Paul T. Saba, pts@sspfirm.com, eak@sspfirm.com, srb@sspfirm.com

*Counsel for Merrill Lynch, Pierce, Fenner & Smith*
Branden P. Moore, bmoore@mcguirewoods.com

<u>*Counsel for Bank of America, N.A.*</u>
Rudy J. Cerone

<u>*Counsel for General Electric Credit Union*</u>
Donald J. Mallory, DWMallory@woodlamping.com

<u>**Via Regular, U.S. Mail**</u>

<u>*Debtor*</u>
Raymond Joseph Schneider
3515 Tiffany Ridge Lane
Cincinnati, OH 45241

| | |
|---|---|
| Tricia Morra<br>ALDRIDGE PITE, LLP<br>3333 Camino del Rio South, Suite 225<br>San Diego, CA 92108 | TruGreen<br>4041 Thunderbird Lane<br>Fairfield, OH 45014 |
| Truist Bank<br>c/o Corporation Service Company<br>as Statutory Agent<br>1160 Dublin Road, Suite 400<br>Columbus, OH 43215 | Truist Bank<br>Bankruptcy Department<br>PO Box 27767<br>Richmond, VA 23261 |
| Truist Bank<br>PO Box 79041<br>Baltimore, MD 21279- 001 | U.S. Bank National Association<br>Bankruptcy Department<br>PO Box 108<br>Saint Louis MO 63166-0108 |
| US Bank, NA<br>PO Box 790408<br>St. Louis, MO 63179-0408 | Vail Valley Snow Removal<br>2497 Chamonix Ln Apt J3<br>Vail, CO 81657 |
| Vorys, Sater, Seymour and Pease LLP<br>52 East Gay St.<br>Columbus, OH 43215 | Webhannet Golf Club<br>26 Golf Club Drive<br>Kennebunk, ME 04043 |
| Whitney Mosby, Esq.<br>Dentons Bingham Greenebaum, LLP<br>10 West Market Street, #2700<br>Indianapolis, IN 46204 | Xcel Energy<br>414 Nicollet Mall<br>Minneapolis, MN 55401 |
| Xfinity/Comcast<br>7875 Montgomery Rd<br>Cincinnati, OH 45236 | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**CINCINNATI DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| RAYMOND JOSEPH SCHNEIDER, | Case No. 25-12607 |
| Debtor. | Judge Beth A. Buchanan |

**NOTICE OF MOTION OF THE HUNTINGTON NATIONAL BANK**
**FOR THE APPOINTMENT OF AN EXAMINER PURSUANT TO 11 U.S.C. § 1104**

The Huntington National Bank, as Administrative Agent ("**Huntington**") has filed papers with the court for an order approving Huntington's **Motion for Appointment of an Examiner Pursuant to 11 U.S.C. §1104.**

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the court to grant the relief sought in the motion, then on or before **twenty-one (21) days from the date set forth in the certificate of service for the motion/objection**, you must file with the court a response explaining your position by mailing your response by first class mail to the United States Bankruptcy Court for the Southern District of Ohio, 221 East Fourth Street, Cincinnati, Ohio 45202 OR your attorney must file a response using the court's ECF System.

The court must **receive** your response on or before the above date.

You must also send a copy of your response either by 1) the court's ECF System or by 2) first class mail to counsel for Huntington ("Movant").

Respectfully submitted,

Date: February 27, 2026

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Chistopher P. Schueller*

Christopher P. Schueller (OH ID No. 0086170)
Timothy P. Palmer (OH ID No. 86166)
Kelly M. Neal (OH ID, No. 100889)
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: 412-562-8800

Fax: 412-562-1041
E-mail: christopher.schueller@bipc.com
E-mail: timothy.palmer@bipc.com
E-Mail: kelly.neal@bipc.com
*Attorneys for The Huntington National Bank*