ENTERED
SEP - 1 2026

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| **RAYMOND SCHNEIDER,** | : | Case No.: A2300849 |
| Plaintiff, | : | Judge Christian A. Jenkins |
| v. | : | |
| **THE HUNTINGTON NATIONAL BANK, *et al,*** | : | **ENTRY DENYING MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | : | |

On September 22, 2025, Defendants filed a Motion for Summary Judgment, on the basis of *res judicata.* In a prior and separate proceeding (the "Collection Action"), Defendant Huntington National Bank ("Huntington") sued Plaintiff Raymond Schneider ("Schneider") to enforce Schneider's personal guaranty on a loan that was in default with Huntington and obtained a judgment against Mr. Schneider for over $75 million dollars. In the present action, referred to by Defendants as the "Lender Liability Action" and by Plaintiff as the "Corrupt Practices Action," Schneider has brought claims against Defendant Huntington for its role in allegedly facilitating, manipulating, and extending a check-kiting scheme perpetrated by Harold Sosna, without which, Mr. Schneider claims, there would have been no need to enforce Schneider's guaranty. The Complaint also brings claims against Defendants Garrett Vetter, Amy Becker, Suzanne Myers, Troy Jones, Dave Emig, Mike Viren, David Wechter, James Gentry, Angie Quattrone, Maria Steiner, Marina Krivenko, and Chris Hofmann, individuals employed by Huntington who Mr. Schneider alleges personally participated in and benefited from the check-kiting scheme facilitated by Huntington.

D149243703

The motion is fully briefed and the Court heard oral argument on December 17, 2025. Having considered Defendants' Motion, the accompanying briefs, the Parties' arguments, and the law, the Court finds the Motion to not be well-taken and it is hereby **DENIED**.

## I. Procedural Posture and Background

Plaintiff Schneider was a 50% owner of four businesses, Euclid Health Care, Inc., Kenwood Terrace Health Care Center, Inc., Southbrook Health Care Center, Inc., and Beechwood Terrace Care Center, Inc. (collectively, the "Businesses") with Harold Sosna. Each of these four entities owned one skilled-nursing care facility. Sosna operated the Businesses, while Schneider served as passive investor. Additionally, Sosna owned 100% of another four care facilities.

After defaulting on a loan with Fifth Third in August of 2017, Sosna went to Huntington to seek refinancing. In 2018, Huntington refinanced the loan, and on November 30, 2018, Schneider signed a personal guaranty on the loan. Schneider guaranteed 100% of the loan.

In October 2019, Sosna was short on cash and resorted to a check-kiting scheme to cover the day-to day expenses of the care facilities he was operating. Sosna would run a report each morning to determine how much cash he needed that day, and then would make deposits into different bank accounts sufficient to cover the day's expenses. However, these "deposits" were not backed by actual funds. Rather, he relied on a one-day float, during which Sosna had access to funds before the checks had actually cleared. Eventually Sosna was transferring millions of dollars a day to keep the scheme going. The scheme continued until it finally collapsed on May 15, 2020.

The Collection Action, filed by Huntington on June 5, 2020, raised three claims for breach of guaranty, against each of the guarantors, Harold Sosna, Faye Sosna, and Raymond Schneider. The Collection Action Complaint alleged that the borrowers on the loan were in default, that Schneider had personally guaranteed repayment of the loan, and had breached that guaranty by failing to pay. On July 20, 2020, Schneider filed an answer in the Collection Action. Later that

year, Harold Sosna pled guilty to bank fraud and was sentenced to three and one half years in prison.

On December 13, 2022, a judgement was entered against Schneider in the Collection Action in the amount of $75,599,410 plus interest. Schneider obtained a stay of execution on the judgment on January 30, 2023, pending appeal. On December 29, 2023, the First District reversed, finding that Schneider met his burden to demonstrate disputes of fact for trial. However, that decision was appealed to the Supreme Court of Ohio. The Supreme Court reversed the First District, and a certificate of judgment was entered against Schneider on August 25, 2025. Approximately a month later, Mr. Schneider filed for bankruptcy.

After judgment was entered against Mr. Schneider in the Collection Action in 2022, he filed this present action. In this case, he raised four claims against the Defendants: negligence, breach of the duty of good faith and fair dealing, civil racketeering, and civil liability for criminal acts. These claims allege that Huntington and the Individual Defendants actively and knowingly participated in and benefited from the check-kiting scheme. It alleges that Huntington kept the scheme going so that it could collect exorbitant banking fees, and that as the inevitable collapse approached, Huntington strategically froze some but not all accounts to shield itself from losses, leaving other banks "holding the bag" with respect to Sosna's bad checks.

