# IRREVOCABLE TRUST AGREEMENT

**between**

**RAYMOND SCHNEIDER**
**as settlor**

**and**

**PATRICIA B. SCHNEIDER**
**as trustee**

**creating a trust which may be referred to as the**
**RAYMOND SCHNEIDER 2019 GIFT TRUST**

**Vorys, Sater, Seymour and Pease LLP**

DEBTOR'S EXHIBIT 25
Page 2 of 33

**RAYMOND SCHNEIDER 2019 GIFT TRUST**

**IRREVOCABLE TRUST AGREEMENT**

I, Raymond Schneider, as settlor, am entering into this irrevocable trust agreement with Patricia B. Schneider, as trustee, creating a trust which may be referred to as the "Raymond Schneider 2019 Gift Trust." This trust agreement shall become effective as December 20, 2019. I am creating this trust agreement for the purposes and upon the terms and conditions hereinafter set forth. Accordingly, any property assigned, conveyed, devised, bequeathed or otherwise transferred to the trustee by me or any other person (all of which, together with all earnings thereon and appreciation and proceeds thereof, is collectively referred to as the "trust estate") shall be held, administered and disposed of by the trustee as hereinafter set forth.

As of the date hereof, I am married to Patricia B. Schneider, a U.S. citizen. We have three (3) children: Justin F. Schneider, Danielle R. Senzer and Eric P. Schneider.

ARTICLE I

Irrevocable trust and gift:

1. Irrevocable trust. This trust agreement is irrevocable, and I relinquish all right to alter, amend or terminate this trust agreement in whole or in part at any time.

2. Irrevocable gift. Any gift of property to this trust shall constitute an irrevocable gift, and any right, title or reversionary interest therein, of any kind or description, which I now have or may subsequently acquire, either by operation of law or otherwise, is hereby renounced and relinquished forever. Any future gift of property to this trust, whether by me or any other person, shall likewise be irrevocable, and any right, title or reversionary interest therein, of any kind and description, which I may have or subsequently acquire, by operation of law or otherwise, shall, by the making of such gift to this trust, be renounced and relinquished forever.

ARTICLE II

During the lifetime of my spouse, Patricia B. Schneider:

1. Disposition of trust estate. During the lifetime of my spouse, Patricia B. Schneider, the trustee shall hold, administer and dispose of the trust estate as set forth in this Article.

2. Payment of net income and principal.

a. The trustee may pay to or for the benefit of my spouse from time to time such amounts of the net income and principal of the trust estate as the trustee may determine to be appropriate for the health, education, maintenance and support of my spouse. The trustee

shall accumulate such net income of the trust estate that is not distributed, and at the end of each calendar year the accumulation shall be treated as principal.

b. Any trustee or co-trustee, or special trustee appointed under the Article entitled "Limitation of trustee's powers and special trustees," that meets the definition of an independent trustee, may pay to or for the benefit of my spouse from time to time such additional amounts of the principal of the trust estate as such independent trustee may determine to be appropriate for any purpose of my spouse, including but not limited to, the following purposes: to purchase or improve a residence; to enter into a trade or business or to participate in an investment opportunity; to undertake tax or financial planning; or for any other purpose that such independent trustee, in such independent trustee's sole discretion, deems to be in the best interests of my spouse.

c. In making any discretionary payments of net income or principal hereunder, the trustee may, but need not, take into consideration my spouse's other sources of funds that are known to the trustee.

3. Testamentary Limited Power of Appointment.

a. Upon the death of my spouse, the remaining balance of the trust estate shall be distributed to any one or more of my issue, in such shares and estates, legal or equitable, and upon such terms and conditions as my spouse may designate and appoint in her will or another written instrument delivered to the trustee by specific reference to this limited power of appointment. If multiple written instruments exist exercising such limited power of appointment, then the last dated written instrument which exercises such limited power of appointment shall supersede all prior exercises. Nothing in this paragraph shall give my spouse the power to appoint any portion of the remaining balance of the trust estate to me, herself, either of our estates, either of our creditors or the creditors of either of our estates.

b. To the extent that my spouse fails to exercise my spouse's limited power of appointment, the trustee shall hold, administer and dispose of the unappointed portion of trust estate in accordance with the provisions of Article III.

## ARTICLE III

Upon the death of my spouse, Patricia B. Schneider:

1. Disposition of trust estate. Upon the death of my spouse, Patricia B. Schneider, the trustee shall hold, administer and dispose of the trust estate as set forth in this Article.

2. Division of the trust estate into separate trusts.

a. The trustee shall divide the trust estate into equal separate shares. There shall be one (1) share for each child of mine who is living on the effective date, and one (1) share for each child of mine who has died leaving issue living on the effective date. Each

share created for a child of mine who has died leaving issue living on the effective date shall be subdivided into separate shares for said child's then living issue, per stirpes. Each share created hereunder shall be treated as a separate trust, and each such trust shall be held, administered and disposed of by the trustee in accordance with the provisions of this Article.

b. Each trust shall be maintained separately, but the trustee, in thc trustee's sole discretion, is authorized to make common investments for all or any of the several trusts created hereby.

c. With respect to each separate trust, there shall be a "primary beneficiary." The primary beneficiary of each trust shall be such person who is the nearest generation to me. For example, while a child of mine is living, such child is the primary beneficiary of the trust created for such child. As another example, if a child has predeceased my spouse, leaving issue surviving such child, then each of such child's children who survive my spouse would be the primary beneficiary of each of the separate trusts so created. Upon the death of a child who survives my spouse, each of such child's children, or the children of a deceased child, would be the primary beneficiary of each of such child's separate trust, and so on.

d. For purposes of this paragraph, the term "effective date" means the date of death of my spouse.

3. <u>Payment of net income and principal.</u>

a. The trustee may pay to or for the benefit of any one or more of the primary beneficiary and the primary beneficiary's issue from time to time such amounts of the net income and/or principal of the primary beneficiary's trust as the trustee may determine to be appropriate for the health, education, maintenance and support of any of such beneficiaries.

i. It is not my intention that such principal payments be made equally to all such beneficiaries, but rather, only to such beneficiaries and in such amounts as the trustee, in the trustee's sole discretion, may determine; provided that the trustee shall consider the needs of the primary beneficiary to be superior to the needs of the primary beneficiary's issue. Any action taken by the trustee shall be conclusive upon all beneficiaries.

ii. Any discretionary distribution of principal made under this subparagraph for a beneficiary's health, education, maintenance and support shall not be considered an advancement against the trust of such beneficiary upon the division of the primary beneficiary's trust if the primary beneficiary fails to effectively exercise his or her limited power of appointment granted hereunder.

b. In addition, any trustee or co-trustee, or special trustee appointed under the Article entitled "Limitation of trustee's powers and special trustees," that meets the definition of an independent trustee, may pay to or for the benefit of any one or more of the primary beneficiary and the primary beneficiary's issue from time to time such additional amounts of the principal of the primary beneficiary's trust as such independent trustee may determine to be appropriate for any purpose of such beneficiary, including but not limited to, the

following purposes: to purchase or improve a residence; to enter into a trade or business or to participate in an investment opportunity; to undertake tax or financial planning; to marry; or for any other purpose that such independent trustee, in such independent trustee's sole discretion, deems to be in the best interests of the beneficiaries.

i. It is not my intention that such principal payments be made equally to all such beneficiaries, but rather, only to such beneficiaries and in such amounts as the trustee, in the trustee's sole discretion, may determine. Any action taken by the trustee shall be conclusive upon all beneficiaries.

ii. The independent trustee shall not make a distribution of principal to any beneficiary under this subparagraph if, in the sole opinion of the independent trustee, such distribution, when added to the amount of all prior distributions actually made to such beneficiary under this subparagraph, is apt to: exceed the distributive share of such beneficiary upon division of the trust if the primary beneficiary fails to effectively exercise his or her limited power of appointment granted hereunder; or jeopardize the capacity of the trust to provide for the health, education, maintenance and support of all of such beneficiaries.

iii. Any discretionary distribution of principal made under this subparagraph beyond such beneficiary's health, education, maintenance and support shall be considered an advancement of principal to such beneficiary and shall be charged, without interest, at the value of such advancement when made, against the trust of such beneficiary created upon the division of the trust if the primary beneficiary fails to effectively exercise his or her limited power of appointment granted hereunder. Any discretionary distribution of principal made by the independent trustee hereunder shall be final and conclusive on all persons even if it subsequently proves that such advancement resulted in other than the per stirpital distribution among the beneficiaries, and, in such event, the trustee shall not seek reimbursement from any beneficiary. The trustee shall determine, in the trustee's sole discretion, whether a distribution of principal constitutes a distribution for a beneficiary's health, education, maintenance and support (which is not to be treated as an advancement) or a distribution beyond a beneficiary's health, education, maintenance and support (which is to be treated as an advancement).

e. In making any discretionary payments of net income or principal hereunder, the trustee, co-trustee or special trustee may, but need not, take into consideration the beneficiaries other sources of funds that are known to the trustee.

