**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | |
| Raymond Joseph Schneider, | : | Chapter 11 |
| | : | Case No. 1:25-bk-12607 |
| Debtor and Debtor in Possession. | : | Judge Beth A. Buchanan |

**STIPULATION OF FACTS IN CONNECTION WITH THE**
**HEARING ON OCTOBER 5, 2026**

Raymond Joseph Schneider ("**Debtor**") and The Huntington National Bank ("**Huntington**") (collectively, the "**Parties**" and individually, a "**Party**") stipulate to the following with respect to the hearing on October 5, 2026 with regard to Huntington's Motion for Authorization to Prosecute Derivative Actions (the "**Motion**").[1]

## I. AUTHENTICATION AND ADMISSION OF EXHIBITS

1. The Parties stipulate that the exhibits identified on Huntington's Witness and Exhibit List (Doc. 274) and on the Debtor's Witness and Exhibit List (Doc. 289) are authentic. All exhibits, other than Huntington Exhibits FF, GG, HH, II, JJ and QQ, are admitted into evidence solely for purposes of the hearing. Notwithstanding the foregoing, Huntington will not offer Huntington Exhibit RR and that exhibit will not be admitted

## II. STIPULATED FACTS

### The lawsuit and judgment

2. Paragraphs 2 through 11 summarize the background of Huntington's judgment against the Debtor (the "Judgment," as defined in paragraph 9) as described by the Supreme Court of Ohio. The Parties agree, solely for the purposes of the Motion, that the Supreme Court's

---

[1] ECF No. 132

recitation of the background is materially accurate and the Parties reserve the right to present evidence, if they choose, to establish any inaccuracy, ambiguity or omission in the Supreme Court's recitation of the background. The Debtor was a 50 percent owner of the "**Keller Group**," a collection of three skilled-nursing-facility companies and four real-estate companies. *Huntington Nat'l Bank v. Schneider*, 179 Ohio St. 3d 422, 424, 2025-Ohio-2920, 269 N.E.3d 226, 229 (2025). All the Keller Group companies were managed by the Debtor's business partner, Harold Sosna—the other 50 percent owner of the group. *Id*.

3. In addition to the Keller Group, Harold Sosna also fully owned a collection of companies known as the "**JBZ Group**." *Id*. Both the Keller Group and JBZ Group were managed by Premier Health Care Management ("**Premier**"), a company wholly owned by Harold Sosna. *Id*.

4. In early 2018, Premier began the process of engaging Huntington to arrange approximately $77 million in loans as part of a broader refinancing of Premier's real-estate portfolio. *Id*. Harold Sosna was seeking a new lender because Premier had defaulted on its loan from Fifth Third Bank. *Id*.

5. On November 30, 2018, Huntington entered into a credit agreement with 14 borrowers. *Id*. at 424. The borrowers consisted of Premier and the companies in the Keller Group and JBZ Group. *Id*. In support of the credit agreement, Huntington required the Debtor, Harold Sosna, and Faye Sosna to fully and unconditionally personally guarantee the agreement. *Id*. As a result, on the same day the credit agreement was executed, the Debtor entered into a

"Guaranty of Payment of Debt" agreement ("**Guaranty Agreement**") with the bank, wherein the Debtor accepted personal liability for the full $77 million in loans. *Id*.

6. Less than six months later, on May 2, 2019, Huntington required the Debtor to execute a "Reaffirmation of Guaranty and Other Loan Documents" ("Reaffirmation Agreement") with the bank. *Id*. By October 2019, as the financial condition of Premier continued to decline, Huntington had declared the credit agreement loans in default. *Id*. Thereafter, Harold Sosna began to kite checks to cover the operating expenses of the companies managed by Premier. *Id*. His check-kiting scheme surfaced in early 2020, and he was eventually charged with and pled guilty to bank fraud. *Id*.

7. Around the same time, Huntington accelerated the loans in the credit agreement and demanded payment in full of the outstanding obligations from both the borrowers and guarantors. *Id*.

8. On June 5, 2020, Huntington filed a three-count complaint in the Hamilton County Court of Common Pleas seeking repayment from Harold Sosna, Faye Sosna, and the Debtor under their respective guaranty agreements. *Id*. In response, the Debtor alleged that Huntington had fraudulently induced him to sign the Guaranty Agreement. *Id*. The Debtor claimed that the bank had had access to financial information about Harold Sosna and Premier that The Debtor had not known. *Id*. The Debtor asserted that he would never have signed the guaranty agreement and

reaffirmation agreement had he been aware of the eroding financial conditions of Harold Sosna and Premier. *Id*.

9. Huntington moved for summary judgment on its claim against the Debtor. *Id*. The trial court granted the motion for summary judgment in favor of the bank (the "**Judgment**"),[2] finding that the Debtor had waived any defenses available to him under the guaranty agreement, that Huntington had no duty to disclose to the Debtor facts about Premier and Harold Sosna that materially increased the Debtor's risk, and that the Debtor could not establish the elements necessary for a claim of fraudulent inducement. *Id*. The Debtor appealed. *Id*.

10. The First District reversed the trial court's grant of summary judgment. *Id*. The appellate court determined that the Debtor, as a surety, could assert a defense to the guaranty agreement based on Huntington's violation of a duty to disclose facts that materially increased the risk of the suretyship beyond what the Debtor could otherwise have expected. *Id*. In holding that there was a duty to disclose, the First District implicitly adopted Section 124(1) of the Restatement (First) of Security, which the parties refer to as the "doctrine of increased risk." *Id*. The First District therefore determined that summary judgment was improperly granted in favor of Huntington. *Id*.

11. Huntington appealed the decision of the First District to the Supreme Court of Ohio. On August 20, 2025, the Supreme Court of Ohio reversed the judgment of the First District Court

[2] The Judgment was originally in the approximate amount of $75.6 million plus accruing interest from July 28, 2020. See*,* *In re Schneider*, No. 23-10337, 2024 Bankr. Lexis 558, at *3 (Bankr. S.D. Ohio Feb. 27, 2024). The outstanding balance of the judgment has been reduced by Huntington's recovery from other sources. Huntington filed a proof of claim in this case in the amount of $36,131,393.30. See, Claim No. 11-2.

of Appeals and reinstated the summary judgment granted to Huntington by the Hamilton County Court of Common Pleas. *Id.* at 428.

