**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 25-12607 |
| Raymond Joseph Schneider, | : | Chapter 11 |
| | : | |
| Debtor. | : | Judge Beth A. Buchanan |

**MOTION OF DEBTOR RAYMOND JOSEPH SCHNEIDER FOR RULE 2004 EXAMINATION OF THE HUNTINGTON NATIONAL BANK**

Raymond Joseph Schneider, the debtor and debtor in possession (the "Debtor"), moves this Court under Bankruptcy Rule 2004(a) for authority to conduct an examination of The Huntington National Bank ("Huntington") as follows. As Huntington has done in its Rule 2004 motions directed to third parties in this case, the Debtor asks only for authority to proceed with the examination. Exhibit A gives notice of the subjects of the examination and the documents requested. Huntington's rights to object to particular requests are preserved, and any dispute over scope will be addressed through a meet-and-confer process or, if necessary, by further request to the Court.

**Examination of:** Huntington, individually and as administrative agent for the Lenders (as defined in Exhibit A), through the production of documents and the later examination under oath of one or more designated representatives.

**Purpose of Exam:** As further set forth in the memorandum in support, the purpose of this examination is to obtain documents and information pertaining to (1) the amount, calculation, and components of Huntington's proof of claim, Claim No. 11 (the "Claim"), including principal, interest, and the more than $5 million in legal fees and costs included in the Claim; (2) the disposition of all collateral securing the underlying loans and the receipt and application of all payments, proceeds, and recoveries against the debt from any source, including the commercial reasonableness of the dispositions; (3) the asserted secured status of the Claim, including the garnishment and judgment liens on which it rests and the value of the property they encumber; and (4) the Debtor's anticipated objection to the Claim, as disclosed in the

Debtor's Disclosure Statement, and the formulation and confirmation of the Debtor's plan of reorganization, distributions under which depend on the allowed amount of the Claim.

**Documents Requested:** See the document requests attached as Exhibit A, organized under the four subjects described in the memorandum in support. The Debtor is not seeking re-production of documents already produced to him in other litigation, but notes that the requests are targeted to the amount, components, and status of the Claim in this bankruptcy case, matters on which no accounting has been provided in any forum. The undersigned will meet and confer with counsel for Huntington to identify any prior production responsive to these requests, to address any objection Huntington raises to a particular request, and to avoid duplication of efforts.

**Document Delivery:** Documents to be delivered by mail, in person, or electronically to the undersigned counsel, or as otherwise agreed to in writing.

**Deliver Documents By:** Forty-five (45) days after entry of an order granting this motion, or as otherwise agreed to in writing. An objection to a particular request will be addressed through the meet-and-confer process described above and does not delay production of documents responsive to the other requests.

**Examination Date:** The examination of one or more designated representatives of Huntington will proceed after substantial completion of the document production, at a date and time, and with a designation of representatives and examination topics, to be agreed among counsel. If the parties cannot reach agreement, the Debtor requests authority to notice the examination on not less than twenty-one (21) days' notice and to compel attendance through the issuance of a subpoena as provided in Bankruptcy Rules 2004(c) and 9016, and the examination may be continued from time to time without further order of the Court.

**Location of Exam:** To be agreed upon by the Debtor and Huntington through counsel.

A memorandum in support follows.

Respectfully submitted,

/s/ James A. Coutinho

Thomas R. Allen (0017513)
Richard K. Stovall (0029978)
James A. Coutinho (0082430)
Andrew D. Rebholz (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
T: (614) 221-8500; F: (614) 221-5988
allen@asnalaw.com; stovall@asnalaw.com
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel for Debtor / Debtor in Possession*

## MEMORANDUM IN SUPPORT

1. The Debtor filed his voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 17, 2025 (the "Petition Date"). The Debtor remains in possession of his assets and continues to manage his financial affairs as debtor in possession under 11 U.S.C. §§ 1107 and 1108. No trustee or committee has been appointed.

2. On March 3, 2026, Huntington filed its First Amended Proof of Claim, designated as Claim No. 11 on the Court's claims register. The Claim asserts a total of $36,131,393.30 as of the Petition Date, of which Huntington contends more than $10,000,000 is secured, with the balance unsecured. The Claim is by a wide margin one of the largest claims asserted against the Debtor, and it is the reason this case exists.

3. The Claim arises from a Guaranty of Payment of Debt executed by the Debtor on November 30, 2018 (the "Guaranty"), in connection with commercial loans made under a Credit Agreement of the same date (the "Credit Agreement") by and among Huntington, as administrative agent and lender, the other lenders party thereto, and fourteen borrowers consisting of Premier Health Care Management and related skilled nursing and real estate companies (the "Borrowers"). Claim, Addendum ¶ 3 & Ex. A.

