**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| In re: | ) | Case No.: 25-12607 |
| | ) | |
| RAYMOND JOSEPH SCHNEIDER, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | **Hon. Beth A. Buchanan** |
| | ) | Chief U.S. Bankruptcy Judge |

**STATUS REPORT OF WILLIAM G. KRIEGER, EXAMINER**

**NOW** comes William G. Krieger, in his capacity as the duly appointed Chapter 11 Examiner (the "Examiner"), and hereby submits this status report (the "Status Report") to advise the Court regarding the current progress of the Examiner's investigation (the "Investigation"), including the work completed to date, the documents and information received and reviewed, the requests for documents and information that remain outstanding, example of some preliminary findings, and the additional work required to complete the Investigation and prepare the Examiner's report.

**BACKGROUND**

1. Pursuant to the Agreed Order Directing the Appointment of Examiner ("Agreed Order") entered on April 23, 2026 [Doc. No. 165], the Court ordered the United States Trustee ("UST") to appoint an examiner with the power to investigate and report on Raymond Joseph Schneider (the "Debtor" or "R. Schneider") and otherwise perform duties of an examiner as set forth in section 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code. On May 18, 2026, the Court entered an order approving the appointment of William G. Krieger as Examiner. [Doc. No. 191].

2. The scope of the Investigation includes the Debtor's financial affairs, assets, liabilities, transactions, and reporting, and encompasses transactions occurring on or after January 1, 2018.

3. The Examiner submitted a Preliminary Work Plan and Budget on June 9, 2026 [Doc. No. 198], which the Court approved on August 5, 2026 [Doc. No. 253].

4. Based on the timelines set forth in the Agreed Order, the Examiner's Report was due within ninety (90) days following the Court's approval of the Preliminary Work Plan and Budget. The Court approved the Preliminary Work Plan and Budget on August 5, 2026, making the deadline for the Examiner's Report November 3, 2026. The deadline for the Examiner's Report may be extended by order of the Court for cause.

5. Throughout the process, the Examiner has consulted with both Huntington National Bank's counsel and the Debtor's counsel regarding findings, issues and status of the Investigation.

6. At this time, definitive conclusions regarding the Debtor's financial condition, activities with related parties, and other such matters are premature. However, as discussed extensively in the report that follows, the Examiner has encountered significant and unexpected delays in obtaining documents from the Debtor that are required to complete the Investigation. In the Examiner's opinion, this is a direct result of significant (and potentially unresolvable) deficiencies in the Debtor's accounting function. Based on interviews conducted by the Examiner and his staff with the controller (the "Controller") of the Debtor's various companies, the Examiner determined that the Debtor's and his companies' accounting function is understaffed, and that the Controller (and her minimal staff resources) lack adequate time and resources to maintain complete and accurate books and records for the Debtor's multitude of companies. The Controller informed the Examiner that much of her time was spent recreating financial records and attempting to

reconcile and correct historical accounting errors as they related to intercompany transactions, distributions, and related issues which resulted in the need for the Debtor to amend his and/or his companies' financial reports and multiple tax returns from prior years.

7. The Controller also noted that, historically, the Debtor often operated his various entities as if they were a single entity, and that it was common that entities with cash resources often paid the obligations of entities that used goods and services but lacked the cash resources to pay these bills as they came due. While it is not unusual for such "intercompany loan" activity to occur in multi-entity businesses like the Debtor's, to execute such transactions properly requires accounting resources to accurately and timely record and reconcile the resulting intercompany transactions. Based on the Examiner's interview with the Debtor's controller, the Debtor did not systemically account for such transactions appropriately.

8. Complicating these issues and their potential effect on the Investigation, Debtor's counsel informed the Examiner on November 5, 2026, that the Debtor's controller resigned her position, and that Debtor no longer has an individual overseeing the accounting function. Based on communications with Debtor's counsel, the Examiner further understands that the Debtor (and his counsel) are attempting to "figure out" how to get reports to the Examiner that are currently outstanding while the Debtor attempts to find a replacement controller.[1]

9. Given these issues, the Examiner has not yet received all the pertinent documents and information required to complete the Investigation pursuant to the terms of the Agreed Order.