The question before this Court is whether Plaintiff Schneider is barred from raising these claims now in the present action because he failed to raise them as counterclaims in the Collection Action.

## II. Standard for *Res Judicata* Based on a Counterclaim.

Defendants argue that Plaintiff's claims in this case are barred by *res judicata*. "The doctrine of *res judicata* encompasses the two related concepts of claim preclusion, also known as *res judicata* or estoppel by judgment, and issue preclusion, also known as collateral estoppel."

*Crown Chrysler Jeep, Inc. v. Boulware*, 2015-Ohio-5084, ¶ 18 (10th Dist.), quoting *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 2009-Ohio-1704, ¶ 27, quoting *O'Nesti v. DeBartolo Realty Corp.*, 2007-Ohio-1102, ¶ 6. The concept germane to this case, claim preclusion, "'prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action.'" *Id.*, quoting *Schachter* at ¶ 27.

Under claim preclusion, a previous judgment "is conclusive as to all claims that were or might have been litigated in the first action." *Stand Energy Corp. v. Ruyan*, 2005-Ohio-4846, ¶ 12, citing *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990). Thus, a "plaintiff must present every ground for relief in the first action or be forever barred from asserting it." *Id.* This "establishes certainty in legal relations and individual rights, accords stability to judgments, and promotes the efficient use of limited judicial or quasi-judicial time and resources." *Grava v. Parkman Twp.*, 1995-Ohio-331, at ¶ 17.

In the first action Mr. Schneider was not the plaintiff, but rather the defendant. Regardless, the same principles hold: the "[f]ailure to assert a compulsory counterclaim acts as a bar to the litigation of the counterclaim in a subsequent lawsuit" because "failure to assert a compulsory counterclaim constitutes *res judicata*." *Quintus v. McClure*, 41 Ohio App.3d 402, 403-404 (9th Dist. 1987); *Interstate Steel Erectors, Inc. v. H. & L. Wolff, Inc.*, 17 Ohio App.3d 173, 174 (9th Dist. 1984); *see, also, Geauga Truck & Implement Co. v. Juskiewicz*, 9 Ohio St. 3d 12 (1984). However, whether a claim is a compulsory counterclaim is defined by rule, not common law. Thus, when the courts apply *res judicata* to counterclaims, they must look to Civ.R. 13(A). *See e.g. Geauga*, 9 Ohio St. 3d at 14 (holding claim was a compulsory counterclaim under Civ.R. 13(A) in prior action and thus barred by doctrine of *res judicata*).

Pursuant to Ohio Civ.R. 13(A), a pleading "shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." This establishes two requirements to a compulsory counterclaim. One of the requirements is the same as under the general rule for *res judicata*: whether the claim "arise[s] out of the out of the transaction or occurrence that is the subject matter of the opposing claim." *Geauga*, 9 Ohio St. 3d at 14. The other requirement is specific to counterclaims: whether the claim is "complete and exists before the time the [defendant] is required under Civ.R. 12(A)(1) and (B) to serve his answer and counterclaim" in the first action. *Id.* at 15. On the other hand, a counterclaim that matures or is acquired after pleading, "*may*, with the permission of the court, be presented as a counterclaim by supplemental pleadings." Civ.R. 13(E). (emphasis added). Thus, a claim that matures or is acquired after pleading is not compulsory. *Id.*, *see e.g. First Bank of Marietta v. Mitchell*, 1983 Ohio App. LEXIS 13535, * 15 (4th Dist.) (claim that was not in existence at time of responsive pleading was not compulsory counterclaim because language of Civ.R. 13(E) is "discretionary in nature"); *Erskine Contracting Corp. v. United States Dep't of Housing & Urban Dev.*, 1988 Ohio App. LEXIS 3320, *9 (7th Dist.) (Civ.R 13(E) affords a defendant with a claim that arises after filing an answer "the discretion of interposing such a claim but is not mandatory"); *Pruitt v. Mauger Management Co.*, 1977 Ohio App. LEXIS 7605, *3 (10th Dist.) (claim that arose after responsive pleading was "at most… a permissive counterclaim… rather than a compulsory counterclaim").