4. <u>Upon the death of the primary beneficiary.</u>

a. Upon the death of a primary beneficiary, the remaining balance of the primary beneficiary's trust shall be distributed to any one or more of such primary beneficiary's issue and my issue, in such shares and estates, legal or equitable, and upon such terms and conditions as such primary beneficiary may designate and appoint in his or her will or another written instrument delivered to the trustee by specific reference to this limited power of appointment. If multiple written instruments exist exercising such limited power of appointment, then the last dated written instrument which exercises such limited power of appointment shall supersede all prior exercises.

b. i. To the extent that the primary beneficiary fails to exercise such primary beneficiary's limited power of appointment, the trustee shall divide the unappointed portion of the primary beneficiary's trust for the now deceased primary beneficiary, hereinafter referred to as the "decedent," into equal separate shares. There shall be one (1) share for each child of the decedent living at the time of the death of the decedent, and one (1) share for each child of the decedent, who has predeceased the decedent, but who is survived by issue who survive the decedent, which share shall be subdivided into separate shares for the benefit of the issue, per stirpes, of the now deceased child of the decedent. For purposes of determining the value of the principal of the trust for the primary beneficiary (now a decedent) prior to the division into separate shares, all amounts distributed to any beneficiary of the decedent's trust that was determined to be an advancement shall be deemed to be part of the principal of the decedent's trust, with the amounts so distributed valued at the date of distribution. The share created for each beneficiary shall be charged with the amounts so distributed to such beneficiary. If a trust is already being held and administered for any of such issue pursuant to this Article, then the share created hereunder for such issue shall be added to such existing trust. Each issue of the decedent for whom a separate share is created shall thereafter be known as the primary beneficiary of such share and each such share shall thereafter be held as a separate trust and trust fund. Each such trust shall be administered pursuant to this Article.

ii. If a primary beneficiary should die without leaving living issue, the remaining balance of the trust for the primary beneficiary (now a decedent) shall be reallocated by the trustee as follows:

A. First, the trustee shall identify the nearest ancestor of decedent who was at any time a primary beneficiary of a trust created pursuant to this Article and has then living issue, or if no such ancestor exists, then my living issue; and

B. Then, such remaining balance shall be allocated to or among such issue on a per stirpital basis, and each share so created shall thereafter be held as a separate trust and trust fund for the benefit of each such issue and such issue shall thereafter be known as the primary beneficiary. Each such trust shall be administered pursuant to this Article. If a trust is already being held and administered for any of such issue pursuant to this Article, then the share created hereunder for such issue shall be added to such existing trust.

5. Termination of marriage. If the marriage of a primary beneficiary or a primary beneficiary's issue is terminated by reason of divorce, dissolution, annulment, legal separation or other legal proceeding, it is my intention that the primary beneficiary's trust created herein shall constitute the separate property or a separate asset of the primary beneficiary or the primary beneficiary's issue and shall not be considered marital property or a marital asset. If any court of law should decree otherwise, then the spendthrift provision set forth herein shall become immediately applicable to such trust.

## ARTICLE IV

Powers of the trustee:

The trustee shall have and possess and may exercise at all times, not only the rights, powers and authorities conferred upon a trustee by law and those incident to the office or required in the discharge of any trust created herein, or implicitly conferred upon or vested in the trustee, but also all the rights, powers and authorities embodied in this Article which are shown by way of illustration and not by way of limitation.

1. Loans to my estate. To the extent that such actions will not require inclusion of the trust estate in my federal gross estate, the trustee is given broad, discretionary powers to loan funds to the executor of my estate, with or without security, and to purchase assets, real or personal, from my estate.

2. Payment of trust administration expenses. The trustee shall pay all taxes, assessments, costs, insurance charges and other expenses arising in connection with the administration of the trust estate or any trust created herein.

3. Retention of investments or property. The trustee may retain and continue to hold, in the trustee's sole discretion, as a part of the trust estate or any trust created herein, any investment or property.

4. Sale of trust assets; execution of instruments. The trustee may sell at public or private sale, grant options to sell, exchange, re-exchange or otherwise dispose of all or any portion of the property, real or personal, at any time belonging to the trust estate or any trust created herein, upon such terms and conditions and for such consideration as the trustee shall determine. The trustee may execute and deliver all instruments of sale or conveyance necessary or desirable therefor.

5. Investment of trust assets. The trustee may invest any money in the trust estate or any trust created herein in stocks, bonds, mutual funds, investment trusts, common trust funds and any other securities or property, real or personal, secured or unsecured, whether the obligations of individuals, corporations, trusts, associations, or governments, and, in the case of a permissible corporate trustee, any shares, obligations and other investments of the trustee's own corporation or otherwise, as the trustee shall deem advisable, without any limitation whatsoever as to the character or the diversity of the investment under any statute or rule of law now or hereafter enacted or existing regarding trust funds or investments by fiduciaries or otherwise.

6. Waiver of duty to diversify family business. Any provision of this trust agreement to the contrary notwithstanding, the trustee may retain as a proper trust investment any business interest in which any member of my family or I have materially participated, including but not limited to To Life, Ltd., an Ohio limited liability company, without regard to rules requiring diversification of investments and without liability for depreciation in value, even

DEBTOR'S EXHIBIT 25
Page 8 of 33

though such business interest is a larger percentage of the trust assets than might otherwise be prudent.

7. Powers regarding real property. The trustee may manage, improve, protect, exchange, partition, contract to sell and sell on any reasonable terms, convey with or without covenants of warranty, dedicate for public purposes, subdivide, or vacate for subdivision, any real property which may at any time be part of the trust estate or any trust created herein, make party wall contracts and agreements, grant easements or charges of any kind, construct, remodel, alter, repair and maintain buildings upon any such real property.

8. Power to lease. The trustee may make leases for any length of time, whether longer or shorter than the duration of any trust created herein, to commence at the present time or in the future; extend any lease, grant options to lease or renew any lease. It is expressly understood that the trustee may grant or enter into ninety-nine (99) year leases, renewable forever.

9. Powers regarding business interests. The trustee may exercise all powers with respect to any business interest that I could exercise if present and acting. This shall include, but shall not be limited to, the following powers: to continue, expand, limit, alter, reconstitute, incorporate or terminate any such business interest in any way the trustee may determine to be advisable; to name and to change directors, or to act as a director and receive compensation therefor; to retain or sell any such business interest, and, if a sale or disposition thereof is made, the terms, techniques, or manner thereof shall be wholly within the discretion of the trustee, and the trustee is specifically authorized, in the trustee's sole discretion, to make such sale to any partner, officer or employee of the business interest or to any beneficiary hereunder; to take all actions necessary to fully effectuate any agreements requiring the sale of any business interest at my death; to hire and discharge officers and employees, fix their compensation and define their duties, or to act as an officer or employee and receive compensation therefor, and similarly to employ, compensate and discharge agents, attorneys, consultants, accountants and such other representatives as the trustee may deem appropriate, including the right to employ any beneficiary hereunder in any of the foregoing capacities; and to take any action required to convert any such business interest into another form of business interest.

10. Power to borrow. The trustee may borrow money from time to time, without personal liability, including from the commercial department of a trustee that is a permissible corporate trustee, or an affiliate thereof, for any purpose in the administration of any trust created herein and for the purpose of making loans to the executor of my estate; continue or renew any loans in the trustee's sole discretion; and mortgage or pledge assets of any trust created herein to secure any loan to such trust.

11. Power to loan. The trustee may loan money or other property, with or without formal evidence of indebtedness, with or without collateral security, for such periods of time and upon such terms and conditions as may be deemed appropriate to: any present or future beneficiary of any trust created herein; any person controlled by any such beneficiary; or any estate or trust of which any such beneficiary is a beneficiary; make any such loan a lien upon any

DEBTOR'S EXHIBIT 25
Page 9 of 33

property payable or distributable to such beneficiary; and guarantee any loans of any such beneficiary, person, estate or trust.