12. Huntington's First Amended Proof of Claim (Claim No. 11-2), filed March 3, 2026, asserts a claim of $36,131,393.30 as of October 17, 2025, consisting of $31,025,848.67 of principal and interest and $5,105,544.63 of attorneys' fees and costs. A copy of the proof of claim is marked as Debtor's Exhibit 23.[3]

**The First Bankruptcy Case**

13. On March 1, 2023, the Debtor filed his first bankruptcy case (the "**First Case**").[4] On February 27, 2024, the Court granted the Debtor's motion to dismiss the First Case when the Judgment was vacated by the Ohio First District Court of Appeals.

14. The Debtor's Summary of Assets and Liabilities and Certain Statistical Information in the First Case[5] reflects the amounts set forth in the table below. On March 17, 2023, the Debtor filed an amended Schedule A/B that listed seven business interests with a total value of

---

3 Claim No. 11-2, Addendum ¶¶ 9-11.

4 Case number 23-10337

5 First Case, ECF No. 44, page 8 of 62.

$18,404,211.45 and did not restate the other categories of personal property; no amended Summary of Assets and Liabilities was filed.[6]

| | |
|---|---|
| Total Real Estate | $3,560,000.00[7] |
| Total Personal Property | $31,867,931.40[8] |
| Total Property | $35,427,931.40 |
| | |
| Secured Claims | $19,997,099.00[9] |
| Priority Claims | $0.00[10] |
| Unsecured Claims | $158,229,361.90[11] |
| Total Liabilities | $178,226,460.90[12] |
| | |
| Monthly Income | $30,360.00 |
| Monthly Expenses | $17,494.00 |

**The Competing Plans in the First Case**

15. The Debtor did not file a chapter 11 plan prior to the expiration of exclusivity. *In re Schneider*, No. 23-10337 (Bankr. S.D. Ohio Feb. 27, 2024) (First Case, ECF No. 344) (the "Dismissal Opinion"), at 7. On October 4, 2023, Huntington filed a proposed Chapter 11 Disclosure Statement and Plan of Liquidation[13] along with a motion to approve the disclosure

6 First Case, ECF No. 47.

7 First Case, ECF No. 44, page 8 of 62

8 First Case, ECF No. 44, page 8 of 62

9 First Case, ECF No. 44, page 8 of 62

10 First Case, ECF No. 44, page 8 of 62

11 First Case, ECF No. 44, page 8 of 62

12 First Case, ECF No. 44, page 8 of 62

13 First Case, ECF No. 197

statement, establish the plan confirmation schedule, and for other relief.[14] *Id.* Huntington amended its proposed Plan of Liquidation[15] on October 19, 2023. *Id.*

16. Huntington's Plan of Liquidation proposed to pay all creditors in full (except its own judgment claim estimated to be paid at 70-90%) through the creation of a liquidating trust that would liquidate all of the Debtor's non-exempt assets including his business membership interests and would investigate and potentially recover fraudulent transfers *Id*. In addition, Huntington's plan included a provision to settle all of the Debtor's claims against Huntington, including the Debtor's appeal of Huntington's judgment, in exchange for $100,000. *Id*.

17. On November 8, 2023, the Debtor filed his own Disclosure Statement with a Proposed Chapter 11 Plan of Reorganization attached and a motion to approve the disclosure statement, establish the plan confirmation schedule, and for other relief. *Id.* In the Plan of Reorganization, The Debtor proposed to reaffirm liabilities on debts for which he is either the co-obligor, co-borrower, or on which he signed a personal guarantee with payments continuing in the regular course of business *Id.* The Debtor proposed to pay unsecured claims in full over a three-year period and any allowed claim of Huntington in full over a period of five years. *Id.* The Debtor includes a provision to retain his interests in real property and entities but to take no distribution during the term of the plan except to meet his budget and make the payments required under the Plan of Reorganization. *Id.* The Debtor's First Case plan provided that the allowed claim of Huntington would be guaranteed by the Raymond Schneider 2019 Gift Trust and the Patricia B.

---

14 First Case, ECF Nos. 196 and 211

15 First Case, ECF No. 213

Schneider 2020 Gift Trust.[16] Huntington's motion in the First Case for authority to prosecute avoidance actions against those trusts remained pending when the First Case was dismissed.[17]

**The Dismissal of the First Case**

18. The Debtor filed a motion to dismiss[18] the First Case on January 8, 2024 and an amended motion[19] on January 17, 2024. Huntington objected to the motion to dismiss.

19. The Court granted the Debtor's motion to dismiss and dismissed the first case on February 27, 2024.[20]

20. The competing plans became moot upon the dismissal of the First Case.

**The Second Bankruptcy Case**

21. After the Ohio Supreme Court reinstated the Judgment[21] on August 20, 2025, the Debtor filed this second bankruptcy case (the "**Second Case**") on October 17, 2025 (the "**Petition Date**").

22. The Debtor's Summary of Assets and Liabilities and Certain Statistical Information in the Second Case[22] reflects the following:

---

16 Huntington Exhibit I, Plan § 3.05.

17 First Case, ECF No. 97; Huntington Exhibit I, Disclosure Statement § IV.D; Huntington Exhibit CC, ¶ 31.

18 First Case, ECF No. 297

19 First Case, ECF No. 308

20 First Case, ECF No. 345

21 ECF No. 7, paragraph 3

22 ECF No. 50, page 8 of 124

| | |
|---|---|
| Total Real Estate | $3,733,575.00 |
| Total Personal Property | $63,164,108.31 |
| Total Property | $66,897,683.31 |
| | |
| Secured Claims | $19,787,951.58 |
| Priority Claims | $0.00 |
| Unsecured Claims | $146,830,676.21 |
| Total Liabilities | $166,618,627.79 |
| | |
| Monthly Income | $88,903.80 |
| Monthly Expenses | $38,648.51 |