4. On June 5, 2020, Huntington sued the Debtor and others on their guaranties in the Hamilton County Court of Common Pleas, Case No. A2002093 (the "Collection Action"). On November 18, 2022, the state court granted summary judgment to Huntington, and on December 13, 2022, it entered judgment against the Debtor in the amount of $75,599,410.00 as of July 28, 2020, consisting of $70,498,708.08 on a term loan and $5,100,700.92 on a line of credit, with interest accruing after that date at per diem rates of $14,661.31 and $1,059.11, respectively (as amended on February 15, 2023, the "Judgment"). Claim, Addendum ¶¶ 4-6 & Exs. B, C.

5. The First District Court of Appeals reversed the Judgment on December 29, 2023. On August 20, 2025, the Supreme Court of Ohio reversed the First District and reinstated the Judgment. *Huntington Nat'l Bank v. Schneider*, 2025-Ohio-2920.

6. The Debtor does not ask the Court to revisit the Judgment, and the examination is not directed to that purpose. The Judgment fixed the amount of the debt as of July 28, 2020, more than five years before the Petition Date. The Judgment did not account for what has happened to that debt since that date, and in more than six years of litigation Huntington has never done so.

7. By Huntington's own filing, the debt has moved from $75,599,410.00 as of July 28, 2020, to $36,131,393.30 as of the Petition Date. The addendum to the Claim states that, "[a]s a result of proceeds from sales of the assets of the Borrowers after July 28, 2020, Huntington has applied approximately $55,561,440.15 to the balance of the debt giving rise to the Judgment," and then presents the result in a short summary of principal, interest, and legal fees. Claim, Addendum ¶¶ 7-12. The Claim attaches no accounting of what was sold, for how much, at what cost, or how and when the proceeds were applied. Tens of millions of dollars in collateral dispositions and recoveries separate the Judgment from the Claim, and the Debtor is entitled to the records from Huntington.

8. Huntington and its professionals liquidated the collateral securing the loans, principally the Borrowers' skilled nursing facilities and related real estate, largely through a receivership and sale process that Huntington directed. The Debtor, who Huntington claims is personally liable for every dollar of the claimed deficiency, has never received an accounting of the gross proceeds of those sales, the expenses charged against them, or the application of the net proceeds to the debt.

9. The Debtor's Disclosure Statement, filed May 15, 2026 (Doc. 190), disclosed this examination and the anticipated objection to the Claim. As stated there, the Debtor anticipates objecting to the Claim after conducting appropriate discovery under Rule 2004, because the Claim appears to be objectionable, at least in part, based on the commercially unreasonable manner in which the collateral was liquidated and Huntington's failure to properly account for and apply the liquidation proceeds against the debt. Despite six years of litigation, Huntington has never been required to provide a full accounting of its Judgment and the application of liquidation proceeds. The Debtor stated that he would conduct discovery on the current loan balance, Huntington's accounting for the loan and all collateral, the full disposition of every piece of collateral, and the reasonableness of the more than $5 million in attorneys' fees included in the Claim. That is the purpose of this motion.

10. The Claim includes legal fees and costs totaling $5,105,544.63 as of October 17, 2025, and reserves the right to add interest, fees, and costs under 11 U.S.C. § 506(b). Claim, Addendum ¶¶ 11, 14. No invoices, timekeepers, rates, hours, or task descriptions accompany the Claim. On its face the fee component exceeds $5 million and spans a period in which Huntington litigated several matters involving the Debtor, the Borrowers, and other guarantors. The Claim does not say what work is included, at what rates, or whether the Guaranty permits recovery of those fees from the Debtor at all.

11. Huntington asserts that the Claim is secured by (i) an order of garnishment served on Merrill Lynch, Pierce, Fenner & Smith Incorporated shortly before the Petition Date; (ii) a transcript of judgment filed in the District Court of Eagle County, Colorado, in September 2025 against the Debtor's Vail, Colorado, property; and (iii) a certificate of judgment filed with the Hamilton County, Ohio, Clerk of Courts in August 2025 against the Debtor's Cincinnati residence.

Claim, Addendum ¶ 13 & Exs. D-F. Huntington received no funds under the garnishment; this case intervened first. Each of the asserted liens arose within ninety days of the Petition Date. The estate requires the underlying documents both to evaluate the secured amount asserted under 11 U.S.C. § 506(a) and to assess the avoidability of the liens under chapter 5 of the Bankruptcy Code.

12. Bankruptcy Rule 2004(a) provides that, "[o]n a party in interest's motion, the court may order the examination of any entity." "It is well-established that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted." *In re Fearn*, 96 B.R. 135, 137 (Bankr. S.D. Ohio 1989). "The more compelling the cause, the greater latitude the court will allow for the 2004 examination." *In re DeShetler*, 453 B.R. 295, 310 (Bankr. S.D. Ohio 2011).