10. In November 2026, the Examiner will update the Work Plan and Budget based on the current status of the Investigation after reviewing and processing October 2026 time entries

[1] Based on review of the case docket, as of the date of this Status Report, the Debtor has not filed an application with this Court to retain an outside accountant for the Debtor. Despite this, the Examiner's has been informed that an accountant is currently preparing Debtor's 2024 and 2025 tax returns, which to the Examiner's knowledge have not yet been completed (and of which the Examiner has requested copies).

and invoices and considering potential further delays in receiving requested documents from the Debtor. The Examiner expects that, given his findings to date and the outstanding requests for production of documents from the Debtor, completion of the Investigation will likely require significant additional time and fees, estimates for which will be disclosed in the updated Work Plan and Budget.

## WORK PERFORMED TO DATE

### A. Workplan Phase I: Document Collection and Initial Review

11. After appointment, the Examiner and a member of his staff conducted a site visit at the Debtor's companies' headquarters in July 2026 and together spent approximately eight hours interviewing the Debtor, the in-house counsel for the Debtor's companies, and the Controller.

12. Since his appointment, the Examiner and his forensic accounting staff have obtained, organized and reviewed over 100,000 documents produced by the Debtor related to the 2023 and 2025 bankruptcies. The Examiner has prepared and served two separate requests for production of documents by the Debtor, reviewed the Debtor's responses to inquiries, and reconciled the materials received to the request for production. As areas requiring further investigation have been identified - including previously unidentified accounts or gaps in the documentation provided - additional requests and follow-up questions have been directed to the Debtor through his counsel and as well as to other third parties. The Examiner is in the process of preparing a third request for production based on documents produced to date, disclosures by the Debtor, and the Examiner's ongoing analysis and preliminary findings. Debtor's counsel has been cooperative throughout this process.

13. Additionally, the Examiner and his forensic accounting staff have reviewed court filings, monthly operating reports, the proposed Plan of Reorganization and Disclosure Statement,

and sworn testimony provided by the Debtor to understand the status of the ongoing bankruptcy proceedings. Throughout the Phase I process, the Examiner identified various areas for further investigation.

**B. Workplan Phase II: Cash Flow Analysis, Income Reporting Reconciliation and Analysis**

14. As part of Phase II of the approved Workplan, the Examiner and his forensic accounting staff have been working to analyze the following information produced by the Debtor: i) tax returns filed by the Debtor; ii) internal financial statements and tax returns for over 25 of the Debtor's business entities; iii) federal gift tax returns filed by the Debtor and his wife, Patricia Schneider ("P. Schneider"), and; iv) personal financial statements (and related bank statements) produced by the Debtor to third parties over time. As noted above, the Debtor's accounting and legal staff are still working to respond to the Examiner's requests for records necessary to complete this work. Despite spending substantial time on Phase II, the Examiner has not reached conclusions regarding the Debtor's cash flow, income reporting, and intercompany transactions, principally due to gaps in available data and outstanding requests for production of documents.

15. To illustrate the importance of obtaining this information to the Examiner's ongoing Investigation, the section that follows provides an example of the Examiner's investigation of the Debtor's cash flows, specifically the sale of the operating entities in the Debtor's dog spa and pet resort businesses (owned by KPT7 Holding Company, LLC) in November 2024.

a. Based on the wire instructions prepared for the transaction, Kindred Pet Services Holdings, LLC, the acquirer of the dog spa and pet resort businesses, was to wire $11,299,586.52 of sales proceeds to KPT7 Holding Company, LLC's ("KPT7") Merrill Lynch account number XXX-X3211 [Red Dog

Operations Holding Company, LLC – Funds Flow (Final) 2024-11-14 (RS0043422), tab "Wire"].

b. On August 10, 2026, the Examiner requested from the Debtor information regarding all accounts associated with proceeds from the sale of the dog spa and pet resort businesses but has not yet received satisfactory or complete evidence of the receipt of such proceeds, nor the subsequent distribution of these funds.

c. Debtor's counsel, in a letter dated October 8, 2026, informed the Examiner that the Debtor is confirming that the sales proceeds went into Merrill Lynch account XXX-X3211 but thus far, the Debtor has only produced statements from this account for January 2026 and later [October 8, 2026, "In re Raymond Joseph Schneider, Case No. 1:25-bk-12607 (Bankr. S.D. Ohio) Supplemental Production and Update to Our October 1, 2026, Letter", p. 2.].