### III. Plaintiff's Claims Are Not Barred Because They Were Not Compulsory Counterclaims in the Collection Action.

Plaintiff brings four causes of action against the Defendants in this case: negligence, breach of the duty of good faith and fair dealing, civil racketeering, and civil liability for criminal acts. Because these claims were not complete and did not exist at the time Mr. Schneider was required

to answer in the Collection Action, they were not compulsory counterclaims in that action, and *res judicata* does not bar Plaintiff from raising them now.

**A. Negligence.**

"To establish actionable negligence, one must show in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom." *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). Under the delayed-damages rule, "where the wrongful conduct complained of is not presently harmful, the cause of action does not accrue until actual damage occurs." *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376, 379 (1982). In other words, a cause of action for negligence is not complete until there has been an injury.

The only damage alleged in the Complaint is the damage Mr. Schneider suffered when liability was imposed against him based on the guaranty. The Complaint describes this three ways: if the Defendants had not breached their duty to him, that there "would have been no kiting scheme and, therefore, no need to enforce the Guaranty against Mr. Schneider;" Defendants caused the Businesses and facilities to be sold for much less than they otherwise would have, leaving Schneider "on the hook to cover the shortfall between the amount due on the loan and the amount obtained from the sale;" and the Defendants prevented Schneider from taking proactive steps to preserve the value of the Businesses and "otherwise avoid tens of millions of dollars in obligations as guarantor."

These damages were not incurred until Mr. Schneider was found liable as Guarantor. This did not occur until at least December 13, 2022, more than two years after Mr. Schneider was required to serve an answer in the Collection Action. Because a complete claim did not exist at that time, the negligence claim alleged here was not a compulsory counterclaim and thus is not barred by *res judicata*.

**B. Breach of the Duty of Good Faith and Fair Dealing.**

The complaint also alleges that the Defendants breached their duty of good faith and fair dealing. There is an implied duty of good faith and fair dealing in every Ohio contract. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 463 (2018). However, there is no independent cause of action for breach of the implied duty of good faith and fair dealing apart from a breach of the underlying contract. *Id.* at 464. Thus, this is merely a way of stating a breach of contract. Like a negligence claim, "[a] cause of action for breach of contract does not accrue until the complaining party suffers actual damages as a result of the alleged breach." *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.*, 42 Ohio App.3d 6, paragraph one of the syllabus (9th Dist. 1988). Because Mr. Schneider did not suffer actual damages until he received a judgment against him based on the guaranty, this breach of the duty of good faith and fair dealing claim alleged here was not a compulsory counterclaim and thus is not barred by *res judicata.*

**C. Ohio Civil Racketeering.**

Next, the Complaint alleges a claim of civil racketeering pursuant to the Ohio Corrupt Practices Act. *See* R.C. 2923.32 (criminalizing patterns of corrupt activity) and R.C. 2923.34 (creating civil remedy for the violation of R.C. 2923.32). In *Doe v. Archdiocese of Cincinnati*, 109 Ohio St. 3d 491, 500-501 (2006), the Supreme Court of Ohio adopted the rule from *Rotella v. Wood*, 528 U.S. 549 (2000), for the accrual of civil RICO claims. Under *Archdiocese of Cincinnati* and *Rotella*, such a claim accrues at the point of injury or its reasonable discovery. *Archdiocese of Cincinnati*, 109 Ohio St. 3d at 500-501; *Rotella*, 528 U.S. at 558-559 (adopting injury discovery rule and rejecting rule based on injury and pattern discovery). Because Mr. Schneider was not reasonably aware of damages until he received a judgment against him based on the guaranty, the civil racketeering claim alleged here was not a compulsory counterclaim and thus is not barred by *res judicata.*

**D. Civil Liability for Criminal Acts.**

Finally, the Complaint alleges civil liability for criminal acts pursuant to R.C. 2307.60. Under R.C. 2307.60(A)(1), anyone "injured in person or property by a criminal act has, and may recover full damages in, a civil action." The Court has not found any authority establishing an accrual rule for this cause of action. However, in light of the statute's framework, imposing two requirements: an injury and a criminal act, it is clear that that cause of action cannot be complete and thus cannot exist in the absence of an injury. For that reason, the Court finds that a complete claim for civil liability for criminal acts did not exist at the time Mr. Schneider was required to serve an answer in the Collection Action, and for that reason, the civil liability for criminal acts claim alleged here was not a compulsory counterclaim and thus is not barred by *res judicata*.

**IV. Conclusion**

For these reasons, none of the claims raised in this action were compulsory counterclaims in the Collection, and are not barred by res judicata. Defendants' Motion is **DENIED**.

**IT IS SO ORDERED.**

Judge Christian A. Jenkins