12. Powers regarding securities. The trustee may vote by proxy or in person any stock or security comprising a part of the trust estate or any trust created herein, at any meeting, and upon any question coming before such meeting; consent to the reorganization, consolidation, readjustment of the financial structure, or sale of the assets, of any corporation or other organization, the stocks or securities of which are owned by the trustee, and take any action with reference to such stocks or securities which, in the opinion of the trustee, is necessary to obtain the benefit of any such reorganization, consolidation, readjustment or sale; exercise any conversion privilege, stock option or subscription right; accept and hold as a part of the trust estate or any trust created herein the securities or stocks resulting from any such reorganization, consolidation, readjustment, sale or exercise.

13. Title to property. The trustee may cause any property, real or personal, comprising a part of the trust estate or any trust created herein to be issued, held or registered: in the trustee's name as trustee; in the name of the trustee's nominee; in the case of a permissible corporate trustee, in the trustee's own name without disclosing the fiduciary relationship; or in such other form that title will pass by delivery.

14. Power regarding claims. The trustee may enforce, abandon, defend against or have adjudicated by legal proceedings, arbitration or by compromise, any claim or demand whatsoever arising out of or which may exist against the trust estate or any trust created herein.

15. Power to hire agents. The trustee may employ and follow the advice of legal counsel, accountants, investment counsel, and other agents and determine and pay to them reasonable compensation.

16. Powers regarding trust funding. In making any allocation to, division, funding, or apportionment of or distribution from any trust created herein, or of any portion thereof, or for any other purpose of whatsoever nature, the trustee shall not be required to convert any property, real or personal, tangible or intangible, into money, or to divide or apportion each or any item of property, but the trustee may allot all or any portion (including an undivided interest and whether pro rata or non pro rata) of any item of property, real or personal, tangible or intangible, to any fund or to any beneficiary thereof, or the trustee may convert any property, real or personal, into any other form, it being my intent and purpose to leave all such allocations, divisions, apportionments, and distributions entirely to the discretion of the trustee with the direction merely that the trustee shall constitute each fund, share, portion or part at any time created or provided for herein so that the same, in the trustee's sole discretion, shall have the value, relative or absolute, designated by this trust agreement.

17. Merger of trusts. The trustee, in the trustee's sole discretion, may merge any trust created herein with any other trust the provisions of which are substantially the same.

DEBTOR'S EXHIBIT 25
Page 10 of 33

18. Power to terminate non-economic trust. If at any time after my death the market value of any trust created herein shall be less than the amount set forth in Section 5804.14 of the Ohio Revised Code, then the trustee may, in the trustee's sole discretion, terminate such trust as set forth therein.

19. Allocations between principal and income. With respect to the allocation between principal and income of each trust created herein:

a. The trustee shall have discretion to make any allocation between principal and income with respect to any receipt, disbursement, charge or credit, and the trustee shall exercise such discretion hereunder:

i. In accordance with what is reasonable and equitable in view of the interests of those entitled to income, the interests of those entitled to principal, and the overall tax advantages that may accrue either to the trust estate or to the beneficiaries in the aggregate;

ii. In view of the manner in which persons of ordinary prudence, discretion and judgment would act in the management of their own affairs; and

iii. In the manner necessary to preserve any federal or state estate tax charitable deduction or any S corporation election.

b. In exercising the trustee's discretionary authority granted herein, the trustee need not comply with the provisions of Chapter 5812 of the Ohio Revised Code, and I authorize the trustee to treat such provisions of the Ohio Revised Code as advisory.

20. Self-dealing provisions. The trustee may purchase any property from, sell any property to, exchange any property with, or otherwise deal with: any beneficiary of any trust created herein or with any trust or estate of which I, my spouse or any of my issue is or was a donor or beneficiary, whether created by this trust agreement or not, even though the trustee is also a fiduciary of such other trust or estate; and any other division or department of a permissible corporate trustee, or an affiliate thereof.

21. Court approval. The trustee shall not be required to but may obtain the authority or approval of any court for any act which the trustee may desire to do in the administration and disposition of the trust estate or any trust created herein.

22. Separate trusts. The trustee is authorized, in the trustee's sole discretion, to hold any property received hereunder in one or more separate trusts and to divide any trust created herein, at any time, into two or more separate trusts. Without limiting the generality of the foregoing, it is my desire (but not my direction) that the trustee use these powers so that the federal generation-skipping transfer tax inclusion ratio as defined in Section 2642(a) of the Internal Revenue Code for each trust shall be as close as possible to either zero or one. Any such division shall be effective from the date of my death or such other date as the trustee designates.

Any such separate trusts shall have the identical provisions as the original trust. If two trusts are created or if a trust is divided into separate trusts, the trustee, may, at any time prior to a combination of such trusts: make different tax elections (including the allocation of my available generation-skipping transfer tax exemption) with respect to each separate trust; distribute principal and exercise any other discretionary powers with respect to such separate trusts differently; invest such separate trusts differently; and take all other actions consistent with such trusts being separate entities. Further, the donee of any power of appointment with respect to a trust so divided may exercise such power differently with respect to the separate trusts created by the division.

23. Non-discharge of support obligation. Any provision of this trust agreement to the contrary notwithstanding, no trustee hereunder shall have at any time, or in any capacity, either directly or indirectly, the power to discharge in whole or in part the individual support obligation of said trustee with respect to any beneficiary hereunder.

24. Special provisions for S corporation stock. During my lifetime, this trust is intended to qualify as an eligible S corporation shareholder pursuant to Section 1361(c)(2)(A)(i) of the Internal Revenue Code. If at any time thereafter any trust shall no longer be an eligible S corporation shareholder, then the following provisions shall apply:

a. The trustee shall have the power to elect to treat any trust created herein as an electing small business trust pursuant to Sections 1361(e)(1)(A)(iii) and 1361(e)(3) of the Internal Revenue Code during any period in which said trust owns stock in an S corporation. To that end, the trustee shall have the power, acting alone, to amend this trust agreement for the sole purpose of enabling any trust created herein to qualify as an electing small business trust as defined by Section 1361(e) of the Internal Revenue Code.

b. Alternatively, if the trustee deems it not to be in the best interests of the beneficiaries for any trust created herein to be treated as an electing small business trust, then I intend that any trust created herein be eligible for treatment as a qualified subchapter S trust under Section 1361(d) of the Internal Revenue Code during any period in which such trust owns stock in an S corporation, and all provisions of this trust agreement shall be interpreted in accordance with such intention. To that end, the trustee shall have the power, acting alone, to amend this trust agreement for the purpose of allowing any trust created herein to qualify as a qualified subchapter S trust, including without limitation:

i. The power to divide any trust created for the benefit of multiple current income beneficiaries into separate and equal trusts for the benefit of each of such current income beneficiaries.

ii. The power to require that the trustee pay all net income of the trust to the current income beneficiary thereof (and only to such beneficiary) at least annually.

iii. The power to require that distributions of principal, if any, made from a trust during the current income beneficiary's life be made to or for the benefit of such current income beneficiary (and only such beneficiary).

25. Tax elections. In addition to the authority granted elsewhere in this trust agreement, the trustee shall have the authority to make, exercise, revise, and revoke any and all other available allocations, adjustments, agreements, consents, decisions or elections (any of the foregoing being referred to as an "election") affecting or related to any tax on the trust, or any part of the trust estate, and, if there is no executor appointed for my probate estate, and to the extent otherwise authorized by law, any tax on or relating to me or my estate (as defined for federal estate tax purposes), or any property of mine or my estate, or passing or deemed to pass from me or my estate, even though not coming into the hands of the trustee, and even though any such election may be advantageous to one or more beneficiaries hereunder and disadvantageous to other beneficiaries or recipients of property passing or deemed to pass from me or my estate. The trustee shall be under no duty and shall not be required to allocate any benefits associated with any such election exclusively, primarily or at all to assets passing under this trust agreement, as opposed to other property included in my gross estate. I waive any such duty that otherwise would exist. No such allocation or election shall cause the trustee to be liable to any person or to be subject to removal or forfeiture of commissions or other compensation. The trustee shall have no obligation or duty to make any adjustments in trust accounts for the benefit of any beneficiary adversely affected, or not proportionately benefitted, by any such allocation, but, if the trustee considers it advisable to do so, the trustee may make such adjustments as the trustee deems appropriate.

26. Environmental provisions.

a. Prior to acceptance of any assets as a part of or as an addition to the trust estate or any trust created herein, the trustee, in the trustee's sole discretion, shall have the right to take the following actions at the expense of the trust estate or any trust created herein:

i. To enter and inspect (including but not limited to sampling of soil, ground water, air, vapors or other environmental media) any existing or proposed asset for the purpose of investigating any past, present or threatened release of any hazardous substance or pollutant; and

ii. To review records of the currently acting trustee (or my records as settlor or the records of any person in which the trust holds an interest) for the purpose of determining compliance with environmental laws.