23. The Debtor's bankruptcy schedules and statements in the Second Case are preceded by seven pages captioned "Global Notes Regarding Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs" (the "Global Notes"), which include the following Global Note 8:

> 8. Financial Transactions. The financial affairs and business of the Debtor are complex. Prior to the petition date, the Debtor operated as a business owner with the ability to transfer funds as needed to meet personal, business, and future business needs. The Debtor has used his best efforts to track the information from his financial transactions that is required to be included in the Schedules and Statement, and reserves the right to supplement and amend the disclosures should the need arise. In addition, the Debtor has had certain financial transactions with his business entities that may not yet have been characterized or may have been improperly characterized, including characterizations such as whether funds provided to a company were for capital contributions or loans, or whether funds paid to the Debtor were draws or loans. The Debtor continues to review all such transactions and will supplement and/or amend the Schedules and Statement as may be appropriate.[23]

24. Global Note 12, captioned "Recharacterization," states:

> 12. Recharacterization. Notwithstanding the Debtor's reasonable best efforts to properly characterize, classify, categorize, or designate certain claims, assets, executory

[23] ECF No. 50, page 3

> contracts, and other items reported in the Schedules and Statement, the Debtor may nevertheless have improperly characterized, classified, categorized, designated, or omitted certain items. Accordingly, the Debtor reserves all of his rights to recharacterize, reclassify, recategorize, redesignate, add, or delete items reported in the Schedules and Statement at a later time as is necessary and appropriate, as additional information becomes available.[24]

25. The Global Notes state, with respect to Question 4 of the Statement of Financial Affairs:

> Question 4: The Debtor's income generation is complex and comes from a multitude of business sources, including multiple business interests and investments. As an individual, the Debtor does not maintain regular financial records of his personal income other than through his tax filings, which are complex, and through his financial accounts, which are complicated by inter-account transfers. The Debtor has used his best efforts to estimate his gross income for this response based on his tax filings and bank statements but continues to review these figures and will amend if appropriate upon a more accurate determination. The Debtor has not yet filed his 2024 tax returns, which further complicates the response to this question, and the 2024 and 2025 figures are based on bank statements after accounting, to the extent possible, for inter-account transfers.[25]

26. The Debtor has not amended the schedules and statements in the Second Case.

27. The Debtor has not sought Court approval to retain an accountant in the Second Case.

**The Raymond Schneider Gift Trust**

28. The Debtor created the "Raymond Schneider 2019 Gift Trust" (the "**Debtor's 2019 Gift Trust**") pursuant to an "Irrevocable Trust Agreement" between the Debtor, as settlor, and

---

24 ECF No. 50, page 4.

25 ECF No. 50, pages 6-7.

Patricia B. Schneider, as trustee, dated December 20, 2019. A copy of this document is marked as Huntington Exhibit L. Patricia B. Schneider is the Debtor's spouse. The Debtor's 2019 Gift Trust includes the following attributes:

| **Feature** | **Term** |
|---|---|
| Settlor | Debtor |
| Initial Trustee | Patricia Schneider |
| Beneficiary during life of Patricia Schneider | Patricia Schneider. |
| Beneficiaries following the death of Patricia Schneider | Debtor's children |
| Power of appointment | Article II, Section 3: upon the death of Patricia Schneider, the remaining trust estate passes to the Debtor's issue as she appoints; the trust provides that nothing in that section gives her the power to appoint any portion of the trust estate to the Debtor, herself, either of their estates, or either of their creditors. |
| Use of principal and income during life of Patricia Schneider | Patricia Schneider, as the trustee, may pay herself the income and principal of the trust as the trustee may determine to be appropriate for health, education, maintenance and support of Patricia Schneider. |
| Removal of Trustee | Article V, Section 9: a majority in interest of the beneficiaries to whom the trustee is then directed or authorized to pay the net income of the trust may remove a trustee. |
| Power to Substitute Assets | Article VII of the trust gives the Debtor the right to require the trustee to transfer to the Debtor any or all of the trust assets in exchange for assets of equivalent value. |
| Grantor Trust | Article VII of the trust provides that during the lifetime of the Debtor and |

| **Feature** | **Term** |
|---|---|
| | Debtor's spouse it is the Debtor's intention that the trust will be taxed as a "grantor trust" under Sections 672(e) and 675(4)(C) of the Internal Revenue Code, 26 U.S.C. §§ 672(e), 675(4)(C). |
| Loans to the executor of the Debtor's estate | Article IV, Section 1 authorizes the trustee, to the extent it will not require inclusion of the trust estate in the Debtor's federal gross estate, to loan funds to the executor of the Debtor's estate and to purchase assets from the Debtor's estate. |

**The Transfers of the Red Apartment Company**

29. One of the Debtor's businesses is a 250-unit apartment complex with three (3) restaurant spaces known as "The Red Apartments" which is owned by To Life, Ltd (the "Red Apartment Company").

30. Prior to December 31, 2019, the ownership of the Red Apartment Company was as follows:

| **Owners** | **Class A Units (voting)** | **Class B Units (non-voting)** |
|---|---|---|
| Raymond Schneider | 80 | 720 |
| Patricia Schneider | 5 | 45 |
| Justin Schneider | 5 | 45 |
| Eric Schneider | 5 | 45 |

31. In a June 1, 2019 personal financial statement the Debtor provided to Huntington, the Debtor valued his interest in "the Red" at $31,500,000. A copy of the personal financial statement is marked as Huntington Exhibit R.

32. According to the Debtor, on December 31, 2019, the Debtor transferred 720 Class B Units of the Red Apartment Company to the Debtor's 2019 Gift Trust, and the ownership of the Red Apartment Company was reallocated effective December 31, 2019 at 11:59 pm as follows:

| **Owner** | **Class A Units (voting)** | **Class B Units (non-voting)** |
|---|---|---|
| Raymond Schneider | 80 | - |
| Debtor's 2019 Gift Trust | - | 720 |
| Eric Schneider | 5 | 45 |
| Justin Schneider | 5 | 45 |
| Danielle Schneider | 5 | 45 |

33. Following the Red Apartment Company Transfer, the Debtor retained a supermajority of the Class A Units of the Red Apartment Company, which are the voting units. The Class B Units of the Red Apartment Company are not entitled to vote.