13. The examination requested here falls within Rule 2004(b). It concerns the liabilities and financial condition of the Debtor, of which the Claim is the single largest component; matters that may affect the administration of the estate; and matters relevant to the case and to the formulation of a plan. The allowed amount of the Claim drives every material element of the Debtor's pending Plan of Reorganization: the distributions to be made, the assets that must be monetized to make them, the feasibility analysis, and the best-interest test. Until the Claim is tested, neither the creditors nor the Court can know what the estate owes its largest claimant.

14. Rule 2004 is designed for this purpose. "By definition, Rule 2004 Examinations are broad in scope and are geared to determine whether litigation should be commenced that will then be subject to the more tailored and targeted provisions of the Federal Rules of Civil Procedure." *In re Stambaugh*, 531 B.R. 191, 193 (Bankr. S.D. Ohio 2015). The Debtor disclosed in the Disclosure Statement that he anticipates objecting to the Claim after conducting discovery under Rule 2004. The examination will determine the scope and content of that objection before it is

filed, so that the objection that reaches the Court is specific and supported by the record, and so that the contested-matter discovery that follows is limited to what remains in dispute.

15. The Debtor seeks four categories of information from Huntington:

16. **First,** the calculation of the Claim itself: the loan-level accounting, accrual schedules, and interest computations that carry the debt from the Judgment amount to the amount asserted, none of which accompanies the Claim.

17. **Second,** the complete accounting of the collateral: what was sold, through what process, for how much, at what expense, and where every dollar of proceeds and every other recovery from any source went, including whether the dispositions were commercially reasonable and whether the Debtor has received every credit to which he is entitled.

18. **Third,** the legal fees: the invoices, rates, and allocation among Huntington's several lawsuits, shifting more than $5 million in fees to the Debtor.

19. **Fourth,** the asserted secured status: the garnishment under which Huntington received nothing, the judgment liens recorded within ninety days before the Petition Date, and the valuation of the property they encumber.

20. Exhibit A is organized under those four subjects and contains twenty-four requests.

21. Good cause for this examination is compelling. For nearly a year, the Debtor has responded to Huntington's investigation of him through its own Rule 2004 discovery (Doc. 41) (comprising 28 interrogatories and 13 requests for production covering more than 100 entities) and the appointment of an examiner. The Debtor has produced approximately 50,000 files totaling almost 420,000 pages. During the course of that process, Huntington also filed motions for Rule 2004 subpoenas directed at twelve third-party banks and at the Debtor's employees (Docs. 204, 220-227). The Debtor has objected to the breadth of that discovery, but he has produced and

continues to produce. The Debtor submits that the estate's largest claimant cannot demand that level of disclosure while disclosing nothing itself on the one question that most affects every creditor in this case: how much is actually owed on the Claim.

22. The requests are proportionate to the Claim. Huntington's subpoenas to the Debtor's lenders demanded six categories of documents from twelve institutions, for 107 entities, over more than eight years (Doc. 204). Its subpoenas to the Debtor's current and former employees demanded nine categories of documents for the same 107 entities over eight and one-half years, with fourteen days to comply (Docs. 220-227). The Debtor's twenty-five requests concern one credit facility, one judgment, and the five years since the balance date fixed in the Judgment, and they are directed at the loan ledgers, closing statements, receiver accountings, and fee invoices that a lender keeps in the ordinary course. The Claim is a $36 million claim whose allowed amount will determine the recovery of every other creditor in this case, and the proof of claim offers a one-page summary of its calculation. After six years of litigation between the parties, it is appropriate for the Debtor to obtain these records before deciding whether, and on what grounds, to object to the Claim.

23. The Debtor has structured this examination to be efficient. Documents come first: Huntington should produce the materials described in Exhibit A within forty-five days of the order. The examination of one or more designated representatives will follow the substantial completion of the production, at a date and with a designation of representatives and topics to be agreed among counsel, a sequence that conserves the parties' and the Court's resources. The Debtor does not seek re-production of documents previously produced to him; the undersigned will meet and confer with Huntington's counsel to identify prior productions responsive to these requests and to eliminate duplication.

24. The Debtor also proposes a procedure that the Court has applied to Huntington's own Rule 2004 motions in this case. As Huntington did in its motions directed to third parties (Docs. 204, 220-227), the Debtor asks only for authority to proceed with the examination. Exhibit A gives notice of the subjects of the examination and the documents requested, and Huntington's objections to particular requests are preserved. The Debtor will meet and confer with Huntington's counsel on scope, prior productions, and timing, and either party may bring any unresolved issue to the Court. That is the process the Court adopted for Huntington's subpoenas to the Debtor's lenders (Doc. 259), and it does not import the contested-matter discovery rules into a Rule 2004 examination. An objection to one request does not delay production on the others.