d. Furthermore, the Debtor testified at a recent deposition that his children, in addition to his son Eric Schneider ("E. Schneider") (an owner of the pet resort and spa business), received proceeds from the sale to Kindred Pet Services Holdings, LLC in amounts over $500,000 [Doc. No. 287, Exhibit QQ, pp. 165-166], despite the Debtor's children not being owners of KPT7 or the dog spa businesses it operated [Operating Agreement of KPT7 Holding Company LLC, dated November 1, 2024, p. 53 (RS017567-620, at 619)]. The ultimate whereabouts and disposition of approximately $11 million in cash proceeds is a material issue in this Investigation.

e. To date, the only sale proceeds the Examiner has been able to trace to a party associated with the pet resort and spa businesses is the $900,000 indemnity

escrow payment to the Patricia B. Schneider 2020 Gift Trust on November 14, 2024, in connection with its ownership in KPT7 [Patricia B. Schneider 2020 Gift Trust Merrill Lynch Account #5219 (RS0404746-765, at 762) and Red Dog Operations Holding Company, LLC – Funds Flow (Final) 2024-11-14 (RS0043422)].

16. This example, among others, is indicative of the complexity of the Investigation, the ongoing issues with the Debtor's document production, and the Examiner's continued efforts to obtain additional documents and to perform a complete analysis.

17. As noted above, the Controller explained to the Examiner that the Debtor does not maintain proper accounting and corporate formalities between the entities in which the Debtor is a controlling owner and entities in which the Debtor is a minority owner. The Debtor himself informed the Examiner in a July 2026 interview that the Debtor moves money from companies that are cash flow positive, such as the storage and nursing home businesses, to companies that have less liquidity. The Controller confirmed this activity regularly occurs. For example, the Controller explained that the Debtor used and continues to use Grasshopper Investments, LLC to fund a large portion of the payroll for the employees of the Debtor's other businesses, despite the Debtor currently owning less than 1.0 percent of Grasshopper Investments, LLC [SCH23-Salazar_0019233-626, at 240]. Based on the current progress of the Examiner's analysis of Grasshopper Investments, LLC's bank accounts, the Examiner has observed that Grasshopper Investments, LLC paid more payroll than any other Debtor-owned entity between 2018 and 2025. The Controller also informed the Examiner that the accounting for such transactions had not been accurately maintained in the past and that, before she could provide the Examiner with accurate

representations as to the current state of the intercompany balances, she would need to redo reconciliations dating back to at least January 2024.

**C. Workplan Phase III: Analysis of Specific Issues**

18. As part of the work completed to date, the Examiner and his forensic accounting staff have identified significant transfers of equity, purported sales of equity, and gifts of equity interests by the Debtor in a number of the Debtor's companies. The Examiner has independently prepared "Equity Roll-Forwards" for over 25 entities based on valuation reports commissioned by the Debtor's companies, operating agreements of the companies, various membership interest purchase agreements and membership agreements, and available Schedules K-1. The Equity Roll-Forwards specifically identify dates on which changes in ownership interests occurred, the amount and form of consideration exchanged (if any), the resulting capitalization of the entities before and after these transactions, and the equity value retained by the Debtor following the ownership changes (based, in large part, on third-party valuation reports). The purpose of this analysis is to identify potentially avoidable transactions.

19. While the Examiner has performed substantial analyses to date, the Examiner's analysis of these transactions is continuing, and requests for additional production of documents remain outstanding or are in process. However, in the section that follows, the Examiner has outlined the potential magnitude of transactions at issue and summarized the Examiner's analysis of, and preliminary findings regarding, two sets of transactions executed by the Debtor.