Any acts performed by any person hereunder shall not constitute acceptance of any trust created herein, or constitute control, ownership or operation of any real or personal property. If an asset of the trust estate or any trust created herein is discovered upon investigation by the trustee to contain any hazardous substance or pollutant or otherwise not be in compliance with any environmental law, the trustee may decline to act as trustee solely as to such asset, and accept the trusteeship as to all other assets of the trust estate or any trust created herein. Any

court having jurisdiction may appoint a receiver or contingent trustee to hold and manage the rejected asset, pending its final disposition. Any currently acting trustee shall have the right to reject any asset proposed to be transferred to the trustee.

b. If the trust estate or any trust created herein holds one or more assets, the nature, condition, or operation of which is likely to give rise to liability under, or is an actual or threatened violation of any environmental law, the trustee may, in the trustee's sole discretion, take one or more of the following actions, if the trustee, in the trustee's sole discretion, determines that such action is reasonable and in the best interests of such trust and its beneficiaries:

i. Modification of trust provisions, granting the trustee such additional powers as are required to protect such trust and its beneficiaries from liability or damage relating to actual or threatened violation of any environmental law;

ii. Bifurcation of such trust;

iii. Appointment of a contingent trustee to administer any trust property or business interest which fails, or threatens to fail, to comply with any environmental law; or

iv. Abandonment of such property or business.

It is my intent that the trustee shall have the widest discretion in identification of and response to administration issues connected to potential environmental law liability to the trust estate, or any trust created herein, and the trustee, in order to protect the interests of such trust, the trustee, and its beneficiaries.

c. The trustee shall have the power to take any action the trustee reasonably deems necessary to prevent, address or otherwise remedy any actual or threatened violation of any environmental law, or any condition which may reasonably give rise to liability under any environmental law, including but not limited to, acts of "response" as defined in 42 U.S.C. § 9601(25), relating to any asset, which is or has been held by the trustee as part of the trust estate or any trust created herein.

d. The trustee is hereby indemnified and reimbursed from the trust estate or any trust created herein for any environmental expenses.

i. This right to indemnification or reimbursement shall extend to environmental expenses relating to any real property or business interest, which is or has been at any time owned or operated by:

A. The trustee as part of the trust estate or any trust created herein; and

DEBTOR'S EXHIBIT 25
Page 14 of 33

B. A business interest in which the trustee holds or has held at any time an ownership or management interest as part of the trust estate or any trust created herein.

ii. The trustee shall have the right to reimbursement for incurred environmental expenses without the prior requirement of expenditure of the trustee's own funds in payment of such environmental expenses, and the right to pay environmental expenses directly from the trust estate or any trust created herein. Further, the trustee shall have a primary lien against assets of the trust estate or any trust created herein for reimbursement of environmental expenses, which are not paid directly from the trust estate or any trust created herein. This right of indemnification or reimbursement shall apply to all environmental expenses, except those resulting from the trustee's intentional wrongdoing, bad faith or reckless disregard of fiduciary obligation.

e. The trustee shall not be liable to any beneficiary of any trust created herein or to any other person for any good faith action or inaction, relating to any environmental law, or for the payment of any environmental expenses.

f. As used in this trust agreement:

i. The term "environmental law" means any law, governmental order, or binding agreement with any governmental authority: relating to pollution (or the investigation, remediation or cleanup thereof or other response thereto) or the protection of natural resources, endangered or threatened species, human health or safety, worker health or safety, or the environment (including indoor air, outdoor air, wetlands, soil, sediment, surface water, groundwater, or subsurface strata), noise, or odor; or concerning the presence of, exposure to, or the management, manufacture, use, handling, containment, storage, recycling, reclamation, reuse, treatment, generation, discharge, transportation, processing, production, disposal, or remediation of any hazardous substance or pollutant.

ii. The term "environmental expenses" means any liabilities, responsibilities, suits, costs (including investigation, remediation or cleanup thereof or other response thereto), assessments, liens, penalties, fines, prejudgment and post-judgment interest, and attorney's fees incurred or imposed pursuant to any order, decree, notice, injunction, judgment or similar ruling or directive from any governmental authority arising out of or in connection with any environmental law, or pursuant to any claim by any governmental authority or other person for personal injury, death, property damage, damage to natural resources or remedial work arising out of any environmental law or exposure to, or a release or migration of, hazardous substances or pollutant.

iii. The term "hazardous substance or pollutant" means any substance, whether liquid, solid, gas, mineral, fungus, naturally occurring or manmade, or any mixture thereof: which is listed, identified, or designated in any environmental law as hazardous, toxic, a pollutant, or word of similar meaning and effect; which, applying the criteria specified in any environmental law, is hazardous, toxic, a pollutant, or word of similar meaning or effect; which the use, disposal, or any manner or aspect of management or handling is regulated under

any environmental law; or any petroleum or petroleum-derived products, radon, fluorinated chemicals, radioactive materials or wastes, asbestos in any form, lead or lead-containing materials, mold, mildew, silica, urea formaldehyde insulation, polychlorinated biphenyls, or ozone-depleting substances.

## ARTICLE V

Initial trustee, successor trustees and co-trustees:

1. Initial trustee and successor trustees. Patricia B. Schneider shall serve as the initial trustee. Upon the death, incompetence, or resignation of Patricia B. Schneider, the successor trustee shall be the first in order of those named in the following list who shall be able, and who shall qualify, to serve as trustee, and if any of the following shall become the successor trustee and shall thereafter die, become incompetent, resign, or be removed, the subsequent successor trustee shall be the first in order of those named in the following list who shall be able, and who shall qualify, to serve as trustee:

a. An independent trustee designated in writing my spouse;

b. my son, Eric P. Schneider;

c. my son, Justin F. Schneider;

d. my daughter, Danielle R. Senzer.

2. Initial trustee and list of successor trustees of trusts for children. Any provision of this trust agreement to the contrary notwithstanding:

a. With respect to any trust created herein of which my son, Justin F. Schneider, is the primary beneficiary, Justin F. Schneider may become the trustee of such trust by giving notice of acceptance to serve as trustee to then serving trustee. Upon the death, incompetence or resignation of Justin F. Schneider, the successor trustee shall be the first in order of those named in the following list who shall be able and who shall qualify, to serve as trustee, and if any of the following shall become the successor trustee and shall thereafter die, become incompetent, resign, or be removed, the subsequent successor trustee shall be the first in order of those named in the following list who shall be able, and who shall qualify, to serve as trustee:

i. my son, Eric P. Schneider;

ii. my daughter, Danielle R. Senzer.

b. With respect to any trust created herein of which my daughter, Danielle R. Senzer, is the primary beneficiary, Danielle R. Senzer may become the trustee of such trust by giving notice of acceptance to serve as trustee to then serving trustee. Upon the death, incompetence or resignation of Danielle R. Senzer, the successor trustee shall be the first in order

of those named in the following list who shall be able and who shall qualify, to serve as trustee, and if any of the following shall become the successor trustee and shall thereafter die, become incompetent, resign, or be removed, the subsequent successor trustee shall be the first in order of those named in the following list who shall be able, and who shall qualify, to serve as trustee:

i. my son, Justin F. Schneider;

ii. my son, Eric P. Schneider.

c. With respect to any trust created herein of which my son, Eric P. Schneider, is the primary beneficiary, Eric P. Schneider may become the trustee of such trust by giving notice of acceptance to serve as trustee to then serving trustee. Upon the death, incompetence or resignation of Eric P. Schneider, the successor trustee shall be the first in order of those named in the following list who shall be able and who shall qualify, to serve as trustee, and if any of the following shall become the successor trustee and shall thereafter die, become incompetent, resign, or be removed, the subsequent successor trustee shall be the first in order of those named in the following list who shall be able, and who shall qualify, to serve as trustee:

i. my son, Justin F. Schneider;

ii. my daughter, Danielle R. Senzer.