34. The Debtor is the designated Manager and Chairman of the Red Apartment Company under Section 6.01 of its Third Amended and Restated Operating Agreement. A copy of the operating agreement is marked as Huntington Exhibit NN.

35. On July 8, 2022, Circle Development of Cincinnati, LLC, an entity wholly owned by the Debtor, purchased the property known as 5211 Madison Road, Cincinnati, Ohio 45227 from the American Heart Association for a purchase price of $1,250,000. Circle Development of Cincinnati, LLC is the borrower on the HUD-1 settlement statement for the purchase, which the Debtor signed on its behalf and the settlement agent certified on July 8, 2022; the Red Apartment Company is not a party to the settlement statement.[26] The purchase price and closing costs were paid with a $100,000 earnest money deposit, $828,042.50 of the proceeds of a $937,500 loan from First Federal Savings & Loan Association of Lakewood, and $332,003.91 advanced by Circle

[26] HUD-1 Settlement Statement (RS0090898-RS0090900); Real Estate Purchase Agreement dated January 6, 2022 (RS0228917-RS0228935).

Storage Operating Co I, LLC, an entity wholly owned by Grasshopper Investments, LLC ($225,503.91), and Boston RD, LLC, an entity wholly owned by the Debtor ($106,500), which Circle Development of Cincinnati, LLC carries on its books as intercompany payables. The balance of the loan proceeds funded a $106,500 interest reserve held by the lender and $7,957.50 of lender fees.[27] Circle Development of Cincinnati, LLC and the Debtor, jointly and severally, executed the promissory note to First Federal dated July 8, 2022, and Circle Development of Cincinnati, LLC granted First Federal an Open-End Mortgage and an Assignment of Rents on the property, each dated July 8, 2022 and recorded with the Hamilton County Recorder on July 20, 2022.[28] Title to the property passed from the American Heart Association to the Red Apartment Company by a general warranty deed executed June 28, 2022 and recorded July 20, 2022, which the Hamilton County Auditor's conveyance records reflect at a sales amount of $1,250,000, and from the Red Apartment Company to Circle Development of Cincinnati, LLC by a general warranty deed executed July 6, 2022 and recorded July 26, 2022, which the Auditor's conveyance records reflect at a sales amount of $0.00.[29] First Federal filed Proof of Claim No. 20 in this case on December 23, 2025, in the amount of $937,500.00, based on the Debtor's obligation on that note.[30]

---

27 First Federal Disbursement Request dated July 8, 2022 (RS0090928); Circle Storage Operating Co I, LLC bank statement (RS0131998); Circle Development of Cincinnati, LLC balance sheet as of December 31, 2022 (RS000715-RS000717).

28 Claim No. 20 and Part 2 (Promissory Note dated July 8, 2022); Open-End Mortgage, Hamilton County Recorder Doc. No. 2022-0071154, Off. Rec. 14712, page 367; Assignment of Rents, Doc. No. 2022-0071155, Off. Rec. 14712, page 387.

29 General Warranty Deed, American Heart Association to To Life, Ltd., Hamilton County Recorder Doc. No. 2022-0071153, Off. Rec. 14712, page 364; General Warranty Deed, To Life, Ltd. to Circle Development of Cincinnati, LLC, Doc. No. 2022-0073098, Off. Rec. 14716, page 338.

30 The statements in this paragraph do not constitute an admission of Huntington for any purpose other than the hearing on the Motion and the Parties agree that Huntington will not be bound by this paragraph or any finding

**The Patricia Schneider Gift Trust**

36. The Debtor's spouse, Patricia B. Schneider, created the "Patricia B. Schneider 2020 Gift Trust" (the "**Spouse's 2020 Gift Trust**") pursuant to an "Irrevocable Trust Agreement" between Patricia Schneider, as settlor, and the Debtor, as trustee, dated December 28, 2020. A copy of this document is marked as Huntington Exhibit M. The Spouse's 2020 Gift Trust includes the following attributes:

| **Feature** | **Term** |
|---|---|
| Settlor | Patricia Schneider |
| Initial Trustee | Debtor |
| Beneficiary during life of Patricia Schneider | The Debtor and the Debtor's issue, in the trustee's discretion. |
| Beneficiaries following the death of Patricia Schneider | Debtor's children |
| Powers of appointment | Article II, Sections 3 and 4: the Debtor holds lifetime and testamentary limited powers to appoint the trust estate among Patricia Schneider's issue; the trust provides that he may not exercise either power in favor of himself, Patricia Schneider, either of their estates, or either of their creditors. |
| Use of principal and income during life of Debtor | The Debtor, as trustee, may pay to or for the benefit of any one or more of the Debtor and the Debtor's issue, in such proportions as the trustee determines, such amounts of income and principal as the trustee determines to be appropriate for their health, education, maintenance and support (Article II, Section 2(a)). Any discretionary distribution beyond that ascertainable standard may be made only by a special trustee, not by the Debtor (Article VI, Section 1(b)). |
| Removal of Trustee | Article V, Section 8: during her lifetime, Patricia Schneider may remove a trustee; after her death, the Debtor may remove a |

by the Court of the facts set forth in this paragraph other than in connection with the Motion. The Parties agree that Huntington shall have the right to challenge the accuracy of the facts in this paragraph in future proceedings.

| **Feature** | **Term** |
|---|---|
| | trustee; after the death of both, a majority in interest of the income beneficiaries may remove a trustee. |
| Power to Substitute Assets | Article VII of the trust gives the Patricia Schneider the right to require the trustee to transfer to Patricia Schneider any or all of the trust assets in exchange for assets of equivalent value. |
| Grantor Trust | Article VII of the trust provides that during the lifetime of Patricia Schneider and the Debtor it is Patricia Schneider's intention that the trust will be taxed as a "grantor trust" under Sections 672(e) and 675(4)(C) of the Internal Revenue Code, 26 U.S.C. §§ 672(e), 675(4)(C). |
| Power to loan | Article IV, Section 10 permits the trustee to loan money or property to any present or future beneficiary of the trust, to any person controlled by a beneficiary, or to any estate or trust of which a beneficiary is a beneficiary. |