25. Based on the foregoing, the Debtor respectfully requests that the Court authorize the examination of Huntington as set forth in the Motion, including the production of the documents described in Exhibit A within forty-five days of the order, subject to the meet-and-confer process described above, and grant such other relief as is appropriate.

Respectfully submitted,

/s/ James A. Coutinho

Thomas R. Allen (0017513)
Richard K. Stovall (0029978)
James A. Coutinho (0082430)
Andrew D. Rebholz (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
T: (614) 221-8500; F: (614) 221-5988
allen@asnalaw.com; stovall@asnalaw.com
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel for Debtor / Debtor in Possession*

# EXHIBIT A

# REQUESTED DOCUMENTS

Pursuant to Federal Rule of Bankruptcy Procedure 2004, The Huntington National Bank (also referenced as "you" or "your") is commanded to produce and permit inspection and copying of documents or electronically stored information that are in your possession, custody, or control. The documents and electronically stored information to be produced are described below. Production should be provided to counsel for the Debtor by the date set forth in the motion. The contact information for counsel is:

James A. Coutinho
Allen Stovall Neuman & Ashton LLP
10 W. Broad St., Ste. 2400
Columbus, Ohio 43215

T: (614) 221-8500
F: (614) 221-5988
coutinho@asnalaw.com

## DEFINITIONS AND INSTRUCTIONS

A. The following is a list of defined terms that are used within these production requests. Defined terms are generally capitalized; however, any term defined below that is not capitalized within a specific request still carries the meaning defined below. As to any person or entity defined below, the definition of that person or entity includes each of its present and former agents, assigns, partners, successors, predecessors, associates, attorneys, and other persons or entities acting or purporting to act on its behalf.

These terms are defined as follows:

1. "Accounting Period" means the period from July 28, 2020, through the present. Unless a request states otherwise, each request is limited to the Accounting Period; provided, however, that requests concerning the identification of Collateral, the granting or perfection of liens, or the terms of the Loan Documents cover the period from November 30, 2018 through the present.

2. "Borrowers" means the fourteen borrowers under the Credit Agreement, including Premier Health Care Management and the related skilled nursing and real estate companies sometimes referred to as the "Keller Group" and "JBZ Group" companies, together with their respective receivers, estates, successors, and assigns.

3. "Claim" means the First Amended Proof of Claim filed by Huntington in this bankruptcy case on March 3, 2026, designated as Claim No. 11 on the Court's claims register, together with all exhibits and any amendment or supplement.

4. "Collateral" means any property of any Person, real or personal, tangible or intangible, that at any time secured, or that Huntington contends secured, any of the Obligations, and all products and proceeds thereof.

5. "Collection Action" means the action commenced by Huntington on June 5, 2020 in the Hamilton County, Ohio Court of Common Pleas, Case No. A2002093.

6. "Communication" means every manner of transmitting or receiving facts, information, opinions, or thoughts, whether orally, in writing, or by electronic means, including any inquiry, discussion, conversation, negotiation, agreement, understanding, meeting, telephone conversation, letter, correspondence, note, memorandum, e-mail, text message, or other form of exchange of words, thoughts, or ideas, whether written or oral.

7. "Credit Agreement" means the Credit Agreement dated November 30, 2018, by and among Huntington, as administrative agent and lender, the other Lenders party thereto, and the Borrowers, as amended, restated, or modified from time to time, together with all promissory notes, security agreements, mortgages, pledges, guaranties, and other loan documents executed in connection therewith (collectively, the "Loan Documents").

8. "Debtor" means Raymond Joseph Schneider, the Debtor in this bankruptcy proceeding.

9. "Document" is used in the broadest possible sense and means, under the Federal Rules of Civil Procedure, without limitation, any written, printed, typed, photographed, recorded, or otherwise reproduced communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds, or symbols, or any combination thereof, including all electronically stored information, together with all drafts and non-identical copies.

10. "Garnishment" means the order of garnishment concerning the Debtor's accounts at Merrill Lynch, Pierce, Fenner & Smith Incorporated referenced in paragraph 13 of the addendum to the Claim and attached as Exhibit D to the Claim, together with all related proceedings.

11. "GECU" means General Electric Credit Union.

12. "Guarantors" means the Debtor, Harold Sosna, and Faye Sosna, and any other Person that at any time guaranteed any of the Obligations.

13. "Guaranty" means the Guaranty of Payment of Debt executed by the Debtor dated November 30, 2018, attached as Exhibit A to the Claim.