**Analysis of Gift Tax Returns Filed During and After the Sosna Investigation**

a. According to the Stipulation of Facts in Connection with the Hearing before this Court on October 5, 2026 ("October 5, 2026, Stipulation"), Huntington National Bank required the Debtor to execute a Reaffirmation of Guaranty and

Other Loan Documents with the bank on May 2, 2019 [October 5, 2026, Stipulation, par. 6]. In June 2019, the Debtor provided personal financial statements to Huntington National Bank after, according to his testimony, he suspected the bank had concerns about the loan [Doc. No. 287, Exhibit FF (Raymond Schneider's March 15, 2023, Testimony, ("Schneider 2023 Testimony"), pp. 77-79]. The Examiner further understands that Huntington National Bank placed the loan on which the Debtor is Guarantor in a "workout" in October 2019 indicating doubts regarding the loan's collectability. These dates are relevant to the Investigation, as they provide indicia as to whether and when the Debtor became insolvent as a result of the Huntington guarantee.

b. The Examiner's analysis of the Debtor's and P. Schneider's gift tax returns indicates that, beginning in December 2019 and continuing through October 2021, the Debtor made significant transfers of assets to trusts and his children. From December 2019 to October 2021,[2] the Debtor and P. Schneider gifted over $16.7 million of value to their trusts and their children, as summarized below [SCH23-Salazar_0019190-232, at 194-195; SCH23-Salazar_0020068-371, at 072-073; SCH23-Salazar_0019233-626, at 238-242; SCH23-Salazar_0020372-710, at 377-380; SCH23-Salazar_0019627-671, at 632-633; SCH23-Salazar_0020711-755, at 716-717]:[3]

[2] The Examiner notes that, as of October 31, 2026, the Debtor and P. Schneider have not yet produced their gift tax returns for 2022, 2023, or 2024.
[3] Totals from left to right and top to bottom may be immaterially different due to rounding.

**Gifts by Individual:**

| | R. Schneider | P. Schneider | Total |
|---|---|---|---|
| 2018 | $ - | $ - | $ - |
| 2019 | 7,718,638 | 81,015 | 7,799,653 |
| 2020 | 1,999,782 | 6,775,998 | 8,775,781 |
| 2021 | 81,000 | 81,000 | 162,000 |
| | **$ 9,799,420** | **$ 6,938,013** | **$ 16,737,434** |

**Example One: July 2026 Settlement Agreement – To Life, Ltd.**

a. As the Investigation progressed, the Debtor and Huntington have independently updated the Court with findings in the October 5, 2026, Stipulation and have proposed a settlement agreement related to unwinding and restructuring certain historical transactions [Doc. No. 287, Exhibit KK] related to the 2019 transfer of To Life, Ltd. to the Raymond Schneider 2019 Gift Trust (an approximately $7.6 million gift included in the approximately $7.8 million of gifts in 2019 outlined above) and the 2024 sale of the Blue Development Company to the Raymond Schneider 2019 Gift Trust (which will not be discussed at length in this Status Report). The proposed settlement agreement, which, among other things, would unwind the transaction, supports the Examiner's preliminary conclusions that this transaction constitutes a fraudulent conveyance. Based on the status of the Investigation, the Examiner believes there are other conveyances of equity interests between the Debtor and related parties that are potentially avoidable conveyances.

b. Under the settlement agreement, the membership interest in To Life, Ltd. that the Debtor gifted to the Raymond Schneider 2019 Gift Trust will be returned to the Debtor's estate and subsequently sold back to the Raymond Schneider 2019 Gift Trust in a seller-financed transaction for a price of approximately $2.2

million [Doc. No. 287, Exhibit KK, pp. 5-6]. In other words, the Debtor's estate would essentially be extending $2.2 million of credit to the Raymond Schneider 2019 Gift Trust for the trust to reacquire the membership interest in To Life, Ltd. The settlement agreement further provides that, if the Raymond Schneider 2019 Gift Trust does not repay the loan, the membership interest in To Life, Ltd. will revert to the Debtor. The sale price, which is based on a valuation prepared by Rebekah Smith of GBQ Consulting, is materially lower than the reported amount of the Debtor's gift to the trust on December 31, 2019, in which the reported the value was $7,637,623 [SCH23-Salazar_0020068-371, at 072-073].