3. <u>Initial trustee and list of successor trustees of trusts for issue of my children</u>. Any provision of this trust agreement to the contrary notwithstanding:

a. With respect to any trust created herein of which an issue of my son, Justin F. Schneider, is the primary beneficiary, the trustee shall be the first in order of those named in the following list who shall be able and who shall qualify, to serve as trustee, and if any of the following shall become the successor trustee and shall thereafter die, become incompetent, resign, or be removed, the subsequent successor trustee shall be the first in order of those named in the following list who shall be able, and who shall qualify, to serve as trustee:

i. my son, Eric P. Schneider;

ii. my daughter, Danielle R. Senzer.

b. With respect to any trust created herein of which an issue of my daughter, Danielle R. Senzer, is the primary beneficiary, the trustee shall be the first in order of those named in the following list who shall be able and who shall qualify, to serve as trustee, and if any of the following shall become the successor trustee and shall thereafter die, become incompetent, resign, or be removed, the subsequent successor trustee shall be the first in order of those named in the following list who shall be able, and who shall qualify, to serve as trustee:

i. my son, Justin F. Schneider;

ii. my son, Eric P. Schneider.

c. With respect to any trust created herein of which an issue my son, Eric P. Schneider, is the primary beneficiary, the trustee shall be the first in order of those named in the following list who shall be able and who shall qualify, to serve as trustee, and if any of the following shall become the successor trustee and shall thereafter die, become incompetent, resign, or be removed, the subsequent successor trustee shall be the first in order of those named in the following list who shall be able, and who shall qualify, to serve as trustee:

i. my son, Justin F. Schneider;

ii. my daughter, Danielle R. Senzer.

4. Primary beneficiary may become co-trustee or sole trustee. Any provision of this trust agreement to the contrary notwithstanding:

a. When a primary beneficiary other than a child of mine has attained the age of thirty (30) years, he or she may become a co-trustee of any trust created herein of which he or she is the primary beneficiary by giving notice of an acceptance to serve as co-trustee to the then serving trustee of such trust.

b. When a primary beneficiary other than a child of mine has attained the age of thirty-five (35) years, he or she may become the sole trustee of any trust created herein of which he or she is the primary beneficiary by giving notice of an acceptance to serve as the sole trustee to the then serving trustee of such trust.

5. Individual trustee may appoint co-trustee. Any individual trustee may appoint an independent trustee to serve as co-trustee hereunder and may delegate such duties and responsibilities to such appointed co-trustee as the appointing trustee may determine appropriate. Any such co-trustee so appointed shall cease to serve at such time as the appointing trustee ceases to serve. Additionally, at any time the appointing trustee shall have the power to remove any appointed co-trustee then serving, and appoint a different co-trustee or eliminate the position all together.

6. Failure of trustee. Upon the death, incompetence, resignation or removal of a trustee, if no successor trustee is named herein, a majority in interest of the beneficiaries to whom the trustee is then directed or authorized to pay the net income of a trust shall have the power to appoint a successor trustee; provided, however, any successor trustee appointed by the beneficiaries shall be an independent trustee.

7. Qualification of successor trustee. A successor trustee shall qualify by giving notice of an acceptance to serve as trustee to each beneficiary to whom the trustee is then directed or authorized to pay the net income of such trust and to any resigning trustee.

8. Resignation of trustee. The trustee may resign as trustee of any trust created herein at any time by giving notice of such resignation to each beneficiary to whom the

trustee is then directed or authorized to pay the net income of such trust. Such resignation shall not become effective until the successor trustee shall qualify to serve as trustee.

9. Removal of trustee. A majority in interest of the beneficiaries to whom the trustee is then directed or authorized to pay the net income of such trust shall have the power to remove a trustee by giving notice of such removal to the trustee. Such removal shall become effective upon the giving of such notice.

10. Minor and incompetent beneficiaries. For purposes of this Article, the natural or legal guardian of a minor or incompetent beneficiary may act on behalf of such minor or incompetent beneficiary, and any notice to be provided to a minor or incompetent beneficiary may be provided to such minor or incompetent beneficiary's natural or legal guardian.

11. Notice. Any notice required or permitted under this Article must be in writing and shall be deemed to have been given:

a. When deposited in the U.S. mail if sent by certified or registered mail (return receipt requested), postage prepaid and addressed to the person to whom it is to be given at the most recent address for such person known to the person or persons giving such notice.

b. When hand-delivered to an individual, or if to a person that is not an individual, to one (1) of its officers or other appropriate representatives.

12. Co-trustees. If two (2) or more persons are serving as co-trustees hereunder, the following provisions shall apply:

a. With respect to any matter as to which the co-trustees have joint authority, a trustee, by written notice, may temporarily delegate any or all of that trustee's rights, powers, duties, and discretions as trustee to any other trustee sharing that authority, with the consent of the latter. Any provision of this trust agreement to the contrary notwithstanding, only an independent trustee may exercise the power and discretions vested exclusively with the independent trustee.

b. The co-trustees may establish bank and brokerage accounts and may authorize that checks and drafts may be drawn on, or withdrawal made from, any such accounts on the individual signature of any trustee.

c. The co-trustees may execute documents by jointly signing one document or separately signing concurrent counterpart documents.

d. Unless specifically provided otherwise, the action or decision of a majority of the co-trustees shall control and a co-trustee who does not vote or does not concur in any vote shall not be liable for any act or failure to act of the others. Any provision of this trust agreement to the contrary notwithstanding, only an independent trustee may exercise the power and discretions vested exclusively with the independent trustee.

13. Change in name or combination of permissible corporate trustee. In the case of a permissible corporate trustee, if the trustee shall at any time change its name or combine with one or more corporations under one or more different names, or if its assets and business at any time shall be purchased and absorbed by another trust company or corporation authorized by law to accept trusts, the new or successor corporation shall be considered as the trustee hereunder and shall continue said trusts and succeed to all the rights, privileges, duties and obligations herein conferred upon the named trustee.

## ARTICLE VI

Limitation of trustee's powers and special trustees:

1. Appointment of special trustee. There may be circumstances in effect from time to time in which the trustee's exercise of discretionary powers would cause estate, gift or income tax consequences to such person acting as trustee which I do not intend. In order to prevent such tax consequences, I direct that the trustee appoint a "special trustee," or defer to the special trustee, if one has previously been appointed, in such circumstances to act independently and in lieu of the trustee and, if such action is appropriate and consistent with the terms of the trust, to exercise such discretionary powers. The circumstances in which a special trustee shall act in lieu of the trustee are as follows:

a. A special trustee shall exercise any discretionary powers described in paragraphs (1) and (2) of division (B) of Section 5808.14 of the Ohio Revised Code that could otherwise be exercised only by a court appointed "special fiduciary" pursuant to division (C) of Section 5808.14 of the Ohio Revised Code.

b. A special trustee shall exercise any discretionary power to make any discretionary distribution of either income or principal to or for the benefit of any one or more of the beneficiaries beyond an ascertainable standard.

c. A special trustee shall exercise any discretionary powers to make discretionary allocations of income and principal with respect to any receipt, disbursement, charge or credit, including but not limited to any power under Section 5812.03 of the Ohio Revised Code, to the extent that such exercise by the trustee would or could enlarge or shift funds to the interest of the trustee in the trustee's capacity as a beneficiary except as an incidental consequence of the exercise of the trustee's fiduciary duties.

d. A special trustee shall exercise any discretionary powers to make any discretionary distributions of income or principal which would constitute a gift for federal gift tax purposes by the trustee.

e. If any policies of insurance on my spouse's life would otherwise be held by my spouse as trustee, then a special trustee shall exclusively own and exercise all incidents of ownership with respect to such policies. Any policies of insurance on my spouse's

life which are transferred to any trust created herein shall become a part of the trust estate only upon the written acceptance of a special trustee.

f. A special trustee shall have the power to limit a general power of appointment of an issue of mine at any time prior to the death of such issue by narrowing the class to whom such issue may appoint the property subject to such power of appointment, so as to convert such power of appointment into a limited power of appointment.

g. A special trustee shall have the power to expand a limited power of appointment of an issue of mine at any time prior to the death of such issue by broadening the class to whom such issue may appoint the property subject to such power of appointment, so as to convert such power into a general power of appointment.

2. Allocation of capital gains or losses to distributions. A special trustee, in lieu of the trustee, shall have the discretion, with regard to any distribution of principal, to allocate capital gains or losses to such distributions, or to retain such gains or losses within any trust created herein, as such trustee shall deem reasonable and equitable.

3. Discretionary authority of special trustee. A special trustee shall exercise any discretionary authority granted in paragraphs 1 and 2 of this Article in view of the manner in which persons of ordinary prudence, discretion and judgment would act in the management of their own affairs; provided, however, a special trustee's discretion shall be exercised in the manner necessary to preserve any federal or state estate tax charitable deduction or any S corporation election.

4. Powers of special trustee. The special trustee shall serve in a fiduciary capacity. The powers of a special trustee are expressly limited to those specifically enumerated in this trust agreement and those powers incidental thereto, and all such powers shall be exercised in a fiduciary capacity. Section 5808.14 of the Ohio Revised Code shall not apply to limit the powers of a special trustee as conferred herein but shall apply with respect to all powers not specifically conferred upon a special trustee herein.