**The Red Dog Pet Transactions**

37. Prior to February 28, 2020, the Debtor was the sole owner of the Red Dog Pet business, which operated through the following entities (the "Red Dog Entities"):

Boston Animal Hospital, LLC
Boston Red Dog Pet Resort & Spa LLC
West Chester Pet Resort & Spa LLC
Red Dog Resort & Spa, LLC
Mason Red Dog Pet Resort & Spa, LLC
North Shore Red Dog Pet Resort & Spa, LLC
Atlanta Red Dog Pet Resort & Spa, LLC
Springdale Red Dog Pet Resort & Spa, LLC

38. The Red Dog Entities are the operating companies of the Red Dog Pet business. The real estate used in the business is owned by separate entities wholly owned by the

Debtor, including Boston RD, LLC, Mason RD, LLC, and North Shore RD, LLC, which are not among the Red Dog Entities.[31]

39. In the Debtor's June 1, 2019 personal financial statement provided to Huntington, the Debtor represented that the total market value of his interests in four (4) of the Red Dog Entities[32] disclosed on the financial statement was $28,600,000.00. A copy of the personal financial statement is marked as Huntington Exhibit R.

40. On February 28, 2020, the Debtor formed Red Dog Operations Holding Company, LLC, renamed Kindred Pet Service, LLC as of September 19, 2025 (the "Red Dog Holding Company").

41. According to the Red Dog Holding Company's original Operating Agreement, the Debtor contributed his membership interests in the Red Dog Entities as capital for the Red Dog Holding Company. A copy of the Operating Agreement is marked as Huntington Exhibit P. According to the operating agreement, the Debtor's capital account balance following this contribution was $6,269,000 for which the Debtor received eighty percent (80%) of the ownership interests of the Red Dog Holding Company, represented by one (1) voting Class A Unit and 7,999 non-voting Class B Units.

42. The other initial owner of the Red Dog Holding Company was the Debtor's son, Eric Schneider, who is designated as President of the Red Dog Holding Company in the Operating Agreement.[33] According to the Operating Agreement for the Red Dog Holding

---

31 Huntington Exhibit QQ, page 161, line 13 to page 164, line 4; Debtor's Exhibit 9, Interrogatory 4 and Schedule 8.

32 Described as a) Pet Mall ($12,000,000); b) Cinti Red Dog ($6,600,000), c) Saugus Red Dog ($5,500,000); and d) Mason Red Dog ($4,500,000).

33 Huntington Exhibit P, § 6.3.

Company, Eric Schneider contributed $530.87 in exchange for twenty percent (20%) of the ownership interests, represented by two thousand (2,000) non-voting Class C Units.

43. The preamble to the original Operating Agreement for the Red Dog Holding Company states the agreement is made effective January 1, 2020. Eric Schneider's signature line on the operating agreement bears the date of January 30, 2020.

44. On November 1, 2020, the Debtor transferred 6,999 non-voting Class B Units of the Red Dog Holding Company to his wife, Patricia Schneider. On December 31, 2020, the Debtor gifted 1,000 non-voting Class B Units of the Red Dog Holding Company to Eric Schneider.

45. By assignment effective as of December 31, 2020, Patricia Schneider assigned the 6,999 Class B Units of the Holding Company to the Spouse's 2020 Gift Trust.

46. As of December 31, 2020, the membership of the Red Dog Holding Company was as follows:

| **Member** | **Class A Units (voting)** | **Class B Units (non-voting)** | **Class C Units (non-voting)** |
|---|---|---|---|
| Raymond Schneider | 1 | 0 | 0 |
| Spouse's 2020 Gift Trust | 0 | 6,999 | 0 |
| Eric P. Schneider | 0 | 1,000 | 2,000 |
| Total | 1 | 7,999 | 2,000 |

47. Following the December 31, 2020 transfers, the Debtor held the sole voting Class A unit of the Red Dog Holding Company and was the only member entitled to vote.

**The Sale of the Red Dog Pet Business**

48. Between the First Case and the Second Case, on November 15, 2024, the members of the Red Dog Holding Company contributed their units to KPT7 Holding Company, LLC ("KPT7"), which sold seventy-five percent (75%) of the Red Dog Holding Company to Kindred

Pet Service Holdings, LLC for cash and exchanged the remaining twenty-five percent (25%) for Class A units of the purchaser.[34] In his Statement of Financial Affairs, the Debtor disclosed that on November 15, 2024, (a) he transferred his 100% membership interest in Red Dog Management Company, LLC to the Red Dog Holding Company as a contribution "as a part of a broader transaction for the sale of Red Dog Operations Holding Company, LLC," and (b) he transferred his one Class A unit of the Red Dog Holding Company to KPT7 and was granted an interest in KPT7.[35] KPT7 is owned 64.99% by the Spouse's 2020 Gift Trust, 35% by Eric P. Schneider, and 0.01% by the Debtor; the Statement of Financial Affairs erroneously described the Debtor's interest in KPT7 as 0.5%.[36]

49. On November 15, 2024, the Red Dog Pet operating business was sold to Kindred Pet Service Holdings, LLC, a third party, for approximately $18 million.[37] Entities wholly owned by the Debtor, including Boston RD, LLC, Mason RD, LLC, and North Shore RD, LLC, retained ownership of the real estate used in the business and leased that real estate to the buyer under long-term leases.[38] Testifying at his Rule 2004 examination without records before him, the Debtor stated that Eric Schneider received approximately thirty percent (30%) of the sale proceeds, that Justin Schneider and Danielle Senzer each received approximately $500,000, and that the

---

[34] Debtor's Exhibit 9, Interrogatory 4; Disclosure Statement (ECF No. 190), Article VII.D.4.