14. "Huntington," "you," or "your" means The Huntington National Bank, in all capacities, including individually and as administrative agent for the Lenders.

15. "Judgment" means the judgment entered against the Debtor in the Collection Action on December 13, 2022, as amended February 15, 2023, in the amount of $75,599,410.00 as of July 28, 2020, attached as Exhibits B and C to the Claim.

16. "Lenders" means Huntington and each other lender, syndicate member, participant, or assignee holding an interest in the loans under the Credit Agreement at any time, including First Midwest Bank, TriState Capital Bank, and First Financial Bank.

17. "Obligations" means all indebtedness and all other amounts at any time owing under or in connection with the Credit Agreement, the other Loan Documents, the Guaranty, or the Judgment.

18. "Person" means and includes in the broadest sense natural persons, governmental entities, proprietorships, corporations, partnerships, joint ventures, trusts, estates, and each other form of organization, entity, or association.

19. "Petition Date" means the date this bankruptcy case was filed, October 17, 2025.

20. "Receivership" means each receivership or similar proceeding in which any Collateral or any assets of any Borrower were administered, operated, or sold, and "Receiver" means each receiver so appointed.

B. If you deem any request for documents to call for the production of privileged or otherwise non-disclosable materials and you assert that claim, you must furnish a privilege log at the time of production identifying each document so withheld and the reason you claim privilege.

C. In producing documents, you must make a diligent search of your records and of other papers and materials in your possession and in the possession of others, including your attorneys, investigators, agents, servicers, employees, or other persons acting as your agent, on your behalf, under your direction or subject to your control.

D. If you are unable to produce a requested document, respond by specifying the reason for your inability to produce and provide a detailed summary of the information contained in the document and state to whom a request should be made in order to obtain the same.

E. Documents maintained electronically, including ledgers, transaction histories, accounting records, spreadsheets, and calculations, should be produced in native format with formulas and metadata intact, or in another reasonably usable electronic form (such as Excel or CSV) agreed to by counsel.

F. To the extent that you have already made a complete production to the Debtor of documents responsive to a request, those documents need not be reproduced, provided that you identify the prior production (by producing matter, date, and Bates range) in which the responsive documents were included.

G. If any responsive Document once existed but cannot be produced because it was lost, deleted, destroyed, overwritten, or otherwise became unavailable, identify the Document by custodian, approximate date, and description, state the reason it is unavailable, and identify the retention policy under which it was disposed of and the date of disposition.

H. Production should proceed on a rolling basis. Loan-level accounting records, ledgers, payoff and interest calculations, Collateral disposition records, Receivership accountings, and legal fee invoices are readily accessible and should be produced first, within the period set forth in the motion; Communications and other electronically stored information from individual custodians may follow on a rolling basis on a schedule agreed among counsel. You have a continuing obligation to supplement your production if additional responsive Documents are located.

**<u>PRODUCTION DEMANDS</u>**

**I. Calculation of the Claim**

1. All Documents supporting the calculation of the Claim and of each component of the Claim, including principal, interest, default interest, fees, costs, expenses, credits, and offsets, including:

   a. the complete loan-level accounting records and transaction histories for the term loan, the line of credit, and each other credit facility under the Credit Agreement, showing every advance, accrual, payment, credit, charge, reversal, and adjustment during the Accounting Period, including records maintained in any loan servicing, accounting, or treasury system;

   b. all payoff statements, accrual schedules, interest calculations, and deficiency calculations prepared during the Accounting Period;

   c. the contractual provisions and calculations supporting the per diem rates of $14,661.31 and $1,059.11 set forth in the Judgment and the "judgment rate" and per diem amounts referenced in paragraphs 8 and 9 of the addendum to the Claim, any change in the applicable rate or per diem during the Accounting Period, and Documents sufficient to show whether and how interest was recalculated as proceeds and other recoveries were applied; and

   d. all statements, payoff letters, demand letters, or other Communications and Documents sent to the Debtor, any Borrower, or any Guarantor during the Accounting Period stating the balance of the Obligations or the amounts claimed to be owed.

2. Documents sufficient to identify every payment, proceed, recovery, or other value received by Huntington or any Lender from any source during the Accounting Period on account of the Obligations, including, for each the date, the amount, the source, the form of payment, the account into which it was received, and the manner and date of its application to the

Obligations, and including the approximately $55,561,440.15 in proceeds referenced in paragraph 7 of the addendum to the Claim.

3. All Documents concerning the application of, or the decision not to apply, any amount identified in response to Request No. 2, including internal approvals, the policies and procedures governing the application of payments and proceeds, and any waterfall or allocation calculations under the Credit Agreement or among the Lenders.