c. The Examiner has observed that the Debtor's gift of membership interests in To Life, Ltd. as reported on the Debtor's 2019 Gift Tax Return [SCH23-Salazar_0020068-371, at 072-073] may have been understated. Based on the Examiner's analysis of the To Life, Ltd. June 30, 2019 valuation report prepared by Valuation Research Corporation [SCH23-Salazar_0020068-371, at 189], the amount which the Debtor included on his 2019 gift tax return failed to recognize an ownership change between the date of the valuation (June 30, 2019) and the date of the gift (December 31, 2019). Specifically, although not documented in any agreement provided to the Examiner to date, the Debtor's daughter, Danielle Senzer ("D. Senzer"), relinquished her approximately five percent ownership interest in To Life, Ltd. between June 30, 2019 and December 31, 2019 [Third Amended and Restated Operating Agreement of To Life, Ltd., dated December 31, 2019, (RS010500-526)], which would necessarily result in the Debtor's ownership interest in To Life, Ltd. increasing (because his

ownership was less diluted). Based on the Examiner's analysis, the value of Debtor's gift of To Life, Ltd. to the Raymond Schneider 2019 Gift Trust on December 31, 2019, was approximately $8,039,603.[4]

d. On December 31, 2020, P. Schneider gifted her entire five percent interest in To Life, Ltd. to D. Senzer, which included 5 voting shares and 45 non-voting shares [P. Schneider's 2020 Form 709, Schedule A Part 1, PDF. p. 6. (SCH23-Salazar_0019233-626, at 238). See also Assignment of Class B Units, dated December 31, 2020 (SCH23-Salazar_0019233-626, at 252)]. This transaction restored D. Senzer's five percent ownership in To Life, Ltd. and further reduced the Debtor and P. Schneider's equity value in To Life, Ltd.

e. These transactions regarding To Life, Ltd. and others will be discussed at length in the Examiner's final report once the Examiner is provided all requested documents and information. The outstanding requests are discussed in detail in the next section of this Status Report, including certain operating agreements, gift tax returns, exhibits to purchase agreements, and bank statements which will allow the Examiner and his forensic accounting team to confirm consideration exchanged, completeness of the Examiner's summary of transfers, and distributions of proceeds from such transactions. Ultimately the Examiner anticipates identifying for the Court any and all such gifted transfers of ownership interest that occurred and which may be subject to potential avoidance actions.

---

[4] Class B unit value of $9,547,029 on a non-marketable, non-controlling basis *divided by* 855 Class B units outstanding on December 31, 2019, *equals* $11,166 per share *multiplied* by 720 Class B units *equals* $8,039,603.

**Example Two: Boston Animal Hospital, LLC, Red Dog Operations Holding Company, LLC, KPT7 Holding Company, LLC, and Kindred Pet Services Holdings, LLC Transactions**

a. The Examiner and his forensic accounting staff have documented a multitude of additional organizational changes, restructurings, and divestitures in numerous other entities owned in whole or in part by the Debtor. For example, the Examiner identified activity related to the Debtor's pet resort and spa businesses and the associated real estate which the Examiner believes warrants further investigation.

b. Based on documents obtained and analyzed, the Examiner has confirmed that, although the Debtor has transferred, gifted, and sold the majority of interests in the aforementioned businesses to the Debtor's son, E. Schneider, and to the Patricia B. Schneider 2020 Gift Trust (of which the Debtor is the Trustee), the Debtor has retained the majority (or, in certain cases, the entirety) of voting control. In addition, the Examiner observed that the Debtor continues to exert significant influence on entities in which the Debtor no longer retains direct ownership.

c. Boston Animal Hospital, LLC ("BAH") illustrates the distinction between the Debtor's fractional ownership interest and his continued control over, and receipt of control-owner benefits, from these businesses. Prior to January 1, 2020, the Debtor owned 100 percent of the membership interests in BAH[Operating Agreement of Boston Animal Hospital LLC, dated April 19, 2018, p. 1. (RS020031-038)]. In January 2020, the Debtor contributed 100 percent of his equity interest in BAH to Red Dog Operations Holding Company, LLC ("Red Dog"), [Contribution and Exchange Agreement, dated January 1,