5. Resignation of special trustee. The special trustee may resign as special trustee by an instrument signed and acknowledged by the special trustee and delivered to the trustee.

6. Removal of special trustee. The trustee shall have the power to remove a special trustee by an instrument signed and acknowledged by the trustee and delivered to the special trustee.

7. Appointment of successor special trustee. After the resignation or removal of a special trustee, the trustee may appoint a successor special trustee.

8. Qualification of special trustee. Any special trustee or successor special trustee shall meet the definition of an "independent trustee" as defined herein and shall qualify to serve by giving notice of an acceptance to serve as special trustee to the trustee.

ARTICLE VII

Taxation of trust:

1. During my lifetime:

a. During the joint lifetimes of my spouse, Patricia B. Schneider, and me, it is my intention that the trust will be taxed as a "grantor trust" under Section 672(e) of the Internal Revenue Code.

b. During my lifetime, I shall have the substitution power set forth in this subparagraph b.

i. I shall have the right, exercisable at any time and from time to time during my lifetime, to require that the trustee transfer to me any or all of the trust assets in exchange for assets of equivalent value. This substitution power shall be exercisable solely by me in a non-fiduciary capacity, and without the consent or approval of the trustee or any other person. In no event shall the trustee's cooperation with or completion of any substitution transaction with me be deemed a waiver of the right of the trustee to ascertain and determine, in the exercise of the trustee's fiduciary duties to the beneficiaries, the value to the trust assets transferred to me and the value of the assets transferred by me to the trust and to make a claim against me with respect thereto after completion of the transaction.

ii. I may exercise the substitution power set forth herein by an instrument in writing signed by me and delivered to the trustee and to each then living current adult beneficiary of the trust. Such writing shall set forth the details of the proposed substitution transaction, including, without limitation, (A) the date on which such exchange shall occur, which shall not be earlier than thirty (30) days after the date on which such instrument is received by the trustee, and (B) the value of the trust assets to be transferred to me and the property to be substituted therefor, which values shall be supported by a professional appraisal thereof which shall have been performed by a qualified independent appraiser (unless the property in question is cash or is traded on a public market or the value is otherwise readily determinable). I shall bear all appraisal fees and other costs and expenses incurred in connection with any such substitution transaction.

iii. In addition to all other fiduciary duties imposed upon the trustee under local law and this instrument, the trustee shall have the following duties:

A. The trustee shall have a fiduciary obligation to ensure my compliance with the terms of this substitution power and to confirm that the properties acquired and substituted by me are in fact of equivalent value.

B. The trustee shall have the power to invest and reinvest the trust corpus and a duty of impartiality with respect to the beneficiaries.

iv. Any provision of this trust agreement to the contrary notwithstanding:

A. I shall have no right to require that the trustee transfer to me any shares of the voting stock of any corporation in which I have, directly or indirectly, including ownership by attribution under Section 318 of the Internal Revenue Code, the right to vote stock constituting at least twenty percent (20%) of the total combined voting power of all classes of the said corporation's stock.

B. My power under this paragraph shall not be exercised in a manner that can shift benefits among the beneficiaries.

v. At any time during my lifetime, I may waive the substitution power created under this subparagraph by a writing delivered to the trustee, and such waiver shall bind me, the trustee, and all other persons.

vi. It is my intention that this paragraph will cause the trust to be a "grantor trust" under Section 675(4)(C) of the Internal Revenue Code.

2. Upon my death: Upon my death, each trust created herein shall cease to be taxed as a "grantor trust."

3. Reimbursement for income taxes. Any provision of this trust agreement to the contrary notwithstanding, at any time that any trust created herein is taxed as a "grantor trust" under any provision of the Internal Revenue Code, an independent trustee is authorized in the independent trustee's sole discretion to distribute income or principal from any such trust to me, or to the legal representative of my estate, for the sole purpose of reimbursing me for that portion of my income tax liability arising from such trust's income being taxable to me.

## ARTICLE VIII

Beneficiary Surrogate:

1. Designation of Beneficiary Surrogate. During my lifetime, I shall serve as the beneficiary surrogate with respect to each beneficiary under this trust agreement. Upon my death, incompetence or resignation, the successor beneficiary surrogate shall be my spouse, Patricia B. Schneider, provided that she is not serving as trustee.

2. The trustee shall provide all notices, information, reports and accountings, if any, to be given by the trustee to a beneficiary pursuant to this trust agreement or as required by law, to the beneficiary surrogate of such beneficiary.

3. The beneficiary surrogate shall act in good faith to protect the interests of the beneficiary for whom the notices, information, reports and accountings are received.

4. The powers granted to the beneficiary surrogate in this Article are granted to the beneficiary surrogate individually, not in a fiduciary capacity, and the beneficiary surrogate shall not be liable to the beneficiary whose interests are represented, or to anyone claiming through that beneficiary, for any actions or omissions to act made in good faith.

5. During any period or periods when there is no beneficiary surrogate serving for a beneficiary, the trustee shall provide all notices, information, reports and accountings, if any, to be given by the trustee to such beneficiary pursuant to this trust agreement or as required by law, to the beneficiary (or to the natural or legal guardian of a minor or incompetent beneficiary).

## ARTICLE IX

Miscellaneous provisions:

1. Facility of payment. Any distribution of income or principal under the provisions of this trust agreement which is or may be distributed to a minor or to an individual under legal disability or to an individual not adjudicated incompetent but who is, in the opinion of the trustee, unable to properly manage such beneficiary's affairs with reasonable competence, may be distributed to or for the benefit of such beneficiary in such of the following ways as the trustee, after consulting with such beneficiary's family or physician, deems best: to such beneficiary directly; to the legally appointed guardian of such beneficiary; to a custodian under a qualified custodial account; or to any person responsible for or assuming the care of such beneficiary. The written receipt of such beneficiary, guardian, custodian or person shall be a complete release to the trustee, and the trustee shall have no duty to see to the use of any funds distributed.

2. Spendthrift provision.

a. Except to the extent expressly provided to the contrary in this paragraph 2, the interest of every beneficiary under every trust created herein is held subject to a "spendthrift trust." The right of any beneficiary to either the income or principal of any trust created herein shall not be subject to voluntary or involuntary assignment, alienation, pledge, attachment, or claims of creditors.

b. i. Paragraph 2.b.ii. of this Article shall apply to any beneficiary other than my spouse, any beneficiary of a trust which is a direct skip trust, and any beneficiary of a trust which meets all the criteria of a "qualified subchapter S trust" as defined in the Internal Revenue Code and which at any time holds S corporation shares.

ii. When any part or all of any beneficiary's interest in income or principal in any trust created herein to which this paragraph 2.b.ii. applies would, but for and in contravention of this provision, vest in or be enjoyed by any other person, other than by statutory disclaimer or common law renunciation:

A. All rights of such beneficiary in respect of such interest shall be forfeited;

B. The trustee shall administer the property constituting such interest as a separate trust; and

C. The trustee, in the trustee's sole discretion, may (but shall not be required to) pay or apply the property constituting such interest to or for the benefit of any one or more of: such beneficiary; the spouse of such beneficiary; any issue of such beneficiary; any of my issue; or any other beneficiary of such trust; provided, however, any distribution to or for the benefit of such beneficiary may not exceed the amount that otherwise would be available to such beneficiary if this paragraph 2.b.ii. was not in effect. In making distributions under this paragraph 2.b.ii., it is not my intention that such income and principal payments be made equally to or for all of such beneficiaries, but only to or for such beneficiaries and in such amounts and proportions as the trustee shall determine appropriate in the trustee's sole discretion. The power to make a distribution in the trustee's sole discretion includes the power to withhold making a distribution to any beneficiary. Further, in making distributions, the trustee may, in the trustee's sole discretion, but need not, take into account other resources known by the trustee to be available to the beneficiary in question. Any determination of the trustee as to the amounts of income and principal to be distributed hereunder shall be final and binding on all persons. No distribution shall be treated as an advancement against the ultimate share of any beneficiary. In making any distribution hereunder, the trustee may, in the trustee's sole discretion, apply the amount to be distributed directly for the benefit of the beneficiary in question. Any undistributed net income shall be accumulated and added to the principal of the trust.

iii. The provisions of paragraph 2.b.ii. of this Article shall apply to any beneficiary only so long as any part of any payment would at any time vest in or be enjoyed by any other person. If such provisions shall apply at the time otherwise specified for the termination of any trust, the trust shall be distributed to such beneficiary when such conditions no longer exist. If such conditions have not terminated and it is determined by a non-appealable order of a court of competent jurisdiction that any trust created herein must be terminated or vested in accordance with the rule against perpetuities or similar rule of law, then the trustee shall distribute such beneficiary's trust to those persons who would be entitled to receive such trust if such beneficiary had died on the day preceding the termination of the trust.