[35] ECF No. 50, Statement of Financial Affairs, section 18; see also Disclosure Statement (ECF No. 190), Article VII.D.4; Debtor's Exhibit 9, Interrogatory 4.

[36] Debtor's Exhibit 9, Interrogatory 4; Disclosure Statement (ECF No. 190), Article V.E.8; ECF No. 50, Schedule A/B, item 19.20, and Statement of Financial Affairs, section 18.

[37] Huntington Exhibit QQ, page 157, line 22

[38] Huntington Exhibit QQ, page 161, line 13 to page 164, line 4; Disclosure Statement (ECF No. 190), Article VII.D.4.

balance was retained by the Spouse's 2020 Gift Trust or reinvested in the purchaser, and that he would have to review documents to state the amounts.[39]

**The Grasshopper Transactions**

50. Prior to November 1, 2020, the Debtor owned one hundred percent (100%) of Grasshopper Investments, LLC ("**Grasshopper**") which is generally engaged in the storage facility business.

51. In the June 1, 2019 personal financial statement which the Debtor provided to Huntington, the Debtor stated the market value of six (6) Grasshopper entities was $27,250,000.00.[40] A copy of the personal financial statement is marked as Huntington Exhibit R.

52. By assignment effective on November 1, 2020, the Debtor transferred 396 non-voting Class B units of Grasshopper to Patricia Schneider. The Debtor retained two (2) Class A units of Grasshopper which represent all of the units entitled to vote.

53. By an assignment effective on December 31, 2020 at 11:59 pm, Patricia Schneider transferred 396 non-voting Class B units of Grasshopper to the Spouse's 2020 Gift Trust. Following that transfer, Grasshopper was owned 99% by the Spouse's 2020 Gift Trust (396 Class B units), 0.5% by the Debtor (2 Class A units), and 0.5% by Schneider-Grasshopper, Inc. (2 Class B units), a corporation wholly owned by the Debtor.[41]

**The Schneider Family Insurance Trust**

---

39 Huntington Exhibit QQ, page 155, lines 8-12; page 159, lines 1-8; page 162, lines 9-18; page 165, line 3 to page 167, line 3.

40 Described as: a) Amelia ($3,500,000); b) 74 Self Storage ($4,400,000); c) Blue Ash ($6,800,000); d) Circle Colerain ($8,500,000); e) Horizon Health Mgt. ($550,000); and f) West Chester ($3,500,000).

41 Huntington Exhibit K, page 14; Debtor's Exhibit 9, Interrogatory 4 and Schedule 2; ECF No. 50, Schedule A/B, item 19.

54. The Debtor and Patricia Schneider are the settlors of the Schneider Family Insurance Trust, an irrevocable trust established in October 2019, of which Emily S. Pan, Esq. of Vorys, Sater, Seymour and Pease LLP is the trustee. The trust owns, and is the beneficiary of, a $10 million second-to-die life insurance policy on the lives of the Debtor and Patricia Schneider. The beneficiaries of the trust are the Debtor's lineal descendants, and, according to the Debtor, the trust instrument prohibits any distribution of income or principal to the settlors.[42] The annual premium for the policy is $162,000. On October 19, 2022, the Debtor contributed $162,000 to the trust, which the trustee applied to the 2022 premium.[43] Asked at his Rule 2004 examination who pays the annual premium, the Debtor testified, "I don't remember."[44]

**The 2018 Trust**

55. On December 21, 2018, the Debtor executed a document entitled "Transfer on Death Designation Affidavit [R.C. §5302.22]". A copy of this document is marked as Huntington Exhibit N. The affidavit was notarized by Emily S. Pan, Esquire and recorded in the Hamilton County Recorder's Office on January 7, 2019. In the affidavit, the Debtor designated his entire undivided fee simple interest in his primary residence for transfer on death, as transfer on death beneficiary, to Patricia B. Schneider and her successors as successor Trustee of the Raymond Schneider Trust dated December 18, 2018, as the same may be amended.

**Income of Debtor's spouse**

56. On their 2023 tax return, Patricia Schneider's occupation is listed as "retired." A redacted copy of the tax return is marked as Huntington Exhibit Z.

---

42 Debtor's Exhibit 9, Interrogatories 16 and 26; Debtor's Exhibit 24, page 2.

43 Huntington Exhibit PP.

44 Huntington Exhibit QQ, page 64, lines 18-21.

57. In 2023, Grasshopper paid Patricia Schneider wages of $418,654.[45] At that time, Grasshopper was owned 99% by the Spouse's 2020 Gift Trust and 1% by the Debtor, directly and through Schneider-Grasshopper, Inc.

58. The Schneiders' joint federal income tax returns for 2020, 2021, and 2022 report no wages on line 1. The 2020 return leaves the occupation of each spouse blank. The 2021, 2022, and 2023 returns list Patricia Schneider's occupation as "retired" and the Debtor's occupation as "RE Professional."[46]

59. The Debtor's spouse does not have an email address with any of the Debtor's entities. The Debtor's spouse uses an America Online (AOL) email account.

**The Blue Apartment Transactions**

60. Between the First Case and the Second Case, the Debtor transferred his 100% equity interest in The Blue Development Company, LLC to the Debtor's 2019 Gift Trust in exchange for a $1,485,000 promissory note.[47] "The Blue" is a planned large-scale, mixed-use development on real property in Blue Ash, Ohio owned by The Blue Development Company, LLC, similar in concept to the Debtor's "The Red" apartment complex.[48] The Blue has been under development for a long period of time but has not broken ground. The Disclosure Statement states

---

45 Huntington Exhibit Z, Form 1040 line 1a and Statement 1.

46 Huntington Exhibit Y (2022 return), Form 1040 pages 1-2; Huntington Exhibit Z (2023 return), Form 1040 page 2; 2021 Form 1040 pages 1-2 (RS011784-85) and 2020 Form 1040-SR pages 1 and 3, produced by the Debtor.

47 ECF No. 50, Statement of Financial Affairs, section 18, and Schedule A/B, item 30; see also Disclosure Statement (ECF No. 190), Article VII.D.5; Debtor's Exhibit 9, Interrogatory 4.