4. All syndication, participation, co-lending, and intercreditor agreements concerning the loans under the Credit Agreement, and Documents sufficient to show each Lender's percentage interest, any loss-sharing arrangement among the Lenders, all distributions of recoveries among the Lenders during the Accounting Period, any recovery received by any Lender that is not reflected as a credit in the Claim, and Huntington's authority to assert the entire Claim on behalf of all Lenders.

5. All Documents concerning any sale, assignment, participation, or other transfer of the Judgment, the Claim, or any interest in the Obligations.

6. All Documents concerning any payment, proceeds, or other value received by Huntington or any Lender on account of the Obligations after the Petition Date, and the application or holding of any such amounts.

**II. Collateral, Dispositions, Proceeds, and Recoveries**

7. Documents sufficient to identify all Collateral, including, for each item: the nature and location of the property, the granting and perfection documents, and any release, termination, subordination, or abandonment of the lien.

8. For each sale, foreclosure, setoff, collection, or other disposition of Collateral: all purchase agreements, closing statements, settlement statements, deeds or other instruments of transfer, and Documents sufficient to show the gross sale price, all expenses, commissions, and costs of sale, the net proceeds, the recipient of the proceeds, and the amount and date of any credit against the Obligations.

9. All appraisals, broker opinions of value, and other valuations of any Collateral prepared, received, or relied upon by Huntington during the Accounting Period.

10. All Documents concerning the marketing and sale process for the Borrowers' skilled nursing facilities and related real estate, including broker or investment banker engagement agreements, offering materials, bid procedures, all bids, offers, or letters of intent received (including any offer made by or on behalf of the Debtor), all analyses comparing competing bids or proposals, and all Communications concerning the acceptance or rejection of any bid or proposal, and specifically including all Documents concerning the contemplated transaction with CommuniCare involving a stalking-horse proposal of approximately $85 million, the reasons that transaction did not close, the later decision to sell the assets at a lower price, and any analysis of the financial consequences of that sequence.

11. All Documents prepared after the acceleration of the loans in 2020 concerning the alternatives considered by Huntington or any Lender for the preservation, protection, operation, or disposition of Collateral, including analyses of whether to sell, operate, or hold particular assets, whether to accept or reject proposed purchases, the timing of any disposition, and the anticipated effect of each alternative on the recovery on the Obligations.

12. All non-privileged internal analyses, summaries, projections, or reports prepared during the Accounting Period concerning the anticipated or actual recovery on the Obligations, the value or expected proceeds of the Collateral, the expected deficiency against the Debtor or any other Guarantor, or the collectability of the Judgment, including analyses prepared in the ordinary course of Huntington's credit, special assets, or workout functions.

13. All Documents received from or exchanged with any Receiver concerning the sale of Collateral or Borrower assets, or the receipt, holding, or distribution of proceeds, including receiver reports and accountings, distribution statements, proposed and final sale orders, and Communications concerning sale strategy, pricing, or the application of proceeds, and all Documents concerning the continuation of any Receivership after the sale of the Borrowers' principal assets and the basis for the expenses incurred during that period.

14. All Documents concerning the disposition of the property located in Columbus, Ohio, including any appraisal or valuation, the marketing materials, all bids, offers, or letters of intent received and all Communications concerning the acceptance or rejection of any of them, the purchase agreement, the closing statement, the gross and net proceeds, and the ledger entries showing the application of the proceeds to the Obligations.

15. All Documents concerning any claim, lawsuit, or settlement between Huntington and GECU arising from or relating to the Borrowers or the conduct of Harold Sosna, including the settlement agreement and Documents sufficient to show the amounts demanded, the amounts recovered, the dates of recovery, and the accounting for and application of any recovery to the Obligations.

16. Documents sufficient to identify every recovery obtained by Huntington or any Lender from any merchant cash advance lender or similar funder on account of transfers of Borrower funds or Collateral, including the matter in which Huntington anticipated a recovery against such lenders, and the accounting for and application of each recovery to the Obligations.

17. All Documents concerning amounts received by Huntington or any Lender from or on account of Harold Sosna, Faye Sosna, or any other Guarantor, or their respective estates, trusts, insurers, or successors, including: any restitution paid or payable in connection with the criminal proceedings against Harold Sosna, and the application of each amount to the Obligations; all agreements, releases, forbearances, covenants not to sue, or settlements with any Guarantor other than the Debtor and the consideration received for each; and Documents sufficient to show the disposition after July 28, 2020, of the assets and liquidity of Harold Sosna and Faye Sosna on which Huntington relied or against which Huntington

sought recovery, including the approximately $8.5 million in liquidity attributed to Faye Sosna, and whether any portion of those assets was collected, released, or abandoned by Huntington.