2020. (RS019947-956)] retaining an 80 percent interest in Red Dog [Operating Agreement of Red Dog Operations Holding Company, LLC, dated January 1, 2020, p. 54. (RS019669-726, at 722)]. Shortly after the Debtor was notified by Huntington of his position as a guarantor of the obligations owed to Huntington, and Huntington filing a complaint against the Debtor and others in the Hamilton County, Ohio, Court of Common Pleas on June 5, 2020 [October 5, 2026, Stipulation, par. 8], the Debtor conveyed 69.99 percent of Red Dog to P. Schneider [Assignment of Class B Units, dated November 1, 2020. (RS020021-023)] and another 10 percent to his son, E. Schneider [Assignment of Class B Units, dated December 31, 2020. (RS020024-026)]. The Debtor's wife then assigned her Class B units in Red Dog to the Patricia B. Schneider 2020 Gift Trust, of which the Debtor is the sole trustee [Assignment of Class B Units, dated December 31, 2020. (RS020018-020)].

d. As a result, by the end of 2020, the Debtor owned 0.01 percent of Red Dog and, indirectly, a 0.01 percent indirect interest in its subsidiaries. In November 2024, Red Dog reorganized as KPT7 [Operating Agreement of KPT7 Holding Company LLC, dated November 1, 2024, p. 53 (RS017567-620, at 619)]. The Debtor retained a 0.01 percent interest in KPT7, which then owned 100 percent of BAH.

e. Despite these various divestitures and the reorganization, the Debtor retained voting control of KPT7 and its underlying assets, including BAH, and continued to receive direct benefits from those assets. For example, on June 3, 2026 – after the Examiner's appointment – the Debtor received (and reported

in his monthly operating report) two $25,000 owner draws obtained directly from BAH [Doc. No. 245-1, Exhibits]. As a result, the Debtor received $50,000 in direct distributions from a company in which he no longer holds a direct ownership interest. This activity establishes that, despite the Debtor purportedly owning a minimal fractional interest in KPT7, the Debtor has consistently treated KPT7 and its subsidiaries as if he is sole owner and he clearly retains control over their activities and financial resources.

f. The Examiner's analysis to date confirms that this example is representative of numerous similar transactions entered into by the Debtor between January 1, 2020, and the present. On August 10, 2026, the Examiner requested calculations and supporting documentation for all the distributions that the Debtor received from any company in which the Debtor currently owns in whole or in part. On November 5, 2026, the Debtor's counsel provided the Examiner with a schedule identifying the Debtor's contributions to and distributions from Red Dog (an entity in which the Debtor is a minority owner [RS0445283]) from 2020 through 2024 but has not yet provided similar information for any of the Debtor's other entities. Based on the Examiner's preliminary (but not yet finalized) analysis of Debtor-owned entity banking records produced to date, it appears that the Debtor has historically taken distributions from other entities that were disproportionate to his stated ownership interest.

20. Finally, the Investigation, and ongoing discovery in the related dispute between Huntington National Bank and the Debtor, have concurrently (and recently) uncovered additional

trusts, companies, and bank accounts associated with the Debtor for which the Examiner will be requesting production of additional relevant documents from the Debtor.

**D. Workplan Phase IV: Preparation of the Examiner's Report**

21. The Investigation remains ongoing. Based on the work completed to date, the Examiner and his forensic accounting staff have prepared draft narratives, and summary schedules to support portions of the final Examiner's Report. At this time, based on outstanding requests for document production and ongoing analysis, issuance of an Examiner's Report is not possible, and will likely be further delayed as a result of incomplete document production and the resignation of the Controller.

**OUTSTANDING DOCUMENT PRODUCTION REQUESTS AND ADDITIONAL ANALYSIS TO BE PERFORMED**

22. The Examiner has received a multitude of documents from the Debtor and has continued to review and analyze the materials in connection with the Investigation.

23. The Examiner issued his Initial Request for Document Production to the Debtor on or around August 10, 2026, which covered supporting documentation for the Debtor's personal financial statements, bank and brokerage activity, entity ownership records, appraisals, tax reporting, operating agreements, sale documentation, and other materials necessary to complete the Examiner's review.

24. On August 18, 2026, the Examiner issued the Second Request for Document Production to address gaps identified during the Examiner's review of documents produced to third parties before the Examiner's appointment and to obtain additional documentation regarding the Debtor's financial affairs, tax reporting, transactions and related matters.

25. On September 4, 2026, the Debtor produced approximately 1,400 documents in response to the Examiner's August 10 and August 18, 2026, document requests. The production was accompanied by a letter dated September 4, 2026, which identified outstanding documents and other materials that the Debtor intended to provide later in a supplemental production.