3. <u>Protection of disabled beneficiary's interest</u>.

a. Except to the extent expressly provided to the contrary in this paragraph 3, the interest of every current beneficiary under every trust created herein is subject to the provisions of this paragraph. The right of any current beneficiary to the income or principal of any trust created herein shall not disqualify such beneficiary from receiving any governmental benefits under the Supplemental Security Income Act, Medicaid or any other federal state means-tested governmental benefit program ("governmental benefits").

b. i. Paragraph 3.b.ii. of this Article shall apply to any beneficiary other than my spouse, any beneficiary of a trust which is a direct skip trust, and any beneficiary of a trust which meets all the criteria of a "qualified subchapter S trust" as defined in the Internal Revenue Code and which at any time holds S corporation shares.

ii. If the trustee, in the trustee's sole discretion, reasonably believes that a current beneficiary hereunder is receiving, or may be entitled to receive, governmental benefits, and such beneficiary's interest in the income and principal in any trust created herein to which this paragraph 3.b.ii. applies would disqualify such beneficiary from receiving any governmental benefits, then:

A. If such beneficiary is the sole current beneficiary of such trust, then all of such beneficiary's interest in the income and principal of such trust shall be forfeited, and, thereafter, the trustee shall administer such trust as a separate wholly discretionary trust for the benefit of such beneficiary, wherein the trustee may distribute income and principal to or for the benefit of such beneficiary in the trustee's sole and absolute discretion. Any undistributed net income shall be accumulated and added to the principal of such trust. Upon the death of such beneficiary, the remaining trust assets of such wholly discretionary trust shall be distributed to such beneficiary's then living issue, per stirpes, but if there are no such living issue, then to the then living issue, per stirpes, of the most remote issue of mine who was an ancestor of such beneficiary, but if there are no such living issue, then to my then living issue, per stirpes.

B. If such beneficiary is not the sole current beneficiary of such trust, then all of such beneficiary's interest in the income and principal of such trust shall be forfeited, and thereafter, the trustee may continue to make distributions of income and principal from such trust to or for the benefit of such beneficiary only in the trustee's sole and absolute discretion.

C. Any provision of this trust agreement to the contrary notwithstanding, once the provisions of paragraph 3.b.ii. of this Article become applicable to any trust created herein, then the beneficiary described in either paragraph 3.b.ii.A. or 3.b.ii.B. shall never be appointed to serve as or permitted to continue to serve as a trustee or co-trustee of the trust described in such paragraphs.

4. <u>Rule against perpetuities</u>.

a. The rule against perpetuities, or any similar law or rule that would require any interest in any trust created herein to vest within any particular period of time, shall not apply to any trust created herein or any interest therein.

b. Without limiting the generality of this paragraph, in the event that the law of Ohio is the law applicable to any trust created herein, the rule against perpetuities and the provisions of division (A) of Section 2131.08 of the Ohio Revised Code shall not apply to any such trust.

c. Any provision of this trust agreement to the contrary notwithstanding, the trustee of any trust created herein shall always have the power to sell, lease or mortgage property for any period of time without limitation.

d. If nonetheless it is determined by a non-appealable order of a court of competent jurisdiction that any trust created herein must be terminated or vested in accordance with the rule against perpetuities or similar law or rule, then the trustee shall distribute the trust funds, outright and free of trust, to the then living income beneficiaries of such trust and such distribution of the trust funds shall be made to such beneficiaries in the same proportions with respect to which such beneficiaries are then entitled to receive distributions of income; provided that if at termination the rights to the income of such trust are not fixed by the provisions of such trust, distribution shall be made, per capita, to the persons to whom the trustee is then directed or authorized to pay the net income of such trust.

5. <u>Protection of buyers and sellers</u>. Anyone dealing with the trustee shall be under no obligation to see to the application of any proceeds of such transaction, and the execution of any instrument by the trustee shall be conclusive evidence to those dealing with the trustee of the trustee's authority so to act.

6. <u>Definitions</u>. For purposes of this trust agreement, the following definitions shall apply:

a. The term "business interest" shall include any interest in a business, company or concern, including but not limited to, a sole proprietorship, partnership, corporation, limited liability company, joint venture, or otherwise.

b. The terms "child" and "children" include both natural born individuals and individuals who are legally adopted prior to attaining the age of eighteen (18) years, whether born or adopted before or after the execution of this trust agreement; provided, however, with regard to me, the terms "child" and "children" shall include both natural born individuals and individuals legally adopted by me at any age, whether born or adopted before or after the execution of this trust agreement.

c. The term "digital assets" means any electronic record in which I have a right or interest, including but are not limited to, all social networking accounts (such as, but not limited to, Facebook and LinkedIn); e-mail accounts; online bank, stock or other financial accounts; credit card accounts; bill paying accounts; online seller accounts, such as, but not limited to, eBay and Craigslist; phone service provider accounts; online password storage service accounts; websites; blogs; and document, address book, client list, photo, video and music and any and all other information storage or sharing accounts of any kind; music, video and other "content providers," such as, but not limited to, iTunes and Netflix; and in general, accounts with any person who provides services, content, or other information to me, holds assets of mine or to whom I owe money or have other obligations.

d. The term "education" means all types and levels of education, both public and private, and shall include, but is not be limited to, preschool and nursery education, primary and secondary education, college or university education, post-graduate education, training such as that provided by a business school, vocational school or technical school, and any education which may be required because of the particular abilities or disabilities of a beneficiary. It shall also include all tuition, board, lodging, fees, books and equipment, travel expenses and other expenses incidental thereto.

e. The term "executor" includes a personal representative, an administrator or any other person appointed by and accountable to the probate court who is acting in a fiduciary capacity and is charged with duties in relation to an estate.

f. An individual beneficiary is "incompetent" if such individual is adjudged to be incompetent by a court having proper jurisdiction, or if two (2) licensed physicians who have examined such individual (one (1) of whom may be such individual's primary care physician) provide written letters stating that in their opinion such individual is incapable of handling such individual's affairs, whether as a result of age, illness, use of prescription medications, drugs or other substances, or any other causes. A physician acting in good faith shall not be liable for any reason for stating in such physician's opinion that an individual is incapable of handling such individual's affairs.

g. The term "independent trustee" means a permissible corporate trustee or an individual trustee who has substantial experience in administering trusts and who is not a related or subordinate party (as defined in Section 672(c) of the Internal Revenue Code) to the settlor or a beneficiary (as if such beneficiary were the "grantor" for purposes of Section 672(c) of the Internal Revenue Code) of any trust created herein.

h. The term "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, in effect at the time of this agreement, or the corresponding provisions of any future United States internal revenue law.

i. The term "issue" means both children of the designated ancestor and lineal descendants thereof indefinitely and includes both natural born and legally adopted individuals, whether born or adopted before or after the execution of this trust agreement.

j. The term a "majority in interest" with respect to beneficiaries shall mean the beneficiaries of a trust constituting more than a fifty percent (50%) financial interest in the trust as a whole.

k. The term "Ohio Revised Code" means the Ohio Revised Code in effect at the time of this agreement, or the corresponding provisions of the future laws of the State of Ohio.

l. The term "permissible corporate trustee" means a bank, trust company or other corporate entity that is authorized by law to accept trusts and it or its parent

DEBTOR'S EXHIBIT 25
Page 28 of 33

corporation must have a combined capital and surplus of twenty-five million dollars ($25,000,000) or more or have at least one hundred million dollars ($100,000,000) in assets under management.

m. The term "person" shall include an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental agency or instrumentality, public corporation, or any other legal or commercial entity.

n. The term "qualified custodial account" means a custodial account created under the Ohio Transfers to Minors Act, or similar statute enacted in another jurisdiction, for which the age of delivery of the custodial property to the minor is delayed until such minor has attained the age of twenty-five (25) years, to the extent that such delayed time for delivery is statutorily permitted.

o. Unless otherwise specifically provided herein, I use the term "shall" herein to impose a duty, command, direction or requirement, and I use the term "may" to allow or permit, but not require. In the context of the trustee, when I use the term "shall" I intend to impose a fiduciary duty on the trustee, and when I use the word "may" I intend to empower the trustee to act in the trustee's sole discretion.

p. The term "trustee" includes each co-trustee and any successor trustee or successor co-trustee, and all provisions herein applicable to the trustee, including the provisions relating to the powers of the trustee, shall be applicable to each co-trustee and any successor trustee or successor co-trustee.