48 See https://circledevelopment.com/the-blue.

that the sale was undertaken to facilitate development of the project in conjunction with the City of Blue Ash, Ohio, and was made for the value of the equity in the real estate after existing liens.[49]

61. On July 6, 2026, the Debtor entered into a Settlement Agreement between: a) the Debtor as debtor and debtor in possession; b) Patricia Schneider in her capacity as trustee of the Debtor's 2019 Gift Trust; and c) To Life, Ltd which joined the agreement for limited purposes. A copy of the Settlement Agreement is marked as Huntington Exhibit KK. The Debtor has not yet filed a motion to approve the Settlement Agreement.

**Debtor's Rule 2004 Examination Testimony**

62. The Debtor was examined under Bankruptcy Rule 2004 on September 22, 2026. The examination was adjourned and has not been concluded. The Debtor elected to review the transcript and anticipates submitting an errata sheet under Rule 30(e) within the time permitted, but was unable to complete the errata sheet before this hearing. The transcript is marked as Huntington Exhibit QQ and includes the following testimony:

> Q. Would you ever sue your wife under any circumstances, other than, like, a divorce?
>
> A. I don't know. Definitely not…[50]
>
> Q. Do you think you would remember ceding control of companies to your family?
>
> A. As I sit here today, it's September 21st, I can't remember things that I did nine years ago in every fashion, so I go back

---

49 Disclosure Statement (ECF No. 190), Article VII.D.5; Huntington Exhibit QQ, page 84, line 6 to page 90, line 3.

50 Huntington Exhibit QQ, page 124, line 9

to my documents, I look at what I did, and I did things the right way at the right time. And the statute of limitations says that I did this back early on, and at the end of '22 and the end of '24. This is all behind me.[51]

Q. If a court ultimately determines that your claim against Huntington is not valid, in that you owe Huntington whatever Huntington claims, would you be willing to sue Eric or your other family members or your spouse or your spouse as trustee to undo these transactions that we've talked about?

MR. COUTINHO: Objection to the form of the question. Presumes that the transactions are voidable.

A. I think you asked too many questions in one question. I'm not going to say yes, and I'm not going to say no.

Q. Would you ever sue your spouse?

A. Why should I?

Q. If you determined that there was a --

A. I determined that I have enough assets, and I've shown Huntington several years ago that I have enough to cover the original claim. Their claim was put down with incomplete records. You can't have a case without complete records. And currently, six years later, I still don't have complete

51 Huntington Exhibit QQ, page 141, lines 5-14.

records. And we will be asking for them because we need a complete record to have a good trial. And I have enough money, enough assets, to cover anything that's going to come forward.[52]

Q. So are you saying that you would not sue your spouse?

A. I never said that. I said I don't need to go there, so -- I've got enough assets. I've got enough regulations that Huntington has not provided in the court system. Until we get to the complete record, I don't have to think that way.[53]

Q. Would you ever sue your spouse to collect an asset of the bankruptcy estate?

A. I have no interest in answering that question…[54]

MR. COUTINHO: You're asking him a hypothetical that conflicts with his plan provisions. So, I mean, he's proposed a liquidating agent that's going to be appointed to handle estate actions. So I'm not sure that -- I'm not sure it's a hypothetical you should be asking or be asked.[55]

(A discussion is held off the record.)

---

52 Huntington Exhibit QQ, page 177, line 20 to page 178, line 22.

53 Huntington Exhibit QQ, page 180, lines 2-8.

54 Huntington, Exhibit QQ, page 180, line 16

55 Huntington Exhibit QQ, page 181, lines 2-8.

Q. …Would you ever sue your spouse to recover assets of the bankruptcy estate?...

MR. COUTINHO: Objection. Hold on. Objection to the form and substance of the question. But go ahead.

A. My answer is no…[56]

Q. …Would you sue the trust or any of your children to recover assets?

A. No.… [57]

MR. COUTINHO: Same objection.

Q. Would you ever sue one of your companies to recover assets for the bankruptcy estate?

MR. COUTINHO: Objection to form.

A. No.[58]

Q. Do you know how much your companies may owe you?

A. No. We're trying to figure that out.[59]

**The Debtor's Personal Financial Statements**

63. At various times, the Debtor submitted personal financial statements to various third parties. Certain of these personal financial statements are marked as Huntington Exhibits R through X. These financial statements include the following information:

---

56 Huntington, Exhibit QQ, page 181, line 19 to page 182, line 3

57 Huntington, Exhibit QQ, page 182, line 4

58 Huntington Exhibit QQ, page 208, line 15

59 Huntington Exhibit QQ, page 208, lines 15-22.

| Exhibit | Date | Total Assets | Total Income[60] |
|---|---|---|---|
| R | June 1, 2019 | $151,959,300 | $2,199,000[61] |
| S | September 1, 2021 | $148,213,000 | N/A |
| T | June 1, 2022 | $151,675,000 | $2,212,000[62] |
| U | April 30, 2023 | $231,576,000 | $1,905,000[63] |
| V | March 31, 2024 | $115,020,978 | N/A |
| W | October 1, 2025 | $159,391,800 | $1,483,000 |
| X | January 31, 2026 | $115,570,978 | N/A |

**Tax Returns**

64. The Debtor has not filed his federal income tax returns for 2024 and 2025 as of September 22, 2026. The Debtor's 2025 return is on extension to October 15, 2026.[64]

**Additional Stipulated Facts**

65. On January 15, 2026, the Debtor removed Huntington's state-court action, Hamilton County Court of Common Pleas Case No. A2504784, to this Court, where it is pending as Adversary Proceeding No. 1:26-ap-01003.[65] A copy of the Notice of Removal is marked as Debtor's Exhibit 3.