18. Documents sufficient to identify any other source of recovery on the Obligations during the Accounting Period, including insurance proceeds, interpleader funds, tax refunds, litigation or avoidance recoveries, and recoveries or distributions in any other bankruptcy, receivership, or insolvency proceeding, and the application of each recovery to the Obligations, and all Documents concerning Huntington's efforts to recover, and any recovery of, the approximately $9.4 million in transfers from the Borrowers to affiliates or related parties identified by Huntington personnel.

19. All Documents concerning any setoff, freeze, hold, or administrative charge exercised by Huntington against any deposit account of any Borrower or Guarantor during the Accounting Period, and the application of any resulting funds to the Obligations.

20. All Documents concerning every escrow, suspense, reserve, restricted, or collateral account required or maintained in connection with the Credit Agreement or the Loan Documents, or in which any payment or proceeds relating to the Obligations were held at any time during the Accounting Period without application to the Obligations, including the account of approximately $3 million held as collateral for or in connection with any interest rate swap or hedge and the PACE replacement reserve of approximately $180,000, and including Documents sufficient to show for each account the balance at inception, interest earned, each withdrawal and the Person authorizing it, the liquidation, termination, or release of the account, the current status and disposition of any remaining funds, and the application of the funds, including whether any funds were applied to swap termination or breakage amounts, to expenses, or returned to any Borrower or affiliate rather than applied to the Obligations, and the payoff, assumption, or other treatment of any PACE financing in the Receivership or in any sale of Collateral.

21. All Documents concerning any interest rate swap, hedge, or similar agreement entered into in connection with the Credit Agreement, including the agreement itself, any termination or breakage calculation, Documents sufficient to show whether any swap-related amount is included in the Judgment or the Claim, and the application of any collateral or payments against any swap-related amount.

## III. Legal Fees and Professional Fees

22. All invoices, billing statements, and time records supporting the legal fees and costs included in the Claim, regardless of the date the fee or cost was incurred, including for each the matter, timekeeper, hourly rate, hours, and description of work performed (which may be redacted as necessary to protect privileged content), together with all engagement letters, all Documents showing the amounts actually paid and by whom, all Documents allocating fees and costs among the Collection Action, the action captioned Schneider v. The Huntington National Bank, et al., Case No. A2300849, the fraudulent transfer action commenced by Huntington in September 2025, this bankruptcy case, and matters involving

Borrowers or Guarantors other than the Debtor, and Documents sufficient to show any legal fees or costs paid from Collateral, proceeds of Collateral, the Receivership, or Borrower funds (including approximately $700,000 reportedly paid through the Receivership) and whether any such amount is also included in the Claim.

23. Documents sufficient to identify every payment of receiver, attorney, consultant, broker, appraiser, or other professional fees or expenses from Collateral, proceeds of Collateral, the Receivership, or Borrower funds during the Accounting Period, including for each: the payee, invoice date, service period, amount, approving party, and source of funds; all invoices, fee applications, and payments to any Receiver and its attorneys, consultants, brokers, and other professionals (reported to exceed $3 million in the aggregate), including amounts incurred or paid after the sale of the Borrowers' principal assets; all Huntington approvals of Receiver expenditures; and any reconciliation of those amounts to the Claim.

## IV. Secured Status of the Claim

24. All Documents concerning the secured status asserted in the Claim, including: (a) the Garnishment, including the order of garnishment, the answer of Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Documents sufficient to show whether any funds or property were paid to or received by Huntington under the Garnishment, and the amount, date, and disposition of any funds or property so received; (b) the judgment liens asserted in the Claim, including the transcript of judgment filed in the District Court of Eagle County, Colorado, and the certificate of judgment filed with the Hamilton County, Ohio, Clerk of Courts, together with all Documents concerning the perfection, priority, or enforcement of those liens; and (c) all Documents supporting the assertions in the Claim concerning the value of the property securing the Claim and the amount of the Claim that is secured, including the assertion that the secured amount exceeds $10,000,000, and any appraisal, valuation, or analysis of the Huntington Collateral (as defined in the Claim) or of the properties the judgment liens encumber.

**NOTICE OF MOTION OF DEBTOR RAYMOND JOSEPH SCHNEIDER FOR RULE 2004 EXAMINATION OF THE HUNTINGTON NATIONAL BANK**

Debtor Raymond Joseph Schneider has filed papers with the court seeking an order for a 2004 examination of The Huntington National Bank.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you do not want the court to grant the relief sought in the Motion, **then on or before twenty-one (21) days from the date set forth in the certificate of service for the Motion,** you or your attorney must file with the court a response explaining your position by mailing your response by regular U.S. Mail to Clerk, United States Bankruptcy Court, Atrium Two, Suite 800, 221 East Fourth Street, Cincinnati, Ohio 45202, OR your attorney must file a response using the court's ECF system.