26. On September 17, 2026, the Debtor provided a supplemental production that included numerous bank statements and other records.

27. On September 29, 2026, the Examiner provided the Debtor with updated lists identifying items that remained outstanding from the Examiner's August 10 and August 18, 2026, document requests. On October 1, 2026, the Debtor through counsel provided a response addressing the outstanding items (the "First October Letter"), and produced additional documents including bank statements, investment account statements, personal financial statements and other documents.

28. On October 8, 2026, the Debtor through counsel provided an additional response and supplemental production that included bank statements, 2025 tax returns and Schedule K-1s, financial information and other documents.

29. On November 5, 2026, the Debtor provided more than 5,000 additional documents, including bank statements, internal workpapers, financial information, and other documents which the Examiner is currently reviewing. Given the Examiner's reliance on the Controller to provide financial reports and commentary on the Debtor's historical accounting practices, the Examiner expects (and Debtor's counsel has confirmed) that the temporary absence of a controller and the subsequent transition to a replacement will further delay and complicate the progress of the Investigation.

30. The Debtor has produced a substantial volume of documents to date; however, certain documents and information necessary to complete the Examiner's analysis remain outstanding. Based on the Examiner's review of the productions to date, and the responses by the Debtor, the categories of documents and information that remain outstanding are summarized below[5].

a. The Examiner and his forensic accounting staff continue to seek certain bank and brokerage statements for the Debtor, trusts, and numerous entities that have not been produced to date. As acknowledged by the Debtor's counsel, the Debtor continues to search for and produce bank and brokerage statements. In addition, the Examiner and his forensic accounting staff continue to identify previously unknown accounts associated with the Debtor. The Debtor's counsel has acknowledged that the Debtor's (or his companies') accounting staff are attempting to collect statements from the applicable financial institutions. Furthermore, the Debtor has not fulfilled certain requests for post-sale records (such as for Red Dog), which may need to be obtained from non-Debtor third parties.

b. Requests for various tax returns, financial statements, and financial records remain outstanding for entities in which the Debtor holds or previously held an interest. These include records relating to Grasshopper Investments LLC, To Life III, Glidden House Partners, Hamilton II, KPT7, North Station Animal Hospital, LLC, and Red Dog Operations Holding Company, LLC among others.

---

[5] The Debtor produced additional documents to the Examiner on November 17, 2026, the day before the filing of this Status Report. The statements in this Status Report do not take into account this additional production because, as of the filing hereof, the Examiner and his staff have not had an opportunity to fully review such production.

The Debtor through counsel has advised that certain records requested by the Examiner and his forensic accounting staff are not maintained by the Debtor and will need to be obtained from the applicable entity, company management, or other third-party custodian.

c. The Examiner and his forensic accounting staff have also requested documentation relating to various trusts associated with the Debtor and his family. The records requested include tax returns, financial statements, and bank and investment account statements for the Joseph Schneider Trust, Raymond Schneider 2019 Gift Trust, Patricia B. Schneider 2020 Gift Trust, and Schneider Family Insurance Trust. Debtor's counsel has indicated that certain documents will be provided once they are located or provided by the relevant third party.

d. Requests for certain documentation that may shed light on the Debtor's ownership and disposition of business and investment interests also remain outstanding. These materials include operating agreements, amendments, ownership schedules, documentation concerning the transfer of ownership interests, appraisal of property, certain Schedule K-1s, gift tax returns, life insurance documentation and executed documents relating to the November 2024 sale of the Red Dog entities (including the settlement statement and closing certificate). In several instances, the Debtor through counsel has advised that the requested records are not in the Debtor's possession and are being requested from the relevant entity or third party.

e. The Examiner also requested, but has not yet received, supporting calculations and documentation for distributions received by the Debtor from operating and investment entities, documentation relating to the HRM Realty Holdings Ltd. litigation matter, deposition transcripts of Huntington Asset Recovery Specialists, and additional information regarding proceeds from the November 2024 Red Dog transaction. The Examiner and his forensic accounting staff are also continuing to review and analyze information as it is provided regarding intercompany balances to determine whether additional supporting documentation is required.

f. The Examiner also understands that the Debtor, through counsel, has conveyed to several third parties certain of the Examiner's document requests regarding financial statements, operating agreements, tax returns, and other corporate records for investments made by the Debtor but to which the Debtor does not have access. In the First October Letter, the Debtor's counsel identified the applicable third-party custodians, and on October 19, 2026, sent written requests for those records not maintained by the Debtor, most of these requests remain outstanding. The Examiner will subpoena these documents from these third parties, if necessary.