7. Applicable law and situs. Except as expressly provided herein to the contrary, the laws of the State of Ohio shall apply as to the validity and interpretation of this trust agreement. The laws of the State of Ohio shall govern the administration of each trust created herein until and unless the laws of another jurisdiction apply to govern the administration of a trust as set forth in this paragraph, and notwithstanding the change of residence or identity of any one or more of the beneficiaries or any trustee of a trust created herein. If the trustee determines that it would be in the best interests of a trust to change the situs of the trust to another jurisdiction, such as for the purpose of preserving assets, reducing taxes or expenses, or otherwise benefiting a trust, the trustee of the trust may, at any time or times in the trustee's sole discretion, remove to another jurisdiction all or part of a trust's property or the situs of administration of the trust, but the laws of that jurisdiction shall only apply as to matters of administration commencing as of the time the trustee declares in a writing filed with the trust records, except the laws of that new jurisdiction shall not change the beneficial interests under the trust.

8. Compensation. The trustee shall receive reasonable compensation for services rendered taking into account all facts and circumstances, including in the case of a trustee that is a permissible corporate trustee, the amount stipulated in its regular schedule of compensation in effect and applicable from time to time as such compensation shall become

payable; provided, however, in no event shall any charge for the following transactions be allowed except as such charge is reasonably related to the trustee's extraordinary time and effort, if any, with respect to such transactions: for a distribution of principal; for the termination of the trust; or for the transfer of trusteeship.

9. Exoneration of trustee. I direct that no trustee shall incur any liability to any beneficiary or to any successor trustee in connection with any action, cause of action, claim, demand, judgment or other loss incurred as a result of such trustee's good faith exercise of any of the powers herein conferred in a manner believed by the trustee to be in the best interests of the beneficiaries, including any liability resulting from the good faith exercise or decision not to exercise any tax election even if it turns out to be not in the best interests of the beneficiaries.

10. Incompetence of individual trustee.

a. An individual trustee is incompetent if such individual trustee is adjudged to be incompetent by a court having proper jurisdiction; or if such individual trustee is found to be incompetent as a result of the process described in the following subparagraph.

b. The process for determining whether an individual trustee is incompetent, other than by court adjudication, shall be as follows:

i. The individual trustee shall be examined by two (2) licensed physicians (one (1) of whom may be the trustee's primary care physician) within ninety (90) days after the trustee receives a written request to undergo such examination. Such request may be made by an adult beneficiary (or the legal guardian of a minor beneficiary) to whom the trustee is then directed or authorized to pay the net income of such trust, or another then serving trustee of such trust. Any such written request must allege sufficient factual details to support a good faith belief that the trustee is incompetent. The trustee shall cause each physician who so examines the trustee to provide a written letter to the trustee within ninety (90) days after the trustee receives a written request to undergo such examination stating whether in the physician's opinion the trustee is capable or incapable of handling the trustee's affairs. The trustee shall further provide a copy of each such letter and the results of each such examination to the person who made the written request for the trustee to undergo such examination within ninety (90) days after the trustee receives the written request to undergo such examination. The costs of such examination shall be borne by the trust (or equally by the trusts) with respect to which the individual examined is then serving as trustee.

ii. The trustee shall be deemed to be incompetent for all purposes hereunder if:

A. The letters of both physicians conclude that the trustee is incapable of handling the trustee's affairs.

B. The trustee fails to be examined by two (2) licensed physicians within ninety (90) days after the trustee receives a written request to undergo such examination.

C. The trustee fails to provide a copy of the letters and the results of each examination to the person who made the written request for the trustee to undergo such examination within ninety (90) days after the trustee receives a written request to undergo such examination.

c. Any provision of this trust agreement to the contrary notwithstanding, no trustee shall be required to be examined by two (2) licensed physicians as provided in this paragraph more than once every twelve (12) months.

11. Remote contingent distribution. If, at any time during the administration of a trust created herein, there shall be no designated beneficiary of such trust, the entire unappointed balance of such trust shall, subject to the postponement of possession provisions herein, be distributed as follows:

a. One-half (1/2) of such property (or all of such property in the event of a complete lapse under subparagraph b below) to the individual or individuals who then would be entitled to inherit from me under the Ohio laws of descent and distribution as if I had then died intestate and unmarried as a domiciliary of Ohio; and

b. One-half (1/2) of such property (or all of such property in the event of a complete lapse under subparagraph a above) to the individual or individuals who then would be entitled to inherit from my spouse under the Ohio laws of descent and distribution as if my spouse had then died intestate and unmarried as a domiciliary of Ohio.

12. Postponement of possession. If any remote contingent beneficiary has not attained the age of twenty-five (25) years at the time such beneficiary shall be entitled to a distribution of any portion or all of the principal of a trust created herein, such distribution shall be postponed, and thereafter such distribution shall be held, administered and disposed of as a separate trust for the benefit of the beneficiary as follows:

a. The trustee may pay to or for the benefit of a beneficiary who has not attained the age of twenty-five (25) years so much of the net income of the beneficiary's trust as the trustee may determine to be appropriate for the health, education, maintenance and support of the beneficiary and may pay so much of the excess net income, if any, to a custodian under a qualified custodial account as the trustee may determine to be in the beneficiary's best interest. The trustee shall accumulate such net income of the trust that is not distributed, and at the end of each year the accumulation shall be treated as principal.

b. The trustee may pay to or for the benefit of the beneficiary from time to time such amounts of the principal of the beneficiary's trust as the trustee may determine to be appropriate for the health, education, maintenance and support of the beneficiary.

c. In making any discretionary payments of principal hereunder, the trustee may, but need not, take into consideration the beneficiary's other sources of funds which are known to the trustee.

d. The trust shall be distributed to the beneficiary when he or she has attained the age of twenty-five (25) years, or if such beneficiary shall die prior to receipt of any portion of his or her trust, such beneficiary's trust shall be distributed to such beneficiary's then living issue, per stirpes, but if there are no such living issue, to the then living issue, per stirpes of the most remote issue of mine who was an ancestor of such beneficiary, but if there are no such living issue, to my then living issue, per stirpes.

13. Captions. The captions contained in this trust agreement are inserted for convenience or reference only and are not to be deemed part of this trust agreement or to be used in construing this trust agreement.

14. Gender and number. Whenever the context so requires, the gender of all words used in this trust agreement includes the masculine, feminine and neuter; the singular includes the plural; and the plural includes the singular.

15. References to this trust agreement. Any reference to this trust agreement in any other document, such as a beneficiary designation, shall be deemed to include all amendments to this trust agreement, whether made before or after the other document, unless expressly excluded by the other document.

16. Counterparts. This trust agreement may be signed in separate counterparts each of which shall be deemed an original, but all of which shall constitute one and the same trust agreement.

[Signatures on following pages]

IN WITNESS WHEREOF, Raymond Schneider, as settlor, and Patricia B. Schneider, as trustee, have executed this trust agreement on the day and year first above written.

Witnesses:

Bailey R. Drexler ______________________     [signature] ______________________
Raymond Schneider, settlor

Bailey R. Drexler ______________________     Patricia B. Schneider ______________________
Patricia B. Schneider, trustee

STATE OF OHIO )
) SS:
COUNTY OF HAMILTON )

BE IT REMEMBERED, that on December 20, 2019, before me, the subscriber, a Notary Public in and for said county and state, personally came Raymond Schneider and acknowledged the signing and execution of the foregoing trust agreement to be his free and voluntary act and deed.

This is a certificate of acknowledgment. No oath or affirmation was administered to the signer.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my notarial seal on the day and year last aforesaid.

Bailey Renee Drexler ______________________
Notary Public

NOTARIAL SEAL STATE OF OHIO

Bailey Renee Drexler, Attorney At Law
NOTARY PUBLIC - STATE OF OHIO
My commission has no expiration date
Sec 147.03 R.C.

DEBTOR'S EXHIBIT 25
Page 33 of 33

STATE OF OHIO )
) SS:
COUNTY OF HAMILTON )

BE IT REMEMBERED, that on December 20, 2019, before me, the subscriber, a Notary Public in and for said county and state, personally came Patricia B. Schneider and acknowledged the signing and execution of the foregoing trust agreement to be her free and voluntary act and deed.

This is a certificate of acknowledgment. No oath or affirmation was administered to the signer.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my notarial seal on the day and year last aforesaid.

Bailey Renee Drexler
Notary Public

NOTARIAL SEAL STATE OF OHIO

Bailey Renee Drexler Attorney At Law
NOTARY PUBLIC - STATE OF OHIO
My commission has no expiration date
Sec 147.03 R.C.