---

60 Net of depreciation and a negative adjustment for an item described as "Real Estate Income:ADJ-Inc."

61 Year ending December 31, 2018

62 Year ending December 31, 2021

63 Year ending December 31, 2022

64 Huntington Exhibit QQ, page 31, lines 3-21.

65 ECF No. 94.

66. Huntington filed its complaint in Case No. A2504784 on September 29, 2025. The complaint alleges that "[i]n or around 2023, Huntington learned that Raymond Schneider had undertaken a series of transfers and transactions that culminated on or about December 31, 2020 in which he transferred tens of millions of dollars in assets to members of his family."[66] In the First Case, Huntington filed an adversary complaint, Adversary Proceeding No. 23-1036, describing transfers to the family gift trusts made in late 2020.[67]

67. On February 27, 2026, Huntington filed its Motion for the Appointment of an Examiner Pursuant to 11 U.S.C. § 1104, requesting the appointment of an examiner "with broad investigatory authority" over, among other things, "transactions involving the Debtor, his family, all trusts associated with the Debtor or his family, [and] the Debtor's businesses."[68] A copy of the motion is marked as Debtor's Exhibit 10 and Huntington Exhibit CC.

68. On April 23, 2026, the Court entered the Agreed Order Directing the Appointment of Examiner, to which Huntington consented. Under the Agreed Order, the Examiner's investigation includes transactions since January 1, 2018 involving the Debtor, his family, all trusts associated with the Debtor or his family, and the Debtor's businesses, and "the identification and investigation of any potential estate causes of action in this case." The Examiner has subpoena and Rule 2004 authority and receives all documents and information the Debtor produces to Huntington. The Examiner's report is due ninety (90) days after the Court's approval of the

---

66 Debtor's Exhibit 32, ¶ 29.

67 Dismissal Opinion (First Case, ECF No. 344) at 32-33.

68 ECF No. 115, ¶ 56 and page 22.

Examiner's work plan and budget.[69] A copy of the Agreed Order is marked as Debtor's Exhibit 11.

69. William G. Krieger was appointed Examiner on May 8, 2026, and the Court approved his appointment on May 19, 2026.[70] The Examiner's Preliminary Work Plan budgeted approximately $312,300 and 997 hours of professional time, exclusive of the fees of the Examiner's counsel, and included "targeted investigative procedures" that "are intended to evaluate transfers involving the Debtor's spouse, family members, trusts, and affiliated entities."[71] The Court approved the Work Plan and Budget in their entirety on August 5, 2026.[72] Through August 31, 2026, the Examiner had billed $138,781.71, and through July 31, 2026, the Examiner's counsel had billed $11,660.00.[73] The Examiner has not filed his report.

70. On March 12, 2026, the Court approved the Debtor's employment of GBQ Consulting, LLC as appraiser under 11 U.S.C. § 327(a).[74] A copy of the order is marked as Debtor's Exhibit 4.

71. On May 15, 2026, the Debtor filed his Plan of Reorganization and Disclosure Statement, marked as Debtor's Exhibits 7 and 8 and Huntington Exhibit J.[75] Section 5.6 of the Plan provides for the appointment by the Court, under 11 U.S.C. § 1123(b)(3)(B), of a Retained Actions

---

69 ECF No. 165, ¶¶ 3, 4, 11, 12, 19.

70 ECF Nos. 178 and 191.

71 ECF No. 198, Work Plan ¶¶ 14, 21 and Exhibit A (Debtor's Exhibit 12; Huntington Exhibit EE).

72 ECF No. 253 (Debtor's Exhibit 16).

73 Debtor's Exhibit 19 (Gleason & Associates account statement dated September 11, 2026, with Invoice Nos. 46021, 46162, 46309, and 46415); Debtor's Exhibit 20 (Hahn Loeser & Parks LLP monthly fee statement for June 9 through July 31, 2026).

74 ECF No. 122.

75 ECF Nos. 189 and 190.

Representative, "an independent third party selected for experience in the prosecution or settlement of avoidance actions and other claims under chapter 5 of the Bankruptcy Code," who "will be a disinterested person within the meaning of section 101(14) of the Bankruptcy Code," "will not be affiliated with the Debtor, any creditor, or any party in interest," and "will have all powers and authority necessary to investigate, prosecute, settle, and compromise the Retained Actions."[76]

72. On July 6, 2026, the Court entered the Order Granting Debtor's Motion to Extend Exclusive Periods, without objection, extending the Debtor's exclusive solicitation period to sixty (60) days after the hearing on the Disclosure Statement and directing that the Disclosure Statement hearing be set for a date that permits the Examiner's report to be filed first.[77] A copy of the order is marked as Debtor's Exhibit 21.

73. On September 22, 2025, the Debtor sued Huntington and twelve of its current or former employees, as defendants in *Raymond Schneider v. The Huntington National Bank, et al*., Hamilton County Court of Common Pleas Case No. A2300849, filed a Motion for Summary Judgment on the basis of *res judicata*, arguing that the Debtor's claims in that action were compulsory counterclaims in Huntington's collection action, Case No. A2002093. On September 1, 2026, the Court of Common Pleas entered its Entry Denying Motion for Summary Judgment. A copy of the Entry is marked as Debtor's Exhibit 22.

## III. FACTS PROFFERED BY HUNTINGTON WHICH ARE DISPUTED BY DEBTOR

Between the First Case and the Second Case, the Debtor transferred his 100% equity interest in Red Dog Management Company, LLC to the Red Dog Holding Company and received

[76] ECF No. 189, §§ 5.6.1-5.6.2.

[77] ECF No. 210.

in return a 0.5% interest in a newly formed holding company called KPT7 Holding Company, LLC.

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ Christopher P. Schueller
Christopher P. Schueller (OH ID No. 0086170)
Timothy P. Palmer (OH ID No. 86166)
Kelly M. Neal (OH ID No. 100889
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: (412) 562-8800
christopher.schueller@bipc.com
timothy.palmer@bipc.com
kelly.neal@bipc.com

*Attorneys for The Huntington National Bank*

**ALLEN STOVALL NEUMAN & ASHTON LLP**

/s/ James A. Coutinho
James A. Coutinho (0082430)
10 W. Broad St.
Suite 2400
Columbus, OH 43215
O: (614) 221-8500
C: (614) 859-5462
F: (614) 221-5988
coutinho@asnalaw.com

*Counsel for Debtor / Debtor in Possession*