The court must receive your response on or before the date set forth above.

You must also send a copy of your response either by 1) the court's ECF System, or by 2) regular U.S. Mail to:

Office of the United States Trustee
J.W. Peck Federal Building
550 Main Street, Suite 4-812
Cincinnati, OH 45202

James A. Coutinho, Esq.
Allen Stovall Neuman & Ashton LLP
10 W. Broad St., Ste. 2400
Columbus, OH 43215

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief without further notice or hearing.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Motion of Debtor Raymond Joseph Schneider for Rule 2004 Examination of The Huntington National Bank* was served (i) electronically on the date of filing through the Court's ECF System on all ECF participants registered in this case at the email address registered with the Court, and (ii) by ordinary U.S. Mail on October 21, 2026, addressed to The Huntington National Bank through its counsel of record, the Debtor, the Office of the United States Trustee, the twenty largest unsecured creditors, all secured creditors, and those parties requesting notice as set forth on the attached mailing matrix.

/s/ James A. Coutinho
James A. Coutinho (0082430)

**Austin Z. Baurichter, Esq.**
Bricker Graydon LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
*Counsel for Park National Bank*

**Branden P. Moore, Esq.**
McGuireWoods LLP
260 Forbes Ave., Suite 1800
Pittsburgh, PA 15222
*Counsel for Merrill Lynch, Pierce, Fenner & Smith Inc. & Bank of America, NA*

**Brian Green, Esq.**
Shapero & Green, LLC
25101 Chagrin Boulevard, Suite 220
Beachwood, OH 44122
*Counsel for First Federal Savings & Loan Association of Lakewood*

**Christopher P. Schueller, Esq.**
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
*Counsel for The Huntington National Bank*

**David T. Austin, Esq.**
Office of the US Trustee
J.W. Peck Federal Building
550 Main Street, Suite 4-812
Cincinnati, OH 45202-5212
*Counsel for United States Trustee*

**Donald W. Mallory, Esq.**
Wood + Lamping, LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202
*Counsel for General Electric Credit Union*

**First Federal Savings Bank**
PO Box 250
Washington Court House, OH 43160
*Top 20*

**Jon J. Lieberman, Esq.**
McCalla Raymer Leibert Pierce, LLP
312 Walnut Street, Suite 2275
Cincinnati, OH 45202
*Counsel for Heritage Bank*

**Karolina F. Perr, Esq.**
Wood + Lamping, LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202
*Counsel for Village of Evendale, Ohio*

**Patricia B. Fugée, Esq.**
FisherBroyles, LLP
6725 W. Central Ave., Suite M
PMB 386
Toledo, OH 43617
*Counsel for Civista Bank*

**Patrick Hruby, Esq.**
Brock & Scott, PLLC
3825 Forrestgate Drive
Winston Salem, NC 27103
*Counsel for First Merchants Bank*

**Paul T. Saba, Esq.**
SSP Law Co., L.P.A.
2623 Erie Avenue
Cincinnati, OH 45208
*Counsel for Stock Yards Bank & Trust Company*

**Philip K. Stovall, Esq.**
Hahn Loeser & Parks LLP
65 E. State Street, Suite 2500
Columbus, OH 43215
*Counsel for William G. Krieger, Examiner*

**Raymond Joseph Schneider**
3515 Tiffany Ridge Lane
Cincinnati, OH 45241
*Debtor*

**Richard Boydston, Esq.**
Dentons Bingham Greenebaum LLP
312 Walnut Street #2450
Cincinnati, OH 45202
*Counsel for First Merchants Bank*

**Robert McIntosh, Esq.**
Brock & Scott, PLLC
3825 Forrestgate Drive
Winston Salem, NC 27103
*Counsel for Truist Bank*

**Rockland Trust Company, Successor to Blue Hills Bank**
150 Grossman Drive, Ste. 300
Braintree, MA 02184
*Top 20*

**Steven M. Hartmann, Esq.**
Smith, Gambrell & Russell, LLP
155 North Wacker Drive, Suite 3000
Chicago, IL 60606
*Counsel for Transamerica Life Insurance Company*

**Susan M. Argo, Esq.**
Bricker Graydon LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
*Counsel for Three Notes, LLC & Park National Bank*

**Tricia Morra, Esq.**
ALDRIDGE PITE, LLP
3333 Camino del Rio South, Suite 225
San Diego, CA 92108
*Counsel for Nationstar Mortgage, LLC*

**Truist Bank**
1001 Semmes Ave.
Richmond, VA 23224
*Secured Creditor - NoA Service Address*

**Whitney L. Mosby, Esq.**
Dentons Bingham Greenebaum
LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204
*Counsel for First Merchants Bank*