31. Finally, the Debtor recently disclosed the existence of two additional trusts in a deposition: the Raymond Schneider Trust, dated December 18, 2018, and the Raymond Schneider Legal Defense Trust, dated February 3, 2023. The Examiner will be requesting financial statements, tax returns, and bank statements associated with these trusts.

32. These incomplete records have complicated and delayed the Examiner's efforts to trace activity from month to month, to identify the flow of funds among individuals and entities, reconcile reported financial activity and balances, evaluate changes in ownership interests, and analyze distributions, transfers, and sale proceeds, particularly given the numerous ownership changes and sales involving the Debtor, Debtor-owned entities, and trusts.

33. The Examiner and his forensic accounting staff have made substantial progress in the Investigation and appreciate the cooperation of the Debtor, his professionals and other parties throughout the process. However, certain aspects of the Investigation remain dependent on the receipt and subsequent review and analysis of the outstanding documents and information as described above.

34. Upon receipt of the outstanding materials, the Examiner and his forensic accounting staff will continue analyzing the Debtor's financial activity including transactions involving the Debtor, related trusts, and entities in which the Debtor holds or has held an ownership interest. The Examiner will also continue to analyze the Debtor's transfer of ownership interests, distributions, sale proceeds, intercompany activity and other potentially avoidable transactions relevant to the scope of the Investigation. As acknowledged by the former Controller, there are issues with the Debtor's companies' historical accounting for intercompany activity which warrant further investigation by the Examiner, particularly as it relates to entities which the Debtor has sold, gifted or transferred to other parties. To complete this analysis, the Examiner will need to rely upon complete production from each of the Debtor's entities to adequately reconcile this activity.

35. The Examiner and his forensic accounting staff will also endeavor to reconcile information from the bank and brokerage records, tax returns, financial statements, ownership records, and other source documents where necessary and request additional information from the

Debtor as needed. As the Investigation continues, the Examiner may identify additional documentation and information necessary to complete the Investigation.

36. The Examiner and his forensic accounting staff must complete several areas of financial analysis require by the Agreed Order, including analyzing the Debtor's personal financial statements and testing the reported asset and investment balances over time, evaluating the accuracy and consistency of tax returns and internal financial statements and other financial information, analyzing changes in entity and trust ownership, tracing distributions, sale proceeds, and other transfers involving the Debtor, related parties and trusts, reconciling intercompany receivables and payables and analyzing gift and other transfers reflected in the Debtor's tax and financial records. The Examiner and his forensic accounting staff must also incorporate the results of these analyses into the supporting schedules, exhibits and narratives necessary to complete the Examiner's final report.

37. Based on these issues, the Examiner anticipates the need for additional time and an expanded Investigation budget to complete the remaining work necessary to comply with the Court's Agreed Order dated April 23, 2026, and to prepare and file the Examiner's final report. After reviewing the Examiner's October time entries and invoice and considering the likelihood of additional delays in obtaining requested documents, the Examiner will develop and submit a revised workplan and budget for the parties' and the Court's consideration. The Examiner expects that, given his findings to date, the significant outstanding requests for production of documents from the Debtor, and the anticipated complications resulting from the resignation of the Controller, completion of the Investigation will likely require significant additional time and fees, estimates for which will be disclosed in the updated Work Plan and Budget.

Date: November 18, 2026

/s/ *William G. Krieger*
William G. Krieger
wkrieger@gleasonexperts.com
One Gateway Center
Suite 525
Pittsburgh, Pennsylvania 15222
Phone - (412) 391-5404
*Examiner*

Submitted and Filed By:

*/s/ Philip K. Stovall*
Philip K. Stovall (0090916)
**HAHN LOESER & PARKS LLP**
65 E. State Street, Suite 2500
Columbus, Ohio 43215
Telephone: (614) 221-0240
Fax: (614) 221-5909
Email: pstovall@hahnlaw.com
*Counsel to Examiner*